Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>vs.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFFS' COMPLAINT**<br><br>**Hearing**<br>Date: November 8, 2019<br>Time: 9:00 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. CIVIL CLAIMS UNDER DTSA NEED ONLY BE "PLAUSIBLE" ........................1

III. THE COMPLAINT SUFFICIENTLY SPECIFIES THE TRADE SECRETS ..................................................................................................................2

IV. THE COMPLAINT PLAUSIBLY ALLEGES MISAPPROPRIATION BY ALL DEFENDANTS ..................................................................................................6

V. CONCLUSION ......................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS

## I.     INTRODUCTION

Contrary to the arguments in Defendants' Motion to Partially Dismiss (Dkt. 29), Plaintiffs' Complaint sets forth sufficient facts and allegations to plausibly plead a case for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"). The pleading standards do not require Plaintiffs to set forth the allegations with particularity or prove their case in the pleadings. Defendants' allegation that Plaintiffs' Complaint should be dismissed because it does not "sufficiently identify any of the purported trade secrets" is therefore unavailing. (Dkt. 29 (hereinafter, "Motion" or "Mot.") at 6, 9–11.)[1] As pled in the Complaint, the facts are that Lemarié, a key employee with extensive knowledge of and access to Plaintiffs' trade secrets, left abruptly to join Vade[2] and, shortly thereafter, Vade filed a patent and released a product that bears striking similarities to techniques deployed in Plaintiffs' anti-spear phishing technologies. Moreover, Lemarié acquired extensive knowledge of proprietary, trade secret techniques and aspects of the Cloudmark Mail Transfer Agent ("MTA") developed over many years working on Cloudmark's technologies. Yet given that knowledge, he has served as Chief Technology Officer through the rapid development of Vade's own MTA, which Vade now purports is competitive with Cloudmark's MTA. It is highly unlikely that Vade would have been able to develop and ready for deployment its MTA technology without the use of Plaintiffs' trade secret information from Lemarié. All this (and more) is pleaded with sufficient facts and allegations in the Complaint, more than meeting Plaintiffs' obligations at this stage of the litigation.

## II.    CIVIL CLAIMS UNDER DTSA NEED ONLY BE "PLAUSIBLE"

It is undisputed that claims under the DTSA are sufficiently pleaded if the general plausibility standard, set forth in *Twombly* and *Iqbal*, is met. (Dkt. 29 (Defendants' Motion to Partially Dismiss Plaintiffs' Complaint; hereinafter, the "Motion" or "Mot.") at 8 (Defendants' discussion of "Legal Standards" citing plausibility standard from *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Pincites to the docket refer to ECF pagination.
[2] "Vade" refers to Defendants Vade Secure, Incorporated and Vade Secure SASU.

678 (2009).) In contrast, the heightened pleading standard requiring particularity, while appropriate for allegations of fraud or mistake, is not applicable to civil claims under the DTSA. *See, e.g.*, *Yeiser Research & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-MSB, 2019 WL 2177658, at *4 (S.D. Cal. May 20, 2019) ("DTSA is notable for what it does not require. DTSA does not contain any heightened pleading requirements for civil litigants. Congress knows how to require heightened pleading requirements for statutory causes of action, but apparently decided against imposing such requirements in federal trade secrets litigation.") (citations omitted). *Compare* FED. R. CIV. P. 8 ("General Rules of Pleading"), *with* FED. R. CIV. P. 9(b).

Thus, "[t]o survive a Rule 12(b)(6) motion, a plaintiff must plead . . . 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Keyssa, Inc. v. Essential Prods., Inc.*, No. 17-cv-05908-HSG, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11, 2019) (citing *Twombly* and *Iqbal*); *see also Physician's Surrogacy, Inc. v. German*, No. 17-cv-718-MMA, 2018 WL 638229, at n. 4 (S.D. Cal. Jan. 31, 2018) ("[T]he Court applies general pleading standards, which require plausibility as opposed to particularity. In other words, the Court finds unpersuasive Defendants' argument that Plaintiff must plead DTSA claims with particularity . . . ."). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding a 12(b)(6) motion, the Court must accept as true "all allegations of material fact" and construe the allegations "in the light most favorable to the nonmoving party." *E.g., Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).

