Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC | CASE NO. 3:19-cv-04238-MMC |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES** |
| vs. | |
| VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ | **Hearing** **Date: January 10, 2020** **Time: 9:00 a.m.** |
| Defendants. | **Judge: Hon. Maxine M. Chesney** **Courtroom: 7, 19th Floor** **450 Golden Gate Avenue** **San Francisco, CA 94102** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 10, 2020 at 9:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Maxine M. Chesney at the United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs PROOFPOINT, INC. and CLOUDMARK LLC will and hereby do move for an order compelling Defendants VADE SECURE, INCORPORATED; VADE SECURE SASU; and OLIVIER LEMARIÉ to provide substantive responses to Plaintiffs' First Set Of Interrogatories To Defendant Lemarié and First Set Of Common Interrogatories To Defendants; as well as to produce the categories of documents and things identified in Plaintiffs' First Set Of Requests For Production To Defendants.  Plaintiffs bring this Motion pursuant to Civil Local Rule 37-2 and Federal Rule of Civil Procedure 37.

Plaintiffs respectfully request the Court order Defendants to provide responses and produce the categories of documents identified in Plaintiffs' discovery requests, pursuant to the Federal Rules, within fourteen (14) days of the Court's order.

Plaintiffs' Motion is based on this Notice of Motion and Motion; the following memorandum of points and authorities; the supporting declaration of Jodie W. Cheng and accompanying exhibits; all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Plaintiff may present to the Court.

This Motion is made following the conferences of counsel pursuant to Civil Local Rule 37-1(a), which took place on at least October 29, 2019, November 1, 2019, November 7, 2019, and December 9, 2019.

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND ...........................................2

    a.   The Parties ...............................................................................................2

    b.   Plaintiffs' Discovery Requests to Defendants ........................................3

    c.   Defendants' Objection to All Discovery Requests on the Basis of
        French Law ...............................................................................................5

    d.   Defendants Submit Declarations and Factual Assertions To This
        Court ........................................................................................................7

III.  RELEVANT LEGAL STANDARDS ...................................................................8

    a.   Motion to Compel ...................................................................................8

    b.   Applicability of Foreign Law ..................................................................8

    c.   French Blocking Statute ..........................................................................9

    d.   The Hague Convention .............................................................................9

IV.   ARGUMENT .....................................................................................................10

    a.   Defendants' Conduct Proves Their Lack of Concern For, and
        Absence of "Fear of Prosecution," Under French Law ...............................10

    b.   The French Blocking Statute Carries No Realistic Risk of
        Prosecution ............................................................................................12

    c.   Defendants' Use of Foreign Law as Both Sword and Shield Causes
        Significant and Ongoing Undue Prejudice to Plaintiffs .............................13

    d.   Defendants, and Their Discovery Obligations, Are Not Subject To
        French Law .............................................................................................14

    e.   Even If Defendants Are Subject To French Law, U.S. Supreme
        Court and Ninth Circuit Precedent Instructs That Discovery Should
        Nevertheless Proceed Under the Federal Rules .........................................16

V.    CONCLUSION ..................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Adidas (Canada) Ltd. v. SS Seatrain Bennington, Nos.*,
  80 Civ. 1911, 82 Civ. 0375, 1984 WL 423 (S.D.N.Y. May 30, 1984)......................................... 13

4
*In re Advocat Christopher X.*,
  Cour de cassation [Cass. Crim.], Paris, crim., Dec. 12, 2007, Bull. crim., No. 7168 (Fr.) ........ 13

5

6
*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  278 F.R.D. 51, 2010 WL 2976220 (E.D.N.Y. 2010) .................................................... 22, 23, 24

7
*In re Air Crash at Taipei*,
  211 F.R.D. 374 (C.D. Cal. 2002)........................................................................................ 19, 23

8

9
*In re Anscheutz & Co., GMbH*,
  754 F.2d 602 (5th Cir. 1985),
  *cert. granted and judgment vacated*, 483 U.S. 1002 (1987) ....................................................... 10

10

11
*AstraZeneca LP v. Breath Ltd.*,
  No. 08-cv-1512(RMB/AMD), 2011 WL 1421800 (D.N.J. Mar. 31, 2011) ............................... 19

12
*Autodesk, Inc. v. ZWCAD Software Co.*,
  No. 5:14-CV-01409-EJD, 2015 WL 1928184 (N.D. Cal. Mar. 27, 2015)...................... 9, 17, 22

13

14
*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ...................................................................................................... 9

15
*Bodner v. Banque Paribas*,
  202 F.R.D. 370 (E.D.N.Y. 2000)............................................................................................... 14

16

17
*BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*,
  No. 14-cv-01009-WHO(MEJ), 2014 WL 3965062 (N.D. Cal. Aug. 13, 2014)... 9, 17, 19, 23, 24

18
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, No. 07-cv-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23,
  2014).................................................................................................... 13, 14, 17, 18, 22

19

20
*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
  No. CV 16-02368-ODW(RAOx), 2017 WL 3433542
  (C.D. Cal. Feb. 22, 2017) ........................................................ 10, 17, 19, 22, 23

21

22
*Fenerjian v. Nong Shim Co., Ltd*,
  No. 13CV04115WHODMR, 2016 WL 245263 (N.D. Cal. Jan. 21, 2016).................................. 23

23

24
*Finjan, Inc. v. Zscaler, Inc.*,
  No. 17CV06946JSTKAW, 2019 WL 618554 (N.D. Cal. Feb. 14, 2019)................................... 23

25
*Garneau v. City of Seattle*,
  147 F.3d 802 (9th Cir. 1998) ...................................................................................................... 9

26

27
*Haynes v. Kleinwefers*,
  119 F.R.D. 335 (E.D.N.Y. 1988)............................................................................................... 24

28

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,
   105 F.R.D. 435 (S.D.N.Y. 1984) ............................................................................. 21

*Jones v. Deutsche Bank AG*,
   No. 04-cv-5357-JW(RS), 2006 WL 648369 (N.D. Cal. Mar. 10, 2006) ................................... 10

*Nat'l Acad. Of Recording Arts & Scis., Inc. v. On Point Events, LP*,
   256 F.R.D. 678 (C.D. Cal. 2009) ............................................................................. 16

*Optrics, Inc. v. Barracuda Networks, Inc.*,
   No. 17-CV-04977-RS(TSH), 2019 WL 5485890 (N.D. Cal. Oct. 25, 2019) ........................... 23

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ............................................................. 17, 18, 19, 20, 23

*Roberts v. Heim*,
   130 F.R.D. 430 (N.D. Cal. 1990) ............................................................................. 24

*SEC v. Minas de Artemisa*,
   150 F.2d 215 (9th Cir. 1945) ............................................................................. 20

*Société Nationale Industrielle Aérospatiale v. U.S. District Court*,
   482 U.S. 522 (1987) ............................................................. 10, 17, 18, 21, 22, 23, 24

*Thompson v. Gonzales*,
   No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436 (E.D. Cal. Sept. 27, 2016) ........................... 15

*Trejo v. Macy's, Inc.*,
   No. 5:13-cv-02064-LHK(PSG), 2014 WL 1091000 (N.D. Cal. Mar. 17, 2014) ........................ 9

*Valois of Am., Inc. v. Risdon Corp.*,
   183 F.R.D. 344 (D. Conn. 1997) ............................................................................. 17, 22

*U.S. v. Vetco*,
   691 F.2d 1281 (9th Cir. 1981) ............................................................................. 20

*Waymo LLC v. Uber Techs., Inc.*,
   No. C 17-00939 WHA, 2017 WL 2123560 (N.D. Cal. May 15, 2017) ................................... 23

**Statutory Authorities**

28 U.S.C. § 1780 ............................................................................. 10

**Rules and Regulations**

Fed. R. Civ. P. 1 ............................................................................. 23

Fed. R. Civ. P. 26(b) ............................................................................. 9

Fed. R. Civ. P. 26(f) ............................................................................. 3

Fed. R. Civ. P. 37 ............................................................................. 1

Local Rule 37-2 ............................................................................. 1

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Civil Local Rule 37-2 and Federal Rule of Civil Procedure 37, Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC ("Cloudmark") (collectively, "Plaintiffs") respectfully submit the following memorandum of points and authorities in support of their Motion for an order compelling Defendants Vade Secure, Incorporated ("Vade, Inc."), Vade Secure SASU ("Vade SASU"), and Olivier Lemarié (collectively, "Defendants") to provide substantive responses and produce documents and things in response to Plaintiffs' first sets of discovery requests propounded October 10, 2019.

