Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>vs.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC<br><br>**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' OBJECTIONS TO REPLY EVIDENCE AND ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUR-REPLY**<br><br><u>Hearing</u><br>Date:  January 17, 2020<br>Time:  9:00 a.m.<br>Judge:  Hon. Maxine M. Chesney<br>Courtroom:  7, 19th Floor<br>    450 Golden Gate Avenue<br>    San Francisco, CA 94102 |

As an initial matter, Defendants' Motion for Administrative Relief (Dkt. 87 ("Objs.")) fails to comply with the Local Rules, which require "a stipulation under Civil L.R. 7-12 or . . . declaration that explains why a stipulation could not be obtained" (Civil L.R. 7-11(a)), and should be denied for that reason alone.  In fact, Defendants made no effort to confer with Plaintiffs, whose only notice of the issues raised in Defendants' Motion was from the filing itself.  Regardless, Defendants' Motion should be denied on its merits.  In particular, Plaintiffs' Reply in support of preliminary injunction (Dkt. 82 ("Reply")) does not raise any new theories and, instead, responds to arguments raised in Defendants' Opposition (Dkt. 72 ("Opp.")) by reiterating and offering additional specificity on positions presented in Plaintiffs' opening brief (Dkt. 31 ("Br.")).  Moreover, the Ninth Circuit and courts in this District have rejected the same type of objections now lodged by Defendants, particularly in the context of a preliminary injunction motion.  Thus, Defendants' objections should be overruled, and their request for a sur-reply—which is neither necessary nor appropriate, particularly because it would further delay determination of preliminary relief—should be denied.

## I.   Plaintiffs' Reply Does Not Raise Any New Theories or Changed Positions

Plaintiffs' Reply does not raise new arguments or change Plaintiffs' positions.  Instead, it properly reaffirms the theories in Plaintiffs' opening brief and responds to Defendants' Opposition with focused specificity and clarification regarding Plaintiffs' positions.  Simply, Plaintiffs' opening brief discusses, *inter alia*, the creation of the asserted trade secrets, the bases for trade secret protection, and ensuing irreparable harm if preliminary relief were denied.  (Br. at 14–16, 22–23[1].)  In opposition, Defendants made two primary arguments regarding (1) the public availability or Defendants' independent creation of the asserted trade secrets, and (2) the purported lack of evidence substantiating the irreparable harm described in Plaintiffs' opening brief.  (Opp. at 1.)  Plaintiffs' Reply debunks Defendants' arguments by showing—through Defendants' own assertions advanced for the first time in their Opposition—that Plaintiffs' trade secrets are neither publicly available nor independently created by Defendants, and that Plaintiffs would suffer irreparable harm without preliminary injunctive relief.  (*E.g.*, Reply at 2–7, 12–15.)

---

[1]   For ease of reference between public/redacted and sealed versions, all pincites refer to the document pagination and not the CM/ECF header.

Defendants first allege that Plaintiffs' Reply sets forth a new, "expanded list of [trade secret] functionalities in a 'unified architecture.'"  (Objs. at 2.)  But the enumerated features forming a "unified architecture" of Plaintiffs' anti-spear phishing trade secrets are not new and has been consistently described by Plaintiffs.  (*E.g.*, Dkt. 1 ¶ 32 ("These proprietary solutions incorporated a combination of technical features in a unified architecture including: [listing features including "heuristic rules" and "statistical models and scoring"]); *id.* at ¶ 55 (describing trade secrets "as proprietary combinations" of features, including "heuristic rules" and "statistical dispersion models and quantitative scoring").).  Plaintiffs Br. again explained that the anti-spear phishing trade secrets relate to combining these enumerated technical features into a unified architecture to effectively identify and filter malicious spear phishing attacks.  (*E.g.*, Br. at 16 ("specific combinations of elements that together form effective techniques," referencing and citing the elements enumerated at Dkt. 1 ¶ 55).)  Indeed, this Court acknowledged the same list of "features comprising [the] claimed combination" in a "unified architecture" in denying Defendants' motion to dismiss.  (Dkt. 61 at 1–2.)  Failure to respond to Plaintiffs' well-established, timely assertions can only be attributed to Defendants' oversight.  There is no basis to strike Plaintiffs' Reply at 2:24–5:6 or 12:18–19.

