| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>  Sean S. Pak (SBN 219032)<br>  seanpak@quinnemanuel.com<br>  Iman Lordgooei (SBN 251320)<br>  imanlordgooei@quinnemanuel.com<br>  50 California Street, 22nd Floor<br>  San Francisco, CA 94111<br>  Telephone: (415) 875-6600<br>  Facsimile: (415) 875-6700<br><br>**JWC LEGAL**<br>  Jodie W. Cheng (SBN 292330)<br>  jwcheng@jwc-legal.com<br>  One Market Street<br>  Spear Tower, 36th Floor<br>  San Francisco, CA 94105<br>  Telephone: (415) 293-8308<br><br>*Attorneys for Plaintiffs*<br>*Proofpoint, Inc. and Cloudmark LLC* | Colin H. Murray (SBN 159142)<br>  colin.murray@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA  94111-3802<br>Telephone: +1 415 576 3000<br>Facsimile:  +1 415 576 3099<br><br>Jay F. Utley (*Pro Hac Vice*)<br>  jay.utley@bakermckenzie.com<br>Bart Rankin (*Pro Hac Vice*)<br>  bart.rankin@bakermckenzie.com<br>Mackenzie M. Martin (*Pro Hac Vice*)<br>  mackenzie.martin@bakermckenzie.com<br>John G. Flaim (*Pro Hac Vice*)<br>  john.flaim@bakermckenzie.com<br>Chaoxuan Liu (*Pro Hac Vice*)<br>  charles.liu@bakermckenzie.com<br>Mark Ratway  (*Pro Hac Vice*)<br>  mark.ratway@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>1900 North Pearl Street, Suite 1500<br>Dallas, Texas 75201<br>Telephone: +1 214 978 3000<br>Facsimile:  +1 214 978 3099<br><br>*Attorneys for Defendants*<br>*Vade Secure, Incorporated; Vade Secure SASU; and Olivier Lemarié* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>        Plaintiffs,<br><br>    v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>        Defendants. | CASE NO. 3:19-cv-04238-MMC-RMI<br><br>**JOINT DISCOVERY STATEMENT FOR ENTRY OF PROTECTIVE ORDER** |

Honorable Judge Illman:

      Plaintiffs Proofpoint, Inc. and Cloudmark LLC and Defendants Vade Secure, Incorporated, Vade Secure SASU, and Olivier Lemarié file this Joint Discovery Statement for Entry of a Protective Order ("PO"). The parties have met and conferred regarding suitable provisions for the protective order in this case. As shown in the Proposed PO filed herewith, the parties have reached agreement on a majority of provisions, with the exception of the following disputes:

1. The parties dispute whether data privacy restrictions, including but not limited to the General Data Protection Regulation of the European Union (the "GDPR"), and laws of any foreign countries, including but not limited to the Loi 68-678 du 26 juillet 1968 relative à la communication de documents et renseignements d'ordre économique, commercial, industriel, financier ou technique à des personnes physiques ou morales étrangères [Law 68-678 of July 26, 1968, related to the disclosure to foreign natural or juridical person, of economic, commercial, industrial, financial or technical documents and information] (the "French Blocking Statute"), apply to documents, communications, electronically-stored information, source code, and data originating from France, or derived from such materials originating in France in this case (*see* PO at 2);

2. The parties dispute whether Source Code can be made available for inspection at Producing Party's offices in this District or other mutually agreeable location, or must be made available at a location that is reasonably convenient for the Receiving Party and its experts (*see* PO at 14);

3. The parties dispute whether a Producing Party must provide certain accommodations to streamline Source Code review, including installing review tools and providing a Work Product folder on the review computer that a Receiving Party may use to maintain notes and other files relating to its review of the Source Code (*see* PO at 15-16); and

4. The parties dispute whether a Producing Party shall provide requested Source Code printouts within four (4) business days of any request by the Receiving Party or thirty (30) business days (*see* PO at 17).

