1  Colin H. Murray (SBN 159142)
     colin.murray@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
3  San Francisco, CA  94111-3802
   Telephone:  +1 415 576 3000
4  Facsimile:  +1 415 576 3099

5  Danielle L. Benecke (SBN 314896)
     danielle.benecke@bakermckenzie.com
6  **BAKER & McKENZIE LLP**
   600 Hansen Way
7  Palo Alto, CA  94304
   Telephone:  +1 650 856 2400
8  Facsimile:  +1 650 856 9299

9  Attorneys for Defendants,
   VADE SECURE, INCORPORATED;
10 VADE SECURE SASU;
   OLIVIER LEMARIÉ
11 [Additional counsel listed on signature page]

12                    UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | **Case No. 3:19-cv-04238-MMC**<br><br>**Date Action Filed: July 23, 2019**<br><br>**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL**<br><br>**Hearing**<br>**Date:  February 7, 2020**<br>**Time:  9:00 am**<br>**Courtroom: 7, 19th Floor**<br>**Judge: Maxine M. Chesney**<br><br>**San Francisco Courthouse**<br>**450 Golden Gate Avenue**<br>**San Francisco, CA 94102** |

# TABLE OF CONTENTS

**Page No.**

I.   ARGUMENT AND AUTHORITIES ...................................................................................1

  A.  Plaintiffs effectively admit that their original Trident theory is unlikely to succeed on the merits. ...........................................................................................................1

  B.  Plaintiffs have not shown that they possess the newly alleged Trident trade secret, nor have they shown misappropriation by Defendants. ............................................1

  C.  The reply abandons Plaintiffs' original theory regarding the MTA product. ........3

  D.  Plaintiffs' new argument concerning the MTA is no better than their first. ..........4

  E.  Plaintiffs ignore uncontroverted, sworn testimony of fact witnesses regarding their departures from Cloudmark. ...................................................................................6

  F.  Plaintiffs' new reply arguments are inconsistent with Cloudmark's exit process. ................6

  G.  Plaintiffs' reply confirms that they cannot show irreparable harm. ......................7

II.  CONCLUSION AND PRAYER ........................................................................................7

i

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Calendar Research LLC v. StubHub, Inc.*,
   No. 2:17-cv-04062-SVW-SS, 2018 U.S. Dist. LEXIS 221053 (C.D. Cal. Aug. 7, 2018) ...................................................................................................................1, 2, 3, 4, 5

*Citcon USA, LLC v. RiverPay Inc.*,
   No. 18-cv-02585-NC, 2019 U.S. Dist. LEXIS 106295 (N.D. Cal. June 25, 2019) .................1, 3, 4

*Integral Sys., Inc. v. Peoplesoft, Inc.*,
   No. C-90-2598-DLJ, 1991 U.S. Dist. LEXIS 20878 (N.D. Cal. July 19, 1991) ........................3, 6

*Maine Pointe, LLC v. Collins*,
   2018 U.S. Dist. LEXIS 183277 (D. Mass. 2018) ........................................................................7

*Neothermia Corp. v. Rubicor Med., Inc.*,
   345 F. Supp. 2d 1042 (N.D. Cal. 2004) ......................................................................................4

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) .....................................................................................1, 5

*Rodgers v. Chevys Rest., LLC*,
   No. C13-03923 HRL, 2015 U.S. Dist. LEXIS 22164 (N.D. Cal. Feb. 24, 2015) ......................1, 4

*Swarmify, Inc. v. Cloudfare, Inc.*,
   No. C 17-06957-WHA, 2018 U.S. LEXIS 34727 (N.D. Cal. March 2, 2018) ...........................4, 5

*U.S. v. Liew*,
   856 F.3d 585 (9th Cir. 2016) ......................................................................................................2

