UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-4238-MMC-RMI<br><br>**[PROPOSED] ORDER ON DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.[1]

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to

---

[1] Defendants reserve all rights relating to the applicability of data privacy restrictions, including but not limited to the General Data Protection Regulation of the European Union (the "GDPR").

cooperate in good faith throughout this matter consistent with the Court's Guidelines for the Discovery of ESI.

3. **PRESERVATION**

The parties have discussed their preservation obligations and needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties have identified a non-exhaustive list of data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and agree that the circumstances of this case do not warrant the review of production or preservation of the following:

- temporary data stored in a computer's random access memory (RAM) or other ephemeral data that are difficult to preserve without disabling the computer's operating system;
- residual, fragmented, or damaged data;
- online access data, such as temporary Internet files, history, cache, cookies, and the like;
- information stored in unallocated space in file systems on magnetic media;
- information created or copied during the routine, good-fair performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment by the party, except for relevant files and materials that may be stored on computer equipment subject to said deployment, maintenance, retirement, or disposition, such as work or personal computers or other electronic storage devices.

The parties further agree that the circumstances of this case do not warrant the review or production of backup tapes or other long-term storage media that were created for use as data back-up or disaster recovery media, but that these data sources should nonetheless be preserved. The parties agree to the production of data and/or documents from backup tapes or other long-term storage should discovery reveal that relevant data resides in such data source(s), that such data is not duplicative of other data that is more readily available to the parties through alternative data source(s), and provided that a reasonable and narrowly-tailored discovery request has been made.

2    Case No. 3:19-cv-4238-MMC-RMI
[PROPOSED] ESI ORDER

Notwithstanding the foregoing, a party may, upon a showing of good cause, seek discovery from one or more of the data sources subject to the above-mentioned exceptions or request that said data source(s) be preserved. Notwithstanding the foregoing, the terms of this Section 3 shall not apply to any data sources that are known to a party to contain information relevant to a claim or defense in this action.

**4. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, if necessary to avoid undue burden. The parties agree, however, that any such meet and confer will not delay the party's obligation to promptly begin its search for and collection of responsive ESI from relevant file and data locations, custodians, share drives, source code repositories, and the like.

Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

For the avoidance of doubt, nothing in this Order permits a party to otherwise withhold from production a known responsive document (e.g., responsive to a discovery request, relevant to the issues in the case, or that may otherwise lead to discovery of relevant information) within the party's possession, custody, or control.

**5. PRODUCTION FORMATS**

The parties agree to produce for each document:
- except as otherwise provided, the documents will be produced in single-page color JPEG images for documents containing content in color, and single-page Group IV TIFF images for black-and-white documents;
- with document-level text files containing extracted text or OCR, if extracted text is unavailable, and named according to Bates Begin number;
- for spreadsheets (.xls, .xlsx, .csv, etc.), the document should be produced in native format with a corresponding endorsed placeholder;
- for presentations (.ppt, .pptx, etc.), the document should be produced with any

speaker notes, and to the extent such document contains animations, should be produced in native format with a corresponding endorsed placeholder;

- for documents that contain redlines, track changes, and/or comments, the document should be produced with the relevant redlines, track changes, and comments displayed;
- load files (.DAT and .OPT) that include the following metadata: Bates Begin, Bates End, Bates BegAttach, Bates EndAttach, NativeLink (where appropriate), Extracted Text Link;
- load files will also include, where available and applicable: Custodian, All Custodians, From, To, CC, BCC, Subject, Date Sent, Time Sent, File Extension, File Name, Author, Last Saved By, Date Created, Time Created, Date Last Modified, Time Last Modified, Message ID, MD5Hash;
- documents unable to be imaged will be produced in native file format with a Bates numbered placeholder indicating as such.

Reasonable efforts will be used to scan documents at or near their original size, so that the print or image of the document appears straight and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring any content of the document. Physically oversized originals will appear reduced. A producing Party reserves the right to determine whether to produce oversized documents in their original size. A receiving Party may request that specific oversized documents be produced in their original size for good cause.

If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. For example, if the JPEG or TIFF images of a document cannot be produced with sufficient clarity, then a party may request that such document be produced in native format instead. The parties agree not to degrade the searchability of documents as part of the document production process.

## 6. PHASING

When a party propounds a discovery request pursuant to Fed. R. Civ. P. 34, the parties agree

to collect and produce responsive documents on a rolling basis, such that production of responsive documents ready for production is not delayed pending completion of the producing Party's investigation and collection.

To the extent that any responsive documents are subject to third-party confidentiality obligations, such as notice provisions, the producing Party shall identify and describe such obligations and provide a timeline for compliance with any such provisions and production of said documents.

The parties do not otherwise anticipate phasing discovery at this point, but agree to revisit the issue if the need arises.

## 7. DISCOVERY OF ELECTRONIC MAIL

General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic information regarding the identity of relevant witnesses and custodians.

Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

Accordingly, Plaintiffs (collectively) and Defendants (collectively) may serve up to two (2) interrogatories directed to identification of proper custodians, search terms, and timeframe. These interrogatories will not count toward the parties' discovery limits in this case.

Plaintiffs (collectively) shall limit their email production requests to a total of fifteen (15) custodians for all such requests. Defendants (collectively) shall limit their email production requests to a total of eight (8) custodians for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

1   Plaintiffs (collectively) and Defendants (collectively) shall limit their respective email production requests to a total of ten (10) search terms per custodian. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or are translations of the same word or its variants in a foreign language (e.g., French). Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

  For the avoidance of doubt, nothing in this Order permits a party to otherwise withhold from production a known responsive email (e.g., responsive to a discovery request, relevant to the issues in the case, or that may otherwise lead to discovery of relevant information) within the party's possession, custody, or control on the basis that the email did not fall within the scope of a requesting party's email discovery requests.

**8.**  **<u>DOCUMENTS PROTECTED FROM DISCOVERY</u>**

  Privileged documents will be withheld on a document-by-document basis. If one member of a responsive family is privileged and the other members of the family are not privileged, the privileged document will be withheld or redacted and each non-privileged family member will be produced as long as any member of the family is responsive.

1  If the producing Party redacts information from a page, the producing Party shall "burn" a
2  black box onto the document image over the information it intends to redact. The redaction box
3  shall also contain visible text indicating that the document was redacted. If the producing Party
4  redacts a document, the metadata fields must nonetheless be produced to the extent the fields are
5  already populated in the ordinary course, with the exception of email subject, which may be withheld
6  from all redacted emails to the extent the subject contains privileged information. Additional
7  metadata fields deemed privileged may be redacted only to the extent necessary to protect the
8  privilege.

9  The parties agree to discuss the appropriate scope and terms for privilege logs. However,
10 the parties agree that privilege logs need not include communications authored following the filing
11 of the Complaint in the first instance, and that communications may be identified on a privilege log
12 by category, rather than individually, if appropriate.

**9.  MODIFICATION**

This Stipulated ESI Order may be modified by a stipulated order of the parties or by the Court for good cause shown.

**IT IS SO ORDERED.**

DATED: February 4, 2020

_____
Hon. Robert M. Illman
United States Magistrate Judge

7   Case No. 3:19-cv-4238-MMC-RMI
[PROPOSED] ESI ORDER