1   Colin H. Murray (SBN 159142)
       colin.murray@bakermckenzie.com
2   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
3   San Francisco, CA  94111-3802
    Telephone: +1 415 576 3000
4   Facsimile:  +1 415 576 3099

5   Danielle L. Benecke (SBN 314896)
       danielle.benecke@bakermckenzie.com
6   **BAKER & McKENZIE LLP**
    600 Hansen Way
7   Palo Alto, CA  94304
    Telephone: +1 650 856 2400
8   Facsimile:  +1 650 856 9299

9   Attorneys for Defendants,
    VADE SECURE, INCORPORATED;
10  VADE SECURE SASU;
    OLIVIER LEMARIÉ
11  [Additional counsel listed on signature page]

12                   UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14
    PROOFPOINT, INC.; CLOUDMARK           **Case No. 3:19-cv-04238-MMC**
15  LLC,
                                          **Date Action Filed: July 23, 2019**
16                      Plaintiffs,
                                          **DEFENDANTS' NOTICE OF**
17            v.                          **MOTION AND MOTION TO STAY**
                                          **RELATED DISCOVERY PENDING**
18  VADE SECURE, INCORPORATED;            **FINAL DISPOSITION OF**
    VADE SECURE SASU; OLIVIER             **DEFENDANTS' MOTION FOR**
19  LEMARIÉ,                              **RELIEF FROM THE JANUARY 31,**
                                          **2020 DISCOVERY ORDER OF THE**
20                      Defendants.       **HONORABLE ROBERT M. ILLMAN**

21
                                          **Date: March 20, 2020**
22                                        **Time: 9:00 a.m.**
                                          **Courtroom: 7, 19th Floor**
23                                        **Judge: Maxine M. Chesney**

24                                        **San Francisco Courthouse**
                                          **450 Golden Gate Avenue**
25                                        **San Francisco, CA 94102**

26

27

28

# TABLE OF CONTENTS

**Page**

I.     FACTUAL BACKGROUND..................................................................................1

II.    ARGUMENT AND AUTHORITIES.....................................................................3

   A.    A stay should be granted because Defendants are likely to succeed on their Motions for Relief and the balance of hardships tips in Defendants' favor. ............................................3

      1.    Defendants are likely to succeed on their motions for relief .............................................4

          a.    The Order's determination that French law does not apply was clearly erroneous...........5

          b.    Factors 1 and 2:  Importance of the documents or information requested and the scope of the requests ................................................................................................................7

          c.    Factor 3:  The location and/or origination of Defendants' documents .............................8

          d.    Factor 4:  Alternative means of obtaining information.....................................................8

          e.    Factors 5 and 6:  French national interests and hardship to Defendants..........................10

          f.    Factor 7:  The extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state .......................11

      2.    Because Defendants will suffer undue burden and irreparable harm if a stay is not granted, the balance of hardships tips in Defendants' favor. ............................................11

III.    CONCLUSION.................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH,*
   No. 14-cv-01009-WHO (MEJ), 2014 U.S. Dist. LEXIS 112377 (N.D. Cal. Aug.
   13, 2014) .........................................................................................................................7

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
   MDL No. 1917, 2014 U.S. Dist. LEXIS 151222 (N.D. Cal. Oct. 23, 2014)..............................7, 9

*Connex R.R. LLC v. AXACorproate Sols. Assurance,*
   No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050 (C.D. Cal. Feb. 22,
   2017) .........................................................................................................................5, 6

*Dentsply Sirona Inc. v. Edge Endo, LLC,*
   No. 17-1041 JFB/SCY, 2019 U.S. Dist. LEXIS 163360 (D.N.M. Sept. 17, 2019)..................7, 11

*Golden Gate Restaurant Ass'n v. City and County of San Francisco,*
   512 F.3d 1112 (9th Cir. 2008) ....................................................................................................3

*Gonzales v. Uber Techs., Inc.,*
   No. 17-cv-02264 (JSC), 2018 U.S. Dist. LEXIS 76844 (N.D. Cal. May 2, 2018)......4, 8, 9, 10, 11

*In re 28 U.S.C. § 1782 Nikon Corp. v. GlobalFoundries U.S. Inc.,*
   No. 17-mc-8007-BLF, 2017 U.S. Dist. LEXIS 155692 (N.D. Cal. Sep. 22, 2017) ............3, 11, 12

*Ingram v. Pac. Gas & Elec. Co.,*
   No. 12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026 (N.D. Cal. Nov. 25, 2013).......................4

