Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC <br><br> Plaintiffs, <br><br> v. <br><br> VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ <br><br> Defendants. | CASE NO. 3:19-cv-04238-MMC-RMI <br><br> **PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS':** <br> (1) **MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION (DKT. 121);** <br> (2) **MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 122); AND** <br> (3) **MOTION TO STAY RELATED DISCOVERY (DKT. 123)** |

1

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ....................................................................................................2

A.  The Order Applies Relevant Facts to Established Precedent to Arrive at Conclusions Within the Court's Discretion, and is Not Clearly Erroneous or Contrary to Law ..................2

1.  Recognizing that Defendants' Hague Proposal is Problematic and Will Cause Undue Prejudice to Plaintiffs is Not Clear Error or Contrary to the Law..........................................3

2.  The Order Contains No Error or Mistake Regarding the Location of Discovery ..........5

3.  Defendants' Motions and Untimely Exhibits Do Not Suggest Any Clear Error or Mistake By and, Instead, Supports the Findings in the Order................................................7

a)  The Seguy Declaration..................................................................9

b)  The Gaudemet Opinion and Touraille Declaration..............................................10

c)  The French Ministry of Justice Letter................................................................12

B.  The Court Properly Considered All Material Facts and Dispositive Arguments Presented To The Court Before The Order ........................................................................12

C.  Defendants' Motions Further Evince Their Pattern of Intentional, Unnecessary Delay and No Stay Should Be Granted ........................................................................14

1.  The Likelihood of Success of the Pending Motions ...................................................14

2.  The Harm to Opposing Parties if the Stay is Granted .................................................15

3.  The Threat of Irreparable Harm if the Stay is Not Granted .......................................17

4.  Any Risk of Harm to the Public Interest ....................................................................18

III.  CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adidas (Canada) Ltd. v. SS Seatrain Bennington*,
   1984 WL 423 (S.D.N.Y. May 30, 1984)................................................................ 12

*Advanced Microtherm, Inc. v. Norman Wright Mech.*,
   2010 WL 10133699 (N.D. Cal. Sept. 22, 2010)...................................................... 17

*Aguilar v. Int'l Longshoremen's Union Local #10*,
   966 F.2d 443 (9th Cir. 1992)................................................................................ 10

*Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*,
   138 S. Ct. 1865 (2018) .................................................................................. 10, 12

*Autodesk, Inc. v. ZWCAD Software Co.*,
   2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) .......................................................... 3

*Bayer v. Neiman Marcus Grp., Inc.*,
   Case No. 13-cv-04487-MEJ, 2018 WL 10425912 (N.D. Cal. Jul. 30, 2018) ................ 8, 13, 15

*Bodner v. Banque Paribas*,
   202 F.R.D. 370 (E.D.N.Y. 2000) .......................................................................... 12

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*,
   Case No. 14-cv-01009-WHO(MEJ), 2014 WL 3965062 (N.D. Cal. Aug. 13, 2014)................ 2

*Campbell v. City of Milpitas*,
   Case No. 13-cv-03817-BLF, 2015 WL 3396809 (N.D. Cal. May 22, 2015)...................... 13

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2015 WL 8477293 (N.D. Cal. Dec. 10, 2015) .................................................. 8, 13, 15

*Clements v. Airport Authority of Washoe Cty*,
   69 F.3d 321 (9th Cir. 1995).......................................................................... 17, 18

*Fenerjian v. Nong Shim Co., Ltd.*,
   2016 WL 245263 (N.D. Cal. Jan. 21, 2016) ............................................................ 18

*Hanni v. Am. Airlines, Inc.*,
   2009 WL 1505286 (N.D. Cal. May 27, 2009) .......................................................... 17

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ............................................................................................ 11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   278 F.R.D. 51 (E.D.N.Y. 2010) ...................................................................... 12, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL, No. 1917, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014).......................... *passim*

Kona Enters., Inc. v. *Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000)...................................................................... 8, 13, 15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009).............................................................................. 13

*Oracle America, Inc. v. Google, Inc.*,
   2011 WL 3794892 (N.D. Cal. Aug. 26, 2011)........................................................ 17

*Ou-Young v. Rea*,
   2014 WL 129267 (N.D. Cal. Jan. 14, 2014) .......................................................... 15

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992).................................................................. 2, 6

*Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*,
   303 F. Supp. 3d 1004 (D. Ariz. 2018)...................................................... 5, 6

*Société Nationale Industrielle Aérospatiale v. U.S. District Court*,
   482 U.S. 522 (1987) .................................................................................. 2, 18

*Soriano v. Countrywide Home Loans, Inc.*,
   2011 WL 2175603 (N.D. Cal. Jun. 2, 2011) .............................................. 8

*Strauss v. Credit Lyonnais, S.A.*,
   249 F.R.D. 429 (E.D.N.Y. 2008) ................................................................ 12

*Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation Ltd.*,
   No. 17-cv-02191-SK, 2019 WL 6134958 (N.D. Cal. Nov. 19, 2019) ...... 6, 7

*Van Der Salm Bulb Farms, Inc. v. Hapag Lloyd, AG*,
   818 F.2d 699 (9th Cir. 1987) ...................................................................... 10

## Rules and Regulations

Fed. R. Civ. P. 26 .............................................................................................. 7

Fed. R. Civ. P. 34 .............................................................................................. 7

Fed. R. Civ. P. 72 ......................................................................................... 2, 16

Civil L.R. 7-9 ............................................................................................ 12, 13, 15

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS (DKTS. 121–123) RE DISCOVERY ORDER (DKT. 112)

## I.  <u>INTRODUCTION</u>

Discovery in this action opened on October 9, 2019.  Since then, Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Proofpoint") have pressed Defendants to comply with their discovery obligations, yet to this date, Defendants have not produced a single document or a single line of source code for review, and have largely ignored Plaintiffs' interrogatories—despite submitting multiple declarations from their employees in connection with their opposition to Plaintiffs' pending motion for preliminary injunction.  The basis of Defendants' disregard for their discovery obligations has been the allegation that Defendants' hands are tied by foreign blocking statutes that prohibit them from providing discovery in this case unless Plaintiffs agree to proceed through unduly burdensome and constrictive procedures under the Hague Convention on the Taking of Evidence Abroad ("Hague").  (*See, e.g.*, Dkt. 78 at 5-7.)  Finally, on January 31, 2020, after reviewing the parties' written submissions and hearing extensive oral argument, Magistrate Judge Illman determined that the facts and law "weigh in favor of proceeding under the Federal Rules of Civil Procedure rather than utilizing Hague Convention procedures."  (Dkt. 112 (the "Order").)

