IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROOFPOINT, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED, et al.,<br><br>Defendants. | Case No. 19-cv-04238-MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Before the Court is plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC's ("Cloudmark") Motion for Preliminary Injunction, filed September 25, 2019. Defendants Vade Secure, Incorporated, Vade Secure SASU (collectively, "Vade"), and Olivier Lemarié ("Lemarié") have filed opposition, to which plaintiffs have replied. Additionally, with leave of court, defendants, on January 17, 2020, filed a sur-reply. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Plaintiffs allege Cloudmark and Vade are competitors, as each "develops and markets cyber security products." (See Compl. ¶ 7.)[2] Plaintiffs also allege Lemarié, who now is employed by Vade, previously worked for Cloudmark as a Vice-President. (See Compl. ¶ 30.) According to plaintiffs, Lemarié, during his employment with Cloudmark,

---

[1] By order filed February 4, 2020, the Court took the matter under submission and vacated the hearing scheduled for February 7, 2020.

[2] Cloudmark is owned by Proofpoint. (See Compl. ¶ 29.)

1  "was involved in many aspects of Cloudmark's technical development" and had
2  "unfettered access to Cloudmark's technical documents and source code." (See Compl.
3  ¶ 31). In November 2016, plaintiffs allege, Lemarié "tendered his formal resignation and
4  left Cloudmark," and, in February 2017, began working as Vade's Chief Technology
5  Officer. (See Compl. ¶¶ 38, 53.) Plaintiffs further allege that Lemarié, without permission
6  from Cloudmark, disclosed Cloudmark's trade secrets to Vade, specifically, propriety
7  information pertaining to Cloudmark's MTA product[3] and Trident product,[4] and that Vade
8  then used the information in developing new products. (See Compl. ¶¶ 78-79.)

Based on said allegations, plaintiffs allege defendants have misappropriated Cloudmark's trade secrets and that Lemarié has a breached a written agreement with Cloudmark, which agreement prohibited him from disclosing Cloudmark's trade secrets. On July 23, 2019, plaintiffs filed the instant action, asserting one federal claim under the Defend Trade Secrets Act and four state law claims for breach of contract.

**DISCUSSION**

By the instant motion, plaintiffs seek an order preliminarily enjoining defendants from using Cloudmark's trade secrets and requiring defendants to return to Cloudmark all such information in whatever form it is contained, as well as any materials derived therefrom.[5]

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

---

[3] An "MTA" is a "mail transfer agent." (See Cheng Decl. Ex. 27.)

[4] "Trident" is the name Cloudmark used internally for its "anti-phishing email security solution." (See Compl. ¶ 37.)

[5] To the extent the motion also includes a request for expedited discovery, specifically, to allow plaintiffs to begin discovery prior to the Rule 26(f) conference, such request is DENIED as moot.

equities tips in his favor, and that an injunction is in the public interest." Id. at 20. As an alternative to showing a likelihood of success on the merits, however, a plaintiff may establish "that serious questions going to the merits [have been] raised," provided such plaintiff also establishes "a balance of hardships that tips sharply toward the plaintiff," a likelihood of irreparable harm, and that the injunction is in the public interest. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) (internal quotation and citation omitted). Here, as set forth below, the Court first considers whether plaintiffs have shown a likelihood of success on the merits of their claims, or, alternatively, that a serious question going to the merits has been raised.

To succeed on a claim for misappropriation of trade secrets,[6] the plaintiff must, inter alia, offer evidence that "specifically identif[ies] [its] trade secrets" and "show[ ] that they exist." See MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 522 (9th Cir. 1993); see also Silvaco Data Systems v. Intel Corp., 184 Cal. App. 4th 210, 221 (2010) (holding "[i]t is critical to [a misappropriation of trade secrets] cause of action – and any defense – that the information claimed to have been misappropriated be clearly identified"), disapproved on other grounds, Kwikset v. Superior Court, 51 Cal. 4th 310, 337 (2011).

In the instant case, plaintiffs refer to the claimed trade secrets as "source code" for "Cloudmark's MTA and Trident solutions," as well as "schematics, and other business, technical, and financial information." (See Pls.' Mot. at 16:13-15; Pls.' Proposed Order at 1:22-24.) With respect to Cloudmark's MTA product, plaintiffs state the "trade secret information describes the [MTA's] advanced functionalities and usability" and "includes unique implementation details, like source code, that enable the Cloudmark MTA to [perform its functions]." (See Pls.' Mot. 15:27-16:3.) With respect to Cloudmark's Trident product, plaintiffs state the "trade secret information includes technical information for

---

[6] As noted, plaintiffs' claims for breach of contract are based on a theory that Lemarié disclosed Cloudmark's trade secrets to Vade. (See Compl. ¶¶ 78-79.)

