1  Colin H. Murray (SBN 159142)
       colin.murray@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
3  San Francisco, CA  94111-3802
   Telephone:  +1 415 576 3000
4  Facsimile:   +1 415 576 3099

5  Danielle L. Benecke (SBN 314896)
       danielle.benecke@bakermckenzie.com
6  **BAKER & McKENZIE LLP**
   600 Hansen Way
7  Palo Alto, CA  94304
   Telephone:  +1 650 856 2400
8  Facsimile:   +1 650 856 9299

9  Attorneys for Defendants,
   VADE SECURE, INCORPORATED;
10 VADE SECURE SASU;
   OLIVIER LEMARIÉ
11 [Additional counsel listed on signature page]

12                  UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14

15 PROOFPOINT, INC.; CLOUDMARK
   LLC,
                                          **Case No. 3:19-cv-04238-MMC**
16
                                          **Date Action Filed: July 23, 2019**
17                           Plaintiffs,
                                          **DEFENDANTS' REPLY IN SUPPORT**
18        v.                              **OF MOTION TO STAY RELATED**
                                          **DISCOVERY PENDING FINAL**
   VADE SECURE, INCORPORATED;             **DISPOSITION OF DEFENDANTS'**
19 VADE SECURE SASU; OLIVIER              **MOTIONS FOR RELIEF FROM THE**
   LEMARIÉ,                               **JANUARY 31, 2020 DISCOVERY**
                                          **ORDER OF THE**
20                           Defendants.  **HON. ROBERT M. ILLMAN**

21
                                          **Date: March 20, 2020**
22                                        **Time: 9:00 a.m.**
                                          **Courtroom: 7, 19th Floor**
23                                        **Judge: Maxine M. Chesney**

24                                        **San Francisco Courthouse**
                                          **450 Golden Gate Avenue**
25                                        **San Francisco, CA 94102**

26

27

28

**TABLE OF CONTENTS**

Page No.

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT AND AUTHORITIES........................................................................2

  A.     Defendants are likely to succeed on their Reconsideration Motion. ...................2

    1.    The French Blocking Statute applies to Defendants' documents and information. ..........2

      a.    Plaintiffs have contradicted their own statements to the Court that
            Defendants' documents and information are located in the United States. ...................3

      b.    The Court committed clear error and did not consider material evidence in
            determining that Defendants did not meet their burden in proving that the FBS
            applied to Defendants' documents and information. ...................................................4

    2.    The Order's determination of the *Aerospatiale/Richmark* factors was made without
          consideration of relevant (and newly discovered) evidence and is clearly erroneous. ......6

      a.    Plaintiffs did not dispute Defendants' arguments relating to Factors 1, 2, and 6. .........6

      b.    Factor 3: Plaintiffs misapply cases and misconstrue facts in their dismissal of the
            location of information. ...............................................................................................7

      c.    Factors 4 and 7: Plaintiffs repetitive complaints about alleged deficiencies
            of the Hague Convention do not apply to this case. ..................................................10

      d.    Factor 5: French interests outweighs U.S. interests because Defendants
            do not seek one sided justice................................................................................11

  B.     Defendants properly exercised their rights to seek relief from the Order............................12

  C.     Defendants will suffer undue burden and irreparable harm if a stay is not
         granted, while Plaintiffs will suffer little harm by the stay.................................................13

  D.     The short, temporary stay does not cause any harm to the public interest. ........................14

III.   CONCLUSION.....................................................................................................15

1

### TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Connex R.R. LLC v. AXACorproate Sols. Assurance*,
5
    No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050 (C.D. Cal. Feb. 22,
    2017) ...............................................................................................................................4

6

*Gonzales v. Uber Techs., Inc.*,
7
    No. 17-cv-02264-JSC, 2018 U.S. Dist. LEXIS 76844 (N.D. Cal. May 2, 2018) ...........................1

8

*Hous. Cas. Co. v. Nat'l Union Fire Ins. Co.*,
9
    No. C 18-06147 WHA, 2019 U.S. Dist. LEXIS 214548 (N.D. Cal. Dec. 11, 2019)...................13

10

*Mauia v. Petrochem Insulation, Inc.*,
    No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894 (N.D. Cal. 2018) ........................2, 5, 6, 7

11

12

*Neothermia Corp. v. Rubicor Med. Inc.*,
    345 F. Supp. 2d 1042 (2004) ......................................................................................6

13

*Perez v. State Farm Mut. Auto. Ins. Co.*,
14
    No. C 06-01962 JW (N.D. Cal., Aug. 1, 2011), ECF No. 438 ....................................13

15

*Perez v. Wells Fargo Bank, N.A.*,
    No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871 (N.D. Cal. Jan. 30, 2018)...................13

16

17

*Real Action Paintball, Inc. v. Advanced Tactical Ordnance Sys., LLC*,
    No. 14-cv-02435-MEJ, 2014 U.S. Dist. LEXIS 158901 (N.D. Cal. Nov. 10, 2014) ...................13

18

*Richmark Corp. v Timber Falling Consultants*,
19
    959 F.2d 1468 (9th Cir. 1992) ...................................................................4, 6, 10, 12

20

*Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*,
    303 F. Supp. 3d 1004 (D. Ariz. 2018) ..................................................4, 6, 7, 8, 9, 10

21

*Schramm v. Montage Health*,
22
    No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032 (Jan. 30, 2019) ..........2, 4, 5, 6, 7, 8, 9, 10

23

*Smith v. Clark Cty. School Dist.*,
    727 F.3d 950 (9th Cir. 2013) ......................................................................................2

24

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*,
25
    482 U.S. 522 (1987).............................................................................................4, 12

