Colin H. Murray (SBN 159142)
colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:  +1 415 576 3000
Facsimile:  +1 415 576 3099

Danielle L. Benecke (SBN 314896)
danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:  +1 650 856 2400
Facsimile:  +1 650 856 9299

Attorneys for Defendants,
VADE SECURE, INCORPORATED;
VADE SECURE SASU;
OLIVIER LEMARIÉ
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | **Case No. 3:19-cv-04238-MMC-RMI**<br><br>**Date Action Filed: July 23, 2019**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF DISCOVERY ORDER** <u>**(ECF NO. 112)**</u><br><br>**Date: March 20, 2020**<br>**Time: 10:00 a.m.**<br>**Magistrate Judge: Robert M. Illman**<br><br>**McKinleyville Courthouse**<br>**3140 Boeing Ave,**<br>**McKinleyville, CA 95519** |

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ..........................................................................................................1

II. LEGAL STANDARD......................................................................................................1

III. ARGUMENT AND AUTHORITIES...............................................................................2

   A. The French Blocking Statute applies to Defendants' documents and information. ..............2

      1. Plaintiffs have contradicted their own statements to the Court that Defendants' documents and information are located in the United States............................................2

      2. The Court committed clear error and did not consider material evidence in determining that Defendants did not meet their burden in proving that the FBS applied to Defendants' documents and information. ........................................................3

   B. The Order's determination of the *Aerospatiale/Richmark* factors was made without consideration of relevant (and newly discovered) evidence and is clearly erroneous...........5

      1. Plaintiffs did not dispute Defendants' arguments relating to Factors 1, 2, and 6. ............5

      2. Factor 3: Plaintiffs misapply cases and misconstrue facts in their dismissal of the location of information. ....................................................................................................6

      3. Factors 4 and 7: Plaintiffs repetitive complaints about alleged deficiencies of the Hague Convention do not apply to this case. ..................................................................9

      4. Factor 5: French interests outweighs U.S. interests because Defendants do not seek one sided justice ........................................................................................................11

IV. CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Connex R.R. LLC v. AXACorproate Sols. Assurance*,
  No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050 (C.D. Cal. Feb. 22, 2017) ..................................................................................................................................3

*Mauia v. Petrochem Insulation, Inc.*,
  No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894 (N.D. Cal. 2018) .............................1, 5, 6

*Neothermia Corp. v. Rubicor Med. Inc.*,
  345 F. Supp. 2d 1042 (2004) .................................................................................................5

*Richmark Corp. v Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ..................................................................................3, 5, 9, 11

*Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*,
  303 F. Supp. 3d 1004 (D. Ariz. 2018) ........................................................................3, 5, 6, 7, 8, 9

*Schramm v. Montage Health*,
  No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032 (Jan. 30, 2019) .................1, 3, 5, 6, 7, 8, 9

*Smith v. Clark Cty. School Dist.*,
  727 F.3d 950 (9th Cir. 2013) ...................................................................................................1

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*,
  482 U.S. 522 (1987) ..........................................................................................................1, 3, 11

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*,
  No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616 (N.D. Cal. Nov. 19, 2019) .................3, 8, 9

*Wilson v. Bank of Am. Pension Plan for Legacy Cos.*,
  Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060 (N.D. Cal. 2019) ....................4, 5, 6

**State Statutes**

Cal. Code Civ. P. § 2019.210 ............................................................................................................5

**Rules**

Fed. R. Civ. P. 54(b) .........................................................................................................................1

