| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>  Sean S. Pak (SBN 219032)<br>  seanpak@quinnemanuel.com<br>  Iman Lordgooei (SBN 251320)<br>  imanlordgooei@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>**JWC LEGAL**<br>  Jodie W. Cheng (SBN 292330)<br>  jwcheng@jwc-legal.com<br>One Market Street<br>Spear Tower, 36th Floor<br>San Francisco, CA 94105<br>Telephone: (415) 293-8308<br><br>*Attorneys for Plaintiffs*<br>*Proofpoint, Inc. and Cloudmark LLC* | Colin H. Murray (SBN 159142)<br>  colin.murray@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA 94111-3802<br>Telephone: +1 415 576 3000<br>Facsimile: +1 415 576 3099<br><br>Jay F. Utley (*Pro Hac Vice*)<br>  jay.utley@bakermckenzie.com<br>Bart Rankin (*Pro Hac Vice*)<br>  bart.rankin@bakermckenzie.com<br>Mackenzie M. Martin (*Pro Hac Vice*)<br>  mackenzie.martin@bakermckenzie.com<br>John G. Flaim (*Pro Hac Vice*)<br>  john.flaim@bakermckenzie.com<br>Chaoxuan Liu (*Pro Hac Vice*)<br>  charles.liu@bakermckenzie.com<br>Mark Ratway (*Pro Hac Vice*)<br>  mark.ratway@bakermckenzie.com<br>**BAKER & McKENZIE LLP**<br>1900 North Pearl Street, Suite 1500<br>Dallas, Texas 75201<br>Telephone: +1 214 978 3000<br>Facsimile: +1 214 978 3099<br><br>*Attorneys for Defendants*<br>*Vade Secure, Incorporated; Vade Secure SASU; and Olivier Lemarié* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-4238-MMC-RMI<br><br>**JOINT DISCOVERY STATEMENT REGARDING PLAINTIFFS' DISCLOSURE OF TRADE SECRETS** |

Honorable Judge Illman:

## DEFENDANTS' INTRODUCTION[1]

Plaintiffs filed this lawsuit based on their allegation that Defendants allegedly misappropriated Plaintiffs' trade secrets. Plaintiffs, however, have at no point adequately identified the purported trade secrets that have allegedly been misappropriated. Indeed, Plaintiffs failed to do so despite repeated challenges during the briefing on their motion for preliminary injunction, which the Court properly denied on that basis. Similarly, Plaintiffs' failures continue through their repeated and unsuccessful attempts to satisfy California Code of Civil Procedure § 2019.210. In particular, during the parties' meet and confer on this issue as instructed by the Court, Defendants requested that Plaintiffs identify by specific file name or lines of code where their allegedly misappropriated trade secrets could be found. Plaintiffs refused and instead took the position that they could indiscriminately disclose all of their source code for the relevant products without any consideration as to whether it had allegedly been misappropriated. It is further Plaintiffs' position that they could then narrow their disclosure after receiving Defendants' discovery. This strategy, however, has been squarely rejected and does not satisfy Section 2019.210. Plaintiffs' contentions to the contrary are further proof that this suit was not brought in good faith, and Plaintiffs should not be permitted to use discovery as a fishing expedition in an effort to cobble together a basis for their improper claims.

