1  Colin H. Murray (SBN 159142)
    colin.murray@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
3  San Francisco, CA 94111-3802
   Telephone: +1 415 576 3000
4  Facsimile: +1 415 576 3099
5
   Jay F. Utley (*Pro Hac Vice*)
6    jay.utley@bakermckenzie.com
   Bart Rankin (*Pro Hac Vice*)
7    bart.rankin@bakermckenzie.com
   Mackenzie M. Martin (*Pro Hac Vice*)
8    mackenzie.martin@bakermckenzie.com
   John G. Flaim (*Pro Hac Vice*)
9    john.flaim@bakermckenzie.com
   Chaoxuan Liu (*Pro Hac Vice*)
10   charles.liu@bakermckenzie.com
   Mark Ratway (*Pro Hac Vice*)
11   mark.ratway@bakermckenzie.com
12 **BAKER & McKENZIE LLP**
   1900 North Pearl Street, Suite 1500
13 Dallas, Texas 75201
   Telephone: +1 214 978 3000
14 Facsimile: +1 214 978 3099
15

16 *Attorneys for Defendants*,
   *Vade Secure, Incorporated; Vade Secure*
17 *SASU; and Olivier Lemarié*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
  Sean S. Pak (SBN 219032)
  seanpak@quinnemanuel.com
  Iman Lordgooei (SBN 251320)
  imanlordgooei@quinnemanuel.com
  50 California Street, 22nd Floor
  San Francisco, CA 94111
  Telephone: (415) 875-6600
  Facsimile: (415) 875-6700

**JWC LEGAL**
  Jodie W. Cheng (SBN 292330)
  jwcheng@jwc-legal.com
  One Market Street
  Spear Tower, 36th Floor
  San Francisco, CA 94105
  Telephone: (415) 293-8308

*Attorneys for Plaintiffs*,
  *Proofpoint, Inc. and Cloudmark LLC*

18                UNITED STATES DISTRICT COURT

19        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

20

| | |
|---|---|
| 21  PROOFPOINT, INC.; CLOUDMARK LLC, | **Case No. 3:19-cv-04238-MMC-RMI** |
| 22 | **Date Action Filed: July 23, 2019** |
| 23              Plaintiffs,   v. | **JOINT LETTER BRIEF REGARDING CASE-RELATED EFFECT OF <u>COVID-19 PANDEMIC</u>** |
| 24  VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ, | |
| 25 | |
| 26 | |
| 27              Defendants. | |

28

Honorable Judge Illman:

## DEFENDANTS' INTRODUCTION

The COVID-19 pandemic is a global crisis. It has disrupted the lives of American and French citizens, as well as businesses, courts, and governments in both the U.S. and France. "Shelter-in-place" orders (or their equivalent) are in place in all jurisdictions where the parties, witnesses, court, and counsel are located in the present case. It is unclear when those restrictions will lift, as new cases and death tolls continue to rise in each jurisdiction. U.S. federal guidance urging social distancing was extended through April 30, the Bay Area Public Health Order for shelter-in-place will soon be extended until at least May 1, and lockdown measures in France were extended through April 15. The World Health Organization recently indicated that the "epicenter" of the pandemic will soon be the U.S., and the U.S. now leads the world in confirmed COVID-19 cases. The Northern District of California has followed federal districts around the country in suspending trial settings and other case deadlines. Civil cases are largely on hold.[1] Thus, any argument that the pandemic response *in France* somehow means that discovery should not proceed under Chapter II of the Hague Convention is not compelling.

## PLAINTIFFS' INTRODUCTION

By default, discovery in this action is governed by the Federal Rules. Defendants have advocated a departure from those Rules and seek to have all discovery from Defendants—including U.S. entities and domiciled individuals—and even third parties proceed in France through the Hague Convention. Despite the numerous issues and concerns raised by Plaintiffs with the proposed procedure, which Defendants have yet to address, the COVID-19 pandemic only further complicates and adds to the delay of proceeding with discovery through France. Most notably, Defendants' proposal introduces additional procedural hurdles and an added layer of uncertainty to discovery in this action—which has already been pending for almost 1 year without so much as a single document production from Defendants—and, indeed, does so amidst the further uncertainty of a global pandemic. Notably, the COVID-19 pandemic has not slowed in France in recent weeks, and is not likely to do so for several more weeks if not months. By Defendants' own admission, the process of having Hague procedures and a commissioner approved by the French Ministry of Justice could introduce a 2-month delay under normal circumstances. That delay is all but certain to be extended under current abnormal circumstances and in view of the crisis currently facing France. On the other hand, litigation in the United States has and will largely continue to proceed under the Federal Rules and, unlike the French courts (which have all but shut down for the time being), the judges in the Northern District are continuing to hold hearings and push cases along. Thus *Aerospatiale* factor 4 weighs overwhelmingly in favor of proceeding with discovery in this action through the Federal Rules and avoiding the uncertainty associated with the Hague Convention procedures in France—particularly at this moment in time.

