Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC (RMI)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 152)**<br><br>Judge: Hon. Maxine M. Chesney |

## I. INTRODUCTION

Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC ("Cloudmark") respectfully submit this opposition under Civil L.R. 72-2 to the Motion for Relief from April 20, 2020 Nondispositive Pretrial Order of Magistrate Judge (Dkt. 152 ("Motion")) filed by Defendants Vade Secure, Incorporated ("VSI"), Vade Secure SASU ("VSS"), and Olivier Lemarié.[1]

"A magistrate judge's resolution of a discovery dispute is entitled to great deference." *Ingram v. Pac. Gas & Elec. Co.*, 2013 WL 6174487, at *2 (N.D. Cal. Nov. 25, 2013) (internal quotation marks omitted). Defendants' Motion does not meet the high bar to set aside Magistrate Illman's April 20th Order (Dkt. 149 ("Order")) because it does not demonstrate that any portion of the Order is "clearly erroneous or is contrary to law." Magistrate Illman considered the parties' arguments, including controlling precedent specifically addressing trade secret disclosures involving source code and the opinions of Dr. Seth Nielson explaining why Plaintiffs disclosure is sufficiently detailed, and correctly concluded that Plaintiffs' trade secret disclosure is reasonably particular. *See* Order at 13-16. Although Defendants complain about the volume of source code identified in Plaintiffs' disclosure, they fail to explain "*how* Plaintiffs' disclosure is inadequate for the purpose of allowing Defendants to discern the boundaries of Plaintiffs' asserted trade secrets such as to prepare available defenses, or to permit the court to understand the identification such as to craft boundaries relevant to discovery practice"—as Magistrate Illman recognized. Order at 13. Tellingly, none of the cases Defendants rely on involved source code nor held that an identification comparable to Plaintiffs' was insufficient. To the contrary, those cases recognize that disclosures that "refer to tangible trade secret material" (in this case, source code and technical documents) are sufficient. *See, e.g.*, *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). Accordingly, Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND

Plaintiffs served their first set of discovery requests in this action on October 10, 2019. Dkts. 91-1, 91-2, 91-3. Although Defendants claim to have "argued that Plaintiffs have failed to identify

---

[1] *See Keller-McIntyre v. College of Health & Human Services*, No. C-06-3209-MMC, 2006 WL 3648476, at *1 n.1 (N.D. Cal. Dec. 12, 2006) (Civil L.R. 72-2 permits an opposition brief).

the trade secret with sufficient particularity" "*[s]ince the outset of this litigation*" (Dkt. 152 at 2 (emphasis added)), they did not raise *any* objection to Plaintiffs' discovery requests on that basis. *See, e.g.*, Dkts. 91-4, 91-5, 91-6.[2] Defendants also waited nearly five months before serving any discovery request seeking the details of Plaintiffs' claimed trade secrets.  In fact, Defendants have repeatedly indicated that they understand the scope of Plaintiffs' claims and have begun collecting and reviewing documents responsive to Plaintiffs' discovery requests.  Dkt. 31-52 (Sept. 11, 2019 letter from J. Utley to S. Pak) (claiming to have started search for relevant documents and information); Dkt. 121-2 (Jan. 31, 2020 Hr'g Tr.) at 4:1–15 (representing that Defendants had identified documents and information sought by Plaintiffs); Dkt. 121-10 ¶ 7 (identifying the location of documents and information "*responsive to the Discovery Requests*") (emphasis added); Dkt. 143 (Mar. 20, 2020 Hr'g Tr.) at 8:4–7 ("[Defendants] have already been collecting evidence and documents anticipating . . . that the Court would eventually allow discovery to proceed.").

