**BAKER & McKENZIE LLP**
  Colin H. Murray (SBN 159142)
  colin.murray@bakermckenzie.com
  Two Embarcadero Center, 11th Floor
  San Francisco, CA 94111-3802
  Telephone: +1 415 576 3000
  Facsimile: +1 415 576 3099

**BAKER & McKENZIE LLP**
  John G. Flaim (*Pro Hac Vice*)
  john.flaim@bakermckenzie.com
  Jay F. Utley (*Pro Hac Vice*)
  jay.utley@bakermckenzie.com
  Bart Rankin (*Pro Hac Vice*)
  bart.rankin@bakermckenzie.com
  Mackenzie M. Martin (*Pro Hac Vice*)
  mackenzie.martin@bakermckenzie.com

  Chaoxuan Liu (*Pro Hac Vice*)
  charles.liu@bakermckenzie.com
  Mark Ratway (*Pro Hac Vice*)
  mark.ratway@bakermckenzie.com
  1900 North Pearl Street, Suite 1500
  Dallas, Texas 75201
  Telephone: +1 214 978 3000
  Facsimile: +1 214 978 3099

*Attorneys for Defendants*,
*Vade Secure, Incorporated; Vade Secure SASU; and Olivier Lemarié*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Sean S. Pak (SBN 219032)
  seanpak@quinnemanuel.com
  Iman Lordgooei (SBN 251320)
  imanlordgooei@quinnemanuel.com
  50 California Street, 22nd Floor
  San Francisco, CA 94111
  Telephone: (415) 875-6600
  Facsimile: (415) 875-6700

**JWC LEGAL**
  Jodie W. Cheng (SBN 292330)
  jwcheng@jwc-legal.com
  One Market Street
  Spear Tower, 36th Floor
  San Francisco, CA 94105
  Telephone: (415) 293-8308

*Attorneys for Plaintiffs*,
*Proofpoint, Inc. and Cloudmark LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ, <br><br> Defendants. | **Case No. 3:19-cv-04238-MMC-RMI** <br><br> **Date Action Filed: July 23, 2019** <br><br> **JOINT DISCOVERY STATEMENT RE: NONPARTY SUBPOENAS** |

Honorable Judge Illman:

Defendants Vade Secure, Incorporated and Vade Secure SASU (collectively "Vade") and Olivier Lemarié (collectively with Vade, "Defendants") and Plaintiffs Proofpoint, Inc. and Cloudmark LLC ("Plaintiffs"), file this Joint Discovery Statement regarding six nonparty subpoenas served by Plaintiffs. Specifically, from February 18th to 20th, 2020, Plaintiffs served Rule 45 subpoenas on: Evernote Corporation ("Evernote," subpoena attached as Ex. 1); Amazon Web Services, Inc. ("AWS," subpoena attached as Ex. 2); Docker, Inc. ("Docker," subpoena attached as Ex. 3); Github, Inc. ("Github," subpoena attached as Ex. 4); Datto, Inc. ("Datto," subpoena attached as Ex. 5); and General Catalyst Group Management, LLC ("Gen. Catalyst," subpoena attached as Ex. 6).

**DEFENDANTS' INTRODUCTION**

Defendants move the Court to quash these subpoenas in their entireties for the reasons set forth herein. First, the subpoenas improperly demand communications and other account content, despite that the communications and account content sought are barred from disclosure under the Stored Communications Act. Second, given the privacy concerns, the subpoenas seek communications, content, and account information for an overbroad universe of individuals and accounts, including accounts registered using personal email addresses for certain employees of Vade, and *all* accounts registered using *any* @vadesecure.com or @vaderetro.com email address, without any individual, subject matter, or temporal limitations. Plaintiffs have not made any effort, much less a reasonable effort, to narrow the requests to highly probative or missing relevant information, or information not clearly protected by federal privacy laws. The requests are also so broad as to cover Defendants' privileged communications and those covered by the common-interest privilege.

