Colin H. Murray (SBN 159142)
  colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:  +1 415 576 3000
Facsimile:   +1 415 576 3099

Danielle L. Benecke (SBN 314896)
  danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:  +1 650 856 2400
Facsimile:   +1 650 856 9299

Attorneys for Defendants,
VADE SECURE, INCORPORATED;
VADE SECURE SASU;
OLIVIER LEMARIÉ
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>                    Defendants. | **Case No. 3:19-cv-04238-MMC**<br><br>**Date Action Filed: July 23, 2019**<br><br>**DEFENDANTS VADE SECURE, INCORPORATED AND VADE SECURE SASU'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED**<br><br>**Original Complaint Filed: July 23, 2019**<br><br>**Courtroom: 7, 19th Floor**<br>**Judge: Maxine M. Chesney**<br><br>**San Francisco Courthouse**<br>**450 Golden Gate Avenue**<br>**San Francisco, California 94102** |

Defendants Vade Secure, Incorporated ("Vade Inc.") and Vade Secure SASU ("Vade SASU") (collectively "Vade Defendants"), by and through their counsel, file this Second Amended Answer, Affirmative Defenses, and Counterclaims separately from Defendant Olivier Lemarié ("Lemarié"; collectively with Vade Defendants "Defendants") to Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark, LLC's ("Cloudmark"; collectively with Proofpoint, "Plaintiffs") Complaint:

Vade Defendants deny each and every matter, allegation, or thing in the Complaint except as may be affirmatively admitted or alleged herein. Moreover, to the extent any of the headings used by Plaintiffs in the Complaint constitute allegations of fact to which a response is required, Vade Defendants deny all the allegations contained in those headings.

## RESPONDING TO THE ALLEGATIONS IN THE COMPLAINT

Subject to and without waiving any of the affirmative defenses or available remedies set forth in this Answer or otherwise available at law or equity, Vade Defendants respond to the separate, numbered paragraphs of Plaintiffs' Complaint as follows:

1.      Vade Defendants deny the allegations in paragraph 1.

2.      Vade Defendants admit that at one time Lemarié was a Cloudmark employee. Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 2 and therefore deny them.

3.      Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3 and therefore deny them.

4.      Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4 and therefore deny them.

5.      Vade Defendants admit that Lemarié is no longer a Cloudmark employee. Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5 and therefore deny them.

6.      Vade Defendants admit that Lemarié is now a Vade Inc. employee. Vade Defendants deny the remaining allegations in paragraph 6.

1

7.    Vade Defendants admit that they develop and market cybersecurity products.  Vade Defendants deny the remaining allegations in paragraph 7.

8.    The patent application and marketing materials referenced in paragraph 8 speak for themselves.  Vade Defendants deny the remaining allegations in paragraph 8.

9.    Vade Defendants admit that Plaintiffs filed an "Exhibit L" with the Complaint, and that document speaks for itself.  Defendants deny the allegations in paragraph 9.

10.   Vade Defendants deny the allegations in paragraph 10.

11.   Paragraph 11 states legal conclusions to which no response is required.  Vade Defendants deny the remaining allegations in paragraph 11.

12.   Vade Defendants admit that Plaintiffs filed a Complaint initiating this lawsuit.  Vade Defendants deny that Plaintiffs are entitled to any remedy or relief as a result of bringing this action.  Vade Defendants deny the remaining allegations in paragraph 12.

## THE PARTIES

13.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 and therefore deny them.

14.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 and therefore deny them.

15.   Vade Defendants admit the allegations in paragraph 15.

16.   Vade Defendants admit the allegations in paragraph 16.

17.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 and therefore deny them.

## JURISDICTION AND VENUE

18.   Paragraph 18 states legal conclusions to which no response is required.  Vade Defendants deny the remaining allegations in paragraph 18.

19.   Paragraph 19 states legal conclusions to which no response is required.  Vade Defendants deny the remaining allegations in paragraph 19.

20.   Paragraph 20 states legal conclusions to which no response is required.  Vade Defendants deny the remaining allegations in paragraph 20.

21.     Paragraph 21 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 21.

22.     Paragraph 22 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 22.

23.     Paragraph 23 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 23.

24.     Paragraph 24 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 24.

25.     Paragraph 25 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 25.

## INTRADISTRICT ASSIGNMENT

26.     The first sentence of paragraph 26 states legal conclusions to which no response is required.   Because this action has already been assigned to the San Francisco Division of the Northern District of California, Vade Defendants need not respond to the remaining allegations pertaining to intradistrict assignment.  Vade Defendants deny the remaining allegations in paragraph 26.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

27.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 and therefore deny them.

28.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 and therefore deny them.

29.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 and therefore deny them.

30.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit A" with the Complaint, and that document speaks for itself.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 30 and therefore deny them.

31.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit A" with the Complaint, and that document speaks for itself.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 31 and therefore deny them.

32.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit A" with the Complaint, and that document speaks for itself.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 32 and therefore deny them.

33.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 and therefore deny them.

34.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 and therefore deny them.

35.     Vade Defendants admit that Plaintiffs filed exhibits titled "Exhibit A" and "Exhibit B" with the Complaint, and those documents speak for themselves.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore deny them.

36.     Vade Defendants admit that Plaintiffs filed exhibits titled "Exhibit A," "Exhibit C," "Exhibit D," and "Exhibit E" with the Complaint, and those documents speak for themselves.  Vade Defendants also admit that Olivier Lemarié is now a Vade Inc. employee, and that Alexandre Boussinet, Xavier Delannoy, and Guillaume Séjourné are now Vade SASU employees.  Vade Defendants deny the remaining allegations in paragraph 36.

37.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 37 and therefore deny them.

38.     Vade Defendants admit that Olivier Lemarié is currently Vade Inc.'s Chief Technical Officer.  Vade Defendants also admit that Alexandre Boussinet, Xavier Delannoy, and Guillaume Séjourné are now Vade SASU employees.  Vade Defendants deny the remaining allegations in paragraph 38.

39.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39 and therefore deny them.

40.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit F" with the Complaint, and that document speaks for itself.  Vade Defendants deny the remaining allegations in paragraph 40.

41.     Vade Defendants admit that Plaintiffs filed exhibits titled "Exhibit H," "Exhibit I," and "Exhibit J" with the Complaint, and those documents speak for themselves.  Vade Defendants deny the remaining allegations in paragraph 41.

42.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit K" with the Complaint, and that document speaks for itself.  Vade Defendants deny the remaining allegations in paragraph 42.

43.     Vade Defendants admit that Plaintiffs filed an exhibit titled "Exhibit L" with the Complaint, and that document speaks for itself.  Vade Defendants deny the remaining allegations in paragraph 43.

