**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
Shuang Zhang (SBN 324119)
clairezhang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JWC LEGAL**
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs,*
*Proofpoint, Inc. and Cloudmark LLC*

Colin H. Murray (SBN 159142)
colin.murray@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

Jay F. Utley (*Pro Hac Vice*)
jay.utley@bakermckenzie.com
Bart Rankin (*Pro Hac Vice*)
bart.rankin@bakermckenzie.com
Mackenzie M. Martin (*Pro Hac Vice*)
mackenzie.martin@bakermckenzie.com
John G. Flaim (*Pro Hac Vice*)
john.flaim@bakermckenzie.com
Chaoxuan Liu (*Pro Hac Vice*)
charles.liu@bakermckenzie.com
Mark Ratway (*Pro Hac Vice*)
mark.ratway@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099

*Attorneys for Defendants,*
*Vade Secure, Incorporated; Vade Secure*
*SASU; and Olivier Lemarié*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-4238-MMC-RMI<br><br>**JOINT DISCOVERY STATEMENT RE PRODUCTION FROM DEFENDANT LEMARIÉ'S PERSONAL ELECTRONIC DEVICES AND ONLINE STORAGE ACCOUNTS** |

Honorable Judge Illman:

Proofpoint, Inc. and Cloudmark LLC ("Proofpoint" or "Plaintiffs") and Defendants, Vade Secure, Incorporated, Vade Secure SASU, and Olivier Lemarié ("Vade" or "Defendants"), file this Joint Discovery Statement regarding production of forensic images of Defendant Lemarié's personal electronic devices and archival copies of online storage accounts.[1]  Plaintiffs contend that these materials were requested under, *inter alia*, Plaintiffs' Requests for Production Nos. 32–37 on Defendant Lemarié, served on May 19, 2020.  In particular, Plaintiffs contend that these Requests seek the production of all personal electronic devices, online storage accounts, and documents and things stored thereon that Defendant Lemarié used or had access to during the time of his employment at Cloudmark LLC.  Defendants contend that it is demonstrably false that any of the above-referenced Requests seek any forensic images of Defendant Lemarié's personal electronic devices, any archival copies of online storage accounts, or any metadata associated therewith.

The parties have met and conferred extensively on this issue, and Defendants have agreed to now forensically image for preservation Mr. Lemarié's devices and online accounts.  However, the parties dispute whether Defendants must produce the forensic images and corresponding metadata associated with said devices and accounts.  Accordingly, Plaintiffs seek an order compelling Defendants to produce at least all of the non-content metadata associated with Defendant Lemarié's devices and accounts, as well as an expedited protocol for review and production of specific relevant data from said devices and accounts.

---

[1]Plaintiffs are not seeking information associated with Mr. Lemarié's Evernote, Github, AWS, and Docker accounts, which were already the subject of the parties' Joint Stipulation and the Court's Order Regarding Nonparty Subpoenas (Dkt. 188).

## PLAINTIFFS' STATEMENT

As the Court is aware, Defendant Lemarié stands accused of misappropriating his former employer, Cloudmark's highly confidential trade secrets. Through discovery, Plaintiffs have uncovered evidence to prove not only Defendants' misappropriation, but also literal copying of 2,000+ lines of confidential and proprietary Cloudmark source code as a Vade employee (Dkt. 220 at 24–27), leading to the recent addition of copyright infringement claims in an amended complaint. The only way Lemarié could have possibly copied this amount of code (and maybe more) is if he had access to a copy of Cloudmark's source code on one or more of his personal devices and/or online storage accounts *after* he terminated his employment with Cloudmark. Yet Defendants have not produced any of the code or even acknowledged Lemarié's possession thereof. Worse yet, Plaintiffs recently learned that Defendants have not forensically preserved any of Lemarié's devices or accounts, and have been relying on Lemarié himself to preserve and identify relevant materials. Defendants have only now offered to belatedly image Lemarié's devices, yet still have not agreed to produce any information from the forensic images. Defendants' position is untenable in view of the facts. "[W]here trade secrets and electronic evidence are both involved, the Courts have [routinely] granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation." *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, 2013 WL 11235928, at *2 (N.D. Cal. Oct. 15, 2013). Here, there is more than good cause to compel production of forensic images of Lemarié's devices and accounts. Any burdens and privacy concerns are outweighed, and/or could be addressed by Plaintiffs' proposed protocol ("Protocol"), which was shared with Defendants. Defendants objected to Plaintiffs' attempt to attach the Protocol for the Court's review; however, Plaintiffs can lodge the Protocol with the Court in advance of any hearing.[2]

