# EXHIBIT A

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC (RMI)<br><br>**PLAINTIFFS PROOFPOINT, INC. AND CLOUDMARK LLC'S SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT OLIVIER LEMARIÉ (NOS. 31–39)** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively "Plaintiffs") hereby request that Defendant Olivier Lemarié produce for inspection and copying within thirty (30) days hereof the documents set forth below at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 50 California Street, 22nd Floor, San Francisco, California, 94111, or at a place and time as may be agreed to by counsel.

**DEFINITIONS**

Notwithstanding any definition below, each word, term, or phrase used in these Requests are intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. "PROOFPOINT" means Proofpoint, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Proofpoint's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Proofpoint, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Proofpoint.

2. "CLOUDMARK" means Cloudmark LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Cloudmark's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Cloudmark, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Cloudmark.

3. "BIZANGA" means Bizanga Ltd. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Bizanga's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Bizanga, and all predecessors and successors

in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Bizanga.

4. "VSI" means Vade Secure, Incorporated and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and/or Vade Secure, Incorporated's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Vade Secure, Incorporated, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Vade Secure, Incorporated.

5. "VSS" means Vade Secure SASU and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and/or Vade Secure SASU's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Vade Secure SASU, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Vade Secure SASU.

6. "VADE" refers to VSI and VSS, collectively.

7. "MR. LEMARIÉ," "YOU," and "YOUR" shall refer to Defendant Olivier Lemarié.

8. "DEFENDANTS" refers to VADE and Olivier Lemarié, collectively.

9. "DATTO" means Datto, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Datto's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Datto, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Datto.

10. "GENERAL CATALYST" means General Catalyst Partners, LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other

person acting on behalf of any of the foregoing, and General Catalyst's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by General Catalyst, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by General Catalyst.

11. The term "AGREEMENT" means any formal or informal oral, written, or implied contract, arrangement, or understanding between two or more Persons, together with all drafts, modifications, amendments and addenda thereto, whether or not entered into by the parties.

12. "COMMUNICATIONS" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

13. "DOCUMENT" and "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or otherwise recorded material, INCLUDING without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (i.e., SMS messages),

other electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts, Facebook Messenger, and the like.

14. "THING" means any tangible object, other than a DOCUMENT.

15. "PERSON" means to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.  The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

16. "REGARDING," shall mean relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

17. "INCLUDE" and "INCLUDING" shall mean including without limitation.

18. Use of the singular also INCLUDES the plural and vice-versa.

19. "SOURCE CODE" refers to human-readable programming language text that defines or otherwise describes software and firmware.  Source Code further includes the text of any comments, revision histories and associated metadata, formulas, algorithms, logics, engineering specifications, or schematics associated with the foregoing.

20. "FUTURE PRODUCTS" or "FUTURE PRODUCT" refers to product(s) that are not yet released, offered, or marketed for sale to the general public but which are undergoing, or have undergone, product development at any stage.  FUTURE PRODUCT(S) do not exclude products that have been, or are being, offered for sale or use to a limited or restricted set of consumer or end-users.

21. "VADE O365" refers to all versions and releases, including development versions, of the Vade Secure Email Security for Office 365 product, described, *inter alia*, https://www.vadesecure.com/en/dedicated-email-security-for-o365/.   VADE O365 includes version(s) bundled, sold, or marketed with or by third parties, such as the product described at https://www.vadesecure.com/en/vade-secure-and-datto-unveil-joint-bundle-for-msps-that-

combines-office-365-email-security-and-saas-backup/ and https://kb.datto.com/hc/en-us/articles/360029616331-Vade-Secure-for-Office-365-Getting-Started.

22. "MTA" refers to Mail/Message Transfer Agent and/or email gateway software and firmware.

23. "VADE MTA" refers to all versions and releases of Mail/Message Transfer Agent or gateway software developed, marketed, offered for sale, or sold by VADE, including all development versions.

24. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

25. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

26. The term "any" shall include "all" and "all" shall include "any."

## INSTRUCTIONS

The following instructions shall apply to each of the Requests herein:

1. In answering the following Requests, furnish all available information, including information in the possession, custody or control of any of MR. LEMARIÉ's attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents, subsidiaries and PERSONS under MR. LEMARIÉ's control, who have the best knowledge, not merely information known to MR. LEMARIÉ based on his own personal knowledge.

2. If MR. LEMARIÉ cannot fully respond to the following Requests after exercising due diligence to secure the information requested thereby, MR. LEMARIÉ shall so state and shall specify the portion of each Request that cannot be responded to fully and completely.  In the latter event, MR. LEMARIÉ shall state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Request cannot be answered fully and

completely; and state what knowledge, information or belief MR. LEMARIÉ has concerning the unanswered portion of any such Request.

3. All documents must be produced in accordance with the requirements of Federal Rule of Civil Procedure 34(b).

4. Electronic records and computerized information shall be produced in accordance with any applicable ESI order or agreement upon the parties. At minimum, such records and information should be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

5. Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document can be determined.

6. File folders with tabs or labels or directories of files identifying documents shall be produced intact with such documents.

7. Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments and enclosures.

8. If MR. LEMARIÉ's response to a particular Request is a statement that he lacks the ability to comply with that Request, MR. LEMARIÉ shall specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced or stolen, or has never been, or is no longer in his possession, custody or control, in which case MR. LEMARIÉ shall identify the name and address of any person or entity known or believed by MR. LEMARIÉ to have possession, custody or control of that information or category of information.

