# Exhibit C

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>vs.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC-RMI<br><br>**PLAINTIFFS PROOFPOINT, INC. AND CLOUDMARK LLC'S FOURTH SET OF INTERROGATORIES TO DEFENDANT OLIVIER LEMARIÉ (NOS. 6-9)** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Plaintiffs") hereby request that Defendant Olivier Lemarié answer under oath the following Interrogatories within thirty (30) days of service. Additionally, pursuant to Federal Rule of Civil Procedure 26(e), Mr. Lemarié is subject to a duty to timely supplement all responses to these Interrogatories.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Requests are intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. "PROOFPOINT" means Proofpoint, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Proofpoint's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Proofpoint, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Proofpoint.

2. "CLOUDMARK" means Cloudmark LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Cloudmark's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Cloudmark, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Cloudmark.

3. "BIZANGA" means Bizanga Ltd. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and Bizanga's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Bizanga, and all predecessors and successors

in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Bizanga.

4. "VSI" means Vade Secure, Incorporated and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and/or Vade Secure, Incorporated's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Vade Secure, Incorporated, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Vade Secure, Incorporated.

5. "VSS" means Vade Secure SASU and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other person acting on behalf of any of the foregoing, and/or Vade Secure SASU's affiliates, parents, divisions, joint ventures, licensees, franchisees, assignees, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Vade Secure SASU, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Vade Secure SASU.

6. "VADE" refers to VSI and VSS, collectively.

7. "DEFENDANTS" refers to Vade and Olivier Lemarié, collectively.

8. "COMMUNICATIONS" or "COMMUNICATION" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

9. "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or otherwise recorded material, INCLUDING without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office

-2-   CASE NO. 3:19-cv-04238-MMC-RMI
PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO OLIVIER LEMARIÉ

1  memoranda or written communications of any nature, recordings of conversations either in writings
2  or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes, papers, reports,
3  analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets,
4  diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and
5  any differing versions of any of the foregoing, whether so denominated, formal, informal or
6  otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition
7  of handwritten notations or other written or printed matter of any nature, from the original.  The
8  foregoing specifically INCLUDES information stored in a computer database and capable of being
9  generated in documentary form, such as electronic mail, text messages (i.e., SMS messages), other
10 electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts,
11 Facebook Messenger, and the like.

12        10.    "THING" means any tangible object, other than a DOCUMENT.

13        11.    "PERSON" means to any individual, corporation, proprietorship, association, joint
14 venture, company, partnership or other business or legal entity, including governmental bodies and
15 agencies.  The masculine includes the feminine and vice versa; the singular includes the plural and
16 vice versa.

17        12.    "REGARDING," shall mean relating to, referring to, mentioning, reflecting,
18 pertaining to, evidencing, involving, describing, discussing, commenting on, embodying,
19 responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes
20 appropriate.

21        13.    "INCLUDE" and "INCLUDING" shall mean including without limitation.

22        14.    Use of the singular also INCLUDES the plural and vice-versa.

23        15.    The words "or" and "and" shall be read in the conjunctive and in the disjunctive
24 wherever they appear, and neither of these words shall be interpreted to limit the scope of these
25 Requests for Production.

26        16.    "YOU," "YOUR," and "MR. LEMARIÉ" shall refer to Defendant Olivier Lemarié.

27        17.    "FUTURE PRODUCTS" or "FUTURE PRODUCT" refers to product(s) that are not
28 yet released, offered, or marketed for sale to the general public but which are undergoing, or have

undergone, product development at any stage.  FUTURE PRODUCT(S) do not exclude products that have been, or are being, offered for sale or use to a limited or restricted set of consumer or end-users.

18. "SOURCE CODE" refers to human-readable programming language text that defines or otherwise describes software and firmware.  Source Code further includes the text of any comments, revision histories and associated metadata, formulas, algorithms, logics, engineering specifications, or schematics associated with the foregoing.

19. "VADE O365" refers to all versions and releases, including development versions, of the Vade Secure Email Security for Office 365 product, described, *inter alia*, https://www.vadesecure.com/en/dedicated-email-security-for-o365/.  VADE O365 includes version(s) bundled, sold, or marketed with or by third parties, such as the product described at https://www.vadesecure.com/en/vade-secure-and-datto-unveil-joint-bundle-for-msps-that-combines-office-365-email-security-and-saas-backup/ and https://kb.datto.com/hc/en-us/articles/360029616331-Vade-Secure-for-Office-365-Getting-Started.

20. "MTA" refers to Mail/Message Transfer Agent and/or email gateway software and firmware.

21. "VADE MTA" refers to all versions and releases of Mail/Message Transfer Agent or gateway software developed, marketed, offered for sale, or sold by VADE, including all development versions and the "VSS NextGen MTA" described in, *inter alia*, Dkt. 72.

22. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

23. The term "any" shall include "all" and "all" shall include "any."

**INSTRUCTIONS**

The following instructions apply to each interrogatory:

1. In answering the following Interrogatories, furnish all available information, including information in the possession, custody or control of any of MR. LEMARIÉ's attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates,

partnerships, parents, subsidiaries and PERSONS under MR. LEMARIÉ'S control, who have knowledge, not merely information known to MR. LEMARIÉ based on his own personal knowledge.

2. If MR. LEMARIÉ cannot fully respond to the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely; and state what knowledge, information or belief MR. LEMARIÉ has concerning the unanswered portion of any such Interrogatory.

