Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC (RMI)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS VADE DEFENDANTS' COUNTERCLAIMS (DKT. 226); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing**<br>Date:  N/A (General Order 72-6)<br>Judge:  Hon. Maxine M. Chesney |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiffs PROOFPOINT, INC. and CLOUDMARK LLC, (collectively, "Plaintiffs") by and through their attorneys, will and hereby do move this Court to dismiss Defendants Vade Secure, Incorporated and Vade Secure SASU's (collectively, "Vade") counterclaims (Dkt. 226) pursuant to Federal Rule of Civil Procedure 12 and Civil Local Rule 7. Pursuant to General Order No. 72-6, this motion will be decided on the papers or, if the Court determines a hearing is necessary, heard by telephone or videoconference per the Court's instruction.

Plaintiffs' Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the supporting declaration of Jodie W. Cheng; and accompanying exhibits; all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Plaintiffs may present to the Court.

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     LEGAL STANDARD ..........................................................................................2

        A.      Federal Rule of Civil Procedure 12(b)(6) .............................................2

        B.      Federal Rule of Civil Procedure 12(c) ..................................................3

III.    BACKGROUND ..................................................................................................3

        A.      Plaintiffs' Claims Against Vade Defendants and Defendant Lemarié ....................3

        B.      Vade's First Amended Counterclaims ....................................................5

        C.      Vade's Second Amended Counterclaims ................................................5

IV.     ARGUMENT .......................................................................................................7

        A.      Vade Fails to Allege How This Lawsuit is Not Immunized Under the *Noerr-Pennington* Doctrine ...........................................................................7

                1.      *Noerr-Pennington* Applies to Both Antitrust and Common Law Claims ...................................................................................7

                2.      Vade Fails to Plausibly Invoke the "Sham Litigation" Exception to the *Noerr-Pennington* Doctrine ...............................9

        B.      Vade Fails to Plausibly Plead Section 2 Antitrust Claims ......................11

                3.      Vade Does Not Plausibly Allege a Relevant Product Market ....................12

                4.      Vade Does Not Plausibly Allege Monopoly Power .....................14

                5.      Vade Does Not Allege Harm To Competition ............................15

                6.      Vade Does Plausibly Allege Any Anticompetitive or Predatory Acts .........17

        C.      Vade Fails to Adequately Plead Claims for Defamation, Commercial Disparagement, Intentional Interference, and Unfair Competition .........................22

V.      CONCLUSION ..................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Adobe Sys., Inc. v. Coffee Cup Partners, Inc.*,
No. C 11-2243, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ................ 10

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ................................................ 24

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ............................................... 21

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) ........................................... 21, 22

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ............................................... 16

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich
Legal & Prof'l Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ....................................... 17, 18, 20

*Apple, Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................... 2

*Austin v. McNamara*,
979 F.2d 728 (9th Cir. 1992) ............................................... 16

*BE & K Contr. Co. v. NLRB*,
536 U.S. 516 (2002) .......................................................... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................. 2, 3, 11, 19

*Bennett v. Medtronic, Inc.*,
285 F.3d 801 (9th Cir. 2002) ................................................. 3

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ......................................................... 18

*Brunswick Corp., v. Pueblo Bowl-O-Mat, Inc.*
429 U.S. 477 (1977) ......................................................... 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) .......................................................... 8

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
403 F. Supp. 3d 813 (N.D. Cal. 2019) ......................................... 9

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ................................................ 15

*Coalition for ICANN Transparency, Inc. v. Verisign, Inc.*,
611 F.3d 495 (9th Cir. 2010) ............................................... 11

*CollegeNet, Inc. v. Common Application, Inc.*,
355 F. Supp. 3d 926 (D. Or. 2018) .......................................... 21

*ComputerXpress, Inc. v. Jackson,*
    93 Cal. App. 4th 993 (2001) .................................................................................. 23

*Datel Holdings, Ltd. V. Microsoft Corp.,*
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ...................................................................... 3

*DealDash Ovj v. Contextlogic, Inc.,*
    No. 18-cv-02353, 2018 U.S. Dist. LEXIS 135531 (N.D. Cal. Aug. 10, 2018) ......... 10

*DocMagic, Inc. v. Ellie Mae, Inc.,*
    745 F. Supp 2d 1119 (N.D. Cal. 2010) ................................................................... 15

*Dworkin v. Hustler Magazine, Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ................................................................................... 3

*Eastman Kodak Co. v. Image Technical Servs., Inc.,*
    504 U.S. 451 (1992) ................................................................................................ 14

*Emulex Corp. v. Broadcom Corp.,*
    No. SACV 09-01310, 2010 WL 11595718 (C.D. Cal. June 7, 2010) ...................... 18

*EventMedia Int'l, Inc. v. Time Inc. Magazine Co.,*
    No. 92-cv-0502, 1992 WL 321629 (S.D.N.Y. Oct. 26, 1992) .................................. 19

*FTC v. Qualcomm, Inc.,*
    969 F.3d 974 (9th Cir. 2020) ............................................................................. 21, 22

*Genus Lifesciences Inc. v. Lannett Co., Inc.,*
    378 F. Supp. 3d 823 (N.D. Cal. 2019) .................................................................... 18

*Gonzalez v. Planned Parenthood of Los Angeles,*
    759 F.3d 1112 (9th Cir. 2014) ................................................................................... 2

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018) ........................................................................... 12, 13

*In re Apple iPod iTunes Antitrust Litig.,*
    796 F. Supp. 2d 1137 (N.D. Cal. 2011) ............................................................. 18, 20

*In re German Auto. Manufacturers Antitrust Litig.,*
    2020 WL 1542373 (N.D. Cal. Mar. 31, 2020) ........................................................ 13

*Intergraph Corp. v. Intel Corp.,*
    195 F.3d 1346 (Fed. Cir. 1999) ............................................................................... 14

*Kaplan v. Burroughs Corp.,*
    611 F.2d 286 (9th Cir. 1979) ................................................................................... 16

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ................................................................................... 3

*Kim Laube & Co. v. St. Paul Travelers Indemnity Co. of Connecticut,*
    2008 WL 11336776 (C.D. Cal. July 1, 2008) ......................................................... 22

*Larsen v. Trader Joe's Co.,*
    917 F. Supp. 2d 1019 (N.D. Cal. 2013) .................................................................... 3

*Lee v. Cty of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ..................................................................................... 3

*Liberty Lake Invs., Inc. v. Magnuson,*
    12 F.3d 155 (9th Cir. 1993) ....................................................................................... 9

*Lilith Games (Shanghai) Co. v. uCool, Inc.,*
    No. 15-cv-01267, 2015 WL 4149066 (N.D. Cal. July 9, 2015) ............................... 24

PLAINTIFFS' MOTION TO DISMISS VADE DEFENDANTS' COUNTERCLAIMS

*Lucas Auto. Eng'g Inc. v. Bridgestone/Firestone, Inc.*,
   275 F.3d 762 (9th Cir. 2001) ............................................................................. 12

*Mack v. S. Bay Beer Distribs., Inc.*,
   798 F.2d 1279 (9th Cir. 1986) ............................................................................. 3

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................................... 11

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................ 11, 12

*NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*,
   2017 WL 6059299 (N.D. Cal. Dec. 7, 2017)...................................................... 16

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ............................................................................. 21

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013)............................................................... 11

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ................................................................................. 3

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013)................................................................. 23

*Pool Water Prods. V. Olin Corp.*,
   258 F.3d 1024 (9th Cir. 2001) ............................................................................. 17

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Inc.*,
   508 U.S. 49 (1993) ........................................................................................... 8, 9

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ................................................................................ 12

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
   619 F. Supp. 441 (N.D. Cal. 1985)...................................................................... 15

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................... 14

*Seeling v. Infinity Broadcasting Corp.*,
   97 Cal. App. 4th 798 (2002) ................................................................................ 23

*Simpson Strong-Tie Co. Inc. v. Gore*,
   162 Cal. App. 4th 737 (2008) .............................................................................. 23

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................................. 8

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................... 14

*St. Paul Mercury Ins. Co. v. Tessera, Inc.*,
   908 F. Supp. 2d 1054 (N.D. Cal. 2012)............................................................... 23

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
   373 F.3d 57 (1st Cir. 2004).................................................................................. 21

*Surface Supplied, Inc. v. Kirby Morgan Drive Sys., Inc.*,
   No. C-13-0575, 2013 WL 5496961 (N.D. Cal. Oct. 3, 2013) ............................... 8

