Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC (RMI)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL SOURCE CODE PRINTOUTS PURSUANT TO PROTECTIVE ORDER (DKT. 117) ¶¶ 6, 9(D)**<br><br>Judge: Hon. Maxine M. Chesney<br>Hearing: N/A (General Order No. 72-6) |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Plaintiffs" or "Proofpoint") hereby move for an order compelling Defendants Vade Secure, Incorporated and Vade Secure SASU (collectively, "Defendants" or "Vade") to produce portions of source code designated for printout under the procedures set forth in the Protective Order in this action (Dkt. 117). Plaintiffs originally proposed to Defendants that the parties file a joint letter brief on source code printout issues pursuant to Paragraph 13 of Magistrate Judge Illman's Standing Order. However, Defendants' position was that the dispute should be resolved through a motion under Civil L.R. 7 pursuant to the terms of the Protective Order. Accordingly, Plaintiffs bring this Motion pursuant to Civil L.R. 7 and the dispute resolution procedures set forth in the Protective Order at ¶¶ 6 and 9(d).

Plaintiffs respectfully request the Court order Defendants to produce within five (5) days of the Court's order printed copies of all portions of Defendants' source code designated by Plaintiffs' experts by identifying in writing to Defendants', for each source code portion, the source code repository, commit hash, commit date, filename, and line range.

Plaintiffs further request the Court order Defendants to produce within five (5) days of the Court's order an electronic copy of the metadata relating to Defendants' source code designated by Plaintiffs' experts by identifying in writing to Defendants' the source code repositories for which metadata is requested, and the metadata fields to be produced for each repository.

Plaintiffs' Motion is based on this Notice of Motion and Motion, the following memorandum of points and authorities, the supporting declarations of Iman Lordgooei and accompanying exhibits, all matters on which the Court may take judicial notice, all other pleadings on file in this action, and any other written or oral argument that Plaintiffs may present to the Court.

This Motion is made following a conference of the parties' lead counsel, which took place on September 8, 2020.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. PROCEDURAL AND FACTUAL BACKGROUND ............................................................ 2

III. ARGUMENT ......................................................................................................................... 6

   A. Plaintiffs' Requests for Source Code Printouts Are Reasonable .......................................... 6

   B. Plaintiffs' Requested Metadata Is Not Source Code ........................................................... 10

IV. CONCLUSION ................................................................................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Civil L.R. 7 and the terms of the Protective Order (Dkt. 117) at ¶¶ 6 and 9(d), Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Plaintiffs" or "Proofpoint") respectfully submit the following memorandum of points and authorities in support of their Motion to Compel Defendants Vade Secure, Incorporated and Vade Secure SASU (collectively, "Defendants" or "Vade") to produce source code printouts in response to designations provided by Plaintiffs' experts in this action.

**I.    INTRODUCTION**

Despite Plaintiffs' discovery requests served October 10, 2019 and the Court's January 31, 2020 order compelling production, Defendants did not produce source code for inspection in this case until June 15, 2020. Plaintiffs' experts inspected Vade's source code for the majority of the subsequent six weeks. While Defendants' source code production remains incomplete and deficient,[1] after just four weeks of inspections of Vade's code, Plaintiffs' experts had already designated a number of highly relevant files on the source code review computer for printing but that represented a small fraction of the total number of files produced for inspection. Plaintiffs' experts also designated for production certain non-source code metadata relating to the source code contained in the source code repositories made available for inspection. Such metadata identifies dates when certain source code files were edited and the name(s) of the individual(s) that edited the files, for example. All of the designated printouts and metadata are highly pertinent to issues in this case and reasonably necessary to demonstrate misappropriation of Plaintiffs' asserted trade secrets, as explained in the Declaration of Seth Nielson filed herewith (Ex. B). Indeed, Plaintiffs recently served an interrogatory response setting forth a detailed description and identification of Defendants' source code and documents that evidence Defendants' misappropriation of Plaintiffs' trade secrets—including most of the source code

---

[1] Since as early as June 25th, Plaintiffs have been requesting that Defendants produce numerous source code files, modules, and entire repositories missing from Defendants' source code production. Defendants have thus far refused to remedy the majority of these deficiencies and make a fulsome production of missing source code. These deficiencies reached an impasse during the conference of the parties' lead counsel, and Plaintiffs intend to file a separate motion on this issue.

files designated for printing.

