Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
**JWC LEGAL**
One Market Plaza, Suite 3600
San Francisco, California 94105
Telephone: (415) 293-8308

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC <br><br> Plaintiffs, <br><br> v. <br><br> VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ <br><br> Defendants. | CASE NO. 3:19-cv-04238-MMC (RMI) <br><br> **PLAINTIFFS' MOTION TO ENFORCE THE COURT'S JANUARY 31, 2020 AND APRIL 20, 2020 ORDERS (DKTS. 112, 149)** <br><br> <u>Hearing</u> <br> Judge:  Hon. Maxine M. Chesney <br> Date:   N/A (General Order 72-6) |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs PROOFPOINT, INC. and CLOUDMARK LLC will and hereby do move for an order to enforce the Court's Orders issued on January 31 and April 20, 2020 (Dkts. 112, 149) (the "Discovery Orders") in connection with Defendants VADE SECURE, INCORPORATED; VADE SECURE SASU; and OLIVIER LEMARIÉ's violations of the Discovery Orders.  Plaintiffs bring this Motion pursuant to Civil Local Rules 7-2 (as modified by General Order 72-6), 7-8, and 37-4, and Federal Rule of Civil Procedure 37.

Plaintiffs' Motion is based on this Notice of Motion and Motion; the following memorandum of points and authorities; the supporting declaration of Jodie Cheng and accompanying exhibits; all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Plaintiff may present to the Court.

This Motion is made following the conferences of counsel pursuant to Civil Local Rule 37-1(a), which took place on at least September 8, 2020.

## RELIEF REQUESTED

Plaintiffs seek an Order enforcing the Court's January 31 and April 20, 2020 Orders and ordering that Defendants make a complete production of source code and metadata logs responsive to Plaintiffs' First Sets of Requests for Production available for inspection within 5 days of resolution of this Motion.  Additionally, Plaintiffs also seek appropriate sanctions for Defendants' past and ongoing violations of the Court's Orders.  Plaintiffs also respectfully request that the Court grant (1) an award of reasonable fees and costs associated with bringing this motion, including the attorney time and resources Plaintiffs spent communicating and conferring with Defendants in an attempt to seek their compliance without involving the Court; (2) a recommendation that Defendants be held in civil contempt; and (3) coercive sanctions against Defendants to encourage compliance with the Court's Discovery Orders.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARDS ......................................................................................... 2

III.    FACTUAL BACKGROUND ................................................................................ 2

IV.     ARGUMENT ........................................................................................................ 7

      a.   Plaintiffs Are Entitled to an Award of Reasonable Fees and Costs
          Associated with Defendants' Violation of the Court's Orders .................................. 7

             i.    Defendants Willfully Violated the Court's January and April Orders ........... 7

             ii.   Defendants' Violations Were Neither Inadvertent Nor Substantially
                  Justified ............................................................................................................. 9

      b.   Defendants Should Be Held in Civil Contempt for Their Continuing
          Violation of the Court's Orders ............................................................................. 15

      c.   Defendants' Continuing Willful Violation of the Court's Orders
          Necessitates Coercive Sanctions ........................................................................... 16

V.      CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Albertson*,
No. 10-cv-04787, 2012 WL 1636064 (N.D. Cal. May 9, 2012) ........................ 2

*Advanced Microtherm, Inc. v. Norman Wright Mech.*,
No. C 04-2266, 2010 WL 10133699 (N.D. Cal. Sept. 22, 2010).................... 3, 4

*Aylus Networks, Inv. v. Apple Inc.*,
No. 3:13-cv-4700-EMC, Dkt. 44 (N.D. Cal. Apr. 7, 2014) ........................... 11

*Bollow v. Federal Reserve Bank of San Francisco*,
650 F.2d 1093 (9th Cir. 1981) ....................................................... 7

*Cuviello v. Feld Ent. Inc.*,
No. 5:13-cv-03135, 2015 WL 877688 (N.D. Cal. Feb. 27, 2015) ...................... 2, 7, 15-17

*Hanni v. Am. Airlines, Inc.*,
No. C-08-00732, 2009 WL 1505286 (N.D. Cal. May 27, 2009) ........................ 3

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
No. 19-mc-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ...................... *passim*

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 643 (9th Cir. 1993) ....................................................... 2, 16

*LegalForce RAPC Worldwide P.C. v. Demassa*,
No. 18-cv-00043-MMC, 2019 WL 5395038 (N.D. Cal. Oct. 22, 2019) ........................... 7

*Liew v. Breen*,
640 F.2d 1046 (9th Cir. 1981) ..................................................... 7

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
No. 15-CV-01267-SC, 2015 WL 4149066 (N.D. Cal. July 9, 2015).............................. 11

*Oracle Am. v. Google, Inc.*,
No. C-10-03561, 2011 WL 3794892 (N.D. Cal. Aug. 26, 2011)........................ 3

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992)...................................................... 2, 16

*Vendavo, Inc. v. Price f(x) AG*,
No. 17-cv-06930, 2019 WL 4394402 (N.D. Cal. Nov. 5, 2018) ...................... 14

*Wells Fargo Bank, N.A. v. Iny*,
No. 2:13-cv-01561, 2014 WL 1796216 (D. Nev. May 6, 2014)........................ 12

*Woods v. Google, Inc.*,
No. C11-01263-EJD-HRL, 2014 U.S. Dist. LEXIS 113149 (N.D. Cal. Aug. 8, 2014)................................................................................. 9

**<u>Rules and Regulations</u>**

Fed. R. Civ. P. 7(b)(1) .................................................................................................. 13

Fed. R. Civ. P. 37(b)(2) .................................................................................................. 7

