1   Colin H. Murray (SBN 159142)
        colin.murray@bakermckenzie.com
2   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
3   San Francisco, CA  94111-3802
    Telephone:  +1 415 576 3000
4   Facsimile:  +1 415 576 3099

5   Danielle L. Benecke (SBN 314896)
        danielle.benecke@bakermckenzie.com
6   **BAKER & McKENZIE LLP**
    600 Hansen Way
7   Palo Alto, CA  94304
    Telephone:  +1 650 856 2400
8   Facsimile:  +1 650 856 9299

9   Attorneys for Defendants
    VADE SECURE, INCORPORATED;
10  VADE SECURE SASU;
    OLIVIER LEMARIÉ
11  [Additional counsel listed on signature page]

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14

15  PROOFPOINT, INC.; CLOUDMARK          **Case No. 3:19-cv-04238-MMC-RMI**
    LLC,
16                                        **Date Action Filed: October 2, 2019**
                        Plaintiffs,
17                                        **DEFENDANTS VADE SECURE,**
            v.                            **INCORPORATED AND VADE**
18                                        **SECURE SASU'S RESPONSE TO**
    VADE SECURE, INCORPORATED;            **PLAINTIFFS' RENEWED MOTION**
19  VADE SECURE SASU; OLIVIER             **TO ENFORCE THE COURT'S**
    LEMARIÉ,                              **JANUARY 31, 2020 AND APRIL 20,**
20                                        **2020 ORDERS**
                        Defendants.
21

22                                        **Date: November 5, 2020**
                                          **Time: 1 PM**
23                                        **Judge: Robert M. Illman**

24                                        **San Francisco Courthouse**
                                          **450 Golden Gate Avenue**
25                                        **San Francisco, CA 94102**

26

27

28

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND...............................................................2

   A.    From the Outset, Plaintiffs Have Targeted Two Technologies—the Anti-spear Phishing Component of Vade's Office365 and its NextGen MTA. ....................................................2

   B.    Plaintiffs Delayed Discovery by Failing to Identify Their Trade Secrets with Particularity Until Eight Months After Filing Their Complaint.....................................................4

   C.    Vade Has at all times Complied with the Court's Discovery Orders. ..................................5

      1.    The Court's Orders at ECF Nos. 112 and 149 Were Limited in Scope...........................5

      2.    Vade Has Diligently Collected and Produced Discovery in this Matter. ........................7

III.    THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR SANCTIONS ...................10

   A.    Plaintiffs Fail to Articulate Any Grounds for Sanctions.....................................................10

      1.    Vade Fully Complied with the Court's Orders .........................................11

      2.    Vade Fully Complied with the Parties' Stipulation ..........................................14

         a.    Vade Has Produced all of the Code for Vade's O365 in Accordance with the Stipualtion. ........................................................14

         b.    Vade Also Produced Code Generated, Deleted, or Modified by Lemarie, Sejourne, Delamoy, and Boussinet ...........................................16

      3.    The Remaining Discovery Disputes Arose After the October 2 Stipulation ..................17

   B.    Plaintiffs Are Not Entitled to the Production of any Additional Source Code....................17

IV.    CONCLUSION....................................................................................................20

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
5
819 F. Supp. 2d 1001 (E.D. Cal. 2011)..........................................................................19

6

*Ameranth, Inc. v. Pizza Hut, Inc.*,
No. 11cv1810 JLS (NLS), 2013 U.S. Dist. LEXIS 23378 (S.D. Cal. Feb. 20,
7
2013) ...........................................................................................................................18, 19

8

*In re Apple & AT&TM Antitrust Litig.*,
No. C-07-05152 JW (PVT), 2010 U.S. Dist. LEXIS 39637 (N.D. Cal. Mar. 26,
9
2010) ...........................................................................................................................17, 19

10

*Apple Inc. v. Samsung Elecs. Co.*,
11
888 F. Supp. 2d 976 (N.D. Cal. 2012) ...........................................................................11

12

*Blue Spike, LLC v. Vizio, Inc.*,
No. 8:17-cv-01172-DOC-KESx, 2018 U.S. Dist. LEXIS 232314 (C.D. Cal. July
13
3, 2018) ........................................................................................................................17, 20

14

*Burnett v. Conseco Inc.*,
15
87 F. Supp. 3d 1238 (N.D. Cal. Apr. 9, 2015) ...............................................................11

16

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011) ..........................................................................................11

17

*Drone Tech., Inc. v. Parrot S.A.*,
18
838 F.3d 1283 (Fed. Cir. 2016)........................................................................................20

19

*Hartley Pen Co. v. U.S. District Ct.*,
20
287 F.2d 324 (9th Cir. 1961) ...........................................................................................17

21

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
No. 19-mc-80277-TSH, 2020 U.S. Dist. LEXIS 59282 (N.D. Cal. Apr. 2, 2020).........12

22

*In re iPhone/iPad Application Consumer Privacy Litig.*,
23
No. 11-MD-2250 LHK, 2012 U.S. Dist. LEXIS 166711 (N.D. Cal. Nov. 21,
2012) ..................................................................................................................................3

24

*Kelora Sys., LLC v. Target Corp.*,
25
No. C 11-01548 CW (LB), 2011 U.S. Dist. LEXIS 96724 (N.D. Cal. Aug. 29,
26
2011) .....................................................................................................................17, 19, 20

27

*Koninklijke Phillips N.V. v. Elec-Tech Int'l Co.*,
No. 14-cv-2737 BLF, 2015 U.S. Dist. LEXIS 14576 (Oct. 26, 2015) ...........................11

28

*Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*,
No. C-10-05545 RMW, 2012 U.S. Dist. LEXIS 76468 (N.D. Cal. June 1, 2012) ........................ 17

*Perez v. Wells Fargo Bank, N.A.*,
No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871 (N.D. Cal. Jan. 30, 2018)
(Chesney, J.) .................................................................................................................. 7, 13

*Rimkus Consulting Grp., Inc. v. Cammarata*,
688 F. Supp. 2d 598 (S.D. Tex. 2010) ........................................................................... 11

*Scalia v. City of Kern*,
No. 17-cv-1097 JLT, 2020 U.S. Dist. LEXIS 178229 (Sept. 28, 2020) ......................... 13

*Synopsys, Inc. v. ATopTech, Inc.*,
2015 U.S. Dist. LEXIS 65453 (N.D. Cal. May 18, 2015) .............................................. 11

*Woods v. Google, Inc.*,
No. C11-01263-EJD-HRL, 2014 U.S. Dist. LEXIS 113149 (N.D. Cal. Aug. 8,
2014) ............................................................................................................................... 11

**Statutes**

Cal. Code Civ. P. § 2019.210 ........................................................................ 4, 5, 6, 7, 12, 19

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(c) ................................................................................... 10, 11, 14

Local Rule 7-8 ............................................................................................................... 10

## I.    INTRODUCTION

Plaintiffs' renewed motion to enforce mirrors their approach to discovery in this case.  It is inflammatory, disregards or mischaracterizes critical facts, relies on tortured legal reasoning and seeks unclear relief.  Rather than yield to Plaintiffs' tactic of escalating discovery disputes, Vade Secure, Incorporated and Vade Secure SASU ("Vade") has properly and thoughtfully approached discovery from the perspective of relevance and Plaintiffs' actual misappropriation claims in this case—claims that Plaintiffs did not disclose until March 2020.

