UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| PROOFPOINT, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED, et al.,<br><br>    Defendants. | Case No. 19-cv-04238-MMC (RMI)<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 287, 348 |

Now pending before the court is Plaintiffs' sanctions motion (dkts. 287, 348) seeking attorneys' fees and costs due to the failure by Vade Secure, Inc., and Vade SASU (collectively, "Vade") to produce certain source code in discovery even months after the court entered orders granting Plaintiffs' motion to compel that source code. Recently (*see* dkt. 334), the court imposed a tiered regime of coercive sanctions that were designed to either persuade Vade to comply with the court's orders, or to endure contempt proceedings and possibly an adverse inference instruction. Vade appears to have complied (*see* dkts. 342, 343, 344). Plaintiffs now seek attorneys' fees and costs in the amount of $106,428.60. *See* Ltr. Br. (dkt. 348) at 7. For the reasons stated below, Plaintiffs' request for fees and costs is granted in the amount of $95,785.74.

## **BACKGROUND**

The course of events that brought the Parties to the doorstep of their current dispute about Plaintiffs' request for fees and costs imparts the impression that throughout the discovery phase of this case, Vade mounted a campaign designed to delay, impede, and frustrate Plaintiffs' access to its source code. The campaign was ultimately unsuccessful, however, along the way, a great deal of Plaintiffs' time and resources (as well as the court's time and resources) were squandered

needlessly. This course of events was described in greater detail in a previous order wherein the court imposed the above-described tiers of coercive sanctions that were designed to put an end to the seemingly endless delays occasioned by Vade's tactics (*see* dkt. 334 at 2-7). For present purposes, the court will only venture to recapitulate the highlights. More than a year ago, Plaintiffs tendered discovery requests that included requests to inspect *all* of Vade's source code for its O365 and MTA products. Vade refused. In response to Plaintiffs' motion to compel the production of that source code, Vade only raised an objection to the effect that French law precluded the production of that information in the United States, and that Plaintiffs should be made to seek access to this material in France, through Hague Convention procedures, and under the supervision of a French magistrate. The undersigned rejected that argument and granted Plaintiffs' motion to compel. Vade's next move was to file a pair of inconsistent motions through which Vade sought *both* reconsideration of that order by the undersigned, and for relief from that order by Judge Chesney. In both of those dueling motions, Vade asserted that the General Standing Order of the undersigned had unfairly precluded Vade from presenting certain declarations about French law which the undersigned believed had been adequately described in Vade's letters briefs, and that were ultimately of little import in that they were repetitive and unpersuasive.

Given that the docket had been littered with both a motion for leave to file a reconsideration motion which was addressed to the undersigned, and a motion for relief addressed to the District Judge, the motion for relief was denied without prejudice to refiling following the proceedings on the reconsideration motion. At this point, the undersigned granted the motion for leave to file a reconsideration motion in order to entertain and consider each of Vade's attached declarations and exhibits about French law. In what was supposed to be a simple "reconsideration motion," Vade decided, for the first time, to present a newly formulated objection. Namely, in addition to re-arguing the point that French law prohibited Vade from producing its source code for inspection in America, Vade argued that Plaintiffs' motion to compel should also be denied because Plaintiffs had supposedly failed to adequately identify the trade secret alleged to have been stolen by Vade in this case as required by California law. When the undersigned rejected

2

both of these arguments, Vade then chose to abandon its hard-fought arguments about French law, and only sought review of the portion of the order compelling production of the discovery in question on grounds that the undersigned had erred in rejecting Vade's argument about the adequacy of Plaintiffs' identification of the allegedly stolen trade secrets at the heart of this case. Shortly thereafter, in mid-May of 2020, Judge Chesney denied Vade's motion for relief from the order.