**III.   THE COMPLAINT SUFFICIENTLY SPECIFIES THE TRADE SECRETS**

Defendants acknowledge that "the details of the trade secret need not be spelled out in the plaintiff's complaint." (Dkt. 29 at 9.) Instead, at this stage of litigation, trade secrets need only be "sufficiently identified" to provide defendants "reasonable guidance in ascertaining the scope of appropriate discovery" and put Defendants on notice of issues at trial. *Volans-I, Inc. v. SpektreWorks, Inc.*, No. 19-cv-00634-PJH, 2019 WL 2300640, at *3 (N.D. Cal. May 30, 2019) (citation and quotation marks omitted); *see also Keyssa*, 2019 WL 176790, at *2.

Plaintiffs' Complaint meets those requirements—and Defendants' own actions attest to their understanding of the scope of discovery and issues in this case. (*Cf.* Mot. at 9–11.) Indeed, Defendants had sufficient factual basis to enable them to search for Plaintiffs' confidential materials in their records. (Dkt. 31-52 ("Please note in particular that Defendants have not identified any Proofpoint confidential materials or information in their possession, custody, or control.").) Additionally, Defendants—in response to Plaintiffs' allegations—purportedly suspended Defendant Lemarié's "work on and involvement with the development of the aspects of Vade's Office 365 product and forthcoming MTA gateway product **referenced in the Complaint**." (*Id*. (emphasis added).) Thus, Defendants' own statements and actions evince an understanding of Plaintiffs' confidential information and Defendants' accused products at issue in this case. Moreover, before filing their Motion, Defendants wrote to Plaintiff, describing their intention to provide discovery "[s]ubject to any appropriate objections Defendants may have," thereby signaling their understanding of at least the contours of anticipated, appropriate discovery. (*Id.*)

While Defendants' Motion references some cases in which allegations of technical trade secrets were found to be insufficient, Defendants fail to show how those allegations are similar or representative of Plaintiffs' allegations in this case. (*See* Mot. at 10.) In fact, courts in this District have found that trade secret allegations similar to Plaintiffs' alleged trade secrets are sufficient. For example, in *Vendavo, Inc. v. Price f(x) AG*, the court denied a motion to dismiss trade secret counterclaims, finding that, "while perhaps somewhat conclusory and generalized," the alleged trade secrets were described with sufficient detail. No. 17-cv-06930-RS, 2019 WL 4394402, at *1 (N.D. Cal. Sept. 13, 2019). Those software-related trade secrets were described in the pleadings as:

> PFX's trade secrets include its best-in-class proprietary PO&M and CPQ SaaS solutions and design architecture; software development plans and approaches; commercial business plans and models; investment, growth, and funding plans; customer lists (including details concerning customer contacts, preferences, product configuration, pricing, and terms and conditions); and uniquely flexible solution architecture.[3]

---

[3] Defendants' Answer, Affirmative Defenses, Counterclaims and Demand for Jury Trial at 27, *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2019 WL 4394402 (N.D. Cal. Nov. 5, 2018), ECF No. 94.

Here, Plaintiffs have also alleged the trade secrets by referencing their software products, and even defined the scope of the asserted trade secret information more narrowly and in greater specificity:

> Plaintiffs own and possess certain confidential, proprietary, and trade secret information including proprietary techniques, implementations, methods, processes, algorithms, software policies and logic for Cloudmark's [Mail Transfer Agent], which is incorporated into [Cloudmark Security Platform].

(Dkt. 1 (hereinafter, "Pls.' Compl.") ¶ 63.

As Defendants acknowledge, not only did Plaintiffs allege their trade secrets in connection with specific products, they also provided a "bulleted items" of specific "components for developing cyber-security products or solutions," the combinations of which comprise Plaintiffs' asserted trade secrets. (Mot. at 10–11 (citing Pls.' Compl. ¶ 55).) Defendants complain that "Plaintiffs have only pleaded broad categories of information, processes, and procedures." (Mot. at 10.) But, in comparison to other trade secret allegations allowed in this District at the pleading stage, Plaintiffs have alleged their trade secrets in greater specificity than actually required.

For example, in *TMX Funding*, plaintiff alleged "nine broad categories of trade secret information," including "its software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services." *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010). The court found this description "is sufficient to permit Defendants at least to ascertain the boundaries within which the secrets lie." *Id*. at *4. The court reasoned that "[i]t is self evident that some of the types of information alleged are not generally known to others in the trade," specifically noting that plaintiff's "software, source codes, data, [and] formulas," would not be accessible outside of plaintiff's organization. *Id*. at *4.