## I.    INTRODUCTION

Over two months after the commencement of fact discovery and Plaintiffs' service of discovery requests, and with only *44* business days remaining until the parties' Settlement Conference, Defendants have failed to produce a single document or answer a single interrogatory in this action. Rather, Defendants have argued and objected to Plaintiffs' Discovery Requests on the grounds that French law prevents Defendants from providing any information that could be used as evidence in a foreign judicial proceeding. Tellingly, despite Defendants' purported "fear of prosecution" under French law, they nevertheless submitted factual representations and at least *six* witness declarations, including from French employees in opposition to Plaintiffs' Motion for Preliminary Injunction and Expedited Discovery (Dkt. 72)—all without any apparent concern for French law. Thus, Defendants cannot be genuinely concerned with prosecution under French law, as they already appear to be in violation of the very statutes they claim prevent them from participating in discovery. Indeed, courts in this District have recognized that the laws in France present no real risk of prosecution from participation in U.S. discovery.

Moreover, as an initial matter, the Defendants and discovery at issue are not subject to French law. Specifically, Vade, Inc. is a California corporation with its principal place of business within this District and Olivier Lemarié is an individual domiciled and employed within this District. And, according to Defendants, information related to the technologies at issue were purportedly developed and therefore originate from the United States, and later incorporated into products sold by Vade SASU to U.S. customers. Even if Defendants' discovery obligations are prohibited or

somehow affected by French law (which they are not), both the U.S. Supreme Court and the Ninth Circuit have explained in prior precedent that discovery in U.S. litigation proceeds under the Federal Rules without regard to foreign blocking statutes—especially the French Blocking Statute.

Despite these points, Defendants continue to refuse or forestall participating in discovery in this action—discovery that is necessary for Plaintiffs to refute or verify the representations Defendants have made in the pleadings and motion practice in this case, leading to significant undue prejudice to Plaintiffs.  Indeed, using French law as both a sword and a shield, Defendants have set forth numerous factual allegations and witness statements in opposition to Plaintiffs' motion for preliminary injunction, yet refuse to provide any discovery that would allow Plaintiffs to actually investigate and validate Defendants' allegations.  Moreover, Magistrate Judge Kim has set a Settlement Conference for February 19, 2019, by which time she expects the parties to have completed significant discovery—yet Defendants have not provided **any** discovery to date. Plaintiffs have attempted to work with Defendants on an appropriate discovery plan in this case, but it has become apparent that Defendants are only interested in delay.  Plaintiffs have no choice but to seek relief from the Court and therefore respectfully ask the Court to order Defendants to provide the discovery sought in Plaintiffs' discovery requests.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### a.  The Parties

#### i.    Plaintiffs Proofpoint and Cloudmark

Proofpoint is a cybersecurity company founded and headquartered in Silicon Valley.  Since its founding in 2002, Proofpoint has maintained offices and conducted business within this District. In 2017, Proofpoint acquired Cloudmark, another cybersecurity organized under U.S. laws and with offices in San Francisco and Silicon Valley.

#### ii.   Defendants Lemarié; Vade, Inc., and Vade SASU

Defendant Lemarié has been domiciled and employed within this District since at least 2004. (*E.g.*, Dkt. 74 ¶¶ 2-5, 17; Dkt. 72-6 ¶ 3 ("For around January 2004 to March 2010, I worked as the Chief Technical Officer and Founder of Bizanga, Inc. ('Bizanga') in San Mateo, California.").) From 2010 through 2016, Lemarié was employed as Vice President of Gateway Technology at

Cloudmark and worked out of its San Francisco office during his tenure.  (Dkt. 31-10.)  In 2017, Lemarié joined Defendant Vade, Inc. as Chief Technology Officer.

Defendant Vade, Inc. is a corporation organized under the laws of California with its admitted principal place of business in San Francisco.  (*E.g.*, Dkt. 74 ¶ 15; Dkt. 75 ¶ 15.)  Defendant Vade SASU has offices in France and, according to its corporate website, sells and supports its products through its various locations within the United States.  (*E.g.*, www.vadesecure.com.)  Vade SASU's products implement technologies allegedly developed or patented by Vade, Inc., and which concern the central issues in this case.  (*E.g.*, Dkt. 72-3 (Decl. of Sebastien Goutal) ¶ 2 ("As part of my role with Vade, Inc. I have invented anti-spear phishing technologies, which have been the subject of several patents and some of these technologies have been implemented in [Vade Secure, SASU] products.").)

**b.  Plaintiffs' Discovery Requests to Defendants**

On October 9, 2019, the parties conferred pursuant to Federal Rule of Civil Procedure 26(f) and subsequently commenced fact discovery.  While planning for discovery during the conference, Defendants did not raise any concerns about foreign law preventing or otherwise affecting their ability to comply with discovery obligations in this case.  Thus, eager to obtain discovery[1] and the return of their confidential information, Plaintiffs served discovery requests on Defendants the next day, October 10, 2019.  Specifically, Plaintiffs propounded Requests for Production ("RFPs") and Interrogatories to all Defendants, as well as a single Interrogatory to Defendant Lemarié (collectively, the "Discovery Requests" or "Requests").  (Ex. 1 (Plaintiffs' First Set of Requests for Production to Defendants (Nos. 1–30), Oct. 10, 2019); Ex. 2 (Plaintiffs' First Set of Interrogatories to Defendants (Nos. 1–2), Oct. 10, 2019); Ex. 3 (Plaintiffs' First Set of Interrogatories to Defendant Olivier Lemarié (No. 1), Oct. 10, 2019).)

The Requests seek basic information about, *inter alia*, the relationships between Defendants, and their business activities.  For example, RFP No. 26 requests:

---

[1] For example, on September 25, 2019, Plaintiffs brought a motion seeking and explaining their need for expedited discovery.  (Dkt. 31 (*e.g.*, "Plaintiff has an urgent need for expedited discovery.").)

1       DOCUMENTS sufficient to show the business relationship and

2       corporate organization between [Vade, Inc.] and [Vade SASU];

3       INCLUDING, but not limited to, corporate organization charts and

4       identification of directors.

5 Similarly, RFP Nos. 12 and 14 request production of agreements and communications between

6 Defendant Lemarié, a California resident and employee, and either Defendant company, including

7 U.S.-entity Vade, Inc. (Ex. 1 at 9 (RFP No. 12: "All AGREEMENTS between Olivier Lemarié and

8 VSI or VSS."); *id.* (RFP No. 14: "All COMMUNICATIONS between Olivier Lemarié and VSI or

9 VSS before March 1, 2017.").)

10      The Requests also seek documents and information relating to representations Defendant

11 Vade, Inc. made to the U.S. Patent & Trademark Office during the prosecution of its U.S. patent

12 application that eventually issued as U.S. Patent No. 10, 284, 579 (the "'579 Patent"), currently

13 assigned to Vade, Inc.:

14       DOCUMENTS sufficient to show the conception and reduction to

15       practice of the alleged invention described in U.S. Patent

16       Application No. 15/466,588 or U.S. Patent No. 10,284,579.

17 (Ex. 1 at 9 (RFP No. 11).)