Defendants next allege that Plaintiffs' Reply raises new issues concerning Plaintiffs' MTA-related trade secrets.  (Objs. at 3–4.)  It does not.  Plaintiffs have consistently set forth the position that their trade secrets include the "advanced ***functionalities***" and "unique ***implementation details***, like source code, that enable the Cloudmark MTA" to confer the benefits described in Plaintiffs' briefing.  (Br. at 15–16 (emphases added); Reply at 5.)  These are the very benefits Defendants admitted are embodied in their NextGen MTA.  (Opp. at 6–7, 15–16.)  At bottom, Plaintiffs' Reply simply maps Plaintiffs' trade secrets to the functionalities Defendants admit are embodied in their NextGen MTA.  (Reply at 5–7, 9–10.)  Moreover, Plaintiffs' Reply is directly responsive to Defendants' Opposition.  Specifically, Plaintiffs refute Defendants' assertion that Plaintiffs' trade secrets were widely known by explaining that the very same functionalities developed by Plaintiffs (including Lemarié during his employment at Cloudmark) and that comprise Plaintiffs' trade secrets are described in Defendants' Opposition as "novel" MTA functionalities "different in kind from other commercial MTAs"—thus, they could not have been widely known.  (Opp. at 7; Reply at 5–

7.)  Plaintiffs' expert, Dr. Nielson, thus properly submitted a declaration explaining that these functionalities, which include cloud deployment, enable Plaintiffs' MTA to achieve the benefits that describe their MTA-related trade secrets—further indicating that Plaintiffs are ***not*** shifting or otherwise modifying the scope of their trade secrets.  (Dkt. 82-2; Reply at 5; *see also* L.R. 7-3(c).)

Similarly, it is not a new fact (or argument) that Plaintiffs' MTA-related trade secrets were developed using lessons and know-how from their anti-spear phishing technology.  (*Cf.* Objs. at 4.)  As Plaintiffs explained in their opening brief (and numerous supporting exhibits), the development of Cloudmark's MTA contemplated email security and filters, including anti-spear phishing filtering.  (*E.g.*, Dkt. 31 at 6 ("Cloudmark . . . buil[t] and offer[s] a commercial, proprietary MTA with advanced email security features . . . ."), 7 ("Cloudmark continued refining the MTA . . . including enhancing the features needed to . . . support continuously evolving email filters.").)  In fact, Dr. Nielson's declaration (submitted with Plaintiffs' opening brief) explains the development processes for email filters and MTA platforms are related and lend to cross-pollination of concepts.[2]  (Dkt. 31-3 ¶¶ 80–86, 98.)  Thus, there is also no basis to strike Plaintiffs' Reply at 5:14–7:26, 9:17–19, or 9:28–10:16.

Finally, Plaintiffs' Reply corrects mischaracterizations in Defendants' Opposition alleging that Plaintiffs rely only on a purported "presumption of irreparable harm."  (Opp. at 19–22; Reply at 12–15.)  Rather, Plaintiffs' opening brief described the irreparable harm they would suffer absent preliminary relief—and the Reply simply provides more specificity for those arguments.  (*E.g.*, *id.*; Br. at 22–23.)

## II.   Defendants' Evidentiary Objections Should Be Overruled

Defendants also seek to strike Plaintiffs' exhibits based on various evidentiary objections (e.g., authenticity, hearsay), yet the Ninth Circuit has expressly rejected such arguments in the context of a preliminary injunction motion.  *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  "Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."

---

[2]  That some of Plaintiffs' MTA-related trade secrets may have been\ inspired by confidential know-how learned from another project does not indicate a shift in Plaintiffs' position that Vade's products misappropriated Plaintiffs' trade secrets.  (*See* Br. at 17–19; Reply at 9–10.)

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (*en banc*)).

Further, despite still refusing to provide any discovery nearly three months after Plaintiffs served requests[3], Defendants' Opposition raises numerous factual allegations for the first time in this case that are substantiated solely through declarations from their witnesses.  In response, Plaintiffs' Reply explains how Defendants' allegations nevertheless support preliminary injunction and provides additional specificity regarding the points previously discussed in Plaintiffs' brief. (*E.g.*, Reply at 5–7, 13–14.)  Further, Plaintiffs' Reply includes evidence and legal support in response to Defendants' Opposition that are "specifically contemplate[d]" by the Local Rules.  Civil L.R. 7-3(c) ("Any reply to an opposition may include affidavits or declarations, as well as a supplemental brief or memorandum under Civil L.R. 7-4."); *Rodgers v. Fitzgerald*, No. 14-CV-00985-DMR, 2016 WL 4658974, at *8 (N.D. Cal. Sept. 7, 2016) ("The Local Rules specifically contemplate submission of evidence with a Reply . . . .").  In *Rogers*, the court held a declaration and exhibit submitted on reply were proper because the evidence "simply respond[s] to the assertions raised by Defendants in their opposition brief."  *Id*.  The same is true here.