      The parties' respective proposals for each dispute are provided in-line in the Proposed PO (with bracketed entries labeled "Plaintiffs' Proposal" and "Defendants' Proposal"). The parties respectfully submit their position statements regarding each dispute, below, and request the Court issue a PO adopting one of the parties' proposals (e.g., by striking the language of the proposal being denied).

## PLAINTIFFS' STATEMENT

### I.     Dispute 1 – Applicability of French Law

As in the concurrently-filed Proposed ESI Order, Defendants have also interjected a separate statement in the Proposed Protective Order restating their position that discovery in this case should be governed under The Hague Convention due to concerns over French law, and claiming that the "Parties contemplate a separate procedural order, pursuant to The Hague Convention Article 17, to govern production of ESI that originates in France or derives from information, data, and/or documents originating in France" (*see* PO at 2).  As explained in Plaintiffs' position statement to the concurrently-filed Joint Statement for Entry of ESI Order, there is no reason to include a separate statement in the PO that sets forth what Defendants "contemplate" or that "Defendants do not intend to waive and do not waive their rights." Defendants' confusing and incorrect separate statement should be stricken.

### II.    Dispute 2 – Location of Source Code Review

Defendants propose that the location of source code review be unilaterally dictated by the party requesting review (i.e., the "Receiving Party") based solely on its and its experts' convenience, without regard for the party making the source code available (i.e., the "Producing Party").  Here, Defendants have disclosed an expert located in the United Kingdom.  Under Defendants' proposal, Plaintiffs would have to make code available for review in the UK—or multiple additional locations if Defendants disclose additional experts.  This will result in undue burden and cost associated with transporting and securing source code for review at one or more faraway locations.  Moreover, it is apparent Defendants intend their proposal to apply only to Plaintiffs' production of source code at a location convenient to Defendants.  Indeed, when it comes to their own source code, Defendants have indicated they cannot commit to producing their source code within the United States, let alone at a location convenient to Plaintiffs.  Defendants' one-sided and burdensome proposal should be denied.

On the other hand, Plaintiffs' proposal provides for source code inspection in either this district or some other *mutually* agreeable location.  Plaintiffs' proposal accommodates all parties, as it allows for the selection of a location that is practicable and workable for all parties.  However, to the extent the parties cannot work out a mutually agreeable location, Plaintiffs' proposal also recognizes that the parties and their counsel all have offices in this District, hearings may be held in this District that could potentially require the presence of the source code review computer, and trial in this case will also be held in this District—making this District the single most convenient location for all parties to host their source code review computers in this case.  There is no reason to subject a party to the burden of arranging for and hosting source code review at a potentially inconvenient and burdensome location—under Defendants' proposal—when the parties and their counsel all have a presence in this District.

### III.   Dispute 3 – Source Code Review Tools

Defendants have identified no reason for refusing to install review tools and other software that would promote efficient review of the parties' source code in this case.  Indeed, there would

be no cost or burden to the Producing Party from Plaintiffs' proposed provision that allows for installation of software tools, particularly as Plaintiffs' proposal requires the Reviewing Party to pay for said software. Similarly, there is no reason for refusing Plaintiffs' proposed language for a work product folder that would provide a secure location on the source code review computer for the parties' respective source code reviewers to document and track their progress throughout the review—which is likely to span multiple trips and many days or weeks.

In meet and confers, Defendants expressed concern about having to preserve the source code review computer, including the contents of the Plaintiffs' proposed work product folder, for an extended period of time, including through the litigation. To the extent Defendants believe it would be unduly burdensome to maintain the source code review computer through trial in this case, Plaintiffs disagree. Parties routinely maintain source code computers through at least expert discovery and often through trial. Indeed, issues often arise through expert discovery that require follow-up review of source code. Moreover, the expense of securing a source code review computer for an extended period of time is minimal—all that is needed is a locked cabinet or office to house a small desktop or laptop computer. Accordingly, the need to have the source code review computer available for inspection throughout this case is outweighed by these nominal expenses.