*VIA Techs., Inc. v. Asus Computer Int'l*,
   2016 U.S. Dist. LEXIS 141581, 2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) ..........................2

ii

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

## I. ARGUMENT AND AUTHORITIES

### A. Plaintiffs effectively admit that their original Trident theory is unlikely to succeed on the merits.

Plaintiffs' Motion for Preliminary Injunction and Expedited Discovery ("PI Motion") casts a wide net in attempting to describe their alleged anti-spear phishing trade secrets. For example, in the PI Motion, Plaintiffs attempted to define their trade secrets as those "described in the Complaint (Dkt. 1 ¶¶ 55-66)." But the cited paragraphs from the Complaint simply list various techniques and capabilities, not any alleged "unified architecture." (Pls.' Mot. 14, 16, ECF No. 30-4; Compl. ¶¶ 55-66, ECF No. 1.) And Plaintiffs' alleged mappings in their PI Motion referenced only a subset of those techniques and capabilities. (Pls.' Mot. 18-19, ECF No. 30-4.) So in response to the PI Motion, Defendants demonstrated that the cited techniques and capabilities were and are publicly available and, thus, could not support a misappropriation claim. (Defs.' Resp. 2, 11-12, 14-15, ECF No. 71-4; Rankin Decl. ¶ 3, ECF No. 71-8; Karp Decl. ¶¶ 27-29, 42-46, 54-56, ECF No. 71-6.)

Plaintiffs do not dispute those facts on reply. Instead, they abandon the misappropriation theory advanced in the PI Motion, and now attempt to define their alleged trade secrets as the combination of those techniques and capabilities in a "unified architecture." (Pls.' Reply 3, n.6, ECF No. 81-3.) While this new argument should be disregarded as untimely, even if it were considered, it equally fails to show that Plaintiffs are likely to succeed on their misappropriation claim. *Rodgers v. Chevys Rest., LLC*, No. C13-03923 HRL, 2015 U.S. Dist. LEXIS 22164, at *13 (N.D. Cal. Feb. 24, 2015) (holding that it is improper to raise new issues and submit new facts in a reply brief).

### B. Plaintiffs have not shown that they possess the newly alleged Trident trade secret, nor have they shown misappropriation by Defendants.

A plaintiff has the burden of showing, among other things, that it "possessed a trade secret, that the defendant misappropriated the trade secret, and that the defendant's conduct damaged the plaintiff." *Citcon USA, LLC v. RiverPay Inc.*, No. 18-cv-02585-NC, 2019 U.S. Dist. LEXIS 106295, at *3 (N.D. Cal. June 25, 2019); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1013 (N.D. Cal. 2018) ("The burden is on the plaintiff to establish that the information it asserts is indeed a trade secret."). First, simply claiming a combination of publicly available information in a single architecture does not constitute a trade secret. *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2018 U.S. Dist. LEXIS 221053, at *30 (C.D. Cal. Aug.

1

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

7, 2018) (first citing *U.S. v. Liew*, 856 F.3d 585, 594 (9th Cir. 2016), then citing *VIA Techs., Inc. v. Asus Computer Int'l*, 2016 U.S. Dist. LEXIS 141581, 2016 WL 5930280 at *3 (N.D. Cal. Oct. 12, 2016)) ("In order for a compilation of public information to constitute a trade secret, it must be compiled in a novel way . . . [and the] plaintiff's vague statements that a combination of features represents a trade secret do not constitute such a showing."). Rather, Plaintiffs bear the burden of explaining how a specific combination of such public information is confidential to them and, thus, could potentially qualify as a trade secret. *Id.* Plaintiffs have not done so, and, tellingly, their own expert fails to provide any opinion in support of their new unified architecture argument. Further, Plaintiffs themselves fail to present any evidence that they possess or use this newly alleged combination in a unified architecture. For example, in the PI Motion and Reply, Plaintiffs fail to present any evidence that their Trident product incorporates *heuristic rules* or *statistical models and scoring*. (*See* Pls.' Mot. 16-19.) There is also no showing that Plaintiffs use those design techniques in a unified architecture with the other publicly available capabilities and techniques that Plaintiffs now claim to be necessary components of Plaintiffs' newly alleged trade secret. (*Id.*; Pls.' Reply 3.)