*Mauia v. Petrochem Insulation, Inc.,*
   No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894 (N.D. Cal. Nov. 21,
   2018). .........................................................................................................................8, 9, 11

*Perez v. Wells Fargo Bank, N.A.,*
   No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871 (N.D. Cal. Jan. 30, 2018)
   (Chesney, J.)...............................................................................................................3, 11, 12

*Richmark Corp. v. Timber Falling Consultants,*
   959 F.2d 1468 (9th Cir. 1992) ................................................................................5, 6, 7, 8, 10, 11

*Salt River Project Agric. Improvement &Power Dist. v. Trench Fr. SAS,*
   303 F. Supp. 3d 1004 (D. Ariz. 2018) ..........................................................................5, 7, 9, 10, 11

*Sun Group U.S.A. Harmony City, Inc. v. CRCC Corp. Ltd.,*
   No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616 (N.D. Cal. Nov. 19, 2019)........................8

ii

*Viasat, Inc. v. Space Sys./Loral, Inc.*,
    No. 3:12-cv-00260-H, 2014 U.S. Dist. LEXIS 30795 (S.D. Cal. Jan. 31, 2014) ...........................4

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that on March 20, 2020, at 9:00 am in Courtroom 7 of the above

4   captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants

5   Vade Secure, Incorporated ("Vade Inc."), Vade Secure SASU ("Vade SASU"), and Olivier Lemarié,

6   will and hereby do, move the Court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure

7   for an order granting a limited stay of discovery until final disposition of Defendants' Motion for

8   Relief from Nondispositive Pretrial Order of Magistrate Judge and Motion for Leave to File a Motion

9   for Reconsideration of Order (ECF No. 112)  (collectively the "Motions for Relief").

10        This Motion is made on the grounds that a stay of discovery related to Defendants' Motions

11   for Relief from the Magistrate Judge's January 31, 2020 Order (the "Order") should be granted until

12   a final disposition of the Motions for Relief given that Court's determination of the Motions for

13   Relief will govern how discovery should be taken from Defendants.

14        This Motion relies upon this Notice of Motion, the attached Memorandum of Points and

15   Authorities, the papers on file with the Court, and any argument of counsel made at any hearing on

16   this Motion.

17

18   Dated: February 14, 2020                    **BAKER & McKENZIE LLP**

19

20                                               By:  /s/ *Bart Rankin*

21                                               Jay F. Utley (Admitted *Pro Hac Vice*)
                                                   jay.utley@bakermckenzie.com
22                                               Bart Rankin (Admitted *Pro Hac Vice*)
                                                   bart.rankin@bakermckenzie.com
23                                               Mackenzie M. Martin (Admitted *Pro Hac Vice*)
                                                   mackenzie.martin@bakermckenzie.com
24
                                                 *Attorneys for Defendants*
25                                               *Vade Secure, Incorporated; Vade Secure SASU;*
                                                 *and Olivier Lemarié*
26

27

28

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants move the Court for an entry

3

of an order staying the Magistrate Judge's January 31, 2020 Order to the extent it requires Defendants

4

to produce documents and information without first complying with Chapter II of the Hague

5

Convention until the Court has fully adjudicated Defendants' Motions for Relief.  In support hereof,

6

Defendants show good cause as follows:

7

### **I.     FACTUAL BACKGROUND**

8

Before this lawsuit was filed, Plaintiffs instituted a discovery proceeding in France to obtain

9

documents and information relating to the Vade products at issue in this lawsuit, and indeed, sought

10

them for use in this proceeding.  (Pls.' Mot. for Preliminary Inj. at 24-25, ECF No. 31.)  Plaintiffs

11

clearly recognize, and tacitly admit, that the documents and information now at issue originated from

12

and are located in France.  (*See id.*)  But because Plaintiffs have not yet been able to obtain the

13

documents and information through the French courts, Plaintiffs sought to circumvent that

14

proceeding, and served Plaintiffs' First Requests for Production and First Set of Interrogatories on

15

all Defendants in this matter on October 10, 2019 (the "Discovery Requests").[1]  (ECF Nos. 78-2 &

16

78-3.)

17

Because the Discovery Requests seek the same documents and information that are the

18

subject of the ongoing French proceedings and are clearly subject to French law, Defendants notified

19

Plaintiffs shortly after the requests were served that Defendants would need to produce relevant, non-

20

privileged documents and information in response through appropriate Hague Convention

21

procedures.  (Joint Case Management Statement at Ex. A, ECF No. 60-1.)  During the case

22

management conference and in multiple written communications thereafter, Defendants further

23

explained on the record that the proposed procedures under Chapter II of the Hague Convention

24

would cause no meaningful delay in the discovery process, and would allow Plaintiffs to effectively

25

take the same scope of discovery that would otherwise be available under the Federal Rules of Civil

26

27

[1]Plaintiffs also served a First Set of Interrogatories separately on Defendant Olivier Lemarié,
but because the information sought through those Interrogatories did not implicate French law, Mr.