The Order is well supported by numerous decisions and precedent from the Supreme Court, Ninth Circuit, and other courts in this District, and is based on a consideration of all facts and arguments presented to Magistrate Illman.  Notably, Magistrate Illman weighed all the relevant factors and considered all of the relevant evidence in arriving at his rulings.  Thus Magistrate Illman's rulings are far from clearly erroneous or contrary to the law, yet Defendants have nevertheless brought three, largely repetitive, motions that attempt to reopen and relitigate the decided issue that discovery in this action should proceed under the Federal Rules.  Worse yet, Defendants failed to comply with the Order and have still not produced any discover in this action.  The motions include Defendants':

- Motion for Leave to File a Motion for Reconsideration (Dkt. 121 ("Motion For Leave"));
- Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge (Dkt. 122 ("Motion For Relief")); and
- Motion to Stay Related Discovery Pending Final Disposition of Defendants' Motion for Relief (Dkt. 123 ("Motion For Stay")) (collectively, the "Motions").

1        Not one of Defendants' Motions raises any meritorious or cognizable theory for

2   reconsideration, vacatur, or stay of the Order.  As the Ninth Circuit and courts in this District have

3   explained, the relief sought by Defendants "is an 'extraordinary remedy, to be used sparingly in the

4   interests of finality and conservation of judicial resources" and appropriate only under "extraordinary

5   circumstances."  Defendants' Motions fail to come close to this standard or otherwise establish any

6   manifest failure by Magistrate Illman to consider any material facts or law.  At bottom, Defendants

7   fail to show that any ruling in the Order is clearly erroneous or contrary to the law.  Instead,

8   Defendants rely on facts and arguments that were already presented, considered, and rightly rejected

9   by Magistrate Illman—based on his sound discretion and not a contravention of the law.  Indeed,

10  Defendants' Motions raise all of the same arguments routinely raised by other foreign litigants

11  seeking contravention of their discovery obligations under the Federal Rules—arguments that are

12  consistently rejected by the courts in this District and others.

13       Defendants' motions should therefore be denied and they should be ordered to comply with

14  the Order immediately.

15  **II.**   **ARGUMENT**

16    **A.  The Order Applies Relevant Facts to Established Precedent to Arrive at Conclusions Within the Court's Discretion, and is Not Clearly Erroneous or Contrary to Law**

17

18       In order to modify or set aside any part of the Order, the Court must determine that such "part

19  of the order [] is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  Far from being clearly

20  erroneous or contrary to law, however, the Order soundly applies facts and evidence to well-

21  established precedent from the Supreme Court, Ninth Circuit, and other courts in this District—many

22  of which addressed the same exact French law at issue here.  *See, e.g.*, *Société Nationale Industrielle*

23  *Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987); *Richmark Corp. v. Timber Falling*

24  *Consultants*, 959 F.2d 1468 (9th Cir. 1992); *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, Case

25  No. 14-cv-01009-WHO(MEJ), 2014 WL 3965062 (N.D. Cal. Aug. 13, 2014); *In re Cathode Ray*

26  *Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. 07-cv-5944-SC, 2014 WL 5462496, at *6–7 (N.D.

27  Cal. Oct. 23, 2014); *see also* Order at 2–4.  Defendants have articulated no facts or evidence that

28  would suggest clear error by Magistrate Illman or that his rulings in the Order are contrary to law.

Thus, Defendants' Motion For Relief (Dkt. 122) should be denied and overruled.

1. *Recognizing that Defendants' Hague Proposal is Problematic and Will Cause Undue Prejudice to Plaintiffs is Not Clear Error or Contrary to the Law*

Defendants argue that Magistrate Illman committed clear error by recognizing Plaintiffs' concerns regarding undue prejudice—particularly the asymmetrical costs and delays that would be borne only by Plaintiffs were the parties ordered to proceed with discovery through the Hague.  (Dkt. 122 at 2[1].)  But contrary to Defendants' allegations, Plaintiffs' concerns are substantiated, including through Defendants' own admissions and submissions, as well as established precedent.  Thus, the Court has not committed any error or mistake by acknowledging the inadequacies of Defendants' Proposed Order (Dkt. 121-7) and Proposed Request (Dkt. 121-8).

Far from being "unsubstantiated," Plaintiffs have repeatedly and consistently described the unduly prejudicial delay, costs, and limited scope of discovery under Hague procedures, as well as cited legal precedent recognizing these shortcomings.  (*E.g.*, Dkt. 78 at 12; Dkt. 91 at 4-5 (quoting *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 1928184, at *6 (N.D. Cal. Mar. 27, 2015); *In re Cathode Ray Tube (CRT)*, 2014 WL 5462496, at *6–7); Dkt. 121-2 at 45:3–18; Dkt. 121-4 at 2.)  Thus, Defendants' contention that Plaintiffs' concerns are without support, or are somehow "contrary to [] prior representations," is a brazen misrepresentation of the record.  (*Cf.* Dkt. 122 at 3.)  After months of correspondence and telephonic and in-person meet-and-confers, Defendants are well aware of the inadequacies and defects with the proposed Hague procedures that Plaintiffs have repeatedly noted to them.  (*E.g.*, Dkt. 78 at 12; Dkt. 121-4 at 2; Dkt. 121-2 at 45:7–18.)

In fact, Defendants' own statements and submissions—including their Proposed Order (Dkt. 121-7) and Proposed Request (Dkt. 121-8)—***validate*** Plaintiffs' concerns.  Specifically, Defendants have admitted that their Hague proposal may result in departures from discovery under the Federal Rules.  (*E.g.*, Dkt. 78-13 at 3 ("Conducting discovery through a Commissioner appointed under Article 17 is not meant to (and cannot) serve as a perfect substitute for discovery under the Federal Rules of Civil Procedure.").)  For example, as to Plaintiffs' concerns of undue delay, Defendants' Proposed Request "[r]ecogniz[es] that the Commission will require a reasonable period of time to analyze and approve discovery requests and deposition notices subject to this Request, and further

---

[1] Citations to prior filings and docket entries refer to ECF-generated pagination.

recogniz[es] that the Commissioner will require a reasonable period of time to review and authorize responses, productions, and/or disclosures made by the responding party(ies) . . . ." (Dkt. 121-8 at 7.)  Moreover, Defendants' untimely Touraille Declaration[2] concedes that, under the Hague, "the collection of evidence from [the producing party] is performed in compliance with the law of the state where the evidence is taken"; and "[r]equests for authorizations [to take evidence] are evaluated by the Office for International Judicial Cooperation in Civil and Commercial Matters on a case-by-case basis."  (Dkt. 121-9 ¶¶ 29, 33.)   As Plaintiffs repeatedly explained to Defendants, other undue burdens, delays, costs, and discovery asymmetries under Defendants' Hague proposal—which would apply only to Plaintiffs, while Defendants proceed with discovery under the Federal Rules—include:

- Uncertain availability of discovery, particularly source code and other highly confidential information (*e.g.*, Dkt. 121-7 (Defendants' Proposed Order) ¶ 5 (discoverable materials are "subject to the Commissioner's authorization with respect to Plaintiffs' Discovery Requests"); Dkt. 121-8 (Defendants' Proposed Request) at 8 ("With respect to source code, production of source code and its location are subject to the approval of the Commissioner."); Dkt. 121-9 (Touraille Decl.) ¶ 35 ("The evidence must be taken in a room to which the public has access . . . ."));

- Costs, delay, and burden associated with the logistics of obtaining discovery (*e.g.*, Dkt. 121-9 (Touraille Decl.) ¶ 35 ("The evidence must be taken within the precincts of the Embassies . . . ."));

- Defendants' selection and proposal of a French Commissioner to "review and approve Plaintiffs' discovery requests" and oversee collection of the evidence (*e.g.*, Dkt. 121-7 (Defendants' Proposed Order) ¶ 1.a; Dkt. 121-9 (Touraille Decl.) ¶ 37);

- Costs and fees associated with engaging the private French Commissioner, who 'is often a French attorney or court reporter" (*e.g.*, Dkt. 121-9 (Touraille Decl.) ¶ 31)[3];

---

[2]  *See infra*, n.7.

[3]   Although Defendants' Proposed Request indicates that the "Parties [are] discussing arrangements" regarding the Commissioner's fees, there have been no communications from Defendants, let alone an agreement, on the subject.  (*Cf.* Dkt. 121-8 at 10.)

- Undue Burden, delay, and costs associated with the French Commissioner's participation in French **and U.S.** depositions (*e.g.*, Dkt. 121-8 (Defendants' Proposed Request) at 9 ("The Commissioner will be required to attend depositions subject to the Article 17 process.  Individuals domiciled and/or residing in the United States will, if otherwise unchallenged, be presented for deposition in the United States, subject to the authorization of the Ministére de la Justice."));

- Delay resulting from needing to obtain authorizations from French tribunals to collect discovery (*e.g.*, Dkt. 121-9 (Touraille Decl.) ¶ 34 ("In my experience these requests are typically granted . . . within approximately two months of the U.S. court's appointment of the Commissioner.")); and

- Asymmetrical privileges and protections available only to Defendants (*e.g.*, Dkt. 121-7 (Defendants' Proposed Order) ¶ 5 (excluding from discovery "documents, ESI, and/or responses that are subject to any objection or claim of privilege Defendants may be entitled to assert")).

Despite being aware of these departures from the Federal Rules, Defendants continue to deny any substantive differences and mislead the Court into believing their proposal will simplify discovery.  (*See, e.g.*, Dkt. 121-2 at 38:9–39:5.)  Notably, Defendants' proposal provides fodder for further delay and cost, including litigation of issues relating to foreign law.  Specifically, Defendants' proposal expressly reserves all "privileges, rights, protections, or prohibitions that may apply to that evidence under the laws of France, Europe, the United States, or any State within the United States." (Dkt. 121-7 (Defendants' Proposed Order) ¶ 8; *see also* Dkt. 121-8 (Defendants' Proposed Request) at 9.)  In contrast, the Order to proceed under the Federal Rules avoids the risk of continuing litigation of foreign laws in U.S. discovery, and is the clearest, most expeditious, and fairest path for discovery.

2.   *The Order Contains No Error or Mistake Regarding the Location of Discovery*

In contrast to the extensive precedent compelling discovery under the Federal Rules in similar factual circumstances, Defendants' Motion For Relief relies on a single, non-binding, factually distinguishable opinion in which discovery was ordered under Hague procedures.  (Dkt. 123 (citing *Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004 (D.

1   Ariz. 2018).)  But in fact, *Salt River* supports Plaintiffs' position and the Order.  In *Salt River*, the

2   French defendant-corporation, Trench–France, agreed that its Canadian affiliate, defendant Trench–

3   Canada, would "produce all relevant information in its possession **without the need for Hague**

4   **procedures**."  *Id*. at 1008 (emphasis added); *see also id*. at 1010 ("Trench-Canada will produce

5   documents and ESI without awaiting compliance with the Hague procedures").  Here, as Plaintiffs

6   noted and Magistrate Illman recognized, Vade Secure, Inc. is a U.S. subsidiary and all three

7   Defendants are subject to this Court's jurisdiction, based at least on their extensive domestic activities.

8   (Order at 3.)  Thus, *Salt River* is distinguishable and, further, illustrates Defendants' unreasonableness

9   in refusing to comply with discovery requests, particularly those directed to Vade Secure, Inc.

10          Defendants' facts (including the untimely Seguy Declaration) and argument alleging that

11   Hague procedures are necessary to obtain discovery that purportedly originated[4] or is stored in France

12   is unavailing.  As Plaintiffs have explained, the dispositive inquiry is whether the discovery is

13   accessible from within the United States.  (*E.g.*, Dkt. 121-2 at 36:6–17; *see also Sun Group U.S.A.*

14   *Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-cv-02191-SK, 2019 WL 6134958, at *5 (N.D. Cal.

15   Nov. 19, 2019) ("Therefore, to the extent Defendant or CRRC North America Incorporated can access

16   Defendant's electronically stored documents from computers located in the United States which are

17   responsive to Plaintiff's discovery requests, Defendant is obligated to do so pursuant to the Federal

18   Rules of Civil Procedure.  **Even if documents are electronically stored on servers located in China,**

19   **their location is merely virtual**." (emphasis added)).

20          It is undisputed that the discovery sought is readily available within and accessible from the

21   United States, at least through San Francisco-based Vade Secure, Inc.  (*See, e.g.*, Dkt. 121-10 (Seguy

22

23   ──────────────────

24          [4]   As the Ninth Circuit illustrated in *Richmark*, the factor that analyzes "whether the
     information originated in the United States" is an inquiry into the **current** location of information and

25   parties.  *Richmark*, 959 F.2d at 1475.  And, as *Richmark* shows, discovery should proceed under the
     Federal Rules even when the foreign party that "has no United States office," "[a]ll of its

26   employees . . . are located in the [foreign country]," and "all the information to be disclosed (and the
     people who will be deposed or who will produce the documents) are located in a foreign country [and]
     subject to the law of that country in the ordinary course of business."  *Id*.