3

1 specific combinations of elements that together form effective techniques for detecting
2 and filtering spear-phishing email attacks." (See id. at 16:6-9.)  As discussed below, the
3 Court finds the evidence plaintiffs offer by way of elaboration is not sufficiently specific to
4 make out a prima facie case of trade secret misappropriation and, consequently, is
5 insufficient to satisfy the first requirement for a preliminary injunction.

First, although courts recognize source code may constitute a trade secret, see, e.g., Silvaco, 184 Cal. App. 4th at 218 (observing "source code for many if not most commercial software products is a secret"); Asset Marketing Systems, Inc. v. Gagnon, 521 F.3d 748, 758 (9th Cir. 2008) (noting "source code may contain protected trade secrets"), a plaintiff, in seeking a preliminary injunction, must submit evidence that "sufficiently identifie[s] its source code secrets," see Citcon USA, LLC v. RiverPay, Inc., 2019 WL 2603219, at *2 (N.D. Cal. June 25, 2019).  Here, plaintiffs, as noted, assert that the source code for Cloudmark's products includes trade secrets pertaining to "functionality," "usability," and "implementation."  (See Pls.' Mot. at 15:27-16:3.)  Standing alone, however, such assertions do not suffice to identify the claimed trade secrets, and plaintiffs have not pointed to any document in the record that does so.  See Citcon USA, 2019 WL 2603219, at *2 (denying motion for preliminary injunction where plaintiff did no more than "describe[ ] a few specific categories of source code"; providing, as example of sufficient disclosure, "a twenty-page identification of ten specific trade secrets" that "described the functionality of each, along with named files from [plaintiff's] code base reflecting the source code specific to each trade secret"); uSens, Inc. v. Chi, 2018 U.S. Dist. LEXIS 175570, at *6-7 (N.D. Cal. October 11, 2008) (finding plaintiff's description of "source code for the SLAM algorithm" as "fundamental to [plaintiff's] augmented and virtual reality products," did "not adequately identif[y]" its trade secrets); see also Integral Development Corp. v. Tolat, 675 Fed. Appx. 700, 703 (9th Cir. 2017) (finding, for purposes of summary judgment, triable issue existed as to whether plaintiff could prove it

owned trade secrets where plaintiffs "identified specific key aspects of its source code").[7]

Second, although the "architecture" of a product, i.e., "the way in which [its] various components fit together as building blocks in order to form the unique whole," can constitute a trade secret, see Integrated Cash Management Services, Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2nd Cir. 1990) (internal quotation and citation omitted), a plaintiff must offer evidence to support a finding that such architecture is in fact a trade secret, see id. (affirming district court's finding "product's architecture" was trade secret, where record contained "extensive expert testimony" to support such finding). Here, plaintiffs, as noted, assert in their motion that one of Cloudmark's trade secrets consists of "technical information for specific combinations of elements" comprising Cloudmark's Trident product (see Pls.' Mot. at 16:6-9); additionally, in their reply, plaintiffs state Cloudmark's trade secrets "relate to" the "architecture" of Cloudmark's MTA product (see Pls.' Reply at 5:11-12). Plaintiffs have not, however, pointed to evidence identifying the aspects of the claimed combination of elements and architecture that are in fact trade secrets.

In sum, as the record presently before the Court does not include evidence that sufficiently identifies the claimed trade secrets, plaintiffs have failed to show a likelihood of success on the merits or that serious questions going to the merits exist. See MAI Systems, 991 F.2d at 522 (vacating injunction where record included "no declaration or deposition testimony which specifically identifie[d] any trade secrets").[8]

---

[7] Although, in their complaint and various declarations filed in support of the instant motion, plaintiffs describe a number of MTA and Trident features, plaintiffs do not assert those features are trade secrets and, indeed, have filed in the public docket (see, e.g., Compl. ¶¶ 32, 35, 55; Cheng Decl. Ex. 1 ¶ 7; Cheng Decl. Ex. 2 ¶¶ 96, 98) or distributed to Cloudmark customers (see, e.g., Cheng Reply Decl. Exs. 5-7), the documents in which those features are described.

[8] In light of this finding, the Court does not address herein the additional requirements for a preliminary injunction. See Winter, 555 U.S. 7, 20, 23-24, 26 (2008) (holding plaintiff seeking preliminary injunction must establish all four elements; finding it unnecessary to consider whether plaintiffs established likelihood of success on merits where "the balance of equities and consideration of the overall public interest . . . tip[ped] sharply in favor of [defendant]").

5

## CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary injunction is hereby DENIED.

**IT IS SO ORDERED.**

Dated: February 20, 2020

MAXINE M. CHESNEY
United States District Judge