26

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*,
27
    No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616 (N.D. Cal. Nov. 19, 2019)..............4, 9, 10

28

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. 13-cv-02965-MMC (DMR), 2016 U.S. Dist. LEXIS 155732 (N.D. Cal., Nov.
   9, 2016) ..................................................................................................................12

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. 13-cv-02965-MMC (DMR), ECF No. 871 (N.D. Cal Oct. 13, 2016) ....................................1

*Wilson v. Bank of Am. Pension Plan for Legacy Cos.*,
   Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060 (N.D. Cal. 2019) ...................5, 6, 7

**State Statutes**

Cal. Code Civ. P. § 2019.210................................................................................................6

**Rules**

Fed. R. Civ. P. 54(b) ..........................................................................................................2

Fed. R. Civ. P. 72(a) ...................................................................................................12, 13

Local Rule 7-3...................................................................................................................1

iii

1   # I.     INTRODUCTION

2   Pursuant to Civil Local Rule 7-3, Defendants hereby file this reply in support of their Motion

3   to Stay Related Discovery at ECF No. 123 ("Motion to Stay").  Within 14 days of Magistrate Judge

4   Illman's January 31, 2020 Order at ECF No. 112 (the "Order"), Defendants timely filed their Motion

5   to Stay pending final disposition of: (1) Defendants' Motion for Leave to File a Motion for

6   Reconsideration of the Order at ECF No. 121 ("Reconsideration Motion"), which is now set for

7   hearing on March 20, 2020;[1] and (2) Defendants' Motion for Relief from Nondispositive Pretrial

8   Order at ECF No. 122 ("Motion for Relief"), which was denied "without prejudice to renoticing, if

9   appropriate, after resolution of the [Reconsideration Motion]" (ECF No. 125).  Plaintiffs filed an

10  omnibus Opposition at ECF No. 124 ("Opposition") to the Motion to Stay, the Reconsideration

11  Motion, and the Motion for Relief.

12  The Order was largely based on Plaintiffs' representation that, "given Defendants' domestic

13  activities, most of the information sought by the discovery requests is located in the U.S. and from

14  U.S. entities."  (Order at 3, ECF No. 12.)  Plaintiffs' representation before this Court, however, is

15  contrary to Plaintiff Proofpoint's recent representations made in related French proceedings, as well

16  as the rest of the factual record and the law.  Supplemental Declaration of Jean-Dominique Touraille

17  in Support of Defs.' Reply ("Touraille Supp. Decl.") ¶¶ 1-4; (Mot. to Stay 5-6, 8, ECF No. 123.)  In

18  a brief filed in the French proceedings on February 17, 2020, Plaintiff Proofpoint (together with

19  Cloudmark Labs SARL) recently argued that the evidence necessary to support their allegations "is

20  necessarily located in Vade Secure's electronic correspondence with the poached employees and/or

21  in Vade Secure's premises, and in particular on its servers.  The collection of such evidence was

22  therefore impossible without [a French] investigative measure."[2]  (Touraille Supp. Decl. ¶ 4

23

24  [1]Plaintiffs repeatedly point to the "hypothetical motion for reconsideration" and "not-yet-filed motion" as a basis for denying Defendants' Motion to Stay.  (Pls.' Opp. 14-15, ECF No. 124.)

25  This argument is now moot, since Magistrate Judge Illman has set a hearing on Defendants' Reconsideration Motion.  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-MMC (DMR), ECF

26  No. 871 (N.D. Cal Oct. 13, 2016) (referring to "Synopsys's motion for leave, which the court construes as its motion for reconsideration."); *Gonzales v. Uber Techs., Inc.*, No. 17-cv-02264-JSC,

27  2018 U.S. Dist. LEXIS 76844, at *3 (N.D. Cal. May 2, 2018) (granting motion for leave to file motion for reconsideration, and deeming the motion for leave as the motion for reconsideration).

28  [2]References to "Vade Secure" in Plaintiff Proofpoint's brief in the French proceedings refer to Defendant Vade Secure SASU, which is based in France.  Touraille Supp. Decl. n. 1.

(emphasis in original).)  Plaintiff Proofpoint's statement about the location of evidence was made in reference to the same allegations giving rise to and the same types of evidence sought in the present lawsuit.  (*Id.*; Compl. ¶¶ 1-11, 27-53, ECF No. 1; ECF Nos. 91-1 to 91-3.)  Plaintiffs' contrary representations to the Court about the location of evidence—which impact both the threshold question of whether French law applies and the *Aerospatiale/Richmark* factored analysis—as highlighted by this newly-discovered evidence, are just one reason why Defendants are likely to succeed on their Reconsideration Motion.  In their Opposition, Plaintiffs also did not address certain factors of the *Aerospatiale/Richmark* analysis, or otherwise did not credibly counter Defendants' position that reconsideration is warranted.  Since Defendants' Reconsideration Motion is already set for hearing, and in view of the arguments set forth in the Motion to Stay and in this Reply, the Motion to Stay should be granted until final disposition of the Reconsideration Motion.

## II.   ARGUMENT AND AUTHORITIES

### A.   Defendants are likely to succeed on their Reconsideration Motion.[3]

This Court has the "inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment."  *Mauia v. Petrochem Insulation, Inc.*, No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894, at *7 (N.D. Cal. 2018) (citing Fed. R. Civ. P. 54(b)).  Under applicable Ninth Circuit authority, a "court may properly reconsider its decision if it (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law . . . .  Clear error occurs when the reviewing court is left with the definite and firm conviction that a mistake has been committed."  *Schramm v. Montage Health*, No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032, at *5 (Jan. 30, 2019) (citing *Smith v. Clark Cty. School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).