## I. INTRODUCTION

Plaintiffs have long demonstrated their understanding that the French Blocking Statute ("FBS") applies to Defendants' documents and information, which originate from and are located in France. (*See* Pls.' Mot. for Preliminary Inj. 24-25, ECF No. 31.) Indeed, before this lawsuit was filed, Plaintiffs instituted a discovery proceeding in France to obtain documents and information relating to the Vade products at issue here and sought them for use in this proceeding. Now, with a recent filing of a brief in this parallel French proceeding, Plaintiffs admitted that Defendants' documents and information relevant to this dispute are located in France. Thus, Defendants present newly discovered evidence plainly demonstrating that Plaintiffs understand that the FBS applies to Defendants' documents and information—despite any of Plaintiffs' representations to the contrary to this Court. Indeed, the Court's reliance on Plaintiffs' representations as to the locations of Defendants' documents and information led to clearly erroneous determinations. (Jan. 31, 2020 Order 3, ECF No. 112; the "Order".) Moreover, the Court's determinations as to whether the FBS applies to the production of Defendants' documents and information unless provided through The Hague Evidence Convention ("Hague Convention") was clearly erroneous, as was the Court's balancing of the factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522 (1987). On reconsideration of its prior discovery order, and in view of the evidence of record and applicable authorities, requiring discovery under the Hague Convention is proper.

## II. LEGAL STANDARD

This Court has the "inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment." *Mauia v. Petrochem Insulation, Inc.*, No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894, at *7 (N.D. Cal. 2018) (citing Fed. R. Civ. P. 54(b)). Under applicable Ninth Circuit authority, a "court may properly reconsider its decision if it (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law . . . . Clear error occurs when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Schramm v. Montage Health*, No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032, at *5 (Jan. 30,

2019) (quoting *Smith v. Clark Cty. School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).

### III.     ARGUMENT AND AUTHORITIES

#### A.     The French Blocking Statute applies to Defendants' documents and information.

The Court should reconsider its Order and determine that the FBS applies to the production of Defendants' documents and information unless production is made through the Hague Convention.  First, newly discovered evidence requires a different legal result.  Second, given the present posture of Defendants' Motion for Reconsideration, the developed evidentiary record before the Court contains material facts that the Court should consider and demonstrates how the Court reached its determination in the Order by mistake.

#### 1.     Plaintiffs have contradicted their own statements to the Court that Defendants' documents and information are located in the United States.

Newly discovered evidence relating to the French proceeding initiated by Proofpoint and Cloudmark Labs SARL strongly supports a finding on reconsideration that the Defendants' production should be made through the Hague Convention.  Here, the parties submitted their letter brief on the application of the Hague Convention on January 6, 2020, and argued telephonically before the Court on January 31, 2020.  (Joint Disc. Statement, ECF No. 91.)  Defendants filed their Motion for Leave to File Motion for Reconsideration on February 14, 2020.  (Defs.' Mot. for Leave to File Mot. for Reconsideration; ECF No. 121.)  After those dates, Plaintiff Proofpoint (together with Cloudmark Labs SARL) filed a brief in related French proceedings on February 17, 2020. (Supplemental Declaration of Jean-Dominique Touraille in Support of Defendants' Reply ("Touraille Supp'l. Decl.") ¶ 4, Ex. A.)  Thus, the brief attached as Exhibit A to the Supplemental Touraille Declaration constitutes newly discovered evidence.

This newly discovered evidence is material to and would change the Court's original determination of whether the French Blocking Statute applies to the production of the documents and information at issue.  Indeed, the Order was largely based on Plaintiffs' representation that, "given Defendants' domestic activities, most of the information sought by the discovery requests is located in the U.S. and from U.S. entities." (Order at 3, ECF No. 112.)  That representation, however, is contrary to Plaintiff Proofpoint's recent representations made in France, as well as the rest of the

factual record and the law. (Touraille Suppl. Decl. ¶¶ 1, 4; Defs' Mot. to Stay, 5-6, 8, ECF No. 123.) The French proceeding involves substantially the same factual allegations underlying this lawsuit, and also refers to the same evidence sought here. (Touraille Suppl. Decl. ¶ 4; Compl. ¶¶ 1-11, 27-53, ECF No. 1; ECF Nos. 91-1, 91-3.) Plaintiff Proofpoint (together with Cloudmark Labs SARL) represented to the French court in their brief that evidence necessary to support their allegations "is necessarily located in Vade Secure's electronic correspondence with the poached employees and/or in Vade Secure's premises, and in particular on its servers." (Touraille Suppl. Decl. ¶ 4.) This representation contradicted Plaintiffs' assertions adopted by the Order. Thus, the newly discovered evidence is material to the Court's reconsideration of its Order, and further weighs in favor of a finding that French law applies to production of Defendants' documents and information. *Schramm*, 2019 U.S. Dist. LEXIS 15032, at *5

### 2. The Court committed clear error and did not consider material evidence in determining that Defendants did not meet their burden in proving that the FBS applied to Defendants' documents and information.