## PLAINTIFFS' INTRODUCTION

Discovery has been open in this case since October 2019, yet Defendants served an interrogatory requesting identification of Plaintiffs' trade secrets just earlier this month, on March 2, 2020. Plaintiffs have since answered the interrogatory and provided an identification of the trade secrets with more than reasonable particularity. Plaintiffs' disclosure is more than sufficient at this pre-discovery stage of the litigation even under CCP 2019.210, consistent with many courts that have considered adequacy of a party's trade secret disclosure. Like many such cases, Plaintiffs have identified the specific trade secret functionalities and source code that Defendant Lemarié and other former Cloudmark employees (who now work at Vade Secure) had access to and may have misappropriated—in view of the striking similarities between Vade Secure's products and the products Lemarié and others developed while at Cloudmark. Unlike a preliminary injunction, the 2019.210 standard does not require a mini trial on the merits and, thus, Defendants' attempt to bootstrap their arguments on the Court's denial of Plaintiffs' preliminary injunction motion is unavailing. Moreover, consistent with many other cases that have addressed disclosures under 2019.210, Plaintiffs submit an expert declaration to further establish the sufficiency of Plaintiffs' disclosure. "Where, as here, credible experts declare that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005); *see also Qualcomm Inc. v. Apple, Inc.*, No. 30-2017-00041389, slip-op at 5 (Cal. Super. Mar. 4, 2019) (Ex. B) ("A plaintiff may provide an expert declaration to establish that its section 2019.210 designation identifies the trade secret with reasonable particularity" and "the fact that the defendant submits contrary other or expert testimony is inconsequential.").

---

[1] Approximately one hour before the parties were set to exchange their statements set forth herein, Plaintiffs' counsel disclosed that they would be submitting an expert declaration. Whether Plaintiffs have satisfied Section 2019.210, which they have not, is a legal determination. There is nothing that Dr. Nielsen could state that would assist the Court in making that determination. And thus, his declaration should be disregarded by the Court.

Case No. 3:19-cv-4238-MMC-RMI
JOINT STATEMENT REGARDING TRADE SECRET DISCLOSURE

## **DEFENDANTS' STATEMENT**

**Section 2019.210 requires disclosure of trade secrets that were allegedly misappropriated.**

From the outset of this lawsuit, it has been clear that Plaintiffs are employing a well-worn and improper strategy of alleging "theft of trade secrets with vagueness, then tak[ing] discovery into the defendants' files, and then cleverly specify[ing] whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519, 2014 U.S. Dist. LEXIS 26371, at *14-15 (N.D. Cal. Feb. 28, 2014) (Alsup, J.). Plaintiffs have, in fact, already altered what they claim to be a trade secret on multiple occasions, including again in their recent interrogatory response, which Plaintiffs amended yet again at 2:30 a.m. Central on the day of this filing. (*Compare* Pls.' Amended Objs. and Resps. to Defs.' 1st Set of Interrog., Lordgooei Decl. ¶ 4, Ex. A 11, 14-15, 29, 30-31, 34-35, 42, 45, 47, 49 (claiming new alleged trade secret implementations that all alleged trade secret functionalities for the Trident product are also implemented in the MTA product) *with* Compl. ¶ 32, ECF No. 1 & Pls.' Reply re Mot. for Prelim. Inj. at 3, n.6, ECF No. 81-3 (alleging these functionalities only in the Trident product context); *see also* Defs.' Sur-Reply re Prelim. Inj. Mot. at 1, 3-4, ECF No. 99-4 (showing Plaintiffs' shifting of trade secret theories during briefing).) To prevent such gamesmanship, California courts, state and federal, require compliance with California Code of Civil Procedure § 2019.210. *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1336 (2009); *see SocialApps, LLC v. Zynga, Inc.*, No. 4:11-cv-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *6 (N.D. Cal. June 14, 2012). Section 2019.210, which complements Federal Rule of Civil Procedure 26, requires a plaintiff suing for trade secret misappropriation to identify "with reasonable particularity the purported trade secrets which ***allegedly have been misappropriated*** before commencing discovery relating to the trade secrets." *Perlan Therapeutics*, 178 Cal. App. 4th at 1336 (emphasis added); *see SocialApps*, 2012 U.S. Dist. LEXIS 82767, at *6. Courts consistently hold that the disclosure must distinguish the trade secrets from "matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *9-10 (N.D. Cal. Dec. 21, 2015) (citations omitted).

To meet that standard, plaintiffs are required to serve a trade secret disclosure statement that provides "(1) a summary of the specific trade secret; (2) the backgrounds of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent." *Jobscience*, 2014 U.S. Dist. LEXIS 26371, at *15. But courts have consistently held that a plaintiff cannot meet this standard by disclosing a "kitchen-sink" listing of categories of information that could be "read so broadly as to incorporate everything about its business practices." *Id.* at *13. In other words, a plaintiff is not "entitled to hide its trade secrets in plain sight by including surplusage and voluminous attachments in its trade secret statements." *Perlan Therapeutics*, 178 Cal. App. 4th at 1350.