---

[1] Gen. Order Nos. 72 & 73; *Lui v. State Farm Fire & Cas. Co.*, No. 19-cv-06337-LB, 2020 U.S. Dist. LEXIS 49946, at *5 (N.D. Cal. 2020) ("[C]ivil cases in large measure are on hold anyway.").

**DEFENDANTS' STATEMENT**

The pandemic has already changed the schedule in the present case, including two postponements of the mediated settlement conference (ECF Nos. 131, 136). It stands to reason that other scheduling and discovery will be impacted, since document collection, review, and production, as well as depositions, will be hampered by shelter-in-place orders, work-from-home arrangements, and travel limits imposed on the parties, witnesses, and counsel in the U.S. and France.[2]

Plaintiffs' primary argument against conducting discovery under Chapter II of the Hague Convention has focused on some purported prejudice associated with a brief time period[3] for appointing a private commissioner, and Plaintiffs argued at the hearing that uncertainties in France could cause further delay. But any purported delay associated with conducting discovery under Chapter II—which Defendants have already established would be insignificant and non-prejudicial relative to other considerations—will be overshadowed by the larger impact of the pandemic. To argue that the current case could proceed in a "business as usual" manner under the Federal Rules, with rules and schedules that apply in normal times, is neither practicable nor sensible— particularly given that no expedited or emergency issues are pending.[4]

If anything, the pandemic tips several factors *even further* in favor of utilizing Hague Convention procedure. With respect to **factor 1** regarding the importance of the documents sought, the relevant inquiry is whether the *outcome of the litigation* stands or falls on the *present discovery order*. *Salt River Project Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d at 1007-08 (D. Ariz. 2018); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). Here, the record demonstrates that discovery under Chapter II will result in substantially similar evidence being produced, no substantive motions are pending for which Plaintiffs need expedited discovery, and the parties still have 8 months before discovery closes and 16 months before trial. *Behrens v. Arconic, Inc.*, No. 19-2664, 2020 U.S. Dist. LEXIS 44581, at *16 (E.D. Pa. 2020); (Touraille Decl. ¶¶ 25-36; ECF No. 121-9.) The outcome of this litigation has never depended *less* on whether discovery proceeds under the Hague Convention or the Federal Rules.

With respect to **factor 4** regarding alternative means, the French Ministry of Justice and the bureau responsible for authorizing private commissioners under Chapter II continue to operate and are responding to requests. (Supplemental Declaration of Jean-Dominique Touraille Regarding Case-Related Effect of COVID-19 Pandemic ¶¶ 2-7, Exs. A-B.) The proposed commissioners remain available, and all are partners with law firms that have implemented business continuity plans. When considering the pandemic and the current stage of this litigation, proceeding under Chapter II is substantially equivalent under this factor. *Contra In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2014 U.S. Dist. LEXIS 151222, at *61 (N.D. Cal. 2014) ("At this late date, it would be difficult, if not impossible, for [plaintiffs] to obtain the discovery expeditiously through Hague Convention procedures."). And to the extent Plaintiffs are concerned about dispute resolution before the French courts, Defendants' have already agreed that the parties reserve all

---

[2] *E.g.*, S.F. Dep't of Pub. Health, Coronavirus (COVID-19) Press Releases and Statements: Seven Bay Area Jurisdictions to Update Shelter-in-Place Order in Coming Days - 3/30/20 (Mar. 30, 2020), https://www.sfdph.org/dph/alerts/coronavirus-pressreleases.asp (full joint press release available at https://www.sfdph.org/dph/alerts/files/Updated-Orders-Joint-Statement-033020.pdf).

[3] The French Ministry of Justice typically grants commissioner authorization within two to six days. (ECF No. 138-2 ¶ 81.)

[4] Plaintiffs' request for preliminary injunctive relief was recently denied (ECF No. 126), and trial is currently scheduled for July 26, 2021 (ECF No. 63).

rights to seek relief from this Court, including modification of the procedure under Chapter II, if necessary.  (ECF No. 121-7 ¶ 7.)

With respect to **factor 7** regarding the likelihood of compliance, Defendants remain ready and willing to proceed under Chapter II, even in view of the present circumstances relating to the COVID-19 pandemic, if Plaintiffs are able to cure their deficient trade secret identification as discussed in Defendants' pending motion for protection. Further, sufficient time remains for compliance with an order to proceed under Chapter II, for the reasons discussed above. And as indicated above in relation to factor 4, the French Ministry of Justice and proposed commissioners remain available to effect this procedure. On the other hand, the COVID-19 pandemic does not alleviate Defendants' risk of violating French law should the Court order discovery under the Federal Rules, and so Defendants reserve all rights to object to and appeal any such order. Accordingly, factor 7 supports ordering discovery to proceed under Chapter II.