Only after the Court denied Plaintiffs' motion for preliminary injunction (Dkt. 126)—more than four months after Plaintiffs served their first discovery requests and after months of ongoing negotiations over source code discovery—did Defendants object based on sufficiency of Plaintiffs' disclosure.  Ex. A.  In the interest of resolving the dispute, Plaintiffs served, on March 19, 2020, a detailed disclosure of trade secrets in response to Defendants' belated interrogatory, including approximately 70 pages identifying proprietary source code corresponding to specific products, as well as itemized lists of trade secrets and their corresponding source code directories and files and technical documentation.  Dkt. 145-2.[3]  Defendants, however, continued to challenge the sufficiency of Plaintiffs' disclosure and sought a protective order.  Dkt. 145.  On April 20, after considering two rounds of letter briefs (Dkts. 128, 145), oral arguments (Dkt. 140), and an expert opinion (Dkt. 144-4), Magistrate Illman issued his Order denying Defendants' requested relief (Order at 13-16).

---

[2] The Court may deny Defendants' motion on the alternative basis that their objections to Plaintiffs' discovery requests were not timely.  *See Shone v. Ferrari N. Am., Inc.*, 2013 Cal. Super. LEXIS 2282, at *5 (Cal. Super. Ct. Apr. 11, 2013) (holding that objections to discovery requests pursuant to section 2019.210 were waived when not included initial response).

[3] Plaintiffs amended their disclosure on March 30, 2020 in order to further narrow the dispute over the sufficiency of Plaintiffs' disclosure.

## III. ARGUMENT

Defendants rely heavily on this Court's denial of Plaintiffs' motion for preliminary injunction as indicative that Plaintiffs' trade secret disclosure is insufficient. *See* Motion at 2, 4 (citing Dkt. 128 at 2-3). As Plaintiffs explained to Magistrate Illman, however, the standard for a preliminary injunction sets a much higher bar than the disclosure requirement under 2019.210 (Dkt. 145 at 4-5): The former is an "extraordinary remedy" that requires a likelihood of success *on the merits*, while the latter is a "flexible" standard that does not require "trial on the merits." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005). Further, Plaintiffs' disclosure was not part of the record on preliminary injunction and was drafted later based on the Court's guidance. Accordingly, the Order is not inconsistent with the Court's prior ruling.

As explained in the Order, the "reasonable particularity" standard under 2019.210 "'does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation,' as Defendants here seem to suggest." Order at 15 (quoting *Advanced Modular*, 132 Cal. App. 4th at 835). Rather, "'reasonable particularity,' in this context, means only that a plaintiff must make a showing that is reasonable, fair, proper, just, and rational, under the circumstances, such as to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, such as to protect all parties' proprietary information, and such as to allow them a fair opportunity to prepare and present their best case or defense at a subsequent trial on the merits." Order at 15 (citing *id.* at 836; *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016)). The Order applied the law and correctly found that Plaintiffs' disclosure meets this standard.

Defendants, however, argue that the Order is "clearly erroneous or contrary to law," because Plaintiffs' disclosure identifies entire source code files, directories, and repositories as trade secrets. "[Defendants] argue that when the alleged trade secret is source code, the plaintiff must identify the specific code. ***But this argument is wrong on the law***. . . . [Plaintiff] is not required to identify the specific source code to meet the reasonable particularity standard." *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 846–47 (N.D. Cal. 2019) (emphasis added); *see also Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) (finding plaintiff's disclosure of "source code for its products"

as sufficient "information it alleges is a trade secret").[4]

Moreover, contrary to Defendants' assertion, Plaintiffs have not identified just any and all source code as trade secrets. As an initial matter, Defendants fail to address more than 60 pages in Plaintiffs' disclosure that provide itemized trade secret implementation details relating to the functionalities identified in Plaintiffs' Complaint, specific source code files and directories corresponding to said implementation details, citations to supporting documents that describe the implementation details. *See* Dkt. 145-2 at 10–72. Defendants cannot reasonably continue to refuse to provide discovery regarding the trade secrets enumerated on these pages of Plaintiffs' disclosure.