**PLAINTIFFS' INTRODUCTION**

Since serving the subpoenas in mid-February, Plaintiffs and the third parties have been diligently working toward a practical, mutually agreeable scope of discovery that minimizes any burden to the third parties while also providing Plaintiffs with critical information. However, Defendants have repeatedly interrupted and forestalled the process, including by demanding that the subpoenas be held in abeyance while Defendants petitioned the Court's discovery orders through motions for reconsideration and relief. Now, after exhausting their objections regarding French law and Plaintiffs' trade secret disclosure, Defendants attempt to further delay discovery by seeking to quash the subpoenas. But there is no meritorious reason to quash the subpoenas— particularly when third parties have expressed willingness to comply. Tellingly, not a single third party has moved to quash or modify the subpoenas. Moreover, the subpoenas do not jeopardize any interests or rights of Defendants. Common Interest Privilege is inapplicable to Defendants' business relationships with General Catalyst and Datto. And the SCA clearly establishes that Defendants have no privacy interests in metadata and other non-content records. In any event, because relevant discovery is within Defendants' control, they should be compelled to provide their consent under the SCA, pursuant to their discovery obligations under the Federal Rules.

**DEFENDANTS' STATEMENT**

Plaintiffs' subpoenas to six nonparties are directed primarily to (1) Vade and its employees' (including Lemarié's) communications and information saved to online accounts, including personal content, which are protected from disclosure under federal privacy laws; (2) irrelevant non-content information about those accounts; and (3) Vade's privileged information. In particular, Plaintiffs demand, *inter alia*, all online file storage account content for all of Vade's current and former employees using certain third-party service providers, including personal content and non-content information, without any user, subject matter, or temporal limitations. Plaintiffs demand account content and information for accounts registered using personal email addresses for certain employees—without date or subject matter limitations. Defendants move to quash the subpoenas, which are summarized immediately below, for the following reasons:

- *Evernote*: Evernote allows users to create and save content in notes and notebooks, which may be retained as private or shared with others, including via shared notebooks, email, or posting to social media. Plaintiffs demand, *inter alia*, all content, information, and communications stored in or associated with the accounts of Vade and all its current and former employees, including personal content, without any subject matter or temporal limitations. (Requests 6 & 8, Ex. 1 at 7-8.) The requests also demand all personal and other content, information, and communications stored in or associated with accounts of Vade employees registered using personal email addresses, again without any subject matter or temporal limitations. (Requests 2-5 & 8, *id.* at 6-7.)
- *AWS* / *Docker* / *Github*: AWS is a cloud computing service company that allows users to remotely store a variety of content. Docker and Github allow software developers to host, store, and share code and other information with other developers. Like the requests directed to Evernote, Plaintiffs seek all content, information, and communications contained in or associated with accounts of Vade and its employees or former employees, including in accounts registered using personal email addresses of certain employees—all without any subject matter or temporal limitations. (Requests 2-6 of each, Exs. 2-4.)
- *Datto*: Datto is Vade's business partner, and a cybersecurity and data backup company. Plaintiffs seek Vade's common-interest privileged documents and communications regarding the litigation, the parties, or the parties' employees from Datto. (Requests 8-11, Ex. 5 at 8.)
- *Gen. Catalyst*: Plaintiffs allege that Gen. Catalyst invested in Vade. (Dkt. 1 ¶ 9.) Plaintiffs demand Vade's common-interest privileged information and communications regarding the litigation, the parties, their employees, and due diligence reports. (Requests 2 & 9-12, Ex. 6 at 8.)

The subpoenas should be quashed in their entireties for the reasons summarized below, including the deposition topics to Datto and Gen. Catalyst, which closely correspond to the above-mentioned document requests and are objectionable for the same reasons. (Exs. 5 & 6.)

*Standing*: A party has standing to move to quash a nonparty subpoena "when the party has a personal right or privilege in the information sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, No. C 12-80193-MISC SI, 2012 U.S. Dist. LEXIS 138497, at *4 (N.D. Cal. Sep. 26, 2012). In *Knoll*, the Court held that defendants had standing based on a cognizable interest in sales information sought from the nonparty, and further due to an interest in their allegedly privileged communications with the nonparty. *Id.* at *5. Courts also routinely hold that parties have standing to quash a nonparty subpoena for other privacy reasons, especially where the information is

protected by laws such as the Stored Communications Act ("SCA"). *See, e.g.*, *Sines v. Kessler*, No. 18-mc-80080-JCS, 2018 U.S. Dist. LEXIS 132054, at *26 (N.D. Cal. Aug. 6, 2018); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973-74 (C.D. Cal. 2010). Even where the movant's privacy interests are "minimal" or "exceedingly small," a motion to quash should not be denied for a lack of standing. *Malibu Media, LLC v. Doe*, No. 12-cv-0362-LAB (DHB), 2012 U.S. Dist. LEXIS 84948, at *5 (S.D. Cal. June 18, 2012). Defendants have standing because the subpoenas seek Vade's communications, including privileged communications, and content stored in accounts registered to email addresses of Vade's employees and former employees without temporal or subject matter limitations, including in accounts registered under personal email addresses of certain employees.