44.     Vade Defendants admits that they are developing an MTA product.  Vade Defendants deny the remaining allegations in paragraph 44.

45.     Vade Defendants admit that Lemarié gave a presentation in 2018.  Vade Defendants deny the remaining allegations in paragraph 45.

**Proofpoint and Cloudmark Protect Their Confidential and Proprietary, Including Trade Secret, Information**

46.     Paragraph 46 states legal conclusions to which no response is required.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 46 and therefore deny them.

47.     Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 47 and therefore deny them.

48.     Paragraph 48 states legal conclusions to which no response is required.  Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 48 and therefore deny them.

5

49.     Paragraph 49 states legal conclusions to which no response is required.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 49 and therefore deny them.

50.     Paragraph 50 states legal conclusions to which no response is required.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 50 and therefore deny them.

51.     Paragraph 51 states legal conclusions to which no response is required.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 51 and therefore deny them.

52.     Paragraph 52 states legal conclusions to which no response is required.   Vade Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 52 and therefore deny them.

53.     Vade Defendants admit that Lemarié is now a Vade Inc. employee.  Vade Defendants deny the remaining allegations in paragraph 53.

## COUNT I – TRADE SECRET MISAPPROPRIATION

**Misappropriation of Trade Secrets under the DTSA, 18 U.S.C. § 1836 et seq.**

**(Against all Defendants)**

54.     With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 53 of the Complaint by this reference as if set forth in their entirety here.

55.     Vade Defendants deny the allegations in paragraph 55.

56.     Vade Defendants deny the allegations in paragraph 56.

57.     Vade Defendants deny the allegations in paragraph 57.

58.     Vade Defendants deny the allegations in paragraph 58.

59.     Vade Defendants deny the allegations in paragraph 59.

60.     Vade Defendants deny the allegations in paragraph 60.

61.     Vade Defendants deny the allegations in paragraph 61.

6

62.     Vade Defendants deny the allegations in paragraph 62.

63.     Vade Defendants deny the allegations in paragraph 63.

64.     Vade Defendants deny the allegations in paragraph 64.

65.     Vade Defendants deny the allegations in paragraph 65.

66.     Vade Defendants deny the allegations in paragraph 66.

67.     Vade Defendants deny the allegations in paragraph 67.

68.     Vade Defendants deny the allegations in paragraph 68.

69.     Vade Defendants deny the allegations in paragraph 69.

70.     Vade Defendants deny the allegations in paragraph 70.

71.     Vade Defendants deny the allegations in paragraph 71.

72.     Vade Defendants deny the allegations in paragraph 72.

73.     Vade Defendants deny the allegations in paragraph 73.

74.     Vade Defendants deny the allegations in paragraph 74.

### COUNT II – BREACH OF CONTRACT

**Unauthorized Disclosure and Failure to Maintain Confidentiality of**

**Cloudmark Proprietary Information**

**(Against Lemarié)**

75.     With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 74 of the Complaint by this reference as if set forth in their entirety here.

76.     Paragraph 76 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 76.  Vade Defendants deny the remaining allegations in paragraph 76.

77.     Paragraph 77 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 77.  Vade Defendants deny the remaining allegations in paragraph 77.

7

78.     Paragraph 78 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 78.   Vade Defendants deny the remaining allegations in paragraph 78.

79.     Vade Defendants deny the allegations in paragraph 79.

80.     Vade Defendants deny the allegations in paragraph 80.

81.     Vade Defendants deny the allegations in paragraph 81.

## COUNT III – BREACH OF CONTRACT

### Failure to Disclose Inventions

### (Against Lemarié)

82.     With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 81 of the Complaint by this reference as if set forth in their entirety here.

83.     Paragraph 83 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 83.

84.     Paragraph 84 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 84.   Vade Defendants deny the remaining allegations in paragraph 84.

85.     Paragraph 85 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 85.   Vade Defendants deny the remaining allegations in paragraph 85.

86.     Vade Defendants deny the allegations in paragraph 86.

87.     Vade Defendants deny the allegations in paragraph 87.

88.     Vade Defendants deny the allegations in paragraph 88.

89.     Vade Defendants deny the allegations in paragraph 89.

Case No. 3:19-cv-04238-MMC
DEFENDANTS VADE SECURE, INCORPORATED AND VADE SECURE SASU'S
SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## COUNT IV – BREACH OF CONTRACT

### Failure to Maintain and Make Available Cloudmark Company Records

### (Against Lemarié)

90.     With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 89 of the Complaint by this reference as if set forth in their entirety here.

91.     Paragraph 91 states legal conclusions to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 91.

92.     Paragraph 92 states legal conclusions to which no response is required.   Vade Defendants deny any and all interpretations or characterizations of the PIIA in paragraph 92.   Vade Defendants deny the remaining allegations in paragraph 92.

93.     Paragraph 93 states a legal conclusion to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 93.

94.     Vade Defendants deny the allegations in paragraph 94.

95.     Vade Defendants deny the allegations in paragraph 95.

96.     Vade Defendants deny the allegations in paragraph 96.

97.     Vade Defendants deny the allegations in paragraph 97.

## COUNT V – BREACH OF CONTRACT

### Failure to Deliver Materials Containing Cloudmark Proprietary Information

### (Against Lemarié)

98.     With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 97 of the Complaint by this reference as if set forth in their entirety here.

99.     Paragraph 99 states a legal conclusion to which no response is required.   Vade Defendants deny the remaining allegations in paragraph 99.

100.    Vade Defendants deny the allegations in paragraph 100.

9

101.    Vade Defendants deny the allegations in paragraph 101.

102.    Vade Defendants deny the allegations in paragraph 102.

103.    Vade Defendants deny the allegations in paragraph 103.

104.    Vade Defendants deny the allegations in paragraph 104.

### VICARIOUS LIABILITY / RESPONDEAT SUPERIOR

105.    With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required. Vade Defendants incorporate their responses above to paragraphs 1 through 104 of the Complaint by this reference as if set forth in their entirety here.

106.    Vade Defendants deny the allegations in paragraph 106.

### JOINT AND SEVERAL LIABILITY

107.    With respect to Plaintiffs' statement purporting to incorporate their foregoing allegations into their cause of action, no admission or denial is required.   Vade Defendants incorporate their responses above to paragraphs 1 through 106 of the Complaint by this reference as if set forth in their entirety here.

108.    Vade Defendants deny the allegations in paragraph 108.

### JURY DEMAND

109.    Vade Defendants need not respond to Plaintiffs' jury demand and any allegations relating thereto.

### PLAINTIFFS' PRAYER FOR RELIEF

Vade Defendants deny that Plaintiffs are entitled to any relief whatsoever, either as requested in the Complaint or otherwise.