First, Plaintiffs' RFP Nos. 32–37 seek Lemarié's devices and accounts, and are directly relevant to Plaintiffs' claims, as well as to locating Plaintiffs' highly valuable and confidential source code and minimizing the risk of further misappropriation and/or dissemination by Defendants, including Lemarié. Indeed, discovery has revealed that Lemarié improperly retained and utilized highly confidential information for the benefit of Vade *two years* after he left Cloudmark. For example, as mentioned above, Plaintiffs have identified at least five Cloudmark source code files copied *verbatim*, or in substantial part, by Lemarié into Vade's source code. Dkt. 220 ¶¶ 116–117. Some of the copied code was even authored by Cloudmark employees other than Lemarié. This confirms Plaintiffs' trade secret, contract breach, and copyright allegations, and sufficiently establishes the need for Lemarié's devices and accounts. *E.g.*, *Satomodo, LLC v. Whenever Commc'ns, LLC*, 2018 WL 3495832, at *4 (S.D. Cal. July 20, 2018) (granting forensic inspection of defendant's electronic device where defendant "allegedly used the [the electronic device] to commit the wrong and is the subject of the lawsuit"—without allegation of spoliation).

Second, despite having a copy of Plaintiffs' confidential source code after starting work for Vade, Lemarié has not produced or returned any of the code in response to, *inter alia*, Plaintiffs' RFPs 31, 38, or 39. When asked why Plaintiffs' code has not been produced, Defendants' counsel could only represent that Lemarié *currently* does not have a copy of the code, but would not

---

[2]   Notably, the Protocol should not be interpreted to limit, delay, abrogate or otherwise affect Defendants' discovery obligations—or Plaintiffs' remedies for Defendants' violations thereof— under any applicable law or rule. For example, the Protocol for requesting specific content does not override Defendants' existing obligation to produce responsive materials in this case.

confirm whether he had the code in May 2018 when he copied at least five Cloudmark code files verbatim into Vade's code, in July 2019 when Plaintiffs filed this suit, or at any other time period. Given Defendants' "apparent inability and/or unwillingness" to locate Plaintiffs' source code in Lemarié's possession, Plaintiffs are unable to obtain key evidence through means other than the instant request for forensic images, or even to protect their code from being further distributed in an unlawful manner. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012). The forensic images are necessary to locate Plaintiffs' code and determine what Lemarié may have done with the code or other confidential business information. At a minimum (even setting aside the trade secret and copyright violations), possessing, using, and destroying Cloudmark's source code after his employment constitute breaches of Lemarié's employment agreement, and raise significant questions concerning potential evidence spoliation.

Courts have compelled forensic inspections in these exact circumstances. In *Brocade*, the court found a forensic inspection would serve three purposes: (1) prove the "trade secret misappropriation and copyright claims"; (2) "test[] the veracity of [defendant's] claims as to whether any of [plaintiff's] source code files on [the individual's] hard drives were accessed while [defendant] was developing [its] source code"; and (3) show whether code once on the individual's "hard drives were ever deleted." *Id.* at *2 (compelling forensic inspection even without allegation of spoliation). All three purposes would be served here, and cannot be achieved otherwise. *See also Satomodo*, 2018 WL 3495832, at *4 (compelling forensic inspection because "Defendants have sole and exclusive access to the devices and control over the information they share; inspection of the devices could resolve the issues of the case").