9. If any information requested is claimed to be privileged or otherwise immune from discovery, provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

a. the basis on which the privilege is claimed;

b. the names and positions of the author of the document and all other persons participating in the preparation of the document;

c. the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

d. the date of the document;

e. a description of any accompanying material transmitted with or attached to such document;

f. the number of pages in such document;

g. the particular Request to which such document is responsive; and

h. whether any business or non-legal matter is contained or discussed in such document.

10. MR. LEMARIÉ's obligation to respond to these Requests is continuing, and their responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS and THINGS referencing or discussing CLOUDMARK, PROOFPOINT, or BIZANGA, or any products or technologies thereof, that are in YOUR possession, custody, and/or control.

**REQUEST FOR PRODUCTION NO. 32:**

DOCUMENTS sufficient to identify electronic computing and storage devices (e.g., desktop computers, laptop computers, tablet computers, PDAs, mobile telephones, USB drives, flash drives, portable hard drives, CD/DVD/Blu-Ray discs, etc.) YOU used during the time YOU were employed by CLOUDMARK, including all personal as well as company-issued devices.

**REQUEST FOR PRODUCTION NO. 33:**

All electronic computing and storage devices (e.g., desktop computers, laptop computers, tablet computers, PDAs, mobile telephones, USB drives, flash drives, portable hard drives, CD/DVD/Blu-Ray discs, etc.) YOU used during the time YOU were employed by CLOUDMARK,

including all personal as well as company-issued devices.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that were or are stored on electronic computing and storage devices (e.g., desktop computers, laptop computers, tablet computers, PDAs, mobile telephones, USB drives, flash drives, portable hard drives, CD/DVD/Blu-Ray discs, etc.) YOU used during the time YOU were employed by CLOUDMARK, including all personal as well as company-issued devices.

**REQUEST FOR PRODUCTION NO. 35:**

DOCUMENTS sufficient to identify online service accounts (e.g., file storage, source code storage and control, software development control, email, cloud computing, task management, note taking/organization, etc.) YOU used during the time YOU were employed by CLOUDMARK, including all personal as well as company-issued accounts.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS relating to online service accounts (e.g., file storage, source code storage and control, software development control, email, cloud computing, task management, note taking/organization, etc.) YOU used during the time YOU were employed by CLOUDMARK, including all personal as well as company-issued accounts.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS stored on online service accounts (e.g., file storage, source code storage and control, software development control, email, cloud computing, task management, note taking/organization, etc.) YOU used during the time YOU were employed by CLOUDMARK, including all personal as well as company-issued accounts.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS and THINGS relating to email filtering, anti-spear phishing, anti-spam, anti-phishing, mail transfer agent, message transfer agent, and related technologies (including without limitation Cloudmark Trident, Cloudmark Authority, Cloudmark Security Platform, Cloudmark's MTA, Bizanga IMP, and Bizanga OOS) created prior to February 1, 2017, or that are derived from or include any portion of a DOCUMENT created prior to February 1, 2017.

**REQUEST FOR PRODUCTION NO. 39:**

      All DOCUMENTS and THINGS relating to YOUR work at Cloudmark.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED:  May 19, 2020 | By */s/ Sean S. Pak* |
| 3 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | Sean S. Pak (SBN 219032) seanpak@quinnemanuel.com |
| 5 | | Iman Lordgooei (SBN 251320) imanlordgooei@quinnemanuel.com |
| 6 | | 50 California Street, 22nd Floor San Francisco, CA 94111 |
| 7 | | Telephone: (415) 875-6600 Facsimile: (415) 875-6700 |
| 8 | | JWC LEGAL |
| 9 | | Jodie W. Cheng (SBN 292330) jwcheng@jwc-legal.com |
| 10 | | One Market Street Spear Tower, 36th Floor |
| 11 | | San Francisco, CA 94105 Telephone: (415) 293-8308 |
| 12 | | |
| 13 | | *Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that I caused copies of the foregoing document to be served on May 19, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Colin H. Murray<br>BAKER & McKENZIE LLP<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA 94111-3802<br>(415) 576-3000<br>colin.murray@bakermckenzie.com | *VIA ELECTRONIC MAIL* |
| Danielle L. Benecke<br>BAKER & McKENZIE LLP<br>600 Hansen Way<br>Palo Alto, CA 94304<br>(650) 856-2400<br>danielle.benecke@bakermckenzie.com | *VIA ELECTRONIC MAIL* |
| Jay F. Utley<br>Mackenzie M. Martin<br>John G. Flaim<br>Chaoxuan Liu<br>Mark Ratway<br>Weldon B. Rankin<br>BAKER & McKENZIE LLP<br>1900 North Pearl Street, Suite 1500<br>Dallas, Texas 75201<br>(214) 978-3000<br>jay.utley@bakermckenzie.com<br>mackenzie.martin@bakermckenzie.com<br>john.flaim@bakermckenzie.com<br>charles.liu@bakermckenzie.com<br>mark.ratway@bakermckenzie.com<br>W.Rankin@bakermckenzie.com | *VIA ELECTRONIC MAIL* |

By: */s/ Joseph LeRoy*
      Joseph LeRoy