3. If MR. LEMARIÉ's response to a particular Interrogatory is a statement that he lacks the ability to comply with or answer that Interrogatory, MR. LEMARIÉ shall specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced or stolen, or has never been, or is no longer in his possession, custody or control, in which case MR. LEMARIÉ shall identify the name and address of any person or entity known or believed by MR. LEMARIÉ to have possession, custody or control of that information or category of information.

4. If any information requested is claimed to be privileged or otherwise immune or excluded from discovery, provide all information falling within the scope of the Interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

    a. the basis on which the privilege is claimed;

    b. the names and positions of the author of the document and all other persons participating in the preparation of the document;

    c. the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

    d. the date of the document;

   e. a description of any accompanying material transmitted with or attached to such document;

   f. the number of pages in such document;

   g. the particular Interrogatory to which such document is responsive; and

   h. whether any business or non-legal matter is contained or discussed in such document.

5. MR. LEMARIÉ's obligation to respond to these Interrogatories is continuing, and their responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Federal Rule of Civil Procedure 26(e).

## INTERROGATORIES

**INTERROGATORY NO. 6:**

Describe in detail YOUR work on any and all aspects of VADE O365 or VADE MTA from the filing of this lawsuit to the present, INCLUDING each suspension of YOUR work on such products (e.g., as described in Jay Utley's letter to Sean Pak, dated September 11, 2019 ("Defendants on their own initiative voluntarily suspended Mr. Lemarié's work on and involvement with the development of the aspects of Vade's Office 365 product and forthcoming MTA gateway product")), the start and end date (if any) of periods of work and suspensions of work, a description of what aspects of said products YOU worked on, instructions given to YOU CONCERNING each such suspension of work, YOUR compliance with each such suspension, and an identification of all SOURCE CODE contained or referenced in VADE O365 and VADE MTA that YOU used, drafted, or modified during each such period of work and suspension (including all generic or "common" SOURCE CODE).

**INTERROGATORY NO. 7:**

Identify all DOCUMENTS and THINGS (including SOURCE CODE) that are or have been in YOUR possession, custody, or control at any point in time after January 1, 2016, or that YOU otherwise have or had access to at any point in time after January 1, 2016, that were created, written, developed, modified, designed, or authored (i) by PROOFPOINT, CLOUDMARK, and/or BIZANGA; (ii) by any employee of PROOFPOINT, CLOUDMARK, and/or BIZANGA; (iii) by YOU while YOU were employed by CLOUDMARK and/or BIZANGA; or (iv) for use in or in

connection with any PROOFPOINT, CLOUDMARK, and/or BIZANGA product or technology (including, without limitation, Trident and/or Cloudmark Gateway/MTA); INCLUDING at least the following information:

  a. a specific identification of each such DOCUMENT or THING (including SOURCE CODE) by title, author, date, Bates number (if applicable), and all other identifying information (*e.g.*, for SOURCE CODE, the project name, repository name, and/or module name, and the date or version);

  b. all time periods during which YOU had possession, custody, or control, or otherwise had access to each such DOCUMENT or THING;

  c. the location(s) of each such DOCUMENT or THING (including SOURCE CODE) during all periods of time it was in YOUR possession, custody, or control, or otherwise accessible to YOU;

  d. when and how each such DOCUMENT or THING (including SOURCE CODE) came into YOUR possession, custody, or control, or otherwise made accessible to YOU;

  e. to the extent each such DOCUMENT or THING (including SOURCE CODE) is no longer in YOUR possession, custody, or control, or otherwise no longer accessible to YOU, the date it as deleted, destroyed, or otherwise made inaccessible to YOU; and

  f. the complete factual circumstances relating to any deletion, destruction, or loss of access identified in response to (e).

**INTERROGATORY NO. 8:**

Describe in detail the dates and circumstances by which YOU first: a) learned or became aware of any legal dispute or litigation with PROOFPOINT and/or CLOUDMARK; and b) reasonably foresaw a potential legal dispute or the potential of litigation involving YOU and PROOFPOINT and/or CLOUDMARK; INCLUDING but not limited to, an identification of the relevant date(s) and all individual(s) or party/parties involved.

**INTERROGATORY NO. 9:**

Describe in detail the factual and legal bases for each of YOUR defenses (affirmative or otherwise) in this Action, and all other reasons why YOU assert that Plaintiffs' claims should fail,

1  INCLUDING an identification by Bates number of all documents, testimony, and other evidence
2  that supports or refutes each such defense, an identification by name and location of all PERSONS
3  with knowledge CONCERNING each such defense.

5  DATED:  September 8, 2020

By /s/*Sean S. Pak*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*

# CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing document to be served on September 8, 2020, upon the following in the manner indicated:

Colin H. Murray  *VIA ELECTRONIC MAIL*
BAKER & McKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
(415) 576-3000
colin.murray@bakermckenzie.com

Danielle L. Benecke  *VIA ELECTRONIC MAIL*
BAKER & McKENZIE LLP
600 Hansen Way
Palo Alto, CA 94304
(650) 856-2400
danielle.benecke@bakermckenzie.com

Jay F. Utley  *VIA ELECTRONIC MAIL*
Mackenzie M. Martin
John G. Flaim
Chaoxuan Liu
Mark Ratway
Weldon B. Rankin
BAKER & McKENZIE LLP
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
(214) 978-3000
jay.utley@bakermckenzie.com
mackenzie.martin@bakermckenzie.com
john.flaim@bakermckenzie.com
charles.liu@bakermckenzie.com
mark.ratway@bakermckenzie.com
W.Rankin@bakermckenzie.com

By: */s/ Iman Lordgooei*
Iman Lordgooei