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) ............................................................................. 12

PLAINTIFFS' MOTION TO DISMISS VADE DEFENDANTS' COUNTERCLAIMS

*Theme Promotions, Inc v. News Am. Marketing FSI*,
    546 F.3d 991 (9th Cir. 2008) ............................................................................. 8, 9

*Ukiah Automotive Investment v. Mitsubishi Motors of N. Am., Inc.*,
    No. 04-3932, 2005 WL 645960 (N.D. Cal. Mar. 18, 2005) ...................................... 3

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) .............................................................................................. 12

*Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'cns, Inc.*,
    858 F.2d 1075 (5th Cir. 1988) ................................................................................. 8

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .................................................................................. 8

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................. 10

*Wong v. Tai Jing*,
    189 Cal. App. 4th 1354 (2010) ............................................................................... 23

### Statutes

Cal. Bus. and Prof. Code § 17200 ................................................................................. 5

FED. R. CIV. P. 6(b)(1) .................................................................................................. 5

FED. R. CIV. P. 11 ...................................................................................................... 18

FED. R. CIV. P. 12(b)(6) ............................................................................................. 11

FED. R. CIV. P. 12(c) .................................................................................................... 3

### Other Authorities

3 Phillip Areeda & Donald F. Turner, ANTITRUST LAW ¶ 737b (1978).......................... 18

A Report on Consumer Fixed Broadband Performance in the United States," Federal
    Communications Commission (FCC) ....................................................................... 13

Vade Secure Facing the Bitter American Adventure, Les Echos, Aug. 28, 2020 .............. 19, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs[1] filed this case for trade secret misappropriation and breach of contract against Defendants[2] last July and, despite Defendants' dilatory tactics and deficient production, have already uncovered evidence proving Plaintiffs' initial understanding regarding trade secret misappropriation, and further showing that Defendants have also engaged in copyright infringement, including ***verbatim*** copying of Plaintiffs' source code.  Plaintiffs therefore amended their complaint to add a claim of copyright infringement to their initial claims.

Faced with clear evidence of its infringement and misappropriation, Vade has sought to muddy the waters by asserting unmeritorious counterclaims for (1) defamation, (2) commercial disparagement, (3) intentional interference with prospective economic advantage, (4) unfair competition, (5) monopolization, and (6) attempted monopolization.  (Dkt. 226.)  The underlying bases for these claims are this lawsuit itself; alleged statements about this lawsuit that Plaintiffs purportedly made (but did not actually make) to customers, ███████████; and purported ████████████ Plaintiffs entered with customers for their email filter products.  Vade makes these accusations despite the following countervailing and dispositive facts:  (1) this case was clearly brought in good faith (and is substantiated through discovery including literal copying and unauthorized use of Plaintiffs' source code), and (2) Vade successfully took business ***away from*** Plaintiffs ██████ or was near-final in consummating a deal that would replace Plaintiffs' product with Vade's competing product ██████.  Vade's amended counterclaims, however, never address this reality and fails to plead any claim upon which relief may be granted.

As an initial matter, Vade's attempt to impose antitrust, tort, and statutory liability on Plaintiffs for filing this lawsuit (and then purportedly talking about it) is barred by the *Noerr-Pennington* doctrine.  Such conduct is immunized under the law and Vade has not—and cannot—plausibly plead that this lawsuit constitutes "sham litigation" outside of *Noerr-Pennington*

---

[1]   Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC ("Cloudmark") (collectively, "Plaintiffs").

[2]   Defendants Vade Secure, Incorporated; Vade Secure SASU (collectively, "Vade" or "Vade Defendants"); and Olivier Lemarié (collectively with Vade, "Defendants").

protection.  Vade has also failed to plausibly plead a cognizable antitrust violation, at least because (1) its alleged product market is facially and internally incoherent; (2) its conclusion that Plaintiffs have market power is unsupported by well-pled facts or the law; (3) it alleges only harm to itself, rather than to competition as a whole; and (4) the supposed anticompetitive acts (a lawsuit, statements to customers, and "exclusive dealing") are similarly unsupported, and even contradicted by Vade's other allegations.  Finally, Vade's non-antitrust counterclaims similarly fail because Plaintiffs' purported statements to ███████████████, even if they were actually made (which they were not), are all non-actionable opinions and not "provably false."

Vade was caught red-handed stealing Plaintiffs' property.  Plaintiffs' efforts to right that wrong do not give rise to liability, much as Vade would like to shift the focus away from its own wrongdoing.  The counterclaims should be dismissed.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

When considering a motion to dismiss, the court assumes the veracity of "well-pleaded factual allegations"; however, the same assumption does not apply to legal conclusions, even if presented as supposed fact.  *Iqbal*, 556 U.S. at 678-679.  Similarly, the court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences, *e.g.*, *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and the claim must be dismissed.  *Iqbal*, 556 at 679 (quoting FED. R. CIV. P. 8(a)(2)) (quotation marks omitted).

Generally, the court may not consider any materials outside the complaint, in deciding a Rule 12(b)(6) motion.  However, the court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  Additionally, the court may look beyond the pleadings pursuant to a request for judicial notice of matters of public record.  *See, e.g.*, *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 (9th Cir. 2002); *Datel Holdings, Ltd. V. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citing *Lee v. Cty of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

When antitrust claims (such as those Vade now asserts here) are at issue, the Supreme Court and Ninth Circuit are equally clear that the plausibility of such claims is particularly important because discovery in such cases is frequently expensive, and permitting implausible claims to proceed will likely magnify defense costs in an unfair and coercive manner.  *Twombly*, 550 U.S. at 560; *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

**B.**   **Federal Rule of Civil Procedure 12(c)**

Rule 12(c) permits any party to move for judgment on the pleadings "[a]fter the pleadings are closed but early enough not to delay trial."  FED. R. CIV. P. 12(c).  "The legal standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6)."  *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1022 (N.D. Cal. 2013) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); s*ee also Ukiah Automotive Investment v. Mitsubishi Motors of N. Am., Inc.*, No. 04-3932, 2005 WL 645960, at n.1 (N.D. Cal. Mar. 18, 2005) (Chesney, J.).

**III.    BACKGROUND**

**A.  Plaintiffs' Claims Against Vade Defendants and Defendant Lemarié**

On July 23, 2019, Plaintiffs Proofpoint and Cloudmark filed this action in connection with Defendants' unauthorized removal and use of Plaintiffs' confidential and proprietary technical information, including valuable technical trade secrets relating to features and technologies developed by Cloudmark in connection with its Trident and Mail Transfer Agent ("MTA")

technologies. (Dkt. 1.)  While serving in a leadership role at Cloudmark, Defendant Lemarié directly worked on and oversaw Cloudmark's development of these technologies for over a decade.  (*E.g.*, Dkt. 1 ¶¶ 30–35.)  After Lemarié resigned from Cloudmark to join Vade Secure as its Chief Technology Officer, Vade released products with substantially similar technologies to those that Cloudmark developed under Lemarié's oversight. (*E.g.*, *id*. ¶¶ 38–39, 41–42, 44–45.)  Accordingly, Plaintiffs' original Complaint stated claims for trade secret misappropriation under the federal Defend Trade Secrets Act against all Defendants, and for breach of contract against Defendant Lemarié. (Dkt. 1.)

On September 16, 2019, Defendants moved to dismiss Plaintiffs' trade secret misappropriation claim under Rule 12(b)(6).  (Dkt. 29)  Defendants argued that Plaintiffs had not sufficiently identified the asserted trade secrets and failed to plausibly allege misappropriation by any Defendant.  (*Id*.)  On November 5, 2019, the Court denied Defendants' motion to dismiss, finding that (1) "[c]ontrary to defendants' argument, plaintiffs have sufficiently described the alleged trade secrets" and (2) "[c]ontrary to defendants' arguments, plaintiffs have sufficiently alleged facts from which misappropriation reasonably can be inferred, specifically, that, after Lemarié 'voluntarily terminated his employment with Cloudmark,' he began working as the Chief Technology Officer for Vade, and that Vade thereafter began selling a product that 'incorporated' the 'techniques and technology developed previously by Lemarié and his team at Cloudmark." (Dkt. 61 at 1–2 (internal citations omitted).)