Nevertheless, Defendants have objected to the overwhelming majority of Plaintiffs' requests for printed copies of designated source code files based on the volume of the requests, without any indication of why they believe the roughly 450 pages of source code printouts in dispute—which represent a small percentage ▓▓▓▓▓ of the source code files provided for inspection—are overbroad, unduly burdensome, or not reasonably necessary for Plaintiffs' preparation of their case. Defendants have also objected to producing **all** of the designated metadata, contending that the metadata constitutes source code under the Protective Order, despite repeatedly acknowledging that such metadata is not source code.

To date, Defendants have not identified (and Plaintiffs are not aware of) any case law denying requests for source code printouts based solely on volume of the requests, particularly where, as here, the Protective Order does not specify any numerical limits on the volume of printouts a party may request. Nor have Defendants identified any case law holding that metadata constitutes source code or should otherwise be governed by source code provisions in a Protective Order, particularly where, as here, metadata is not included in the definition of source code set forth in the Protective Order.

Accordingly, Plaintiffs' motion to compel should be granted and Defendants be ordered to produce the highly relevant source code printouts and the metadata designated by Plaintiffs.[2]

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Protective Order in this action provides, in relevant part, that a Receiving Party (in this case, Proofpoint) may request printed copies of limited portions of relevant source code:

> [A] Receiving Party may request paper copies of limited portions of Source Code ('Source Code Printouts') that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the Source Code other than electronically as set forth in paragraph (c) in the first instance.

---

[2] The requested non-source code metadata is also responsive to a number of requests for production in Plaintiffs first set of discovery requests—all of which were the subject of this Court's order compelling production back in April (Dkt. 149). Accordingly, in view of Defendants' failure to comply with the Court's order compelling disclosure, Plaintiffs are also concurrently filing a motion to enforce production of the non-source code metadata.

Dkt. 117 at 15 (¶9(d)).  "Source Code" is defined as:

> computer code including human-readable programming language text that defines or otherwise describes software and firmware in C, C++, Go or GoLang, BREW, Java, and any other human-readable programming language, as well as the text of included comments and revision histories associated with any of the foregoing.

*Id.* at 2 (¶2.4).

The Protective Order also permits a Producing Party (in this case, Vade) to "challenge the amount of Source Code Printouts pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the 'Challenging Party' and the Receiving Party is the 'Designating Party' for purposes of dispute resolution." *Id*. at 15 (¶9(d)).  Paragraph 6 of the Protective Order describes the notice and meet and confer prerequisites before filing a motion relating to a source code printout dispute:

> **Meet and Confer**. The Challenging Party [i.e., Vade] shall initiate the dispute resolution process by providing written notice of each [Source Code Printout] it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to [Source Code Printouts] is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party [i.e., Vade] must explain the basis for its belief that the [Source Code Printout] was not proper and must give the Designating Party [i.e., Proofpoint] an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party [i.e., Vade] may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party [i.e., Proofpoint] is unwilling to participate in the meet and confer process in a timely manner.

*Id.* at 8 (¶6.2).  If the parties are unable to resolve the dispute, the Receiving Party "shall file and serve a motion … under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier." *Id.* at 8 (¶6.3).

Between July 20 and 31, 2020, during their inspections of the source code review computer, Plaintiffs' experts made PDF printouts of portions of the source code—as well as other, non-source

code data, including "Read Me" text files and metadata—for identification to Defendants, who could then provide physical printouts of the same according to the procedure set forth in ¶ 9 of the Protective Order.  On the last day, Plaintiffs' counsel contacted Defendants' counsel to notify Defendants and request physical printouts of the source code and non-source code data designated by Plaintiffs' experts and stored in a folder on the source code review computer.  Ex. A at 11.