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................ 2

Fed. R. Civ. P. 37(b)(2)(C) .................................................................................. 2, 7, 9, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Discovery in this action opened on October 9, 2019.  Since then, Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Plaintiffs") have repeatedly urged Defendants Vade Secure, Incorporated ("VSI"), Vade Secure SASU ("VSS"), and Olivier Lemarié (collectively, "Defendants") to comply with their discovery obligations, including through numerous communications, conferences, and motions.  (*See, e.g.*, Dkts. 78, 91, 127, 128.)  Indeed, this Court has **twice** ordered Defendants to produce documents and respond to interrogatories (Dkts. 112, 149).  Yet, Defendants did not produce their first document in this case until May 22, 2020—more than a month after the Court's order (Dkt. 149).  And even now, ***nearly five months*** since the Court's last order compelling discovery, Plaintiffs have discovered Defendants are still withholding relevant materials in violation of the order.  Specifically, Defendants have neither provided a complete set of source code for inspection, nor produced responsive metadata information that logs relevant information regarding who modified Defendants' source code and when.  Rather, Defendants have improperly produced only the source code that they have deemed as relevant to Plaintiffs' claims— namely, code for the "anti-spear phishing engine and the interface" for their Vade O365 product, and their Vade Mail Transfer Agent ("MTA") product—but have withheld unknown amounts of other code that could contain Plaintiffs' trade secrets and copyrights at issue in this case, which extend beyond just anti-spear phishing and MTA functionality.  Defendants have also refused to produce the metadata based on a specious argument that, since the metadata is kept in a database and not in an output file format, they are not obligated to produce the metadata.  There is no justification for Defendants' past and ongoing violations of the Court's Orders.  Plaintiffs are, thus, forced to bring the instant motion to enforce the Orders that required Defendants to provide long ago their complete discovery responsive to Plaintiffs' first set of requests for production.

Additionally, consistent with prior orders in this District, Plaintiffs also hereby seek sanctions pursuant to Federal Rule of Civil Procedure 37(b), including (1) an award of reasonable fees and costs associated with bringing this motion, including attorney time and resources spent communicating and conferring with Defendants to seek their compliance without involving the

1    Court; (2) a recommendation that Defendants be held in civil contempt; and (3) coercive sanctions

2    against Defendants to encourage compliance with the Court's outstanding discovery orders.

3    **II.    LEGAL STANDARDS**

4          "A basic rule of our legal system is that when courts issue orders, parties follow.  This case

5    raises the question whether this rule applies to all parties, or only some.  The answer should be

6    obvious—no party is above the orders of the court."  *Cuviello v. Feld Ent. Inc.*, No. 5:13-cv-03135,

7    2015 WL 877688, at *1 (N.D. Cal. Feb. 27, 2015) (hereafter, "*Cuviello*").

8          When a party fails to comply with discovery orders, Federal Rule of Civil Procedure 37(b)

9    provides for a variety of sanctions.  While some of these sanctions are discretionary, under Rule

10   37(b)(2)(C), "the court **must** 'order the disobedient party, the attorney advising that party, or both

11   to pay the reasonable expenses, including attorney's fees, caused by the failure . . . .'"  *Cuviello* at

12   *1 (citing FED. R. CIV. P. 37(b)(2)(C); *Adams v. Albertson*, No. 10-cv-04787, 2012 WL 1636064, at

13   *1 (N.D. Cal. May 9, 2012)) (emphasis added).  This mandatory sanction may be avoided only if

14   the violating party can show its "failure was substantially justified or other circumstances make an

15   award of expenses unjust."  FED. R. CIV. P. 37(b)(2)(C); *see also Cuviello* at *1; *Hainan* at *2.

16         Rule 37(b) also authorizes the court to impose other sanctions, including holding the

17   violating party in civil contempt and issuing coercive sanctions.  FED. R. CIV. P. 37(b)(2)(A);

18   *Cuviello* at *3; *HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL

19   1643786, at *2, 5 (N.D. Cal. Apr. 2, 2020).  "Civil contempt consists of a party's disobedience to a

20   specific and definite court order by failure to take all reasonable steps within the party's power to

21   comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 643, 695 (9th Cir.

22   1993).  Coercive sanctions are also appropriate "to coerce the contemnor to comply with the court's

23   orders in the future, and the sanction is conditioned upon continued noncompliance."  *Richmark*

24   *Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992).

25   **III.    FACTUAL BACKGROUND**

26         Plaintiffs served their first set of discovery requests in this action on October 10, 2019.

27   (Dkts. 91-1, 91-2, 91-3.)  On December 13, 2019, after months of delay and non-production by the

28

1    Defendants, Plaintiffs were forced to seek relief from the Court and, thus, filed a Motion to Compel

2    Production of Documents and Interrogatory Responses. (Dkt. 78; *see also* Dkt. 91.)

3          On January 31, 2020, the Court issued an order granting Plaintiffs' Motion to Compel and

4    requiring Defendants to produce responsive documents and information within fourteen (14) days—

5    *i.e.*, by February 14. (Dkt. 112 at 4 (the "January Order"); Dkt. 78 at 29.) The same day, Plaintiffs

6    requested an inspection of Defendants' source code. (Ex. 1 at 15.) Defendants, however, did not

7    comply with the January Order and, instead, took the position that they did not need to comply while

8    they "assess[ed] the order" and contemplated filing objections to and moving for reconsideration

9    and a stay of the order. (*E.g.*, Ex. 1 at 3 ("As we have told you repeatedly, we are considering these

10   issues with our client, which Defendants have the right to do at least under FRCP 72. Once we have

11   made a determination of how to proceed, we will inform you on or before February 14th.").)