Even setting aside the factual issues, the motion from the outset is fatally flawed.  Plaintiffs ultimately request that the Court order Vade[1] to "fully comply with the January and April Orders."[2] (Pls.' Renewed Mot. to Enforce at 21, ECF No. 286-4.)  But Vade has complied with those Orders. Notwithstanding logistical difficulties due to the COVID-19 crisis, and Plaintiffs' constant barrage of discovery demands, Vade has engaged in discovery under the Federal Rules and produced more than 15,000 source code files and 300,000 pages of documents since May 22, 2020—ten days after the Court denied Vade's motion for relief from the April Order (ECF Nos. 149, 159), which granted Plaintiff's motion to compel and ruled that discovery proceed under the Federal Rules. Indeed, despite their voluminous filing, Plaintiffs' motion identifies only four discrete discovery issues, each of which Vade disputes.

Presumably, Plaintiffs have framed this motion as one for sanctions in the hopes that they can successfully distract from their failing claims.   But the request for sanctions is equally misdirected.  A party is not entitled to sanctions because its opponent engaged in legitimate disputes relating to the scope of discovery.  To avoid this logical result, Plaintiffs offer a tortured interpretation of the Court's April 20 Order (ECF 149).  They contend—incredibly—that by directing the parties to conduct discovery under the Federal Rules of Civil Procedures, rather than under the Hague Convention, the Court also ruled that Vade was barred from asserting any objections to Plaintiffs' discovery requests.

---

[1] Plaintiffs have confirmed that their renewed motion to enforce does not seek any relief from, or sanctions or finding of contempt as to, Defendant Lemarié.

[2] The January and April Orders relate to the same motion to compel.  The January Order was issued by his Honor on January 31, 2020 (ECF No. 112).  The April 20, 2020 Order is his Honor's ruling on Vade's motion for reconsideration of the January Order (ECF No. 149).

That argument alone is nonsensical. But it is rendered even more so when considered in light of the parties' October 2, 2020 ***Stipulation*** in furtherance of a resolution of their discovery disputes, which resulted in Plaintiffs' withdrawal of their first motion to enforce. If Plaintiffs truly believed that Vade was without rights to assert objections to their discovery requests, there would have been no need for a Stipulation. Recognizing the inherent contradictions in their position, Plaintiffs now take the unsupportable position that they are not bound by the parties' compromise memorialized in the Stipulation.

In a last ditch effort to support their claim for sanctions, Plaintiffs' attempt to argue that Vade's motions to stay the Court's orders on their motion to compel (to which the Court did not take exception), constitute sanctionable conduct. This argument too is wholly manufactured and disregards Vade's pending motion seeking clarification of Plaintiffs' asserted trade secrets prior to discovery. Plaintiffs never raised this issue when those motions were filed because it has no merit. It still lacks merit. The notion that no less than four types of sanctions are warranted in circumstances that do not include willful evasion of discovery obligations, spoliation, or misrepresentations is without legal support.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     From the Outset, Plaintiffs Have Targeted Two Technologies—the Anti-spear Phishing Component of Vade's Office365 and its NextGen MTA.

Plaintiffs' attempt to broaden discovery to include "filter" source code is disingenuous. At the time the Complaint was filed, Plaintiffs were well aware that Vade offered a variety of email filter products for identifying and filtering malicious emails. As just one example, ████████████

████ (Defs.' 2d Am. Answer ¶ 17, ECF No. 224.) ████

████ (*Id.* ¶ 16.) ████

████[3] Moreover, as Plaintiffs readily admit, they are competitors with Vade (ECF

---

[3] Based on Plaintiffs' own documents, they knew about Vade's content filter at least by ***2011*** and had access to its SDK. (*See* Martin Decl. ¶ 23 Ex. 1 at PP-VADE00206249 (attaching "SDK

2

No. 1 ¶¶ 1, 50, 86), and Vade publicly advertises its various e-mail filter products and solutions, and the features attributable to each.   (*See, e.g.*, Martin Decl.   ¶ 24 Ex. 2, https://web.archive.org/web/20160729085749/https://www.vadesecure.com/en   (Vade's public website, as archived on July 29, 2016, showing Vade's various product offerings including its Content Filter that has a "heuristic engine.")   When bringing this lawsuit, however, Plaintiffs knowingly focused on only two technologies embodied in two specific products.

Plaintiffs filed this lawsuit on July 23, 2019, asserting claims of trade secret misappropriation. (ECF No. 1.)  In the complaint, Plaintiffs alleged that they maintained trade secrets in a product they called Trident, which was directed to detecting a particular type of malicious email called spear phishing.  (*See id.* ¶ 37).  Plaintiffs further contended that they had an undefined trade secret(s) in Cloudmark's mail transfer agent, Gateway (the "Cloudmark MTA").  (*Id.*)  Plaintiffs only targeted two of Vade's products and made no mention of or reference to Vade's Content Filter or any of its other products.  In particular, the Complaint is directed to the spear phishing component of Vade's new Office 365 ("O365") product, and a mail transfer agent under development by Vade called the NextGen MTA.  (*Id.* ¶¶ 41-45.)  From the filing of the Complaint until now (including its Amended Complaint filed on August 13, 2020), Plaintiffs have not expanded their allegations beyond those specific technologies.  The notion that Vade has no basis upon which to limit discovery ignores these basic facts.  *See In re iPhone/iPad Application Consumer Privacy Litig.*, No. 11-MD-2250 LHK, 2012 U.S. Dist. LEXIS 166711, at *23   (N.D. Cal. Nov. 21, 2012) ("Plaintiffs are entitled to discovery regarding the factual allegations stated in their Complaint.")

Plaintiffs continued to have a narrow focus with the filing of their motion for preliminary injunction.  On September 25, 2019—two months after this lawsuit was instituted—Plaintiffs filed a motion for preliminary injunction.  (ECF No. 30-4.)  In that motion, Plaintiffs again focused solely on their purported trade secrets embedded in their anti-spear phishing product, Trident, and the Cloudmark MTA.  (*Id.* at 4-5 ████████████████████████
████████████████████████████████████
████████████████████████████████████

VadsRetro.zip" for the filter.)

3

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").)  In Plaintiffs'

2 words, "[a]t the *heart* of this dispute are the confidential technologies and technical trade secrets

3 embodied in those two Cloudmark products."  (*Id.* (emphasis added).)  Consistent with that

4 representation, the only Vade products mentioned by name in the preliminary injunction motion

5 were, again, the anti-spear phishing component of Vade's O365 product and the NextGen MTA.  (*Id.*

6 at 10-12.)