Four months later, when Plaintiffs discovered that Vade was continuing to withhold source code, they were forced to file motions for enforcement of the court's orders compelling the production of Vade's source code, while also moving for sanctions. The undersigned held a hearing (dkt. 255) in late September and made it clear that sanctions would be forthcoming. In an effort to avoid sanctions, Vade and Plaintiffs entered into a stipulation (which was approved by the undersigned and rendered into yet another order of the court) (*see generally* dkt. 273), and through which Vade agreed – "pursuant to the compromise" – to make the source code in question available for inspection in exchange for Plaintiffs' withdrawal of the motions for enforcement and sanctions. By late October, however, it appeared that Vade had either reneged or had experienced yet another change of heart because Plaintiffs were forced to renew their motions for enforcement and for sanctions due to Vade continuing to withhold portions of the source code in question on grounds of relevance. The undersigned held one hearing on October 27, 2020, in order to resolve the Parties' disagreements about the schedule under which they would brief their disagreements about Vade's newly presented relevance objections, as well as pertaining to Vade's own motion to compel relating to its desire to use a foreign-based expert to review Plaintiffs' source code outside the United States. A few days later, the latest round of briefing was complete, and the undersigned held a second hearing on the substance of Plaintiffs' enforcement and sanctions motions. During this hearing (as well as throughout its briefing) Vade essentially took the position that it was able to keep various objections in its pocket, presenting them in piecemeal fashion, such as to force Plaintiffs and the court to deal with multiple motions to compel the same discovery, based on a timetable of Vade's choosing, depending on which objection Vade chose to pull out of its pocket in its response to each potential motion to compel. In other words, Vade appeared to not appreciate

the fact that it had abandoned any and all objections that were not presented in opposition to Plaintiffs' motion to compel which had been granted many months earlier.[1] This being a patently incorrect view of what is a very basic legal proposition, the undersigned once again ruled against Vade, and imposed a daily fine for Vade's noncompliance, along with an order to produce the materials in question forthwith, coupled with an imminent threat of certification of the issue of civil contempt for Judge Chesney's determination as well a recommendation for an adverse inference instruction if the daily fine proved inadequate. *See generally* Order of November 11, 2020 (dkt. 334). Vade did not seek relief from that order, and the time for doing so has long since passed. Instead, Vade appears to have complied in finally making the source code in question available for inspection by Plaintiffs' expert.

Thereafter, pursuant to instructions given by the undersigned, the Parties submitted their respective positions regarding the remaining issue of Plaintiffs' request for the reimbursement of its attorneys' fees and costs occasioned by Vade's months-long refusal to abide by the court's orders granting Plaintiffs' motion to compel inspection of Vade's source code. While Plaintiffs could have sought attorneys' fees and costs for various units of expenses incurred during the year that has passed since serving Vade with the discovery requests in question, Plaintiffs have elected to only seek the recovery of fees and expenses incurred in connection with a small subset of the fees and costs they have incurred due to Vade's unreasonable approach to the discovery process – namely: (1) the initial motion to enforce the court's previously entered discovery orders; (2) Vade's later-retracted compromise in exchange for the withdrawal of the enforcement motion; (3) Plaintiffs' withdrawal of those motions; (4) Plaintiffs' investigation and discovery that Vade had still failed to produce all of the source code in question; (5) Plaintiffs' renewed motion for enforcement and sanctions; (6) the court hearings dealing with the briefing schedules and the substance of the renewed motions for enforcement and sanctions; (7) dealing with Vade's opposition to the renewed motions for enforcement and sanctions; and, (8) Plaintiffs' reply brief including the supporting declaration of their expert witness, Seth Nielson, Ph.D. (*see* Ltr. Br. (dkt.

---

[1] Incidentally, Vade's mulish adherence to this view somehow continues to this day and appears to be unshakable (*see* Ltr. Br. (dkt. 348) at 8-10).

348) at 3-4).

## DISCUSSION

Vade presents a series of objections, the first of which is little more than the expression of disagreement with the court's recent decision that any objections that Vade failed to present in its opposition to Plaintiffs' motion to compel were abandoned. *See* Order of November 11, 2020 (dkt. 334) at 7-8 (finding that Vade had abandoned any and all objections (including relevance) that were not asserted in the opposition to Plaintiffs' motion to compel.). Since Vade only opposed Plaintiffs' motion to compel the production of, *inter alia*, all of the source code contemplated by RFP Nos. 1, 2, and 7-10, on grounds that that French law prohibited the disclosure of that information, and also that California law required a more detailed elaboration of Plaintiffs' allegedly stolen trade secrets, any other objections not presented in opposition to Plaintiffs' motion to compel were abandoned. *See id*. In short, the court found that to conclude otherwise would mean that Vade can raise objections "in a piecemeal fashion whenever they chose to do so, such as to draw out the course of discovery in this case over a large period of time while requiring this court to entertain and adjudicate multiple motions to compel the same discovery requests." *Id*. at 1. As mentioned above, if Vade disagreed with this holding it should have sought review and pursued relief from Judge Chesney, however, Vade chose not to do so. Instead, Vade's principal objection to Plaintiffs' request for attorneys' fees and costs appears to be little more than an expression of Vade's disagreement with that holding.