The same is true of Plaintiffs' alleged trade secrets in this case, which also describe Plaintiffs' "source code, programs, compilations, internal communications, and documents" and "algorithms [and] software policies and logic." (Pls.' Compl. ¶¶ 55–66; *cf.* Mot. at 11.) As pled in their Complaint, Plaintiffs have maintained the confidentiality of the asserted trade secret information; and Plaintiffs' technical and industry expert has explained that such information is typically held in strict confidence by email security vendors, like Proofpoint, Cloudmark, and Vade.

(Pls.' Compl. at ¶ 68; Dkt. 31-3 ¶¶ 108–10 (*e.g.,* "[B]ased on my understanding and experiences with vendors, the source code, schematics, algorithm descriptions, and other technical data describing specific operation of vendors' email security solutions are protected . . .").) Thus, *TMX Funding* directly refutes Defendants' argument that Plaintiffs' allegations are not distinguishable "from information that is general knowledge in the trade or of special knowledge to those persons skilled in the trade." (*Cf.* Mot. at 11.) At best, Defendants' allegations are an affirmative defense, but not a basis to dismiss the complaint under Rule 12.

By virtue of Vade's participation in the market and Lemarié's extensive personal experience in cybersecurity (*e.g.,* Mot. at 6–8), Defendants are more than capable of discerning and distinguishing their technology from that of others, including Plaintiffs'. Plaintiffs have sufficiently pleaded allegations that enable Defendants to investigate and formulate defenses regarding their use or disclosure of Plaintiffs' confidential information—and, according to Defendants, they have already begun such an investigation. *See* Dkt. 31-52; *see also Accresa Health LLC v. Hint Health Inc.*, No. 4:18CV536, 2018 WL 6626551, at *9 (E.D. Tex. Nov. 28, 2018), *report and recommendation adopted*, No. 4:18CV536, 2018 WL 6617707 (E.D. Tex. Dec. 18, 2018) (finding plaintiff's trade secrets claims were sufficiently pleaded according to Rules 8(a)(2), 12(b)(6), and 12(e) by "alleg[ing] its trade secrets include 'the technical implementation' of [plaintiff's product]" that allowed the functionality of defendant's accused product).

Moreover, Plaintiffs could not have feasibly provided further detail in a publicly filed, initial pleading without risking the loss of secrecy of the trade secrets they sought to protect. *See Keyssa*, 2019 WL 176790, at *2. Yet, as described above, Plaintiffs provided sufficient specificity "to place Defendant[s] on notice of what information is at issue in this case at the pleading stage," which is sufficient to survive a motion to dismiss under Rule 12(b)(6). *Id.* (finding trade secret identifications, such as "proprietary test and validation methods" and "system architecture" to enable a particular result, were "sufficiently particular").

In any event, if Defendants are genuinely incapable of "ascertain[ing] at least the boundaries within which the trade secret lies" (which Plaintiffs dispute), there are more appropriate channels to seek more specificity. *See TMX Funding*, 2010 WL 2509979, at *3. In the *Vendavo* case referenced

by Defendants, the court, after denying a motion to dismiss trade secret counterclaims, instructed that "the appropriate mechanism for obtaining greater specificity as to what trade secrets are claimed is to pursue the matter through disclosures, interrogatories, meet and confer negotiations, or such other facets of the discovery process as may be warranted." *Vendavo*, 2019 WL 4394402, at *1.  At a minimum, Plaintiffs should be allowed an opportunity to amend the trade secret misappropriation claims.  *Teradata Corp. v. SAP SE*, No. 18-CV-03670-WHO, 2018 WL 6528009, at *19 (N.D. Cal. Dec. 12, 2018); *see also Schreiber v. Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); *Mayes v. Laipziger*, 729 F.2d 605, 607–08 (9th Cir. 1984).  Here, Plaintiffs are eager to begin discovery because doing so will provide evidence they need[4]; and discovery is the appropriate mechanism by which Defendants may seek greater specificity.

### IV. THE COMPLAINT PLAUSIBLY ALLEGES MISAPPROPRIATION BY ALL DEFENDANTS

Defendants also argue that Plaintiffs have not "plausibly allege[d] misappropriation by any Defendant." (Mot. at 11.)  As an initial matter, Defendants' argument fails because it is predicated on an improper evidentiary standard that is more appropriate for summary judgement.  That is, Defendants erroneously "reiterate [that] plaintiffs bringing a DTSA misappropriation claim ***must establish***—as the second element of such a claim—misappropriation by the defendant." (Mot. at 11 (emphasis added).)  That is a misstatement of the law.  There is no requirement that Plaintiffs "establish" any facts at this stage of litigation, particularly before any discovery through which evidence of such facts is obtained.  "[A]s discovery has not yet commenced, it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used [a plaintiff's] trade secrets, given that Defendants are the only ones who possess such information." *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (citation and quotation marks omitted).