18       Describe in detail the conception, reduction to practice,

19       development, drafting, prosecution, and maintenance of U.S. Patent

20       Application No. 15/466,588, which issued as U.S. Patent No.

21       10,284,579 . . . .

22 (Ex. 2 at 6 (Interrogatory No. 2).)

23      Plaintiffs' Requests also ask for the return of Plaintiffs' confidential R&D information that

24 is in the custody and control of Defendant Lemarié, and held in his account on Evernote.com. (Dkt.

25 1 ¶ 94-95, 102.) Organized under Delaware law and headquartered in Redwood City, CA, Evernote

26 Corporation provides a platform for people to create, share, and store notes and documents. (*E.g.*,

27 www.evernote.com/about, accessed on Nov. 4, 2019 ("Evernote Corporation creates products and

28 services that have helped people better focus on what matters most . . . . Evernote Corporation is a

global, privately-owned company headquartered in Redwood City, California.").)  For example, RFP No. 20 asks for the login credentials for the Evernote account in which Defendant Lemarié holds or held Plaintiffs' confidential information.  (Ex. 1 at 10 (RFP No. 20).)

Notably, the single Interrogatory propounded exclusively to Lemarié asks him to describe his interactions with Evernote materials that were created during his employment or related to his work at Cloudmark, located in San Francisco, CA.  (Ex. 3 at 6 (Interrogatory No. 1); *see, e.g.*, Dkt. 30-13 at 1.)

**c.  Defendants' Objection to All Discovery Requests on the Basis of French Law**

Over a week after serving the Discovery Requests on Defendants, Plaintiffs received a letter from Defendants' counsel asking Plaintiffs to withdraw the entirety of the Requests.  (Ex. 4 (Oct. 18, 2019 J. Utley ltr to S. Pak).)  According to Defendants, complying with Plaintiffs' Requests— even to obtain discovery from Vade, Inc., a U.S. corporation, and Lemarié, an individual domiciled in this District—violates and is prohibited by French law.  (*Id*. at 1 (*e.g.*, "[T]he French Blocking Statute prohibits the Defendants from simply producing non-objectionable documents and information in response to the Discovery Requests as would typically be the case . . . .").)  According to Defendants, any discovery from Defendants must be obtained through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").  (*Id*. ("Accordingly, because Defendants cannot comply with the Discovery Requests in their current posture without violating French law, Defendants request that Plaintiffs withdraw the Discovery Requests and instead request documents and information in accordance with the Hague Convention.").)

On October 23rd, Plaintiffs responded to Defendants, explaining that French law does not apply to, or otherwise prevent compliance with, Defendants' U.S. discovery obligations and does not warrant withdrawal of all Discovery Requests.  (Ex. 5 (Oct. 23, 2019 S. Pak ltr to J. Utley).)  Plaintiffs also shared legal authorities and case law supporting their position.  (*Id*.)  The parties met and conferred on October 29th, at which time Defendants' counsel indicated that they intend to seek a motion for protective order excusing all Defendants from responding to Plaintiffs' Discovery Requests in their entirety.  Defendants never filed such a motion.

1   Plaintiffs conferred with Defendants on this issue on November 1st and again on November
2   7th, asking that Defendants provide some description of the logistical and procedural details for
3   proceeding under the Hague Convention. (*E.g.*, Ex. 6 (Nov. 7, 2019 J. Cheng eml to M. Mackenzie)
4   ("I understand that Defendants are considering making a proposal to proceed with discovery under
5   Article 17 of the Hague Convention . . . we are open to reviewing Defendants' proposal when it's
6   ready. I'm sure you can understand that, without knowing exactly what Defendants are proposing,
7   we can't fully consider or agree to a proposal.").) During both discussions, Defendants' counsel
8   was unable to provide any further logistical details, except to say that the Hague Convention
9   procedures are highly flexible.

10   The next day, on November 8th, the parties participated in the Case Management Conference.
11   Defendants' counsel represented to the Court that proceeding under the Hague Convention would
12   result in no substantive differences in scope, expense, or delay, compared to discovery under the
13   Federal Rules. In the days immediately after the Case Management Conference, Plaintiffs again
14   asked Defendants to provide their proposal so that Plaintiffs could determine whether in fact the
15   Hague Convention procedures would result in any substantive differences in discovery or additional
16   expense or delay or prejudice to Plaintiffs. (Ex. 7 (Nov. 11, 2019 S. Pak eml to B. Rankin) ("Given
17   that Plaintiffs' discovery requests were served nearly a month ago, and that we are all eager to get
18   discovery going in this case, we ask that you provide at least a preliminary written proposal by
19   tomorrow afternoon."); Ex. 8 (Nov. 14, 2019 S. Pak eml to M. Mackenzie) ("However, we asked
20   for written details regarding Defendants' proposal over a week ago and still have not received any
21   information regarding any aspect of the proposal . . . Mr. Rankin represented at the CMC that
22   Defendants would provide the details regarding their proposal to proceed under Article 17 on
23   Monday as well; and, yet Monday has come and gone and you are now indicating that you will
24   revert 'as soon as possible.' We cannot continue to delay discovery—which has been open for
25   nearly two months now.").)

26   Finally, on November 15th, Defendants provided, for the first time, their written proposal
27   containing some logistical and procedural details. (Ex. 9 (Nov. 15, 2019 B. Rankin ltr to S. Pak).)
28   After conducting their own independent investigation of the French law and the Hague Convention

procedures, Plaintiffs responded to Defendants' proposal and asked for clarifications to bring Defendants' proposal substantively in-line with discovery under the Federal Rules.  (Ex. 10 (Nov. 25, 2019 S. Pak ltr to B. Rankin) ("[W]e have reviewed Defendants' proposal under Article 17 and provide the following clarifications and revisions to bring the proposal substantively in line with U.S. discovery practices and the Federal Rules.").)  In their letter, Plaintiffs asked that Defendants provide responses and clarifications by December 3rd so as to avoid further delay to discovery.  December 3rd came and went without any substantive response from Defendants.  On December 9th, Plaintiffs informed Defendants of their intention to bring this motion.  (Ex. 11 (Dec. 9, 2019 J. Cheng eml to M. Mackenzie).)  On the evening of December 12th, after Plaintiffs again reiterated their intention to bring this matter before the Court, Defendants provided their response.  (Ex. 12 (Dec. 12, 2019 B. Rankin ltr to S. Pak).)  Defendants response, for the first time, conceded the many differences in discovery pursuant to Hague Convention procedures as compared to the Federal Rules.  (*Id.* (*e.g.*, "Conducting discovery through a Commissioner appointed under Article 17 is not meant to (and cannot) serve as a perfect substitute for discovery under the Federal Rules of Civil Procedure.  Defendants will work with Plaintiffs where practicable to conduct discovery in a manner comparable to discovery under the Federal Rules of Civil Procedure **subject to the express confines of Article 17 and any applicable French and/or European law.**"  "You next requested Defendants to 'please confirm that the source code review computer will be made available for review in the United States.'  Defendants cannot provide this confirmation at this time."  "Defendants cannot guarantee that Plaintiffs 'will still be afforded all the same processes and protections that would be available for depositions conducted under the Federal Rules and U.S. law' . . . .  Defendants **can** confirm that individuals domiciled and/or residing in the United States will, if otherwise unchallenged, be presented for deposition in the United States; however, these depositions may still be subject to the authorization of the French Ministry of Justice and the appointed Commission will be required to attend the deposition.") (emphases original).)