For example, although Defendants argue they had no opportunity to respond to Exhibits 8–14 (Objs. at 5), the fact is that these documents—which are Vade's employment offers to and emails written by ***Defendants' own declarants***—respond to the allegations regarding the "poaching" of Plaintiffs' employees raised in Defendants' Opposition.  (Reply at 10–12.)  Similarly, Exhibits 1–7, 16 and 17 provide additional specificity for arguments already raised in Plaintiffs' opening brief, and are in response to Defendants' Opposition.  (*Supra* § I.)  Additionally, Exhibit 15 is responsive to Defendants' Opposition regarding Plaintiffs' irreparable harm.  (Br. at 22–23; Reply at 12–15.)  Indeed, courts in this District have determined evidence such as witness declarations substantiating

---

[3]  Citing (inapplicable) foreign law, Defendants continue to refuse all efforts at discovery—including by failing to provide any substantive responses to Plaintiffs' discovery requests, which seek the same types of information that Defendants freely provided with their Opposition.  (*See, e.g.*, Dkt. 78.)  That is, without concern for French law, Defendants submitted their Opposition containing numerous factual representations and declarations (including from French declarants), all of which suffer from the same evidentiary objections leveled by Defendants.

PLAINTIFFS' RESPONSE & OPPOSITION TO DEFENDANTS' OBJECTIONS AND MOTION FOR LEAVE TO FILE SUR-REPLY

1   irreparable harm (e.g., Ex. 15) are properly submitted on reply.  *See Advanced Rotorcraft Tech., Inc.*

2   *v. L-3 Commc'ns Corp.*, No. C 06-06470 WHA, 2007 WL 437682, at *5 (N.D. Cal. Feb. 6, 2007).

### III.  A Sur-reply is Unnecessary and Inappropriate and Would Cause Further Delay

4            There is also no good cause for a sur-reply because Defendants have already responded to

5   Plaintiffs' theories and arguments.  As explained above, the purportedly "new" theories were raised

6   in Plaintiffs' opening brief; the Reply evidence is necessary to respond to the Opposition;

7   Defendants were given an opportunity and, in fact, "already denied the truth of those arguments" in

8   their Opposition; and Plaintiffs' Reply "merely added additional facts to the same argument[s]."

9   *See Advanced Rotorcraft*, 2007 WL 437682, at *5.  Even if the Court grants leave to file a sur-reply,

10  no good cause exists to further delay determination of preliminary injunction past the January 17th

11  hearing date set by this Court months ago.  (Standing Order for Civil Cases (Chesney, J.) ¶ 8 ("[N]o

12  changes in the Court's schedule or procedures shall be made except by signed order of the Court

13  ***and only upon a showing of good cause***.") (emphasis original); Dkt. 63 at 2 (order setting hearing

14  on Jan. 17, 2020); *cf*. Objs. at 6 (proposing Jan. 17, 2020 deadline for sur-reply).)  Even excluding

15  holidays and weekends, Defendants are now asking for ***29 business days*** to file their sur-reply.  (*See*

16  Reply (filed Dec. 20, 2019)*.*)  But unspecified "absences" and "[un]availability," and the purported

17  "volume of new material," do not constitute "good cause" for a sur-reply deadline that exceeds ***the***

18  ***entire standard briefing schedule*** provided under the Local Rules.  (*See* L.R. 7-3 (a), (c); *cf*. Objs.

19  at 6.)  This is particularly true considering Defendants were already granted *a 73-day* extension for

20  their Opposition.  Throughout this case, Defendants have consistently and constantly introduced

21  delay upon delay, and should not be given yet further opportunity to impede determination of

22  preliminary relief, particularly where Plaintiffs have demonstrated "an urgent need for speedy

23  action" and "ongoing, worsening injuries."  *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211,

24  1213 (9th Cir. 1984) ("A preliminary injunction is sought upon the theory that there is an urgent

25  need for speedy action to protect the plaintiff's rights.") (citations omitted); *Cuviello v. City of*

26  *Vallejo*, 944 F.3d 816 (9th Cir. 2019); *Herb Reed Enterprises*, 736 F.3d at 1250 n.5.

### IV.  CONCLUSION

28           Based on the foregoing, Defendants' objections should be overruled and their motion denied.

DATED:  December 31, 2019                  Respectfully Submitted,


                                           By  */s/Sean S. Pak*_____

                                               QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
                                               Sean S. Pak (SBN 219032)
                                               seanpak@quinnemanuel.com
                                               Iman Lordgooei (SBN 251320)
                                               imanlordgooei@quinnemanuel.com
                                               50 California Street, 22nd Floor
                                               San Francisco, CA 94111
                                               Telephone: (415) 875-6600
                                               Facsimile: (415) 875-6700

                                               JWC LEGAL
                                               Jodie W. Cheng (SBN 292330)
                                               jwcheng@jwc-legal.com
                                               One Market Street
                                               Spear Tower, 36th Floor
                                               San Francisco, CA 94105
                                               Telephone: (415) 293-8308

                                               *Attorneys for Plaintiffs Proofpoint, Inc. and
                                               Cloudmark LLC*