Defendants also expressed concern regarding inadvertent access to materials in the parties' work product folders. For example, Defendants' counsel indicated there could be a risk of a source code review computer connecting to a data network and the work product materials somehow being copied or accessed by unauthorized individuals. However, the source code review computer is a standalone, non-networked computer and there should be no way it could connect to a data network. Moreover, the proposed work product folder is a secure, password-protected folder that contains work product solely for purposes of use during the Receiving Party's ongoing source code review. Indeed, parties have employed similar procedures in other cases without any apparent issues. *See, e.g.*, *WeRide Corp. v. Huang et al.*, No. 5:18-cv-07233-EJD, Dkt. 127 at 20-21 (N.D. Cal. May 3, 2019). Defendants' concerns do not weigh in favor of denying Plaintiffs' proposal.

### IV.    Dispute 4 – Timing of Source Code Printouts

Defendants propose that source code printouts be produced within 30 days of a request. Defendants' proposal, however, would necessitate emergency motion practice whenever a party requires production of printouts on a timeline less than 30 days. For example, a rebuttal expert may need to further review the opposing party's source code and request additional printouts for his or her rebuttal report. Delays in obtaining those printouts would prejudice the party and its expert's ability to prepare the report. Similar concerns exist in the context of motion practice. Defendants' proposal ignores these contingencies and is likely to lead to prejudice.

Moreover, there is no good reason why a party would need 30 days to respond to a request for source code printouts. In the parties' meet and confers, Defendants indicated they could not commit to providing source code printouts or objections within four (4) business days due to the presence of their client in France. However, it is inexplicable why four business days is not enough time—regardless of the location of a client—to either (a) print and mail the requested materials, or (b) raise an appropriate objection.

Indeed, other protective orders in this District have granted similar provisions requiring production of source code printouts on the order of a few days to a week from the Receiving Party's request—not 30 days.  *See, e.g.*, *Cellspin Soft, Inc. v. Canon USA, Inc.*, No. 17-cv-05938-YGR (N.D. Cal. Feb. 27, 2018) (3 business days for production of source code printouts); *Immersion Corp. v. Fitbit, Inc.*, No. 17-cv-03886-LHK (N.D. Cal. Mar. 6, 2018) (4 business days for production of source code printouts); Rearden LLC v. Walt Disney Co., No. 17-cv-04006-JST (N.D. Cal. Aug. 30, 2018) (same); *Straight Path IP Group, Inc. v. Apple Inc.*, No. 3:16-cv-03582-WHA (N.D. Cal. Jan. 23, 2017) (7 business days for production of source code printouts).

Defendants' proposal is prejudicial, unworkable, and should be denied.

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Sean Pak*
Sean Pak

## DEFENDANTS' STATEMENT

### I.    Dispute 1 – Applicability of French Law

As argued in the Joint Letter Brief Regarding Plaintiffs' Motion to Compel, French law prohibits Defendants from disclosing information that originated in France for use in a non-French proceeding, unless produced in accordance with an international treaty, such as under Chapter II of The Hague Convention.  Loi 68-678 du 26 juillet 1968 relative à la communication de documents et renseignements d'ordre économique, commercial, industriel, financier ou technique à des personnes physiques ou morales étrangères [Law 68-678 of July 26, 1968, related to the disclosure to foreign natural or juridical person, of economic, commercial, industrial, financial or technical documents and information], art. 1 *bis*.  In addition, discovery of Defendants' information is subject to the General Data Protection Regulation of the European Union (the "GDPR").  Commission Regulation 2016/679, 2016 O.J. (L 119) (EU).  The European Union enacted the GDPR to protect individuals' personal information and data.  Defendants' proposal simply makes clear that the parties may conduct discovery and also operate in compliance with applicable French and European law, by acknowledging that discovery governed by the Protective Order may further be governed by a separate procedural order relating to The Hague Convention and/or may be subject to data privacy restrictions.  This does not prejudice Plaintiffs in any way, but rather adds clarity to the order, which may avoid any confusion or unnecessary disputes going forward.