This highlights the fallacy in Plaintiffs' new theory because, for example, statistical modeling can mean a number of different things. (Karp Supp. Decl. ¶ 5, attached hereto as Exhibit A.) But Plaintiffs do not give any explanation of how they are using statistical modeling, much less how that use in combination with multiple other known design techniques and capabilities is unique and confidential to Plaintiffs. *See* (*Id.*;) *Calendar Research*, 2018 U.S. Dist. LEXIS 221053 at *30.

In fact, Plaintiffs ignore numerous examples of publicly available disclosures of the incorporation of these techniques and capabilities in various combinations. For example, Symantec, a significant competitor in the e-mail security industry, has publicly disclosed its use of these high-level techniques and approaches in a unified architecture by 2016. (Rankin Supp. Decl. ¶ 8, attached hereto as Exhibit B; Karp Supp. Decl. ¶ 9.) And while Plaintiffs have not offered any explanation of what they mean by certain capabilities and techniques, Proofpoint has also disclosed publicly the use of the same techniques in its Essentials product by at least 2016, if not earlier. (Rankin Supp. Decl. ¶ 5; Karp Supp. Decl. ¶ 9.) Moreover, Dr. Karp further opined that certain other public disclosures demonstrate that Microsoft, Cloudmark, Barracuda, ThreatTrack, Mimecast, and Trend

2

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Micro incorporated various combinations of these high-level techniques and approaches, indicating that the nature of interaction between these elements is widely known. (Rankin Supp. Decl. ¶¶ 6-7, 9-12; Karp Supp. Decl. ¶¶ 5, 7-8, 10-14.) According to Dr. Karp, Plaintiffs' newly alleged trade secret amounts to nothing more than "known techniques and approaches combined in an expected manner." (Karp Supp. Decl. ¶ 14.) Thus, Plaintiffs' new allegation fails for the same reasons as their now-abandoned first attempt. *See Calendar Research*, 2018 U.S. Dist. LEXIS 221053 at *30.

Plaintiffs' new theory also fails because they provide no evidence that Defendants have improperly used or disclosed these newly defined alleged trade secrets. *See Integral Sys., Inc. v. Peoplesoft, Inc.*, No. C-90-2598-DLJ, 1991 U.S. Dist. LEXIS 20878, at *40-41 (N.D. Cal. July 19, 1991) ("[F]ailure to link the alleged trade secret to its specific manifestation in [defendant's] product is alone a sufficient basis for denying the [PI] motion."). Thus, there is no evidence of misappropriation. Indeed, Plaintiffs have failed at each turn to show a likelihood of success on the merits on their misappropriation or breach of contract claim, and therefore their PI Motion should be denied. *See Citcon USA*, 2019 U.S. Dist. LEXIS 106295 at *8.

## C. The reply abandons Plaintiffs' original theory regarding the MTA product.

Plaintiffs' PI Motion began with the allegation—made without any credible factual basis—that Vade did not have an MTA product of its own as of February 2017. (Pls.' Mot. 12.) Plaintiffs then alleged that, within a span of four months, Vade developed an MTA and put it into a competitive trial against Cloudmark in June 2017, and that this evidenced Defendants' misappropriation of Cloudmark's alleged MTA trade secrets. (*Id.* at 12, 15-16.) In response, Defendants demonstrated by uncontroverted evidence that the MTA used by Vade in the June 2017 competitive trial had been developed years prior, without input from Lemarié or other former Cloudmark employees. (Defs.' Resp. 6; Gendre Decl. ¶¶ 19-22, ECF No. 72-5.) Defendants also established that the design goals Plaintiffs claimed as trade secrets were widely known and disclosed in other MTA products on the market. (Defs.' Resp. 2, 11; Rankin Decl. ¶ 4, ECF No. 71-8; Karp Decl. ¶¶ 32-41, ECF No. 71-6.)