28

Lemarié has already provided full and complete responses to those Interrogatories.  (*See* Joint
Discovery Statement at 2, ECF No. 91.)

1

Procedure.  And conducting discovery as proposed by Defendants, while causing no prejudice to Plaintiffs, would permit Defendants to produce documents and information in discovery without subjecting Defendants to penalties or prosecution under French law.  (*See* Letter from Rankin to Pak of 11/15/19, ECF No. 78-10;  Hr'g Tr. at 18:15-19:4, ECF No. 121-2.)  In fact, as stated on the record before Magistrate Judge Illman, Defendants agreed to Plaintiffs' suggested modification to the proposed procedure that, in Plaintiffs' own words, would "eliminate the risk of potential delays." (Hr'g Tr. at 18:15-19:4, ECF No. 121-2.)

Yet, Plaintiffs resisted proceeding under Chapter II of the Hague Convention, arguing without support that the Hague procedures would cause undue delay and expense.  (Joint Statement at 2-5, ECF No. 91.)  Plaintiffs filed a Motion to Compel on December 13, 2019, relating to a complicated issue of international law, including 24 pages of briefing and 17 exhibits (more than 140 pages of exhibits). (ECF No. 78.)  The motion was referred to Magistrate Judge Illman on December 16, 2019, and the Parties filed a joint 5-page letter brief attaching no affidavits or exhibits, other than Plaintiffs' discovery requests and Defendants' objections and responses, on January 6, 2020 (ECF No. 91), in compliance with Magistrate Judge Illman's standing order.  Defendants' response to Plaintiffs' 24-page motion was therefore limited to 2.5 pages of letter briefing, and Defendants could not submit relevant affidavits or exhibits.  General Standing Order of Magistrate Judge Robert M. Illman 13(a);  (ECF No. 91 n.6, pp. 5-7).  The Parties participated in a hearing on January 31, 2020, and the Court granted the Motion to Compel the same day, finding that Defendants did not meet their "burden in demonstrating that French or European law clearly bars the production of information." (ECF No. 112 at 3, 4.)

On February 14, 2020, Defendants timely filed their Motion for Leave to File Motion for Reconsideration of Order (ECF No. 112) (the "Motion for Leave") and Rule 72 Motion for Partial Relief from the January 31, 2020 Discovery Order of the Honorable Robert M. Illman (the "Rule 72 Motion") (collectively the "Motions for Relief").  Thus, Defendants now request that the Order requiring Defendants to produce documents without first complying with Chapter II of the Hague Convention be stayed until the Court finally determines the merits of the Motions for Relief.

1

## II.     ARGUMENT AND AUTHORITIES

2

### A.     A stay should be granted because Defendants are likely to succeed on their Motions for Relief and the balance of hardships tips in Defendants' favor.

3

4      Courts have recognized that there is not a clear standard or test that governs a motion to stay

5    discovery while a motion for relief from a magistrate judge's ruling is pending. *In re 28 U.S.C. §*

6    *1782 Nikon Corp. v. GlobalFoundries U.S. Inc.*, No. 17-mc-8007-BLF, 2017 U.S. Dist. LEXIS

7    155692, at *6-7 (N.D. Cal. Sep. 22, 2017). Some courts have considered the following factors when

8    making that determination:  (1) the likelihood of success of the pending motions for relief;  (2) the

9    threat of irreparable harm if the stay is not granted;  (3) the absence of harm to opposing parties if

10   the stay is granted;  and (4) any risk of harm to the public interest. *See id*; *Perez v. Wells Fargo*

11   *Bank, N.A.*, No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871, at *4 (N.D. Cal. Jan. 30, 2018)

12   (Chesney, J.). Similarly, when the Ninth Circuit is determining whether to stay a judgment pending

13   appeal, it considers "two interrelated legal tests" that "represent the outer reaches of a single

14   continuum." *Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112,

15   1115-16 (9th Cir. 2008). "At one end of the continuum, the moving party is required to show both

16   a probability of success on the merits and the possibility of irreparable injury." *Id.* "At the other end

17   of the continuum, the moving party must demonstrate that serious legal questions are raised and that