27          The facts in this case—which involve a defendant U.S. corporation, U.S. resident, and
     employment in the U.S., and discovery readily available and accessible in the U.S.—present an even

28   clearer situation for discovery under the Federal Rules.

Decl.) ¶¶ 5, 7.)  That is, Defendants admit that Defendant Vade Secure, Inc., which is organized under the laws of California and has its principal place of business in San Francisco, stores its corporate documents and emails on servers in France, together with emails and documents for Vade Secure SASU.  (*Id.*; Dkt. 75 ¶ 15.)  It is untenable that discovery of a U.S. entity would proceed by any means other than the Federal Rules.  *See* Fed. R. Civ. P. 26, 34.  To require Plaintiffs to proceed under the Hague or otherwise apply French law to obtain the discovery would create unsettling precedent that invites future discovery abuses.  For example, under such a holding, so long as a U.S. litigant has a related foreign entity or access to a foreign server, it may force its adversary to undertake expensive and time-consuming Hague procedures—even for discovery that is otherwise readily available and accessible in the United States.  This is not the law, and Defendants' arguments and facts regarding the location of electronically-held discoverable information should be rejected, consistent with U.S. precedent.  *See, e.g.*, *Sun Group U.S.A.*, 2019 WL 6134958, at *5.

Finally, whether the discoverable information originated in or is stored in France appears to be immaterial under the French Blocking Statute, which, as Defendants agree, is concerned only with the use of the information—not its provenance.  (*E.g.*, Dkt. 121-3 (Gaudemet Opinion) at 24 ("[T]he Article . . . makes no distinction between either the mode of disclosure . . . or on the basis of the subject-matter of the documents or information . . . subject to the sole proviso that the purpose of the disclosure of such documents or information is 'with a view to establishing evidence in foreign judicial or administrative proceedings or in relation thereto.'").)

### 3. Defendants' Motions and Untimely Exhibits Do Not Suggest Any Clear Error or Mistake By and, Instead, Supports the Findings in the Order

Finally, Defendants' Motions and associated exhibits fail to set forth any cognizable reason to set aside the Order.  In fact, Defendants' arguments and exhibits lend additional support for Magistrate Illman's findings and Order, and thus do not evince any error or mistake.  Specifically, Defendants submitted the following materials, which were presented to this Court for the first time through Defendants' Motion For Leave (Dkt. 121):  (1) the declaration of Jean-Dominique Touraille (Dkt. 121-9) ("Touraille Declaration"); (2) a letter from the French Ministry of Justice (Dkt. 121-5); (3) the declaration of Romain Seguy (Dkt. 121-10) ("Seguy Declaration"); (4) an opinion of Antoine

Gaudemet (Dkt. 121-3) ("Gaudemet Opinion"); and (5) purportedly "dispositive arguments relating to the same" (Dkt. 121 at 5).

As an initial matter, Defendants' exhibits are improper and untimely submitted, and, thus, should not be considered by the Court.  *See, e.g.*, *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 2175603, at *2 (N.D. Cal. Jun. 2, 2011) ("Plaintiff had waived his right to present the arguments and evidence included in his motion for reconsideration because he had not raised them in opposition . . . .").  Adherence to this principle is critical to prevent parties from endlessly relitigating the same issues, which would cause tremendous misuse of judicial resources, delay, and costs.  *See, e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, Case No. 13-cv-04487-MEJ, 2018 WL 10425912, at *1 (N.D. Cal. Jul. 30, 2018) ("A motion for reconsideration is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.") (quoting *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 8477293, at *2 (N.D. Cal. Dec. 10, 2015); *Kona Enters. V. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

Here, there is no dispute that these exhibits were first presented two weeks after the hearing and issuance of the Order.  (*E.g.*, Dkt. 121 at 4-5.)  Moreover, Defendants do not contest that the exhibits were known and available to Defendants well before the hearing and Order.[5]  The prior availability of the exhibits is evident from the exhibits themselves and Defendants' admissions:

- The Touraille Declaration was executed on January 27, 2020 (Dkt. 121-9 at 11);

- The French Ministry of Justice Letter is dated December 13, 2019 and the certified English translation was issued on December 30, 2019 (Dkt. 121-5 at 4-5);

- The Seguy Declaration was available, and its content known, to Defendants before January 31, 2020 (Dkt. 121-2 at 12:20–22);

- The Gaudemet Opinion is dated December 26, 2019 and the certified English translation was issued on January 6, 2020 (Dkt. 121-3 at 38); and

---

[5] Tellingly, Defendants' Motion For Leave does not (and cannot) credibly argue that the exhibits or related argument are new facts or argument, or were somehow unavailable at the time of the Order. (Dkt. 121 at 3–4 (bringing Motion For Leave under Civil Local Rule 7-9(b)(3)).

1

2

- Defendants' arguments related to the exhibits were presented in the joint letter from January 6, 2020, as well as the hearing (Dkt. 121 at 4).

3   Despite the fact that the exhibits were available before the hearing and Order, Defendants

4   failed to submit them—or to even ask for leave to submit them.[6]  Instead, in reviewing Defendants'

5   statements, it is apparent that they intentionally took a wait-and-see approach, with disregard for

6   finality.  (*E.g.*, Dkt. 121-2 at 12:20–23 ("focusing on the notion that the documents and information

7   requested here do indeed originate in France and we have declarations to support, although we haven't

8   been able to submit those as of yet").)  It is especially telling that Defendants offered supplemental

9   briefing and submissions on other issues but not the exhibits.  (*E.g.*, Dkt. 121-2 at 44:13–45:2

10  (Defendants offering supplemental submissions regarding Plaintiffs' concerns under the Hague).)

11  Nevertheless, the exhibits ultimately either support the Order or, at a minimum, do not present

12  any facts that warrant modification or setting aside any part thereof.