#### 1.   The French Blocking Statute applies to Defendants' documents and information.

The Court is likely to determine that the Defendants' documents and information are subject to the French Blocking Statute ("FBS").  First, newly discovered evidence requires a different legal

---

[3]Defendants' arguments in this Reply focus on the Reconsideration Motion, in view of the Order at ECF No. 125, which denied Defendants' Motion for Relief "without prejudice to renoticing, if appropriate, after resolution of the [Reconsideration Motion]."  (ECF No. 125.)

result.  Second, given the present posture of Defendants' Motion for Reconsideration, the developed evidentiary record before the Court contains material facts that the Court should consider and demonstrates how the Court reached its determination in the Order by mistake.

<blockquote>
<strong>a.    Plaintiffs have contradicted their own statements to the Court that Defendants' documents and information are located in the United States.</strong>
</blockquote>

Newly discovered evidence relating to the French proceeding initiated by Proofpoint and Cloudmark Labs SARL strongly supports a finding on reconsideration that the Defendants' production should be made through the Hague Convention.  Here, the parties submitted their letter brief on the application of the Hague Convention on January 6, 2020, and argued telephonically before the Court on January 31, 2020.  (Joint Disc. Statement, ECF No. 91.)  Defendants filed their Motion for Leave to File Motion for Reconsideration on February 14, 2020.  (Defs.' Mot. for Leave to File Mot. for Reconsideration; ECF No. 121.)  After those dates, Plaintiff Proofpoint (together with Cloudmark Labs SARL) filed a brief in related French proceedings on February 17, 2020.  (Supplemental Declaration of Jean-Dominique Touraille in Support of Defendants' Reply ("Touraille Supp. Decl.") ¶ 4, Ex. A.)  Thus, the brief attached as Exhibit A to the Supplemental Touraille Declaration constitutes newly discovered evidence.

This newly discovered evidence is material to and would change the Court's original determination of whether the French Blocking Statute applies to the production of the documents and information at issue.  Indeed, the Order was largely based on Plaintiffs' representation that, "given Defendants' domestic activities, most of the information sought by the discovery requests is located in the U.S. and from U.S. entities."  (Order at 3, ECF No. 112.)  That representation, however, is contrary to Plaintiff Proofpoint's recent representations made in France, as well as the rest of the factual record and the law.  (Touraille Supp. Decl. ¶¶ 1, 4; Defs' Mot. to Stay, 5-6, 8, ECF No. 123.)  The French proceeding involves substantially the same factual allegations underlying this lawsuit, and also refers to the same evidence sought here.  (Touraille Supp. Decl. ¶ 4;  Compl. ¶¶ 1-11, 27-53, ECF No. 1;  ECF Nos. 91-1, 91-3.)  Plaintiff Proofpoint (together with Cloudmark Labs SARL) represented to the French court in their brief that evidence necessary to support their allegations "is necessarily located in Vade Secure's electronic correspondence with the poached employees and/or

3

in Vade Secure's premises, and in particular on its servers."  (Touraille Supp. Decl. ¶ 4.)  This representation contradicted Plaintiffs' assertions adopted by the Order.  Thus, the newly discovered evidence is material to the Court's reconsideration of its Order, and further weighs in favor of a finding that French law applies to the production of Defendants' documents and information.  *Schramm*, 2019 U.S. Dist. LEXIS 15032, at *5.

> **b.** **The Court committed clear error and did not consider material evidence in determining that Defendants did not meet their burden in proving that the FBS applied to Defendants' documents and information.**

The Ninth Circuit has held that it has "neither the power nor the expertise to determine . . . what [foreign] law is."  *Richmark Corp. v Timber Falling Consultants*, 959 F.2d 1468, 1474 n.7 (9th Cir. 1992).  Moreover, based on parties' assertions about foreign law and declarations in support thereof, courts have simply *assumed* foreign law applied to the production sought before then turning to analyzing the comity factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522 (1987).  *E.g.*, *Connex R.R. LLC v. AXACorproate Sols. Assurance*, No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050, at *33 (C.D. Cal. Feb. 22, 2017) (holding that in view of submissions of declarations from French counsel and the French Ministry of Justice, "the Court may assume that the French Blocking Statute does in fact apply to the RFPs at issue");  *Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1007 (D. Ariz. 2018) ("Given Trench-France's . . . declaration it has provided from an experienced French attorney on the applicable French law and procedures, the Court will accept Trench-France's assertion that production of the documents and ESI . . . would violate French law.");  *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *6 (N.D. Cal. Nov. 19, 2019).

The same result is warranted here on reconsideration.  First, Defendants have introduced the January 27, 2020 declaration of Jean-Dominique Touraille, whose sworn testimony states that the discovery sought by Plaintiffs is subject to the French Blocking Statute.  (Declaration of Jean-Dominique Touraille ("Touraille Decl.") ¶¶ 4-10, 42-43, ECF No. 121-9 ("I have reviewed the First Request for Production to All Defendants, First Set of Interrogatories to All Defendants, and First

4

1   Set of Interrogatories to Olivier Lemarié (together, the "Discovery Requests") . . . . [W]ith the

2   exception of Interrogatory No. 1 to Olivier Lemarié, the Discovery Requests are subject to the French

3   Blocking Statute . . . .").)  Critically, Touraille further explained in his January 27, 2020 declaration

4   that "even when documents and information have been transmitted outside France for non-litigation

5   purposes, the Blocking Statute continues to apply to any production of that material by the French

6   company in response to discovery requests in U.S. litigation."  (*Id.* ¶ 13.)  Second, Defendants have

7   provided a letter from the French Ministry of Justice advising Defendants of the scope and

8   applicability of the French Blocking Statute, and further advising Defendants to proceed under the