The Ninth Circuit has held that it has "neither the power nor the expertise to determine . . . what [foreign] law is." *Richmark Corp. v Timber Falling Consultants*, 959 F.2d 1468, 1474 n.7 (9th Cir. 1992). Moreover, based on parties' assertions about foreign law and declarations in support thereof, courts have simply *assumed* foreign law applied to the production sought before then turning to analyzing the comity factors set forth in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522 (1987). *E.g.*, *Connex R.R. LLC v. AXACorproate Sols. Assurance*, No. CV 16-02368-ODW, 2017 U.S. Dist. LEXIS 215050, at *33 (C.D. Cal. Feb. 22, 2017) (holding that in view of submissions of declarations from French counsel and the French Ministry of Justice, "the Court may assume that the French Blocking Statute does in fact apply to the RFPs at issue"); *Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1007 (D. Ariz. 2018) ("Given Trench-France's . . . declaration it has provided from an experienced French attorney on the applicable French law and procedures, the Court will accept Trench-France's assertion that production of the documents and ESI . . . would violate French law."); *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *6 (N.D. Cal. Nov. 19, 2019).

The same result is warranted here on reconsideration.  First, Defendants have introduced the January 27, 2020 declaration of Jean-Dominique Touraille, whose sworn testimony states that the discovery sought by Plaintiffs is subject to the French Blocking Statute.  (Declaration of Jean-Dominique Touraille ("Touraille Decl.") ¶¶ 4-10, 42-43, ECF No. 121-9 ("I have reviewed the First Request for Production to All Defendants, First Set of Interrogatories to All Defendants, and First Set of Interrogatories to Olivier Lemarié (together, the "Discovery Requests") . . . . [W]ith the exception of Interrogatory No. 1 to Olivier Lemarié, the Discovery Requests are subject to the French Blocking Statute . . . .").)  Critically, Touraille further explained in his January 27, 2020 declaration that "even when documents and information have been transmitted outside France for non-litigation purposes, the Blocking Statute continues to apply to any production of that material by the French company in response to discovery requests in U.S. litigation." (*Id.* ¶ 13.)  Second, Defendants have provided a letter from the French Ministry of Justice advising Defendants of the scope and applicability of the French Blocking Statute, and further advising Defendants to proceed under the Hague Convention.  (Dec. 13, 2019 Letter from French Ministry of Justice, ECF No. 121-5.)

The January 27, 2020 Touraille Declaration and the French Ministry's letter, which were explained to the Court at the hearing, are sufficient to carry Defendants' burden.  Nonetheless, Defendants have also introduced the declaration of Romain Seguy, the Chief Financial Officer of Vade SASU, whose sworn testimony states that company documents and information for Defendants that are responsive to the discovery requests "are maintained and stored on servers located in France and/or originate from France," and that "source code, product development documents, financial information, human resources information, and IT information" for both companies "are stored and maintained on servers in France in the usual course of business."  (Declaration of Romain Seguy in Support of Defs.' Mot. for Leave ("Seguy Decl.") ¶ 7, ECF No. 121-10.).  Thus, the evidence from the only parties with actual knowledge of the location and origin of Defendants' documents establishes that French law applies.  Thus, the Order's determination to the contrary in this regard did not consider material evidence and constitutes clear error.  *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060 *6 (N.D. Cal. 2019) (reconsidering a pre-emption issue when the court "overlooked certain relevant caselaw"); *Schramm*,

4

2019 U.S. Dist. LEXIS 15032 *17-24 (granting a motion for reconsideration when certain theories and authorities had not been considered); *Mauia v. Petrochem Insulation, Inc.*, Case No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894 *7-11 (N.D. Cal. 2018) (granting reconsideration where the court failed to consider two dispositive legal arguments).