**Plaintiffs' recent kitchen-sink disclosure does not satisfy Section 2019.210.**

During the meet-and-confer preceding this letter brief, Plaintiffs conceded that they do not know which of their alleged trade secrets have allegedly been misappropriated. Rather, it is Plaintiffs' position that, because Mr. Lemarié is now working for a competitor that offers competing products using widely known features, there must have been some misappropriation. Apparently, Plaintiffs brought this suit based on an inevitable disclosure theory, which itself cannot give rise to a claim under the Defend Trade Secrets Act as a matter of law. *See UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-cv-01704-EJD, 2017 U.S. Dist. LEXIS 206816, at *8-9 (N.D. Cal. Dec. 15, 2017). This ill-conceived approach is also fatal to Plaintiffs' attempt to satisfy Section 2019.210. Again, Section 2019.210 requires the disclosure of the alleged trade secrets that are ***alleged to have been***

misappropriated. *Perlan Therapeutics*, 178 Cal. App. 4th at 1336; *E&J Gallo Winery v. Institute Voor Landbouw-En Visserijonderzoek*, No. 1:17-cv-00808-DAD, 2018 U.S. Dist. LEXIS 102529, at *12-13 (E.D. Cal. June 19, 2018) (". . . a defendant cannot be expected to prepare its rebuttal to a trade secrets claim without some concrete identification of exactly [what] was misappropriated or incorporated into the defendant's product") (citing *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1167 (1998)). By their own admission, Plaintiffs have not made such a disclosure.

Instead, Plaintiffs' disclosure, while lengthy, fails to adequately identify the trade secrets alleged to be at issue in this case. In particular, Plaintiffs generically claim that they maintain a trade secret in *all* of the source code underlying multiple products, and claim to have trade secrets in a laundry list of company documents, without providing any explanation of what those alleged trade secrets are. (Lordgooei Decl. ¶ 4, Ex. A 6-8, 10.) In Plaintiffs' own words during the meet-and-confer, Plaintiffs disclosed the entire "universe" of what they contend Mr. Lemarié *had access to* as a former employee, without any effort to specifically identify the allegedly misappropriated trade secrets. The purported disclosures of source code are nothing more than listings of whole directories of code, which themselves include any number of source code files. This not only flies in the face of the Court's holding that "the assertions [of source code containing trade secrets] do not suffice to identify the claimed trade secrets" (Order 4, ECF No. 126), but is also contrary to the intent of Section 2019.210, which prohibits listing categories of information that could be "read so broadly as to incorporate everything about [a Plaintiff's] business practices." *Jobscience*, 2014 U.S. Dist. LEXIS 26371, at *13; *see also SocialApps*, 2012 U.S. Dist. LEXIS 82767, at *10 (holding that categorical identification of trade secrets in computer source code is insufficient); *InteliClear, LLC v. ETC Global Holdings, Inc.*, No. 2:18-cv-10342-RGK-SK, 2019 U.S. Dist. LEXIS 109827, at *11 (C.D. Cal. June 28, 2019). When asked to cure this failure during the meet-and-confer and identify specific source-code files or lines of code, Plaintiffs tellingly refused. It should be further noted that 27 of the 36 documents cited in Plaintiffs' disclosure have already been determined by the Court to insufficiently identify any protectable trade secret. *See, e.g.*, ECF Nos. 30-9, 30-19, 30-23, 30-24, 30-27, 30-30, 30-31, 30-34, 30-35, 30-42, 30-45, 82-3, 82-4, 82-5, 82-9, 82-18. Simply put, Plaintiffs are attempting to hide their alleged trade secrets in plain sight, such that they can again shift their theory of misappropriation after receiving discovery. This is improper at every level and does not satisfy Section 2019.210. *See SocialApps*, 2012 U.S. Dist. LEXIS 82767, at *10-12.