                                                Respectfully submitted,

                                                **BAKER & McKENZIE LLP**

                                                */s/ Mackenzie M. Martin*
                                                Mackenzie M. Martin

## PLAINTIFFS' STATEMENT

The COVID-19 pandemic facing the world has had particularly devastating effects in European countries such as France.  As described in more detail, below, France has enacted measures to curb spread of the virus that are highly likely to lead to undue delays if discovery proceeds under The Hague Convention in France.  As acknowledged by Defendants, it can take up to two months for the French Ministry of Justice to approve discovery under Article 17 of The Hague even in normal times.  Yet these are not normal times, and it is impossible to predict what additional delays may occur—both in the Article 17 approval process, as well as discovery through a commissioner once approved.  Accordingly, *Aerospatiale* factor 4 weighs overwhelmingly in favor of proceeding with discovery under the Federal Rules, as The Hague Convention is far from an equivalent means of discovery, particularly at this moment in time.

**Current Situation in France.**  As of March 24, France was placed in a state of emergency for at least a period of two months under Emergency Law No. 2020-290 to address the COVID-19 pandemic, allowing authorities to take measures restricting movement, travel, and assembly in France, including by confining citizens to their homes.  On March 23, the French Prime Minister indicated the confinement measures could last "several more weeks" and, indeed, they have since been extended to April 15.  *See* http://www.rfi.fr/en/france/20200324-france-tougher-coronavirus-lockdown-measures; https://www.cvbj.biz/france-and-belgium-extend-containment/.  Even prior to the nationwide lockdown, courts in France had been advised by the Ministry of Justice to limit their activities to only essential matters (Ex. C).  Thus, nearly all hearings before French courts have been cancelled since at least March 16.  Public announcements made by the French President, Prime Minister, and other French authorities have all directed citizens to stay at home, and many companies have simply shut down.  In general, the expectation is of continued confinement and delay of economic and judicial activities as France moves toward the peak of the epidemic, which could last several weeks or even months.  *See* https://www.businesstimes.com.sg/government-economy/french-coronavirus-lockdown-should-last-at-least-six-weeks-government-advisors.

**Effect on Discovery in France Utilizing The Hague Convention.**  Defendants' request

to proceed with discovery under Article 17 of The Hague would introduce undue delay for at least two reasons:  (1) the Letter of Request must be reviewed and approved by the French Ministry of Justice, which appears to be operating in a remote and limited capacity for the time being (Ex. C (indicating Ministry's implementation of emergency measures will "reduce department activity"))[5]; and (2) even if the Request is approved, the parties will be unable to effectively conduct discovery through a commissioner under the current conditions in France.

*First*, even if the French Ministry of Justice was operating under normal conditions, it could still take, by Defendants' own admission, up to 2 months to approve a request under Article 17. Even a 2-month delay would be prejudicial at this stage, as discovery has been pending since October 2019 and the parties are facing an impending settlement conference on May 20.  Yet, adding an active pandemic and French emergency measures to the equation, it is expected that the delay could be much longer, as French authorities prioritize other matters for the indefinite future.

At the March 20 hearing, Defendants argued that U.S. courts face "the same uncertainty," but this only supports the need to conduct discovery under the Federal Rules.  Specifically, any dispute arising out of the Article 17 process in France (even setting aside those requiring French court intervention) will need to be adjudicated by ***this Court***.  Thus, if the status of this Court is also uncertain, then any Article 17 disputes will further delay discovery.  On the other hand, proceeding under the Federal Rules avoids any Article 17-related disputes and associated delays, and allows for immediate document discovery, source code inspections, and depositions.

*Second*, even if the Letter of Request is timely granted—and there is no indication it will be—it is possible the Ministry may exercise its right under Article 19 of The Hague Convention to impose additional "conditions as it deems fit, *inter alia*, as to the time and place of the taking of the evidence."  For example, the Ministry may not allow collection of physical evidence, in-person depositions, or any other activity requiring travel or physical interaction between individuals, as such activities could present a risk of spreading infection.  Moreover, there is no indication that any of Defendants' proposed commissioners would be willing to engage in physical, in-person collection of discovery or attend depositions inside or outside France for the foreseeable future.

Accordingly, given the uncertainty and delays from discovery under Article 17 of The Hague, *Aerospatiale* factor 4 weighs heavily in favor of discovery under the Federal Rules.  *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("alternative means must be '***substantially equivalent***' to the requested discovery") (emphasis added).

        Respectfully submitted,

        **QUINN EMANUEL URQUHART & SULLIVAN LLP**

        */s/ Sean S. Pak*
        Sean S. Pak

---

[5] Plaintiffs have been unable to reach the Ministry to confirm the status of operations.  Although Defendants received an email indicating Ministry staff are working remotely, the email does not provide any indication or assurance regarding the timing for processing requests. Ex. B. Rather, it is highly likely that processing will take longer than the usual 2 months, as the Ministry has advised courts to prioritize essential matters, indicating it is likely doing the same.  Ex. C (emergency measures will "reduce department activity"); https://www.justice.fr/info-coronavirus.

**ATTESTATION OF CONCURRENCE**

  I, Mackenzie M. Martin, am the ECF user whose ID and password are being used to file this **JOINT LETTER BRIEF REGARDING CASE-RELATED EFFECT OF COVID-19 PANDEMIC**. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated:  March 30, 2020         */s/ Mackenzie M. Martin*
                 Mackenzie M. Martin