Even Plaintiffs' identification of larger volumes of source code (*e.g.*, Dkt. 145-2 at 7–10) is reasonably particular under the facts of this case. As Plaintiffs explained to Magistrate Illman, Plaintiffs identified specific source code that Defendant Lemarié and other Vade employees had directly accessed and were primarily responsible for developing while at Cloudmark. For example, Lemarié had unfettered access to the complete source code bundles identified in Plaintiffs' disclosure and appears as author or editor of tens of thousands of source code files dating back to as early as 2005. Dkt. 144-4 ¶¶ 20–23. The law is clear that an identification of all software and source code files and functions defendants had access to and "may have" misappropriated—however voluminous—is sufficient because discovery will reveal what was "actually misappropriated." *Qualcomm Inc. v. Apple, Inc.*, No. 30-2017-00041389, slip-op at 7–10 (Cal. Super. Mar. 4, 2019) (Dkt. 145-3); *see also SanDisk Corp. v SK Hynix Inc.*, 2015 WL 4878941, at *12–16 (Cal. Super. June 26, 2015) (finding volume of trade secret disclosure "attributable not to the lack of particularity in the [disclosure] but to the magnitude of the alleged theft"); *Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 U.S. Dist. LEXIS 89365, at *12–13 (N.D. Cal. July 9, 2015) (finding identification of 240,000 lines of code sufficient).

---

[4] The law is also clear that "compilations," including compilations of source code, may constitute trade secrets because they derive independent economic value from not being generally known to the public and that have been the subject of efforts to maintain their secrecy. For example, in the *Genentech* case cited in the Order, the plaintiff identified information within its documents as trade secrets, as well as the documents, themselves, as compilation trade secrets. *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 U.S. Dist. LEXIS 36140, at *45–48 (N.D. Cal. Mar. 1, 2019).

Identification of specific source code and implementation details is hardly an overbroad "catch-all" that fails to put Defendants on notice of the trade secrets. Nor do Defendants' cited cases—none of which involved source code—support a contrary finding. In *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 U.S. Dist. LEXIS 102529 (E.D. Cal. June 18, 2018), the court found catch-all language such as "e.g." or "including" and broad categorical descriptions such as all "highly confidential business information" and "unarticulated 'trade secret information'" as insufficient. *Id*. at *13–15. Similarly, in *Imax*, the court found that plaintiff's disclosure of "including every dimension and tolerance that defines or reflects [plaintiff's] design" was insufficient catch-all language specifically because "it does not clearly refer to tangible trade secret material." 153 F.3d at 1167. In contrast, Plaintiffs' disclosure does not include similar catch-all language, nor is an identification of specific source code bundles a categorical description akin to those at issue in *E. & J. Gallo* or *Imax*. Indeed, the *Imax* Court expressly noted that a disclosure that "clearly refer[s] to trade secret material," such as "engineering drawings and blueprints," is sufficient. *Id.* at 1167. Plaintiffs' reference to specific source code bundles, directories, and files is precisely the type of reference the *Imax* Court approved.[5]

Finally, the Order also cites the declaration of Dr. Seth Nielson explaining why Plaintiffs' disclosures are sufficient. Order at 13-14; Dkt. 145-4 ¶¶ 35–41. The law is clear that "[w]here, as here, credible experts declare that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence." *Advanced Modular*, 132 Cal. App. 4th at 836; *see also Qualcomm*, slip-op at 5 (Dkt. 145-3) ("A plaintiff may provide an expert declaration to establish that its section 2019.210 designation identifies the trade secret with reasonable particularity . . . ."). Defendants chose not to submit any similar opinions or evidence and, thus, Dr. Nielson's unrebutted testimony provides clear guidance that Plaintiffs' disclosure readily allows those of skill in the art to discern the trade secrets.

---

[5] Defendants suggest the identified source code may not be a trade secret because it implements "standard protocol or open-source techniques." Motion at 4. As Dr. Nielson explained, however, "open standards such as SMTP set forth a minimum protocol," but a particular implementation "is typically considered confidential or secret." Dkt. 145-4 ¶ 25.

DATED: May 6, 2020                     Respectfully Submitted,


By /s/ Sean S. Pak

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*