*Federal Privacy Laws*: The SCA, 18 U.S.C. § 2701 *et seq.*, provides that an entity providing an "electronic communication service" or "remote computing service" to the public shall not knowingly divulge to any person or entity the contents of any communication while in electronic storage by that service or which is carried or maintained by that service. 18 U.S.C. § 2702(a)(1)-(2). "Electronic communication" is defined broadly: "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. § 2512(12); *see also* 18 U.S.C. § 2711(1). Civil subpoenas are subject to SCA prohibitions. *Sines*, 2018 U.S. Dist. LEXIS 132054, at *30. Yet, Plaintiffs request "communications" and other account contents in the Evernote, AWS, Docker, and Github accounts of Vade's employees and former employees. (Evernote Requests 2-7, Ex. 1 at 6-8 & 10-11; AWS Requests 2-6, Ex. 2 at 6-7; Docker Requests 2-6; Ex. 3 at 6-7; Github Requests 2-6, Ex. 4 at 6-7.) Evernote, for example, allows users to create and save content in notes and notebooks, which may be retained as private or shared with one or more individuals, including via shared notebooks, email, or posting to social media. The plain language of the SCA protects against disclosure of exactly this kind of content. *See Crispin*, 717 F. Supp. 2d at 975 ("Among the Act's most significant, although unstated, privacy protections is the ability to prevent a third party from using a subpoena in a civil case to get a user's stored communications or data directly from an ECS or RCS provider. . . . Without this blanket immunity from subpoena in civil cases, a user's entire portfolio of stored communications and data might be fair game for an adversary.") Plaintiffs' subpoenas therefore violate the SCA.

*Overbroad in implicating the privacy rights of Vade's employees and former employees*: A subpoena's breadth should be considered to the extent that privacy issues are at issue. *See Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB (SPx), 2016 U.S. Dist. LEXIS 187094, at *16 (C.D. Cal. Oct. 27, 2016). Here, the subpoenas to Evernote, AWS, Docker, and Github demand, *inter alia*, all communications, documents, and account content and account information associated with any account ending with @vadesecure.com or @vaderetro.com, regardless of the user, subject matter, or date. (Evernote Requests 2-7, Ex. 1 at 6-8 & 10-11; AWS Requests 2-6, Ex. 2 at 6-7; Docker Requests 2-6, Ex. 3 at 6-7; Github Requests 2-6, Ex. 4 at 6-7.) Plaintiffs also direct similar requests to accounts registered using *personal* email addresses of certain Vade employees. (Evernote Requests 2-5, Ex. 1 at 6-8 & 10-11; AWS Requests 2-5, Ex. 2 at 6-7; Docker Requests 2-5, Ex. 3 at 6-7; Github Requests 2-5, Ex. 4 at 6-7.) Defendants have confirmed that Plaintiffs' requests would capture their employees' personal information, including, for example, personal financial and administrative information and family photographs. Defendants' objections are not merely hypothetical. Even beyond the protections

of the SCA, Plaintiffs requests are so overbroad and unlimited that the irrelevant non-content account information should not be required.

*Vade's Privileged Information*: The common-interest privilege applies where "(1) the communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003). Here, Plaintiffs seek documents and deposition testimony from Gen. Catalyst and Datto about topics so facially overbroad that they capture Defendants' information protected by the common-interest privilege. For example, Plaintiffs demand communications between Defendants and nonparties Datto and Gen. Catalyst—a business partner and potential investor, respectively—referencing this litigation, as well as due diligence inquiries made by Gen. Catalyst in connection with its contemplated investment in Vade. (Datto Request 8, Ex. 5 at 8; Gen. Catalyst Requests 2 & 9, Ex. 6 at 7-8.)