### VADE DEFENDANTS' AFFIRMATIVE DEFENSES

110.    By alleging the Affirmative Defenses set forth below, Vade Defendants do not admit or concede liability on any claim brought by Plaintiffs, nor do Vade Defendants concede that they bear the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

10

**FIRST DEFENSE**

**(Failure to State a Claim)**

111.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to state a claim(s) upon which relief can be granted.

**SECOND DEFENSE**

**(Independent Invention)**

112.    Plaintiffs' trade secret claim is barred, in whole or in part, by the doctrine of independent invention.

**THIRD DEFENSE**

**(Readily Ascertainable Through Proper Means)**

113.    Plaintiffs' trade secret misappropriation claim(s) is barred, in whole or in part, because Plaintiff(s) alleged trade secrets are readily ascertainable through proper means.

**FOURTH DEFENSE**

**(Estoppel)**

114.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of express and/or implied estoppel.

**FIFTH DEFENSE**

**(Unclean Hands)**

115.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

**(Waiver)**

116.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of express and/or implied waiver.

**RESERVATION OF RIGHTS**

Vade Defendants reserve the right to raise additional affirmative and other defenses as they are discovered or become available.

## **AMENDED COUNTERCLAIMS**

Vade Defendants further submit the following Amended Counterclaims and allege as follows:

### **Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367 because these Counterclaims are so related to Plaintiffs' claims in the above-captioned lawsuit, which are within the Court's original jurisdiction, that these Counterclaims form part of the same case or controversy.   This Court further has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 15 and 15 U.S.C. §26 because they arise, in part, under the laws of the United States.

2.      This Court has general and specific personal jurisdiction over Proofpoint, Inc. because it regularly conducts business within this jurisdiction by at least operating its principal place of business at 892 Ross Drive, Sunnyvale, California 94089.   Further, Proofpoint's unlawful actions giving rise the Vade Defendants' Counterclaims occurred in the State of California.   Indeed, Proofpoint has voluntarily submitted to this Court's jurisdiction by instituting this action in the first instance.

3.      This Court has general and specific personal jurisdiction over Cloudmark LLC because it regularly conducts business within this jurisdiction, by at least operating its principal place of business at 892 Ross Drive, Sunnyvale, California 94089.   Further, Cloudmark's unlawful actions giving rise the Vade Defendants' Counterclaims occurred in the State of California.   Indeed, Cloudmark has voluntarily submitted to this Court's jurisdiction by instituting this action in the first instance.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all Plaintiffs are residents of the State of California and reside in this judicial district.

**The Parties**

5.      Vade Secure, Incorporated ("Vade Inc.") is a corporation organized under the laws of the State of California, with its principal place of business at 100 Pine Street, Suite 1250, San Francisco, California 94111.

6.      Vade Secure SASU ("Vade SASU") is a "société par actions simplifiée unipersonnelle" organized under the laws of France, with its principal place of business at 2 bis avenue Antoine Pinay, Parc d'activites des 4 vents in HEM (59510) France.

7.      On information and belief, Proofpoint, Inc. is a public corporation organized under the laws of the State of Delaware, with its principal place of business at 892 Ross Drive, Sunnyvale, California 94089.

8.      On information and belief, Cloudmark LLC is a corporation organized under the laws of the State of Delaware, with its principal place of business at 892 Ross Drive, Sunnyvale, California 94089.

**The Relevant Market for Tier 1 B2C ISP E-Mail Filtering Products**

9.      In the United States, there are a relatively small number of Tier 1 B2C Internet Service Providers ("ISPs") that provide at least a million or more e-mail accounts to their consumer base in the United States.  These ISPs include Apple, Verizon, and Sprint.

10.      Given the enormous volume of the e-mail accounts provided by these ISPs, they have unique needs for the e-mail filtering products.  These ISPs have special messaging systems that require unique e-mail filter products that are customized to fit the ISPs' needs.  These ISPs, in fact, cannot use e-mail filters that might be suitable for smaller entities or provided by suppliers focusing on smaller markets because such filters and suppliers simply could not handle the traffic load generated by the e-mail boxes provided by these unique ISPs.  Accordingly, there are only a few suppliers of advanced, customized e-mail filter products in the United States capable of serving the ISPs, including the Vade Defendants and Plaintiffs.  Other e-mail filter products that lack the ability to handle the traffic load capacity of the ISPs are not substitutes for e-mail filtering needs and are not reasonably interchangeable to meet the demand of ISPs for e-mail filtering.

11.     Accordingly, a relevant product market exists for Tier 1 B2C ISP E-Mail Filtering Products (the "Market").  The geographic market is the United States.

### Monopoly Power

12.     Plaintiffs control a dominant market share in the Market and have for many years.  In fact, before the fourth quarter of 2017, Proofpoint and Cloudmark were two of the largest competitors in the Market.  Upon information and belief, Cloudmark itself provided e-mail filtering solutions for billions of e-mail accounts.  In the fourth quarter of 2017, Proofpoint acquired Cloudmark, resulting in the combination of two principal competitors in the Market, further reducing what was an already limited pool of competitors.  Proofpoint has affirmatively stated that at least one purpose of the acquisition was to obtain Cloudmark's ISP client base, and Plaintiffs have since touted themselves the "leader" in the ISP Market.  Indeed, since 2008, Proofpoint has, upon information and belief, acquired 19 e-mail security companies.  These acquisitions, upon information and belief, have been in furtherance of a plan to acquire a dominant position in the Market.  Upon information and belief, Plaintiffs have held a controlling share of the Market between 62% to over 80% since at least 2017.

### Anticompetitive Acts and Harm to Competition

13.     Plaintiffs actively maintain their dominant market share through anti-competitive conduct.  For example, Plaintiffs, upon information and belief, enter into contracts with ISPs in the Market to provide e-mail filtering solutions ███████████████.  Once an ISP begins using an e-mail filter from a supplier, it is a significant undertaking to switch to a new provider.  For example, bringing on a new supplier requires, at a minimum, negotiating a services agreement, as well as actually implementing the software and performing customizations such that it is compatible with the particular ISP.  This process can take many months and significant employee time to accomplish.  As a result, ISPs in the Market are hesitant to switch providers when a contractual agreement expires, even if the existing supplier's product is inferior, as is the case with Plaintiffs.  In view of the ██████████ used by Plaintiffs, the predominant market power, and the practical realities for switching suppliers, it is extremely difficult for competitors to enter this Market.  And

because of the significant amount of time and work necessary to switch to another provider, existing competitors cannot just quickly step in and provide such services as a short-term solution.

14.     Plaintiffs are aware of these market dynamics and manipulate them to maintain their market dominance.  In addition to utilizing ██████████████████████ and the practical difficulties of switching providers, Plaintiffs have further improperly interfered with new competitors' attempts to enter the Market.