Moreover, the need for forensic images is further highlighted by Lemarié's continued misrepresentations and pattern of manipulating evidence to date. For example, Lemarié has: 1) failed to disclose all relevant personal electronic devices until third-party discovery revealed those devices—including two computers used during his employment at Cloudmark and later accessed after he joined Vade; 2) admitted to deleting Plaintiffs' proprietary information stored in Evernote instead of returning it in accordance with his contractual obligations (*see* Dkt. 71-10 ¶ 8); 3) continued to delete content from his Evernote account even after this lawsuit was filed; 4) declared **under oath** that he "deleted copies of Cloudmark files, documents, and information from [his] personal computer and personal accounts" (Dkt. 100-3 ¶ 17) despite clear evidence that he still had access to and copied Cloudmark source code **verbatim** nearly two years after he left Cloudmark. Nor has Defendants' counsel provided any assurance that Lemarié's devices and accounts have been forensically preserved or searched for production. Rather, Defendants' counsel have admitted they have yet to generate any forensic images of Lemarié's devices or accounts, and admitted Lemarié himself has been tasked with preserving and identifying relevant content from his own devices and accounts for production in the case. Indeed, in the parties' meet and confers, Defendants' counsel have only been able to state that they independently "confirmed" Lemarié's representations to them based on a **subset** of materials that Lemarié, himself, selected and provided to counsel. Such inconsistencies and lack of clarity have amplified Plaintiffs' need for forensic review to verify Lemarié's assertions and his preservation and collection efforts. Put simply, the accused thief cannot be trusted to hand over the evidence of his own wrongdoing.

Accordingly, in a good faith effort to compromise, Plaintiffs have proposed the Protocol to address Defendants' burden and privacy concerns associated with collecting forensic images for production in this case. The Protocol provides that only non-content metadata be produced initially, allowing Plaintiffs to identify specific content data for production. Defendants may then

produce the requested content data within seven days of the request, or object within four days. Any disputes regarding Plaintiffs' requests would be resolved on an expedited basis, with a lead counsel meet-and-confer within three days of the objection, thereby allowing the parties to promptly raise any issues with the Court, if necessary, in discovery letter-briefs.

While Plaintiffs were willing to work with Defendants regarding the details of the Protocol, Defendants responded that they objected to the Protocol "in its entirety," arguing that ***any*** production of forensic images would impose undue burden. But because Defendants have already agreed to forensically preserve Lemarié's devices and accounts, Defendants would suffer little, if any, additional burden by producing the non-content metadata requested by Plaintiffs. That is, suppressing the content information from the forensic images that Defendants have already agreed to generate is accomplished through the same software used for forensic imaging. To the extent that Defendants might incur some expenses associated with the forensic inspection, it is proportionate to the needs of this case. *Brocade*, 2012 WL 70428, at *2 ("Brocade's need for the discovery outweighs A10's burden and cost").

Accordingly, Plaintiffs respectfully seek an order compelling Defendants to produce all non-content metadata associated with Lemarié's devices and accounts, and specifically-identified content data on an expedited basis in accordance with the Protocol.

Respectfully submitted,   */s/ Sean S. Pak*

## DEFENDANTS' STATEMENT

### Introduction

Plaintiffs have previously requested relevant documents and information from Defendant Olivier Lemarié. In response, Lemarié searched his physical and electronic files, including on his personal devices and in online accounts, and has or will be producing non-privileged, relevant data from those sources. Lemarié also identified numerous electronic devices and online accounts in responses to interrogatories. Lemarié has also agreed to create forensic images of his devices and online accounts. Despite this, Plaintiffs now seek to compel production of (a) forensic images of Defendant Olivier Lemarié's electronic devices and (b) archival versions of certain online storage accounts used by Lemarié, irrespective of whether those devices and storage accounts have any connection to this lawsuit.[3]

Plaintiffs have not even served a discovery request seeking such images, archives, or metadata associated therewith. And Plaintiffs' motion unquestionably implicates privileged and work-product information. In other words, Plaintiffs, without justification or a proper request, seek unfettered access to several, separate personal devices and accounts despite that forensic images

---

[3] Defendants understand that "Plaintiffs seek an order compelling Defendants to produce at least all of the non-content metadata associated with Defendant Lemarié's devices and accounts, as well as an expedited protocol for review and production of specific relevant data from said devices and accounts." Defendants contend that the referenced Requests certainly do not seek images, archives, or associated metadata. Nevertheless, and despite the fact that Plaintiffs have not disputed or challenged each objection to the referenced Requests that Defendants have lodged (*see* Lemarié's Objections & Responses to Plaintiffs' Second Set of RFPs, attached hereto as Ex. B) in writing or otherwise, Defendants do not intend to and do not waive any objections or arguments relating to privilege, privacy law, or any other legal ground with regard to the referenced Requests.

of those devices and accounts will necessarily include personal, irrelevant, and privileged information. Plaintiffs are not entitled to such a production.