Despite Defendants' refusal to produce any discovery for nearly seven months of fact discovery, once Defendants finally began producing documents and source code (which remain deficient to date), Plaintiffs quickly uncovered additional evidence of Defendants' unlawful conduct, including obvious and extensive trade secret misappropriation. (*See, e.g.*, Dkt. 198 at 5–7; *supra* n.5.)  For example, Plaintiffs identified evidence that Defendants not only misappropriated Cloudmark's trade secret technology, but also engaged in copyright infringement, including verbatim copying of Cloudmark's highly confidential and proprietary source code that implements various aspects of the trade secrets and unauthorized use of such code in competing Vade products

1  designed, developed and supervised by Lemarié.  Thus, on September 2, 2020, Plaintiffs amended

2  their complaint to add a claim for copyright infringement.  (Dkt. 219 ¶¶ 110–124.)

3      **B.    Vade's First Amended Counterclaims**

4      On December 9, 2019, Vade filed its First Amended Answer, Affirmative Defenses, and

5  Counterclaims[3], responding to Plaintiffs' original Complaint.  (Dkt. 75.)  At the time, Vade asserted

6  counterclaims for defamation, intentional interference with prospective economic advantage, and

7  unfair competition under Cal. Bus. and Prof. Code § 17200, *et seq*.  (Dkt. 75 at Counterclaims.)

8  Vade alleged, "on information and belief", that Plaintiffs told Vade's actual and potential customers

9  that Vade are not "financially stable . . . will or will likely soon be bankrupt, that this lawsuit covers

10 all of Vade Defendants' products and services, and that this lawsuit will preclude Vade Defendants

11 from being able to provide those products and services to their customers." (*Id.* ¶ 12.)  Vade offered

12 no further detail identifying the "customers and potential customers" to whom Plaintiffs allegedly

13 made such statements, other than the supposed dates of the statements.  (*Id.* ¶¶ 12, 13.)

14     **C.    Vade's Second Amended Counterclaims**

15     On August 14, 2020 (the deadline to amend pleadings), Vade sought to amend its

16 counterclaims to add additional factual allegations for its earlier counterclaims and to add claims

17 for commercial disparagement, monopolization, and attempted monopolization.  (Dkt. 201.)  By

18 stipulation, Vade filed the Second Amended Counterclaims on September 11, 2020.[4]  (Dkt. 226 at

19 Amended Counterclaims (the "Counterclaims").)

20     All six of Vade's counterclaims rely primarily on Plaintiffs' purported statements to two

21 entities: ███████████████.  (Counterclaims ¶¶ 19, 21.)  According to Vade, ███████ had

22 "contracted with Cloudmark for the provision of its e-mail filtering solution," when Vade began

23

24     [3]   Vade filed its original Answer, Affirmative Defenses, and Counterclaims on November 19,
   2019.  The only substantive difference with Vade's First Amended Answer, Affirmative Defenses,

25 and Counterclaims appears to be a correction of the Vade entity that now employs each of the former
   Cloudmark employees.  (*Compare* Dkt. 67 ¶¶ 36, 38 *with* Dkt. 75 ¶¶ 36, 38.)

26     [4]   Per the Court's order, Vade was instructed to file its Second Amended Counterclaims no later
   than September 9, 2020.  (Dkt. 215 ¶ 3.)  But Vade failed to timely file its Second Amended

27 Counterclaims and did not seek leave of Court for its late filing on September 11, 2020.  Because
   the Court's deadline has already passed, Vade should have filed a motion asking the Court to accept

28 late filing, which may be granted only upon a showing of "good cause."  FED. R. CIV. P. 6(b)(1).

1  expanding its presence into the United States.  (*Id.* ¶ 16.)  Around the same time, ███ allegedly

2  approached Vade about its competing email filter product.  (*Id.*)  As an alleged result of those

3  discussions, ███ discontinued using Cloudmark's email filter in October 2018 and, instead,

4  became a Vade customer—**and still is a Vade customer today**.  (*Id.* ¶ 17.)

5       Vade alleges that, in August 2019, Cloudmark employees made statements to ███

6  concerning Plaintiffs' lawsuit against Vade; in particular, which Vade products are or will be within

7  the scope the litigation, as well as the likely effects of the litigation on Vade's financial stability.

8  (*Id.* ¶ 19.)  Vade asserts that ███ invited it to respond to Cloudmark's purported statements,

9  and that it did so (*id.* ¶ 20), but that, as a result of this dispute, "███ upon information and

10  belief, determined to halt all discussions of additional licensing arrangements with Vade Inc." for

11  Vade's MTA product that was (and still is) under development.  (*Id.*)  Vade offers no additional

12  facts suggesting that ███ was ready to consummate a deal with Vade concerning its MTA

13  product, or that Vade's MTA product would or could meet ███ requirements at the time.  (*Id.*)

14       Vade also alleges that Proofpoint made similar statements to ███, with whom, "riding the

15  momentum of the ███ agreement in late 2019, Vade Inc. began discussions . . . in early 2019

16  to provide its e-mail filter solution."  (*Id.* ¶ 21.)  Vade asserts, "[a]t that time, ███ was using

17  Proofpoint," but by June 2019, "███ representative handling the negotiations stated that ███

18  was ready to finalize the agreement that would replace Proofpoint's . . . e-mail filter with Vade

19  Inc.'s e-mail filter product known as Filterd."  (*Id.*)  According to Vade, around the same time,

20  Proofpoint purportedly made forward-looking statements to ███; specifically, that Proofpoint

21  "was bringing suit against the Vade Defendants, and that all of Vade Inc.'s products were developed

22  using Plaintiffs' alleged trade secrets" and "Vade was not financially stable, and that defending this

23  lawsuit would easily bankrupt Vade."  (*Id.* ¶ 22.)  As with ███, Vade alleges that it responded

24  to these statements, but "███ senior executives decided to stop negotiations with Vade Inc.,"

25  supposedly as a result of the purported statements.  (*Id.*)

26       In connection with its monopolization, attempted monopolization, and unfair competition

27  claims, Vade also alleges that, in addition to the purported statements to ███,

28  Proofpoint further engaged in anticompetitive acts by acquiring other companies, filing this lawsuit,

1   and engaging in "long-term" contracts.  (*E.g.*, *id.* ¶ 53.)  Vade, however, does not sufficiently allege

2   that Proofpoint's long-term contracts are exclusive, does not sufficiently allege how this lawsuit is

3   objectively or subjectively baseless, and does not sufficiently allege how any of Proofpoint's

4   acquisitions unfairly lessen competition in a relevant market.  (*See generally id.*)

5       In connection with its antitrust claims, Vade defines the relevant product market as "Tier 1

6   B2C E-Mail Filtering Products."  (*Id.* ¶ 11, *see also id.* ¶ 52 ("Here, the relevant product market

7   consists of e-mail filtering products for Tier 1 B2C ISPs capable of monitoring and filtering at least

8   1 million email accounts at the same time.").)  According to Vade, the relevant consumers in the

9   Market are "Tier 1 B2C Internet Service Providers ('ISPs') that provide at least a million or more

10  e-mail accounts to their customer base in the United States," which purportedly include "Apple,

11  Verizon, and Sprint." (*Id.* ¶ 9.) But Vade does not explain why the alleged market should be defined

12  by its consumers rather than the reasonable interchangeability of the products consumers purchase,

13  nor does it even allege that these three entities constitute the majority (or even a substantial number)

14  of customers in that alleged market.  (*See generally id.* ¶¶ 9–11, 52.)  Furthermore, Vade arbitrarily

15  alleges that the relevant geographic market is limited to the United States, even though Vade alleges

16  that it operates "in various non-U.S. markets."  (*Id.* ¶¶ 11, 52, 59.)

17  **IV.   ARGUMENT**

18      **A.  Vade Fails to Allege How This Lawsuit is Not Immunized Under the *Noerr-**

19          ***Pennington* Doctrine**

20      Vade's antitrust, unfair competition, and tort (intentional interference, defamation, and

21  commercial disparagement) counterclaims are all predicated upon the assertion that Plaintiffs'

22  ongoing lawsuit against Vade, as well as statements about that lawsuit, somehow constitute unlawful

23  conduct.  (*E.g.*, Counterclaims ¶¶ 42, 48, 53–54, 72–73.)  But the *Noerr-Pennington* doctrine

24  immunizes Plaintiffs from such liability, and Vade does not plausibly allege any exception to the

25  doctrine applies here.