On August 6, 2020, Defendants' counsel responded to Plaintiffs' request by objecting to the volume of Plaintiffs' request for printouts of approximately 1,000 pages of Defendants' source code and non-source code data.  *Id*. at 10.  Under the dispute resolution procedures set forth in Paragraph 6.2 of the Protective Order, Defendants were required to describe the basis for the challenge when they initially objected to Plaintiffs' requests for printouts.  Dkt. 117 at 8 (¶6.2).  Here, Defendants identified the volume of the source code printouts as the sole basis for their challenge.  Ex. A at 10.

The parties continued to exchange correspondence regarding the dispute between August 10-19, and met and conferred on August 20, 2020 regarding the same, leading to further correspondence on August 24-26, and a lead counsel meet and confer on August 27, 2020.  *Id*. at 1-9; Lordgooei Decl. ¶10.  During the meet and confer process, Defendants never argued that the *substance* of the source code that Plaintiffs designated for printing was irrelevant or otherwise not reasonably necessary for Plaintiffs' preparation of their case.  Instead, Defendants focused on the number of lines and pages, and the identification of entire files for printing.  Defendants also contended that Plaintiffs' manner of designation—by generating ready-for-printing PDFs containing the requested source code and non-source code data—was not proper, despite the fact that the Protective Order expressly provides that the Receiving Party may request printouts by notifying the Producing Party that "printouts *have been made* or designated."  Dkt. 117 at 15 (¶9(d)).

On August 27, 2020, Defendants proposed, and Plaintiffs agreed, to a compromise that attempted to avoid the need for motion practice.  Ex. C.  Pursuant to the compromise, Plaintiffs agreed that they would withdraw their original designations, and Defendants would withdraw their corresponding objections.  Plaintiffs would then re-designate their requests by providing a written identification of each portion of source code to be printed (*i.e.*, by identifying the source code repository, file name, version information, and line range for printing).  Plaintiffs would also identify

the source code repositories for which metadata was requested, and the metadata fields requested for those repositories.  Defendants indicated that they would reconsider their prior objections based on their review of Plaintiffs' interrogatory response setting forth the bases for Plaintiffs' claims of trade secret misappropriation and identifying relevant source code evidence.  Defendants also agreed to provide any objections within seven days of Plaintiffs' re-designation, and to meet and confer regarding any objections within those same seven days.

On September 1, 2020, Plaintiffs' expert inspected the source code review computer and generated the written designations of source code and metadata.  *See* Ex. B ¶16.  Those designations were then provided by Defendants to Plaintiffs as a written record of the requests.  *See* Ex. D.

On September 8, 2020, one hour before the parties' scheduled lead counsel meet and confer regarding other discovery disputes, Defendants e-mailed Plaintiffs indicating that they continue to object to the majority of requested source code printouts.  *See* Ex. E.  Defendants agreed to produce 31 pages of requested printouts—corresponding to the files identified in Plaintiffs' newly-added copyright infringement claim, as well as several non-source code "read me" files—but objected to all remaining requests.  Defendants eventually agreed to (and did) produce printed copies of all requested versions of the files identified in Plaintiffs' copyright infringement claim, as well as all requested "read me" files, amounting to just 23 of the 133 requested printouts, and totaling 54 printed pages. *See* Ex. F; *see also* Ex. B ¶17.

The remaining 110 requested printouts, which Defendants presently challenge, include approximately 450 pages of source code highly relevant to Plaintiffs' trade secret claims, as explained in the accompanying declaration of Plaintiffs' expert, Dr. Seth Nielson.  Ex. B ¶¶9-14, 18-19.  Defendants also raised a new objection to providing copies of source code printouts to counsel of record who did not personally travel to Defendants' counsel's offices to inspect the source code review computer.  *See* Ex. E.  Finally, Defendants refused to produce any of the designated metadata, claiming that the metadata constitutes "revision history information" that qualifies as source code

under the Protective Order.³ The parties discussed Defendants new objections the same day during a scheduled conference of lead counsel, but were unable to resolve the dispute.