12   Plaintiffs urged Defendants to comply, explaining and citing clear precedent that there is no

13   automatic stay of a court order pending a party's internal discussions or decision-making, or by

14   virtue of objections filed under Rule 72. (Ex. 1 at 1 (citing *Oracle Am. v. Google, Inc.*, No. C-10-

15   03561, 2011 WL 3794892, at *5 n.7 (N.D. Cal. Aug. 26, 2011) ("[T]he filing of objections to a

16   magistrate judge's order on a non-dispositive matter does not stay the order's operation.");

17   *Advanced Microtherm, Inc. v. Norman Wright Mech.*, No. C 04-2266, 2010 WL 10133699, at *1–2

18   (N.D. Cal. Sept. 22, 2010); *Hanni v. Am. Airlines, Inc.*, No. C-08-00732, 2009 WL 1505286, at *3–

19   4 (N.D. Cal. May 27, 2009)).)

20         Nevertheless, on the last day to comply with the January Order, Defendants filed motions

21   for relief from and reconsideration of the January Order, and a motion to stay pending resolution

22   thereof. (Dkts. 121-123.) The stay was not granted until a month later, on March 11, during which

23   time Defendants did not comply with the January Order. (Dkt. 132.) Accordingly, from February

24   14 to March 11, 2020, Defendants were in violation of the January Order.

25         Additionally, on February 26, 2020—more than four months after Plaintiffs served their first

26   sets of discovery requests—Defendants raised an objection based on the sufficiency of Plaintiffs'

27   trade secret disclosure in this case. (Dkt. 156-2.) On March 30, 2020, the Parties filed a joint

28

1   discovery letter brief, wherein Defendants sought a protective order from discovery pending

2   resolution of their objections to Plaintiffs' trade secret disclosure.  (Dkt. 145.)

3          On April 20, 2020, the Court issued an order denying Defendants' motion for reconsideration

4   of the January Order, denying Defendants' request for a protective order, and lifting the stay on

5   discovery.  (Dkt. 149 (the "April Order").)   Thus, Defendants were again required to produce

6   documents and information responsive to Plaintiffs' discovery requests within fourteen (14) days—

7   *i.e.*, by May 4.[1]  (Dkt. 149 at 12–13; Dkt. 112 at 4; Dkt. 78 at 29.)  As with the January Order,

8   Plaintiffs promptly contacted Defendants to confirm they would comply with the April Order and

9   make a timely production by May 4.  (*E.g.*, Ex. 2.)  Plaintiffs also sought to meet and confer with

10  Defendants on a protocol for review of the source code requested by Plaintiffs' First Set of Requests

11  for Production and ordered for production under the April Order.  (*Id.*; *see also* Ex. 3 at 1 (May 8,

12  2020 email again asking Defendants' counsel to meet and confer on source code review protocol).)

13         Yet again, within days of the Order, Defendants made clear they had no intention of

14  complying.  Instead, Defendants held to the belief that their obligation to comply with the April

15  Order was somehow stayed despite the lack of any court order granting such relief:

16              Defendants intend to file objections with the district court (and a motion
                to stay Plaintiffs' discovery requests) in relation to the [April Order].
17              Accordingly, Defendants will not be providing additional discovery on
                May 4 or until Defendants' objections are finally resolved.
18
     (Ex. 3 at 14.)  For a second time, Defendants waited until the production deadline, May 4, to file a
19
     motion for stay and objections to the April Order.  (Dkts. 152, 154.)  The motion to stay was never
20
     granted.
21
            Rather, on May 12, 2020, the Court issued an order denying Defendants' motion for relief
22
     and motion to stay.  (Dkt. 159.)  Immediately after the Court's Order, Plaintiffs again reached out
23
     to Defendants' counsel asking for confirmation that they would comply with the Court's Orders and
24

25   _____

26   [1]   Defendants' production of documents and interrogatory responses were arguably due
     immediately upon issuance of the April Order on April 20.  That is, Defendants had already used
27   their 14-day compliance period in early February, while they were assessing and contemplating the
     January Order and determining how to proceed. (*See, e.g.*, Ex. 1).  Regardless whether Defendants'
28   compliance deadline was April 20th or May 4th, they have failed, and continue to fail, to provide a
     complete production of source code.

substantially complete production of the relevant information and documents immediately but by no later than May 15, as well as noticing an inspection of Defendants' source code.  (Ex. 4.)  Again, Defendants responded by indicating they were "considering the issues" and would "be in touch in the next couple of days with updated responses and comments," but with no assurance that they would comply with the Court's Orders.  (Ex. 5.)  To the contrary, Defendants indicated they would only *begin* to produce responsive discovery, and would do so by May 22—three weeks *after* the compliance deadline.  (Ex. 6.)  With respect to Plaintiffs' requests for production of source code (*e.g.*, RFPs 1, 2, 7-10), Defendants did not provide any source code for inspection until June 15, 2020, despite Plaintiffs' repeated requests for inspection as early as January 31, 2020.  (*See* Ex. 1 at 15 (Jan. 31, 2020 initial notice of source code inspection); Ex. 7 (May 19, 2020 request for source code inspection); Ex. 8 (May 22, 2020 request for source code inspection); Ex. 9 (May 28, 2020 email from Defendants' counsel indicating they had not even begun to transport Vade's code for review, and would not be able to provide inspection until June 15 or 22).)  Accordingly, from May 4 to at least June 15, Defendants were again in violation of the April Order.  Worse yet, Plaintiffs identified numerous deficiencies in Defendants' code production throughout their review of the source code from June to August—many of which have yet to be resolved.  (Ex. 10; Ex. 11; Ex. 13; Ex. 14; . Ex. 16; Ex. 18 at 3.)