7         While Plaintiffs have attempted to lay the blame on Vade for unduly delaying discovery, the

8 record shows otherwise.  Like they have done throughout this matter, however, Plaintiffs did not

9 identify a single trade secret in their preliminary injunction motion.  In Vade's opposition, Vade

10 contended that the motion should be denied because, among many other reasons, Plaintiffs had failed

11 to even identify a trade secret as a threshold matter, much less show a likelihood of success that a

12 trade secret had been misappropriated.  (ECF No. 71-4 at 10-16.)  Plaintiffs, on the other hand, argued

13 and represented to the Court, including through multiple declarations from Dr. Nielson, that a trade

14 secret had been adequately identified.  (ECF No. 81-3 at 2-8.)  But after considering those arguments

15 from Plaintiffs and their expert, the Court found them lacking.  In particular, on February 20, 2020,

16 the Court denied Plaintiffs' motion for preliminary injunction, holding that, "[i]n sum, as the record

17 presently before the Court does not include evidence that sufficiently identifies the claimed trade

18 secrets, plaintiffs have failed to show a likelihood of success on the merits or that serious questions

19 going to the merits exist."  (ECF No. 126 at 5.)  Thus, ***seven months after this lawsuit was filed***,

20 Plaintiffs had not even identified a trade secret that would have justified bringing this action in the

21 first instance.

22         **B.      Plaintiffs Delayed Discovery by Failing to Identify Their Trade Secrets**
                     **with Particularity Until Eight Months After Filing Their Complaint.**

23         While Plaintiffs represent to the Court that Defendants have been under an obligation to

24 produce discovery in this matter since October 2019, Plaintiffs ignore that they were precluded under

25 the law from taking any discovery until they provided an adequate trade secret disclosure, as required

26 by California Code of Civil Procedure § 2019.210, which applies in this matter. (*See* ECF No. 128,

27 at 3-8.)  As the Court made clear, Plaintiffs had not made such a disclosure at least as of February

28

20, 2020.  (ECF No. 126 at 5.)  Indeed, because Plaintiffs continued to demand discovery despite not complying with their disclosure requirements, two weeks after the Court's decision that not a single trade secret had been identified, Vade moved the Court for a protective order.  (ECF No. 128.)  In view of Vade's motion for protective order and motion to reconsider a previous ruling regarding whether French law applied to Plaintiffs' discovery requests, the Court granted Vade's request to stay the previous ruling, making clear that Plaintiffs were not entitled to discovery until these issues were further briefed and resolved.  (ECF No. 132.)

On March 20, 2020, the court conducted a hearing on Vade's motion for protective order.  Notably, in that hearing, Plaintiffs' counsel again made clear that this lawsuit was focused on two specific technologies.  *See* Mar. 20, 2020, Hr'g Tr. 10:12-21:

> Mr. Pak:  We don't think so, Your Honor, because we are talking -- *if you step back and think about the allegations*, we are talking about the development of really *two classes of products*. We have products that relate to what is called *spear phishing* that was originally developed by Mr. Lemarie when he joined the company. Then we have another class of products. That is the *MTA* class of products that have not yet shipped that is under development now.  Mr. Lemarie oversees that, as the CTO, the development of both sets of projects.

On that same day, Plaintiffs served, for the first time, what they purported to be a trade secret disclosure pursuant to § 2019.210.  As a result of that disclosure, which was first made *eight months after this lawsuit was filed*, the Court ordered additional briefing, but in the meantime, the discovery stay remained in place.  (*See* ECF No. 140.)  Ultimately, on April 20, 2020 after receiving additional briefing from the parties, the Court determined that Plaintiffs' trade secret disclosure was adequate and held that discovery should commence and be governed by the federal rules of civil procedure.  (ECF No. 149, at 12-16.)  But the Court did not consider or make any rulings on any of Plaintiffs specific discovery requests or Defendants objections thereto asserted under the federal rules.  The Court also did not, contrary to Plaintiffs' assertions now, provide that Defendants were required to produce discovery by any particular deadline.

## C.     Vade Has at all times Complied with the Court's Discovery Orders.

### 1.     The Court's Orders at ECF Nos. 112 and 149 Were Limited in Scope.

Plaintiffs' version of how discovery has progressed is incomplete and largely inaccurate. Vade will not belabor the details in the record. But, to be clear, Plaintiffs filed **one** motion to compel on December 13, 2019 (ECF No. 78), and the parties filed a subsequent letter brief in furtherance of the same. (ECF No. 91). The subject of that Motion to Compel—a fact omitted from Plaintiffs' lengthy motion—was the effect of the French Blocking Statute (*i.e.*, whether Vade was required to conduct discovery through the Hague Convention procedures or whether Vade was subject to the Federal Rules of Civil Procedure governing discovery). (ECF Nos. 78, 91.) Notably, in the course of briefing the motion, Plaintiffs did not address or object to any of Defendants' other applicable specific objections to requests relating to relevancy, privilege, duplication, burden or expense. Those were at no point presented for the Court's consideration. Thus, the Court's order granting that motion only found that that discovery should be governed by the Federal Rules of Civil Procedure, not the Hague Convention. (ECF No. 112 (granting Plaintiffs' motion to compel "[h]aving found that the majority of factors weigh in favor of proceeding under the Federal Rules of Civil Procedure rather than utilizing Hague Convention Procedures…") Neither the Court's January 31 Order nor any subsequent Orders sought to narrow Vade's rights to lodge objections to discovery requests under the Federal Rules of Civil Procedure, did not make a ruling on any specific relevancy objections, or include any language about specific documents for production. (*Id*.)

As set forth above, Vade sought a stay and reconsideration of that order, as well as a protective order because of Plaintiffs' failure to comply with § 2019.210. And on February 20, 2020, the Court stayed discovery pending a resolution of those specific issues. (ECF No. 132.) That resolution did not come until April 20, 2020, through the Court's decision entered at ECF No. 149. Contrary to Plaintiffs' assertions, the Order entered at ECF No. 149, only addressed (1) Vade's contention that discovery should be conducted through the Hague Convention, and (2) whether Plaintiffs' trade secret disclosure was sufficient such that discovery could be begin in the first instance. (ECF No. 149, at 12-16.) Again, at no point during the briefing that preceded that ruling did either party present specific objections, such as those relating to relevancy, privilege, duplication, burden or expense, and the Court did not issue any opinion concerning those objections. (*Id.*) Further, the Court did not give Vade a deadline for producing documents or any other discovery,

6

only that "discovery can proceed under the Federal Rules forthwith." (*Id.* at 12.)  Vade then timely filed Rule 72 objections in relation to the motion for protective order relating to Section 2019.210 and requested a further stay.[4]  (ECF Nos. 151-4, 153-4.)  The Court denied Vade's objections and request for a stay on May 12, 2020.  (Order 1, ECF No. 159.)