Vade also adds an unpersuasive argument to the effect that its unusual approach to the piecemeal presentation of objections "was reasonable and not undertaken in bad faith in an attempt to evade this Court's orders." *See* Ltr. Br. (dkt. 348) at 7. Thus, Vade maintains that "reasonable people could differ about the appropriateness of the contested action." *Id*. at 8 (internal quotation marks and punctuation omitted). The asserted basis for this argument is Vade's contention that, prior to the filing of Plaintiffs' motion to compel, Vade had lodged a relevance objection through correspondence between the parties, and that "Plaintiffs' motion to compel did not address any of Vade's objections to the individual requests." *Id*. at 9. Vade, therefore, faults Plaintiffs' motion to compel for failing to address Vade's privately asserted relevance objection – as Vade puts it, "an

5

objection which Plaintiff had never challenged." *Id*. The court disagrees because Vade's suggestion has no basis in the law. First, the court will note that once a moving party establishes that the information sought through a motion to compel is within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See* e.g., *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI), 2020 U.S. Dist. LEXIS 211706, at *13 (N.D. Cal. Nov. 11, 2020); *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014); and, *Dominguez v. Schwarzenegger*, No. C 09-2306 CW (JL), 2010 U.S. Dist. LEXIS 94549, at *10 (N.D. Cal. Aug. 25, 2010). Second, the court will once again remind Vade that "[w]hen ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon *in response to the motion* . . . [and] generally deems objections initially raised but not relied upon in response to the motion as abandoned. It deems objections not initially raised as waived." *Proofpoint, Inc.*, 2020 U.S. Dist. LEXIS 211706, at *14 (emphasis in original) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999); *Hupp v. San Diego Cnty.*, 2014 U.S. Dist. LEXIS 52741, 2014 WL 1404510, at *7 (S.D. Cal. Apr. 10, 2014); *Bryant v. Armstrong*, 285 F.R.D. 596, 604 (S.D. Cal. 2012) (addressing only the objections raised in a party's opposition to a motion to compel where the party raised multiple boilerplate objections in its initial responses to discovery requests, but did not support or explain those objections in its opposition to a motion to compel); *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n.16 (D. Kan. 2004) ("objections initially raised but not relied upon in response to a motion to compel are deemed abandoned"); *In re Toys "R" Us - Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 U.S. Dist. LEXIS 130884, 2010 WL 4942645, at *3 (C.D. Cal. July 29, 2010) (same)). In the end, the court finds that there is no room for reasonable disagreement about the fact that Vade abandoned the objections it may have wished to pursue in opposing Plaintiffs' motion to compel. Unfortunately for Vade, its effort, at this stage, to retrospectively reshape the law such as to put the onus on Plaintiffs to "challenge" Vade's previously-asserted boilerplate objections in their motion to compel is unavailing. Therefore, Vade's contention that "[a]n attorneys' fees award is

improper because Vade's failure to comply with the Discovery Orders was substantially justified" (*see* Ltr. Br. (dkt. 348) at 8-10) lacks any foundation in the law or the facts.

Vade next contends that Plaintiffs have failed to establish the reasonableness of their fees, and that, in any event, Plaintiffs' attorneys' hourly rates are unreasonable because they exceed the prevailing rates in the community. *See id*. at 14-18. The court disagrees. Plaintiffs' counsels' declarations and supporting materials show that they are experienced and seasoned practitioners; that they are employed at a large international firm with a highly regarded reputation; that they have highly specialized technical backgrounds as one might expect from attorneys practicing in this particular domain of intellectual property law; and, that their hourly rates range from approximately $590 per hour to approximately $675 per hour for associates, and from approximately $880 per hour to approximately $915 per hour for more senior attorneys. The court finds that these rates are reasonable for the type of work involved in this case. Specifically, these hourly rates are well within (if not below) the range of prevailing rates in this district for attorneys of comparable skill, experience, and reputation. *See e.g., Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 U.S. Dist. LEXIS 206507, at *31 (N.D. Cal. Nov. 4, 2020) (finding that rates between $425 and $695 for associates, and $830 and $1,275 for partners, are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 U.S. Dist. LEXIS 213045, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates ranging from $650 to $1,250 for partners or senior counsel, and $400 to $650 for associates); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 U.S. Dist. LEXIS 80261, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) (noting that "district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable."); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals "given the complexities of this case and the extraordinary result achieved for the Class"); *see also Perfect 10, Inc. v. Giganews, Inc.*, CV 11-

7

07098-AB (SHX), 2015 U.S. Dist. LEXIS 53681, 2015 WL 1746484, at *20-21 (C.D. Cal. Mar. 24, 2015) (finding reasonable hourly fees in an intellectual property case for partners from $610 to $930, and for associates from $360 to $690). Consequently, the court finds no merit in Vade's suggestion that the hourly rates charged by Plaintiffs' counsel are excessive.