---

[4] *See* Dkt. 31.

Instead, Plaintiffs need only adequately *allege* misappropriation (and the other elements under the DTSA for which Defendants do not dispute the sufficiency). *See, e.g.*, *Volans-I*, 2019 WL 2300640, at *4. Plaintiffs have done exactly that. In *Volans-I*, the court denied defendant's motion to dismiss plaintiff's DTSA claim, finding that "plaintiff has adequately alleged the acts of misappropriation." *Id*. The court explained that, like the alleged facts here:

> Plaintiff has pled that the parties entered into a contractual agreement that gave defendant access to [plaintiff]'s Confidential Information. Plaintiff further alleges numerous similarities between the [defendant's product] and [plaintiff's product]. Lastly, plaintiff alleges that defendant has relied upon, used, and continues to use plaintiff's trade secrets. The court finds those allegations sufficient at this stage in the litigation.

*Id*. (internal citations omitted).

Defendants do not dispute that the same factual allegations were made in this case. As Defendants' Motion acknowledges, "Plaintiffs claim that [Defendant] Lemarié received alleged trade secrets under his alleged Employee Proprietary Information and Inventions Agreement (the 'PIIA')." (Mot. at 13 (citing Pls.' Compl. ¶¶ 46–53).) The Motion also concedes that "Plaintiffs accuse a number of the Vade Defendants' products or planned products as generally being similar to, sharing unique advantages with, and using the same computer programming language as several of Plaintiffs' products." (*Id*. at 13 (citing Pls.' Compl. ¶¶ 41–42, 44–45).)

Instead of accepting the holdings in similar DTSA cases in this District, like *Volans-I*, Defendants improperly contort the law and disregard facts—even facts acknowledged within their Motion—to argue Plaintiffs' allegations are "conclusory" and fail to state a cognizable claim. (*See* Mot. at 11–14.) Defendants' misstatements of law and fact must be rejected and should not prevent Plaintiffs' DTSA claims from being heard. For example, Defendants argue that "Plaintiffs['] allegations about the alleged similarities with their products are wholly conclusory and without any factual support." (Mot. at 13.) Yet, only a few sentences earlier, Defendants acknowledged that Plaintiffs' allegations about the product similarities are "based largely on [Defendants'] marketing materials." (*Id*.) Moreover, marketing materials highlighting allegedly misappropriated technologies are sufficient to allege misappropriation. *E.g.*, *Keyssa*, 2019 WL 176790, at *2 ("The

complaint goes on to identify various marketing materials for the products that highlight the allegedly-misappropriated technology. This is sufficient to allege misappropriation.").

On the same subject, Defendants argue that "alleging similarity between two products is insufficient to support a claim of misappropriation."[5] (Mot. at 13.) In actuality, allegations of similarities between the parties' technologies is sufficient when accompanied by allegations of how defendants obtained the trade secrets. *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 883 (N.D. Cal. 2018) (citing *E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018)). In *Keyssa*, for example, allegations that defendant accessed plaintiff's trade secrets under the protection of an NDA, along with allegations that defendant attempted to implement the plaintiff's trade secrets in defendant's products based on marketing materials highlighting the misappropriated technologies, were sufficient to allege misappropriation under DTSA. *Keyssa*, 2019 WL 176790, at *2–3.

Here, Plaintiffs have more-than-adequately alleged, and even attached the signed agreement showing, that Defendant Lemarié obtained trade secrets under specific restrictions and confidentiality obligations set forth in his employment agreements. (Mot. at 13–14.) And, as Plaintiffs allege, while in his role as Chief Technology Officer at Vade, Lemarié improperly disclosed Plaintiffs' trade secrets to Vade and further used the trade secrets to develop the two accused Vade products. (Pls.' Compl. ¶¶ 38, 40–42, 70.) Although Defendants claim that those allegations do "not identify with requisite specificity how those obligations were allegedly violated to amount to trade secret appropriation," Defendants concede that "Plaintiffs need not 'plead exactly how Defendants improperly obtained [or used] the alleged trade secret.'" (*Compare* Mot. at 13, *with* Mot. at 12 (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 883 (N.D. Cal. 2018)).) This is just another example of the internal inconsistencies in Defendants' arguments.