### d.  Defendants Submit Declarations and Factual Assertions To This Court

On December 6th, Defendants filed their opposition to Plaintiffs' Motion for Preliminary Relief ("Opposition").  (Dkt. 72.)  In support of their Opposition, Defendants made a number of

factual assertions regarding, *inter alia*, the features and design of products in development, the development efforts for released products, plans for future product releases, their negotiations with third parties to acquire patents, and recruiting of former Cloudmark employees.  (*E.g.*, Dkt. 72 at 3-6.)  Even more tellingly, Defendants attached six declarations from employees of Vade, Inc. and Vade SASU, including a declaration from Defendant Lemarié.  (Dkts. 72-3, 72-5, 72-6, 72-7, 72-8, 72-9.)  Five of the employee-declarants attested to being employed by Vade SASU and provided details regarding their work at the company.  (Dkts. 72-3, 72-5, 72-7, 72-8, 72-9.)  Four of the employee-declarants stated that they currently work in the Paris, France offices of Vade SASU. (Dkts. 72-5, 72-7, 72-8, 72-9.)  Defendants provided this information—nearly all of which concern topics related to Plaintiffs' Discovery Requests—without any concern to the French Blocking Statute or any other foreign law.  In fact, Defendants did not even mention foreign law or the Hague Convention their Opposition or any of the supporting declarations or exhibits.

## III.     RELEVANT LEGAL STANDARDS

### a.   Motion to Compel

A party "may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense."  FED. R. CIV. P. 26(b).  "Relevance for purposes of discovery is defined very broadly."  *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998).  On a motion to compel, the moving party need only show that "its request satisfies the relevancy requirements of Rule 26(b)(1)."  *Trejo v. Macy's, Inc.*, No. 5:13-cv-02064-LHK (PSG), 2014 WL 1091000, at *1 (N.D. Cal. Mar. 17, 2014) (citation omitted).  The party resisting discovery is "required to carry a heavy burden" of showing why discovery should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Trejo*, 2014 WL 109100, at *1.

### b.   Applicability of Foreign Law

A party seeking to rely on foreign law to avoid or excuse compliance with U.S. discovery obligations bears the burden to demonstrate that the foreign law bars compliance.  *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14-cv-01009-WHO (MEJ), 2014 WL 3965062, at *4 (N.D. Cal. Aug. 13, 2014) ("As the party seeking to rely on German and European Union law, it is Searchmetrics' burden to demonstrate that these laws bar production of the documents at issue.")

(citations omitted).  To prevail, the party "is thus required to 'provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law' in order to meet this burden." *Id*. (citations omitted).  Similarly, "a party seeking to apply the Hague Convention procedures has the burden to demonstrate appropriate reasons for employing Convention procedures." *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 1928184, at *2 (N.D. Cal. Mar. 27, 2015) (citations omitted).

### c.  French Blocking Statute

France has enacted a "blocking statute," which, similar to those of other countries, "is a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery request." *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No. CV 16-02368-ODW(RAOx), 2017 WL 3433542, at *5 (C.D. Cal. Feb. 22, 2017) (internal quotation marks omitted) (quoting *In re Anscheutz & Co.*, GMbH, 754 F.2d 602, 614 (5th Cir. 1985), *cert. granted and judgment vacated*, 483 U.S. 1002 (1987)).  The French Blocking Statute provides:

> Subject to treaties or international agreements and existing laws and regulations, it is forbidden to any persons to request, research or communicate, in writing, orally or in any other form, any economic, industrial, financial or technical documents or information, leading to the construction of evidence for the purpose of foreign judiciary or administrative proceedings, or within the framework of these.[2]

### d.  The Hague Convention

The Hague Convention provides its signatory nations, which include the United States and France, guidelines and procedures for obtaining evidence from one nation for use in judicial proceedings in another nation.  Mar. 18, 23 U.S.T. 255, T.I.A.S. No. 7444 (codified at 28 U.S.C. § 1780).  "The United States Supreme Court, however, has squarely held that use of Hague Convention procedures is optional not mandatory, and that it need not even be looked to as a first

---

[2]  Loi 68–678 du 26 juillet 1968 relative à la communication de documents et renseignements d'ordre économique, commercial, industriel, financier out technique à des personnes physiques ou morales étrangères [Act no. 68–678 dated 26 of July 1968, related to the disclosure to foreign natural or juridical persons, of economic, commercial, industrial, financial or technical documents and information], art. 1st bis.

resort." *Jones v. Deutsche Bank AG*, No. 04-cv-5357-JW(RS), 2006 WL 648369, at *3 (N.D. Cal. Mar. 10, 2006) (citing *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 536-40 (1987) (American litigants are not required to "first resort to [Hague] Convention procedures before initiating discovery under the Federal Rules. In many situations, [Hague] Convention procedures would be unduly time consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules.")).

## IV.   ARGUMENT

### a.  Defendants' Conduct Proves Their Lack of Concern For, and Absence of "Fear of Prosecution," Under French Law

Defendants' argument that they cannot comply with the Discovery Requests for "fear of prosecution" under the French Blocking Statute is belied by their voluntary factual submissions to this Court through their Opposition briefing and *six* attached employee declarations.  (*Compare* Ex. 4 (Oct. 18, 2019 J. Utley ltr to S. Pak); Ex. 11 (Dec. 9, 2019 M. Mackenzie eml to J. Cheng); *with* Dkts. 72, 72-3, 72-5, 72-6, 72-7, 72-8, 72-9.)  When it behooves them, like when attempting to defeat Plaintiffs' motion for preliminary injunction, Defendants expressed no qualms or reservations with providing information and submitting supporting evidence for consideration by this Court— the very conduct that the French Blocking Statute purportedly prohibits.  As described above, Defendants submitted *six* declarations—from Defendant Lemarié, another current employee of Defendant Vade, Inc., and four current employees of Vade SASU who are located in France. Defendants' Opposition brief itself contains a number of factual assertions that are directly related to the topics raised in Plaintiffs' Discovery Requests, including the features and design of unreleased products, product development process, and Defendants' efforts to obtain U.S. patent rights.

For example, Plaintiffs' Discovery Requests seek information regarding Defendant Lemarié's handling of Plaintiffs' confidential information that was electronically stored on Evernote, a Delaware corporation that is headquartered within this District, and created while Lemarié was employed by Cloudmark based in San Francisco, CA.  (*Supra* Section II.b; Ex. 1 at 10 (RFP No. 20); *id*. (RFP No. 21); Ex. 3 at 6 (Interrogatory No. 1)).  Despite Defendants' repeated objection to these (and all) Requests, Defendants submitted a declaration from Lemarié containing

selective details regarding the Evernote materials.  To illustrate, Interrogatory No. 1 to Lemarié asked him to "[i]dentify and describe in detail all of your interactions, since June 1, 2016, with every Evernote account, project, notebook, and note created while you were employed at CLOUDMARK . . . ."  Tellingly, Lemarié's recently submitted declaration submitted in support of Defendants' Opposition provides several, responsive details regarding his Evernote account and materials (including the creation of materials, the names and roles of other Cloudmark employees who may have contributed to the creation/maintenance of the materials, and, most notably, Lemarié's removal of the materials from Evernote).  (Dkt. 71-10, ¶¶ 7–11.)