### II.    Dispute 2 – Location of Source Code Review

Defendants' propose that source code be produced, if at all, "at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed." That language is directly from this Court's Model Protective Order for Litigation Involving

Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model PO"), which recommends using this language "if the Producing Party and/or its counsel are located in a different jurisdiction than counsel and/or experts for the Receiving Party." Model PO ¶ 9(c) n.15. That is the exact situation here. In contrast, Plaintiffs' proposal seeks the production of source code "in this District," irrespective of where the source code, receiving party, or reviewing party is located. *See* Model PO ¶ 9(c). Plaintiffs have not provided any basis for deviating from the Model PO under the circumstances, which sets forth presumptively reasonable conditions and should be adopted. *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 126078, *36 (N.D. Cal. Sep. 18, 2015).

Rather, Plaintiffs contend that Defendants' proposal unilaterally burdens Plaintiffs because they may have to produce source code over 5,000 miles away in a different country. Contrary to that assertion, Defendants have not named the experts who will review source code and so Plaintiffs' argument is not supported by the record. Further, it should be noted that by Plaintiffs' logic, their own proposal should be rejected because it would require Defendants to potentially produce source code that is located in France to an office located in the Northern District of California.

In contrast to the unilateral nature of Plaintiffs' proposed language, Defendants' proposal merely states that the production should be "reasonably convenient" for the Receiving Party and *not* restricted to a certain location. Defendants' proposal on its face applies to all parties since any party can seek to review source code. Thus, the equitable language from the Court's Model PO should be adopted here, and Plaintiffs have provided no support for a contrary result.

### III.   Dispute 3 – Source Code Review Tools

The parties have already agreed, consistent with the Model PO, that "any Source Code produced in discovery shall be made available for inspection in a format through which it can be reasonably reviewed and searched." Also consistent with the Model PO, the agreed source code provisions do not prohibit requests for installation of software tools to aid in reviewing and searching source code. As set forth below, Plaintiffs have not provided any justification for deviating from the Model PO with respect to their proposed software tools provisions, and so those provisions should be rejected. *Loop AI Labs*, 2015 U.S. Dist. LEXIS 126078, *36 . As further explained below, given the nature of a trade secrets case, the highly confidential nature of source code, and the burden imposed by Plaintiffs' broad proposal, Plaintiffs' deviations from the model order should be denied. *Id.* at *27-36; *Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 U.S. Dist. LEXIS 96724, *7-8 (N.D. Cal. Aug. 29, 2011); *Dig. Reg of Tex., LLC v. Adobe Sys.*, No. CV 12-01971-CW (KAW), 2013 U.S. Dist. LEXIS 23447, at *20 (N.D. Cal. Feb. 20, 2013).

Specifically, courts have recognized that requiring installation of certain software tools—e.g., compiler tools—or requiring the producing party to set up certain software systems or builds are unduly burdensome tasks for the producing party. *See Kelora*, 2011 U.S. Dist. LEXIS 96724, *7-8 (denying request to install software tools for source code review because "the benefits of making it easier for [the reviewing party] to evaluate the . . . source code do not outweigh the burdens associated with the proposal"); *Dig. Reg of Tex.*, 2013 U.S. Dist. LEXIS 23447, at *20-21. Here, Plaintiffs' proposal deviates from the Model PO and places the burden on the Producing Party to install *any* software tools "upon request of the Receiving Party" and without any mechanism for

the Producing Party to challenge requests to use software tools that are unreasonable or overly burdensome.  And in yet another departure from the Model PO, Plaintiffs define "software tools" to "encompass individual static files containing Source Code that may be imported for the sole purpose of conducting a Source Code comparison." It is unclear what Plaintiffs intend with this language, and Plaintiffs have provided no precedent for its usage here.  Plaintiffs' broad proposal, which would require the producing party to install *any* software tools—even if the requested tool falls in the category of tools courts have recognized as creating an extraordinary burden—should be rejected.  *Kelora*, 2011 U.S. Dist. LEXIS 96724, *7-8; *Dig. Reg of Tex.*, 2013 U.S. Dist. LEXIS 23447, at *20-21.