Plaintiffs' reply does not meaningfully dispute that the alleged trade secrets claimed in the PI Motion are, in fact, not trade secrets at all, and Plaintiffs do not dispute that their story concerning the June 2017 competitive trial was wholly inaccurate. Instead, Plaintiffs' reply now relies on a

3

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

1  newly crafted argument that should be disregarded as untimely and, even if considered, fails to
2  support any request for injunctive relief. *Rodgers*, 2015 U.S. Dist. LEXIS 22164 at *13.

### D. Plaintiffs' new argument concerning the MTA is no better than their first.

In their response, in addition to establishing Plaintiffs' failure to identify an MTA-related trade secret, Defendants also noted that their NextGen MTA was different from Plaintiffs because it utilized the following design goals or techniques: a distinct architecture and distinct language (Golang) as compared with other commercial MTAs; a modular approach for native cloud deployment; micro services and standard REST APIs for every component; simple policy abstraction for flexibility; policy real-time testing and deployment; loosely coupled components; and a fully elastic system. (Defs.' Resp. 15-16.) Plaintiffs made no mention of these design capabilities or techniques in their PI Motion. Yet now, in a classic example of improperly attempting to piggyback off of and define their trade secret by reference to another party's product,[1] Plaintiffs contend that they allegedly used similar high-level design goals or capabilities first, and that this somehow supports issuance of an injunction. But Plaintiffs' arguments, however, reflect a continued misunderstanding of the law and are inconsistent with the factual record.

Foremost, the use or mere recitation of these well-known design techniques, attributes, or capabilities in connection with an MTA does not constitute a trade secret. *Swarmify, Inc. v. Cloudfare, Inc.*, No. C 17-06957-WHA, 2018 U.S. LEXIS 34727, at *9-10 (N.D. Cal. March 2, 2018); *Calendar Research*, 2018 U.S. Dist. LEXIS 221053 at *30. Defendants never sought to seal the use of those techniques, and, in fact, both experts agree that, at this level of generality, these are commonly known and are not proprietary to either Plaintiffs or Defendants. (*See, e.g.*, Nielson Supp. Decl. ¶¶ 4-5, 10-17, 32-33, 36-40, ECF No. 81-5; Karp Supp. Decl. ¶¶ 16-31.) Accordingly, these are not trade secrets, and they cannot support either a misappropriation or breach of contract claim. *Citcon USA*, 2019 U.S. Dist. LEXIS 106295 at *4.

Indeed, it is clear that, if a trade secret exists, it lies in the implementation of the design

---

[1] *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1043-44 (N.D. Cal. 2004) (holding that the plaintiff's breach of NDA claim triggered California Code of Civil Procedure § 2019(d) and recognizing that § 2019(d) "prevents [a] plaintiff from using the discovery process as a means to obtain the defendant's trade secrets").

4

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

technique or capability. *See, e.g.*, *Prostar*, 360 F. Supp. 3d at 1013. But Plaintiffs tellingly fail to demonstrate *how* they implement the referenced design techniques or capabilities. To the contrary, their evidence explicitly refers to these capabilities and techniques as ▓▓▓▓ (ECF No. 81-7.) Without demonstrating how they implement these capabilities and techniques, there can be no proper identification of a trade secret and no evidence of misappropriation. (*See* Karp Supp. Decl. ¶¶ 17-29;) *Swarmify*, 2018 U.S. LEXIS 34727 at *9-10; *Calendar Research*, 2018 U.S. Dist. LEXIS 221053 at *30. The importance of demonstrating a specific implementation is exemplified in Plaintiffs' reference to the policy abstraction design goal and the use of the Golang source code language, as discussed below.