18   the balance of hardships tips sharply in its favor." *Id.*

19      Other courts, however, have held that a motion to stay in this posture is tantamount to a

20   motion for protective order or limiting discovery, and thus, should be entitled to a protective order

21   upon a showing of good cause to avoid annoyance, embarrassment, oppression, or undue burden or

22   expense. *In re Nikon Corp.*, 2017 U.S. Dist. LEXIS 155692, at *6-7. For example, in *In re Nikon*

23   *Corp.*, GlobalFoundries sought a stay of the magistrate judge's order requiring GlobalFoundries to

24   produce a large amount of documents. *Id.* The district court exercised its wide discretion and held

25   that good cause existed to stay the order that would otherwise require GlobalFoundries to incur the

26   expense of collecting and producing documents while the Court considered the challenge to that

27   order. *Id.*

28      Here, because Defendants meet the requirements of either standard, this motion to stay should

3

be granted.

### 1.     Defendants are likely to succeed on their motions for relief

Defendants have both filed objections to the Order under Rule 72, and have filed a motion for leave to file a motion for reconsideration.  Under Rule 72, if a magistrate judge's nondispositive order is clearly erroneous or contrary to law, this Court may modify or set aside that order.  *Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026, at *6-7 (N.D. Cal. Nov. 25, 2013);  *Viasat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-cv-00260-H, 2014 U.S. Dist. LEXIS 30795, at *17-18 (S.D. Cal. Jan. 31, 2014).  A magistrate judge's factual findings are clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been made.  *Id.*  Further, a motion for leave to file a motion for reconsideration should be granted if  "(1) [A]t the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law occurring after the time of such order; or (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."  Civil L.R. 7-9(b);  *see Gonzales v. Uber Techs., Inc.*, No. 17-cv-02264 (JSC), 2018 U.S. Dist. LEXIS 76844, at *3 (N.D. Cal. May 2, 2018) (granting motion for leave where the court's order did not address certain facts or arguments).

Here, in their Motions for Relief, Defendants demonstrate that the Magistrate Judge erred by determining that the French Blocking Statute did not apply to Plaintiffs' discovery requests, including Plaintiffs' First Set of Requests for Production and First Set of Interrogatories.  (Defs.' Mot. for Leave at 3-4, ECF No 121; Defs.' Rule 72 Mot. at 3-4.)  Defendants specifically demonstrate that the Magistrate Judge's Order incorrectly determined at the outset that French law does not apply to Defendants' documents, and that the Order wrongly decided that the seven-factor analysis typically applied to these issues weighed against a finding that Plaintiffs should proceed through Chapter II of the Hague Convention.  As set forth below, Defendants are likely to succeed on those arguments.

#### a. The Order's determination that French law does not apply was clearly erroneous.

Under French law commonly referred to as the "French Blocking Statute"[2] a party is prohibited from disclosing documents or information that originated in France, or that is maintained in France, for use in a non-French proceeding, unless such documents or information were obtained under an international treaty or agreement, such as the Hague Convention. *See Salt River Project Agric. Improvement &Power Dist. v. Trench Fr. SAS,* 303 F. Supp. 3d 1004, 1006 (D. Ariz. 2018). The Order reached the clearly erroneous conclusion that Defendants had not met their burden of "demonstrating that French or European law clearly bars the production of the information sought in these proceedings." (Order at 3, ECF No. 112.) That determination was based solely on Plaintiffs' representation that "given Defendants' domestic activities, most of the information sought by the discovery requests is located in the U.S. and from U.S. entities." (*Id.*) That representation, however, is contrary to the factual record and the law.

Specifically, the Ninth Circuit has held that it has "neither the power nor the expertise to determine for ourselves what [foreign] law is." *Richmark*, 959 F.2d at 1474 n.7. Under very similar circumstances, courts have, and indeed should, assume the application of French law before analyzing the factors set forth above. *Connex R.R. LLC v. AXACorproate Sols. Assurance*, No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050, at *33 (C.D. Cal. Feb. 22, 2017). Here, Defendants' French counsel who had reviewed the requests was prepared to submit a declaration, if permitted by Magistrate Judge Illman, attesting to the fact that the discovery sought was subject to the French Blocking Statute. Similarly, Defendants were prepared to submit a letter from the French Ministry of Justice, who is tasked with overseeing compliance with the French Blocking Statute, stating that Defendants' discovery obligations in this lawsuit are subject to French law. (ECF No. 91 at 6-7.) Thus, the evidence from the only party with actual knowledge of the location and origin of Defendants' documents made clear that French law applies. Indeed, Plaintiffs themselves sought the

---

[2]Loi 68-678 du 26 juillet 1968 relative à la communication de documents et renseignements d'ordre économique, commercial, industriel, financier ou technique à des personnes physiques ou morales étrangères [Law 68-678 of July 26, 1968, related to the disclosure to foreign natural or juridical person, of economic, commercial, industrial, financial or technical documents and information].