13  a)   The Seguy Declaration

14  Defendants' Motions and exhibits support the Court's Order by implicitly reiterating that

15  Defendants face no real risk of prosecution under the French law.  For example, in support of their

16  Motion For Leave, Defendants submit yet another sworn declaration from a French employee of

17  French Defendant Vade Secure SASU, the Seguy Declaration.  (Dkt. 121-10 (Seguy Decl.).)

18  Defendants filed the Seguy Declaration, which relates to cybersecurity providers and products,

19  intending it to be used in the U.S. proceeding.  Thus, as with Defendants' prior declarations and

20  factual submissions (*e.g.*, Dkt. 91 at 5; Dkts 72-5, 72-7–72-9; Dkt. 78 at 12–13), Defendants continue

21

22  _____

[6] Defendants' argument that Magistrate Judge Illman's Standing Order somehow prevented them from presenting facts to the Court is merely a hindsight effort to justify their inaction and, thus, must be rejected.  (*Cf.* Dkt. 121 at 3-4.)  Defendants had many opportunities to present the facts to the Court before the Order, while complying with the Standing Order.  The Standing Order's prohibition on exhibits applies only to the parties' initial filing, the joint discovery letter; and, while the joint letter is generally limited to five pages, the Standing Order provides that litigants may seek leave to exceed the page limit.  (Illman Standing Order at 13(a).)  As the Standing Order further explains, "[o]n receipt of the joint letter, the court will determine what further proceedings are necessary." (*Id.*)  Here, the Court determined that the appropriate "further proceeding[]" is a hearing whereby the parties were given ample opportunity to discuss their facts and legal arguments with the Court.  (*E.g.*, Dkt. 121-2 at 44:8–10.)  In fact, the Court specifically solicited the parties' positions on each of the *Aerospatiale* factors (Dkt. 121-2 at 27–46) and ultimately devoted over an hour of the hearing on this issue alone.  In sum, the Standing Order, as well as the proceedings specifically ordered for this dispute, provided plenty of opportunity for Defendants to raise their facts and legal arguments had they truly believed they were material or dispositive.

1   to take actions (i.e., filing the Seguy Declaration) that violate the very French law they purportedly

2   seek to avoid.  Indeed, another of Defendants' untimely exhibits, the Gaudemet Opinion, states, "the

3   [blocking statute] as ultimately adopted makes no distinction between either the mode of disclosure—

4   which may be in writing, oral or 'in any other form' and may be either direct or indirect—or on the

5   basis of the subject-matter of the documents or information—which may be economic, commercial,

6   industrial, financial or technical—subject to the sole proviso that the purpose of the disclosure of such

7   documents or information is 'with a view to establishing evidence in foreign judicial or administrative

8   proceedings or in relation thereto.'"  (Dkt. 121-3 at 24.)  Defendants' employee declarations thus

9   clearly fall within the scope of the French law.  The only "unsubstantiated" concerns in this dispute

10  are Defendants' purported fears of prosecution under the French law.

11          b)  The Gaudemet Opinion and Touraille Declaration

12          Defendants' Gaudemet Opinion and Touraille Declaration also do not support the finding of

13  any error or mistake in the Order.  Specifically, to justify their broad use of foreign law as both sword

14  and shield, Defendants rely on the Gaudemet Opinion[7], containing statutory interpretation opinions

15  from a French law professor (Dkt. 121-3), and Touraille Declaration, containing legal opinions from

16  Defendants own attorneys (Dkt. 121-9)—neither of which are legal authority in the United States or

17  France.  In fact, the Gaudemet Opinion and Touraille Declaration are legal advocacy no different than

18  any other attorney argument and, as such, are not evidence.[8]

19

20

---

21          [7]  Despite that Defendants have not described Mr. Gaudemet's credentials or explained why this
    Court should be persuaded by him, he is, at best, an expert providing an opinion regarding matters of
22  law for the court's determination.  Such opinions are routinely found to be "inappropriate subjects for
    expert testimony" and "utterly unhelpful," and should be similarly disregarded here.  *Aguilar v. Int'l*
23  *Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992); *see also Animal Science Prods.,*
    *Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1865 (2018) ("[A] court's determination of
24  foreign law 'must be treated as a ruling on a question of law.'" (citation omitted)); *Van Der Salm*
    *Bulb Farms, Inc. v. Hapag Lloyd, AG*, 818 F.2d 699, 701 (9th Cir. 1987) ("Statutory interpretation is
25  a question of law.  The opinion of an expert does not convert a question of law into a question of
    fact.") (citations omitted).
26
    [8]  Additionally, Defendants' untimely declarations (Dkts. 121-3, 121-9, 121-10) raise serious
27  questions of bias and motivation, particularly with respect to the declaration of Mr. Touraille, a
    partner with the law firm representing Defendants and the leader of the firm's Litigation & Arbitration
28  Practice Group.  (Dkt. 121-9 ¶ 1.)

Substantively, Messrs. Gaudemet and Touraille's submissions are neither correct nor availing. As an initial matter, both opinions incorrectly assume that French law should be applied in this U.S. proceeding and, further, offer fundamentally deficient[9] and speculative analyses.  Even setting aside the fundamental flaws in Defendants' submissions, Mr. Gaudemet opines that the French Blocking Statute is *intended* to allow French litigants to make arguments and claims *against U.S. entities in U.S. courts while simultaneously protecting French nationals from having to provide any discovery*.  (Dkt. 121-3 at 25 ("[The French Blocking Statute] cannot however strictly prevent French [litigants] from applying to US courts for an order with regard to the acts of a US national . . . .  That is why it should be considered that [the French Blocking Statute] is incapable of preventing a party to proceedings from setting out its own version of the facts, asserting claims and advancing factual arguments . . . .").)  But such one-sided "justice" is antithetical to the U.S. legal system, which has long established that "[d]iscovery, in other words, is not a one-way proposition" and "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The Gaudemet Opinion and Touraille Declaration serve only to highlight Defendants' attempt to unnecessarily inject inapplicable French legal issues into this U.S. litigation, conflating this case with French proceedings, and ultimately introducing delay.

The fact is that this Court need not interpret the French statutes, much less delve into French statutory interpretation and legislative intent as suggested by Mr. Gaudemet—because overwhelming U.S. precedent already supports the findings in the Order regarding inapplicability of the French law. Indeed, courts in this District have found that the French Blocking Statute "does not subject defendants to a realistic risk of prosecution." *In re Cathode Ray Tube (CRT)*, 2014 WL 5462496, at *6–7.  Consistent with similar findings from other courts regarding the French Blocking Statute, the

---

[9] For example, Mr. Gaudemet only addresses the subject-matter jurisdiction (*ratione materiae*) conveyed by the French statutes, and fails to consider other aspects of jurisdiction required for a French tribunal to prosecute under the French Blocking Statute, such as personal jurisdiction (*ratione personae*) and territorial jurisdiction (*ratione territoriae*) or venue.  As this Court correctly considered and noted, there are facts in this case that raise jurisdictional concerns.  (*See* Order at 4.)  That is, Defendants include a U.S. corporation, Vade Secure, Inc., and U.S. resident, Lemarié (pertaining to his actions in the U.S. while employed at two separate U.S. companies); and Defendants have not disputed that the discovery is accessible and available from within the U.S.  (*E.g., id.*; Dkt. 121-2 (Hr'g Tr.) 30:15–31:17.)

1    *In re CRT* court explained that "the legislative history of the Blocking Statute 'gives strong indications

2    that it was never expected or intended to be enforced against French subjects but was intended rather

3    to provide them with tactical weapons and bargaining chips in foreign courts.'" *Id.* (quoting *Adidas*

4    *(Canada) Ltd. v. SS Seatrain Bennington*, 1984 WL 423, at *3 (S.D.N.Y. May 30, 1984)).

5              c)  The French Ministry of Justice Letter

6         Defendants' French Ministry of Justice Letter (Dkt. 121-5), which contains nothing more than

7    an advisory opinion, also does not suggest any error or mistake in the Order.  As the Supreme Court

8    cautioned, this Court (as with all federal courts) "is neither bound to adopt the foreign government's

9    characterization nor required to ignore other relevant materials," including the opinions and findings

10   from other federal courts.  *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865,

11   1868 (2018).  That is, this Court need not give deference or particular weight to the views of the

12   French Ministry of Justice, though it would be error to apply the "highly deferential" standard.  *Id.*

13        Indeed, in *In re CRT*, the court was similarly presented with "a letter from the French Ministry

14   of Foreign Affairs stating that the provisions of the Blocking Statute are 'mandatory.'"  2014 WL

15   5462496, at *6.  Nevertheless, the court agreed with the established precedent of the "many courts

16   [that] have discounted that risk in the context of the French Blocking Statute, noting that the Blocking

17   Statute 'does not subject defendants to a realistic risk of prosecution . . . .'"  *Id.* (quoting *Bodner v.*

18   *Banque Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000)) (citing *In re Air Cargo Shipping Servs.*

19   *Antitrust Litig.*, 278 F.R.D. 51, 53–54 (E.D.N.Y. 2010); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D.

20   429, 454–55 (E.D.N.Y. 2008); *Adidas*, 1984 WL 423, at *3).  Like the *In re CRT* court (2014 WL

21   5462496, at *7), Magistrate Illman soundly reasoned that discovery should proceed under the Federal

22   Rules and not the Hague procedures, despite the French Ministry's letter.

23   **B.  The Court Properly Considered All Material Facts and Dispositive Arguments**
     **Presented To The Court Before The Order**

24

25        Defendants' argument that a motion for reconsideration of the Order is warranted under Civil

26   Local Rule 7-9(b)(3) must be rejected—there are simply no facts or arguments that evince "[a]

27   manifest failure by the Court to consider material facts or dispositive legal arguments ***which were***

28   ***presented to the Court before" the Order***.  Civil L.R. 7-9(b)(3) (emphasis added); (*cf.* Dkt. 121 at 2–

     3).  As described above, *supra* Section II.A.3, Defendants' untimely exhibits and related arguments

                                                    -12-
                                                                    Case No. 3:19-cv-04238-MMC-RMI

1   (1) were not presented to Magistrate Judge Illman before the Order; (2) do not support an outcome

2   different than the Order; and (3) as such, have no material or dispositive effect on the Court's analysis

3   and, in fact, lend further support to the Court's Order.  Thus, Defendants' Motion For Leave (Dkt.

4   121) should be denied.

5       "A motion for reconsideration is an extraordinary remedy, to be used sparingly in the interests

6   of finality and conservation of judicial resources."  *E.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, Case

7   No. 13-cv-04487-MEJ, 2018 WL 10425912, at *1 (N.D. Cal. Jul. 30, 2018) (quoting *Circle Click*

8   *Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 8477293, at *2 (N.D. Cal. Dec. 10, 2015); *Kona*

9   *Enters.*, 229 F.3d at 890); Civil L.R. 7-9.  As such, the "motion for reconsideration "may not be used

10  to raise arguments or present evidence for the first time when they could reasonably have been raised

11  earlier in the litigation."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

12  880 (9th Cir. 2009) (quoting *Kona Enters.*, 229 F.3d at 890); *see also* Civil L.R. 7-9.

13      Yet, in contravention of the established case law and Local Rules, Defendants' Motion For

14  Leave seeks to relitigate a decided issue based solely on untimely, non-dispositive exhibits and

15  admittedly duplicative arguments.  (*E.g.*, *id.*; *supra*, Section II.A.3.)  Indeed, Defendants admit that

16  the untimely exhibits only "would have confirmed Defendants' assertions [to the court] in the

17  condensed briefing and at the hearing."  (Dkt. 121 at 5 (internal citations omitted); *see also* Dkt. 121-

18  2 at 12:20–23, 20:19-23, 40:2-12 (raising, during oral argument, the existence of the French

19  declarations as support for existing arguments).)  Thus it appears Defendants' actual complaint is not

20  that Magistrate Illman failed to consider their arguments, but that he did not find those arguments as

21  persuasive as Defendants would have preferred or hoped.  That is not a basis to reopen and relitigate

22  an already-decided issue.  *See, e.g.*, *Campbell v. City of Milpitas*, Case No. 13-cv-03817-BLF, 2015

23  WL 3396809, at *5 (N.D. Cal. May 22, 2015) ("At the end of the day, Plaintiffs simply disagree with

24  the Court's legal analysis, which is not an appropriate basis for seeking reconsideration.").  Indeed,

25  Defendants' approach is to repeat their same arguments, only now through the opinions of various

26  declarants—an approach specifically prohibited by the Local Rules.  Civil L.R. 7-9(C) ("Prohibition

27  Against Repetition of Argument").  Thus, Defendants' Motion For Leave (Dkt. 121) should be denied.

28

**C.  Defendants' Motions Further Evince Their Pattern of Intentional, Unnecessary Delay and No Stay Should Be Granted**

It is evident from Defendants' conduct throughout this litigation that they intend to forestall their discovery obligations and delay adjudication on the merits by any means necessary, and without consideration of judicial resources.  Defendants' Motions are a transparent attempt to continue their ongoing pattern of delay and obstruction, which to date has resulted in over 4 months of discovery without the production of a single document or substantive interrogatory response.

Defendants' latest delay tactic is to request that their discovery obligations and the Order be stayed until "final disposition" of their Motion For Leave, Motion For Relief, and hypothetical motion for reconsideration.  (Dkt. 123-1.)[10]  But Defendants have shown no urgency in bringing the Motions and, instead, purposely delayed filing in order to extract every possible day of delay.  Even under the four-factor analysis described by Defendants, the requested stay is neither appropriate nor necessary, and Defendants' Motion For Stay (Dkt. 123) should be denied, particularly in view of Defendants' blatant dilatory conduct.  The relevant factors include:  (1) the likelihood of success of the pending motions for relief; (2) the harm to opposing parties if the stay is granted; (3) the threat of irreparable harm if the stay is not granted; and (4) any risk of harm to the public interest.  (*E.g.*, Dkt. 123 at 8.)

*1.  The Likelihood of Success of the Pending Motions*

Defendants seek to stay the Order during the pendency of their Motion For Leave, Motion For Relief, and a prospective motion for reconsideration.  The likelihood of success on these motions is very low, particularly considering the exceedingly high legal standards applicable to such motions, rare circumstances in which these types of motions are granted, the lack of factual basis for Defendants' Motions, as well as the nearly unanimous case law supporting the Order.  For example, to first prevail on their Motion For Leave, Defendants have to demonstrate a "manifest failure" by Magistrate Judge Illman to consider material facts or dispositive arguments that were presented to

---

[10] In seeking a stay, Defendants tacitly recognize that there is no stay of their discovery obligations under the Federal Rules or the Order, yet they have unilaterally enacted their own *de facto* stay of discovery by refusing to produce any documents, answer interrogatories, or provide source code for review in contravention of their discovery obligations under the Federal Rules and the Order.  This has led to yet further motion practice, as Plaintiffs have been forced to engage in yet another prospective discovery letter brief to Magistrate Illman—this time seeking enforcement of the Order.

1   him before the Order.  Civil L.R. 7-9(b)(3).  As described above, *supra*, Sections II.A–B, Defendants

2   have not articulated any such circumstances.  Even *assuming arguendo* that Defendants were granted

3   leave, they would next need to show "highly unusual circumstances" to prevail on a prospective

4   motion for reconsideration.  *Ou-Young v. Rea*, 2014 WL 129267, at *1 (N.D. Cal. Jan. 14, 2014) ("a

5   motion for reconsideration should not be granted, absent highly unusual circumstances").  As well-

6   established precedent dictates, this would be "an extraordinary remedy," granted only "sparingly."

7   *See, e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, Case No. 13-cv-04487-MEJ, 2018 WL 10425912, at

8   *1 (N.D. Cal. Jul. 30, 2018) (quoting *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL

9   8477293, at *2 (N.D. Cal. Dec. 10, 2015); *Kona Enters.*, 229 F.3d at 890).

10           Separately, to prevail on their Motion For Relief, Defendants must establish that the Order is

11  "clearly erroneous or contrary to law."  As described above, *supra*, Section II.A, no clear error has

12  been committed in the Order; and Defendants have failed to identify even one relevant case contrary

13  to the Order.  In fact, Defendants' Motions continue to support Magistrate Illman's findings.

14              *2.  The Harm to Opposing Parties if the Stay is Granted*

15          First, if Defendants' stay is granted, all progress on the merits of this case would be completely

16  halted until the final resolution of a not-yet-filed motion.  (*See* Dkt. 123.)  This is because Defendants

17  have refused to produce any discovery in this case thus far.  Notably, according to Defendants, their

18  requested stay extends to discovery not addressed by the Order, including discovery requests directed

19  to Defendants' counterclaims against Plaintiffs.  (*See, e.g.*, Ex. A at Feb. 4, 2020 I. Lordgooei eml to

20  M. Martin ("Moreover, even giving Defendants the benefit of the doubt as to delays based on the

21  now-rejected FBS objection, not all of the information sought by Plaintiffs would be subject to the

22  FBS even under Defendants' theory.  For example, the recent set of interrogatories that Defendants

23  have refused to answer are directed to facts relating to Plaintiffs' purported activities that allegedly

24  gave rise to Defendants' counterclaims.  Such information cannot possibly be subject to the FBS.").)

25          This indefinite and unbounded stay would unduly prejudice Plaintiffs, who have already spent

26  months negotiating and litigating this discovery issue, and finally obtained resolution.  At least since

27  moving for preliminary injunction and expedited discovery in September 2019, Plaintiffs have

28  continuously reiterated the urgent need for discovery.  (*E.g.*, Dkt. 31 at 29–30.)  At a minimum, the

time and resources required for Plaintiffs to relitigate issues that have been decided—particularly while Defendants have adamantly opposed injunctive relief that would enjoin any further violation of Plaintiffs' rights—constitutes undue prejudice and burden to Plaintiffs.   Moreover, Defendants' proposed stay would cripple Plaintiffs' ability to participate in any meaningful discussions at the Settlement Conference scheduled for March 10, thereby wasting the parties' and the court's time. (*See* Dkts. 102, 69 ("It is the responsibility of counsel to ensure that whatever discovery is needed for all sides to evaluate the case for settlement purposes is completed by the date of the Settlement Conference.   Counsel shall cooperate in providing discovery informally and expeditiously.").)

Second, the timing and circumstances surrounding Defendants' Motions reveal their true motivation to further delay; and if Defendants' are allowed to continue to obstruct progress on this case, Plaintiffs will continue to be subject to Defendants' gamesmanship and evasion.   Tellingly, Defendants waited until the very last day for compliance with the Court's Order, February 14th, to file their present Motions.   In the two weeks after issuance of the Order, Defendants purposely concealed their intention to not comply with the Order—despite having exchanged no fewer than 15 emails with Plaintiffs regarding Defendants' noncompliance, including Plaintiffs' repeated suggestions to meet and confer and inquiries regarding the timing of Defendants' production.[11]   (Ex. A.)   During this time, Defendants provided only vague statements, e.g., requesting more time to

---

[11]   As fully set forth in Exhibit A, on January 31, 2020, immediately after the Court issued its Order compelling production, Plaintiffs wrote to Defendants to inquire "when [Plaintiffs] can expect Defendants' interrogatory responses and production of document in response to Plaintiffs' requests served over 3 months ago."   In response, Defendants requested a one-week extension.   But rather than needing the additional time to prepare their discovery responses, on February 4, Defendants wrote that the extension was to provide additional time for Defendants "to assess the order, discuss these issues with U.S. and French counsel, and determine how to proceed" and declined Plaintiffs' suggestion to meet and confer.   Plaintiffs immediately replied that Defendants' discovery responses and production were due by February 14 pursuant to the Order and, while Plaintiffs are prepared to seek enforcement of the Court's Order should Defendants fail to comply, Plaintiffs would still like to meet and confer.   Having received no response from Defendants a few days later, Plaintiffs requested Defendants' availability for a lead counsel meet and confer.   With only several days remaining until Defendants' compliance was due, Defendants again refused to meet and confer and instead advanced their mistaken belief that Fed. R. Civ. P. 72 confers litigants the "right" to stay a court order to "consider[] these issues."   Despite Plaintiffs' citation of authorities rejecting Defendants' claim to an automatic stay, on February 12, Defendants nevertheless again refused to meet and confer.   Without any further notice or communication, Defendants filed the instant Motions on February 14.

1  "ma[k]e a determination of how to proceed," in order to delay every additional day possible.  (*Id.*)  It

2  is apparent from the parties' communications that Defendants purposely obfuscated their intentions

3  in order to forestall Plaintiffs' ability to raise Defendants' noncompliance to the Court at an earlier

4  date.  (*Id.*)  Specifically, in order to minimize any further delay, Plaintiffs expressed their intention to

5  seek enforcement of the Order as early as February 4, and requested a meet-and-confer.  (*Id.* at Feb.

6  4, 2020 I. Lordgooei eml to M. Martin.)  But right until they filed the instant Motions, Defendants

7  refused to even provide their availability to meet and confer, claiming it is "premature" and may not

8  be "necessary."

9       But Plaintiffs' request was not premature, as Defendants were already (and are still) in

10  violation of the Order, which had and has not been stayed.  (*Id.* at Feb. 7, 2020 I. Lordgooei eml to

11  M. Martin.)  Plaintiffs even provided several legal authorities indicating that, contrary to Defendants'

12  position, Rule 72 does not provide Defendants an automatic "right" to stay the Order while

13  Defendants "ma[k]e a determination on how to proceed."  (*Id.* at Feb. 11, 2020 I. Lordgooei eml to

14  M. Martin ("As we have mentioned multiple times, Defendants' discovery obligations under the

15  Federal Rules and the Magistrate Judge's order are not stayed pending Defendants' internal

16  discussions or decision-making 'on how to proceed.'  They are also not stayed pending resolution of

17  any objections to Magistrate Illman's order Defendants may be contemplating under FRCP 72.")

18  (citing *Oracle America, Inc. v. Google, Inc.*, 2011 WL 3794892, at *5 n.7 (N.D. Cal. Aug. 26, 2011)

19  ("[T]he filing of objections to a magistrate judge's order on a non-dispositive matter does not stay the

20  order's operation."); *Advanced Microtherm, Inc. v. Norman Wright Mech.*, 2010 WL 10133699, at

21  **1–2 (N.D. Cal. Sept. 22, 2010); *Hanni v. Am. Airlines, Inc.*, 2009 WL 1505286, at *3-4 (N.D. Cal.

22  May 27, 2009).)  Yet Defendants even failed to timely move for a stay, despite knowing as early as

23  February 3rd that they require more time "to consider Magistrate Judge Illman's order."  (*Id.* Feb. 3,

24  2020 M. Martin eml to I. Lordgooei.)

25       *3.  The Threat of Irreparable Harm if the Stay is Not Granted*

26       In contrast, Defendants face very little, if any, risk of irreparable harm by requiring

27  compliance with an issued court order.  *See, e.g.*, *Clements v. Airport Authority of Washoe Cty*, 69

28  F.3d 321, 330 (9th Cir. 1995) ("Where the plaintiffs have had a full and fair opportunity to actually

litigate the issue and did in fact litigate it, they can not ordinarily be prejudiced by subsequently being held to the prior determination."). Nor do Defendants face any greater risk of prosecution under foreign law than they have already voluntarily assumed. (*E.g.*, *supra*, II.B.3.) As many courts, including this Court, have found, there is simply little to no risk of prosecution under the French Blocking Statute. *See, e.g.*, *In re Cathode Ray Tube (CRT)*, 2014 WL 5462496, at *6–7. Even in the infinitesimally small chance that Defendants are prosecuted under the French Blocking Statute, Defendants' Touraille Declaration and Gaudemet Opinion concur that Defendants would be subject to a fine, no more than $100,000 USD, which does not constitute irreparable harm. (Dkt. 121-3 at 29; Dkt. 121-9 at ¶ 17.)

### 4. Any Risk of Harm to the Public Interest

Allowing the stay would bring this case, and the adjudication of Plaintiffs' rights, to a complete standstill. As described above, Defendants have taken the position that it may refuse to engage in any and all discovery pending the final resolution of the Motions. Because Defendants have not yet produced any discovery in this case, Plaintiffs will be unable to proceed with any aspect of this case, including meaningful participation in the Settlement Conference on March 10th. Such a result is antithetical to the "overriding interest in the 'just, speedy, and inexpensive determination' of litigation." *Aérospatiale*, 482 U.S. at 543 (quoting Fed. R. Civ. P.). Moreover, the stay would jeopardize the United States' "'substantial interest in fully and fairly adjudicating matters before its courts' [is] 'only realized if the parties have access to relevant discovery.'" *Fenerjian v. Nong Shim Co., Ltd.*, 2016 WL 245263, at *5 (N.D. Cal. Jan. 21, 2016) (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. at 54).

\*   \*   \*

Accordingly, no factor weighs in favor of a stay of Defendants' long overdue discovery obligations in this action and Defendants' Motion for Stay (Dkt. 123) should be denied.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion For Leave (Dkt. 121), Motion For Relief (Dkt. 122), and Motion For Stay (Dkt. 123) be denied, and that Defendants be ordered to comply with their discovery obligations immediately.

1

2   DATED:  February 18, 2020                    Respectfully Submitted,

3

4                                               By /s/ Sean S. Pak

5                                                   QUINN EMANUEL URQUHART &
                                                    SULLIVAN, LLP
6                                                   Sean S. Pak (SBN 219032)
                                                    seanpak@quinnemanuel.com
7                                                   Iman Lordgooei (SBN 251320)
                                                    imanlordgooei@quinnemanuel.com
8                                                   50 California Street, 22nd Floor
                                                    San Francisco, CA 94111
9                                                   Telephone: (415) 875-6600
                                                    Facsimile: (415) 875-6700
10

11                                                  JWC LEGAL
                                                    Jodie W. Cheng (SBN 292330)
12                                                  jwcheng@jwc-legal.com
                                                    One Market Street
13                                                  Spear Tower, 36th Floor
                                                    San Francisco, CA 94105
14                                                  Telephone: (415) 293-8308

15                                                  *Attorneys for Plaintiffs Proofpoint, Inc. and*
                                                    *Cloudmark LLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

                                            -19-                Case No. 3:19-cv-04238-MMC-RMI