9   Hague Convention.  (Dec. 13, 2019 Letter from French Ministry of Justice, ECF No. 121-5.)

10       The January 27, 2020 Touraille Declaration and the French Ministry's letter, which were

11   explained to the Court at the hearing, are sufficient to carry Defendants' burden.   Nonetheless,

12   Defendants have also introduced the declaration of Romain Seguy, the Chief Financial Officer of

13   Vade SASU, whose sworn testimony states that company documents and information for Defendants

14   that are responsive to the discovery requests "are maintained and stored on servers located in France

15   and/or originate from France,"  and that "source code, product development documents, financial

16   information, human resources information, and IT information" for both companies "are stored and

17   maintained on servers in France in the usual course of business."  (Declaration of Romain Seguy in

18   Support of Defs.' Mot. for Leave ("Seguy Decl.") ¶ 7, ECF No. 121-10.).  Thus, the evidence from

19   the only parties with actual knowledge of the location and origin of Defendants' documents

20   establishes that French law applies.  Thus, the Order's determination to the contrary in this regard

21   did not consider material evidence and constitutes clear error.  *Wilson v. Bank of Am. Pension Plan*

22   *for Legacy Cos.*, Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060 *6 (N.D. Cal. 2019)

23   (reconsidering a pre-emption issue when the court "overlooked certain relevant caselaw"); *Schramm*,

24   2019 U.S. Dist. LEXIS 15032 *17-24 (granting a motion for reconsideration when certain theories

25   and authorities had not been considered); *Mauia v. Petrochem Insulation, Inc.*, Case No. 18-cv-

26   01815-TSH, 2018 U.S. Dist. LEXIS 198894 *7-11 (N.D. Cal. 2018) (granting reconsideration where

27   the court failed to consider two dispositive legal arguments).

28

2.     The Order's determination of the *Aerospatiale/Richmark* factors was made without consideration of relevant (and newly discovered) evidence and is clearly erroneous.

a.     Plaintiffs did not dispute Defendants' arguments relating to Factors 1, 2, and 6.

In the Opposition, Plaintiffs did not dispute Defendants' arguments relating to factors 1, 2, and 6 of the *Aerospatiale/Richmark* seven-factor analysis.  (Mot. to Stay 7-8, 10-11, ECF No. 123; Reconsideration Mot. at 4-5, 6-7, ECF No. 121.)   The Order's determinations that factors 1-2 weighed against Defendants' Reconsideration Motion are clearly erroneous because: (1) the Discovery Requests (ECF Nos. 91-1 to 91-3) include such a wide range of information that it could not all prove pivotal to the outcome of the case;[4] and (2) the Discovery Requests include more than 30 requests that vary in subject matter and classification, and seek a large volume of information on a wide variety of matters.  (*Id.*); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1472, 1475 (9th Cir. 1992); *Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1006-1009 (D. Ariz. 2018).   Accordingly, the Order's determination, which did not fully consider relevant authorities, is clearly erroneous.  *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060, at *6 (N.D. Cal. 2019) (reconsidering a pre-emption issue when the court "overlooked certain relevant caselaw"); *Schramm v. Montage Health*, Case No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032, at *17-24 (N.D. Cal. 2019) (granting a motion for reconsideration when certain theories and authorities had not been considered); *Mauia v. Petrochem Insulation, Inc.*, Case No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894, at *7-11 (N.D. Cal. 2018) (granting reconsideration where the court failed to consider two dispositive legal arguments).

With respect to factor 6, which the Order did not discuss, "[f]ederal courts should 'take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of

---

[4]Additionally, as discussed in the Joint Discovery Statement Regarding Defendants' Entitlement to Protective Order in View of Plaintiffs' Failure to Identify a Trade Secret ("Motion for Protection"), the Court has now determined that Plaintiffs have failed to sufficiently identify the claimed trade secrets (ECF No. 126), and so it is impossible to frame the appropriate scope of discovery or determine what may be relevant to Plaintiffs' claims.  (Defs.' Mot. for Protective Order 2-3, ECF No. 128); *Neothermia Corp. v. Rubicor Med. Inc.*, 345 F. Supp. 2d 1042, 1044 (2004); Cal. Code Civ. P. § 2019.210.

6

its nationality or the location of its operations.'" *Salt River*, 303 F. Supp. 3d at 1009; (Ex. D to Reconsideration Mot. 4-5, ECF No. 121-5.)  In *Salt River*, the court emphasized that because the French Blocking Statute "at least create[d] a possibility of criminal prosecution," this factor weighed in favor of utilizing Hague procedures.  303 F. Supp. 3d at 1010.  And factor 6 favors Hague procedures even more in the present case than in *Salt River*, when considering the recent renewed French focus on United States discovery.  (Reconsideration Mot. 6-7, ECF No. 121; Touraille Decl. ¶¶ 4-10, 17-24, ECF No. 121-9 (explaining the recent increased scrutiny by French authorities in relation to the French Blocking statute);[5] Ex. B to Reconsideration Mot. ¶ 17, ECF No. 121-3 (explaining enforcements of the French Blocking Statute and the uncertainty surrounding recent increased scrutiny by the French authorities regarding the same).)  Accordingly, the Order's silence on factor 6 is clearly erroneous because it did not consider relevant authorities or relevant evidence. *Wilson*, 2019 U.S. Dist. LEXIS 160060 at *6; *Schramm*, 2019 U.S. Dist. LEXIS 15032 at *17-24; *Mauia*, 2018 U.S. Dist. LEXIS 198894 at *7-11.