### B. The Order's determination of the *Aerospatiale/Richmark* factors was made without consideration of relevant (and newly discovered) evidence and is clearly erroneous.

#### 1. Plaintiffs did not dispute Defendants' arguments relating to Factors 1, 2, and 6.

In the Opposition, Plaintiffs did not dispute Defendants' arguments relating to factors 1, 2, and 6 of the *Aerospatiale/Richmark* seven-factor analysis. (Mot. to Stay 7-8, 10-11, ECF No. 123; Reconsideration Mot. at 4-5, 6-7, ECF No. 121.)  The Order's determinations that factors 1-2 weighed against Defendants' Reconsideration Motion are clearly erroneous because: (1) the Discovery Requests (ECF Nos. 91-1 to 91-3) include such a wide range of information that it could not all prove pivotal to the outcome of the case;[1] and (2) the Discovery Requests include more than 30 requests that vary in subject matter and classification, and seek a large volume of information on a wide variety of matters. (*Id.*); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1472, 1475 (9th Cir. 1992); *Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1006-1009 (D. Ariz. 2018). Accordingly, the Order's determination, which did not fully consider relevant authorities, is clearly erroneous. *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, Case No. 18-cv-07755-TSH, 2019 U.S. Dist. LEXIS 160060, at *6 (N.D. Cal. 2019) (reconsidering a pre-emption issue when the court "overlooked certain relevant caselaw"); *Schramm v. Montage Health*, Case No. 17-cv-02757-VKD, 2019 U.S. Dist. LEXIS 15032, at *17-24 (N.D. Cal. 2019) (granting a motion for reconsideration when certain theories and authorities had not been considered); *Mauia v. Petrochem Insulation, Inc.*, Case No. 18-cv-01815-TSH, 2018 U.S. Dist. LEXIS 198894, at *7-11 (N.D. Cal. 2018) (granting reconsideration where the court failed to

---

[1] Additionally, as discussed in the Joint Discovery Statement Regarding Defendants' Entitlement to Protective Order in View of Plaintiffs' Failure to Identify a Trade Secret ("Motion for Protection"), the Court has now determined that Plaintiffs have failed to sufficiently identify the claimed trade secrets (ECF No. 126), and so it is impossible to frame the appropriate scope of discovery or determine what may be relevant to Plaintiffs' claims. (Defs.' Mot. for Protective Order 2-3, ECF No. 128); *Neothermia Corp. v. Rubicor Med. Inc.*, 345 F. Supp. 2d 1042, 1044 (2004); Cal. Code Civ. P. § 2019.210.

consider two dispositive legal arguments).

With respect to factor 6, which the Order did not discuss, "[f]ederal courts should 'take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations.'" *Salt River*, 303 F. Supp. 3d at 1009; (Ex. D to Reconsideration Mot. 4-5, ECF No. 121-5.) In *Salt River*, the court emphasized that because the French Blocking Statute "at least create[d] a possibility of criminal prosecution," this factor weighed in favor of utilizing Hague procedures. 303 F. Supp. 3d at 1010. And factor 6 favors Hague procedures even more in the present case than in *Salt River*, when considering the recent renewed French focus on United States discovery. (Reconsideration Mot. 6-7, ECF No. 121; Touraille Decl. ¶¶ 4-10, 17-24, ECF No. 121-9 (explaining the recent increased scrutiny by French authorities in relation to the French Blocking statute);[2] Ex. B to Reconsideration Mot. ¶ 17, ECF No. 121-3 (explaining enforcements of the French Blocking Statute and the uncertainty surrounding recent increased scrutiny by the French authorities regarding the same).) Accordingly, the Order's silence on factor 6 is clearly erroneous because it did not consider relevant authorities or relevant evidence. *Wilson*, 2019 U.S. Dist. LEXIS 160060 at *6; *Schramm*, 2019 U.S. Dist. LEXIS 15032 at *17-24; *Mauia*, 2018 U.S. Dist. LEXIS 198894 at *7-11.