Plaintiffs' purported disclosure also fails because they do not separate their alleged trade secrets from knowledge generally known in the industry. *See Loop AI Labs, Inc.*, 2015 U.S. Dist. LEXIS 170349, at *9-10. It is undisputed that the features that Plaintiffs allegedly use in conjunction with their Trident and MTA products are common knowledge. (*See* Defs.' Sur-Reply re Prelim. Inj. Mot. at 1-3, ECF No. 99-4.) While Plaintiffs contend that they have "unique implementations" of those features, they tellingly never explain what makes such implementations unique or separate from matters of general knowledge in the industry. Instead, Plaintiffs merely state in conclusory fashion that they claim a trade secret in virtually every aspect of these products, and, without explanation, contend that these "trade secrets" are described in numerous pages of documents and source code files. By doing so, Plaintiffs are, again, employing the improper strategy of claiming everything to be a trade secret in order to leave the door open to claim as their trade secret whatever happens to be in the discovery received from Defendants. *See Jobscience*, 2014 U.S. Dist. LEXIS 26371, at *14. And contrary to the anticipated argument from Plaintiffs, the volume of their disclosure does not make it adequate. *Id.* Indeed, most of the documents produced were already part of the 1300+ pages of documents in the record on Plaintiffs' preliminary injunction motion, which the Court has already held to be inadequate. (*See* Order Denying Mot. for Preliminary Injunction 4-5, ECF No. 126.) If anything, the volume of Plaintiffs' disclosure is the antithesis of Section 2019.210's requirements. *See Perlan Therapeutics*, 178 Cal. App. 4th at 1350. Because Plaintiffs have failed to, among other things, disclose their alleged trade secrets with reasonable particularity and separate from matters generally known, Plaintiffs have not satisfied Section 2019.210, and, as a result, Defendants' request for protective order should be granted. *See id.*

JOINT STATEMENT REGARDING TRADE SECRET DISCLOSURE

Respectfully submitted,

**BAKER & McKENZIE LLP**

By:   /s/ *Mackenzie M. Martin*

Mackenzie M. Martin

## PLAINTIFFS' STATEMENT

As indicated in the prior letter brief (Dkt. 128) and at the March 20 hearing, Plaintiffs have provided a response to Defendants' March 2, 2020 Interrogatory No. 1 seeking an identification of Plaintiffs' trade secrets.[2]  Contrary to Defendants' assertions, Plaintiffs' response identifies the trade secrets at issue in this action with more than reasonable particularity.  *See* Ex. A.

**Plaintiffs' Trade Secret Disclosure Provides Reasonable Particularity and Complies with 2019.210.**[3]  At the pre-discovery stage, a plaintiff need only provide enough particularity "to permit [the defendant] to investigate whether [the] alleged trade secrets were within the public domain and prepare a defense." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 151 (2009).  Contrary to Defendants' assertions, Plaintiffs need not meet the summary judgment standard at this stage of the litigation, before ***any*** substantive discovery has been conducted.  *See* 3/20 Hearing Tr. at 18:4-7 ("Defendants are also prepared to move forward with ***a motion for summary judgment*** on the issue of Plaintiffs' failure to identify protectable trade secret.") (emphasis added).  To the contrary:

> [T]he standard required for compliance with 2019.210 is flexible. Reasonable particularity required by section 2019.210 does not require defining every minute detail of the claimed trade secret at the outset of the litigation. Nor does it mandate the judge or discovery referee to conduct a mini-trial on the merits before discovery may commence. It merely requires the plaintiff to make some reasonable showing, i.e. one that is fair, just, proper and rational to allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information and allow the parties a fair opportunity to prepare and present their best case or defense at trial.

*Qualcomm Inc. v. Apple, Inc.*, No. 30-2017-00041389, slip-op at 7 (Cal. Super. Mar. 4, 2019) (Ex. B); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005).