Respectfully submitted,

**BAKER & McKENZIE LLP**

By: /s/ *Mackenzie Martin*
      Mackenzie M. Martin

## PLAINTIFFS' STATEMENT

Defendants raise no cognizable argument to support broadly quashing third-party subpoenas directed to highly relevant topics.[1] Notably, not a single third party has joined in Defendants' motion, or separately moved for relief. "Indeed, the fact that no recipient of a subpoena has moved to quash implies that no undue burden would be suffered." *Malibu Media, LLC v. Doe*, No. 3:15-cv-04441, 2016 WL 7425923, *2 (N.D. Cal. Dec. 23, 2016). While Defendants' objections are theoretical and unsupported, Plaintiffs have been diligently meeting and conferring with the third parties to pragmatically address any concerns they may have

---

[1] The third-party subpoenas at issue relate to several categories of critical discovery. First, the subpoenas to Evernote, Amazon Web Services, Github, and Docker seek information and materials that Defendants stored in the third parties' repositories, which would show Defendants' potential access, use, destruction, and/or dissemination of Plaintiffs' confidential and trade secret information. (*E.g.*, Dkt. 71-10 at ¶¶ 7–8.) Second, as a large investor (or prospective investor) in the Vade Defendants, General Catalyst has information that is at least relevant to Defendants' counterclaims which, by Defendants' own allegations, call into question the financial stability of the Vade entities. (*E.g.*, Dkt. 75 at Counterclaims ¶ 12 (alleging that Plaintiffs "falsely told Vade Defendants' customers and potential customers that Vade Defendants are not financially stable, including but not limited to statement to the effect that Vade Defendants will or will likely soon be bankrupt . . . .").) Finally, third-party Datto is a business partner of the Vade Defendants and released a bundled product comprising an accused Vade product. (*See, e.g.*, Dkt. 31 at 16.) Thus, information and materials in Datto's possession is necessary for Plaintiffs to understand the extent to which their confidential and trade secret information may have been used or disseminated among Datto or its customers and affiliates.

regarding the scope of the subpoenas. Indeed, several of the third parties have indicated their willingness to produce discovery and discharge their subpoena obligations—but Defendants have interjected themselves to forestall discovery. For example, on May 14th, third-party Evernote wrote to Plaintiffs' counsel, stating Evernote could make an initial production within 10 days. But on May 21st, Defendants' counsel responded to Evernote, "request[ing] that Evernote hold on any planned production between now and the time of the filing of the motion to quash until the Court can resolve the dispute." Despite Defendants' request, Evernote wrote that it would proceed with producing records not encompassed by Defendants' motion to quash—but Defendants warned that their motion broadly encompasses the records that Evernote sought to produce on the basis that the subpoena is, ironically, allegedly overbroad. As another example, counsel for third parties General Catalyst, Datto, and Amazon Web Services have all expressed willingness to continue meeting and conferring with Plaintiffs regarding the scope of discovery. There is no basis to quash the third-party subpoenas on the basis of *Defendants*' objections of undue burden and overbreadth—particularly when the third parties themselves have not moved for such relief and, instead, have expressed their cooperation in complying with the subpoenas.

Relatedly, Defendants not only lack factual basis for their objections, they also have no standing to bring such objections. It is well established that, where "none of the subpoenaed parties have moved to quash, modify, or withdraw the subpoenas," a party does not have standing to quash subpoenas "based solely on the allegation that the subpoenas violate the rights of third-parties." *E.g.*, *Kremen v. Cohen*, No. C11-05411, 2012 WL 2277857, *3 (N.D. Cal. Jun. 18, 2012) (quoting *Finley v. Pulcrano*, No. C 08-0248, 2008 WL 4500862, *2 (N.D. Cal. Oct. 6, 2008) ("A party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object")); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2035 ("A party may not ask for an order to protect the rights of another part or a witness if that party or witness does not claim protection for himself . . . .").

Here, the third-party subpoenas do not threaten any valid interests held by Defendants. First, Defendants have asserted a Common Interest Privilege over materials 1) held by General Catalyst related to a failed investment opportunity, and 2) held by a business partner Datto. However, neither third party has claimed any such privilege in communications with Plaintiffs. Indeed, courts in this District have held that no such privilege applies where relationships were with respect to purely business matters—not legal issues. *See, e.g., Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578–79 (N.D. Cal. 2007) (finding common interest privilege did not apply or protect communications between the party and potential bidders that were "designed to further not a joint defense in this litigation, but to further a *commercial transaction* in which the parties, if anything, have opposing interests") (emphasis added); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601, 2014 WL 3940294, *3 (N.D. Cal. Aug. 11, 2014) (where "the negotiations were not made in an effort to formulate a join defense, [it] is a non-privileged business decision. This is true even if the correspondence had potential relevance to a hypothetical litigation."); *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939, 2017 WL 2485382, *9 (N.D. Cal. Jun. 8, 2017) (finding Uber and third party "did not share a common legal interest" because they "were on the opposite sides of a proposed acquisition with no obligation to consummate the transaction"). Moreover, in the case of General Catalyst, the business arrangement was never even consummated. (Oct. 16, 2019 letter from General Catalyst's counsel J. Goldstein to S. Pak ("General Catalyst did not move forward with the Vade transaction.").) Plaintiffs requested that Defendants provide foundational facts supporting a claim of Common Interest Privilege, but Defendants could not provide any. Thus, there is no basis to quash any of the subpoenas on Common Interest Privilege grounds.