15.     Plaintiffs' improper conduct as it relates to the Vade Defendants, a recent entrant in the Market, is exemplary of Plaintiffs' efforts to squelch competition and maintain their market dominance.  Vade SASU, is a French entity that was formed in Hem, France in 2008.  Vade SASU first began to offer e-mail filtering solutions to customers located outside the United States.  Through those efforts, Vade SASU was successful in obtaining numerous significant clients in various non-U.S. markets, including Japan.  Based on that success, Vade SASU sought to enter the U.S. Market through its subsidiary Vade Inc., which is based in Northern California.

16.     Vade's efforts to interject competition in the Market met with initial promise.  For example, ██████████████████████████ which previously contracted with Cloudmark for the provision of its e-mail filtering solution, was, upon information and belief, not satisfied with Cloudmark as a supplier.  Accordingly, ██████ invited Vade Inc. to participate in a proof-of-concept ("POC"), in which one of Vade Inc.'s filter product, known as Vade Email Content Filter, was compared to Cloudmark's filter.  Vade Inc. outperformed Cloudmark.

17.     As a result, in October 2018, Vade Inc. entered into an agreement with ██████ to provide Vade Inc.'s Email Content Filter to be used across ██████████████████████ ██████.  This agreement was significant for multiple reasons.  First, as a provider of the e-mail filter solution, Vade Inc. would have access to all consumer usage data, which Vade Inc. could then use to educate its filter tool, making it smarter and more efficient.  Conversely, without the benefit of that data, Cloudmark's e-mail filter would become "dumber" and less effective.  Second, ██████ is viewed as a ██████████████.  Accordingly, when ██████ switched to Vade Inc.'s e-mail filter, upon information and belief, other ISPs in the Market took notice that new competition was finally arriving to the Market.

18.     Plaintiffs similarly took notice of Vade Inc.'s entry into the Market.  Indeed, as early as September 2018, before the ▮▮▮▮ agreement was even executed, Plaintiffs, upon information and belief, began to implement a calculated plan to prevent competition from encroaching into Plaintiffs' dominant market share.  At that time, Plaintiffs, upon information and belief, began to communicate to ISPs that they intended to bring a lawsuit against Vade for the purpose of requiring Vade to divert its valuable resources to defending against such an action with the goal of destroying Vade as a business and preventing it from entering the Market.  In furtherance of that plan, Cloudmark has made demonstrably false statements to Vade's existing and potential ISP clients, including ▮▮▮▮.

19.     For example, upon information and belief, Cloudmark met with ▮▮▮▮ representatives in August 2019, approximately one month after this lawsuit was filed.  During that meeting, Cloudmark, upon information and belief, stated that it had purportedly uncovered evidence that the Vade Defendants misappropriated Plaintiffs' alleged trade secrets and incorporated those into **all of Vade's products**.  This was a knowingly false statement.  Plaintiffs were well aware at the time those statements were made, upon information and belief, that this lawsuit only implicated the spear phishing component of Vade's Secure for Office 365 offering and a mail transfer agent being developed by Vade, known as its NextGenMTA.  This lawsuit did not at any point involve the E-mail Content Filter being licensed by Vade to ▮▮▮▮  In a desperate attempt to win back ▮▮▮▮ business, Plaintiffs made knowingly false representations to the contrary.  Plaintiffs also, upon information and belief, falsely stated that in Vade Inc.'s and Vade SASU's (collectively "Vade") current financial condition, Vade could not withstand defending this lawsuit and would be bankrupt in the near term.  These false statements serve no legitimate purpose and were made solely for the purpose of decreasing competition in the Market, limiting the number of e-mail filters available to ISPs in the Market, and maintaining Plaintiffs' dominant market share.  Upon information and belief, Plaintiffs have continued to make such statements to ▮▮▮▮ to this day.

20.     Plaintiffs' scheme to drive out competition, as well as superior products in the Market, has been successful.  For example, Vade Inc.'s agreement with ▮▮▮▮ included an option for ▮▮▮▮ to also license Vade's MTA under development, known as the NextGenMTA.  In fact, after

16

Vade Inc. began supplying its Email Content Filter, ▮▮▮ continued to use the MTA provided by Cloudmark.  Thus, had ▮▮▮ licensed Vade Inc.'s NextGenMTA, Cloudmark would have been entirely excluded from the ▮▮▮ relationship.  Rather than permit that to happen, Plaintiffs hatched their plan to bring this lawsuit and make, upon information and belief, demonstrably false statements to ▮▮▮, and other ISPs, that (1) all of Vade's products are at issue in this suit, (2) that Vade will not be able to provide products or services to ▮▮▮ going forward, and that (3) Vade was not financially stable.  When asked about these allegations, Vade Inc. explained that they were false, and that there would be no material impact of the sham litigation to its business.  This, of course, put ▮▮▮ in the middle of a dispute between two vendors, and as result, ▮▮▮, upon information and belief, determined to halt all discussions of additional licensing arrangements with Vade Inc.—the exact result improperly sought by Plaintiffs.

21.     Plaintiffs' improper conduct was not an isolated incident.  Plaintiffs also similarly interfered with Vade Inc.'s potential relationship with one of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮.  In particular, riding the momentum of the ▮▮▮ agreement in late 2018, Vade Inc. began discussions with ▮▮▮ in early 2019 to provide its e-mail filter solution.  At that time, ▮▮▮ was using Proofpoint, but like ▮▮▮▮▮ upon information and belief, was not pleased with Proofpoint as a vendor.  Accordingly, in approximately March 2019, Vade Inc. participated in a POC against Proofpoint's product, and once again, Vade Inc.'s e-mail product outperformed Proofpoint.  As a result, by June of 2019, ▮▮▮ and Vade had been in engaged in many months of contract negotiations and exchanged numerous draft agreements.  Indeed, only a few relatively minor deal points remained to be negotiated, and ▮▮▮ representative handling the negotiations stated that ▮▮▮ was ready to finalize the agreement that would replace Proofpoint's inferior e-mail filter with Vade Inc.'s e-mail filter product known as Filterd.

22.     Desperate to prevent that from happening, Plaintiffs again implemented their scheme to prevent competition from encroaching on their market share through false statements rather than through price and quality competition on the merits. While Vade Inc. and ▮▮▮ were on the doorstep of entering into an agreement that would replace Proofpoint, Proofpoint, upon information and belief, began to communicate to ▮▮▮ that it was bringing suit against the Vade Defendants, and that all of

17

Vade Inc.'s products were developed using Plaintiffs' alleged trade secrets. Again, this was a knowingly false misrepresentation. Vade's product Filterd, which was the only product being offered to ████, was never accused of being developed using Plaintiffs' alleged trade secrets. Plaintiffs also, upon information and belief, falsely communicated to ████ that Vade was not financially stable, and that defending this lawsuit would easily bankrupt Vade. These false statements had no legitimate purpose, and they were made to ████, who has no interest in the outcome of this litigation. The only plausible explanation for these communications to ████, and other ISPs, is that they were made in an effort to halt Vade from further competing in the Market. And while Vade Inc. tried to explain to ████ that such statements were patently untrue, ████ senior executives decided to stop negotiations with Vade Inc. and maintain its relationship with Proofpoint, despite that Proofpoint's product was clearly inferior.