**Argument**

**Plaintiffs' Motion is Improper.**  As a threshold issue, a motion to compel is only proper if a party has failed to produce relevant documents *in response to a request under Rule 34*. Fed. R. Civ. P. 37(a)(3)(B)(iv). Here, Plaintiffs' referenced Requests do not seek forensic images of devices, archival copies, or associated metadata for such images or archives at all. And so Plaintiffs' motion is improper and should be denied on that basis alone. *Wilkes v. Magnus*, 2013 U.S. Dist. LEXIS 127595, at \*11 (N.D. Cal. Sept. 6, 2013); *Reed v. CSP LAC*, No. CV12-10727-VAP (AS), 2019 U.S. Dist. LEXIS 167857, at \*2-4 (C.D. Cal. May 30, 2019). Indeed, Plaintiffs appear to recognize this shortcoming, as evidenced by a recent interrogatory requesting related information. (Pls.' Fourth Set of Interrogatories to Lemarié at Rog. No. 7, attached hereto as Ex. C.)

**Plaintiffs' Motion Seeks an Order Compelling Privileged Information.**  Additionally, Plaintiffs' request for forensic images or metadata seeks information protected by the attorney-client privilege and/or work product protections.  Some methods of searching and locating metadata, like metadata mining, for example, are "expressly aimed at the kind of information one would expect to be protected by attorney-client privilege and/or work-product protections." *Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. C13-1034 MJP, 2014 U.S. Dist. LEXIS 81132, at \*7 (W.D. Wash. June 13, 2014). "Due to the hidden, or not readily visible, nature of metadata, commentators note that metadata created by any software application has the potential for inadvertent disclosure of confidential or privileged information in both a litigation and non-litigation setting, which could give rise to an ethical violation." *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005) (citation omitted). The production Plaintiffs seek will necessarily cause Defendants to divulge information and metadata protected by the attorney-client privilege and/or work product protections.  Respectfully, the Court should not order this.

**Production of Forensic Images is Unwarranted.**  Even if Plaintiffs had served a proper request, which they have not, production of images of Lemarié's devices or complete archives of accounts (or related metadata) is inappropriate and unduly burdensome for several reasons. *First*, Plaintiffs have thus far offered no evidence that Lemarié used any specific device or account to commit any alleged misappropriation or copying, and without a sufficient nexus, Plaintiffs' requested relief must be denied. *Second*, Plaintiffs can point to no evidence of spoliation or any discovery misconduct in this case that could potentially necessitate the desired production, and in fact conceded on a meet-and-confer that they are seeking the images based on speculation of such conduct. *Third*, the breadth of Plaintiffs' request is unduly burdensome and not sufficiently tailored given the number of devices and accounts and the wide range of information—predominantly personal and irrelevant—stored on the devices and accounts.

1. Plaintiffs have offered no evidence that any of the requested devices or accounts have been used to commit an alleged misappropriation or copying. Again, Lemarié has produced or will be producing non-privileged, relevant documents, emails, and information responsive to Plaintiffs' discovery requests.  Plaintiffs now seek a blanket production of forensic images of all of Lemarié's devices, irrespective of the content or whether there is any relationship between that information and this lawsuit. The law does not support Plaintiffs' position. In order to compel production of forensic images of electronic devices, a court must find a sufficient nexus between the devices at issue and the alleged misappropriation or copying. *E.g.*, *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, No. C10-05297 RMW (HRL), 2013 U.S. Dist. LEXIS 148360, at \*5 (N.D. Cal. Oct. 15, 2013). For example, in *Lifetouch*, one of plaintiff Lifetouch's employees left to work for defendant Creative, a competitor of Lifetouch. 2013 U.S. Dist. LEXIS 148360, at \*3. While at Lifetouch, the employee used a thumb drive to back up her hard drive. *Id*. She later used a Creative laptop to view the thumb drive's contents. *Id*. Upon realizing that it contained plaintiff's information and determining she did not need the information stored on it, "she destroyed the thumb drive with a hammer and threw the pieces in the garbage." *Id*. Based on a declaration from the employee, the

court found that there was "a sufficient nexus between the defendant's computers and the alleged misappropriation of trade secrets to warrant forensic imaging of the computers." *Id*. at *5–6 (holding that because the employee "destroyed the thumb drive and cannot remember which computer she used to access the thumb drive . . . Lifetouch's only recourse is to examine the Creative computers that [she] may have used to view the contents of the thumb drive").