26          **1.   *Noerr-Pennington* Applies to Both Antitrust and Common Law Claims**

27      The *Noerr-Pennington* doctrine immunizes from liability those who "use the channels and

28  procedures of state and federal agencies and courts to advocate their causes and points of view

respecting resolution of their business and economic interests vis-à-vis their competitors." *Surface Supplied, Inc. v. Kirby Morgan Drive Sys., Inc.*, No. C-13-0575, 2013 WL 5496961, at *8 (N.D. Cal. Oct. 3, 2013) (Chesney, J.) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972)). Grounded in principles protecting a party's First Amendment right to petition the government for redress of grievances, "[t]he essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from . . . liability for their petitioning conduct." *Theme Promotions, Inc v. News Am. Marketing FSI*, 546 F.3d 991, 1006 (9th Cir. 2008). The doctrine protects conduct incidental to a lawsuit, such as statements about the lawsuit and its implications to customers of a competitor defendant. *Id.* at 1007 (noting that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine," and therefore extending protection to pre-suit letters sent to competitor's customers stating that, if they continued to do business with competitor, they could get embroiled in the plaintiff's and defendant's litigation) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–38 (9th Cir. 2006)); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Inc.*, 508 U.S. 49, 60 (1993).

While the doctrine originates from the antitrust world, the Ninth Circuit is clear that the doctrine extends to other statutory contexts and state/common law tort claims, including claims for tortious interference with prospective economic advantage. *E.g.*, *Theme Promotions, Inc.*, 546 F.3d at 1006–07 ("'There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitution right of petition than can a statutory claim such as antitrust.' We agree, and we hold that the *Noerr-Pennington* doctrine applies to [plaintiff's] state law tortious interference with prospective economic advantage claims.") (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'cns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988)); *see also Sosa*, 437 F.3d at 930) (noting that the Supreme Court has made clear that *Noerr-Pennington* principles 'apply with full force in other statutory contexts' outside antitrust.") (citing *BE & K Contr. Co. v. NLRB*, 536 U.S. 516, 525 (2002)); *White v. Lee*, 227 F.3d 1214, 1236 (9th Cir. 2000) ("As we have discussed, this court has applied the First Amendment rationale of the *Noerr–Pennington* doctrine broadly to claims not involving antitrust law.") (internal quotations and citations omitted); *Cisco Sys., Inc. v.*

*Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 824 (N.D. Cal. 2019) ("In the Ninth Circuit, the Noerr-Pennington doctrine provides immunity from both federal and state statutory and common-law liability.") (citing *Theme Promotions*, 546 F.3d at 1008).

**2.      Vade Fails to Plausibly Invoke the "Sham Litigation" Exception to the**
***Noerr-Pennington* Doctrine**

As the above law makes clear, the default is that Plaintiffs are immune from antitrust, tort, and other statutory liability for bringing this lawsuit and making statements about the lawsuit's scope, *unless* Vade can plausibly plead and establish that those actions fall into an exception to the *Noerr-Pennington* doctrine.  They do not and cannot.

A claimant may avoid *Noerr-Pennington*'s bar by demonstrating that the lawsuit is a "sham." To do so, the plaintiff must meet the Supreme Court's stringent "two-part definition of 'sham' litigation." *Prof'l Real*, 508 U.S. at 61.  "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Theme Promotions*, 546 F.3d at 1007 (citing *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157 (9th Cir. 1993); *Prof'l Real Estate*, 508 U.S. 49).  "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and [a] claim premised on the sham exception must fail." *Prof'l Real Estate*, 508 U.S. at 61.

Only if the lawsuit is objectively baseless may a court analyze the second part of the test: the litigant's subjective motivation. *Id*.  "The question then is 'whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental ***process***—as opposed to the ***outcome*** of that process—as an anticompetitive weapon.'" *Theme Promotions*, 546 F.3d at 1007 (citations omitted) (emphases in original).  Put slightly differently, this "two-tiered process requires the plaintiff to disprove the challenged lawsuit's legal viability before the court will entertain evidence of the suit's economic viability." *Prof'l Real Estate*, 508 U.S. at 61.

Here, Vade has not plausibly pled (and cannot plead) that Plaintiffs' lawsuit or comments about the scope of that lawsuit are objectively baseless, let alone a concealed attempt to interfere with the claimant's business relationships rather than to achieve a legal remedy.  *E.g.*, *Adobe Sys.,*

1   *Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243, 2012 WL 3877783, *8 (N.D. Cal. Sept. 6, 2012)

2   (dismissing antitrust claims under *Noerr-Pennington* on this basis).  This Court already held that

3   Plaintiffs sufficiently pled their original claims and sufficiently disclosed their trade secrets (Dkt.

4   61 (denying Defendants' motion to dismiss); Dkt. 149 at 13–16 (finding Plaintiffs' trade secret

5   disclosure sufficient)).  Plaintiffs have since expanded upon and added to those claims with evidence

6   from Vade's own production, including several portions of Vade's source code that are ***verbatim***

7   ***copies*** of Cloudmark's source code, which should have never been in the possession of Lemarié

8   (and certainly not Vade) after Lemarié terminated his employment with Cloudmark.[5]  (*See, e.g.*,

9   Dkt. 198 at 5–7.)  Cloudmark has never provided its source code to Vade or any other competitor.

10  Furthermore (and tellingly), Vade has not moved for summary judgment on Plaintiffs' trade secret

11  misappropriation claim, despite over a year of litigation.  Were the claims or statements regarding

12  those claims objectively baseless, Vade would have—and could have—shown the Court as much

13  long ago.  But it has not, because it cannot.

14        Nor can Vade plausibly plead objective baselessness of Plaintiffs' lawsuit by stretching the

15  Court's order denying a preliminary injunction (before any discovery had ensued[6]) into a finding

16  that the lawsuit overall is somehow objectively baseless.  (*Id.* ¶ 66.)  Vade's argument makes no

17  sense; a preliminary injunction is an "extraordinary remedy."[7]  That the Court denied Plaintiffs'

18  request on these grounds does not mean the lawsuit is so weak that no reasonable lawyer would

19

---

20        [5]  Plaintiffs have provided over 35 pages of detailed descriptions and evidentiary citations,
    including citations to specific files and portions of Vade's source code, in response to Defendants'
21  interrogatory asking for "the complete factual and legal basis for [Plaintiffs'] claims of trade secret
    misappropriation.  (*E.g.*, Plaintiffs' First and Second Amended Responses to Defendants'
22  Interrogatory No. 10, served Aug. 27, 2020 and Sept. 8, 2020, respectively.)

23        [6]  Vade's counterclaims posit that "[i]f Plaintiffs had any proof to support those allegations, it
    would have appeared during the course of the parties' briefing on [the preliminary injunction]
24  motion."  (Counterclaims ¶ 66.)  Vade, however, ignores that the preliminary injunction briefing
    occurred before any discovery commenced and, in fact, Defendants would further refuse to provide
25  any discovery for nearly seven months into discovery.  (Dkt. 31; Dkt. 198 at 5.)  But now, since
    Vade has begun to produce some documents and source code, Plaintiffs have already found evidence
26  of trade secret misappropriation and copyright infringement.  (*See, e.g.*, Dkt. 198 at 5–7; *supra* n.5.)

27        [7]  *DealDash Ovj v. Contextlogic, Inc.*, No. 18-cv-02353, 2018 U.S. Dist. LEXIS 135531, at *4
28  (N.D. Cal. Aug. 10, 2018) (Chesney, J.) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7.
    24 (2008)).

1    bring it; if the Court held otherwise, as Vade urges, that would lead to the nonsensical result in

2    which every denial of preliminary injunction would render a litigation a "sham."  That clearly is not

3    the case and Plaintiffs are unaware of any precedent suggesting otherwise.

4         Similarly, Vade has not alleged ***any*** facts suggesting that Plaintiffs filed this lawsuit or spoke

5    about it for anticompetitive purposes rather than to vindicate Plaintiffs' legal rights.  Instead, using

6    circular reasoning, Vade posits that, because Plaintiffs' lawsuit allegedly affected Vade's

7    negotiations with ████████████, that itself is "proof" of anticompetitive intent.

8    (Counterclaims ¶¶ 64, 67.)  But Vade's logical fallacy falls well short of the pleading standards

9    required under *Twombly/Iqbal*.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

10   to raise a right to relief above the speculative level.").