## III. ARGUMENT

### A. Plaintiffs' Requests for Source Code Printouts Are Reasonable

The source code printouts requested by Plaintiffs are directly relevant to the claims at issue in this action, are not being used for purposes of reviewing Vade's code in the first instance, and are highly targeted in view of the overall volume of Vade source code made available for inspection. Accordingly, Defendants cannot withhold their production by asserting a blanket objection based on the volume of the requested printouts, without any further explanation.

As explained by Plaintiffs expert, Dr. Seth Nielson, who reviewed and designated the requested portions of source code for printing, the requested source code printouts represent a small percentage ████████ of the source code files provided for inspection, and are all directly relevant to the claims at issue in this action because they demonstrate the use of Plaintiffs' trade secrets in Defendants' source code—evidence that is critical to Plaintiffs' trade secret claims. In his declaration, Dr. Nielson explains that all of the source code files designated for printing are those he identified as "reasonably necessary to show the use of Proofpoint's asserted trade secrets in the Vade source code." Ex. B ¶9. The requested printouts include "the specific functions that use Proofpoint's trade secrets, as well as related code necessary to understand the context and usage of those functions within Vade's products." *Id.* In addition, because ████████████████████████████████, it was not practical for Dr. Nielson to designate less than the entire file for printing; and for longer files, Dr. Nielson reviewed the entire file and determined that all or nearly all of the source code contained in the file is reasonably necessary to show Defendants' use of Plaintiffs' trade secrets. *Id.* at ¶19. All of the files designated by Dr. Nielson are identified and relied upon in Plaintiffs' interrogatory

---

³ Defendants also argued that certain source code files included in Plaintiffs' requests for source code printout were not expressly identified in Plaintiffs' interrogatory response setting forth the factual bases for Plaintiffs' trade secret claims. The omission of those source code files was inadvertent, and Plaintiffs have since served an amended and supplemental response that links each source code file designated for printing with one or more of Plaintiffs' asserted trade secrets. Ex. F.

response setting forth the factual bases supporting their claims of trade secret misappropriation, and will be reasonably necessary for preparation of Plaintiffs' case, including for drafting discovery disclosures and expert reports, depositions, and as evidence for summary judgment and/or trial. Accordingly, each of the designated source code files is relevant and reasonably necessary to Plaintiff's claims. Defendants have not, and cannot, prove otherwise.

In view of Dr. Nielson's representations and Plaintiffs' contentions, Defendants cannot plausibly contend that the requested source code printouts are sought for an improper purpose, such as for the purpose of reviewing the source code in the first instance in paper form, rather than electronically on the source code computer. Indeed, By Defendants' own admission, Plaintiffs' experts have already spent ***over 300 hours*** inspecting source code; and Plaintiffs' experts had not designated any source code for printing until the third week of inspection, after they had already located specific evidence of misappropriation of Plaintiffs' trade secrets. Although Defendants have objected to providing source code printouts to individuals who have not personally inspected the source code computer (in particular, outside counsel of record), the Protective Order does not require each individual who receives source code printouts to first inspect the same code on the source code review computer. Rather, the Protective Order only prohibits requests intended "for the purposes of reviewing the Source Code other than electronically … ***in the first instance***." Dkt. 117 at 5 (¶9(d)). Here, Dr. Nielson and other experts reviewed the source code in the first instance on the source code review computer and determined that the requested printouts are highly relevant and reasonably necessary to Plaintiffs' claims. Plaintiffs are not required to schedule separate source code inspections for every additional individual who may need access to printouts of the same source code, such as for deposition prep.

Importantly, to date, Defendants have not articulated any objection to the ***substance*** of the source code that Plaintiffs have designated for printing. That is, Defendants have not identified any specific designated source code files (or portions of files) that they contend are irrelevant or otherwise not reasonably necessary for Plaintiffs' claims, nor have they provided any substantive basis to challenge any of Plaintiffs' designations. Rather, Defendants' objections are merely directed to the volume of source code printouts requested—*i.e.*, the number of lines and number of pages, as well as

the designation of entire files.  The Protective Order, however, ***does not place any numerical limits*** on source code printouts, and ***does not prohibit printing a complete file***.  Indeed, numerical limits on source code printouts would not be reasonable in this case: the amount of relevant source code depends entirely on the extent of Defendants' misappropriation of Plaintiffs' trade secrets and copyrighted source code, and Plaintiffs should not be prevented from presenting the complete evidentiary bases for their claims due to artificial and arbitrary limitations on printing.  Restrictions against printing complete files are similarly inappropriate here where, as Dr. Nielson has explained, the designated source code files are relevant in their entirety as evidence of Defendants' use of Plaintiffs' trade secrets.  *See* Ex. B ¶19.