Notably, Plaintiffs have discovered through review of the source code and meet and confers with Defendants' counsel that Defendants have only produced a selected subset of source code that they deem relevant, as opposed to the complete set of code requested under RFP Nos. 1 and 7-10 (Ex. 19) and ordered to be produced (Dkt. 149).  For weeks, Defendants attempted to mask their selective, incomplete production of source code by simply asserting, without explanation, that the missing source code identified by Plaintiffs' experts is not "source code for (or that is necessary for understanding) the accused technologies in the present litigation."  (Ex. 12.)  Even after Plaintiffs identified specific missing source code modules that are expressly called by (and thus used in) Vade's Office 365 and MTA products, Defendants continued to assert that those modules are "not one of the accused products in this litigation" and would not be produced.  (Ex. 15 at 2.)  In an attempt to obtain clarity from Defendants and resolve the dispute, Plaintiffs attempted to raise the

missing source code during a bi-weekly ESI meet and confer held by the parties, but Defendants were not prepared to discuss the issue at that time.  (Ex. 16.)  On September 8, 2020, the parties were finally able to meet and confer regarding the missing source code, at which point Defendants articulated for the first time that they had only collected and produced source code for the anti-spear phishing and journaling portions of Vade O365, and contended that other source code for that product was irrelevant and therefore not produced.  Defendants subsequently reiterated their position in writing, acknowledging that their Vade O365 source code production in this case has been limited to "the anti-spear phishing engine and the interface, including code relating to Microsoft journaling" aspects of Vade O365, but no other features, which Defendants have unilaterally and incorrectly deemed as "irrelevant."  (Ex. 18 at 1.)  Defendants have also unilaterally withheld as "irrelevant" all of the source code contributions of former Cloudmark employees currently employed by Vade, including Defendant Lemarié.  (*Id*.)  As explained in Section IV.a.ii, *infra*, however, the Court's April Order resolved all objections (including relevance objections) in favor of Plaintiffs, and ordered the complete production of materials responsive to Plaintiffs' first sets of requests for production.  Thus, Defendants were and are obligated to produce the complete set of Vade O365 source code for inspection, as well as all of the code contributions from the former Cloudmark employees, including Defendant Lemarié.

Defendants have also refused to produce metadata logs showing the changes over time to Vade's O365 and MTA source code, as well as corresponding individual authors/contributors, as requested under at least RFP Nos. 5-10 subject to the April Order.  (Ex. 19.)  For example, RFP Nos. 5 and 6 seek all documents related to the development of Vade O365 and Vade MTA; RFP Nos. 7-10 similarly seek documents sufficient to show each of the former Cloudmark employees' contributions, involvement, or participation in creating and developing Defendants' products and source code.  The metadata logs include such information by logging, *inter alia*, when source code files were created or modified and by whom.  Notably, the metadata logs are not source code themselves and can be exported in native spreadsheet or text format for production in the regular course of discovery, yet Defendants have refused to do so.  (Ex. 17.)

1   It has now been nearly one year since Plaintiffs' first set of requests for production were

2   served on Defendants, yet Defendants still have not made a complete production of source code,

3   and have refused to provide a complete production of source code.  (Ex. 18 at 1.)  Faced with

4   Defendants' willful defiance of the Court's Orders, Plaintiffs have been forced to write numerous

5   letters and emails to Defendants; spend hours on meet-and-confers; and engage in extensive motion

6   practice, for which the Court has had to expend resources to review over and again.  (*E.g.*, Dkt. 78

7   at 10-12; Dkt. 149 at 3-4; Exs. 7–18.)

8   **IV.    ARGUMENT**

9       **a.   Plaintiffs Are Entitled to an Award of Reasonable Fees and Costs Associated with**

10          **Defendants' Violation of the Court's Orders**

11      In view of Defendants' unjustified and willful flouting of the Orders, the Court should grant

12  Plaintiffs an award of reasonable fees and costs associated with Defendants' violation, including the

13  fees associated with bringing this motion.  *See* FED. R. CIV. P. 37(b)(2).  Plaintiffs are entitled to this

14  award pursuant to the Federal Rules, as well as precedent of the Ninth Circuit and courts in this

15  District.  *See, e.g., Cuviello* at *2–3; *Hainan* at *2–3.  Rule 37(b)(2) "provides for the award of

16  reasonable expenses and attorney's fees caused by the failure to obey a court order to provide or

17  permit discovery" that must be granted unless the failure was substantially justified or the award

18  would be unjust  *See Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981) (citations omitted);

19  *LegalForce RAPC Worldwide P.C. v. Demassa*, No. 18-cv-00043-MMC, 2019 WL 5395038, at *4

20  (N.D. Cal. Oct. 22, 2019) (finding "[m]ost remedies 'for dilatory conduct during discovery

21  proceedings' are discretionary,'" but Rule 37(b)(2)(C) is not) (quoting *Bollow v. Federal Reserve

22  Bank of San Francisco*, 650 F.2d 1093, 1102 (9th Cir. 1981)); FED. R. CIV. P. 37(b)(2)(C).  Here,

23  Defendants did not make any effort to avoid violating the Orders, thus there is no justification for

24  the violation that would make an award of expenses unjust.  *Id*.

25          i.   Defendants Willfully Violated the Court's January and April Orders

26      Pursuant to the April Order, Defendants were required to fulfill their discovery obligations

27  under the Federal Rules and comply with the Court's January Order granting Plaintiffs' Motion to

28  Compel.  Thus, Defendants were required to produce documents and information within 14 days, or

by May 4 at the latest.[2]  (Dkt. 149 at 12–13; Dkt. 112 at 4; Dkt. 78 at 29.)  Similarly, Defendants were obligated to comply with the January Order by February 14.  It was not until the Court granted their motion to stay on March 11 that such obligation was stayed.  Thus, Defendants were in violation of the January Order from February 14 to March 11.  (Dkt. 78 at 29; Dkt. 112 at 4; Dkt. 123; Dkt. 132.)  Despite the Court's Orders, Defendants did not produce a single document in this action until May 22, did not make any source code available for inspection until June 15, and still have not produced all responsive source code.  Defendants therefore remain in violation of the Orders, and have indicated they do not intend to comply.