### 2.    Vade Has Diligently Collected and Produced Discovery in this Matter.

Also absent from Plaintiffs renewed motion to enforce is any discussion of how an unprecedented global pandemic has impacted this proceeding, including how the parties have been required to conduct fact discovery.  In particular, by the time it was deemed that Plaintiffs had made an adequate trade secret disclosure—*eight months after this lawsuit was filed*—the global pandemic, which persists to this day was intensifying and significantly disrupting business operations in both France and the United States, with both countries having periods of lockdown, remote working, and other disruptions.  The COVID-19 pandemic impacted the schedule in the present case, including two postponements of the mediated settlement conference (ECF Nos. 131, 136).  Document collection, review, and production was hampered throughout the Spring in view of the new "shelter in place" orders, "work from home" arrangements, and other unforeseen logistical difficulties and restrictions imposed on the parties, witnesses, and counsel in the U.S. and France.  Vade managed these logistical difficulties and disruptions, and continued to collect documents, information, and source code, and prepare discovery responses as best as possible under the circumstances.  (Martin Decl. ¶ 3.)

As evidence of those efforts, on May 22, 2020, only ten days after Vade's objections to the Court's Order entered at ECF No. 149 were denied, and only 30 days after that decision commencing discovery in the first instance, Vade began producing thousands of documents.  (Martin Decl. ¶ 4, Ex. 5.)  To date, Plaintiffs have served *117* Requests for Production, and Vade has served over

---

[4]As briefed in Vade's motion to stay, there is not a clear standard or test that governs a motion to stay discovery while a motion for relief from a magistrate judge's ruling is pending, but what is clear was that this Court had recently granted motions to stay in the exact same context as here, i.e., pending resolution of a motion for relief.  ECF No. 153-4 at 2-3; *see Perez v. Wells Fargo Bank, N.A.*, No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871, at *4 (N.D. Cal. Jan. 30, 2018) (Chesney, J.) ("Lastly, defendant's Motion to Stay, by which defendant seeks an order staying the above-referenced discovery pending resolution of the Motion for Relief, is hereby GRANTED.").

300,000 pages of documents. Of course, these facts are absent from Plaintiffs' motion.

Also absent from Plaintiffs' motion are the good-faith efforts made by Vade to allow Plaintiffs to begin inspection of its source code during a global pandemic. In particular, on May 19, 2020, Plaintiffs' counsel sent a correspondence for the first time requesting that Plaintiffs' preference was to conduct the source code inspection in Baker McKenzie's Dallas office. (May 19, 2020, Ltr. from Pak to Martin at 1-2, ECF No. 292-4) (Mr. Pak: "Accordingly, we request that Defendants make their source code available for inspection at Baker & McKenzie's Houston or Dallas offices in accordance with the Protective Order.") At that time, Baker & McKenzie's Texas offices were closed to all employees and visitors. (Martin Decl. ¶ 5.) As a result, special arrangements had to be made and health and safety protocols put into place to accommodate **Plaintiffs' request.** (Martin Decl. ¶ 5.) Further, Plaintiffs were requesting that Vade include no less than **13** source code review tools and **7** plugins for such tools onto the source code computer, which of course takes time to obtain, arrange, and load onto the review computers in Texas. (May 19, 2020 Ltr. from Pak to Martin at 2-3, ECF No. 292-4.) Plaintiffs also demanded that multiple source code computers be made available such that multiple experts could review source code at the same time. (Martin Decl. ¶ 6.) None of these requests were spelled out in the Protective Order, but Vade accommodated these requests. (Martin Decl. ¶ 6.) In fact, in less than 30 days from receipt of Mr. Pak's letter requesting inspection in Texas, Vade had made all of the arrangements to permit Plaintiffs' proposed experts to begin reviewing Vade's source code, including having that code transported from France to Texas. (Martin Decl. ¶ 7.) Since Plaintiffs began their source code review on June 15, Vade has accommodated request after request from Plaintiffs to have their experts return for additional review. (Martin Decl. ¶ 8.) As of the date of this motion, Vade has produced 15,000 source code files, and has allowed four different experts from Plaintiffs review source code for now more than 500 hours. That review is ongoing. The notion that Vade has been uncooperative or obstructed the discovery process is simply not true when the record is viewed in its entirety.

This especially comes into focus when considering Plaintiffs' conduct. It is clear that Plaintiffs have treated discovery as a game to determine how many disputes they can manufacture in an effort to paint Defendants in an unjustified poor light. Plaintiffs typical strategy is to send a list

8

of demands in an e-mail or letter, and demand that Defendants response in an unrealistic time frame, such as a matter of days or, in some cases, by the end of the same day—despite having full knowledge that Vade is located in France. (Martin Decl. ¶ 9, Ex. 6; *see also* Oct. 19, 2020 Ltr. from I. Lordgooei, ECF No. 286-36 (demanding a response within one business day).)  In fact, as they do in this renewed motion, to the extent Vade responds that it is investigating the allegations, Plaintiffs view that as delay, as opposed to what it actually is—a good-faith effort to investigate their complaints to determine whether court intervention can be avoided.  Indeed, on many occasions, Vade has determined that the items Plaintiffs claim to be missing from the production of source code review computer have actually been produced and missed in Plaintiffs' haste to complain. (*See, e.g.*, ECF No. 286-13 at 1; ECF No. 286-21 at 1-2.)

In contrast to Vade's good-faith approach to discovery, Plaintiffs have engaged in actual delay to the point where it has severely prejudiced the parties' ability to litigate this matter in an orderly fashion.  Specifically, as the Court held, Plaintiffs brought a trade-secret misappropriation claim against Vade without identifying a single trade secret, much less one that had been misappropriated. (ECF No. 126 at 5.)  Plaintiffs did not even attempt to do so until March 20, 2020—eight months after bringing suit—and even then, Plaintiffs conceded that their "trade secret disclosure" did not actually disclose what they contended to have been misappropriated.  (Joint Discovery Statement Regarding Plfs.' Disclosure of Trade Secrets 7 (conceding that Plaintiffs' disclosure contained what former Cloudmark employees allegedly had *access to* while at Cloudmark and therefore *may have* been misappropriated), ECF No. 145.)  Rather, that disclosure was merely a telephone book of information that included public and allegedly proprietary information that might be considered a trade secrets, irrespective of whether it was at issue in this suit or not.  (*Id.*)  Indeed, it was not until August 27, 2020, that Plaintiffs disclosed for the first time what alleged trade secrets they claim to have been misappropriated, which disclosures remain deficient.  (Martin Decl. ¶ 10.)  That disclosure, however, comes ***13 months*** after this suit was filed and with less than four months in the current fact-discovery period.  Despite indicating to the Court in March 2020 that Plaintiffs would narrow their trade secrets disclosure after fact discovery began, Plaintiffs have refused to do so. (Joint Discovery Statement Regarding Plfs.' Disclosure of Trade Secrets 7, ECF No. 145; Martin

9

1    Decl. ¶ 11.)

2         Similarly, Plaintiffs have exercised intentional delay in producing documents.  For example,

3    Vade served its First Set of Requests for Production on May 22, 2020.  (Martin Decl. ¶ 12.)  Plaintiffs,

4    however, failed to make any production in response for nearly two months.  (Martin Decl. ¶ 13.)