Vade also contends that the number of hours spent is unreasonable for various reasons. *See* Ltr. Br. (dkt. 348) at 10-24. In short, whereas Plaintiffs seek an award of $106,428.60 in attorneys' fees based on nearly 140 hours of attorney time, Defendants contend that any attorneys' fee award should not exceed $10,012.00 once a series of adjustments are made to slash the hourly rates claimed as well as the number of hours expended. As mentioned above, the expenditure of approximately 138 hours of attorney time produced: (1) the researching, drafting, editing, revising, and filing of initial motion to enforce the court's previously entered discovery orders; (2) the negotiating and implementing of Vade's later-retracted compromise in exchange for the withdrawal of the enforcement motion; (3) Plaintiffs' withdrawal of those motions; (4) Plaintiffs' subsequent investigation and discovery that Vade had still failed to produce all of the source code in question; (5) Plaintiffs' preparation and filing of the renewed motion for enforcement and sanctions; (6) preparing for and attending the two court hearings dealing with the briefing schedules and the merits of the renewed motion for enforcement and sanctions; (7) dealing with Vade's opposition to the renewed motion for enforcement and sanctions; and, (8) the preparation and filing of Plaintiffs' reply brief including the supporting declaration of their expert witness, Seth Nielson, Ph.D. *See id*. at 3-4. While the $106,428.60 amount sought by Plaintiffs may be attended with a very slight measure of overstaffing, and where it may be possible to conclude that the same amount of work might have possibly been accomplished with a modest reduction of the total time invested, Vade's suggestion that the fee award should not exceed a total of $10,012.00 is unreasonable.

In this vein, Vade expends a great deal of energy in nitpicking every minute detail of Plaintiffs' fee request, from criticizing each attorneys' rate as unreasonably high (*see id*. at 14-18), to second-guessing who among Plaintiffs' legal team should or should not "have taken the laboring oar on drafting the renewed motion" – claiming in essence that too much of the work was

8

done by senior attorneys rather than more junior members of the legal team (*see id*. at 11-13). Vade also contends that Plaintiffs' counsel should not be compensated for their meet and confer efforts because those efforts are required by court rules (*see id*. at 11), however, the court finds that those meet and confer sessions would not have been necessary but for Vade's unreasonable view that it could withhold objections from its response to a motion to compel such as to present them in a piecemeal fashion and on a timetable of its own choosing. Having reviewed and considered each of Vade's objections, each objection is **OVERRULED** outright, with the exception to the objection that the total number of hours expended may exceed the minimum number of hours that would be reasonably expended to deal with Vade's refusal to tender the discovery in question. As described below, the court will make a 10% adjustment to the total amount sought by Plaintiffs in order to account for what the court finds to be the difference in how Plaintiffs' legal team chose to staff this case versus what the court finds to be the minimum number of reasonably expended hours on the tasks for which Plaintiffs seek this fee award. In this regard, it is well established that a "district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court adopted the lodestar method for calculating attorneys' fee awards. The lodestar is determined by multiplying the number of hours reasonably expended on a particular task by what the court determines to be a reasonable hourly rate. *Id*. at 433. When determining the reasonable hourly rate, courts look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("The prevailing market rate in the community is indicative of a reasonable hourly rate."). The party seeking attorneys' fees must provide "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). A declaration regarding the prevailing rate in the relevant community is sufficient to establish a reasonable hourly rate. *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998). In cases where a party fails to

meet its burden of establishing the reasonableness of the requested rates, the court may exercise its discretion to determine reasonable hourly rates based on its own experience and knowledge of prevailing rates in that community. *See Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 (MMM) (RZX), 2009 WL 605789 at *5 (C.D. Cal. Mar. 9, 2009); *see also Moreno v. Empire City Subway Co.*, No. 05 Civ. 7768 (LMM) (HBP), 2008 WL 793605 at *7 (S.D. N.Y. Mar. 26, 2008) (same).