Defendants' primary grievance regarding Plaintiffs' allegations against Lemarié appears to be that "Plaintiffs have failed to sufficiently allege how Lemarié used alleged secrets in a way that

---

[5] Tellingly, Defendants do not dispute Plaintiffs' allegation that there are many similarities between Plaintiffs' technologies and Defendants' later-developed products.

violated the PIIA." (Mot. at 13.) Yet two sentences later, the Motion acknowledges that "Plaintiffs aver that Lemarié agreed that he would hold in strictest confidence and could not disclose, use, lecture upon or publish any of Cloudmark's Proprietary Information—which is defined to include Cloudmark's trade secrets . . . ***other than as required in connection with his work for Cloudmark*** . . . ." (*Id*. (citing Pls.' Compl. ¶ 49) (emphasis added).) Plaintiffs' Complaint goes on to allege that Defendants—including Lemarié—"misappropriated Plaintiffs' trade secret information . . . by using Plaintiffs' trade secret information to develop, market, sell, or offer for sale ***Vade's email security products and forthcoming MTA product***." (Pls.' Compl. ¶ 70 (emphasis added).) Plaintiffs' allegations as to "how Lemarié used alleged trade secrets in a way that violated the PIIA" could not be clearer. (*Cf.* Mot. at 13.) Moreover, Vade's argument would improperly impose heightened pleading standards to the extent Vade expects the Complaint to set forth specific instances in which Lemarié accessed and used the trade secrets—that level of particularity would be impossible to plead in most if not all trade secret cases without discovery.

Having neither the law nor the facts in their favor, Defendants appear to attack Plaintiffs' motivations by strongly implying that Plaintiffs brought this suit in response to the announcement of Vade's financing agreement and alleged "competitive threats" to Plaintiffs, without actually identifying any trade secrets.[6] (*See* Mot. at 7–8.) But if any party is avoiding and delaying the merits of Plaintiffs' claims, it is Defendants. For example, Defendants argue that Plaintiffs' understanding of the corporate relationship between Defendants Vade Secure, Inc. ("VSI") and Vade Secure SASU ("VSS") "doom[s]" Plaintiffs' trade secret claim. (Mot. at 7 n.1, 12.) While Defendants criticize Plaintiffs for allegedly treating VSI and VSS as a single entity, Defendants have repeatedly done the same, suggesting that the delineation between the two privately held

---

[6] The only basis for Defendants' insinuation is that Plaintiffs did not bring suit immediately following Vade's patent application filing or product release. (Mot. at 7.) However, there was no delay in filing of this suit. *See Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SACV170158DOCJCGX, 2017 WL 8220428, at *5 (C.D. Cal. June 27, 2017) (finding that, "if the plaintiff's suit is filed within the applicable limitations period," laches and thereby unreasonable delay are strongly presumed not to apply). Moreover, the patent application was not even published until September 27, 2018 (Dkt. 1-6) and did not issue until May 7, 2019 (Dkt. 1-7). Plaintiffs could not reasonably have uncovered the patent application any earlier.

entities would be nearly impossible for outsiders, like Plaintiffs, to parse without discovery. (*See, e.g.*, Mot. at 7 ("In June 2019, however, it was announced that 'Vade Secure' entered into a financing agreement . . . .").) Tellingly, Defendants have not produced any evidence of their corporate structure or any indication of why VSI or VSS should be treated any differently for purposes of Plaintiffs' allegations. This case is in its infancy; discovery has not yet commenced and it is meritless to conflate the sufficiency of Plaintiffs' pleadings with the sufficiency of Plaintiffs' evidence at this point, which they obtained without the aid of discovery to which they are entitled. Once Plaintiffs' factual allegations are accepted as true, which is required at this stage, it is beyond dispute that a reasonable inference of Defendants' liability can be drawn. *See Keyssa*, 2019 WL 176790, at *1 (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). Therefore, Plaintiffs have sufficiently pleaded allegations that plausibly state a claim upon which relief can be granted under Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Partially Dismiss Plaintiffs' Complaint be denied. At a minimum, should the Court grant the Motion, Plaintiffs request that the Court grant them leave to amend the Complaint.

DATED: September 30, 2019				Respectfully Submitted,


By /s/*Sean S. Pak*  

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*