Similarly, the Discovery Requests seek production of documents "sufficient to show the commencement and scope" of employment at Vade SASU for Xavier Delannoy, Guillaume Séjourné, and Alexandre Boussinet, all of whom are former Cloudmark employees.  (Ex. 1 at 9 (RFP No. 13).)  As with the rest of the Discovery Requests, Defendants objected to this RFP, citing the French Blocking Statute.  Yet, in Defendants' Opposition, they submitted declarations from each of these French nationals regarding their recruitment and employment with Vade SASU, while continuing to forestall production of documents and things that could verify their attestations.  (*E.g.*, Dkt.72-8 (Decl. of Xavier Delannoy) ¶ 2 ("I am the Vice President of Engineering of [Vade SASU] and work in Paris, France.  I have been employed with [Vade SASU] since June 2016.  From June 2016 to October 2016, I held the position of Quality Assurance Manager.  I took my current role as Vice President of Engineering in October 2016."), ¶ 9 ("In March 2016, I received a LinkedIn message from Georges Lotigier regarding joining [Vade SASU]."); Dkt. 72-9 (Decl. of Guillaume Séjourné) ¶ 2 ("I am the Manager, Technical Publications, Training & Certification ('Technical Publications Manager'), of Vade Secure SASU ('Vade SASU') and work in Paris, France.  I have been employed with Vade SASU since December 2016."); ¶ 12 ("In mid to late September 2016, I had a casual meet up with Xavier Delannoy . . . Xavier suggested that I consider Vade SASU, although I already had other opportunities available to me as mentioned above.") Dkt. 72-7 (Decl. of Alexandre Boussinet) ¶ 2 ("I am the Lead Technical Architect, of [Vade SASU] and work in Paris, France.  I have been employed with [Vade SASU] since July 2016.").)

Defendants voluntarily submitted the responsive information to this Court without any concern for the French Blocking Statute, French law, and foreign privacy laws, and without undergoing any Hague Convention procedures.  In fact, none of Defendants' papers even mention these issues.  Perhaps most tellingly, if there was any truth to Defendants' claim that French law prohibits them from providing information in a U.S. judicial proceeding, Defendants could have moved for a protective order or otherwise brought the issue to this Court.  But they did not. Defendants had plenty of time to seek judicial intervention in advance of filing their Opposition; they were given *72* days to respond to Plaintiffs' motion for preliminary injunction.  (Dkts. 31, 63.) Moreover, Defendants had threatened to move for a protective order on these issues as early as October 18, 2019.  Yet, apparently by December 6th, when Defendants' filed their Opposition and supporting declarations, the French Blocking Statute and foreign law were no longer a concern to Defendants or their foreign employees.[3]

**b.  The French Blocking Statute Carries No Realistic Risk of Prosecution**

Defendants' disregard for French law in providing declarations and other factual information under the Federal Rules is, in fact, consistent with this District's finding that the French Blocking Statute "does not subject defendants to a realistic risk of prosecution."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. 07-cv-5944-SC,  2014 WL 5462496, at *6–7 (N.D. Cal. Oct. 23, 2014).  "[T]he legislative history of the Blocking Statute 'gives strong indications that it was never expected or intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts.'"  *Id*. (quoting *Adidas (Canada) Ltd. v. SS Seatrain Bennington*, Nos. 80 Civ. 1911, 82 Civ. 0375, 1984 WL 423, at *3 (S.D.N.Y. May 30, 1984)).  In fact, there has been only one case in which a French court prosecuted a violation of the Blocking Statute for particularly egregious and fraudulent conduct against a French non-party.  *In re Advocat Christopher X.*, Cour de cassation [Cass. Crim.], Paris, crim., Dec. 12,

---

[3]   Further, to the extent that Defendants claim that other foreign privacy laws prevent participation in U.S. judicial proceedings or the transmission of information across borders, it should be noted that Defendants also submitted a declaration from their technical expert who is located in the United Kingdom.

2007, Bull. crim., No. 7168 (Fr.).[4]  Notably, the French Blocking Statute has never been enforced in circumstances such as this, where parties to a U.S. action, subject to personal jurisdiction of the court, were obligated to respond to and participate in discovery under the U.S. Federal Rules.  (*See infra* Section IV.d.)

Accordingly, courts in this District have found that the low risk of prosecution under the French Blocking Statute militates towards ordering discovery under the Federal Rules.  For example, in *In re CRT*, the court acknowledged "the potential for criminal sanctions if [the French entities] comply with discovery requests outside the Hague Convention process" and was even presented with "a letter from the French Ministry of Foreign Affairs stating that the provisions of the Blocking Statute are 'mandatory.'"  2014 WL 5462496, at *6.  Nevertheless, the court agreed with the established precedent of "many courts [that] have discounted that risk in the context of the French Blocking Statute, noting that the Blocking Statute 'does not subject defendants to a realistic risk of prosecution . . . .'"  *Id.* (quoting *Bodner v. Banque Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000)) (citation omitted).

### c.  Defendants' Use of Foreign Law as Both Sword and Shield Causes Ongoing Delay and Significant Undue Prejudice to Plaintiffs

Any further delay or argument from Defendants on the basis that French law prevents their participation in discovery must be rejected and prevented.  At least once every week over the past two months, Plaintiffs have attempted to resolve these issues with Defendants.  Plaintiffs have already suffered undue prejudice due to this delay.  But now, with Plaintiffs' response to the Opposition due on December 20th and Magistrate Judge Kim's instruction (Dkt. 69) that the parties

---

[4]  *Christopher X* involved a French attorney who fraudulently obtained evidence from a French non-party for use in litigation in California.  *In re CRT*, 2014 WL 5462496, at *7.  No such facts exist here.  "*Christopher X* did not involve discovery requests made in the California litigation nor did it involve a court order compelling production under protest."  *Id.*

complete necessary discovery before the Settlement Conference currently scheduled for February

19, 2020[5], Plaintiffs can tolerate no further delay or undue prejudice.[6]

When attempting the persuade the Court in their favor, Defendants make factual representations and submit supporting declarations.  But, at the same time, Defendants refuse and forestall Plaintiffs' ability to obtain the discovery needed to test Defendants' assertions.  For example, although Defendants have submitted declarations from multiple U.S. and France-based employees, as well as Defendant Lemarié himself, Defendants nevertheless claim that French law prevents these individuals from being deposed in this matter, leaving Plaintiffs with no other option than to accept as true all unverified factual allegations from Defendants or seek the Court's intervention.  Seeing as that the former option contravenes the fundamental tenets of the U.S. judicial system, Plaintiffs asks that the Court prevent Defendants from invoking foreign law as an end run around this Court's jurisdiction and U.S. law.

### d.  Defendants, and Their Discovery Obligations, Are Not Subject To French Law

Setting aside the practical realities of the French Blocking Statute, as a fundamental matter, Defendants are not subject to French law nor does French law bar compliance with the Discovery

---

[5]  At Defendants' request, the parties have been in discussions regarding possibly seeking an even earlier conference date.