Similarly, Plaintiffs' "Work Product Folder" proposal, which requires the Producing Party to keep custody of *the other party's work product* presumably throughout the duration of discovery, also departs from the Model PO and places an unnecessary burden on the Producing Party.  Yet, Plaintiffs have not demonstrated why such a departure is necessary here.  Plaintiffs' position at best might result in incremental convenience for a Receiving Party, while imposing undue burdens on the Producing Party.  Plaintiffs have not argued that standard note-taking would prejudice them in any way, and the agreed provisions specifically allow the Receiving Party to take notes.

In view of the above, the presumptive reasonableness of the Model PO should result in its adoption, and Plaintiffs' additions to the Model PO should be rejected.  *See Loop AI Labs*, 2015 U.S. Dist. LEXIS 126078 at *36; *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C-11-05973 PSG, 2012 U.S. Dist. LEXIS 51724, *8 (N.D. Cal. Apr. 12, 2012).

The parties agree that a "Receiving Party shall be entitled to take notes relating to the Source Code during review of Source Code on the Source Code Computer, but may not copy the Source Code into the notes."  This provision does not authorize taking notes electronically on the Source Code Computer itself or any other computer because, as discussed above, doing so would require the Producing Party to keep custody of *the other party's work product*.  Defendants' proposal prohibiting electronic notetaking further safeguards against improper transfer of code lines from the highly-secure source code computer.  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 U.S. Dist. LEXIS 49201, at *30 (N.D. Cal. Jan. 30, 2012) (granting substantively identical language in a protective order); *Lincoln Elec. Co. v. ESAB Grp., Inc.*, No. 2:15-cv-1404-JRG-RSP (E.D. Tex. Jul. 8, 2016), ECF No. 65 at 10 (same).

### IV.     Dispute 4 – Timing of Source Code Printouts

In this case, the standard 30-day timeline provided under Federal Rule of Civil Procedure 34 is appropriate for producing source code printouts, as opposed to Plaintiffs proposal of merely 4 business days.  The authorities relied on by Plaintiffs are inapposite because none involves a non-U.S. entity as a party. Plaintiffs continue to disregard the international nature of this case, which complicates production of any kind, including source code.  Notably, should Plaintiffs later have an extenuating need for source code printouts on an expedited schedule, nothing in Defendants' proposal prevents Plaintiffs from meeting and conferring with Defendants, and, only if necessary, later seeking relief from the Court.  Accordingly, the Court should reject Plaintiffs' request and adopt Defendants' proposal, which is consistent with the Model PO.  *See Loop AI Labs*, 2015 U.S. Dist. LEXIS 126078 at *36; *see also Dynetix Design Sols.*, 2012 U.S. Dist. LEXIS 51724, at *8.

5                              Case No. 3:19-cv-04238-MMC-RMI
JOINT STATEMENT FOR ENTRY OF PROTECTIVE ORDER

Respectfully submitted,

Baker & McKenzie LLP

*/s/ Bart Rankin*
Bart Rankin

Attorney for Defendants

## **ATTESTATION OF CONCURRENCE**

I, Sean Pak, am the ECF user whose ID and password are being used to file this **JOINT DISCOVERY STATEMENT FOR ENTRY OF PROTECTIVE ORDER**.  Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated:  January 6, 2020        */s/ Sean Pak*
                               Sean Pak