For example, the notion of implementing policy abstractions has been well known and used for years in the context of e-mail filtering. It is undisputed that, by itself, a policy abstraction does not constitute a trade secret. (*See* Karp Supp. Decl. ¶ 24;) *Calendar Research*, 2018 U.S. Dist. LEXIS 221053 at *30. One well-known tool for implementing policy abstractions is the Microsoft Outlook graphical user interface ("GUI") for setting up "rules," e.g., a rule that every time an e-mail from a particular sender is received, it is automatically forwarded to a designated folder. (Lemarié Supp. Decl. ¶¶ 9-10, attached hereto as Exhibit C.) While Plaintiffs fail to demonstrate their alleged use of policy abstraction in an MTA product, their expert, Dr. Nielson, cites documents that appear to disclose ▓▓▓▓ alleged MTA. (Nielson Supp. Decl. ¶ 22; Pls.' Reply Ex. 5, ECF No. 81-9.) But in contrast, the Vade NextGen MTA does not use a graphical user interface. Instead, Vade's NextGen MTA is designed for customers to implement policy abstractions in a manner that is different from any methodology disclosed in the documents cited by Plaintiffs. (Defs.' Resp. 15-16; Gendre Decl. ¶ 18, ECF No. 72-5; Lemarié Supp. Decl. ¶¶ 11-13.) Accordingly, Plaintiffs have failed to show that their policy abstraction is in any way a trade secret, and there is no evidence that Defendants are implementing a policy abstraction in the same way. This cannot support an award of injunctive relief.

Plaintiffs' reference to the Golang source code language—a popular programming language—also belies any notion of misappropriation. (Karp Supp. Decl. ¶ 30.) Again, Plaintiffs do not provide any detail or explanation of how they are allegedly using Golang in an MTA. In fact,

5

the one document Plaintiffs cite regarding their use of Golang is a document discussing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, not an MTA. (Pls.' Reply Ex. 2 at 3, ECF No. 81-6; *see also* Karp Supp. Decl. ¶ 29 (opining that the "▓▓▓▓▓▓" Dr. Nielson describes in relation to ▓▓▓▓ is not an MTA.) Further, that document shows that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and there is no indication that Plaintiffs used Golang to develop any other products, much less their MTA. (ECF No. 81-6) Indeed, Vade is utilizing functionalities of Golang—functionalities that are required for Vade's NextGen MTA's design and architecture—*that did not even exist when Lemarié was a Cloudmark employee*, and Vade's NextGen MTA is an altogether different product than Trident. (Lemarié Supp. Decl. ¶¶ 6-8, 11-13; Karp Supp. Decl. ¶ 29.) Thus, again, Plaintiffs have presented no evidence that their purported use of the Golang source code language would be a trade secret, and similarly, there is no evidence that Defendants' use of Golang in a different product could in any way constitute misappropriation or support a claim for injunctive relief. *Integral Sys.*, 1991 U.S. Dist. LEXIS 20878 at *40; (*see* Karp Supp. Decl. ¶¶ 29-30; Lemarié Supp. Decl. ¶¶ 6-8, 11-13.)

        **E.**    **Plaintiffs ignore uncontroverted, sworn testimony of fact witnesses regarding their departures from Cloudmark.**

In a misleading attempt to attack their credibility, Plaintiffs cite new documents on reply relating to Mr. Delannoy and Mr. Boussinet—documents Plaintiffs possessed before filing their motion. (Pls.' Reply 11-12.) But Plaintiffs ignore sworn testimony from these witnesses that they, of their own volition, had actively explored opportunities to leave Cloudmark for years before their eventual departures. (Delannoy Decl. ¶ 6, ECF No. 71-14; Boussinet Decl. ¶¶ 9-11, ECF No. 71-12.) And as Plaintiffs concede, none was subject to any non-compete obligation at the time of his departure, and each was free to explore other opportunities, even with a competitor. (Pls.' Reply 12.) Indeed, such employment changes are common in the software industry and cannot support a claim for injunctive relief. *Integral Sys.*, 1991 U.S. Dist. LEXIS 20878 at *40 (denying an injunction and recognizing "the reality . . . that members of the software development industry frequently change employers or begin companies on their own, expanding the information base for a particular software.").