5

same documents and information at issue in a French discovery proceeding, including a seizure taking place at Vade Secure, SASU's offices in France, acknowledging that those documents originated from and are located *in France*. (*See* Pls.' Mot. for Preliminary Inj. at 24-25, ECF No. 31.) Thus, the Order's determination in this regard constitutes clear error, and Defendants' Rule 72 objections should be sustained.

Moreover, as noted above and addressed in more detail in Defendants' Motion for Leave, the Order should be vacated because it did not take into account key evidence. In particular, Defendants had no opportunity to introduce the declaration of Romain Seguy, the Chief Financial Officer of Vade SASU, whose sworn testimony states that company documents and information for both Vade SASU and Vade Inc. that are responsive to the discovery requests "are maintained and stored on servers located in France and/or originate from France," and that "source code, product development documents, financial information, human resources information, and IT information" for both companies "are stored and maintained on servers in France in the usual course of business." (Declaration of Romain Seguy in Support of Defendants' Motion for Leave ("Seguy Declaration") ¶ 7, ECF No. 121-10.) And Defendants had no opportunity to introduce the declaration of Jean-Dominique Touraille, whose sworn testimony states that the discovery sought by Plaintiffs is subject to the laws of France, and also discusses documents and ESI seized during an investigative search initiated by Proofpoint, Inc. and conducted by bailiffs at Vade SASU offices in France. (Declaration of Jean-Dominique Touraille ("Touraille Decl.") ¶¶ 42-43, 4-10, ECF No. 121-9.) And Defendants had no opportunity to provide a letter from the French Ministry of Justice advising Defendants of the scope and applicability of the French Blocking Statute, and further advising Defendants to proceed under the Hague Convention. (Dec. 13, 2019 Letter from French Ministry of Justice, ECF No. 121-5.) Such material evidence would have confirmed Defendants' assertions in the condensed briefing (ECF No. 91 at 5, 7) and at the hearing (*e.g.*, Hr'g Tr. at 4:1-6, 4:11-15, 12:19-13:6, 30:4-6, 31:21-32:8, ECF No. 121-2). Defendants did not have an opportunity to present material evidence or dispositive arguments relating to the same, and thus should have the opportunity to file a motion for reconsideration. *Richmark*, 959 F.2d at 1474 n.7; *Connex R.R. LLC*, 2017 U.S. Dist. LEXIS 215050, at *33 (assuming French law applied based on declarations from French counsel and communications

from the French Ministry of Justice).  Indeed, once those materials are considered on a motion for

reconsideration, if necessary, Defendants are likely to succeed in having the Order vacated in-part.

Similarly, Defendants are further likely to succeed on their arguments that the Order's

determinations of the seven factors considered for purposes of determining whether to apply Hague

Convention procedures were reached in error.  Each of those factors is addressed in turn below.

### b. Factors 1 and 2:  Importance of the documents or information requested and the scope of the requests

Regarding factors 1 and 2, the Court found that the discovery sought "is vital to Plaintiffs'

case" because Plaintiffs had not yet received any discovery.  (ECF No. 112 at 3.)  But none of the

cases cited by Plaintiffs or by the Court[3] held or reasoned that where a party had not yet obtained

discovery, factor 1 should weigh against proceeding under the Hague Convention.  As explained in

*Richmark* and cited by the Court, the inquiry focuses on whether the *outcome* of the litigation stands

or falls on the present discovery *order*.  *Richmark*, 959 F.2d at 1475;  (ECF No. 112 at 3).  In

*Richmark*, for example, the information sought was the subject of a state secret in China and thus

could not be disclosed at all.  *Richmark*, 959 F.2d at 1472, 1475.  Accordingly, the *Richmark* court

found that the order compelling disclosure was necessary to the outcome of the litigation under this

factor because absent the order the party "cannot hope to enforce the judgment."  *Id*. at 1475.  Here,

there is no evidence in the record or authority indicating that the outcome of the litigation stands or

falls on the present discovery order—i.e., whether discovery should proceed under Chapter II of the

Hague Convention or the Federal Rules of Civil Procedure.  To the contrary, this case is in its early

stages, with more than a year-and-a-half before trial, and, should the Court order the Parties to

proceed under Chapter II of the Hague Convention, the relevant authorities of record indicate that

production will proceed in a manner allowing for the Parties to obtain documents, information, and

deposition testimony necessary to litigate their claims and defenses.  *Salt River*, 303 F. Supp. 3d at

1009;  *Dentsply Sirona Inc. v. Edge Endo, LLC*, No. 17-1041 JFB/SCY, 2019 U.S. Dist. LEXIS

---

[3]Those cases include *BrightEdge Techs., Inc. v. Searchmetrics, GmbH*, No. 14-cv-01009-WHO (MEJ), 2014 U.S. Dist. LEXIS 112377, at *7-8 (N.D. Cal. Aug. 13, 2014);  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2014 U.S. Dist. LEXIS 151222, at *58-59 (N.D. Cal. Oct. 23, 2014);  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).

7

1    163360, at *13 (D.N.M. Sept. 17, 2019);  (ECF No. 91 at 6).  There is no indication that the Court

2    considered these authorities, and as set forth in Defendants' Motion for Leave, it was reversible error

3    not to do so.  *Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3;  *Mauia v. Petrochem Insulation, Inc.*,

4    No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894, at *6 (N.D. Cal. Nov. 21, 2018).  Moreover,

5    Defendants' proposal does not in any way seek to bar the production of responsive documents, which

6    was the case in the *Richmark* opinion cited by the Court.  *Richmark*, 959 F.2d at 1475; (ECF No. 112

7    at 3).  Accordingly, these factors weigh in favor of Defendants.

8                        **c.**      **Factor 3:  The location and/or origination of Defendants'**
                                     **documents**

9

10           Regarding factor 3, the Court adopted *Plaintiffs'* factual assertions about the location of

11   *Defendants'* documents and information, and determined that Defendants' "general disagreement"

12   was insufficient to meet their burden and thus found that factor 3 of the *Aerospatiale/Richmark* test

13   weighed in favor of Plaintiffs.  (ECF No. 112 at 3, 4.)  As mentioned above, Plaintiffs' arguments

14   under this factor were wholly speculative and contrary to the factual record.  Further, Defendants

15   had no opportunity to introduce additional material evidence relating to the location and origination

16   of the documents and information sought.   Such material evidence would have confirmed

17   Defendants' assertions in the condensed briefing (ECF No. 91 at 5, 7) and at the hearing (*e.g.*, Hr'g

18   Tr. at 4:1-6, 4:11-15, 12:19-13:6, 30:4-6, 31:21-32:8, ECF No. 121-2), which also would have

19   changed the outcome of factor 3 of the *Aerospatiale/Richmark* test.  *Sun Group U.S.A. Harmony*

20   *City, Inc. v. CRCC Corp. Ltd.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *8-9 (N.D.

21   Cal. Nov. 19, 2019);  *Richmark*, 959 F.2d at 1475 ("The fact that all the information to be disclosed

22   . . . are located in a foreign country weighs against disclosure . . . since those . . . documents are

23   subject to the law of that country in the ordinary course of business.").  The Order's determination

24   that this factor weighed against Defendants was erroneous as it was contrary to the record and made

25   without considering material evidence. *See Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3.

26                       **d.**      **Factor 4:  Alternative means of obtaining information**

27           Regarding factor 4, the Court found that unspecified "increased costs and delays" associated

28   with  proceeding  under  the  Hague  Convention  would  be  unduly  expensive  and  time

                                                      8

consuming.  (ECF No. 112 at 4.)  Plaintiffs, however, did not present any facts to support those speculative assertions.  And, to the contrary, Defendants had agreed to Plaintiffs' proposal which, according to Plaintiffs, would eliminate the risk of potential delays associated with the Chapter II procedures.  Further, the only authorities of record analyzing Chapter II of the Hague Convention found that "that Chapter II Hague procedures are a substantially equivalent alternative." *Salt River*, 303 F. Supp. 3d at 1009.

Further, and again, Defendants had no opportunity to introduce the Touraille Declaration, which explains that appointing a commissioner under Chapter II of the Hague Convention typically takes no more than two months in France, that discovery begins "immediately" after the commissioner is appointed, and that the Chapter II procedures involving the commissioner are flexible.  (Touraille Decl. ¶¶ 25-36.)  And Defendants had no opportunity to introduce correspondence between the Parties, which had narrowed the disputes on Chapter II procedures and, in Plaintiffs' words, "eliminate[d] the risk of potential delays associated with the commissioner's participation." (Jan. 29, 2020 Letter from Pak to Martin, ECF No. 121-4.)  Such material evidence relating to Chapter II of the Hague Convention would have confirmed Defendants' assertions in the condensed briefing (ECF No. 91 at 6-7) and at the hearing (*e.g.*, Hr'g Tr. at 17:14-19:4, 20:12-16, 21:1-25, ECF No. 121-2), and would have changed the outcome of factor 4 of the *Aerospatiale*/*Richmark* test because all of the cases and reasoning relied on by Plaintiffs and the Court related to the slower approach under Chapter I of the Hague Convention.  *E.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 151222, at *61 (referencing a report on the Hague Convention Chapter I (Letters of Request Procedures)).  The Court was not able to consider Defendants' material evidence because Defendants were not allowed to provide it, and there is no indication that the Court considered the relevant authorities balancing this factor in the context of Chapter II.  *Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3;  *Mauia*, 2018 U.S. Dist. LEXIS 198894, at *6.  Again, the determination that this factor weighed against proceeding under Chapter of the Hague Convention was error.

9

e.     **Factors 5 and 6:  French national interests and hardship to Defendants**

Similarly, regarding factors 5 and 6, Defendants had no opportunity to present material evidence relating to the French national interests or the hardship to Defendants, including:  (1) a letter from the French Ministry of Justice confirming that the French Blocking Statute punishes violations with a prison term of 6 months and a fine of 18,000 Euros (Dec. 13, 2019 Letter from French Ministry of Justice, ECF No. 121-5); (2) the Touraille Declaration, which explained examples of enforcements of the French Blocking Statute, the uncertainty surrounding recent increased scrutiny by French authorities in relation to the French Blocking Statute, and also the proceedings initiated by Proofpoint, Inc. in France involving the same issues and same documents at issue in the Motion to Compel  (Touraille Decl. ¶¶ 4-10, 17-24);  and (3) the Opinion of French law professor Antoine Gaudemet, which also explained examples of enforcements of the French Blocking Statute, and the uncertainty surrounding recent increased scrutiny by French authorities (Gaudemet Op., ECF No. 121-3).  Accordingly, with respect to factors 5 and 6, the Court did not consider material evidence because Defendants were not allowed to provide it.  *Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3.

Further, with respect to factor 5, while it is unclear why the Order focuses on "expense and associated delays" (ECF No. 112 at 4), the relevant authorities provide that a court should "consider expressions of interest by the foreign state, the significance of disclosure in the regulation of the activity in question, and indications of the foreign state's concern for confidentiality prior to the controversy." *Richmark*, 959 F.2d at 1476 (citations omitted).  The Court here did not consider these issues at all with respect to France, or the above-mentioned evidence, and still found that factor 5 did "not weigh heavily in either direction."  (ECF No. 112 at 4.)  If the Court had had the opportunity to fully consider the relevant authorities and evidence, this factor would have tipped heavily in favor of proceeding under Chapter II of the Hague Convention, and factor 5 is considered the most important factor.  *Salt River*, 303 F. Supp. 3d at 1009 ("Unlike the U.S. interests, which are unlikely to be impaired if Hague procedures are used, this French interest may be impaired if the Court simply orders discovery. This factor weighs in favor of utilizing Hague procedures."); *Richmark*, 959 F.2d at 1476 (explaining that this factor is the most important factor).  Moreover, the Order does not

10

1    discuss factor 6 at all, and so the Court did not consider material facts or dispositive arguments in

2    relation to both factors 5 and 6.  *Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3;  *Mauia*, 2018 U.S.

3    Dist. LEXIS 198894, at *6.

4               **f.      Factor 7:  The extent to which enforcement by action of either
                          state can reasonably be expected to achieve compliance with the
5                         rule prescribed by that state**

6           Regarding factor 7, the Court relied on *Richmark*, which did not involve analogous facts and

7    also ultimately found that factor 7 weighed *against* compelling disclosure.  *Richmark*, 959 F.2d at

8    1478.  But the Court did not consider relevant authorities and facts relating to compliance with an

9    order for the parties to proceed under Chapter II of the Hague Convention, particularly where the

10   producing party agrees to comply with or consents to the Hague procedures.  *E.g.*, *Salt River*, 303 F.

11   Supp. 3d at 1010;  *Dentsply*, 2019 U.S. Dist. LEXIS 163360, at *13-14;  (Hr'g Tr. at 41:25-42:6,

12   ECF No. 121-2);  *Gonzales*, 2018 U.S. Dist. LEXIS 76844, at *3;  *Mauia*, 2018 U.S. Dist. LEXIS

13   198894, at *6.

14          As set forth above and in the Motions for Relief, Defendants are likely to succeed on their

15   requests to have the Order vacated in-part, and thus a motion to stay is appropriate.  *See Perez*, 2018

16   U.S. Dist. LEXIS 27871, at *4;  *In re Nikon Corp.*, 2017 U.S. Dist. LEXIS 155692, at *6-7.

17              **2.      Because Defendants will suffer undue burden and irreparable harm if a
                          stay is not granted, the balance of hardships tips in Defendants' favor.**
18
            A party that produces documents or information in violation of the French Blocking Statute
19
     is subject to both civil and criminal penalties from the French authorities.  *See Salt River*, 303 F.
20
     Supp. 3d at 1006.  While Plaintiffs are fond of arguing that Defendants would not actually suffer
21
     those consequences, Plaintiffs fail to account for the fact that the French authorities are already aware
22
     of this proceeding.  Indeed, Plaintiffs themselves brought this matter to the French authorities
23
     attention by first seeking to obtain the same documents and information underlying this dispute
24
     through a French discovery proceeding.  (*See* Pls. Mot. for Preliminary Inj. at 24-25, ECF No. 31.)
25
     As a result, the French Ministry of Justice has already sent a letter to Defendants informing them that
26
     the French authorities were aware of Plaintiffs' discovery requests and advising Defendants to
27
     proceed through the Hague Convention.  (Dec. 13, 2019 Letter from French Ministry of Justice, ECF
28

                                                        11

No. 121-5.).  Thus, if Defendants are required to produce documents and information in violation of French law, they would be subjecting themselves to the real possibility of prosecution.  That harm cannot be undone or otherwise cured after the fact, and creates an unnecessary and undue burden on Defendants.

On the other hand, a stay while the Court considers Defendants' Motions for Relief would not result in any prejudice to Plaintiffs.  This proceeding is still in its early stages and fact discovery is not set to close until December 2020.  (Pretrial Preparation Order at 1, ECF No. 63.)  Accordingly, staying discovery as requested would not prejudice Plaintiffs' ability to prepare their case under the current schedule.  Moreover, as Defendants have explained to Plaintiffs repeatedly, the procedures under Chapter II of the Hague Convention being proposed by Defendants will not result in delay of the discovery process or limit the scope of discovery that might otherwise be available.  Thus, while Defendants will suffer irreparable and undue harm absent a stay, Plaintiffs will not suffer any prejudice, and as a result, the balance of hardships associated with granting this motion to stay tips decidedly in Defendants' favor.

## III.    CONCLUSION

The Magistrate Judge's January 31, 2020 Order (ECF No. 112) requires Defendants to produce documents and information in a manner that would violate French law and expose Defendants to civil and criminal penalties.  For the reasons set forth above and in the Motions for Relief, the Order was reached in error and should be vacated in-part.  To prevent the irreparable harm and undue burden that Defendants would incur while those motions are being considered and decided upon, Defendants respectfully request, for good cause shown herein, that this Motion to Stay be granted.  *See Perez*, 2018 U.S. Dist. LEXIS 27871, at *4;  *In re Nikon Corp.*, 2017 U.S. Dist. LEXIS 155692, at *6-7.

12

1   Dated: February 14, 2020

                          **BAKER & McKENZIE LLP**

By: /s/ *Bart Rankin*

Colin H. Murray (SBN 159142)
  colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:      +1 415 576 3000
Facsimile:       +1 415 576 3099

Danielle L. Benecke (SBN 314896)
  danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:      +1 650 856 2400
Facsimile:       +1 650 856 9299

Jay F. Utley (Admitted *Pro Hac Vice*)
  jay.utley@bakermckenzie.com
Bart Rankin (Admitted *Pro Hac Vice*)
  bart.rankin@bakermckenzie.com
Mackenzie M. Martin (Admitted *Pro Hac Vice*)
  mackenzie.martin@bakermckenzie.com
John G. Flaim (Admitted *Pro Hac Vice*)
  john.flaim@bakermckenzie.com
Chaoxuan Liu (Admitted *Pro Hac Vice*)
  charles.liu@bakermckenzie.com
Mark Ratway  (Admitted *Pro Hac Vice*)
  mark.ratway@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone:      +1 214 978 3000
Facsimile:       +1 214 978 3099

*Attorneys for Defendants*
*Vade Secure, Incorporated; Vade Secure SASU;*
*and Olivier Lemarié*

13