### b.   Factor 3: Plaintiffs misapply cases and misconstrue facts in their dismissal of the location of information.

In their February 18, 2020 brief filed in the instant lawsuit, Plaintiffs argued that "[i]t is undisputed that the discovery sought is readily available within and accessible from the United States . . . ."  (Opposition 6, ECF No. 124.)  Just a day earlier, Plaintiff Proofpoint and Cloudmark Labs SARL filed a brief in the related French proceedings arguing that the evidence necessary to support their allegations "is necessarily located in Vade Secure's electronic correspondence with the poached employees and/or in Vade Secure's premises, and in particular on its servers.  The collection of such evidence was therefore impossible without [a French] investigative measure."[6]  (Touraille Supp.

---

[5]Plaintiffs argue that certain exhibits submitted with the Reconsideration Motion are untimely because these exhibits were available before the discovery hearing but Defendants did not submit them.  (ECF No. 124 at 8-9.)  As explained in the Reconsideration Motion and the Motion to Stay, Magistrate Judge Illman's standing order prevented Defendants from submitting such exhibits. (ECF No. 121 at 2-3; ECF No. 123 at 2.)  The standing order only permits requests for leave in the context of a party seeking to exceed the 5-page limit of the joint letter brief.  *See* General Standing Order of Magistrate Judge Robert M. Illman 13(a).  Here, Defendants indicated in the joint letter brief, and again during the hearing, that they were prepared to submit declarations, and Defendants had no opportunity to file any additional exhibits or affidavits. (Joint Ltr. Br. at 4-5, ECF No. 91; Hr'g Tr. at 12:19-23, ECF No. 121-2.)

[6]References to "Vade Secure" in Plaintiff Proofpoint's brief in the French proceedings refer to Defendant Vade Secure SASU, which is based in France.  Touraille Supp. Decl. n. 1.

7

Decl. ¶ 4 (emphasis in original).)  As mentioned above, Plaintiff Proofpoint's statement about the location of evidence was made in reference to the same allegations giving rise to and the same types of evidence sought in the present lawsuit.  (*Id.*; Compl. ¶¶ 1-11, 27-53; ECF Nos. 91-1 – 91-3.)  Accordingly, Plaintiffs made contrary representations to this Court as compared with statements Plaintiff Proofpoint and Cloudmark Labs SARL made in the French proceedings.  These contrary statements illustrate Plaintiffs' attempt to circumvent the French proceedings—in which documents are currently being held in escrow—to try to obtain documents and information located in France through its Discovery Requests in the instant lawsuit.  Plaintiffs' representations about the location of Defendants' documents were adopted by the Court in making determinations in the Order.  (Order 3-4, ECF No. 112.)  In view of the evidence of record, including this newly-discovered evidence, the Court is likely to reconsider its determination on factor 3, and find that factor 3 weighs in favor of proceeding with discovery under the Hague Convention.  *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

Plaintiffs argue that discovery for Vade Secure, Inc. ("Vade Inc.") should proceed under the federal rules because, in *Salt River*, the Canadian defendant, Trench-Canada, agreed to produce information without the need for Hague procedures.  (Opposition 5-6, ECF No. 124 (citing *Salt River*, 303 F. Supp. 3d 1004).)  However, as the *Salt River* court explained in its analysis of factor 3, "much of the evidence originated in Arizona," and Trench-Canada had no information located in France.  *Salt River*, 303 F. Supp. 3d at 1008.  Unlike Trench-Canada, here, relevant documents and information for Defendants are located and maintained in France in the ordinary course of business and/or originated from France.  *Id.*; (Seguy Decl. ¶ 7, ECF No. 121-10.[7])  Further, in *Salt River* the

---

[7]Plaintiffs do not dispute the substance of the Seguy declaration, but instead argue that the Seguy declaration and other employee declarations fall within the scope of the French Blocking Statute ("FBS").  (ECF No. 124 at 9-10.)  This is nothing but an old argument that Defendants have already debunked multiple times in the joint letter brief, again in the hearing, and again in the Reconsideration Motion.  (ECF No. 91 at 5 ("Those declarations assert facts and do not describe the contents of documents or other types of information that would be subject to French law."); Hr'g Tr. at 20:19-25, ECF No. 121-2 ("Now, our understanding is under French law, the steps that Defendants have taken are completely appropriate, and we do have a declaration from the French lawyer who's familiar with the French Blocking Statute and the Hague to attest to that very fact. And so our actions are entirely consistent with French law."); Touraille Decl. ¶ 21, ECF No. 121-9 ("French nationals or companies are entitled to make factual assertions and/or submit witness declarations; otherwise they would be deprived of their right to a fair trial.").)

plaintiffs' contention that "Trench-France is a multinational corporation, operating under various entities in various countries" was rejected by the court, which deferred to the defendants' assertions about where their documents and information were located. 303 F. Supp. 3d at 1008. The same is true here. The Seguy declaration confirms that the location of documents and information in the ordinary course of business is France. (Seguy Decl. ¶ 7, ECF No. 121-10.) Accordingly, the Court is likely to reconsider factor 3 in view of the relevant evidence (not previously considered) and the relevant authorities, and find that this factor weighs in favor of Defendants. *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

Plaintiffs also argue that any information accessible from within the United States must be discovered under the federal rules. (ECF No. 124 at 6 (citing *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *14 (N.D. Cal. Nov. 19, 2019).) But *CRRC* is distinguishable because *CRRC* involved Article 277 of the Chinese Civil Procedure Law—not the French Blocking Statute ("FBS"). *CRRC Corp.*, 2019 U.S. Dist. LEXIS 200616 at *3. Unlike *CRCC*, where no evidence was presented indicating that the Chinese law imposed a criminal penalty, the FBS "punishes any violation . . . with a prison term of 6 months." *Id.* at *12 ("Here, Defendant does not present any evidence to show that it is likely to be prosecuted or that any adverse action will occur."); (*but see* French Ministry of Justice Ltr. 5, ECF No. 121-5.) Critically, the *CRRC* court held that producing electronic documents stored in China did "not implicate Article 277 of the Chinese Civil Procedure Law," and so no conflict of law situation was present. *CRRC Corp.*, 2019 U.S. Dist. LEXIS 200616 at *15. Here, the record demonstrates that the FBS *is* implicated by the production of electronic documents, and so the French law must be considered by the Court. (Touraille Decl. ¶ 14, ECF No. 121-9 ("Further, the French Blocking Statute applies to French companies or citizens that would permit or allow another person or entity to remotely access or download . . . documents or information of an economic, commercial, industrial, financial, or technical nature for the purposes of constituting evidence for or in the context of foreign judicial or administrative proceedings."); Gaudemet Decl. 25 ¶ 8, ECF No. 121-3 ("There is therefore no doubt that the documents and information of which the disclosure is sought by

1  [Plaintiffs] . . . fall within the scope of [the FBS]").)[8]  Accordingly, when considering the evidence

2  of record (not previously considered), and the relevant authorities, the Court is likely to find that this

3  factor weighs in favor of Defendants.  *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

c.  **Factors 4 and 7: Plaintiffs repetitive complaints about alleged deficiencies of the Hague Convention do not apply to this case.**

Plaintiffs accuse Defendants of "brazen misrepresentation of the record," but an examination

of the record demonstrates the opposite.  For example, Plaintiffs attempt to construe Defendants'

acknowledgement that the Chapter II of the Hague Convention is not a "perfect substitute" for the

Federal Rules as somehow proving that Defendants have conceded undue prejudice.  (Opposition 3,

ECF No. 124.)  But, to the contrary, Defendants have maintained a consistent position on their

understanding of the Chapter II proceedings throughout their correspondence and briefing process.

Further, Magistrate Judge Kim of this Court has recently held that the Hague Convention needs to

be "substantially equivalent" to the federal rules (not a "perfect substitute").  *Sun Grp. U.S.A.*

*Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *9

(N.D. Cal. Nov. 19, 2019) (citing *Richmark Corp.*, 959 F.2d at 1475; citing *Salt River*, 303 F. Supp.

3d at 1008).

As another example, Plaintiffs argue that Defendants' Proposed Order and Proposed Request

validate Plaintiffs' concerns of the Hague such as potential "undue delay."  (Opposition 3-5, ECF

No. 124.)  But the language at issue in the Proposed Request was no longer current when Plaintiffs

filed their Opposition.  Indeed, Defendants had already agreed to several mechanisms Plaintiffs

proposed to "eliminate the risk of potential delays" under the Hague—i.e., addressing the very

language Plaintiffs complain about in the Opposition.  (Ratway Decl. ¶ 5, Ex. C p.2 ¶ 2, ECF No.

121-4; Ratway Decl. ¶ 3, Ex. A at 18:15-20:16, ECF No. 121-2.)[9]  For the sake of clarification, the

---

[8]Plaintiffs also misconstrue the French law professor Antoine Gaudemet's declaration. (Opposition 7, ECF No. 124 (citing Gaudemet Decl. 24, ECF No. 121-3).)  Gaudemet simply explains that either an oral or written mode of disclosure would be subject to the FBS.  (Gaudemet Decl. 24, ECF No. 121-3.)  Further, Gaudemet specifically stated that "evidence located in France" would be subject to the FBS, and that there is "no doubt that the documents and information" in this case would be subject to the FBS.  (*Id.* at 25, 35.)

[9]Plaintiffs were aware that Defendants' Proposed Order and Proposed Request did not represent Defendants' latest position when they filed the Opposition.  Specifically, Ms. Martin received Mr. Pak's letter (ECF No. 121-4) on January 29, 2020, and sent Defendants' Proposed Order and Proposed Request (ECF Nos. 121-7 – 121-8) to Plaintiffs the next morning.  In an email

10

no longer current proposal from Defendants, compared with the agreed proposal from Plaintiffs are

below, side by side:

| Defendants' (no longer current) Proposal | Plaintiffs' Proposal (agreed) |
|---|---|
| Recognizing that the Commissioner will require a reasonable period of time to analyze and approve discovery requests and deposition notices subject to this Request, and further recognizing that the Commissioner will require a reasonable period of time to review and authorize responses, productions, and/or disclosures made by the responding party(ies), the parties will otherwise endeavor to adhere as closely as possible to the time periods for responses, productions, and/or disclosures set forth in the applicable Federal Rules of Civil Procedure, the Local Rules of the U.S. Court, and any other applicable Order of the U.S. Court, subject to any objections the responding party(ies) is entitled to make under applicable laws and treaties, relevant rules of civil procedure, and the orders of the U.S. Court. (Ratway Decl. ¶ 9, ECF No. 121-1, Ex. G at ¶ 16, ECF No. 121-8.) | To eliminate the risk of potential delays associated with the Commissioner's participation in acting as intermediary between the parties, we propose that discovery requests and notices subsequent to the initial request be served on the Commissioner and all other parties *simultaneously* such that the receiving party will have the *usual period under the Federal Rules* to respond and/or object *from the date of said service*, regardless of when the Commissioner is able to provide the request or notice to the party. Similarly, we propose that the receiving party serve its responses and objections on the Commissioner and all other parties *simultaneously*. This is to *avoid any delays* associated with the Commissioner's unavailability or failure to timely forward discovery. (Ratway Decl. ¶ 5, ECF No. 121-1, Ex. C, ECF No. 121-4.) |

During the discovery hearing on January 31, 2020, Defendants unequivocally stated that they were

willing to agree to Plaintiffs' proposed mechanisms to put Plaintiffs' concerns of potential delay to

rest. (Hr'g Tr. at 20:12-16, ECF No. 121-2.)

Overall, since Defendants have agreed to discovery under the Hague Convention in manners

that are substantially equivalent to the federal rules, Plaintiffs repetitive complaints about alleged

deficiencies of the Hague Convention simply do not apply.

### d.   Factor 5: French interests outweighs U.S. interests because Defendants do not seek one sided justice

While Plaintiffs facially attack Messrs. Gaudemet and Touraille's submissions for an alleged

promotion of "one-sided justice," Plaintiffs simply do not address Defendants' contention that

"Plaintiffs' arguments about the added expenses and associated delays" of Hague procedures are not

---

accompanying the proposals, Defendants informed Plaintiffs that the Proposed Order and Proposed Request "were prepared prior to receiving" Mr. Pak's January 29, 2020 letter, and that Defendants would consider the proposals. (Declaration of Mark Ratway in Support of Defendants' Reply in Support of Motion to Stay ("Ratway Reply Decl.") ¶ 3, Ex. A at 1.) Defendants subsequently agreed to Plaintiffs' proposal the next day at the hearing. (Hr'g Tr. at 21:1-12, ECF No. 121-2.)

a part of the calculus for balancing national interests.  (*See* ECF No. 124 at 10-11.)  The Order's determination "that this factor does not weigh heavily in either direction" is clearly erroneous because the Order reflects the introduction of a improper element—expenses and delays to one party—into the Order's balancing of national interests as informed by *Richmark Corp*. 959 F.2d at 1476 (citations omitted).  For example, *Richmark* emphasizes that a court "must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or interests of either the United States or [France.]"  *Id.* at 1476 (citation and internal quotation marks omitted).  Additionally, the Order cites to *Aerospatiale*, 482 U.S. at 540 n.25, which opinion similarly does not expressly mention one party's allegations of added expense or delay as part of the relevant analysis.

To be sure, Defendants seek neither one-way discovery nor one-sided justice.  Instead, as indicated previously, Defendants simply request that Plaintiffs make a proper request permitting them a full and fair opportunity to litigate their claims—and thus preserving any United States interests at stake—while not unnecessarily threatening French national interests and subjecting Defendants to civil and criminal penalties.  (ECF No. 91 at 3-4; Hr'g Tr. at 21:16-25, ECF No. 121-2; ECF No. 121 at 5; ECF No. 123 at 7.)

In conclusions, Plaintiffs wholly failed to address factors 1, 2, 6, and failed to credibly counter Defendants' position for factors 3, 4, 5, and 7.  As a result, the *Aerospatiale/Richmark* analysis mandates that discovery in this case should proceed under Hague procedures.

**B.    Defendants properly exercised their rights to seek relief from the Order.**

Plaintiffs accuse Defendants of "blatant dilatory conduct" (ECF No. 124 at 14), "obstruct[ing] progress on this case," "gamesmanship and evasion," and "purposely conceal[ing] their intention to not comply with the Order" (ECF No. 124 at 16).   Plaintiffs' accusations are designed to be inflammatory and lack any factual foundation.  Defendants filed their Reconsideration Motion, Motion for Relief, and Motion to Stay, on a complex issue of international law, all within 14 days of the Order, which is timely under Federal Rule 72(a) as well as Local Rules 72-2 and 7-9 to seek relief from the Order.  *See* Fed. R. Civ. P. 72(a) (prescribing a 14-day deadline to file objections to a Magistrate Judge's non-dispositive pre-trial order); *Synopsys, Inc. v. ATopTech, Inc.*,

12

No. 13-cv-02965-MMC (DMR), 2016 U.S. Dist. LEXIS 155732, at *8 (N.D. Cal., Nov. 9, 2016) (holding that, under L.R. 7-9, a motion for leave to file motion for reconsideration of an order was timely when it was filed *16 days* after the order); Order Granting Def.'s Mot. for Leave 3, *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW (N.D. Cal., Aug. 1, 2011), ECF No. 438 (granting the defendant leave to file a motion for reconsideration of a discovery order and request for stay filed four months after discovery order and staying discovery until the court's ruling on such motion for reconsideration). Thus, Defendants did nothing more than exercise their rights to seek relief from the Order in accordance with Federal Rule 72(a) as well as Local Rules 72-2 and 7-9.[10]

### C.   Defendants will suffer undue burden and irreparable harm if a stay is not granted, while Plaintiffs will suffer little harm by the stay.

Defendants documents and information are subject to French law, including the French Blocking Statute. Plaintiffs argue that "Defendants face very little, if any, risk of irreparable harm" if a stay is not granted because there is "little to no risk of prosecution under the French Blocking Statute" and because "Defendants would be subject to a fine, no more than $100,000 USD, which does not constitute irreparable harm." (Opposition 17-18, ECF No. 124.) Plaintiffs essentially argue that Defendants should violate French law that is directly applicable to them so that Plaintiffs can avoid a stay. In other words, Plaintiffs would put Defendants between the proverbial "rock and a hard place" by having Defendants chose between complying with the Order or committing a violation of French law. Such a choice is unconscionable and is principally an undue burden and irreparably harm. Moreover, Plaintiffs completely ignore the Defendants' real exposure to criminal penalties for violating the French Blocking Statute. (Reconsideration Mot. at 6-7, ECF No. 121.) For instance, the letter from the French Ministry of Justice warned Defendants that "Article 3 [of the French Blocking Statute] punishes *any violation* of these prohibitions with a *prison term of 6 months* and a

---

[10] *See also Hous. Cas. Co. v. Nat'l Union Fire Ins. Co.*, No. C 18-06147 WHA, 2019 U.S. Dist. LEXIS 214548, at *3-4 (N.D. Cal. Dec. 11, 2019) (granting a motion to stay enforcement of a discovery order "pending resolution of the motion for reconsideration"); *Perez v. Wells Fargo Bank, N.A.*, No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871, at *4 (N.D. Cal. Jan. 30, 2018) (Chesney J.) ("Lastly, defendant's Motion to Stay, by which defendant seeks an order staying the above-referenced discovery pending resolution of the Motion for Relief, is hereby GRANTED."); *Real Action Paintball, Inc. v. Advanced Tactical Ordnance Sys., LLC*, No. 14-cv-02435-MEJ, 2014 U.S. Dist. LEXIS 158901, at *4 (N.D. Cal. Nov. 10, 2014) (granting the defendant's motion to stay discovery order, pending a motion for relief from the order).

1    fine of 18,000 Euros." (ECF No. 121-5 at 5 (emphasis added).)  This risk is heightened by the recent

2    renewed French focus on United States discovery.  (Reconsideration Mot. 6-7, ECF No. 121;

3    Touraille Decl. ¶¶ 4-10, 17-24, ECF No. 121-9 (explaining the recent increased scrutiny by French

4    authorities in relation to the French Blocking statute); Ex. B to Reconsideration Mot. ¶ 17, ECF No.

5    121-3 (explaining enforcements of the French Blocking Statute and the uncertainty surrounding

6    recent increased scrutiny by the French authorities regarding the same).)

7           On the other hand, Plaintiffs will suffer little harm by a stay.  Plaintiffs cite their motion for

8    preliminary injunction and expedited discovery ("PI Motion," ECF No. 31) to justify its "urgent need

9    for discovery." (ECF No. 124 at 15.)  However, after Plaintiff filed the Opposition, on February 20,

10   2020, the Court denied Plaintiffs' PI Motion because Plaintiffs have failed to "make out a prima facie

11   case of trade secret misappropriation and, consequently, is insufficient to satisfy the first requirement

12   for a preliminary injunction." (Order Denying PI Mot. at 4, ECF No. 126.)  Since Plaintiffs have

13   failed to even identify their own trade secrets, the Court also denied Plaintiffs' request for expedited

14   discovery as part of the PI Motion. (*Id.* at 6.)  Thus, Plaintiff's argument for alleged harm by a stay

15   is to no avail.  Plaintiffs' also argue that they would suffer harm by a stay because "the stay [would]

16   extend[] to discovery not addressed by the Order, including discovery requests directed to

17   Defendants' counterclaims against Plaintiffs." (Opposition 15, ECF No. 124.)  Regardless of the

18   merits of this argument, it is moot as Defendants have responses to the interrogatory directed to

19   Defendants' counterclaims.

20           **D.      The short, temporary stay does not cause any harm to the public interest.**

21           The stay sought by Defendants is short and temporary because Defendants' Reconsideration

22   Motion is already set for hearing on March 20, 2020, and presumably will be resolved shortly

23   thereafter.  Therefore, Plaintiffs' argument that the stay will be "indefinite and unbounded" no longer

24   applies. (ECF No. 124 at 15.)  Further, Plaintiffs argue that allowing the stay would bring this case

25   "to a complete standstill" because without discovery "Plaintiffs will be unable to proceed with any

26   aspect of this case." (*Id.* at 18.)  Yet Plaintiffs are the ones who delayed years before bringing this

27   suit. (Defs.' Resp. to PI Mot., at 7-9, ECF No. 72.)  And Plaintiffs are the ones who failed to identify

28   their own trade secrets even after years of so-called "investigation" into the trade secrets. (Order,

1   ECF No. 126 at 4-5; Pls.' Reply ISO PI Mot., at 12-13, ECF No. 82.)  If Plaintiffs truly wanted to

2   "proceed," the first step would be for Plaintiffs to sufficiently identify their alleged trade secrets and

3   to pursue discovery under the proper mechanism provided by the Hague.

4        In arguing public interest, Plaintiffs do not dispute French national interests in having

5   discovery proceed through the Hague.  (Mot. to Stay, at 10, ECF No. 123.)  Such interests outweigh

6   any purported public interests that Plaintiffs argue apply here because the short, temporary stay here

7   does not cause harm to the public interest of the United States.

8   **III.    CONCLUSION**

9        For the foregoing reasons, Defendants respectfully request the Court to grant their Motion to

10  Stay.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

Dated: March 6, 2020

**BAKER & McKENZIE LLP**

By: /s/ *Mackenzie Martin*

Colin H. Murray (SBN 159142)
colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:     +1 415 576 3000
Facsimile:      +1 415 576 3099

Danielle L. Benecke (SBN 314896)
danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:     +1 650 856 2400
Facsimile:      +1 650 856 9299

Jay F. Utley (Admitted *Pro Hac Vice*)
jay.utley@bakermckenzie.com
Bart Rankin (Admitted *Pro Hac Vice*)
bart.rankin@bakermckenzie.com
Mackenzie M. Martin (Admitted *Pro Hac Vice*)
mackenzie.martin@bakermckenzie.com
John G. Flaim (Admitted *Pro Hac Vice*)
john.flaim@bakermckenzie.com
Chaoxuan Liu (Admitted *Pro Hac Vice*)
charles.liu@bakermckenzie.com
Mark Ratway  (Admitted *Pro Hac Vice*)
mark.ratway@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone:     +1 214 978 3000
Facsimile:      +1 214 978 3099

*Attorneys for Defendants*
*Vade Secure, Incorporated; Vade Secure*
*SASU; and Olivier Lemarié*

16