### 2. Factor 3: Plaintiffs misapply cases and misconstrue facts in their dismissal of the location of information.

In their February 18, 2020 brief filed in the instant lawsuit, Plaintiffs argued that "[i]t is undisputed that the discovery sought is readily available within and accessible from the United States . . . ." (Opposition 6, ECF No. 124). Just a day earlier, Plaintiff Proofpoint and Cloudmark Labs SARL filed a brief in the related French proceedings arguing that the evidence necessary to support their allegations "is necessarily located in Vade Secure's electronic correspondence with the poached

---

[2] Plaintiffs argue that certain exhibits submitted with the Reconsideration Motion are untimely because these exhibits were available before the discovery hearing but Defendants did not submit them. (ECF No. 124 at 8-9.) As explained in the Reconsideration Motion and the Motion to Stay, Magistrate Judge Illman's standing order prevented Defendants from submitting such exhibits. (ECF No. 121 at 2-3; ECF No. 123 at 2.) The standing order only permits requests for leave in the context of a party seeking to exceed the 5-page limit of the joint letter brief. *See* General Standing Order of Magistrate Judge Robert M. Illman 13(a). Here, Defendants indicated in the joint letter brief, and again during the hearing, that they were prepared to submit declarations, and Defendants had no opportunity to file any additional exhibits or affidavits. (Joint Ltr. Br. at 4-5, ECF No. 91; Hr'g Tr. at 12:19-23, ECF No. 121-2.)

employees and/or in Vade Secure's premises, and in particular on its servers. <u>The collection of such evidence was therefore impossible without [a French] investigative measure</u>."[3] (Touraille Suppl. Decl. ¶ 4 (emphasis in original).)  As mentioned above, Plaintiff Proofpoint's statement about the location of evidence was made in reference to the same allegations giving rise to and the same types of evidence sought in the present lawsuit.  (*Id.*; Compl. ¶¶ 1-11, 27-53; ECF Nos. 91-1 – 91-3.)  Accordingly, Plaintiffs made contrary representations to this Court as compared with statements Plaintiff Proofpoint and Cloudmark Labs SARL made in the French proceedings.  These contrary statements illustrate Plaintiffs' attempt to circumvent the French proceedings—in which documents are currently being held in escrow—to try to obtain documents and information located in France through its Discovery Requests in the instant lawsuit.  Plaintiffs' representations about the location of Defendants' documents were adopted by the Court in making determinations in the Order.  (Order 3-4, ECF No. 112.)  In view of the evidence of record, including this newly-discovered evidence, the Court is likely to reconsider its determination on factor 3, and find that factor 3 weighs in favor of proceeding with discovery under the Hague Convention.  *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

Plaintiffs argue that discovery for Vade Secure, Inc. ("Vade Inc.") should proceed under the federal rules because, in *Salt River*, the Canadian defendant, Trench-Canada, agreed to produce information without the need for Hague procedures.  (Opposition 5-6, ECF No. 124 (citing *Salt River*, 303 F. Supp. 3d 1004).)  However, as the *Salt River* court explained in its analysis of factor 3, "much of the evidence originated in Arizona," and Trench-Canada had no information located in France. *Salt River*, 303 F. Supp. 3d at 1008.  Unlike Trench-Canada, here, relevant documents and information for Defendants are located and maintained in France in the ordinary course of business and/or originated from France.  *Id.*; (Seguy Decl. ¶ 7, ECF No. 121-10.[4])  Further, in *Salt River* the

---

[3] References to "Vade Secure" in Plaintiff Proofpoint's brief in the French proceedings refer to Defendant Vade Secure SASU, which is based in France.  Touraille Suppl. Decl. n. 1.

[4] Plaintiffs do not dispute the substance of the Seguy declaration, but instead argue that the Seguy declaration and other employee declarations fall within the scope of the French Blocking Statute ("FBS").  (ECF No. 124 at 9-10.)  This is nothing but an old argument that Defendants have already debunked multiple times in the joint letter brief, again in the hearing, and again in the Reconsideration Motion.  (ECF No. 91 at 5 ("Those declarations assert facts and do not describe the contents of documents or other types of information that would be subject to French law."); Hr'g Tr. at 20:19-25, ECF No. 121-2 ("Now, our understanding is under French law, the steps that

plaintiffs' contention that "Trench-France is a multinational corporation, operating under various entities in various countries" was rejected by the court, which deferred to the defendants' assertions about where their documents and information were located. 303 F. Supp. 3d at 1008. The same is true here. The Seguy declaration confirms that the location of documents and information in the ordinary course of business is France. (Seguy Decl. ¶ 7, ECF No. 121-10.) Accordingly, the Court is likely to reconsider factor 3 in view of the relevant evidence (not previously considered) and the relevant authorities, and find that this factor weighs in favor of Defendants. *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

Plaintiffs also argue that any information accessible from within the United States must be discovered under the federal rules. (ECF No. 124 at 6 (citing *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *14 (N.D. Cal. Nov. 19, 2019).) But *CRRC* is distinguishable because *CRRC* involved Article 277 of the Chinese Civil Procedure Law—not the French Blocking Statute ("FBS"). *CRRC Corp.*, 2019 U.S. Dist. LEXIS 200616 at *3. Unlike *CRCC*, where no evidence was presented indicating that the Chinese law imposed a criminal penalty, the FBS "punishes any violation . . . with a prison term of 6 months." *Id.* at *12 ("Here, Defendant does not present any evidence to show that it is likely to be prosecuted or that any adverse action will occur."); (*but see* French Ministry of Justice Ltr. 5, ECF No. 121-5.) Critically, the *CRRC* court held that producing electronic documents stored in China did "not implicate Article 277 of the Chinese Civil Procedure Law," and so no conflict of law situation was present. *CRRC Corp.*, 2019 U.S. Dist. LEXIS 200616 at *15. Here, the record demonstrates that the FBS *is* implicated by the production of electronic documents, and so the French law must be considered by the Court. (Touraille Decl. ¶ 14, ECF No. 121-9 ("Further, the French Blocking Statute applies to French companies or citizens that would permit or allow another person or entity to remotely access or download . . . documents or information of an economic, commercial, industrial, financial, or technical nature for the purposes of constituting evidence for or in the context

---

Defendants have taken are completely appropriate, and we do have a declaration from the French lawyer who's familiar with the French Blocking Statute and the Hague to attest to that very fact. And so our actions are entirely consistent with French law."); Touraille Decl. ¶ 21, ECF No. 121-9 ("French nationals or companies are entitled to make factual assertions and/or submit witness declarations; otherwise they would be deprived of their right to a fair trial.").)

of foreign judicial or administrative proceedings."); Gaudemet Decl. 25 ¶ 8, ECF No. 121-3 ("There is therefore no doubt that the documents and information of which the disclosure is sought by [Plaintiffs] . . . fall within the scope of [the FBS]").)[5]  Accordingly, when considering the evidence of record (not previously considered), and the relevant authorities, the Court is likely to find that this factor weighs in favor of Defendants. *Schramm*, 2019 U.S. Dist. LEXIS 15032 *5, *17-24.

> **3.    Factors 4 and 7: Plaintiffs repetitive complaints about alleged deficiencies of the Hague Convention do not apply to this case.**

Plaintiffs accuse Defendants of "brazen misrepresentation of the record," but an examination of the record demonstrates the opposite.  For example, Plaintiffs attempt to construe Defendants' acknowledgement that the Chapter II of the Hague Convention is not a "perfect substitute" for the Federal Rules as somehow proving that Defendants have conceded undue prejudice. (Opposition 3, ECF No. 124.)  But, to the contrary, Defendants have maintained a consistent position on their understanding of the Chapter II proceedings throughout their correspondence and briefing process.  Further, Magistrate Judge Kim of this Court has recently held that the Hague Convention needs to be "substantially equivalent" to the federal rules (not a "perfect substitute"). *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-cv-02191-SK, 2019 U.S. Dist. LEXIS 200616, at *9 (N.D. Cal. Nov. 19, 2019) (citing *Richmark Corp.*, 959 F.2d at 1475; citing *Salt River*, 303 F. Supp. 3d at 1008).

As another example, Plaintiffs argue that Defendants' Proposed Order and Proposed Request validate Plaintiffs' concerns of the Hague such as potential "undue delay." (Opposition 3-5, ECF No. 124.)  But the language at issue in the Proposed Request was no longer current when Plaintiffs filed their Opposition.  Indeed, Defendants had already agreed to several mechanisms Plaintiffs proposed to "eliminate the risk of potential delays" under the Hague—i.e., addressing the very language Plaintiffs complain about in the Opposition. (Ratway Decl. ¶ 5, Ex. C p.2 ¶ 2, ECF No.

---

[5] Plaintiffs also misconstrue the French law professor Antoine Gaudemet's declaration. (Opposition 7, ECF No. 124 (citing Gaudemet Decl. 24, ECF No. 121-3).) Gaudemet simply explains that either an oral or written mode of disclosure would be subject to the FBS. (Gaudemet Decl. 24, ECF No. 121-3.) Further, Gaudemet specifically stated that "evidence located in France" would be subject to the FBS, and that there is "no doubt that the documents and information" in this case would be subject to the FBS. (*Id.* at 25, 35.)

121-4; Ratway Decl. ¶ 3, Ex. A at 18:15-20:16, ECF No. 121-2.)[6] For the sake of clarification, the no longer current proposal from Defendants, compared with the agreed proposal from Plaintiffs are below, side by side:

| **Defendants' (no longer current) Proposal** | **Plaintiffs' Proposal (agreed)** |
|---|---|
| Recognizing that the Commissioner will require a reasonable period of time to analyze and approve discovery requests and deposition notices subject to this Request, and further recognizing that the Commissioner will require a reasonable period of time to review and authorize responses, productions, and/or disclosures made by the responding party(ies), the parties will otherwise endeavor to adhere as closely as possible to the time periods for responses, productions, and/or disclosures set forth in the applicable Federal Rules of Civil Procedure, the Local Rules of the U.S. Court, and any other applicable Order of the U.S. Court, subject to any objections the responding party(ies) is entitled to make under applicable laws and treaties, relevant rules of civil procedure, and the orders of the U.S. Court. (Ratway Decl. ¶ 9, ECF No. 121-1, Ex. G at ¶ 16, ECF No. 121-8.) | To eliminate the risk of potential delays associated with the Commissioner's participation in acting as intermediary between the parties, we propose that discovery requests and notices subsequent to the initial request be served on the Commissioner and all other parties *simultaneously* such that the receiving party will have the *usual period under the Federal Rules* to respond and/or object *from the date of said service*, regardless of when the Commissioner is able to provide the request or notice to the party. Similarly, we propose that the receiving party serve its responses and objections on the Commissioner and all other parties *simultaneously*. This is to *avoid any delays* associated with the Commissioner's unavailability or failure to timely forward discovery. (Ratway Decl. ¶ 5, ECF No. 121-1, Ex. C, ECF No. 121-4.) |

During the discovery hearing on January 31, 2020, Defendants unequivocally stated that they were willing to agree to Plaintiffs' proposed mechanisms to put Plaintiffs' concerns of potential delay to rest. (Hr'g Tr. at 20:12-16, ECF No. 121-2.)

Overall, since Defendants have agreed to discovery under the Hague Convention in manners that are substantially equivalent to the federal rules, Plaintiffs repetitive complaints about alleged deficiencies of the Hague Convention simply do not apply.

---

[6]Plaintiffs were aware that Defendants' Proposed Order and Proposed Request did not represent Defendants' latest position when they filed the Opposition. Specifically, Ms. Martin received Mr. Pak's letter (ECF No. 121-4) on January 29, 2020, and sent Defendants' Proposed Order and Proposed Request (ECF Nos. 121-7 – 121-8) to Plaintiffs the next morning. In an email accompanying the proposals, Defendants informed Plaintiffs that the Proposed Order and Proposed Request "were prepared prior to receiving" Mr. Pak's January 29, 2020 letter, and that Defendants would consider the proposals. (Declaration of Mark Ratway in Support of Defendants' Reply in Support of Motion to Stay ("Ratway Reply Decl.") ¶ 3, ECF No. 129-1, Ex. A at 1, ECF No. 129-2.) Defendants subsequently agreed to Plaintiffs' proposal the next day at the hearing. (Hr'g Tr. at 21:1-12, ECF No. 121-2.)

### 4. Factor 5: French interests outweighs U.S. interests because Defendants do not seek one sided justice

While Plaintiffs facially attack Messrs. Gaudemet and Touraille's submissions for an alleged promotion of "one-sided justice," Plaintiffs simply do not address Defendants' contention that "Plaintiffs' arguments about the added expenses and associated delays" of Hague procedures are not a part of the calculus for balancing national interests.  (*See* ECF No. 124 at 10-11.)  The Order's determination "that this factor does not weigh heavily in either direction" is clearly erroneous because the Order reflects the introduction of a improper element—expenses and delays to one party—into the Order's balancing of national interests as informed by *Richmark Corp*. 959 F.2d at 1476 (citations omitted).  For example, *Richmark* emphasizes that a court "must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or interests of either the United States or [France.]"  *Id*. at 1476 (citation and internal quotation marks omitted).  Additionally, the Order cites to *Aerospatiale*, 482 U.S. at 540 n.25, which opinion similarly does not expressly mention one party's allegations of added expense or delay as part of the relevant analysis.

To be sure, Defendants seek neither one-way discovery nor one-sided justice.  Instead, as indicated previously, Defendants simply request that Plaintiffs make a proper request permitting them a full and fair opportunity to litigate their claims—and thus preserving any United States interests at stake—while not unnecessarily threatening French national interests and subjecting Defendants to civil and criminal penalties.  (ECF No. 91 at 3-4; Hr'g Tr. at 21:16-25, ECF No. 121-2; ECF No. 121 at 5; ECF No. 123 at 7.)

In conclusions, Plaintiffs wholly failed to address factors 1, 2, 6, and failed to credibly counter Defendants' position for factors 3, 4, 5, and 7.  As a result, the *Aerospatiale/Richmark* analysis mandates that discovery in this case should proceed under Hague procedures.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to grant their Motion to Reconsider.

| | |
|---|---|
| Dated: March 6, 2020 | **BAKER & McKENZIE LLP**<br><br>By: /s/ *Mackenzie Martin*<br><br>Colin H. Murray (SBN 159142)<br>colin.murray@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA  94111-3802<br>Telephone:     +1 415 576 3000<br>Facsimile:       +1 415 576 3099<br><br>Danielle L. Benecke (SBN 314896)<br>danielle.benecke@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>600 Hansen Way<br>Palo Alto, CA  94304<br>Telephone:     +1 650 856 2400<br>Facsimile:       +1 650 856 9299<br><br>Jay F. Utley (Admitted *Pro Hac Vice*)<br>jay.utley@bakermckenzie.com<br>Bart Rankin (Admitted *Pro Hac Vice*)<br>bart.rankin@bakermckenzie.com<br>Mackenzie M. Martin (Admitted *Pro Hac Vice*)<br>mackenzie.martin@bakermckenzie.com<br>John G. Flaim (Admitted *Pro Hac Vice*)<br>john.flaim@bakermckenzie.com<br>Chaoxuan Liu (Admitted *Pro Hac Vice*)<br>charles.liu@bakermckenzie.com<br>Mark Ratway  (Admitted *Pro Hac Vice*)<br>mark.ratway@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>1900 North Pearl Street, Suite 1500<br>Dallas, Texas 75201<br>Telephone:     +1 214 978 3000<br>Facsimile:       +1 214 978 3099<br><br>*Attorneys for Defendants,*<br>*Vade Secure, Incorporated; Vade Secure SASU;*<br>*and Olivier Lemarié* |