---

[2] The parties met and conferred on March 27, at which time Defendants raised two objections to Plaintiffs' trade secret disclosure not raised at the March 20 hearing.  In particular, Defendants objected to Plaintiffs' use of inclusive language (e.g., "including") and reservation of right to amend the disclosure.  To avoid an unnecessary dispute, on March 30, Plaintiffs amended the disclosure to remove any such language and limit the reservation of right to amend for good cause.

[3] Plaintiffs maintain that CCP 2019.210 does not apply in this case, which involves claims brought under the Federal Defense of Trade Secrets Act ("DTSA"), not California law.  As explained in Dkt. 128, Plaintiffs are not aware of any case imposing 2019.210 in an action brought solely under DTSA.  Nevertheless, the Court need not decide this issue, as Plaintiffs' trade secret disclosure meets the standard of "reasonable particularity" under 2019.210.

Here, Plaintiffs' disclosure more than meets this standard by identifying specific source code directories comprising Plaintiffs' trade secrets (Ex. A at 7-10, 56-58), itemized trade secret implementation details relating to the functionalities identified in Plaintiffs' Complaint (*id.* at 14-16, 29-30, 33-34, 37-38, 41-43, 47-48, 51-52, 59-60, 65-67, 68-69), and a correlation between the implementation details and specific source code directories and files and technical documents describing the same (*id.* at 16-28, 30-33, 35-37, 39-41, 43-46, 48-50, 53-56, 60-63, 69-72). Plaintiffs' disclosure also outlines the reasonable efforts taken to protect the confidentiality of the trade secrets. *Id.* at 73-75. As set forth in the accompanying declaration of Dr. Seth J. Nielson, Ph.D., Plaintiffs' disclosure is sufficient to enable a skilled person to identify the trade secrets with reasonable particularity and to understand the trade secrets and distinguish them from material generally known in the field. *See generally*, Ex. C ¶¶ 13-42.

Moreover, by virtue of Vade's participation in the market, and Lemarié's extensive personal experience in cybersecurity (e.g., Dkt. 29 at 6–8) and the very trade secrets at issue here (*see infra*), Defendants are more than capable of working with their experts to discern the identified trade secrets from matters of general knowledge, and to investigate and formulate their defenses. Indeed, Defendants claim to have already begun their investigation based just on the disclosures in Plaintiffs' Complaint (*see* Dkt. 31-52), which contains fewer details than Plaintiffs' disclosure.

**The Sufficiency of Plaintiffs' Trade Secret Disclosure Is Not Affected by Plaintiffs' Motion for Preliminary Injunction.** Contrary to Defendants, Plaintiffs' disclosure is far from "merely a repeat of what we have seen multiple times in this case already" or "inadequate for the same reasons that Judge Chesney articulated in her prior ruling" on Plaintiffs' preliminary injunction motion (3/20 Hearing Tr. at 17:9-15). Indeed, the record on preliminary injunction did not include the specific details provided in Plaintiffs' instant disclosure, such as, for each trade secret category identified in the Complaint[4]: (1) the specific functionality at issue and its significance in the context of the relevant technology; (2) the unique implementation of that functionality present in Plaintiffs' products; (3) specific trade secrets corresponding to Plaintiffs' unique implementation; and (4) a specific list of source code directories and files that implement that functionality. *See, e.g.*, Ex. C ¶¶ 35-41.

Moreover, the standard applied on a motion for preliminary injunction—an "extraordinary remedy"—requires a determination of likelihood of success **on the merits**, and is the opposite of the "flexible" standard under 2019.210, which courts have uniformly held does not require "a miniature trial on the merits." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005). Accordingly, while the specific details and evidence presented to the Court on preliminary injunction may have been "insufficient to satisfy the first requirement for a preliminary injunction" (Dkt. 126 at 3-4), that does not mean they are insufficient under 2019.210. *See, e.g.*, *WRMS Eng'g, Inc. v. Critical Eng'g Grp.*, No. RG05216362, 2006 WL 6087592 (Super. Ct. Cal. May 16, 2006) (finding trade secret disclosure satisfied 2019.210 but not preliminary injunction standard); *Storagecraft Tech. Corp. v. Symantec Corp.*, 2009 WL 361282, at *3 (D. Utah Feb. 11, 2009) ("Here, the court is concerned with the reasonable particularity standard which is different from those standards used in determining whether a party is entitled to a preliminary injunction."). And, in any event, Plaintiffs' disclosure includes specific information

---

[4] Notably, Defendants' motion to dismiss the trade secret claims was denied because the Complaint "sufficiently described the alleged trade secrets" (Dkt. 61), much less Plaintiffs' instant disclosure.

identifying the trade secrets that was not before the Court on preliminary injunction. Thus, Defendants' reliance on *Citcon USA, LLC v. RiverPay, Inc.*, 2019 WL 2603219 (N.D. Cal. June 25, 2019) is inapposite. In particular, Defendants cite *Citcon* for the proposition that high-level descriptions of categories of source code are insufficient to identify trade secrets with reasonable particularity, but *Citcon* was decided in the context of a preliminary injunction and, thus, was based on an evaluation of the alleged trade secrets on the merits. *See id*. That is not the standard under 2019.210, which does not require a trial on the merits, and, as explained above, Plaintiffs' disclosure nevertheless includes more than mere high-level descriptions of source code categories.

**The Sufficiency of Plaintiffs' Trade Secret Disclosure Is Not Affected By the Volume of Identified Trade Secrets.** Defendants also complain that Plaintiffs' disclosure "is essentially a laundry list of directories of the entirety of their source code for each product including all versions" (3/20 Hearing Tr. at 23:9-16), but the identified directories and files are those that Defendant Lemarié and other former Cloudmark employees who now work at Vade had direct access to and, in many instances, were primarily responsible for developing. For example, Lemarié had unfettered access to the complete source code bundles identified in Plaintiffs' disclosure and appears as an author or editor of tens of thousands of source code files dating back to as early as 2005. Other ex-Cloudmark employees are similarly identified as authors and editors of thousands of MTA and Trident source code files between 2007 and 2016. Ex. C ¶¶ 20-23.

Without discovery, all Plaintiffs can do at this stage is identify all of the trade secrets Lemarié and others had access to and likely misappropriated based on striking similarities between Vade's new products and those Lemarié and others worked on while at Cloudmark—namely, Cloudmark's MTA and Trident. *See* Dkt. 31 at 4-5, 10-12, 17-20 (unredacted version available upon request); Dkt. 82 at 5-7, 9-10 (same); *see also* Dkt. 1 ¶¶ 30-45; Dkt. 46 at 7-8. Similarly, in *Qualcomm*, the court found that an identification of software products and source code files and functions the defendant had access to and "may have" misappropriated was sufficient under 2019.210 because discovery would reveal what was "actually misappropriated." *Qualcomm*, slip-op at 7-10 ("At this stage in the proceedings, Qualcomm has identified as best it can, based on the limited discovery that has taken place, the trade secrets *that may have been misappropriated*. As discovery progresses, Qualcomm will narrow the trade secrets it believes *were actually misappropriated* based on the evidence it uncovers in further discovery.").

Here, as in other cases, the sheer volume of identified trade secrets is "attributable not to the lack of particularity in the Section 2019 Statement but to the magnitude of the alleged theft." *SanDisk Corp. v SK Hynix Inc.*, No. 1-14-CV-262078, 2015 WL 4878941, at *12-16 (Cal. Super. June 26, 2015); *see also Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. 2015) (finding identification of 240,000 lines of code sufficient under 2019.210).

Respectfully submitted,
*/s/ Sean S. Pak*
Sean S. Pak

## ATTESTATION OF CONCURRENCE

I, Iman Lordgooei, am the ECF user whose ID and password are being used to file this **JOINT DISCOVERY STATEMENT RE PLAINTIFFS' DISCLOSURE OF TRADE SECRETS**. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: March 30, 2020                              */s/ Sean S. Pak*
                                                                Sean S. Pak