Second, Defendants' contention that the subpoenas to Evernote, Amazon Web Services, Github, and Docker should be quashed under the Stored Communications Act (18 U.S.C. §§ 2701 *et seq*. ("SCA")) is unfounded. As an initial matter, these subpoenas include requests for discovery

of metadata and other non-content records for which there is no privacy interest. *See, e.g.*, *Chevron Corp. v. Donzinger*, No. 12-mc-80237, 2013 WL 4536808, *10 (N.D. Cal. Aug. 22, 2013) ("Doe movants have no privacy interest in the subscriber information, IP addresses, and IP logs associated with their email accounts . . . ."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that SCA "expressly allow" disclosure of personally identifiable information, such as "user's profile page and any personal information made available to the public"). Here, the requested non-content records include metadata and information relating to the third parties' data retention policies, which is critical to understanding possible use, destruction, and/or dissemination of Plaintiffs' confidential and trade secret information. *E.g., Optiver Australia Pty. Ltd. & Anor. V. Tibra Trading Pty. Ltd. & Ors.*, No. C 12-80242, 2013 WL 256771, *3 (N.D. Cal. Jan. 23, 2013) ("But Optiver is entitled to such non-content metadata, and such metadata it shall receive."). In fact, third-party Evernote was ready to produce its non-content records before Defendants demanded they withhold production. (*E.g.*, May 14, 2020 email from Evernote to Plaintiffs' counsel ("We can produce non-content records within 10 days.").)

Fatal to Defendants' arguments, however, is the failure to acknowledge that the subpoenas seek ***Defendants'*** documents. Thus, any user content or records that are subject to Defendants' privacy interests under the SCA, are subject to production by Defendants as well as by the third parties. In particular, Defendants' must be required to provide their consent to production of their records and content under the safe harbor provisions of the SCA. 18 U.S.C. § 2702(c)(2); *see also id.* at § 2702(b)(3). Indeed, as soon as the SCA was raised as an objection, Plaintiffs submitted a demand that Defendants provide their consent for production of their records. Yet, without any meritorious basis, Defendants have refused to provide their consent. Defendants should be compelled to provide their consent to production of relevant discovery. FED. R. CIV. P. 34(a)(1) (providing for production of information and materials within "the responding party's possession, custody, or control"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (documents and information is considered within a party's control if it has "the legal right to obtain the documents on demand"). In similar circumstances, parties and non-parties alike have been compelled to provide their consent under the SCA. *E.g.*, *Federal Trade Commission v. Ameridebt, Inc.*, No. C-05-80253, 2006 WL 8431099, *3 (N.D. Cal. Jan. 31, 2006) (ordering a non-party to give his consent to Google to produce documents); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006) ("Where a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions."). The discovery sought is relevant to the issues in this case, and within the scope of Rule 26, at least insofar as the account content likely contains and reflects use of Plaintiffs' confidential and trade secret information.[2] In fact, Defendants have ***admitted*** that Plaintiffs' confidential information was kept in at least one Evernote account belonging to Defendant Lemarie. (Dkt. 71-10 at ¶¶ 7–8.) Thus, Defendants should not prevent discovery of relevant materials by asserting the SCA and, instead, should be compelled to provide the consent required to produce such materials.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  /s/ *Sean S. Pak*
　　　　Sean S. Pak

---

[2] *Supra*, n. 1. To the extent specific account content is not relevant, Plaintiffs are not seeking Defendants' consent to produce such information and materials.

## ATTESTATION OF CONCURRENCE

I, Mackenzie M. Martin, am the ECF user whose ID and password are being used to file this **JOINT DISCOVERY STATEMENT RE: THIRD PARTY SUBPOENAS**.  Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in the filing of this document.

Dated: May 26, 2020


By: /s/ *Mackenzie Martin*
    Mackenzie M. Martin