23.     Thus, for now close to two years, Plaintiffs have been, upon information and belief, actively disparaging the Vade Defendants in the Market to prevent the Vade Defendants from reducing Plaintiffs' dominant market share. In the process, Plaintiffs have been able to further lock ISPs in the Market into ██████████████████ that would not have otherwise been available, but for Plaintiffs' improper conduct. Indeed, given Plaintiffs' dominant market share, the practice of ██████████████, and improper conduct directed towards competitors, Plaintiffs have erected extremely high barriers for competitors to enter the Market. Since Plaintiffs merged in 2017, there has not been a single new entrant to the Market. Just the opposite, competitors have left the Market. This is despite that, with the constant changes in our technological environment, there has been an increased need from applicable ISPs for competitive options for e-mail filtering during that time. Plaintiffs' improper conduct has, thus, harmed not only the Vade Defendants, but also competition in the Market, and the counterclaims asserted below are being brought accordingly.

**FIRST CAUSE OF ACTION**

**(Defamation)**

24. Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

25. At all relevant times alleged herein, all of Plaintiffs' employees were acting in their official capacity as Plaintiffs' employees and, therefore, their actions are attributable to Plaintiffs.

26. Plaintiffs, upon information and belief, have made false and misleading representations to Vade Defendants' customers and potential customers including at least that:

    a. Vade Defendants are not financially stable;

    b. Vade Defendants will soon be bankrupt;

    c. The present lawsuit by Plaintiffs will "easily bankrupt" Vade Defendants;

    d. All of Vade's e-mail filter products were developed using Plaintiffs' alleged trade secrets;

    e. The lawsuit is against all of Vade Defendants' products;  and/or

    f. The Vade Defendants will not be able to provide any products to their existing or potential customers.

27. Upon information and belief, Plaintiffs have made these statements about the Vade Defendants to existing and potential customers repeatedly and they continue to this day.  Plaintiffs have, upon information and belief, employed this strategy to maintain pressure on these third parties and to reinforce the damaging nature of these false statements.  Indeed, these statements have adversely affected Vade Defendants' business and reputation and are defamatory without necessity of explanatory matter.  These statements were made to Vade Defendants' customers and potential customers with whom Vade Defendants had agreements in principle to provide products and services.

28. These statements, by imputing at least the items at paragraphs 25 a. through f. above, also tend to directly injure Vade Defendants in respect of their trade or business by having a natural tendency to lessen their profits.  Further, as a natural consequence and a direct and proximate result

of Plaintiffs' knowingly false statements, Vade Defendants lost the business and economic relationships with those customers and potential customers.

29.     Plaintiffs' statements establish a prima facie case of actionable defamation because they involve Vade Defendants' business, were published, were and are false, and were made with the knowledge that they were false, and with spite, hatred, and ill will toward Vade Defendants. Plaintiffs had no reasonable grounds to believe the statements were true, and acted with reckless disregard for ascertaining the truth.  Thus, Plaintiffs' statements are actionable, and actionable per se, and Vade Defendants are entitled to damages in an amount to be proven at trial.

30.     As a natural consequence and proximate result of Plaintiffs' defamatory statements, Vade Defendants have suffered actual damages in the form of loss of customers and harm to their reputation, and were exposed to contempt.  Vade Defendants therefore suffered specific and general damages, and are entitled to punitive damages, in an amount to be proven at trial.

31.     As a proximate result of Plaintiffs' defamatory statements, Vade Defendants have suffered and will continue to suffer irreparable harm unless Plaintiffs cease making the statements alleged herein.  Vade Defendants have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**SECOND CAUSE OF ACTION**

**(Commercial Disparagement)**

32.     Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

33.     At all relevant times alleged herein, all of Plaintiffs' employees were acting in their official capacity as Plaintiffs' employees and, therefore, their actions are attributable to Plaintiffs.

34.     Plaintiffs have made false and misleading representations to Vade Defendants' customers and potential customers regarding the Vade Defendants products and business including at least that:

    a.   Vade Defendants are not financially stable;

    b.   Vade Defendants will soon be bankrupt;

    c.   The present lawsuit by Plaintiffs will "easily bankrupt" Vade Defendants;

20

d.  All of Vade's e-mail filter products were developed using Plaintiffs' alleged trade secrets;

e.  The lawsuit is against all of Vade Defendants' products;  and/or

f.  The Vade Defendants will not be able to provide any products to their existing or potential customers.

35.    In each instance in which Plaintiffs have, upon information and belief, made these statements, Plaintiffs made them with knowledge of their falsity, or acted with reckless disregard for their falsity.  Plaintiffs, upon information and belief, made these statements with the intent to harm the Vade Defendants' interests.  Plaintiffs, upon information and belief, made these statements to ████ for the sole purpose of wrongfully disparaging the Vade Defendants' products and business such that it could improperly maintain ████ business.

36.    Plaintiffs' statements have caused specific pecuniary damage to the Vade Defendants by causing the Vade Defendants to lose the opportunity to license their Filterd product to ████ .

37.    As a natural consequence and proximate result of Plaintiffs' commercially disparaging statements, Vade Defendants have suffered actual damages in the form of loss of at least ████ business, which would have resulted in millions of dollars in licensing fees to the Vade Defendants.  Further, Plaintiffs' actions have been both oppressive and malicious with intent to cause injury to Vade Defendants and with conscious disregard of the rights of others.  Accordingly, Vade Defendants are entitled to exemplary damages, in addition to compensatory damages, as permitted by law and to be proven at trial.

38.    As a proximate result of Plaintiffs' ongoing commercially disparaging statements, Vade Defendants have suffered and will continue to suffer irreparable harm unless Plaintiffs cease making the statements alleged herein.  Vade Defendants have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

21

**THIRD CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage)**

39.     Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

40.     At all relevant times alleged herein, all of Plaintiffs' employees were acting in their official capacity as Plaintiffs' employees and, therefore, their actions are attributable to Plaintiffs.

41.     Plaintiffs deliberately interfered with Vade Defendants' prospective economic advantage.  Vade Defendants have enjoyed prospective economic relationships with their customers and prospective customers that were of substantial economic benefit to Vade Defendants.  With knowledge of Vade Defendants' valuable relationships with their customers and prospective customers, Plaintiffs' false and misleading statements and other acts alleged in paragraphs 9 to 22 herein were knowingly designed to interfere with and disrupt those relationships.  Plaintiffs' actions were independently wrongful as they violated California law as alleged herein.

42.     For example, as alleged above, Vade Inc.'s agreement with ▇▇▇▇ included an option for ▇▇▇▇ to also license Vade's MTA under development, known as the NextGenMTA. Had that option been exercised, it would have resulted in additional revenue to the Vade Defendants, and it would have excluded Cloudmark entirely from the ▇▇▇▇ relationship.  To prevent that from happening, Plaintiffs executed their plan to bring this baseless lawsuit and, upon information and belief, to make demonstrably false statements to ▇▇▇▇ that all of Vade's products are at issue in this suit, and that Vade will not be able to provide products or services to ▇▇▇▇ going forward. Further, upon information and belief, Plaintiffs communicated to ▇▇▇▇ that Vade was not financially stable, and that the Vade Defendants would be bankrupt in the near term.  These statements are demonstrably false and, upon information and belief, were made by Plaintiffs with knowledge of their falsity.  Upon information and belief, as a direct result of these knowing misrepresentations by Plaintiffs, ▇▇▇▇ halted all discussions to license any additional products or services from Vade Inc.

43.     Plaintiffs similarly interfered with the Defendants' prospective economic relationship with ▇▇▇▇.  In particular, Vade Inc. began discussions with ▇▇▇▇ in early 2019 to provide its e-

22

mail filter solution.  At that time, ▮▮▮ was using Proofpoint to provide its e-mail filtering solution.  Upon information and belief, however, ▮▮▮ considered Proofpoint to be a difficult vendor to work with.  Accordingly, in approximately March 2019, Vade Inc. participated in a POC against Proofpoint's product, and once again, Vade Inc.'s product outperformed Proofpoint.  As a result, by June of 2019, ▮▮▮ and Vade had been in engaged in many months of contract negotiations and exchanged numerous draft agreements.  Indeed, only a few relatively minor deal points remained to be negotiated, and ▮▮▮ representative handling the negotiations stated that ▮▮▮ was ready to finalize the agreement that would replace Proofpoint's inferior e-mail filter with Vade Inc.'s product Filterd.

44.     Desperate to prevent that from happening, Proofpoint, upon information and belief, began to communicate to ▮▮▮ that the Vade Defendants' products were all developed using Plaintiffs' alleged trade secrets, which included the Filterd product being offered to ▮▮▮.  Upon information and belief, Plaintiff further communicated that all of Vade's products were at issue in a lawsuit brought by Plaintiffs, and because of the Vade Defendants' alleged unstable financial condition, it would not survive this litigation.  Each of these statements was made knowing that they were false or with reckless disregard for the truth.  As a direct result of those misrepresentations, which were knowingly false when made, ▮▮▮ senior executives decided to stop negotiations with Vade Inc. and maintain its relationship with Proofpoint, despite that Proofpoint's product was clearly inferior.

45.     Plaintiffs' actions have been both oppressive and malicious with intent to cause injury to Vade Defendants and with conscious disregard of the rights of others.  Accordingly, Vade Defendants are entitled to exemplary damages, in addition to compensatory damages, as permitted by law.

46.     As a proximate result of Plaintiffs' defamatory and disparaging statements, Vade Defendants have suffered and will continue to suffer irreparable harm unless Plaintiffs cease making the false and misleading statements alleged herein.  Vade Defendants have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**FOURTH CAUSE OF ACTION**

**(Unfair Competition Under California Business and Professions Code § 17200)**

47.     Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

48.     Plaintiffs' acts as alleged in paragraphs 9 to 22 herein constitute "unlawful, unfair, or fraudulent business act[s] or practice[s]" within the meaning of California Business and Professions Code § 17200 *et seq*.

49.     As a direct and proximate result of Plaintiffs' wrongful conduct, Vade Defendants have been and will continue to be harmed, and Plaintiffs have been and will continue to be unjustly enriched.

50.     As a direct and proximate result of Plaintiffs' wrongful conduct, Vade Defendants are entitled to injunctive relief, restitution, and an order of disgorgement of all of Plaintiffs' ill-gotten gains from their unlawful, unfair, or fraudulent business acts or practices.

**FIFTH CAUSE OF ACTION**

**(Monopolization – Section 2 of the Sherman Act – 15 U.S.C. § 2)**

51.     Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

52.     As described above, Plaintiffs possess monopoly power in the Market, which is comprised of relevant product and geographic markets as described above and as follows:

a.     **Product Market and Geographic Market** – Here, the relevant product market consists of e-mail filtering products for Tier 1 B2C ISPs capable of monitoring and filtering at least 1 million email accounts at the same time.  The United States composes the relevant geographic market.  The relevant products are marketed and sold to Tier 1 B2C ISPs that provide at least a million or more e-mail accounts to their customers located in the United States.  E-mail filtering tools that are designed to handle smaller volumes of e-mail accounts simply do not have the capacity to handle such heavy traffic, and thus, are not reasonably interchangeable with the relevant e-mail filtering products at issue here.

24

53.     As alleged in detail above, Plaintiffs have aggressively sought, obtained, and maintained a dominant market position.  Since 2008, Proofpoint, upon information and belief, has acquired at least 19 e-mail security companies for the purpose of gaining market share through in the Market.  Once such acquisition was of Cloudmark in 2017, a principal competitor of Proofpoint's in the Market at that time.   Upon information and belief, Proofpoint's motivation for acquiring Cloudmark was to absorb its main competitor's market share and the over 1 billion e-mail boxes being managed by Cloudmark's e-mail filter products.  Thus, Plaintiffs' superior market share is not attributable to superior products or customer service, but rather to its aggressive and intentional plan to be the monopoly power by gobbling up competitors through acquisition, exclusion of competitors through long-term exclusive contracts, filing sham litigation, and disparaging competitors with false statements.   Indeed, as a result of Plaintiffs conduct, since at least 2017, Plaintiffs have, upon information and belief, controlled anywhere from 62% to over 80% of the Market.

54.     After obtaining their dominant market position, Plaintiffs have taken numerous anti-competitive steps to maintain their dominance to the exclusion of competition.   Plaintiffs have, in fact, employed anti-competitive conduct used to maintain its monopoly power that ███████████ ████████████████, making false, disparaging communications about entities seeking to enter the Market, and filing this baseless lawsuit.  It is through that conduct that Plaintiffs' have maintained their position, not as a result of superior products, business acumen, or chance.

55.     For example, there is a significant commitment on the part of an ISP to begin using an e-mail filter from a supplier.  In particular, ISPs that license e-mail filter products in the Market are providing millions of e-mail accounts to their customers.  Accordingly, the e-mail filtering products sold in the Market are highly specialized products that must be customized to the particular ISPs' environment.  Moreover, ISPs, upon information and belief, must take the necessary steps to properly notify its e-mail users of who the e-mail filter provider is and the level access being granted to the user's e-mail accounts, which is in itself a lengthy logistical task.  Indeed, upon information and belief, setting up an e-mail filter in the Market with an ISP typically takes approximately 4 months or longer.

56.     But the e-mail filtering products in the Market perform the important job of, among other things, filtering out malicious e-mails and spam that, if let through, could result in millions of dollars of damage to the ISP and its e-mail users.  Accordingly, e-mail filter downtime cannot be tolerated.  And as a result, ISPs are reluctant to switch e-mail filter products in the Market once they begin working with a provider, even if the e-mail filtering product being used is inferior, as is the case with Plaintiffs.

57.     Plaintiffs are aware of these market dynamics and use them to maintain their dominant market share.  In particular, Plaintiffs, upon information and belief, were early market entrants, and have continually entered into exclusive licensing agreements with ISPs with ███████████████  ████  Further, upon information and belief, Plaintiffs' contracts include ███████████████ that often times result in █████████████████████████.  Indeed, upon information and belief, in view of the significant amount of time and investment required to switch to a new supplier, Plaintiffs are able to control an ISP's business for close to a decade once they have them signed as a customer.  Such contractual arrangements make it extremely difficult for a new competitor to enter the Market—a fact that Plaintiffs knowingly use to improperly maintain their market share.

58.     Even when a new competitor does enter the Market, Plaintiffs use other improper anti-competitive conduct to maintain their market position.  Indeed, as detailed above, the Vade Defendants were one such entrant, and the Plaintiffs have engaged in systematic disparagement of the Vade Defendants' products and business to prevent them from taking customers away from Plaintiffs in the Market.

59.     In particular, Vade SASU first began to offer e-mail filtering solutions to customers located outside the United States.  Through those efforts, Vade was successful in obtaining numerous significant clients in various non-U.S. markets, including Japan.  Based on that success, Vade sought to enter the U.S. Market through  its subsidiary Vade Inc., which is based in Northern California.

60.     Vade's efforts were initially successful, and because they had a superior product, they were able to replace Cloudmark as the e-mail filter provider to ████.  Plaintiffs, however, quickly

took steps even before that contract was entered into in an effort to prevent Vade from further penetrating the U.S. Market.

61.     As early as September 2018, before the ████ agreement was even entered into, Plaintiffs, upon information and belief, began to implement a calculated plan to prevent competition from encroaching into Plaintiffs' dominant market share.  At that time, Plaintiffs, upon information and belief, began to communicate to ISPs that they intended to bring a lawsuit against Vade for the purpose of requiring Vade to divert its valuable resources to defending against such an action with the goal of destroying Vade as a business and preventing it from entering the Market.  In furtherance of that plan, Cloudmark has made demonstrably false statements to Vade's existing and potential ISP clients, including ████.

62.     For example, upon information and belief, Cloudmark met with ████ representatives in August 2019, approximately one month after this lawsuit was filed.  During that meeting, Cloudmark, upon information and belief, stated that it had purportedly uncovered evidence that the Vade Defendants misappropriated Plaintiffs' alleged trade secrets and incorporated those into all of Vade's products.  This statement was knowingly false.  Contrary to that representation, this lawsuit is limited in scope to two products, neither of which is the E-mail Content Filter being licensed to ████.  Thus, any representation that *all* of the Vade Defendants' products were developed using Plaintiffs' alleged trade secrets or are at issue in this lawsuit is simply untrue and constitutes a knowing misrepresentation.  Plaintiffs, upon information and belief, further stated to ████ that in Vade's current financial condition this lawsuit would bankrupt Vade, such that it would not be able to offer any products or services going forward.  These are also knowingly false statements or made with reckless disregard for the truth.  Such statements serve no legitimate purpose or objective and were designed to prevent ████ from deepening its relationship with Vade.  Upon information and belief, Plaintiffs have continued to make such statements to ████ to this day.

63.     Plaintiffs, upon information and belief, have also made and continue to make similar statements to ████ Again, as explained above, after months of negotiations, which included a POC that established Vade Inc.'s product Filterd as superior to Proofpoint's e-mail filter, ████ representatives stated that they were ready to replace Proofpoint.

27

64. Solely to prevent the Vade Defendants from decreasing Plaintiffs' share of the Market, Proofpoint, upon information and belief, began to communicate to ███ that it was bringing suit against the Vade Defendants, and that all of Vade's products were allegedly developed using Plaintiffs' purported trade secrets and susceptible to an adverse judgment that would bankrupt the company. Plaintiffs made these representations to ███ knowing that Vade Inc.'s Filterd product— the only product being offered to ███—was not being accused in the lawsuit. Indeed, there has never been any allegation by Plaintiffs that Filterd was developed using Plaintiffs' alleged trade secrets, nor could there be. Thus, Plaintiffs were fully aware that, when it made those false statements, ███ had zero interest in the outcome of this lawsuit, and those false statements did not serve any legitimate objective. To the contrary, the only plausible explanation for Plaintiffs to even discuss this lawsuit with ███ is to interfere with a new competitor's ability to enter the Market.

65. Again, Plaintiffs, upon information and belief, make these misrepresentations to customers knowing that ISPs are reticent in the first instance to move suppliers given the time, expense, and potential for harmful downtime. Thus, when these misrepresentations are coupled with practical difficulties of switching providers, Plaintiffs' ███████████ and relationships, Plaintiffs' anti-competitive conduct is not susceptible to neutralization by the Vade Defendants. Indeed, the Vade Defendants discussed the misrepresentations with ███████, but to no avail. Plaintiffs multi-faceted anti-competitive approach has resulted in virtually unscalable barriers to market entry. Indeed, upon information and belief, despite increased demand, there has not been a single new competitor to enter the Market since at least 2017—the year Plaintiffs joined forces.

66. Plaintiffs anti-competitive conduct also includes bringing this objectively and subjectively baseless lawsuit for the sole purpose of harming competition in the short- and long-term, as opposed to addressing any legitimate legal concern. In particular, there was no objectively reasonable basis for bringing this suit against the Vade Defendants. The objectively baseless nature of this lawsuit was, in fact, borne out during the briefing to this Court on Plaintiffs' motion for preliminary injunction. To succeed on that motion, Plaintiffs were required to, among other things, establish a likelihood of success on the merits of its trade misappropriation claim—the only claim

28

asserted against the Vade Defendants.  Thus, it was incumbent on Plaintiffs to come forward and present evidence establishing what its trade secrets were and how they were misappropriated by the Defendants.  If Plaintiffs had any proof to support those allegations, it would have appeared during the course of the parties' briefing on that motion.  Plaintiffs did not present any such evidence.  In fact, after considering all of Plaintiffs' briefing, which included multiple expert declarations, the Court held that, "the Court finds the evidence plaintiffs offer by way of elaboration is not sufficiently specific to make out a prima facie case of trade secret misappropriation and, consequently, is insufficient to satisfy the first requirement for a preliminary injunction."  (Ct.'s Order at 4, ECF No. 126.)  Indeed, to this day, over a year after this lawsuit was filed, Plaintiffs, by their own admission, have still not identified what trade secrets they claim to have actually been misappropriated by the Vade Defendants.  There was simply no objective basis for bringing this suit.

67.    There was similarly no good-faith subjective basis for filing this action.  To the contrary, for reasons explained above, Plaintiffs only brought this lawsuit to interfere with the Vade Defendants' ability to enter the Market.  Indeed, upon information and belief, Plaintiffs, again, made knowing misrepresentations to the Vade Defendants' existing and potential customers about the subject matter and impact of this lawsuit, despite that the products being offered to ███, for example, are not even at issue in this action.  That is proof that this lawsuit was brought by Plaintiffs, not to cure a legitimate legal harm, but rather, to prevent a new player from entering the Market.

68.    Thus, for nearly two years, Plaintiffs have been, upon information and belief, actively disparaging the Vade Defendants in the Market to prevent the Vade Defendants from reducing Plaintiffs' dominant market share.  In the process, Plaintiffs have been able to further ███████ ████████████████████ that would not have otherwise been available, but for Plaintiffs' improper conduct.  Indeed, given Plaintiffs' dominant market share, practice of ████████████████████, and improper conduct directed towards competitors, Plaintiffs have erected extremely high barriers for competitors to enter the Market.  Again, since Plaintiffs merged in 2017, there has not been a single new entrant to the Market.  Plaintiffs' improper conduct has, thus, harmed the Vade Defendants, as well as competition in the Market.

29

69.    Plaintiffs have, thus, acted with the intent to maintain and perpetuate its monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

70.    As a direct and proximate result of Plaintiffs' unlawful conduct in the Relevant Market, the Vade Defendants' business has suffered, and will continue to suffer harm, unless Plaintiffs are restrained.  The Vade Defendants are therefore entitled to injunctive relief, as well as their costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 26.

71.    Further, pursuant to 15 U.S.C. § 15, the Vade Defendants are entitled to recover threefold the damages they have sustained and continue to sustain, in an amount to be determined at trial, including pre- and post-judgment interest thereon, and their costs of suit, including reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### (Attempted Monopolization – Section 2 of the Sherman Act – 15 U.S.C. § 2)

72.    Vade Defendants reallege and incorporate herein by reference all of the allegations in the preceding paragraphs as if fully set forth in support of this cause of action.

73.    Plaintiffs have willfully engaged in the predatory and anti-competitive practices described above in an effort to improperly raise barriers to the entry and expansion with the specific intent of monopolizing the Market.  Accordingly, there is a dangerous probability that, unless restrained, Plaintiffs will succeed in monopolizing the Market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

74.    As a direct and proximate result of Plaintiffs' unlawful conduct in furtherance of their attempt to monopolize the Market, the Vade Defendants' business has suffered, and will continue to suffer harm, unless Plaintiffs are restrained.  The Vade Defendants are therefore entitled to injunctive relief, as well as their costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 26.

75.    Further, pursuant to 15 U.S.C. § 15, the Vade Defendants are entitled to recover threefold the damages they have sustained and continue to sustain, in an amount to be determined at trial, including pre- and post-judgment interest thereon, and their costs of suit, including reasonable attorneys' fees.

## <u>VADE DEFENDANTS' PRAYER FOR RELIEF</u>

Vade Defendants respectfully pray that:

i.  The Court enter judgment on Plaintiffs' Complaint against Plaintiffs and in favor of Defendants;

ii.  The Court enter judgment that the Plaintiffs' defamed Vade Defendants, collectively or individually;

iii.  The Court enter judgment that Plaintiffs' commercially disparaged the Vade Defendants, collectively or individually;

iv.  The Court enter judgment that Plaintiffs have engaged in intentional interference with Vade Defendants' prospective economic advantage, collectively or individually;

v.  The Court enter judgment that Plaintiffs have engaged in unfair competition under California Business and Professions Code § 17200;

vi.  The Court enter judgment that Plaintiffs have violated 15 U.S.C. § 2;

vii.  The Court enter judgment for preliminary and permanent injunctive relief enjoining the wrongful and unfair acts by Plaintiffs alleged herein, and by those persons acting in concert with Plaintiffs, including related individuals, entities, agents, or representatives;

viii.  The Court award Vade Defendants' actual damages sustained as a result of the acts alleged herein, together with prejudgment interest, according to proof;

ix.  The Court order disgorgement of the Plaintiffs' profits resulting from the acts alleged herein;

x.  The Court award Vade Defendants restitution of any profits resulting from the acts alleged herein;

xi.  The Court award Defendants punitive and/or treble damages as permitted by law;

xii.  The Court award Defendants their attorneys' fees as permitted by law;

xiii.  The Court award Defendants their costs of suit, including reasonable litigation expenses, as permitted by law; and

xiv.  The Court award Defendants any additional relief the Court deems just and proper.

Case No. 3:19-cv-04238-MMC
DEFENDANTS VADE SECURE, INCORPORATED AND VADE SECURE SASU'S
SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Dated: August 14, 2020

**BAKER & McKENZIE LLP**

By: /s/ *Bart Rankin*

Colin H. Murray (SBN 159142)
colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone:    +1 415 576 3000
Facsimile:     +1 415 576 3099

Danielle L. Benecke (SBN 314896)
danielle.benecke@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:    +1 650 856 2400
Facsimile:     +1 650 856 9299

Jay F. Utley (Admitted *Pro Hac Vice*)
jay.utley@bakermckenzie.com
Bart Rankin (Admitted *Pro Hac Vice*)
bart.rankin@bakermckenzie.com
Mackenzie M. Martin (Admitted *Pro Hac Vice*)
mackenzie.martin@bakermckenzie.com
John G. Flaim (Admitted *Pro Hac Vice*)
john.flaim@bakermckenzie.com
Chaoxuan Liu (Admitted *Pro Hac Vice*)
charles.liu@bakermckenzie.com
Mark Ratway  (Admitted *Pro Hac Vice*)
mark.ratway@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone:    +1 214 978 3000
Facsimile:     +1 214 978 3099

*Attorneys for Defendants,*
*Vade Secure, Incorporated; Vade Secure SASU;*
*and Olivier Lemarié*