Plaintiffs do not and cannot make such a showing here. To the contrary, Plaintiffs seek production of a forensic image of *all* Lemarié's personal devices without any attempt to link the content of those devices to this lawsuit and without evidence. Indeed, the devices for which Plaintiffs seek a forensic image include those that are used generally by Lemarié's family and a computer being used by Lemarié's son for college. Plaintiffs have failed to make any showing that would warrant the blanket, untethered production they seek, and their request should be denied.

2. Production of forensic images is unwarranted absent spoliation or discovery abuse. Plaintiffs similarly cannot show any justification for the requested production based on any legitimate concern about spoliation. While courts in the past have permitted limited production of forensic images based on a showing of a serious concern of spoliation, *see Brocade Commc'ns. Sys. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 U.S. Dist. LEXIS 2846, at *9 (N.D. Cal. Jan. 9, 2012), Plaintiffs cannot make such a showing here.

Consistent with Plaintiffs' inability to connect Lemarié's alleged wrongful conduct to any specific device, Plaintiffs cannot identify any spoliation or discovery misconduct warranting production of forensic images. In fact, Lemarié has agreed to image his devices such that there is no danger that any information contained therein will be lost. Accordingly, there is no issue or concern that relevant information would be destroyed. Thus, Plaintiffs' request similarly lacks justification for that reason and should be rejected by the Court.

If Plaintiffs raise circumstances about Evernote pre-dating this lawsuit, this cannot be considered spoliation. First, it is undisputed that Plaintiffs have the content at issue already in their possession. (Defs.' Sur-Reply 7, ECF No. 99-4.) Second, Plaintiffs have already subpoenaed Evernote, and have received metadata and relevant documents from Evernote. Third, the circumstances pre-dated the filing of this lawsuit. (Lemarié Decl. ¶ 10, ECF No. 72-6.) Thus, Lemarié has not exhibited any conduct like that seen in *Brocade* or *Lifetouch*. Without demonstrating (or even raising) any spoliation or discovery misconduct, Plaintiffs are not entitled to production of any forensic images. Plaintiffs' recent interrogatory also demonstrates that Plaintiffs have alternative mechanisms to discover information relating to their speculations. (Ex. C at Rog. No. 7.)

3. Plaintiffs' request is unduly burdensome and far from being narrowly tailored. Lemarié identified numerous electronic devices and accounts in response to Plaintiffs' interrogatories. Plaintiffs' motion seeks production of forensic images of "all personal electronic devices, online storage accounts, and documents and things stored thereon that Defendant Lemarié used or had access to during the time of his employment at Cloudmark LLC," and this request for relief is particularly burdensome in view of the numerous devices and accounts, and the nature of the same. As noted above, this request would encompass devices that are used for family purposes, a device that now belongs to his son (and is used for college), implicating his family's and son's privacy concerns. Indeed, this motion implicates privacy issues that prohibit the requested production. *See Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 U.S. Dist. LEXIS 181037, at *53 (N.D. Cal. Oct. 22, 2018); *see also Tingle v. Hebert*, No. 15-626-JWD-EWD, 2018 U.S. Dist. LEXIS 60301 (M.D. La. Apr. 10, 2018).

To avoid the improper invasion into Lemarié's private, irrelevant, and/or privileged matters, Defendants respectfully request that the relief requested be denied in its entirety.

Respectfully submitted, */s/ Mackenzie Martin*

## ATTESTATION OF CONCURRENCE

I, Jodie W. Cheng, am the ECF user whose ID and password are being used to file this **JOINT DISCOVERY STATEMENT RE PRODUCTION FROM DEFENDANT LEMARIÉ'S PERSONAL ELECTRONIC DEVICES AND ONLINE STORAGE ACCOUNTS**. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: September 15, 2020                    */s/ Jodie W. Cheng*
                                             Jodie W. Cheng