11        For these reasons, Vade is unable to plausibly invoke the sham litigation exception, and its

12   antitrust and intentional interference claims—as well as its unfair competition claim to the extent it

13   is premised on this litigation and the statements about it—are barred and should be dismissed for

14   failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).

15   **B.   Vade Fails to Plausibly Plead Section 2 Antitrust Claims**

16        A Section 2 monopolization claim has two elements:  "the possession of monopoly power

17   in the relevant market and . . . the acquisition or perpetuation of this power by illegitimate predatory

18   practices."  *Coalition for ICANN Transparency, Inc. v. Verisign, Inc.*, 611 F.3d 495, 506 (9th Cir.

19   2010).  "[T]o state a claim for attempted monopolization, the plaintiff must allege facts that, if true,

20   will prove:  (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a

21   specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Id.*;

22   *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

23        In order to proceed with its Section 2 claims, Vade must present the Court with well-pleaded

24   allegations of relevant geographic and product markets and market power.  *See Newcal Indus., Inc.*

25   *v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008) ("[A] plaintiff must allege that the defendant

26   has market power within a 'relevant market.'"); *Orchard Supply Hardware LLC v. Home Depot*

27   *USA, Inc.*, 967 F. Supp. 2d 1347, 1358 (N.D. Cal. 2013) (injury to competition requires that the

28   plaintiff "at a minimum, sketch the outline of the antitrust violation with allegations of supporting

1  detail" including "proof of the relevant geographic and product markets and demonstration of the

2  restraint's anticompetitive effects within those markets") (internal quotations and citations omitted).

3  Failure to do so warrants dismissal, even at the pleading stage. *See Newcal*, 513 F.3d at 1045 ("a

4  complaint may be dismissed under Rule 12(b)(6) if the complaint's relevant market definition is

5  facially unsustainable"); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure

6  to identify a relevant market is a proper ground for dismissing a Sherman Act claim." (citation

7  omitted)); *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1195-1200 (N.D. Cal. 2008) (granting

8  motion to dismiss antitrust claims due to faulty product market definition).

9      Vade fails to plausibly allege a relevant market in which Plaintiffs have market power; any

10  harm to competition (as opposed to harm to Vade); nor any anticompetitive acts. Its antitrust claims

11  therefore fail in every respect.

### 3.   <u>Vade Does Not Plausibly Allege a Relevant Product Market</u>

13      A relevant product market consists of "those products to which consumers will turn, given

14  reasonable variations in price," *Lucas Auto. Eng'g Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762,

15  767 (9th Cir. 2001), and is "composed of products that have ***reasonable interchangeability*** for the

16  purposes for which they are produced," *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S.

17  377, 404 (1956) (emphasis added). Where an alleged product market is obviously "not natural,"

18  "artificial," and "contorted to meet their litigation needs," dismissal is appropriate at the complaint

19  stage. *See*, *e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018); *see also Newcal*,

20  513 F.3d at 1045 ("a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant

21  market' definition is facially unsustainable") (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,

22  124 F.3d 430, 436–37 (3d Cir. 1997)).

23      Vade fails this basic task, because its proposed "Tier 1 B2C ISP E-Mail filtering Products"

24  is a nonsensical and arbitrarily defined product market. ***First***, Vade errs primarily by defining the

25  market with respect to consumer type rather than the group of competitors that can take business

26  away from each other. Vade alleges that the email filters at issue here are bespoke products created

27  for a Tier 1 B2C ISP's unique messaging system. (Counterclaims ¶ 10 ("unique e-mail filter

28  products that are customized to fit the ISPs' needs").) In terms of reasonable interchangeability,

Vade offers no explanation why other email filter providers would be unable to scale up or customize filters designed for smaller entities or smaller markets to work for Tier 1 providers. As such, the market definition fails from the start. *See In re German Auto. Manufacturers Antitrust Litig.*, 2020 WL 1542373, at *7 (N.D. Cal. Mar. 31, 2020) (implausible market definition where plaintiffs did not explain why manufacturers of similar vehicles would be unable to take market share away from defendants).

**Second**, although Vade errs in defining the market based on consumer type rather than product interchangeability, even its allegations regarding those consumers are self-defeating and implausible. For example, Vade does not define what constitutes a "Tier 1 B2C ISP," but "Tier 1" internet service providers are those that provide the backbone of the internet; *i.e.*, the cables and other infrastructure that permit users to access the internet.[8] Apple, which Vade alleges is a Tier 1 B2C ISP, may be many things; but, as judicially-noticeable materials make clear, it certainly does **not** provide any networks or internet infrastructure; in fact, common experience is that any user wishing to access the internet via an Apple device must do so **through a separate company**, such Verizon or Sprint.[9] (*But see* Counterclaims ¶ 9.) Vade's allegation that Apple is an ISP similar to these entities defies "judicial experience and common sense," and thus renders the market inherently implausible. *See Hicks*, 897 F.3d at 1121 (dismissing market definition on this basis); *German Auto.*, 2020 WL 1542373, at *7 (same).

Another example is that Vade's antitrust claims center heavily on ████, yet Vade does not allege ████ is a consumer (i.e., a Tier 1 B2C ISP) in the relevant product market. (*See* Counterclaims ¶ 9.) This again underscores the alleged market definition's inherent implausibility;

---

[8]  *See, e.g.*, "Tier 1 ISPs: What They Are and Why They Are Important," Winther, M*., available at* https://www.gin.ntt.net/wp-content/uploads/2020/01/IDC_Tier1_ISPs.pdf at 3 ("Tier 1 ISPs own the operating infrastructure, including the routers and other intermediate devices (e.g., switches) that form the backbone, which is interconnected with other tier 1 ISPs via private peering in a 'settlement-free' interconnection.").

[9]  *See, e.g.*, "A Report on Consumer Fixed Broadband Performance in the United States," Federal Communications Commission (FCC), *available at* https://www.fcc.gov/reports-research/reports/measuring-broadband-america/measuring-fixed-broadband-ninth-report (not listing Apple as an internet service provider); "Does Apple have their own Internet Service Provider?", *available at* https://discussions.apple.com/thread/2369967.

the supposed harm occurred with respect to business from a consumer not even in the purported relevant market. *See Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355–56 (Fed. Cir. 1999) (the alleged harm caused by Intel's conduct was not "in any market relevant to competition with Intergraph"); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (affirming dismissal for lack of allegations of harm to competition in the relevant markets).

### 4.   <u>Vade Does Not Plausibly Allege Monopoly Power</u>

Even if the Court accepts Vade's alleged market definition, it must still plausibly allege Plaintiffs' monopoly power.  "Monopoly power" is the ability of a seller to raise price ***and*** restrict output without losing all sales. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 464 (1992).  Typically, plaintiffs plead the existence of such power circumstantially, with factual allegations that: "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

Vade asserts only two facts supporting its claim that Plaintiffs have monopoly power:  that Plaintiffs have had "anywhere from 62% to over 80% of the Market" for the last three years; and that Proofpoint acquired 19 "e-mail security companies" since 2008.  (Counterclaims ¶¶ 53, 55.)  These allegations do not satisfy Vade's burden to plausibly plead alleged monopoly power.

Addressing the latter point first, with the exception of Cloudmark, Vade does not allege that any of Proofpoint's other acquisitions relate whatsoever to the alleged product market.[10]  (*See, e.g.*, *id.* ¶ 12.)  Given this failure, the allegations regarding Proofpoint's acquisitions provide no insight into the question of Proofpoint's alleged monopoly power.  *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

---

[10]   Proofpoint offers a range of cybersecurity products, many of which are outside Vade's proposed market definition, such as products for mobile messaging security or intended for enterprise customers (as opposed to ISP customers).

1    Next, and more fundamentally, Vade does not accompany its market share allegations with

2    any allegations plausibly establishing significant barriers to *new* entry, or that competitors are

3    unable to increase output in the short run.  (Counterclaims ¶ 12.)  Indeed, Vade alleges that *it* is a

4    new entrant that was able to take business away from Plaintiffs from its first entry into the alleged

5    market.  (*E.g.*, *id.* ¶¶ 16–17.)  Vade also alleges that it was fully capable of increasing its output to

6    take away business from Plaintiffs, and it does *not* allege that the other competitors already in the

7    market are unable to do the same.  (*See generally id.*)

8    Furthermore, the only barriers Vade references in its complaints are Plaintiffs' supposed

9    ███████████████████████.  (Counterclaims ¶¶ 23, 68.)[11]  But "barriers to entry represent the

10   differences faced by new entrants when compared to existing firms," and "a long-term contract does

11   not afford an existing firm any advantage whatsoever over a new entrant," so cannot itself support

12   an inference of monopoly power.  *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 619 F. Supp.

13   441, 456 (N.D. Cal. 1985) (emphasis omitted).  As noted, Vade alleges it was able to enter the

14   market notwithstanding the supposed ████████████, and able to obtain significant business

15   through those efforts, including business from █████.  It is therefore implausible (and inconsistent

16   with its other allegations) for Vade to conclude that Plaintiffs have monopoly power.  *See*

17   *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1139 (N.D. Cal. 2010) (finding no

18   likelihood of monopoly power where plaintiff failed to plausibly allege facts showing barrier to new

19   entry, even if there were hypothetical barriers that might exist).  The antitrust claims thus fail for

20   this reason as well.

21   ### 5.   <u>**Vade Does Not Allege Harm To Competition**</u>

22   To assert a claim under federal antitrust laws, a prospective claimant must have suffered an

23   "antitrust injury," that is, an "injury of the type the antitrust laws were intended to prevent and that

24

25   ──────────────────────

    [11]  Vade also alleges that Plaintiffs' "anticompetitive conduct" has erected barriers to new entry,

26   (*id.* ¶¶ 23, 65, 68, 73) but does not offer a single example beyond ████████████ and Vade-
    specific actions (*i.e.*, this lawsuit and the purported statements to ████████████ regarding the

27   same).  The allegations are therefore conclusory, because they do not connect how alleged actions
    directed to Vade raise barriers to *other* new entrants that compete on the merits rather than by

28   violating Plaintiffs' intellectual property rights.

1   flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-*

2   *Mat, Inc.*, 429 U.S. 477, 489 (1977); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th

3   Cir. 1999) ("A plaintiff may only pursue an antitrust action if it can show '*antitrust* injury' . . . .")

4   (emphasis original).   "The antitrust laws were enacted for the protection of *competition*, not

5   competitors." *Brunswick Corp.*, 429 U.S. at 489 (emphasis added).   Thus, if a plaintiff alleges only

6   individual harm, rather than individual harm flowing from a broader harm to competition, dismissal

7   is appropriate.   *See*, *e.g.*, *NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*, 2017 WL

8   6059299, at *9 (N.D. Cal. Dec. 7, 2017) (dismissing antitrust complaint where "NorthBay does not

9   allege any antitrust injury or harm to competition generally. It alleges injury only to itself.").

10      Here, Vade does not allege injury to competition.   Vade acknowledges there are other

11   competitors in the relevant market than Plaintiffs and itself, and it does not allege how Plaintiffs'

12   supposed anticompetitive acts—even if they were actionable, despite the *Noerr-Pennington*

13   doctrine—harmed those *other* competitors' ability to compete.   Because Vade fails to allege

14   anything to this effect, it fails to allege antitrust injury.   *See*, *e.g.*, *id.*; *see also Austin v. McNamara*,

15   979 F.2d 728, 739 (9th Cir. 1992) ("the *elimination* of a single competitor, standing alone, does not

16   prove anticompetitive effect.") (emphasis original) (quoting *Kaplan v. Burroughs Corp.*, 611 F.2d

17   286, 291 (9th Cir. 1979)).

18      Moreover, Vade's allegations show that it is fully able to compete notwithstanding

19   Plaintiffs' alleged conduct and has taken business away from Plaintiffs.   Specifically, Vade

20   acknowledges that its product displaced Cloudmark's email filter product for ██████, and Vade

21   remains the email filter provider to ██████ to this day. (*See id.* ¶ 17.) Vade implies the competitive

22   injury occurred when ██████ declined to exercise its option to purchase an *additional* product

23   from Vade, its NextGen MTA. (*E.g.*, *id.* ¶ 20.)  But *Vade does not allege that its NextGen MTA is*

24   *an email filtering product*, which Vade self-defines as the relevant product market. (*See id.* ¶¶ 20,

25   52.)  As for Vade's assertion that it was prevented from consummating a near-final contract with

26   ██████ for Vade's email filtering product, Filterd, (*e.g.*, *id.* ¶¶ 43–44), it does not allege that, even if

27   ██████ was an ISP (which it clearly is not, *see supra* at n.8), *other* competitors were foreclosed from

28   obtaining ██████ business.  Just because Vade may have allegedly missed out on certain business

1   does not mean there was a harm to **competition**, particularly when Vade (unlike other competitors)

2   was attempting to compete using products that incorporate Cloudmark's trade secrets and

3   copyrighted source code.  *See Pool Water Prods. V. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001)

4   (finding no antitrust injury because "[a] decrease in one competitor's market share . . . affect

5   competitors, not competition").

6         **6.**     <u>Vade Does Plausibly Allege Any Anticompetitive or Predatory Acts</u>

7         Vade alleges that Plaintiffs engaged in a "scheme" consisting of three categories of alleged

8   anticompetitive acts:  (1) this lawsuit against Vade; (2) purported statements regarding the possible

9   outcomes and scope of this lawsuit; and (3) entering into (non-exclusive) "long-term" contracts.

10   (*E.g.*, Counterclaims ¶ 53.)  But, even accepting Vade's factual allegations as true, none of these

11   acts plausibly rise to the level of anticompetitive or predatory conduct.

12            *a)*  <u>Plaintiffs' lawsuit and statements regarding the same are immune</u>

13         As described *supra*, in Section IV.A, the *Noerr-Pennington* doctrine completely immunizes

14   Plaintiffs from liability for exercising its First Amendment right to petition the court for enforcement

15   of its intellectual property rights, and to discuss that lawsuit.  Therefore, the first two prongs of

16   Plaintiffs' alleged scheme are not actionable.

17            *b)*  <u>Competitors' statements to customers are not actionable except in very</u>

18                 <u>narrow circumstances not present here</u>

19         Even if Plaintiffs were not completely immune to antitrust liability for their alleged

20   statements about this lawsuit and its scope, they still do not give rise to antitrust liability under any

21   viable legal theory.  As a general matter, disparaging or defamatory statements about a competitor

22   rarely give rise to cognizable antitrust claims and any "harmful effects on competitors are ordinarily

23   not significant enough to warrant recognition" under the Sherman Act.  *Am. Prof'l Testing Serv.,*

24   *Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir.

25   1997).  "Even an act of pure malice by one business competitor against another does not, without

26   more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair

27   competition or purport to afford remedies for all torts committed by or against persons engaged in

28   interstate commerce."  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225

1   (1993).  "In the marketplace of ideas, there is competition and competing information.  It is all too

2   easy for losers in the rough-and-tumble of commerce to accuse competitors of spreading false

3   information."  *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 842 (N.D. Cal.

4   2019) (quoting *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002)).)

5   "To rise to the level of an antitrust violation, a competitor's disparaging statement 'must

6   overcome a presumption that the effect on competition' of the statement 'was de minimis.'"  *In re*

7   *Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1145–46 (N.D. Cal. 2011) (quoting

8   *Harcourt Brace*, 108 F.3d at 1152.  To overcome this presumption, the claimant must demonstrate

9   *all* of the following about the statements; that they were "(1) clearly false; (2) clearly material;

10  (3) clearly likely to induce reasonable reliance; and (4) made to buyers without knowledge of the

11  subject matter; (5) continued for prolonged periods; and (6) not readily susceptible of neutralization

12  or other offset by rivals."  *Id*. at 1146.

13  As an initial matter, Vade's biggest problem is that the *Harcourt Brace* exception only

14  applies to "systematic" campaigns of disparagement.  *See Harcourt Brace*, 108 F.3d at 1152 ("buyer

15  distrust . . . should caution us against attaching much weight to isolated examples of

16  disparagement.") (quoting 3 Phillip Areeda & Donald F. Turner, Antitrust Law ¶ 737b (1978)).

17  Vade only identifies two specific instances in which Plaintiffs allegedly made the statements in

18  question, which is clearly insufficient to establish a "systematic" disparagement campaign

19  warranting antitrust scrutiny.  *See*, *e.g.*, *Emulex Corp. v. Broadcom Corp.*, No. SACV 09-01310,

20  2010 WL 11595718, at *6 (C.D. Cal. June 7, 2010) (sporadic and isolated statements over seven-

21  month period "not the sort of sustained or systematic campaign capable of significantly affecting

22  competition").  Vade tries to get around this problem by making an unsubstantiated assertion that

23  "Plaintiffs have continued to make such statements to ███████ to this day" (which Plaintiffs not

24  only deny but also question Vade's factual basis for making such an assertion in the first place).  (*Id.*

25  ¶ 19); *see* Fed. R. Civ. P. 11. But this speculative allegation fails to satisfy the specificity required

26  for a defamation-based claim such as this, and therefore fails as a matter of law.  *Emulex*, 2010 WL

27  11595718, at *6 (defamation-based "must stand on the statements actually alleged, and cannot be

28

1   propped up by allegations of secret statements of which [the plaintiff] admits no knowledge") (citing

2   *Twombly*, 550 U.S. at 557).

3        Next, and in any event, Vade has failed to plead any plausible facts that would overcome

4   this presumption and show any antitrust violation.  According to Vade, Plaintiffs purportedly made

5   statements regarding not-yet-resolved litigation; specifically, that "(1) all of Vade's products are at

6   issue in this suit, (2) that Vade will not be able to provide products or services to ████ going

7   forward, and that (3) Vade was not financially stable."  (Counterclaims ¶ 20.)  But not only has Vade

8   failed to plead facts that would show these purported statements rise to the level of an antitrust

9   violation, it is virtually impossible for Vade to do so.

10       Vade does not allege how the supposed disparaging or defamatory statements—which, even

11  if made (which they were not), are self-evidently beliefs or predictions regarding the outcome of

12  ongoing and unresolved litigation—were "clearly false" at the time they were purportedly made or

13  even now.  For example, alleged statements that "Vade could not withstand defending this lawsuit

14  and would be bankrupt in the near term" are, on their face, forward-looking opinions that are at least

15  equally likely to be true as they are to be false.  (Counterclaims ¶ 21); *EventMedia Int'l, Inc. v. Time*

16  *Inc. Magazine Co.*, No. 92-cv-0502, 1992 WL 321629, at *4 (S.D.N.Y. Oct. 26, 1992) ("[T]he mere

17  dissemination of unflattering opinion or information about a competitor, unaccompanied by

18  misstatements of fact, simply does not amount to a violation of the antitrust laws.") (citation

19  omitted).[12]

20       Nor has Vade alleged any facts demonstrating that Plaintiffs' purported statements are

21  "clearly material" to, or "clearly likely to induce reasonable reliance" from, the ISP customers.  In

22  fact, Vade's allegations contradict any possible materiality or reliance on the purported statements.

23  For example, Vade repeatedly states that ████ "has no interest in the outcome of this litigation."

---

[12]  In fact, public statements from Vade indicate the apparent truth of the alleged statements.
(*E.g.*, Vade Secure Facing the Bitter American Adventure, Les Echos, Aug. 28, 2020, *available at*
https://www.lesechos.fr/tech-medias/hightech/vade-secure-face-a-lamere-aventure-americaine-
1237431, (interview with Georges Lotigier, Vade SASU CEO and majority shareholder, describing,
*inter alia*, needing to mobilize over 10 million in debt financing within two weeks and describing
legal expenditures).)

1   (*E.g.*, Counterclaims ¶¶ 22, 64 ("▮▮▮▮ had zero interest in the outcome of this lawsuit").)  In any

2   event, the "Tier 1 B2C ISPs" that Vade defines as the relevant customers (Apple, Verizon, and

3   Sprint (*id.* ¶ 9)) are unquestionably sophisticated consumers that have the resources and know-how

4   to make independent assessments regarding ongoing litigation, without needing to rely on purported

5   party statements.  This is especially true when considering most filings in this case are publicly

6   available and that, according to Vade, there were "millions of dollars in licensing fees" at stake in a

7   single transaction.  (*See, e.g.*, *id.* ¶ 37 ("▮▮▮▮ business . . . would have resulted in millions of

8   dollars in licensing fees to the Vade Defendants.").)  Thus, even if Plaintiffs made the alleged

9   statements (which they did not), Vade has not and cannot plead plausible facts to show the

10  statements were "made to buyers without knowledge of the subject matter."

11      Moreover, rather than showing the alleged statements were "not readily susceptible of

12  neutralization or other offset by rivals," Vade's allegations demonstrate the opposite.  That is,

13  Vade's counterclaims describe how ▮▮▮▮▮▮▮▮ invited Vade to respond to purported

14  statements by Plaintiffs, and that Vade in fact did so.  (*E.g.*, *id.* ¶¶ 20 ("When asked about these

15  allegations, Vade Inc. explained that they were false, and that there would be no material impact of

16  the sham litigation to its business."), 22 ("Vade Inc. tried to explain to ▮▮▮ that such statements

17  were patently untrue . . . .").)  Whether Vade's attempts to neutralize Plaintiffs' purported

18  statements were successful is beside the point; instead, it is determinative that, according to Vade's

19  allegations, even it considered the statements susceptible to neutralization.  (*Id.*); *see Am. Prof'l

20  Testing Serv.*, 108 F.3d at 1152 ("The argument that its neutralization efforts were not completely

21  successful is unavailing; the test refers to 'susceptible to neutralization' not 'successful in

22  neutralization.'").

23      Vade has thus failed to plead facts plausibly suggesting they can overcome all six *Harcourt

24  Brace* factors and avoid the presumption of legality for Plaintiffs' statements.  *See In re Apple iPod

25  iTunes Antitrust Litig.*, 796 F. Supp. 2d at 1145–46 (citation omitted).

26          c)   *Vade does not plausibly allege exclusive dealing*

27      "Exclusive dealing involves an agreement between a vendor and a buyer that prevents the

28  buyer from purchasing a given good from any other vendor."  *Allied Orthopedic Appliances Inc. v.*

1   *Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010); *see also FTC v. Qualcomm, Inc.*, 969

2   F.3d 974, 1003 (9th Cir. 2020). An exclusive contract violates the Sherman "only if its effect is to

3   'foreclose competition in a substantial share of the line of commerce affected.'" *Allied Orthopedic*,

4   592 F.3d at 996 (citing *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997);

5   *Qualcomm, Inc.*, 969 F.3d at 1005. A plaintiff fails to plausibly allege exclusive dealing if (a) there

6   are no actual exclusive deals, and/or (b) they do not allege that the exclusive deals foreclose access

7   to at least 30–40% of the relevant market. *See CollegeNet, Inc. v. Common Application, Inc.*, 355

8   F. Supp. 3d 926, 952 (D. Or. 2018) (for exclusive dealing, "foreclosure levels are unlikely to be of

9   concern where they are less than 30 or 40 percent.") (quoting *Stop & Shop Supermarket Co. v. Blue*

10  *Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004)).

11       Vade fails to plausibly establish any of these requirements. First, beyond two conclusory

12  references to "exclusive" contracts, (*see* Counterclaims ¶¶ 53, 57), Vade does not allege that access

13  to all or even a substantial portion of the market is ***actually*** foreclosed through such contracts. (*See*

14  *generally id.*) To this point, Vade does not allege that any potential customers have indicated they

15  are unable to do business with Vade due to their contracts with Plaintiffs; nor does it allege that such

16  customers prefer to contract with a single email filter provider at a time. *See Aerotec Int'l, Inc. v.*

17  *Honeywell Int'l, Inc.*, 836 F.3d 1171, 1182 (9th Cir. 2016) (an exclusive dealing claim fails if the

18  plaintiff does not establish that the contracts were actually exclusive, rather than ones that offered

19  customers enticing deals).

20       But, even if Vade were correct about the exclusive nature of Plaintiffs' contracts (which it

21  is not), its allegations regarding ███████████ ***contradict*** any purported anticompetitive effect

22  stemming from those contracts. For example, Vade alleges that it successfully displaced Cloudmark

23  as ████████ email filter provider, despite ████████ preexisting contract with Cloudmark. (*E.g.*,

24  *id.* ¶¶ 16–17.) Similarly, Vade alleges that "████ was ready to finalize the agreement that would

25  replace Proofpoint's [] e-mail filter with Vade Inc's e-mail filter product known as Filterd," with no

26  mention of any hindrance or prohibition caused by Proofpoint's contracts. (*E.g.*, *id.* ¶ 21.) The only

27  reasonable inference from these allegations is that, even if the contracts were exclusive, they were

28  easily terminable as a legal matter and did not actually foreclose competition. *Cf. Allied Orthopedic*

*Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010) ("The easy terminability of an exclusive dealing arrangement negates substantially its potential to foreclose competition.") (internal quotations and citations omitted).

In fact, contrary to any purported competitive harm, Vade's factual allegations describe a competitive market in which opportunities for participants are not at all significantly or substantially limited by any contracts.  (*Compare id.* ¶¶ 16–17 ("Vade's efforts to interject competition in the Market met with initial promise" and it obtained ███████ business), 21 ("In particular, riding the momentum of the ████ agreement in late 2018, Vade Inc. began discussions with ███ in early 2019 to provide its e-mail filter solution.  At that time, ████ was using Proofpoint") *with* ¶¶ 20, 37.)  At bottom, the acts that Vade complains foreclosed it from further market growth are this lawsuit and the statements regarding the same (which are immunized), not the contracts themselves. That is, Vade has failed to plead facts that would show Proofpoint's ***contracts***—as opposed to its immunized lawsuit and supposed statements—had "the actual or practical effect of substantially foreclosing competition" in the market.  *See, e.g.*, *Qualcomm*, 969 F.3d at 1004–05 (finding agreements at issue "did not have the actual or practical effect of substantially foreclosing competition in the CDMA modem chip market" where "[competitor] Intel won Apple's business ***the very next year***") (emphasis original).

### C.   Vade Fails to Adequately Plead Claims for Defamation, Commercial Disparagement, Intentional Interference, and Unfair Competition

In addition to its antitrust claims, Vade also alleges that Plaintiffs' supposed statements to ████████████████ render them liable for defamation, intentional interference, and unfair competition, based on the unsubstantiated conclusion[13] that the purported statements are "provably false."  *See, e.g., Kim Laube & Co. v. St. Paul Travelers Indemnity Co. of Connecticut*, 2008 WL 11336776, *4 (C.D. Cal. July 1, 2008) ("It is axiomatic that, in order to give rise to liability, the publication in question must be "provably false.") (quoting *Simpson Strong-Tie Co. Inc. v. Gore*,

---

[13]   Notably, after nearly one year of discovery and 10 months since Vade first asserted (bald) counterclaims (*see* Dkt. 67), Vade's Counterclaims still rely wholly "upon information and belief" and fail to cite even a single exhibit or substantiating document.

1   162 Cal. App. 4th 737. 766 (2008)); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946

2   F. Supp. 2d 957, 971 (N.D. Cal. 2013) ("[A] plaintiff may state a defamation claim that survives

3   First Amendment challenge by presenting 'evidence of a statement of fact that is provably false.'

4   'The critical question is . . . whether a reasonable fact finder could conclude the published statement

5   declares or implies a provably false assertion of fact.'") (quoting *Seeling v. Infinity Broadcasting*

6   *Corp.*, 97 Cal. App. 4th 798, 809 (2002); *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1370 (2010)).

7          Most critically, "the rule is well established that the expression of an opinion does not

8   constitute an actionable cause of action for defamation." *See Piping Rock Partners*, 946 F. Supp.

9   2d at 971 (N.D. Cal. 2013); *see also St. Paul Mercury Ins. Co. v. Tessera, Inc.*, 908 F. Supp. 2d

10  1054, 1060 (N.D. Cal. 2012) ("Disparagement liability . . . requires that the accused made a

11  'publication' that was 'a false assertion of fact, not an opinion.'") (quoting *ComputerXpress, Inc. v.*

12  *Jackson*, 93 Cal. App. 4th 993, 1010–11 (2001).  Accordingly, dismissal is appropriate on the

13  defamation claim, as well the intentional interference and unfair competition claims that rely on the

14  supposed defamation as a predicate act, (*see* Counterclaims ¶¶ 46, 47–48), if the only allegedly

15  defamatory statements were opinions.

16         Here, even assuming, *arguendo*, that Plaintiffs made the purported statements (which they

17  did not) ***and*** that the statements—which are about petitioning activity—are not immunized by the

18  *Noerr-Pennington* doctrine, they nevertheless are clearly, non-actionable opinions.  Specifically,

19  Plaintiffs' purportedly defamatory, disparaging, and false statements relate to (1) Vade's financial

20  stability and propensity for bankruptcy related to Plaintiffs' lawsuit against Vade (*e.g.*,

21  Counterclaims ¶¶ 26(a)–(c), 34(a)–(c), 42, 48); and (2) the products at issue in Proofpoint's lawsuit

22  against Vade (*e.g.*, *id.* ¶¶ 26(d)–(f); 34(d)–(f), 42, 48).  As to the first category, not only has Vade

23  failed to plead facts to support the falsity of the purported statements and any knowledge of falsity

24  by Plaintiffs, Vade's public statements suggest the purported statements are ***likely true***.[14]

25

26  _____

27  [14]   *E.g.*, "Vade Secure Facing the Bitter American Adventure," Les Echos, Aug. 28, 2020, *available at* https://www.lesechos.fr/tech-medias/hightech/vade-secure-face-a-lamere-aventure-americaine-1237431, (interview with Georges Lotigier, Vade CEO and majority shareholder, describing, *inter alia*, Vade's (1) need to mobilize over 10 million euros in debt financing on short

28

1  Predictions, particularly by a competitor that does not purport to have inside knowledge, are self-

2  evidently opinions and therefore not actionable.

3      With the second category, Vade similarly fails to plead any facts that would demonstrate it

4  is untrue that "[a]ll of Vade's e-mail filter products were developed using Plaintiffs' alleged trade

5  secrets"; all of Vade's products has been or will be implicated in the lawsuit; or that Vade will not

6  be able to provide any products to customers.  (*Id.* ¶¶ 26(d)–(f); 34(d)–(f), 42, 48.)  That is because

7  Plaintiffs' lawsuit is ongoing and Plaintiffs continue to uncover further evidence of Vade and

8  Defendant Lemarié's misappropriation and infringement (of which Vade is fully aware [15] ),

9  particularly given Lemarié role as the Chief Technology Officer of Vade.  Additionally, contrary to

10  Vade's allegations, Plaintiffs' lawsuit implicates any and all of Vade's products that evince

11  misappropriation or infringement of Plaintiffs' asserted trade secrets and copyrights.  *See, e.g., Lilith*

12  *Games (Shanghai) Co. v. uCool, Inc.*, No. 15-cv-01267, 2015 WL 4149066, at *3 (N.D. Cal. July

13  9, 2015) (trade secret disclosure, i.e., the asserted trade secrets, defines the scope of discovery in

14  case for trade secret misappropriation and are to be liberally construed) (citing *Advanced Modular*

15  *Sputtering, Inc. v. Superior Court*, 132 Cal. App.  4th 826. 835 (2005)).

16      As the above discussion indicates, it is obvious from the face of the complaint that Vade

17  invokes statements that were not false at the time they were purportedly made.  Thus, even if Vade

18  could prove Plaintiffs made these statements (which they did not), it fails to state plausible claims

19  for defamation, commercial disparagement, intentional interference, and unfair competition based

20  on those statements.

21  **V.    CONCLUSION**

22      For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Vade's

23  counterclaims for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6);

24  or, alternatively, grant a judgment on the pleadings dismissing Vade's counterclaims, pursuant to

25  Rule 12(c).  Additionally, the Court should decline to grant Vade leave to amend its counterclaims

26

27  notice; (2) lowered growth and recruiting objectives; and (3) enormous legal costs, in the order of
    half million euros per month).

28      [15]   *Supra* n.5.

because Vade's factual allegations contradict the existence of any cognizable claim and/or lack any factual basis, and, thus, any amendment will prove futile.

DATED:  September 18, 2020                    Respectfully Submitted,


                                              By /s/ Sean S. Pak

                                              QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
                                              Sean S. Pak (SBN 219032)
                                              seanpak@quinnemanuel.com
                                              Iman Lordgooei (SBN 251320)
                                              imanlordgooei@quinnemanuel.com
                                              50 California Street, 22nd Floor
                                              San Francisco, CA 94111
                                              Telephone: (415) 875-6600
                                              Facsimile: (415) 875-6700

                                              JWC LEGAL
                                              Jodie W. Cheng (SBN 292330)
                                              jwcheng@jwc-legal.com
                                              One Market Street
                                              Spear Tower, 36th Floor
                                              San Francisco, CA 94105
                                              Telephone: (415) 293-8308

                                              *Attorneys for Plaintiffs Proofpoint, Inc. and*
                                              *Cloudmark LLC*