During the meet and confer process, Defendants relied on *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO (LB), 2018 U.S. Dist. LEXIS 85255, at *7 (N.D. Cal. May 21, 2018) and *Imageware Sys. v. Fulcrum Biometrics, LLC*, No. 13-CV-936-DMS(JMA), 2014 U.S. Dist. LEXIS 193601, at *2-4 (S.D. Cal. Nov. 25, 2014) to support their refusal to provide the requested printouts on the basis of volume.  However, neither decision sustained an objection to source code printouts on the basis of volume alone.  In *Synopsys*, the Court denied a request for printed copies of source code, because the plaintiffs supported their request based solely on the declaration of an expert that had never previously reviewed the source code, and thus could not competently declare that the requested printouts were reasonably necessary.  Accordingly, the Court concluded the source code printouts were requested in order to avoid electronic review in the first instance.  *Synopsys* is, therefore, clearly inapposite, as Dr. Nielson has personally spent days and weeks reviewing Defendants source code before identifying relevant source code files for printing.

Similarly, in *Imageware*, the defendants objected to the requested printouts based on the substance of the request, not the volume.  In particular, the defendants argued that the objected-to requests contained the entirety of their "secret sauce" algorithm, and that only a small subset of that algorithm was relevant to the plaintiffs' claims—a point that was not disputed by the plaintiffs.  Here, however, Defendants have not articulated any objection to the substance of Plaintiffs' requests, and Plaintiffs have explained that the entirety of the requested source code—which represents only a small portion of the source code available on the source code review computer—is relevant to Plaintiffs'

claims.

The facts here more closely resemble those in *Multimedia Patent Trust v. DirectTV, Inc.*, Civ. No. 09cv0278-H (CAB), ECF No. 462 at 3 (S.D. Cal. Aug. 24, 2011), in which the Court denied a challenge to source code printouts where "[o]ther than the volume of materials selected," the producing party did not rebut the representation that the requested printouts were reasonably necessary. In that case, the plaintiff requested to print 67 out of 85 source code provided for inspection by a third party, explaining that the files represent distinct independent hardware modules that cross-reference other structures, functions, etc., and cannot be understood or read without reference to the other portions of the module in the file." *Id.* at 2. The third party objected, contending that the request constitutes "wholesale printing" of the source code contrary to the protective order entered in that case. *Id.* The Court disagreed, finding that the plaintiff's representations regarding the need for the source code were sufficient, and the third party's objection to the volume of materials alone was improper. Like the plaintiff in *Multimedia Patent Trust*, Plaintiffs here have demonstrated that the requested source code print outs are reasonably necessary, and Defendants to date have not meaningfully challenged Plaintiffs' bases for requesting the designated source code.

Defendants have alternatively argued that printing complete source code files is prohibited under the holding in *Digital Reg of Tex., LLC v. Adobe Systems*, No. CV 12-01971-CW (KAW), 2013 U.S. Dist. LEXIS 23447, at 22-23 (N.D. Cal. Feb. 20, 2013). But *Digital Reg* contains no such blanket holding—rather, that decision once again turned on the substance of the requests. The defendants in *Digital Reg* objected to printouts of 14 complete files because those files contained hundreds of functions spanning 200 pages of source code, but only a small number of those functions were at issue in the case. The defendants agreed to provide printouts for the functions at issue, but the plaintiffs insisted that the entire file was necessary with no further explanation. By contrast, Plaintiffs here have primarily requested printouts of small files with narrow scope, and have only requested printouts of complete larger files after determining that that all or nearly all of the functions in that file are relevant to their claims. *See* Ex. B ¶ 19. In addition, like the plaintiffs in *Multimedia Patent Trust*, Plaintiffs' trade secret claims in this case are directed, at least in part, to a "unified architecture" that

uses certain techniques for detecting malicious e-mail of various types. *See, e.g.*, Dkt. 219 ¶¶32, 60. Accordingly, Plaintiffs require source code describing the architecture of Defendants' products, and not merely isolated functions within a file that relate to a particular feature. Ex. B ¶18.

The unique circumstances presented in this case—in which depositions will be conducted electronically and remotely—further necessitate Plaintiffs' access to printouts of complete source code files and not limited to excerpts. In view of the pandemic, and because many of Defendants' knowledgeable witnesses are located in France, Defendants' source code witnesses will likely have to be deposed remotely. In addition, to date, Defendants have not agreed to make a source code review computer available for use with those witnesses during deposition; thus, Plaintiffs may be forced to question the witnesses based on the printed copies of the source code. These witnesses are unlikely to be able to meaningfully answer questions regarding the source code if presented with only limited excerpts of a file, without the benefit of other related functions, header information, and similar context provided within the same source code file.[4] Thus, printed copies of complete files are reasonably necessary in order for Plaintiffs to meaningfully depose Defendants' witnesses regarding the source code.

### B.   Plaintiffs' Requested Metadata Is Not Source Code

During the parties' first lead counsel meet and confer regarding source code, on August 27, 2020, Defendants indicated that they would be willing to produce metadata stored in source code repositories through normal discovery, but objected to producing the PDF printouts of that metadata generated by Plaintiffs' experts. At that time, Plaintiffs expressly asked Defendants if they contend that such metadata constitutes source code under the Protective Order, and Defendants represented that if the metadata does not include excerpts of the source code files, but is limited to information such as author names, dates of changes, and similar information, such metadata is not source code. *See* Lordgooei Decl. ¶10. As part of the parties' proposed compromise, Plaintiffs agreed to designate

---

[4] For this reason, Plaintiffs are still seeking an agreement from Defendants to provide a source code review computer for use by relevant deponents, which may result in further motion practice. Nevertheless, at a minimum, complete source code printouts are necessary for purposes of these depositions.

the metadata to be produced for each source code repository at issue, so that Defendants could utilize industry standard tools to export and produce the raw metadata in readable form.

Rather than produce the requested metadata as agreed, Defendants now contend that the metadata is itself source code and subject to the printing requirements of Paragraph 9(d). Defendants' claim lacks merit. The Protective Order defines Source Code to mean "computer code" such as "human-readable programming language text that defines or otherwise describes software and firmware," not metadata containing information such as dates when the source code was modified and the names of individuals who edited the code. Defendants rely on the inclusion of "revision histories" in the definition of Source Code, but "revision histories" is a term of art that refers to earlier versions of source code maintained in the source code repository (*i.e.*, the historical versions of the source code), not metadata that does not itself contain any source code. See Ex. B ¶20. Indeed, courts have acknowledged that metadata and revision histories are different types of information. *See, e.g.*, *Wi-Lan Inc. v. Sharp Elecs. Corp.*, C.A. No. 15-379-LPS, ECF No. 487 at 8 (D. Del. Feb. 14, 2019) (separately classifying "metadata" and "revision histories" relating to source code).

Defendants have not identified any authority to support their position that metadata information is included in the definition of Source Code or is otherwise governed by the source code printing provisions of the Protective Order. To the contrary, Defendants have implicitly conceded that metadata relating to source code—including at least source code file names, paths, and "hash" values and dates corresponding to changes to the source code—does not constitute source code, as that information was included in Plaintiffs' request for source code printouts, which Defendants produced subject to a lesser confidentiality designation. See Ex. D. Accordingly, Defendants cannot maintain their assertion that metadata relating to source code in itself constitutes source code, and may be withheld pursuant to the source code printing provisions of the Protective Order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be granted, and the Court should order Defendants to produce the source code printouts and metadata designated by Plaintiffs (*see supra*, n.2).

DATED: September 18, 2020

Respectfully Submitted,

By /s/ Sean S. Pak

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*