       In particular, Defendants have refused to produce all of the source code associated with their Vade O365 product requested under Plaintiffs' RFP No. 1, which was part of the motion to compel granted by the April Order.  (*See* Ex. 19 (requesting "[c]omplete copies of the SOURCE CODE, including associated comments and revision histories (*e.g.*, Git Commits) sufficient to show individual authors/contributors that VADE has used or is using in connection with the development or sale of any and all versions or releases of VADE O365").)  Rather, Defendants have only produced a selected subset of the O365 code that they themselves have deemed relevant to the litigation.  (Ex. 18 (email from Defendants' counsel refusing to produce complete source code for the O365 product).)  Defendants have similarly refused to produce a complete collection of source code or metadata logs responsive to at least Plaintiffs' RFP Nos. 5-10, which seek, *inter alia*, all of the code contributions of Cloudmark's former employees who are now employed by Vade, including Defendant Lemarié.  (Ex. 19.)  These requests were also part of the motion to compel granted by the April Order, yet Defendants unilaterally decided not to comply and only recently confirmed their noncompliance and refusal to comply.  ((Ex. 18 (refusing to produce code reflecting contributions of former Cloudmark employees, including Defendant Lemarié, for any "technologies that are not accused in the present action"); Ex. 17 (refusing to provide "compilations of revision histories or Git commits," which are the metadata logs for relevant source code).)

---

[2] *Supra*, n.1.

1      Not only have Defendants failed to produce responsive documents and information by the

2   Court-ordered deadlines, they have done so willfully, and continue to do so, despite constant

3   admonitions from Plaintiffs.  (*See, e.g.*, Exs. 1, 4, 7–18.)

4                    ii.   <u>Defendants' Violations Were Neither Inadvertent Nor Substantially Justified</u>

5      Having established that Defendants are in violation of the Court's Orders, the inquiry

6   becomes whether the violation is substantially justified, or other circumstances make an award of

7   expenses unjust.  FED. R. CIV. P. 37(b)(2)(C).  "[T]he substantial justification inquiry comes down

8   to this:  did the litigation make a diligent effort to avoid being in violation of the court order?"

9   *Hainan* at *3; *see also id*. at *2 ("The common theme in situations where violating a court order

10  could be substantially justified is that ***you tried your best to avoid the violation***.") (emphasis

11  original).  Here, Defendants' violations were not inadvertent or substantially justified.  Defendants

12  twice brought motions for stay on the deadline for compliance, and twice failed to make any effort

13  to comply with the Orders pending resolution of said motions.  In each instance, Defendants could

14  have sought relief from the Court sooner and avoided violating the Orders.  Moreover, Defendants

15  continue to violate the Orders in view of their refusal to provide a complete source code production,

16  or the metadata logs for relevant source code.

17      ***First***, Defendants have no justification for their refusal to produce source code specifically

18  requested under at least RFP Nos. 1 (complete code for Vade O365) and 7-10 (complete code

19  contributions of former Cloudmark employees, including Defendant Lemarié), or the metadata logs

20  requested under at least RFP Nos. 5-10.  Fatal to any attempt by Defendants to justify their strategic

21  withholding of discovery is the fact that the Court ***already ruled on these issues in April***, ordering

22  Defendants to produce all materials responsive to Plaintiffs' first set of requests for production,

23  including RFP Nos. 1, 2, and 5-10 (Dkt. 149).  Defendants' production of only what they deem to

24  be relevant, as opposed to all of the information under the Court's Orders is manifestly unreasonable

25  and should be sanctioned.  *See, e.g., Woods v. Google, Inc.*, No. C11-01263-EJD-HRL, 2014 U.S.

26  Dist. LEXIS 113149, at *9-10 (N.D. Cal. Aug. 8, 2014) (ordering Rule 37 sanctions for defendant's

27  failure to produce ***all*** responsive information, explaining "the Court's order compelling [defendant]

28  to produce the data was not limited to that information which [defendant] thought was relevant—if

1   [defendant] only had to produce what it deemed relevant, then surely an order to compel would not

2   have been necessary").

3        Notwithstanding that Defendants' objections are mooted and barred by the Court's existing

4   Orders, they are nevertheless unavailing.  For example, Defendants object to complete production

5   of the source code requested by Plaintiffs based on a limited and flawed understanding of the

6   accused technologies in this action.  Specifically, Defendants believe this action is limited to just

7   the "anti-spear phishing engine and the interface, including code relating to Microsoft journaling"

8   aspects of the Vade O365 product (Ex. 18 at 1), but Plaintiffs' trade secret disclosure is not so

9   limited.  Rather, Plaintiffs' trade secret disclosure identifies a number of technologies that have been

10   misappropriated, but is not limited to just the anti-spear phishing aspects of Vade O365.   For

11   example, Plaintiffs' trade secret disclosure (already deemed to be sufficient by this Court over

12   Defendants' objections) identifies, *inter alia*, specific proprietary implementations of using heuristic

13   rules, statistical dispersion models and quantitative scoring of emails, conducting comparisons and

14   analysis using cloud-based databases, and performing email threat analysis in real time.  (Dkt. 144-

15   3 (Plaintiffs' trade secret disclosure filed under seal); *see also* Dkts. 149, 159 (finding Plaintiffs'

16   trade secret disclosure sufficient).)   All of these trade secret functionalities could have been

17   misappropriated by Vade into any number of other accused features of the same Vade O365 product

18   and other Vade products on the market or under development, particularly those that the former

19   Cloudmark employees, including Defendant Lemarié, have designed, developed, and/or supervised.

20   Indeed, Defendants have identified a number of Vade products and technologies that Defendant

21   Lemarié and the other former Cloudmark employees have worked on, all of which appear to be

22   squarely within the same field of technology as their work at Cloudmark.  (*See, e.g.*, Ex. 21 .)  Yet

23   despite Plaintiffs' RFP Nos. 7-10 and this Court's Orders, Defendants have not provided any

24   discovery on nearly all of the identified products and technologies.

25        For example, Defendants have deemed the email filter feature of the accused Vade O365

26   product as irrelevant and have not produced the corresponding source code despite this Court's prior

27   Orders and Plaintiffs' requests for full production of O365 source code.  (Ex. 16; Ex. 15 (alleging

28   Vade's email filter is a separate product and thus irrelevant).)  ██████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████

6        Defendants, therefore, have no basis to withhold highly relevant documents and source code

7 relating to what they claim are "other features" or products purportedly not at issue, but that in

8 reality are products and technologies that relate to the trade secrets and copyrights at issue in this

9 case.  Even if there were any doubt as to the scope of Plaintiffs' trade secret disclosure, courts

10 liberally construe such disclosures in favor of discovery.  *See, e.g., Lilith Games (Shanghai) Co. v.*

11 *uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *3 (N.D. Cal. July 9, 2015) (explaining

12 that any doubts as to the permissible scope of discovery in a trade secret disclosure case should be

13 "resolved in favor of disclosure") (citations omitted).

14        Also unavailing is Defendants apparent objection to the production of metadata logs

15 requested under at least RFP Nos. 5-10, which Defendants claim are "compilations [that] are not

16 kept in Vade's ordinary course of business and were [therefore] not produced by Defendants."  (Ex.

17 17 at 2.)  There is no dispute that the metadata itself is indeed kept and maintained in the ordinary

18 course of Vade's business—that Plaintiffs can locate and identify the metadata for production is

19 clear evidence that such data exists and is kept and maintained in the ordinary course of business.

20 Rather, Vade's argument seems to be that, because the printed version of said metadata is not

21 something Vade generates in the ordinary course of its business, they are absolved from having to

22 produce the metadata altogether.  Vade is wrong.  Parties are obligated to and routinely do produce

23 relevant information kept and maintained in the ordinary course of business in a format generated

24 for purposes of production and use in the litigation.  *See, e.g.*, *Aylus Networks, Inv. v. Apple Inc.*,

25 No. 3:13-cv-4700-EMC, Dkt. 44 at 7 (N.D. Cal. Apr. 7, 2014) (adopting parties' stipulation to

26 produce dynamic databases in a static format, "such as a report or data table," which is precisely

27 what Plaintiffs have requested here).  The fact that the production format may not be one that is

28 generated in the ordinary course of business does not mean a party is absolved from production

altogether, as Vade argues here. *Id.* Applying Vade's logic, parties would rarely, if ever, be obligated to produce financial information kept and maintained in internal databases but not generated for export in the ordinary course of business.

**Second**, Defendants have no justification for twice waiting until the Eleventh Hour to file their motions to stay the Court's Orders compelling discovery. Specifically, written correspondence from Defendants' counsel makes clear that Defendants planned to move to stay just days after the Orders were issued, yet Defendants waited until just hours before the compliance deadlines to file their motions. (*Compare* Ex. 3 (explaining Defendants' intention to move to stay the April Order), *with* Dkt. 154 (motion for stay, filed May 4, 2020 at 7:44 p.m.); *compare* Ex. 1 at 9 (noting that Defendants are considering moving for stay of the January Order), *with* Dkt. 123 (motion for stay, filed February 14, 2020 at 7:51 p.m.).) Defendants' violations here mirror those in the *Hainan* case, where the magistrate judge issued an order compelling respondents to produce documents by March 6. *Hainan* at *2. There, too, the respondents moved to stay the order at the eve of the compliance deadline, on March 5, and unilaterally chose not to produce the documents on March 6, despite that no stay had been entered. *Id.* The *Hainan* court explained:

> [T]he stay motion by itself didn't do anything. A motion is just "a request for a court order." "The filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations."

*Id.* (citing and quoting FED. R. CIV. P. 7(b)(1); *Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-01561, 2014 WL 1796216, *3 (D. Nev. May 6, 2014)). And even though a stay was ultimately entered, the court observed the "stay came ***17 days after the violation began***." *Hainan* at *2 (emphasis added). Thus, the *Hainan* court set out to determine whether the respondents' violation was "substantially justified or whether other circumstances make an award of expenses unjust." *Id.* The court found that the respondents did not try their best to avoid violating the court order and, therefore, the violation was ***not*** substantially justified. *Id.* at *3. The court explained that "there wasn't any reason for Respondents to wait until the eve of the production deadline to file their motion to stay" and "Respondents did not diligently move for a stay, but [] should have." *Id.* The respondents' filing on the eve of the production deadline "unavoidably put them in violation of the [] order," which the court observed "could have been prevented by moving for a stay promptly." *Id.* Notably, the court

1  explained:  "[a]ll of Respondents' arguments boil down to the assertion that moving for a stay was

2  good enough and that it doesn't matter how dilatory they were in moving for one.  ***They're wrong*.**"

3  *Id*. (emphasis added).  As the *Hainan* court explained:

4              Suppose . . . the court sets a production deadline that 10–15 days out.
             You could easily write the stay motion and get it on file.  It would take
5              no more than a few hours.  But you decide not to.  No, instead of
             promptly seeking a stay, you wait.  And wait.  And wait.  Then, the night
6              before the production deadline, you file your stay motion.  You could
             easily have filed it much sooner, you could have given the court time to
7              consider and rule on it by the time of your production deadline, but you
             deliberately chose not to.  You waited so long to move for a stay that
8              you created the situation where the production deadline is tomorrow,
             and it's not feasible to brief the stay motion and get a court ruling in
9              time.  In this situation, when the production deadline passes, there is no
             substantial justification for being in violation of the court's order.  It's
10             your fault.  You didn't do anything to promptly seek a stay.

11  *Id*. at *1.  The court further held that, "although a finding of bad faith isn't necessary to award fees

12  for a violation of a court order," the fact that respondents had waited until the eve of the production

13  deadline to move for a stay "suggest[s] bad faith, which is the opposite of substantial justification."

14  *Id*. at *3.  As with Defendants' pattern of conduct here, in *Hainan*, the respondents "waited until

15  March 5 to move for a stay as part of their larger strategy of dragging things out as long as possible

16  in the hope of running out the clock . . . .  Respondents did not move quickly to file a stay motion

17  because they didn't want that issue addressed quickly.  They were happy to be in violation of a court

18  order as the stay litigation played out because it meant the clock was ticking, potentially prejudicing

19  Applicants."  *Id*.  The court thus found the failure to comply with its order was not substantially

20  justified and awarded fees and costs pursuant to Rule 37(b)(2)(C).  *Id*.

21          The facts and circumstances here even more strongly support granting sanctions.  Defendants

22  waited until the evening of the production deadline to file their stay motions.  (Dkt. 154 (filed May

23  4, 2020 at 7:44 p.m.); Dkt. 123 (filed February 14, 2020 at 7:51 p.m.).)  By doing so, Defendants

24  were fully aware that no stay would be granted, and they would therefore be in violation of the

25  Court's Orders.  Indeed, Plaintiffs' counsel explicitly warned Defendants they would be in violation.

26          ***Third***, Defendants argued they could not comply with the April Order because they objected

27  to the Court's finding "that Plaintiffs had identified their allegedly misappropriated trade secrets

28  with reasonable particularity."  (Dkt. 154 at 4.)  But filing Rule 72 objections and seeking relief

from a court order does not eliminate or otherwise stay a party's obligation to comply with the order, nor is there any reason Defendants could not have raised their trade secret objection earlier in the case—*e.g.*, at the same time they raised their French Blocking Statute objection.   Instead, Defendants raised their objections to Plaintiffs' discovery requests in succession, forcing Plaintiffs and the Court to address the disputes in piecemeal fashion.   Defendants' gamesmanship has led to unnecessary delays in discovery, and forced Plaintiffs to engage in additional motion practice.

Specifically, Defendants first argued they could not comply with Plaintiffs' discovery requests due to French law (*see* Dkts. 78, 91).   For months, Defendants raised objections and refused to engage in discovery on that basis, forcing Plaintiffs to ultimately bring a Motion to Compel.   (Dkt. 78 at 10–12.)   The Court's January and April Orders rejected Defendants' French law objections. Yet, just weeks before the April Order and six months into fact discovery, Defendants raised their trade secret disclosure objection for the first time in a renewed attempt to forestall discovery. Defendants argued that Plaintiffs' trade secret disclosure was insufficient and, therefore, discovery could not proceed.   (*See*, *e.g.*, Dkt. 145 (filed Mar. 30, 2020).)   However, the April Order rejected this latest objection, and was confirmed on May 12, 2020.   (Dkt. 159.)

Even setting aside the merits of Defendants' objection, there is no good reason for Defendants' delays.   Defendants waited until February 26 to raise their trade secret disclosure objection (Dkt. 156-2), and March 2 before even propounding an interrogatory asking Plaintiffs to identify the trade secrets (Dkt. 145).   These delays were despite the fact that, as early as September 2019, Plaintiffs had suggested that Defendants serve a discovery request if they needed more specificity regarding Plaintiffs' asserted trade secrets.   (Dkt. 46 at 8 ("the appropriate mechanism for obtaining greater specificity as to what trade secrets are claimed is to pursue the matter through disclosures, interrogatories, meet and confer negotiations, or such other facets of the discovery process as may be warranted"); *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2019 WL 4394402, at *1 (N.D. Cal. Nov. 5, 2018) ("discovery is the appropriate mechanism by which Defendants may seek greater specificity").)   Indeed, Defendants have alleged that, "***since the outset of this litigation***, Defendants have argued that Plaintiffs have failed to identify any trade secret with sufficient particularity."   (Dkt. 154 at 3 (emphasis added).)   If that is true, then Defendants could

1  and should have raised their trade secret disclosure objection as early as the opening of fact

2  discovery, on October 9, 2019.  Yet they did not.  Defendants did not even raise the objection in

3  response to the very discovery requests at issue in Plaintiffs' Motion to Compel.  (Dkts. 91-4, 91-5,

4  91-6.)

5         Thus, the only explanation for the delay is that it evinces a pattern and practice of raising

6  disputes piecemeal in order to maximize delay and hinder the progression of this case—the same

7  pattern of practice that includes Defendants filing motions for relief from and a stay of the Court's

8  orders on the deadline for compliance, while unilaterally declining to comply with the orders.  (*See*

9  *also* Dkts. 230 (moving for extension of time to respond to Plaintiffs' First Amended Complaint),

10  231 (opposing motion and explaining Defendants' dilatory tactics).)

11         Accordingly, sanctions under these circumstances are appropriate and authorized by Rule

12  37(b) to address Defendants' willful and bad faith violations and continuing violation of the Orders.

13         **b.  Defendants Should Be Held in Civil Contempt for Their Continuing Violation of**

14              **the Court's Orders**

15         Defendants' conduct also supports a finding that they are in civil contempt of court.  "Rule

16  37 empowers the court to treat the failure to obey a discovery order as a contempt of court."  *Cuviello*

17  at *3 (holding party in civil contempt for failure to make fulsome production of documents as

18  ordered).  In *Cuviello*, the court held the noncompliant party in civil contempt of court when it

19  (1) repeatedly failed to comply with the court's discovery order, while it seeks review of the order;

20  and (2) "openly admitted" that it "continues to violate the authority of th[e] court" by still not

21  producing the discovery at issue."  *Id*.  Similarly, the *Hainan* court observed that the respondents

22  had "for nearly a month now failed to comply with the [c]ourt's discovery order."  *Hainan* at *5.

23  On that basis, the court ordered the respondents to show cause why they should not be held in

24  contempt of court and further imposed a sanction of $2,000 for each day that respondents continued

25  to be in violation of the court's order.  *Hainan* at *5.

26         Here, Defendants' conduct is even worse than the litigants in *Cuviello* and *Hainan*.  Indeed,

27  nearly five months have passed since the Court's April Order, yet Defendants have not produced,

28  and refuse to produce, a complete set of source code responsive to Plaintiffs' first set of requests for

1   production.  By unilaterally refusing to make the requested source code available—or even

2   informing Plaintiffs that the requested code had not been made available (*n.b.*, only after extensive

3   source code review did Plaintiffs discover that significant portions of the code appeared to be

4   missing, which was only recently confirmed by Defendants (Ex. 18))—Defendants have failed to

5   take all reasonable steps within their power to comply with the Orders.  *See In re Dual-Deck Video*

6   *Cassette Recorder Antitrust Litig.*, 10 F.3d 643, 695 (9th Cir. 1993) ("Civil contempt consists of a

7   party's disobedience to a specific and definite court order by failure to take all reasonable steps

8   within the party's power to comply.").

9       Moreover, there is no reason why Defendants cannot easily avoid future violation and

10  ongoing sanctions by simply complying with the Court's existing Orders.  Indeed, Defendants

11  appear to be fully aware of the code that they have withheld from production, having unilaterally

12  determined that said code is "irrelevant" (Ex. 18), and could therefore easily collect the missing

13  code and make it available for inspection.  Similarly, with the metadata logs, Plaintiffs' request for

14  the logs includes explicit instructions on how the data may be exported in a reasonably usable

15  format—thus, there is no excuse for refusing to generate such exports for production in response to

16  Plaintiffs' requests.  There is no doubt Defendants are able to comply with the Orders, thus any

17  continuing violation is their choice.  To incentivize future compliance with court orders, it is

18  appropriate to hold Defendants in civil contempt of court for their ongoing violation.  *See, e.g.*,

19  *Cuviello* at *3.

20      **c.  Defendants' Continuing Willful Violation of the Court's Orders Necessitates**

21          **Coercive Sanctions**

22      Defendants' continuing violations also support coercive sanctions to encourage Defendants'

23  compliance moving forward.  Coercive sanctions are "intended to coerce the contemnor to comply

24  with the court's orders in the future . . . ."  *Cuviello* at *3 (quoting *Richmark Corp. v. Timber Falling*

25  *Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992)).  "Once the party has complied in full, the party

26  can vacate the sanction."  *Id*.  As such, coercive sanctions are not only justified but necessary when

27  parties "repeatedly flout[] discovery obligations—first by delay, then by refusing to follow th[e]

28  court's specific directions . . . ."  *Id*.(imposing "a daily sanction of $500 until the production is made

1  in full").  Coercive sanctions are particularly appropriate where the mere threat of sanctions has

2  proven insufficient to deter continued violation.  *Id.* ("For most parties, the threat of sanction is

3  usually enough to deter continued violation.  But not here."; imposing coercive sanctions "to incent

4  Cuviello to produce all material not yet produced . . . as soon as possible . . . .").

5       Defendants have taken every possible opportunity to delay producing responsive documents

6  and information in this case.  Despite the Court's Orders clearly ordering production of materials

7  responsive to Plaintiffs' first sets of requests for production, Defendants are still in violation of the

8  Orders and still refuse to produce the requested source code and metadata.  Moreover, Defendants

9  have not been dissuaded by the possibility of sanctions.  To illustrate, on February 11, just three

10  days before Defendants' production deadline under the January Order, Plaintiffs expressed their

11  intention "to move for enforcement of the order if Defendants do not fully comply by Feb. 14."  (Ex.

12  1.)  But, as explained above, Defendants failed to comply with the January Order by the February

13  14th compliance deadline, and still have not complied.  Defendants' conduct to date shows that the

14  mere *possibility* of sanctions will not deter Defendants from furthering their pattern of evasion and

15  violation of court orders.  Rather, meaningful coercive sanctions are necessary here to stop

16  Defendants from continuing to disregard court mandates.

17  **V.   CONCLUSION**

18       For the foregoing reasons, Plaintiffs respectfully request the Court issue an order requiring

19  Defendants to fully comply with the January and April Orders within 5 days, and award appropriate

20  sanctions and relief for Defendants' violation of the Court's Orders, pursuant to Federal Rule of

21  Civil Procedure 37(b).

22

23

24

25

26

27

28

1

2 DATED:  September 18, 2020         Respectfully Submitted,

3                By */s/ Iman Lordgooei*

4                   Sean S. Pak (SBN 219032)
5                   seanpak@quinnemanuel.com
                  Iman Lordgooei (SBN 251320)
6                   imanlordgooei@quinnemanuel.com
                  QUINN EMANUEL URQUHART &
7                   SULLIVAN, LLP
                  50 California Street, 22nd Floor
8                   San Francisco, CA 94111
                  Telephone: (415) 875-6600
9                   Facsimile: (415) 875-6700

10                   Jodie W. Cheng (SBN 292330)
                  jwcheng@jwc-legal.com
11                   JWC LEGAL
                  One Market Street
12                   Spear Tower, 36th Floor
                  San Francisco, CA 94105
13                   Telephone: (415) 293-8308

14                   *Attorneys for Plaintiffs Proofpoint, Inc. and*
                  *Cloudmark LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO ENFORCE THE COURT'S JAN. 31 AND APR. 20, 2020 ORDERS