5    Vade also served its first ESI requests on July 30, 2020, but as of the date of this response, Plaintiffs

6    have not produced a single document in response.  (Martin Decl. ¶ 14.)  To be clear, the parties have

7    already reached agreement on the scope of the search terms.  Also, as the Court is aware, while

8    Plaintiffs have reviewed source code for more than 500 hours, Plaintiffs have refused to permit

9    Vade's expert to review a single line.  (Vade's Mot. to Compel Disclosure of Source Code, ECF No.

10   292.)  Thus, while Vade does not run to the Court as a matter of course every time a dispute arises,

11   that strategy should not be viewed as Plaintiffs having conducted themselves appropriately in

12   discovery.  They have not.

13   ## III.    THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR SANCTIONS

14   ### A.    Plaintiffs Fail to Articulate Any Grounds for Sanctions.

15        Plaintiffs characterize Vade's discovery compliance as unprecedented, justifying not one—

16   but four types of sanctions.  That request alone provides this Court with a window into the over-the-

17   top, harassing nature of Plaintiffs' discovery tactics.  Even worse is that Plaintiffs do not even address

18   the proper standards for seeking such sanctions, and each request crumbles under the factual record.[5]

19        In particular, Rule 37 sanctions are not meant to be tools to address legitimate discovery

20   disputes.  Federal Rule of Civil Procedure 37(b) applies only in circumstances where a party "*fails*

21   *to obey*" a discovery order to provide or permit discovery.  FED. R. CIV. P. 37(b)(2)(c) (emphasis

22

23   [5] As a threshold matter, Plaintiffs' request for sanctions failures to comply with Civil L.R. 7-8.  Civil
     L.R. 7-8(a) states, *inter alia*, that any motions for sanction "must be separately filed", which
24   Plaintiffs have failed to do.  Further, sanctions were never discussed during the parties' meet and
     confers leading up to the filing of the prior motion or the Renewed Motion.  L.R. 7-8(c) states that
25   the motion for sanctions "must be made as soon as practicable after the filing party learns of the
     circumstances that it alleges make the motion appropriate," and therefore even assuming arguendo
26   that Plaintiffs' allegations are true (they are not), Plaintiffs' request for sanctions is untimely because
     Plaintiffs claim that Vade has violated the Court's discovery orders from January and April.  Indeed,
27   Plaintiffs' motion is barred by time because L.R. 7-8(d) states: "Unless otherwise ordered by the
     Court, no motion for sanctions may be served and filed more than 14 days after entry of judgment by
28   the District Court." It has been several months since the Court has entered the relevant discovery
     orders.

10

added); *Burnett v. Conseco Inc.*, 87 F. Supp. 3d 1238, 1244 (N.D. Cal. Apr. 9, 2015). Specifically, such sanctions may be imposed only if "a party has 'unequivocal notice' that a court has ruled certain documents be produced." *Burnett*, 87 F. Supp. 3d 1238 at 1247 (citing *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011); *Synopsys, Inc. v. ATopTech, Inc.*, 2015 U.S. Dist. LEXIS 65453, at *15, 20 (N.D. Cal. May 18, 2015) (denying relief under Rule 37(b) when there was no clear violation of a prior order). *But see Woods v. Google, Inc.*, No. C11-01263-EJD-HRL, 2014 U.S. Dist. LEXIS 113149, at *2 (N.D. Cal. Aug. 8, 2014) (issuing sanctions when a party flouted a court order expressly addressing relevancy objections). Vade has violated no such order here.

Notably, while Plaintiffs also request that the Court take the extraordinary measure of imposing sanctions in the form of civil contempt or coercive sanctions, they omit the applicable standard because it is not satisfied. To justify a finding of contempt, a court must determine that a party: "(1) violated a court order, (2) beyond substantial compliance, (3) not based on good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Koninklijke Phillips N.V. v. Elec-Tech Int'l Co.*, No. 14-cv-2737 BLF, 2015 U.S. Dist. LEXIS 14576, at *8 (Oct. 26, 2015). Plaintiffs do not even address these elements, much less meet their burden on each.

Lastly, and perhaps most remarkably, Plaintiffs seek an adverse inference before the close of fact discovery and before a single deposition has been taken in this matter. An adverse inference is "among the most severe sanctions a court can administer." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993-94 (N.D. Cal. 2012) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010) and collecting other cases). The grounds for such a drastic remedy, most often intentional spoliation, simply do not exist here.

At bottom, Plaintiffs cannot point to any conduct as it relates to the Court's Orders entered at ECF Nos. 112 and 149 or the parties' October 2 stipulation (which is not a Court order) that would warrant sanctions. Thus, the Plaintiffs' motion should be denied for the reasons set forth herein.

### 1. Vade Fully Complied with the Court's Orders

Plaintiffs request that the Court enter sanctions based on orders that were issued over nine months and six months ago, respectively. In particular, as explained above, the only orders at issue are the Court's orders entered as ECF Nos. 112 and 149, which were issued in January and April

11

2020 (the "Orders"). Plaintiffs take the position that those orders each addressed Plaintiffs' specific requests for source code and Vade's objections to those request on grounds such as relevancy, privilege, duplication, burden or expense. Plaintiffs go further and claim that those Orders required the production of all source code demanded by Plaintiffs, irrespective of the scope of the request. Plaintiffs' interpretation is not supported by the record, which viewed appropriately is dispositive of Plaintiffs' baseless claims for sanctions.

Contrary to Plaintiffs' assertions, the Orders only address whether the Federal Rules of Civil Procedure should govern discovery and when discovery should commence. Specifically, early in the case, Vade raised an objection to conducting discovery under the federal rules as it relates to Vade's documents because they originated from France and were subject to what is known as the "French Blocking Statute." (*See, e.g.*, Nov. 15, 2019, Ltr. from Rankin to Pak at 1-4, ECF No. 78-10.) Accordingly, Vade contended that discovery seeking Vade's documents and information should be conducted through a particular procedure under the Hague Convention. (*Id.*) Plaintiffs disagreed, and the parties engaged in motion practice on that singular issue. (ECF Nos. 78, 91.) The Court's order on that briefing solely addressed whether discovery should be governed by the Federal Rules of Civil Procedure. (ECF No. 112 at 4.) Plaintiffs' attempt to expand that ruling now to matters not even before the Court should be rejected.

Further, as outlined above, Vade properly filed Rule 72 objections and successfully obtained a stay of that order. (ECF No. 132.) That stay was not lifted until Vade's Rule 72 objections were resolved, as well as Vade's motion for protective order based on Plaintiffs' failure to make trade secret disclosures in compliance with § 2019.210 (ECF No. 128). Those issues were ultimately resolved in the Court's April 20 Order. (ECF No. 149.) In that Order, however, like the January 31 Order, the Court's holding was limited to affirming its determination that the Federal Rules of Civil Procedure should govern discovery and Plaintiffs had satisfied § 2019.210, nothing more. (ECF No. 149 at 12-16.) Accordingly, Plaintiffs reliance on *HRC-Hainan Holding Co., LLC v. Yihan Hu* is misplaced. No. 19-mc-80277-TSH, 2020 U.S. Dist. LEXIS 59282, at *15 (N.D. Cal. Apr. 2, 2020). Unlike in *Hainan* where multiple motions to stay were denied, here Defendants were successful on its stay of the Court's first Order. 2020 U.S. Dist. LEXIS 59282, at *2-3. (*But see* ECF No. 132

12

(granting Defendants' motion to stay discovery pending the resolution of Defendants' motion to reconsider the court's prior discovery order).)  So any time expiring between the January 31 order and the final resolution on April 20 of the pending motions was under the umbrella of a court-ordered stay.  Certainly, that conduct does not warrant the issuance of sanctions, and Plaintiffs cite no authority to the contrary.

Similarly Vade has at all times complied with the Court's April 20 Order.  Again, that Order simply held that discovery would be governed by the Federal Rules of Civil Procedure, and that discovery should commence "forthwith."  (ECF No. 149 at 13.)  While Vade did file Rule 72 objections and sought a stay of that Order,[6] it was also in the process of preparing documents and information for production.  (Martin Decl. ¶ 3.)  In fact, approximately 30 days after the Court's April 20 Order, Vade began producing tens of thousands of documents and was actively negotiating with Plaintiffs regarding the appropriate protocol for source code review in the middle of COVID-19, a unprecedented global pandemic that was shutting offices down around the globe.  (Martin Decl. ¶¶ 4, 5.)  Indeed, as of the date of this response, Vade has, among other discovery responses, made its source code available for more than 500 hours of review and has produced over 300,000 pages of documents. (Martin Decl. ¶¶ 8, 14.)  Plaintiffs cannot seriously question whether Vade has conducted discovery under the Federal Rules of Civil Procedure as required by the Orders, given their track record of delay and obfuscation in this matter as summarized above.

Further, Vade urges this Court to summarily dismiss Plaintiffs' request for this Court to impose sanctions for procedurally proper motion practice nine months ago.  *See Scalia v. City of Kern*, No. 17-cv-1097 JLT, 2020 U.S. Dist. LEXIS 178229, at *18-19 (Sept. 28, 2020) (noting that motions for sanctions should be filed as soon as the facts that give rise to the motion arise and a nine-month delay in seeking sanctions was untimely).  The notion that Plaintiffs were as troubled by Defendants' actions then as they claim to be now is a farce.  Indeed, at no time during that time

---

[6] Regarding Defendants' last motion to stay filed on May 4, 2020, as briefed in that motion, this very Court had recently granted motions to stay in the exact same context, and so Defendants reasonably relied on precedent. *See, e.g.*, *Perez v. Wells Fargo Bank, N.A.*, No. 17-cv-00454-MMC, 2018 U.S. Dist. LEXIS 27871, at *4 (N.D. Cal. Jan. 30, 2018) (Chesney, J.) ("Lastly, defendant's Motion to Stay, by which defendant seeks an order staying the above-referenced discovery pending resolution of the Motion for Relief, is hereby GRANTED.").

13

1   period did Plaintiffs seek sanctions when those requests for relief were actively being briefed and

2   heard by the Court.  Plaintiffs' inaction speaks volumes.  The only reason Plaintiffs raise those issues

3   now is to distract from the tenuous basis for their unwarranted discovery requests.  Plaintiff's motion

4   should be denied in its entirety.

5                    **2.      Vade Fully Complied with the Parties' Stipulation**

6            Some context is critical to evaluating the merits of Plaintiffs' claims.  The intent of the

7   Stipulation was to resolve the parties' numerous discovery disputes, the bulk of which were identified

8   in Plaintiffs' since-terminated motion to enforce (ECF No. 239).  With full knowledge of those

9   issues, both parties compromised.  Vade agreed to produce certain source code and Plaintiff agreed

10  to forego discovery it had sought and limit the scope of its some of its discovery demands.  Despite

11  having committed to the Stipulation, Plaintiffs now attempt to walk back on the compromise made

12  and make source code demands falling outside the scope of the Stipulation.  In the process, Plaintiffs

13  blatantly misrepresent communications between counsel that occurred before the Stipulation was

14  discussed or agreed upon.[7]

15          But setting aside all of the rhetoric in Plaintiffs' motion, and the flawed argument that the

16  parties' discovery dispute following the October 2 Stipulation forms the basis for Rule 37(b)

17  sanctions, Plaintiffs only identify two issues that arise from the Stipulation.  Neither issue has merit.

18                    **a.      Vade Has Produced all of the Code for Vade's O365 in
                               Accordance with the Stipualtion.**

19          The October 2 Stipulation provided that:

20          [P]ursuant to the compromise, ***Vade will provide all of the code for Vade
            Secure for O365*** to the extent not previously provided…for inspection by
            October 12, 2020.

21

22

23  (ECF No. 273) (emphasis added).  It is important to keep in mind that Plaintiffs have consistently

24  limit the scope of this suit to the spear phishing component of Vade's O365.  (*See supra* II.A.).

25  The entirety of Vade's O365 product includes numerous functionalities that have no relation to

26

27  ---
    [7] Unfortunately, Plaintiffs also mischaracterize Vade's counsel's statements in those exhibits.
    Contrary to Plaintiffs' express representation, nowhere in either Exhibit 20 or 21 does Vade's counsel
28  ever "refuse" to produce source code.  If anything, the correspondence shows Vade's good faith efforts
    to resolve these discovery disputes.

                                                    14

Plaintiffs' claims.  But as a matter of compromise, Vade agreed to produce "all of the code for Vade Secure O365."  (ECF No. 273.)

To put a finer point on what has been produced, Exhibit 26 of Plaintiffs' motion is a confidential presentation of Vade's various products and offerings.  (ECF No. 286-38.)  At slides 27-28, ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████:

## Office 365: Main Components

- **apiserver** - Main API server of VadeSecure Office365 which manages customer settings (and interactions with O365 graph)
- **adminserver** - Proxy in front of API server responsible of right checks and authentication
- **smtpserver** - SMTP server which handles Office365 journalization mail and process them (Filtering, Anti Spear Phishing, Rewrite URLs, Move into different folders)
- **safeproxy** - Process responsible of handling rewriten URLs and call IsItPhishing on it.
- **gui** - Graphic User Interface of VadeSecure Office365 product.
- **ElasticSearch** - Used to index filtering information
- **InfluxDB** - Used to store filtering statistics

(*Id.* at VS_0000014825.)  Vade has produced the source code for each of these components to the extent Vade maintains the source code, and has, in turn, complied with the Stipulation.  (Martin Decl. ¶¶ 15-16.)

Notably, Plaintiffs do not contend that source code for any of those components is missing. Rather, Plaintiffs now argue that Vade should have also produced code for ██████████████ ██████████████████████████████████  (ECF No. 286-4 at 8.)  Plaintiffs tellingly do not give any explanation about what those are or what functions they perform.  They certainly do not contend that they are parts of Vade O365's spear-phishing component or the NextGen MTA—the technologies Plaintiffs readily admit are at the heart of this suit.  (ECF No. 30-4 at 4-5.)  But it is clear from Exhibit 26 of Plaintiffs' own motion that ██████████████████████████████████ ██████████████████████████████.  (ECF No. 286-38 at VS_0000014800, 14802, 14808, 14810, 14813, 14815, 14821, 14824.)  Indeed, ██████████████████████████████████████

15

1

███████████████████████████████████████████

2 ████████. (Martin Decl. ¶ 25, Ex. 3, Declaration of Adrien Gendre ¶¶ 3-8.)  These offerings

3 that Plaintiffs now complain about fall outside the Stipulation. This is yet another example of

4 Plaintiffs' fishing for something to justify a lawsuit that should not have been brought in the first

5 instance.

6 **b.    Vade Also Produced Code Generated, Deleted, or Modified by Lemarie, Sejourne, Delamoy, and Boussinet**

7

8 The October 2 Stipulation provided that:

9 > [P]ursuant to the compromise, Vade will provide all code *portions* generated, deleted, or modified by Lemarie, Sejourne, Delannoy, and
10 > Boussinet to the extent not previously provided…as well as versions of the
11 > code sufficient to show the code *portions* before and after Lemarie,
> Sejourne, Delannoy, and Boussinet introduced changes and the impact of
12 > those changes, for inspection by October 19, 2020.

13 (ECF No. 273) (emphasis added).  The parties expressly agreed that Vade need not produce *all* of

14 the code generated, deleted, or modified by Lemarie, Sejourne, Delannoy, and Boussinet ("LSDB")

15 – only those "portions" that fall within those categories, including the "before and after" portions.

16 (ECF 273).

17 That is precisely what Vade did.  On October 19, Vade supplemented the source code

18 production with the portions of code "generated, deleted, or modified" by LSDB, as well as portions

19 around that code for context.  (Martin Decl. ¶ 17; *id.* ¶ 26, Ex. 4, Declaration of Dr. Brad Karp ¶¶

20 12-13.)    Plaintiffs own expert concedes that Vade produced the code in accordance with the

21 Stipulation.  (*See e.g.*, Declaration of Dr. Seth Nielson ¶ 17, ECF No. 286-44.)  Vade's expert has

22 further reviewed the produced code and verified that enough context has been provided to understand

23 the functionality of the code that was generated, deleted, or modified.  (Martin Decl. ¶ 26, Ex. 4,

24 Karp Decl. ¶¶ 12-13.)

25 Plaintiffs only complaint is that (*contrary to the Stipulation*) they are entitled to the "entire

26 *code file* that was modified or any of the code required for context" based on their earlier filed motion

27 to compel. (ECF No. 286-4 at 11) (emphasis added.)  This, however, directly contravenes the parties'

28 agreement, and no basis has been given that would warrant the production of entire code files that,

16

by Plaintiffs own admission, are not relevant to this action.  (Karp Decl. ¶ 14.)

### 3.     The Remaining Discovery Disputes Arose After the October 2 Stipulation

There is a third issue oddly raised by Plaintiffs and it relates to ████ source code files. But the Stipulation says nothing about these files and they are certainly not part of the Court's Orders. Thus, this argument does nothing to support the relief sought by Plaintiffs motion.  But in the interest of completeness, Vade will briefly address this argument here.

Once again, Plaintiffs' representations simply do not hold up against the record.  Contrary to their cries now, Vade provided over 100 ████ files for inspection in June 2020, and supplemented additional ████ files at Plaintiffs' repeated requests, despite relevancy objections. (Martin Decl. ¶ 18.)   Further, as yet another good faith compromise, Vade even supplemented ██████████████████████████████████████████████████, which saved the parties and the Court from the hassle of the challenge procedure prescribed by the Protective Order.  (Martin Decl. ¶ 19.)  Therefore, the demand for ████ files is moot.

### B.     Plaintiffs Are Not Entitled to the Production of any Additional Source Code.

In addition to being outside the scope of the parties' stipulation, Plaintiffs have not and cannot meet their burden for seeking additional source code files.   Under well-established Ninth Circuit law, when the requested "source code is a [defendant's] trade secret, plaintiffs have the burden to establish that it is both relevant and necessary" before disclosure can be granted.  *In re Apple & AT&TM Antitrust Litig.*, No. C-07-05152 JW (PVT), 2010 U.S. Dist. LEXIS 39637, at *7 (N.D. Cal. Mar. 26, 2010) (citing *Hartley Pen Co. v. U.S. District Ct.*, 287 F.2d 324, 328 (9th Cir. 1961)); *Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, No. C-10-05545 RMW, 2012 U.S. Dist. LEXIS 76468, at *11 (N.D. Cal. June 1, 2012).  Moreover, courts recognize that requests for *all* source code files is a burdensome request even for accused products, much less those that are not accused, as is the case here.  *See Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 U.S. Dist. LEXIS 96724, at *8-10 (N.D. Cal. Aug. 29, 2011).; *Blue Spike, LLC v. Vizio, Inc.*, No. 8:17-cv-01172-DOC-KESx, 2018 U.S. Dist. LEXIS 232314, at *12 (C.D. Cal. July 3, 2018) (holding that the defendants there did not have to produce all source code responsive to the plaintiff's overly broad

17

RFPs because the plaintiff "[did] not implicate all functions of the Accused Products."); *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 11cv1810 JLS (NLS), 2013 U.S. Dist. LEXIS 23378, at *39-40 (S.D. Cal. Feb. 20, 2013) (holding that the plaintiff there "has not shown that it needs to fully understand all the operations of [the defendants'] products as opposed to understanding only those aspects accused in the infringement claims.").

As set forth above, Plaintiffs are now seeking the production of all source code for a number of products and offerings that have at no point been at issue in this suit.  In particular, Plaintiffs are requesting *all* source code for ███████████████[8]███████████████ ███████████████.  Yet, Plaintiffs have consistently made clear that Plaintiffs' trade secret and copyright allegations have been limited to Vade's MTA and the anti-spear phishing and journaling aspects of Vade's O365 product.  (*See, e.g.*, Original Compl. ¶¶ 37-44, ECF No. 1;  Pls' Mot. for Preliminary Injunction p. i, ECF No. 31 ("As set forth in detail in the Proposed Order submitted with this motion, Plaintiff seeks an order . . . enjoining Defendant Lemarié from further involvement in development of Vade Secure's anti-spear phishing and MTA products until the resolution of this case"); Pls' trade secret disclosure at 11, ECF No. 144-3; Compl. ¶¶ 8, 37, 40-43, ECF No. 1.)

Indeed, after more than 15 months of litigation, and the filing of an Amended Complaint as recently as August 13, 2020, and despite Vade Secure's other products being published on Vade's website and known to Plaintiffs, Plaintiffs have not brought claims against any products besides Vade Secure for O365 and Vade Secure's MTA.  And it cannot be credibly disputed that these additional offerings that Plaintiffs attempt to add are separate from those products accused, and in fact, pre-date their creation by many years.  (Gendre Decl. ¶¶ 3-8.)  In truth, Plaintiffs are asking that the Court force Vade, Plaintiffs' competitor, to turn over entire source code files for products and offerings that are the most protected information within the company without any competent legal

---

[8] To clarify, Plaintiffs' expert states that Vade has produced the source code for its anti-spear phishing filter.  (Nielson Decl. ¶ 12, ECF No. 286-44 ████████████████████████████ ██████████  Indeed, Vade produced anti-spear phishing filtering code, as well other filtering code. (Karp Decl. ¶¶ 7-8.)  Plaintiffs' expert states that Vade has produced ███████████████████ ████████████████████████  (Nielson Decl. ¶ 8.)  Therefore, regarding the filter code, Plaintiffs' only contention is that "████████████████████████████████████."  (*Id.*)

1   basis for doing so.  Plaintiffs have not met their burden to force such an unduly prejudicial and

2   harrasing production.  *See Ameranth, Inc.*, 2013 U.S. Dist. LEXIS 23378, at \*39-40.

3        The two arguments that Plaintiffs make to the contrary are unavailing.  First, Plaintiffs rely

4   on pure speculation.  Specifically, Plaintiffs argue that their purported trade secrets "***could have been***

5   ***misappropriated by Defendants into . . . other Vade products.***"  The notion that Plaintiffs do not

6   need to provide any basis that the discovery it seeks is relevant (let alone reasonable) is contrary to

7   basic discovery principles. *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d

8   1001, 1017 (E.D. Cal. 2011) (noting that one reason behind Section 2019.20 is to constrain discovery

9   and facilitate case management).  And courts have refused to compel discovery of source code in

10  similar circumstances.  *In re Apple*, 2010 U.S. Dist. LEXIS 39637, at \*4–5 ("[P]laintiffs have not

11  met their burden and have not established that the additional source code sought is relevant and

12  necessary. Plaintiffs ***only speculate*** that the additional source code may be relevant. . . . At this

13  juncture, some (if not all) of plaintiffs' assertions appear to based on ***mere 'belief.'*").  Taking

14  Plaintiffs' statement to its logical conclusion, Plaintiffs are entitled to an endless, *carte blanche*

15  review of Vade's existing and future products—including those products that predate the engineers

16  at issue in this case joining Vade Secure.   Under applicable authorities, that cannot be the case.

17       Plaintiffs also argue to no avail that because Court's construe trade secret disclosures liberally

18  for purposes of discovery that somehow justifies Plaintiffs' speculative fishing expedition into a

19  competitors' source code.  The authorities relied upon by Plaintiffs are taken out of context and

20  simply do not stand for that proposition.  Rather, the standard is much higher as explained above,

21  and even a liberal construction cannot force Vade "to undertake burdensome measures merely for

22  the convenience" of Plaintiffs. *Kelora Sys., LLC*, 2011 U.S. Dist. LEXIS 96724, at \*9.  Vade would,

23  in fact, be subject to extreme burden if it has to produce the entire source code for Vade's content

24  filter, complete source code files for irrelevant products including any changes by the former

25  Cloudmark employees, and the entire source code for ██████████████████████████████████

26  ███████████.  Indeed, the parties' stipulation recognized the burden of producing the entireties of the

27  source code files for any changes by the former Cloudmark employees.  (Stipulation at 3, ECF No.

28  273.)  And courts have also recognized the overly burdensome nature of requests for *all* source code

for an accused product—as opposed to tailored requests for features that are actually at issue in the lawsuit. *Kelora Sys. LLC*, 2011 U.S. Dist. LEXIS 96724, \*8-10; *Blue Spike, LLC*, 2018 U.S. Dist. LEXIS 232314, at \*12.

Plaintiffs have, thus, failed to establish their need for production at all—much less that their need outweighs not just the burdens but also the risks associated with source code production. *Drone Tech., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) (recognizing that both burden and risks of disclosing source code should be considered in light of the proportionality requirements of Federal Rule of Civil Procedure 26); (Karp Decl. ¶ 10 ("I do not see in Dr. Nielson's declaration any specific explanation of why he cannot understand the produced code for the accused products and functionalities at issue in this dispute without the requested files, nor how precisely his gaining access to the requested files would enable such understanding.").) Vade Secure and Cloudmark are competitors, and Plaintiffs cannot justify the production of source code for products and technologies that are ***not accused in this lawsuit*** in view of the burdens and risks to Vade. *Drone Tech.*, 838 F.3d at 1300 n.13; (Karp Decl. ¶ 10.)

## IV.    CONCLUSION

For the foregoing reasons, Vade respectfully requests that the Court deny Plaintiffs' renewed motion to enforce the Court's January 31, 2020 and April 20, 2020 orders (ECF Nos. 112, 149) in its entirety, and grant Vade all other relief to which it is entitled.

1     Dated: October 30, 2020                             **BAKER & McKENZIE LLP**

2

3                                          By: /s/ *Mackenzie Martin*

4                                          Colin H. Murray (SBN 159142)
                                          colin.murray@bakermckenzie.com

5                                          **BAKER & McKENZIE LLP**
                                         Two Embarcadero Center, 11th Floor

6                                          San Francisco, CA  94111-3802
                                         Telephone:   +1 415 576 3000

7                                          Facsimile:   +1 415 576 3099

8                                          Danielle L. Benecke (SBN 314896)
                                         danielle.benecke@bakermckenzie.com

9                                          **BAKER & McKENZIE LLP**
                                         600 Hansen Way

10                                         Palo Alto, CA  94304
                                        Telephone:   +1 650 856 2400

11                                         Facsimile:   +1 650 856 9299

12                                         Jay F. Utley (Admitted *Pro Hac Vice*)
                                         jay.utley@bakermckenzie.com

13                                         Bart Rankin (Admitted *Pro Hac Vice*)
                                         bart.rankin@bakermckenzie.com

14                                         Mackenzie M. Martin (Admitted *Pro Hac Vice*)
                                         mackenzie.martin@bakermckenzie.com

15                                         John G. Flaim (Admitted *Pro Hac Vice*)
                                         john.flaim@bakermckenzie.com

16                                         Chaoxuan Liu (Admitted *Pro Hac Vice*)
                                         charles.liu@bakermckenzie.com

17                                         Mark Ratway  (Admitted *Pro Hac Vice*)
                                         mark.ratway@bakermckenzie.com

18                                         **BAKER & McKENZIE LLP**
                                        1900 North Pearl Street, Suite 1500

19                                         Dallas, Texas 75201
                                        Telephone:   +1 214 978 3000

20                                         Facsimile:   +1 214 978 3099

21                                         Shima S. Roy
                                        shima.roy@bakermckenzie.com

22                                         **BAKER & McKENZIE LLP**
                                        300 East Randolph Street, Suite 5000

23                                         Chicago, Illinois  60601
                                        Telephone:   +1 312 861 8000

24                                         Facsimile:   +1 312 861 2899

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alexander Brauer (appearance pro hac vice)
TX SBN 24038780
abrauer@baileybrauer.com
**BAILEY BRAUER PLLC**
8350 N. Central Expressway
Suite 650
Dallas, Texas 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7435

*Attorneys for Defendants,*
*Vade Secure, Incorporated and Vade Secure SASU*