In addition to establishing a reasonable hourly rate, the prevailing party in a discovery dispute seeking attorneys' fees also "bears the burden of proving that the fees and costs taxed are reasonably necessary to achieve the result obtained." *Rucker v. Air Ventures, Hawaii*, LLC, No. CV 16-00492 HG-KSC, 2017 WL 4158201, * 3 (D. Haw. Sept. 19, 2017) (citing *Tirona v. State Farm Mut. Auto Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993)). The reviewing court then scrutinizes the submitted time records in order to determine whether the number of hours expended were reasonably necessary and adequately documented. *See True Health Chiropractic Inc. v. McKesson Corp.*, Case No. 13-cv-02219-HSG (CMR), 2015 WL 3453459, at *1 (N.D. Cal. May 29, 2015). In cases where the documentation provided by the fee applicant is inadequate, "the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Work entries are inadequately documented when they are vague such that the reviewing court is unable to discern how the time spent is attributable to the matter at hand. *See Center for Food Safety v. Vilsack*, No. C-08-00484 JSW (EDL), 2011 U.S. Dist. LEXIS 144428, 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011). In this context, billing records will be unacceptably vague when they characterize the claimed work – such as labeling a time entry as a "conference," or "review" – without venturing to describe the subject of the conference, or the nature of the review. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2020 U.S. Dist. LEXIS 163603, at *207-08 (N.D. Cal. Sep. 8, 2020); *see also Prineville Sawmill Co. v. Longview Fibre Co.*, No. CV 01-1073-BR, 2003 U.S. Dist. LEXIS 28539, 2003 WL 23957141, at *2 (D. Or. 2003). Lastly, it should be noted that absolute precision is not required when calculating an award of attorneys' fees; instead, it is only incumbent on a reviewing court to give "some indication of how it arrived at its figures and the amount of the award [that it found to

10

be] necessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). In fact, not only is absolute precision not required, the Supreme Court has specifically instructed courts in this context that "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The reason the Supreme Court has countenanced this "rough justice" approach is to effectuate the notion that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. In the end, this court is directed to take into account its overall sense of the case, and, where necessary, to use estimates in calculating and allocating an attorneys' time expenditures in light of its understanding of the nature and requirements of the litigation because, "[a]s the Supreme Court declared, '[w]e can hardly think of a sphere of judicial decision-making in which appellate micromanagement has less to recommend it.'" *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (quoting *Fox*, 563 U.S. at 838).

With these teachings in mind, the court makes the following findings. First, the court notes that it has already found that the hourly rates charged by Plaintiffs' counsel are reasonable and that Vade's objections to the contrary are **OVERRULED**. Second, the court finds that a reasonable approximation of the amount of reduction that may be applied to Plaintiffs' fee request, to impart confidence that the ultimate fee award is the minimum reasonable amount (such as to account for what appears to be a very modest degree of overstaffing), is a 10 percent reduction, resulting in an attorneys' fees award of $95,785.74.

The remaining question is who should be made to pay this attorneys' fee award, Vade or its counsel. By rule, for failure to obey a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(a)(5)(A) (mandating the assessment of attorneys' fees against a party or the attorney advising that party in cases where a motion to compel is granted). Thus, the rule identifies attorneys

11

advising or overseeing discovery as possible subjects of attorneys' fees sanctions, along with their clients, and vests trial courts with broad discretion to apportion fault between them. *See e.g., DeVaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1161-62 (11th Cir. 1993) ("The phrase 'attorney advising such conduct' does not, however, exclude either an attorney's willful blindness or his acquiescence to the misfeasance of his client; to the contrary, the phrase instructs that when an attorney advises a client in discovery matters, he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process. Sanctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar."). When choosing how to make this allocation, courts are directed to follow an approach "designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged." *Excel Fortress, Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2019 U.S. Dist. LEXIS 180856, at *18-19 (D. Ariz. Oct. 18, 2019) (quoting *Matter of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984)); *see also Resolution Trust Corp. v. Williams*, 165 F.R.D. 639, 1996 U.S. Dist. LEXIS 4479 (D. Kan. 1996) (Under FRCP 37(b), courts may impose sanctions against either party or party's counsel, whoever is responsible for conduct that gives rise to imposition of sanctions).

During the hearing on this motion, conducted on December 16, 2020 (dkt. 372), the court sought to elicit from Vade's counsel sufficient information in order to determine how to make the allocation between Vade and its counsel for the payment of Plaintiffs' attorneys' fees. Counsel for Vade simply reiterated his belief that any fee award would be unwarranted, but that if the court disagreed, the court should use its discretion in making that allocation. Accordingly, Plaintiffs' motion for the payment of attorneys' fees is **GRANTED** in the amount of $95,785.74. Vade and its counsel at Baker & McKenzie are jointly and severally liable for making this payment to Plaintiffs no later than 14-days after the entry of this order.

//

//

1    **IT IS SO ORDERED.**

2    Dated: December 17, 2020

_____
ROBERT M. ILLMAN
United States Magistrate Judge