[6]  Defendants have similarly delayed resolution of other preliminary discovery, such as the negotiation and entry of a Protective Order and ESI Order, which is the subject of forthcoming/co-pending motion practice.  (*E.g.*, Ex. 6 (Nov. 7, 2019 J. Cheng eml to M. Mackenzie) ("Draft ESI and Protective Orders:  We haven't received any feedback from Defendants since we sent our drafts on Oct. 10.  Given that Defendants have had our drafts for over a month and our joint CMC statement says we'll be filing these before or immediately after the CMC tomorrow—when do you think we can expect comments/edits?"); Ex. 7 (Nov. 11, 2019 S. Pak eml to B. Rankin) ("Additionally, please provide your redlines to the proposed stipulated protective and ESI orders, which you have now had over a month to review."); Ex. 13 (Dec. 3, 2019 J. Cheng eml to M. Mackenzie) ("In order for this case to proceed expediently and to track the schedule set by the Court, we need to receive Defendants' positions on all pending issues regarding the Article 17 proposal, Protective Order, and ESI Order by this Thursday, Dec. 5th."); Ex. 14 (Dec. 11, 2019 I. Lordgooei eml to M. Mackenzie) ("We waited for Defendants' 'proposed revisions to the orders themselves,' but never received them.  Accordingly, we went ahead and made revisions to the proposed protective and ESI orders and provided those to you . . . .  We are happy to work with you to reach a compromise on the disputed items, but cannot continue to abide by Defendants' delays, which is why, in addition to the PO/ESI Order revisions, we also attempted to crystallize the remaining disputes in the position statements attached to my December 9 email.").)

Requests at issue.  ***First***, Defendant Vade, Inc. is a corporation organized under the laws of California and Defendants have admitted that its principal place of business is located in San Francisco, CA; Vade, Inc. is not a French national.  Simply, there is no meritorious reason why French law would apply to prevent a wholly U.S. entity from complying with U.S. law.  (Dkt. 74 ¶ 15; Dkt. 75 ¶ 15.)  Moreover, Vade, Inc. avails itself of U.S. intellectual property rights by applying for and owning U.S. patents, some of which are relevant to this action.  Thus, Vade, Inc. is obligated to produce any and all discovery within their actual possession or custody, pursuant to the Federal Rules of Civil Procedure.[7]  *E.g.*, *Thompson v. Gonzales*, No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436, at *2 (E.D. Cal. Sept. 27, 2016) ("Defendants have a duty to disclose documents in their actual possession or custody, regardless of their legal entitlement to them . . . .") (citations omitted); *Nat'l Acad. Of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 n.1 (C.D. Cal. 2009).

       ***Second***, and similarly, French law does not apply to Defendant Lemarié or otherwise prohibit him from complying with U.S. discovery obligations.  Lemarié has been domiciled, employed (including with Vade, Inc.), and owns real property—within this District for over a decade.  (Dkt. 74 ¶¶ 2-5, 17.)  In fact, the key events in this action, and the subject of the Discovery Requests, concern Lemarié's employment with Plaintiff Cloudmark and Defendant Vade, Inc.— both of which occurred in San Francisco, CA.  (Dkt. 1; *e.g.*, Ex. 3 at 6 (Interrogatory No. 1, "Identify and describe in detail all of your interactions, since June 1, 2016, with every Evernote account, project, notebook, and note ***created while you were employed at CLOUDMARK*** . . . .") (emphasis added); Ex. 1 at 10 (RFP No. 20, "Administrator login credentials . . . to access . . . the DNS project notebook on Evernote.com that was created ***while Olivier Lemarié was employed at CLOUDMARK***.") (emphasis added); *id*. (RFP No. 21).)  Thus, the French Blocking Statute does not apply to bar Lemarié's compliance with the Discovery Requests under the Federal Rules.

---

    [7]  Moreover, under the Federal Rules, Vade, Inc.'s discovery obligations extend to discoverable information concerning or originating from its foreign parent company, Defendant Vade SASU, or its current employee, Defendant Lemarie, if the information is within the possession or custody of Vade, Inc.

**Third**, Defendant Vade SASU's French law has no applicability to the Discovery Requests at issues.  For example, according to Defendants, nearly all discovery relevant to Defendants' purported independent creation of Plaintiffs' trade secret technologies appear to originate from U.S. Vade, Inc. within the United States—not Vade SASU or France—and only incorporated into products for sale by Vade SASU.  (*See, e.g.*, Dkt. 72-3 ¶ 2 ("As part of my role with Vade, Inc., I have invented anti-spear phishing technologies, which have been the subject of several patents and some of these technologies have been implemented in [Vade SASU] products.").)  Although a French entity, Vade SASU markets and sells its products and has offices—including its North American headquarters—in the United States.  (*E.g.*, https://www.vadesecure.com/en/legal-notices/ ("The        site        is        edited        by:        The        company        Vade        Secure        SASU"); https://www.vadesecure.com/en/company/ ("Vade Secure at a Glance . . . North American HQ: Boston, MA"); *see also* https://www.vadesecure.com/en/ ("Vade Secure is a global leader . . . protecting 600 million mailboxes in 76 countries.").  Tellingly, Vade SASU's website even        encourages        interested        parties        to        contact        its        U.S.        offices. (https://www.vadesecure.com/en/company/contact/ (first-listed locations are in San Francisco, CA and Boston, MA); *see also* https://www.vadesecure.com/en/support/.)  Given the claims in this case, the subject matter of the Requests, and Vade SASU's domestic activities, French law does not block Vade SASU's obligations under the Federal Rules.

**e. Even If Defendants Are Subject To French Law, U.S. Supreme Court and Ninth Circuit Precedent Instructs That Discovery Should Nevertheless Proceed Under the Federal Rules**

Even if French law somehow applies to Defendants or affects their discovery obligations, "it is well settled that such [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *BrightEdge Techs.*, 2014 WL 3965062, at *2 (quoting *Aérospatiale*, 482 U.S. at 544, n.29) (internal quotations omitted); *see also Autodesk Inc.*, 2015 WL 1928184, at *1; *Connex R.R.*, 2017 WL 3433542, at *11 (citing *Aerospatiale*, 482 U.S. at 536–42).  In fact, under the framework

set forth by the Supreme Court and Ninth Circuit, discovery in this case should proceed under the Federal Rules instead of being barred under French law.

"Whether Plaintiffs may seek discovery under the FRCP or whether they must proceed in accordance with the Hague Convention in light of the French Blocking Statute is determined by an analysis of the various factors identified by the Supreme Court in [*Aérospatiale*] and the Ninth Circuit in *Richmark*." *Connex R.R.*, 2017 WL 3433542, at *12; *see also Autodesk Inc.*, 2015 WL 1928184, at *2 ("[T]he particular facts, sovereign interests and likelihood that resort to [Hague Convention] procedures will prove effective" favors conducting discovery under the Federal Rules instead of the Hague Convention) (citing *Aérospatiale*, 482 U.S. at 544–46; *see also Valois of Am., Inc. v. Risdon Corp.*, 183 F.R.D. 344, 346 (D. Conn. 1997)).   These factors, which were first suggested by the Restatement of Foreign Relations Law of the United States § 437(1)(c) to guide analysis of international comity, are discussed below.  *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474–75 (9th Cir. 1992); *In re CRT*, 2014 WL 5462496, at *3; *see also Aérospatiale*, 482 U.S. at 544 n.28.  If the balance of these factors tips in favor of applying foreign law, then the party requesting discovery must use Hague Convention procedures to obtain the discovery located abroad.  *See Richmark*, 959 F.2d at 1478; *Aérospatiale*, 482 U.S. at 542.

i.   The Importance of the Discovery to the Litigation

The Ninth Circuit instructs that,"[w]here the evidence is directly relevant," this factor militates toward permitting discovery to proceed under the Federal Rules, as opposed to barred by the foreign blocking statute. *Richmark*, 959 F.2d at 1475.  In this context, courts have interpreted the "relevance" standard to be consistent with the meaning set forth in Rule 26(b)(1).  *In re CRT*, 2014 WL 5462496, at *5 (although "some [] materials sought, while relevant, are perhaps less important to this litigation," this factor still "weigh[ed] strongly in favor of granting the motion to compel").  In contrast, if the "the evidence sought is cumulative of existing evidence" there is insufficient basis to order foreign discovery outside of the Hague Convention.  *Id.*

Here, Defendants are broadly objecting to all Plaintiffs' Discovery Requests, which are the first and only discovery requests propounded in this litigation thus far.  (Exs. 16–18 [Defendants' Responses & Objections to Discovery Requests].)  As such, they are not cumulative of any existing

evidence in this case.  As Plaintiffs' initial Requests, they seek critical and fundamental information in several categories:  (1) the return of Plaintiffs' confidential, product-development information (*e.g.*, Ex. 1 at 10–12 (RFP Nos. 20–21, 24, 30), Ex. 3 at 6 (Interrogatory to Lemarié No. 1)), and an accounting of any use or dissemination by Defendants; (2) information regarding the corporate structure and business relationships among Defendants (*e.g.*, Ex. 1 at 11 (RFP No. 26); (3) technical details and source code regarding Defendants' accused products (*e.g.*, Ex. 1 at 7–8 (RFP Nos. 1, 3–4)); and (4) information describing the development of Defendants' accused products and patent, including the involvement of Plaintiffs' former employees who were exposed to Plaintiffs' information during the course of their employment, that goes towards the extent of Defendants' misappropriation (*e.g.*, Ex. 1 at 7–11 (RFP Nos. 2, 5–11, 13, 18–19, 28).  Overall, Plaintiffs' Requests seek salient facts that are essential to, and satisfies Rule 26(b)(1)'s test for relevance for, claims of trade secret misappropriation and breach of contract involving a former employee and his subsequent employer.  Thus, this factor favors proceeding with discovery under the Federal Rules.

### ii.  The Degree of Specificity of the Requests

This factor "examines the extent to which the discovery requests will burden the party form whom production is sought . . . ."  *BrightEdge Techs.*, 2014 WL 3965062, at *3 (quoting *AstraZeneca LP v. Breath Ltd.*, No. 08-cv-1512 (RMB/AMD), 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011) (citing *In re Air Crash at Taipei*, 211 F.R.D. 374, 378 (C.D. Cal. 2002))).  "Generalized searches for information whose disclosure is prohibited under foreign law are discouraged."  *Richmark*, 959 F.2d at 1475.  "However, where a request is reasonable in scope and tailored to the discovery sought (even if it seeks a great deal of information), an objection based only on the request's illegality will not favor nondisclosure."  *Connex R.R.*, 2017 WL 3433542, at *12 (citing *Richmark*, 959 F.2d at 1475).

Plaintiffs' Requests are specific to the elements of misappropriation (of trade secrets) and breach (of contract).  The Requests provide guidance on the specific information sought by, for examples, referencing web addresses and accounts (*e.g.*, Ex. 1 at 10 (RFP Nos. 20–21)); limiting requests to specific products (*e.g.*, Ex. 1 at 7–8 (RFP Nos. 1–6)) and relevant time periods (*e.g.*, Ex. 1 at 9–11 (RFP Nos. 14–18, 23)); targeting a specific patent and patent application at issue (*e.g.*, Ex.

1 at 9 (RFP No. 11)); and providing names of Defendants' employees who may have responsive

information (*e.g.*, Ex. 1 at 8–10 (RFP Nos. 7–10, 12–18)).  Like similar requests in other cases, the

Discovery Requests here are narrowly tailored and sufficiently specific to the claims and issues in

this case.  *See, e.g.*, *BrightEdge Techs.*, 2014 WL 3965062, at *3 (discovery seeking "the

development, functionality, use and modifications made to the accused products" was sufficiently

specific in a patent infringement case); *Connex R.R.*, 2017 WL 3433542, at *6–7.  Thus, this factor

also favors proceeding with discovery under the Federal Rules.

iii.   <u>Location of Information and Parties / Whether the Information Originated in the</u>
<u>United States</u>

If "all the information to be disclosed (and the people who will be deposed or who will

produce the documents) are located in a foreign country," this factor would "weigh[] against

disclosure, since those people and documents are subject to the law of that country in the ordinary

course of business." *Richmark*, 959 F.2d at 1475.

However, that is not the situation here.  This case involves two U.S.-domiciled parties,

Defendants Vade, Inc. and Lemarié who conduct business from within this District and, as discussed

above, are in the possession of responsive information and will be deposed within the United States.

(*Supra* Sections II.a, IV.d.)  Moreover, Defendant Vade SASU, by its own representations to the

public through its website, markets and sells email security products, including the released accused

products, in the United States and which incorporate technology allegedly developed by U.S.entity

Vade, Inc.  (*Id*.)  Given the nature of the Requests (e.g., seeking information concerning a U.S.

employee, Defendant Lemarié; products sold in the United States; and representations made to the

U.S. Patent & Trademark Office), as well as the Defendants' domestic activities, at least some

portion of the discovery is located in the United States.  Thus, it is ***not*** the case that "***all*** the

information to be disclosed and the people who will be deposed or who will produce the documents

are located in a foreign country," and this factor favors proceeding with discovery under the Federal

Rules. *See Richmark*, 959 F.2d at 1475.

iv.   <u>Availability of Alternative Means to Secure the Information</u>

This factor considers whether "the information sought can easily be obtained elsewhere" or somehow that avoids implicating foreign law. *Richmark*, 959 F.2d at 1475.  In the Ninth Circuit, "the alternative means must be 'substantially equivalent' to the requested discovery." *Id.* (citing *U.S. v. Vetco*, 691 F.2d 1281, 1290 (9th Cir. 1981); *SEC v. Minas de Artemisa*, 150 F.2d 215, 219 (9th Cir. 1945).

***First***, although Defendants contend that the Hague Convention provides an alternative channel for Plaintiffs' Discovery Requests, Defendants concede that Hague Convention procedures "cannot[] serve as a perfect substitute for discovery under the Federal Rules of Civil Procedure." (*Compare* Ex. 4 (Oct. 18, 2019 J. Utley ltr to S. Pak) at 1–2 ("Defendants acknowledge that Plaintiffs may still obtain discovery in this matter from Defendants by following the procedures required by the Hague Convention . . . .  Defendants request that Plaintiffs withdraw the Discovery Requests and instead request documents and information in accordance with the Hague Convention.") *with* Ex. 12 (Dec. 12, 2019 B. Rankin ltr to S. Pak) ("Defendants will work with Plaintiffs where practicable to conduct discovery in a manner comparable to discovery under the Federal Rules of Civil Procedure ***subject to the express confines of Article 17 and any applicable French and/or European law.***" (emphasis original).)  In fact, Defendants have admitted a number of ways in which even their proposal would substantially and substantively differ from discovery under the Federal Rules.  (*E.g.*, *id.* ("You next requested Defendants to 'please confirm that the source code review computer will be made available for review in the United States.'  Defendants cannot provide this confirmation at this time."  "Defendants cannot guarantee that Plaintiffs 'will still be afforded all the same processes and protections that would be available for depositions conducted under the Federal Rules and U.S. law' . . . .  Defendants can confirm that individuals domiciled and/or residing in the United States will, if otherwise unchallenged, be presented for deposition in the United States; however, these depositions may still be subject to the authorization of the French Ministry of Justice and the appointed Commission will be required to attend the deposition.") (emphasis omitted).)  Moreover, the Supreme Court has expressly held there is no requirement to "first resort to [Hague] Convention procedures whenever discovery is sought from a foreign litigant"; and any such

requirement "would be unwise" and "inconsistent with the overriding interest in the 'just, speedy, and inexpensive determination' of litigation in [U.S.] courts." *Aérospatiale*, 482 U.S. at 542–43.

*Second*, "the Hague Convention **does not apply at all** to the discovery of evidence available in the United States." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 105 F.R.D. 435, 444 (S.D.N.Y. 1984) (collecting cases) (emphasis added). "[T]he Convention itself is entitled 'Convention on the Taking of Evidence Abroad' and is, on its face, addressed solely to the procedures to be used for the gathering of evidence within the borders of countries other than those in which the legal proceeding is pending" and "most typically against an individual or entity not subject to the jurisdiction of the American court." *Id*. at 442–43 (citations omitted). Thus, the Hague Convention does not offer any method by which Plaintiffs can obtain the documents and information located within the United States. Given Defendants' extensive domestic activities (*supra* Sections II.a, IV.d), Defendants will be deprived of critical discovery, including, e.g., the return of Plaintiffs' confidential information taken by Defendant Lemarié (*e.g.*, Ex. 1 at 10 (RFP No. 20)) if the Court allows Defendants' reliance on the French Blocking Statute to bar discovery.

*Third*, even for foreign discovery, courts have generally "expressed skepticism about the effectiveness of resort to the Hague Convention," and found the time and expense required under Hague Convention procedures not "substantially equivalent" to discovery under the Federal Rules. E.g., *Autodesk Inc.*, 2015 WL 1928184, at *6 ("Further, discovery under the Hague Convention is too slow to be an effective alternative to the Federal Rules of Civil Procedure."); *Connex R.R.*, 2017 WL 3433542, at *14; *Aérospatiale*, 482 U.S. at 542 (noting that in some cases, the Hague Convention's procedures may be "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules"); *In re CRT*, 2014 WL 5462496, at *5–6 (finding the Hague Convention procedures unavailable as a practical matter in the case at hand); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 53 (E.D.N.Y. 2010) ("Although there is no dispute that the Hague Convention affords an alternative means for securing the information, the outcome of a request pursuant to the Convention is by no means certain . . . ."); *Valois*, 183 F.R.D. at 349 ("[I]t is generally recognized that procedures under the Hague Convention are far more cumbersome than under the Federal Rules of Civil Procedure.").

**Fourth**, if Plaintiffs had to proceed with their Discovery Requests under Hague Convention procedures, it is unlikely they will be able to obtain "substantially equivalent" information compared to proceeding under the Federal Rules.  For example, in circumstances like this in which the information sought includes source code and related technical documentation, Hague Convention procedures may be especially unavailing.  *Autodesk Inc.*, 2015 WL 1928184, at *6 ("In particular, the Hague Convention procedures are not an effective alternative because these procedures may limit discovery to exclude relevant source code and related documents."); Ex. 1 at 7–9 (RFP Nos. 1–2, 7–10) (for source code).

**Fifth**, Hague Convention procedures are particularly insufficient for obtaining evidence from France.  This District has further noted that "France is particularly slow to execute Hague Convention requests, and when they are executed, often the results are unsatisfactory."  *In re CRT*, 2014 WL 5462496, at *6.  It has also been suggested that "the standard for discovery in France under the Hague Convention is narrower than that under the FRCP," such that "forcing Plaintiffs to pursue discovery under the Hague Convention would require them to forego some discovery to which they otherwise would be entitled."  *Connex R.R.*, 2017 WL 3433542, at *14.

At bottom, the Hague Convention is not a viable, "substantially equivalent" alternative to obtain the information sought by the Discovery Requests, especially because Plaintiffs have urgent need for the responsive information, including the return of their confidential information (described in Dkt. 31 (Plaintiffs' Motion for Preliminary Injunction and Expedited Discovery)).  Thus, this factor favors proceeding with discovery under the Federal Rules.

v.   Balance of National Interests

This factor "assess[es] the interests of each nation in requiring or prohibiting disclosure, and determine[s] whether disclosure would 'affect important substantive policies or interests' of either the United States or [the foreign state]."  *Richmark*, 959 F.2d at 1476.  For courts in the Ninth Circuit, it "is the most important factor."  *Id.*

"The United States obviously has a substantial interest in 'vindicating the rights of American plaintiffs.'"  *BrightEdge Techs.*, 2014 WL 3965062, at *5 (quoting *In re Air Crash at Taipei*, 211 F.R.D. at 379 (citing *Richmark*, 959 F.2d at 1477)).  In particular, it is well established that the

United States has "strong" and "compelling" interest in enforcing and "vindicating intellectual property rights, and [] prohibiting unfair competition." *E.g.*, *Finjan, Inc. v. Zscaler, Inc.*, No. 17CV06946JSTKAW, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019) ("strong" interest in "protecting American patents"); *Optrics, Inc. v. Barracuda Networks, Inc.*, No. 17-CV-04977-RS(TSH), 2019 WL 5485890, at *2 (N.D. Cal. Oct. 25, 2019) ("compelling interest in enforcing [U.S. trademark laws]"); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017) ("Inasmuch as Waymo may have rights in valid trade secrets . . . the public has an interest in vindicating those rights."). In enforcing its laws, American courts have an "overriding interest in the 'just, speedy, and inexpensive determination' of litigation." *Aérospatiale*, 482 U.S. at 543 (quoting FED. R. CIV. P. 1.). But the United States' "'substantial interest in fully and fairly adjudicating matters before its courts' [is] 'only realized if the parties have access to relevant discovery.'" *Fenerjian v. Nong Shim Co., Ltd*, No. 13CV04115WHODMR, 2016 WL 245263, at *5 (N.D. Cal. Jan. 21, 2016) (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. at 54). Fair adjudication includes "seeing that all litigants are treated fairly and equally in its courts," and it would be "unfair and inequitable to permit [foreign parties] to take discovery of [U.S.] Plaintiffs pursuant to the Federal Rules of Civil Procedure while prohibiting Plaintiffs from taking such discovery of them." *Roberts v. Heim*, 130 F.R.D. 430, 438 (N.D. Cal. 1990) (quoting *Haynes v. Kleinwefers*, 119 F.R.D. 335, 338 (E.D.N.Y. 1988)).

On the other hand, while France has expressed an "interest in controlling foreign access to information within its borders, and in protecting its citizens from foreign discovery practices" through enactment of the French Blocking Statute, it has been enforced only once and under very different circumstances. (*Supra* Section IV.b.) This District has found that foreign interest in enforcing blocking statutes "is entitled to less deference since it is not a substantive rule of law at variance with the law of the United States, but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts." *BrightEdge Techs.*, 2014 WL 3965062, at *5 (quoting *In re Air Cargo Shipping Serv. Antitrust Litig.*, 2010 WL 2976220, at *2 (citing *Aérospatiale*, 482 U.S. at 544 n.29)). Thus, the balance of national interests favors proceeding with discovery under the Federal Rules.

vi.   Conclusion Under *Aérospatiale/Richmark* Analysis

In sum, all factors favor disclosure of information responsive to Plaintiffs' Discovery Requests, pursuant to the Federal Rules, despite Defendants' concerns regarding the French law and Blocking Statute.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue an order compelling Defendants to comply with and produce the information sought by Plaintiffs' Discovery Requests within fourteen (14) days of the Court's order.

DATED:  December 13, 2019                    Respectfully Submitted,


By /s/Jodie W. Cheng

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*

1

## CERTIFICATE OF SERVICE

2

      I hereby certify that a true and correct copy of the above and foregoing document has been

3

served on December 13, 2019 to all counsel of record who are deemed to have consented to

4

electronic service via the Court's CM/ECF  system.

5

Executed on December 13, 2019, at San Francisco, California.

6

7

8

                              */s/ Jodie W. Cheng*
                              Jodie W. Cheng

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28