        **F.**    **Plaintiffs' new reply arguments are inconsistent with Cloudmark's exit process.**

Plaintiffs on reply now allege that Lemarié breached a "failure to return" obligation by

6

allegedly "destroying" Cloudmark documents. (Pls.' Reply 9.) But Plaintiffs do not dispute that ▮▮▮▮▮▮▮▮▮. (ECF No. 72-6 ¶ 10.) Thus, the uncontroverted record on this issue is that Lemarié simply deleted items from his personal computer and personal account that were copies of documents and information already in Cloudmark's possession, which was entirely consistent with Cloudmark's procedures and instructions to exiting employees. (Lemarié Supp. Decl. ¶¶ 14-17.) Lemarié simply deleted duplicative information, and Plaintiffs fail to provide any evidence of how such deletion harmed them in any way, much less caused irreparable harm. *See Maine Pointe, LLC v. Collins*, 2018 U.S. Dist. LEXIS 183277, *7-11 (D. Mass. 2018); (Lemarié Supp. Decl. ¶¶ 14-17).

### G. Plaintiffs' reply confirms that they cannot show irreparable harm.

Plaintiffs admit in the PI Motion that they had full knowledge in June 2017 of the Vade MTA on which the motion was based and its alleged "exceptionally fast development" after Lemarié's arrival that surely indicated trade secret misappropriation. (Pls.' Mot. 12.) *Plaintiffs did nothing in response for over two years*. Plaintiffs admit that they had full knowledge in June 2018 that Vade had released the Vade O365 product that included the anti-spear phishing solution with the claimed features now at issue. (Pls.' Mot. 10-11.) *Plaintiffs again did nothing in response for over a year*. Even now in their reply, Plaintiffs only allege in conclusory fashion that, absent an injunction, they might incur some undefined, speculative injury in the future. (Pls.' Reply 14 ("[Plaintiffs] will suffer *risk* of competitive harm and *potential* contraction of market share [and] *potential loss* of established and prospective customers, and goodwill.") (emphasis added).) Yet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Pls.' Mot. 19; *id.* Ex. 1 ¶¶ 34-35, ECF No. 30-6.) Plaintiffs have presented no argument or authority that would support a finding of irreparable harm on such a record.

## II. CONCLUSION AND PRAYER

For the foregoing reasons, Defendants respectfully request that the Court enter an order denying Plaintiffs' PI Motion in its entirety, and grant all other relief to which Defendants are entitled.

7

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Dated: January 17, 2020                **BAKER & McKENZIE LLP**

By: /s/ *Bart Rankin*

Colin H. Murray (SBN 159142)
colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:     +1 415 576 3000
Facsimile:      +1 415 576 3099

Danielle L. Benecke (SBN 314896)
danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:     +1 650 856 2400
Facsimile:      +1 650 856 9299

Jay F. Utley (Admitted *Pro Hac Vice*)
jay.utley@bakermckenzie.com
Bart Rankin (Admitted *Pro Hac Vice*)
bart.rankin@bakermckenzie.com
Mackenzie M. Martin (Admitted *Pro Hac Vice*)
mackenzie.martin@bakermckenzie.com
John G. Flaim (Admitted *Pro Hac Vice*)
john.flaim@bakermckenzie.com
Chaoxuan Liu (Admitted *Pro Hac Vice*)
charles.liu@bakermckenzie.com
Mark Ratway  (Admitted *Pro Hac Vice*)
mark.ratway@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone:    +1 214 978 3000
Facsimile:      +1 214 978 3099

*Attorneys for Defendants,*
*Vade Secure, Incorporated; Vade Secure SASU;*
*and Olivier Lemarié*

8

Case No. 3:19-cv-04238-MMC
DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY