[Counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>  Plaintiffs,<br><br>  vs.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>  Defendants. | CASE NO. 3:19-cv-4238-MMC-RMI<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Date:       March 12, 2021<br>Time:      10:30 a.m.<br>Location:  Teleconference |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil L.R. 16-9, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and the Court's Case Management Scheduling Order, the parties to the above-titled action, Plaintiffs Proofpoint, Inc. and Cloudmark LLC (collectively, "Proofpoint" or "Plaintiffs") and Defendants Vade Secure, Incorporated, Vade Secure SASU (collectively, "Vade Secure"), and Olivier Lemarié (Mr. Lemarié and Vade Secure, collectively, "Defendants"), jointly submit this Joint Case Management Statement in advance of the Case Management Conference on March 12, 2021.

1. **JURISDICTION AND SERVICE**

This Court has subject matter jurisdiction over Plaintiffs' federal trade secret misappropriation and copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), respectively; the trade secret laws of the United States, 18 U.S.C. §§ 1836 and 1839 *et seq*; and the copyright laws of the United States, 17 U.S.C. § 101 *et seq*. This Court has extraterritorial jurisdiction over Plaintiffs' claims against Vade Secure SASU pursuant to 18 U.S.C. § 1837(2). The Court has supplemental jurisdiction over Plaintiffs' state law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative fact. For purposes of this lawsuit only, the parties do not dispute personal jurisdiction, venue, or service. By this statement, Defendants do not concede that Plaintiffs have adequately stated a claim for misappropriation. All parties have been served.

2. **FACTS**

**Plaintiffs' Statement**: As set forth in more detail in Plaintiffs' First Amended Complaint (Dkt. 219), responses to Defendants' interrogatories, and recently served opening expert reports, this action arises from Defendants' misappropriation of Plaintiffs' trade secrets and infringement of Plaintiffs' copyrights, as well as Defendant Lemarié's breach of contractual obligations related to acts of misappropriation and infringement. Defendant Lemarié was Plaintiff Cloudmark's former Vice President of Gateway Technology, during which time he led the design and development of numerous Cloudmark technologies, including without limitation Cloudmark's Trident (a cutting-edge email security product targeting spear phishing and other malicious email attacks) and Cloudmark Gateway Mail Transfer Agent ("MTA") (an intelligent message routing platform based on technology acquired

by Cloudmark from Defendant Lemarié's former company, Bizanga Ltd.). While at Cloudmark, Mr. Lemarié also worked on developing product roadmaps and future feature planning, including architectural designs and planned improvements for a cloud-enabled version of the Cloudmark MTA.

In November 2016, Defendant Lemarié abruptly resigned from Cloudmark and, within months, emerged as the Chief Technology Officer at Vade. Notably, Mr. Lemarié's arrival at Vade was preceded by several other former Cloudmark employees who had also worked on the Cloudmark MTA, Trident, and other Cloudmark technologies, including Vade's now Vice President of Engineering, Xavier Delannoy, Lead Technical Architect, Alexandre Boussinet, and Head of Product Management (Service Providers), Guillaume Séjourné. Defendant Lemarié and the former Cloudmark employees' arrivals at Vade were followed by a succession of rapid product and feature announcements starting in late 2018 with the announcement and release of Vade Secure for Office 365, followed by the announcement of feature extensions to the Vade Secure Content Filter, and Vade's MTA Builder, all of which have been advertised as including features and technologies that closely mirror the technologies for which Defendant Lemarié oversaw development at Cloudmark.

In early 2019, Plaintiffs learned of Vade's newly announced technologies, and their alarming similarity to those Mr. Lemarié and the other former Cloudmark employees had worked on while at Cloudmark. Thus, in July 2019, Plaintiffs filed this lawsuit for misappropriation of Plaintiffs' trade secrets, which were developed over many years by many engineers and programmers, had been kept secret using objectively reasonable measures to preserve secrecy, and all of which have independent economic value (including, without limitation, to competitors such as Vade, who can leverage the trade secrets to release products more quickly and at a fraction of the cost). And contrary to Defendants' assertions, the trade secrets have been identified with specificity—first in response to interrogatories Defendants served for the first time in March 2020, *after* this Court denied Plaintiffs' motion for preliminary injunction. The Court affirmed the sufficiency of those disclosures (*see* Dkts. 149, 159), and Plaintiffs have since answered subsequent interrogatories providing additional detailed information supporting Plaintiffs' claims. Thus, Defendants' claim that they "*still*" do not know what is at issue in this case is belied by the fact that Plaintiffs have served detailed interrogatory responses spanning over 70 pages that identify specific evidence of misappropriation of specific trade secrets,

with specific citations to source code, documents, and other evidence—all of which clearly elucidate the scope and identification of the trade secrets and Defendants' misappropriation thereof.[1]

Indeed, discovery has revealed that Vade's rapid development of its technologies was led by Defendant Lemarié and Messrs. Delannoy, Boussinet, and Séjourné, and that the development of these technologies by Vade has substantially leveraged—and in some instances directly copied from—Plaintiffs' trade secrets and source code, including Plaintiffs' development plans and architectural designs for future technologies. Defendant Lemarié himself has admitted to accessing and copying Cloudmark source code into Vade's products in at least 2018. Accordingly, Plaintiffs amended their original complaint to add copyright infringement claims directed to this and other instances of copying by Defendants. Similarly, Vade's VP of Engineering, Xavier Delannoy, has also admitted to taking highly confidential reports and information from Cloudmark and using them at Vade, including to advocate for development of new products that Vade intends to use to displace Plaintiffs.

As a result of his misappropriation and infringement at Vade, Defendant Lemarié concomitantly failed to comply with his contractual obligations to Cloudmark, including relating to, *inter alia*, his agreement to maintain and preserve Cloudmark confidential information and return the same to Cloudmark upon his departure. For example, Plaintiffs have learned that Defendant Lemarié left Cloudmark and failed to return Cloudmark confidential materials that he saved to his laptop and at least one backup server at his home. Even after Defendant Lemarié became CTO at Vade, he maintained his access to the Cloudmark confidential materials, and accessed them in order to copy Cloudmark source code for Vade's benefit. Forensic discovery into Mr. Lemarié's devices is still

---

[1] Defendants complain about the number of trade secrets and distinct combinations identified by Plaintiffs, yet the total number of trade secrets is a direct result of their own failure to provide any meaningful response to Plaintiffs' interrogatories seeking the basis of their defenses. For example, Vade provided its position on alleged general knowledge of the trade secrets for the first time in a supplemental response served on the last day of fact discovery, yet even then did not provide any substantive explanation of what prior publication or system discloses each of the trade secrets or how. Instead, Vade provided vague assertions and a blanket citation to over 2,500 documents and websites totaling over 50,000 pages of documents—essentially telling Plaintiffs to go fish. Even now, Vade claims "the evidence establishes that Plaintiffs' purported trade secrets are old concepts known and widely used publicly in the industry," yet Vade has never explained what specific evidence they are referring to or how such evidence relates to each trade secret. Nevertheless, Plaintiffs' experts have reviewed the citations and rebutted any notion that the trade secrets were known in the industry.

1  ongoing and may reveal further misappropriation and contractual breaches.

2        As a result of Defendants' wrongdoing, Plaintiffs have suffered and continue to suffer irreparable harm, which cannot be fully remedied by monetary damages, at least because Vade continues to benefit from its use of Plaintiffs' trade secrets to directly compete with Plaintiffs (and thereby gain the benefit of additional customer email streams that allow further improvements to Vade's technology to Plaintiffs' detriment).  Thus, injunctive relief is necessary to prevent further harm to Plaintiffs, including the continued misappropriation and dissemination of trade secrets.  While monetary damages cannot fully compensate for Defendants' wrongdoing, Plaintiffs' economics expert has calculated a minimum amount of damages, including for the unjust enrichment to Vade from sales of certain products that have utilize or otherwise benefited from Plaintiffs' trade secrets (i.e., Vade for Office 365, MTA Builder, and Content Filter), lost profits in the form of price erosion from discounts Plaintiffs had to offer as a result of Vade's direct competition using Plaintiffs' trade secrets, and compensation Mr. Lemarié received and kept, despite his breach of key employment agreements.

      Accordingly, this case is primarily about 1) the misappropriation of Plaintiffs' trade secrets—which Plaintiffs have explained include their specific implementation and proposed improvements of various combinations of features relating to malicious email detection, specific implementations of a "reputation" framework for efficiently and effectively tracking a history of communications to identify malicious emails, proprietary implementation of integrating malicious email detection with Microsoft Office 365 email, a unified architecture for detecting malicious email and associated functionalities, architectural designs for a cloud-based MTA, and information contained in a number of highly confidential reports taken by Mr. Delannoy and distributed within Vade; 2) the infringement of Plaintiffs' copyrights, and 3) Defendant Lemarié's breaches of contract.  Although Vade has raised numerous counterclaims directed to commercial disparagement, antitrust, and tortious interference, among others, discovery has revealed what Plaintiffs have known all along:  there is zero evidentiary basis for any of Vade's counterclaims, and those counterclaims should be dismissed from this case.

      **Defendants' Statement**: Vade Secure was founded in 2008 and is focused on developing and offering email security solutions to protect customers' email boxes from a variety of malicious attacks.  One of the first products developed and offered by Vade Secure was its Content Filter, which has been

the cornerstone of Vade Secure since 2008. In addition to the Content Filter, Vade Secure has continued to develop innovative email security products and solutions directed to, for example, mail transfer agent (MTA) technology, anti-spam, anti-virus, anti-phishing, anti-spear phishing, and anti-malware, using techniques such as heuristics, machine learning, and behavioral analysis. In June 2018, Vade Secure released Vade Secure for Office 365, which seamlessly integrated Vade Secure's e-mail filtering technologies with Microsoft Office 365. Following up on this success, Vade Secure next sought to revolutionize the Message Transfer Agent (MTA) space, by creating Vade MTA Builder, the most flexible MTA on the market, with the capability to allow users to build and modify their MTA to fit their needs. Vade MTA Builder was released in December 2020, during the pendency of this case.

In the nineteen months since they filed this case, Plaintiffs have consistently leveled grave accusations of theft, harm, and bad faith based on alleged misappropriation of purported trade secrets, with ever-escalating rhetoric. But Plaintiffs have equally consistently ducked the central questions in this case: what specific trade secrets do Plaintiffs claim to have, and where specifically do Plaintiffs claim that Vade Secure's products incorporate them? With fact discovery closed and Plaintiffs' expert reports served, those questions *still* have not been answered clearly. To be sure, at the very instant fact discovery closed, midnight the morning of February 13, 2021, Plaintiffs served supplemental contention interrogatory responses that identified, for the first time, six discrete categories of alleged trade secrets that they claim to own and claim were misappropriated (five technical categories consisting of high-level techniques and feature combinations, and one business category consisting of Cloudmark's *customers*' information). But even then, Plaintiffs were unable (or unwilling) to identify what, specifically, they claim to own and what, specifically, was supposedly taken: Plaintiffs sliced and diced the handful of techniques identified in the five technical categories into *144 different combinations*, each of which is supposedly a distinct trade secret. Indeed, one of the five categories consists principally of the combinations of other categories. And then, a week after discovery closed, Plaintiffs served another supplemental contention interrogatory response adding more combinations, bringing the total number of asserted trade secrets based on the same six categories of information to *155 distinct asserted trade secrets*. Plaintiffs' hedging—dividing the same core set of information

into so many slightly-differing distinct combinations that they allege to be trade secrets—reveals a lack of confidence that speaks volumes at this late stage.

Plaintiffs' lack of confidence is warranted. After demanding that Vade Secure produce code and documents for *all* of its products—and having brought, and won, motions to obtain that information by claiming that source code for *all* of Vade Secure's products was relevant, then spending more than 800 hours reviewing that source code—Plaintiffs' own expert reports show that Plaintiffs accuse only three products: Vade Secure for O365, the MTA Builder, and the Content Filter, which Plaintiffs accused for the first time through their expert report despite not identifying it in their Complaint or contentions. Moreover, the evidence establishes that Plaintiffs' purported trade secrets are old concepts known and widely used publicly in the industry, that neither Vade Secure for O365, nor the Content Filter, nor Vade Secure MTA Builder incorporates Plaintiffs' specific implementation of those old and publicly known concepts; and that even Plaintiffs did not treat these techniques and implementations as trade secrets, except as part of this litigation.

Plaintiffs' expert reports also confirm that their copyright claims are window-dressing: not only are the allegedly infringing files not present in Vade Secure's current products (they were prepared for an internal demonstration), Plaintiffs' damages expert admits that no damages are warranted—even if Plaintiffs *could* establish that the files infringed valid copyrights. Plaintiffs' breach of contract claims similarly lack substance—even if Plaintiffs *were* to establish breach, Plaintiffs' own expert finds that the claim adds little in damages. Rather, Plaintiffs' expert reports confirm that this case rises and falls with Plaintiffs' trade secret misappropriation claims. Not only are those claims weak for the reasons discussed above, but Plaintiffs' own damages expert found that the supposed misappropriation caused Plaintiffs little quantifiable harm—reduced margins on one deal for one client. But since the evidence shows that Vade Secure's accused products are different, better, and compete in the marketplace on their own merits, Plaintiffs fail to support even that purported harm. Plaintiffs are then left to claim that the *entire value* of Vade Secure's accused products—including products first released long before any alleged misappropriation or infringement—are the correct measure of Plaintiffs' damages. In the end, the facts establish that this case was Plaintiffs' reactionary response to legitimate competition, not a genuine attempt to protect valuable intellectual

property.

Vade Secure also has counterclaims that allege improper interference by Plaintiffs in Vade Secure's business relationships, which counterclaims are subject to a pending motion to dismiss. The limited discovery available to date has confirmed that Plaintiffs made false representations about Vade Secure and sought to lock in its customers/prevent Vade Secure from entering the market, which demonstrate the merit to these claims.

3. **LEGAL ISSUES**

The principal disputed legal issues are:

- Whether Plaintiffs have properly asserted any claim of trade secret misappropriation;
- Whether each of Plaintiffs' asserted trade secrets satisfies each element for protection as a "trade secret" under the Defend Trade Secrets Act;
- Whether Defendants misappropriated any valid trade secrets of Plaintiffs in violation of the Defend Trade Secrets Act;
- Whether Plaintiffs can establish any claim of copyright infringement by Defendants in violation of the Copyright Act;
- Whether any such misappropriation and/or infringement has been willful;
- Whether an injunction should issue against Defendants arising from the alleged trade secrets misappropriation and/or copyright infringement;
- Whether Defendant Lemarié breached his contractual obligations to Plaintiff Cloudmark through one or more of his: 1) alleged unauthorized disclosure and failure to maintain confidentiality of Cloudmark Proprietary Information, 2) alleged failure to disclose inventions; 3) alleged failure to maintain and make available Cloudmark's company records; and 4) alleged failure to deliver materials containing Cloudmark Proprietary Information;
- Whether Defendants Vade Secure, Incorporated and Vade Secure SASU are vicariously liable for Defendant Lemarié's alleged misappropriation and/or copyright infringement;
- The nature of equitable relief, if any, appropriate to address Defendants' alleged trade secret misappropriation and/or copyright infringement, and Defendant Lemarié's alleged breach of contract;
- The amount of any damages owed Plaintiffs, if any, by Defendants for the alleged trade secrets misappropriation, copyright infringement, and breach of contract claims, as well as any fees and costs owed Plaintiffs, and whether Defendants are jointly and severally liable for such damages;
- Whether Defendants have properly asserted a claim for defamation, commercial disparagement, intentional interference with prospective economic advantage, unfair competition, monopolization, and/or attempted monopolization;
- The nature of equitable relief, if any, appropriate to address Plaintiffs' alleged defamation, commercial disparagement, intentional interference with prospective economic advantage, unfair competition, monopolization, and/or attempted monopolization; and
- The amount of any damages owed Defendants, if any, by Plaintiffs for the alleged

|   |   |
|---|---|
| 1 | defamation, commercial disparagement, intentional interference with prospective economic advantage, unfair competition, monopolization, and/or attempted monopolization. |

The Parties reserve the right to raise additional factual or legal issues that may arise through the course of this action.

### 4. MOTIONS

Plaintiffs' Motion to Dismiss Vade Defendants' Third Amended Counterclaims (Dkt. 378) is currently pending. Vade Secure filed its opposition on January 11, 2021 (Dkt. 398). Plaintiffs filed their reply on January 21, 2021 (Dkt. 414). The Court has not set a hearing on the motion. To the extent that the Court does not grant the motion to dismiss with prejudice, Plaintiffs intend to file a motion for summary judgment on all Vade Secure counterclaims.

The parties anticipate other customary motion practice, including discovery motions related to expert disclosures, summary judgment motions, *Daubert* motions, motions to strike, and motions *in limine*.

### 5. AMENDMENTS OF PLEADINGS

The deadline set by the Court to amend pleadings has passed and, thus, Plaintiffs do not intend to amend the pleadings at this time. However, Plaintiffs reserve the right to seek leave to amend the pleadings to the extent additional information is obtained through further discovery or motion practice that may call for further amendments. On Vade Secure's counterclaims, Plaintiffs' motion to dismiss is pending and, thus, Plaintiffs have not yet asserted any defenses. Defendants reserve the right to amend their pleadings in the event the Court grants Plaintiffs' motion with leave to amend.

### 6. EVIDENCE PRESERVATION

The parties and their counsel hereby certify that they previously reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and met and conferred in late 2019 pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action, including electronic data and materials.

### 7. INITIAL DISCLOSURES

The parties have exchanged initial disclosures and supplemental initial disclosures under

Federal Rule of Civil Procedure 26(a).

## 8. DISCOVERY

Fact discovery closed February 12, 2021.  Plaintiffs and Defendant Lemarié are proceeding with the production of forensic data in the possession of Mr. Lemarié pursuant to the agreed-upon stipulated protocol filed with the Court on October 5, 2020 (Dkt. 275).  Additionally, Vade Secure has made additional source code available for inspection, which Plaintiffs' experts are continuing to review and analyze.  Further, Plaintiffs have agreed to and are in the process of preparing a supplemental production of custodial emails responsive to Defendants' narrowed email production request, which Plaintiffs are reviewing for potential privilege issues and state will be produced by March 10, 2021.  Further, there remains an ongoing dispute relating to whether there are outstanding documents concerning competition, customer relationships and contracts with third parties, competitive analysis of Vade Secure and its products that have not yet been produced by Plaintiffs; Plaintiffs believe such documents have already been produced to the extent they are relevant and responsive to Defendants' requests, and submitted a revised Interrogatory response earlier this week, and a letter to Vade Secure today, identifying what they believe to be the relevant such materials.  The parties will continue to meet and confer and may have a dispute regarding this issue and related privilege matters.  The parties have otherwise agreed to work cooperatively on any expert supplementation warranted by any ongoing discovery.

## 9. CLASS ACTIONS

This section is not applicable to the above-captioned action.

## 10. RELATED CASES

There are no cases related to the above-captioned action.

## 11. RELIEF

**Plaintiffs' Statement**: Plaintiffs seek the following relief recited in their Amended Complaint (Dkt. 219):

- Judgment in Plaintiffs' favor and against Defendants on all causes of action alleged;
- Compensatory damages for actual loss and unjust enrichment caused by the misappropriation of Plaintiffs' trade secret information and Defendants' copyright infringement, to the extent not duplicative or overlapping;

- Exemplary damages equal to two times the amount of the compensatory damages awarded for Defendants' misappropriation;
- An award of Plaintiffs' reasonable attorneys' fees and costs;
- Compensatory damages arising from the breach of various contractual obligations by Defendant Lemarié;
- Actual damages as a result of Defendants' copyright infringement and any of Defendants' profits that are attributable to the infringement;
- Preliminary and permanent injunctive and other equitable relief, including an order to immediately cease and discontinue: (1) importing, making, using, offering for sale, or selling any product or service embodying Plaintiffs' trade secrets and/or confidential information; and (2) reproducing, distributing, publishing, placing in the market, or otherwise infringing Proofpoint's copyrighted works, in whole or in part, or any derivative work thereof, in any medium;
- An order, pursuant to 17 U.S.C. § 503(a) and (b), and other applicable statutes or laws, providing for the impoundment, destruction, or other reasonable disposition of all complete or partial copies of Proofpoint's copyrighted works in the possession or control of Defendants, and a complete disclosure of the location of any such copies, including any incorporated into products sold or distributed by Defendants Vade Secure, Incorporated and Vade Secure SASU;
- Specific performance and other equitable relief, including directing Defendant Lemarié to comply with his contractual obligations to Plaintiffs and directing Vade to assign any intellectual property developed, solely or jointly with others, by Lemarié during the term of his employment at Vade that utilized Plaintiffs' trade secrets and/or confidential information; and
- Pre-judgment and post-judgment interest as well as any such other and further relief as the Court deems just and proper.

Additionally, Plaintiffs have been and will be irreparably harmed by Defendants' ongoing trade secret misappropriation such that monetary damages are insufficient and permanent injunctive relief is necessary. Plaintiffs intend to seek permanent injunctive relief, including at least the relief previously sought in Plaintiffs' motion for preliminary injunction (Dkt. 31-68). Notwithstanding that the ongoing harm to Plaintiffs is irreparable and not compensable by monetary damages, Plaintiffs' experts have nevertheless provided estimates of monetary damages in this case that at least capture the unjust enrichment to Defendants and actual losses to Proofpoint attributable to Defendants' acts of misappropriation and infringement.

**Defendants' Statement**: Defendants seek the following relief: judgment in favor of Defendants and against Plaintiffs on all causes of action alleged by Plaintiffs; judgment for preliminary and permanent injunctive relief enjoining the wrongful and unfair acts by Plaintiffs alleged in Vade Secure's counterclaims, and by those persons acting in concert with Plaintiffs, including related individuals, entities, agents, or representatives; an award of actual damages sustained

as a result of the acts alleged in Vade Secure's counterclaims, together with prejudgment interest, according to proof; an order of disgorgement of the Plaintiffs' profits resulting from the acts alleged in Vade Secure's counterclaims; an award of restitution of any profits resulting from the acts alleged in Vade Secure's counterclaims; an award of punitive damages as permitted by law; an award of Vade Secure's attorneys' fees and their costs of suit, including reasonable litigation expenses, as permitted by law; an award of pre-judgment and post-judgment interest, and any additional relief the Court deems just and proper. Damages will be the subject of expert analysis and testimony.

**12.    SETTLEMENT AND ADR**

The parties have engaged in settlement conferences with Magistrate Judge Kim on May 20, 2020 (Dkt. 162), June 4, 2020 (Dkt. 172), August 14, 2020 (Dkt. 203), and January 13, 2021 (Dkt. 406), which have not resulted in resolution of the parties' disputes. The parties are scheduled to attend a further settlement conference with Magistrate Judge Kim on April 27, 2021.

**13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to have a magistrate judge conduct all further proceedings including trial or entry of judgment.

**14.    OTHER REFERENCES**

At this time, the parties do not believe that this case is suitable for reference to a special master, binding arbitration, or the Judicial Panel on Multidistrict Litigation.

**15.    NARROWING OF ISSUES**

**Plaintiffs' Statement**: The parties previously represented to the Court that they would "work together in good faith to narrow any issues and expedite the presentation of evidence at trial to the extent practicable," and "to stipulate to the authenticity and admissibility of business records and other documents to the extent possible" (Dkt. 60 at 10). Plaintiffs are still committed to doing so, however Defendants' complaints regarding the supposed burdensome volume of trade secrets asserted in this case are greatly exaggerated. As Plaintiffs have explained to Defendants: (1) there is no fixed limit on the number of trade secrets a party may assert, and cases often proceed to trial with large numbers of trade secrets (*see, e.g.*, *Syntel, Inc. v. Trizetto Group, Inc., et al.*, No. 1:15-cv-00211 (S.D.N.Y.) (trial on 104 separate trade secrets)); (2) the number of asserted trade secrets is indicative of the extent

of Defendants' misappropriation, and there is no valid reason to limit Plaintiffs' ability to seek recourse for Defendants' unlawful actions; (3) the alleged burden from having to respond to 155 asserted trade secrets is belied by Vade's own failure to analyze or address any specific combinations of techniques in its own interrogatory responses, instead making vague assertions that trade secrets "relating to" certain features or "including" certain techniques were publicly disclosed or independently developed; (4) the alleged burden is further belied by Vade's failure to explain how the burden on Vade is any more onerous than the burden on Plaintiffs—who must show (and did show in Dr. Black's report) that each asserted trade secret is entitled to protection under the law.  Plaintiffs do not believe that any narrowing of the trade secrets is warranted or necessary to streamline the presentation of issues for trial, but are open to working with Defendants on any proposals they may have—particularly after the close of expert discovery.

**Defendants' Statement**: During discovery, Defendants repeatedly asked Plaintiffs to provide more specific and definitive trade secret contentions, and approximately five weeks before discovery closed, Plaintiffs agreed to do so on a rolling basis.  Despite these ongoing promises, Plaintiffs continued to broaden, not narrow, their trade secret contentions.  At midnight of the close of fact discovery, Plaintiffs identified for the first time 144 separate allegedly misappropriated trade secrets. One of these alleged trade secrets consists of customers' information. The remaining 143 are merely slightly differing combinations of techniques and concepts that Plaintiffs identified within five technical categories.  Plaintiffs continued to broaden their trade secret contentions even after the close of fact discovery—Plaintiffs' latest Interrogatory responses, served February 20, 2021 (more than a week beyond the February 12, 2021 close of fact discovery deadline) now alleges 155 separate allegedly misappropriated trade secrets—154 of which are slightly-differing combinations of the same five categories of technical information (*e.g.*, Asserted Trade Secret 4 purports to combine asserted trade secrets 1(a)-(g), 2(a)-(b), and (3) in different combinations to create 130 different trade secrets). The result is that Plaintiffs' legal contentions impose a burden wildly out of line with Plaintiffs' factual contentions—whereas Plaintiffs assert that Vade Secure uses a handful of techniques that they claim were misappropriated, Vade Secure must assess and address how each of 155 distinct combinations of these techniques compares with each prong of the multi-part DTSA standard for trade

secret protection. The burden of doing so is unjustified where, as here, Plaintiffs cannot reasonably intend to assert 155 distinct trade secrets to the jury at trial.

Plaintiffs' assertion of 155 separate trade secrets at this late stage, and particularly in this fashion, is unreasonable and prejudices Defendants by forcing them to prepare for such a large number of allegations when Plaintiffs cannot reasonably be expected to present all of them at trial. Plaintiffs should not be permitted to conceal the trade secrets they actually intend to advance, but should be required to identify a reasonable number of asserted trade secrets well in advance of trial.

Defendants are working in good faith to narrow the issues related to Defendants' counterclaims and expedite the presentation of evidence at trial to the extent possible. Defendants plan to work with Plaintiffs to jointly determine how best to streamline the process towards trial.

**16.    EXPEDITED TRIAL PROCEDURE**

The parties do not propose that this case proceed under the Expedited Trial Procedure of General Order 64 Attachment A.

**17.    SCHEDULING**

The dates set forth in the Court's Pretrial Preparation Order (Dkt. 63), as modified in the parties' stipulation extending certain deadlines (Dkts. 361, 433), are currently in effect.

**18.    TRIAL**

Plaintiffs request a trial by jury. The parties maintain their prior estimated trial length of eight (8) – fourteen (14) court days.

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Each party has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15, the contents of which are restated below.

**Plaintiffs' Certification**: Pursuant to Civil L.R. 3-15, Plaintiffs' undersigned counsel certifies that, other than the named parties, no other persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.

**Defendants' Certification**:  Pursuant to Civil L.R. 3-15, Defendants' undersigned counsel

certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (1) Proofpoint, Inc., Plaintiff; (2) Cloudmark LLC, Plaintiff; (3) Vade Secure, Incorporated, Defendant; (4) Vade Secure SASU, Defendant and interested party having a financial interest in Defendant Vade Secure, Incorporated; (5) Olivier Lemarié, Defendant; and (6) LLG Capital, Interested party having a financial interest in Defendant Vade Secure SASU.

**20.  PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.  OTHER MATTERS**

The parties agree to service by email for all discovery requests, responses, and objections; deposition notices and objections; motions, oppositions, and replies; pretrial disclosures and exchanges; and all other pleadings and papers to the extent practicable, and to the extent not already served upon counsel of record via the Court's CM/ECF system.

DATED:  March 5, 2021                    Respectfully Submitted,

By */s/ Sean S. Pak*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JWC LEGAL
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*

| | | |
|---|---|---|
| 1 | DATED:  March 5, 2021 | Respectfully Submitted, |
| 2 | | |
| 3 | | By */s/ Jeffrey G. Homrig* |

                        Douglas E. Lumish (SBN 183863)
                        Jeffrey G. Homrig (SBN 215890)
                        Arman Zahoory (SBN 306421)
                        Ryan Banks (SBN 318171)
                        LATHAM & WATKINS LLP
                        140 Scott Drive
                        Menlo Park, CA 94025
                        Telephone: (650) 328-4600
                        Facsimile: (650) 463-2600
                        doug.lumish@lw.com
                        jeff.homrig@lw.com
                        arman.zahoory@lw.com
                        ryan.banks@lw.com

                        Margaret A. Tough (SBN 218056)
                        Sadik Huseny (SBN 224659)
                        Joseph R. Wetzel (SBN 238008)
                        LATHAM & WATKINS LLP
                        505 Montgomery Street, Suite 2000
                        San Francisco, CA 91444
                        Telephone: (415) 391 0600
                        Facsimile: (415) 395 8095
                        margaret.tough@lw.com
                        sadik.huseny@lw.com
                        joe.wetzel@lw.com

                        Joseph H. Lee (SBN 248046)
                        LATHAM & WATKINS LLP
                        650 Town Center Drive, 20th Floor
                        Costa Mesa, CA 92626
                        Telephone: (714) 540 1235
                        Facsimile: (714) 755 8290
                        joseph.lee@lw.com

                        Colin H. Murray (SBN 159142)
                        BAKER & McKENZIE LLP
                        Two Embarcadero Center, 11th Floor
                        San Francisco, CA  94111-3802
                        Telephone: (415) 576 3000
                        Facsimile: (415) 576 3099
                        colin.murray@bakermckenzie.com

                        Danielle L. Benecke (SBN 314896)
                        BAKER & McKENZIE LLP
                        600 Hansen Way
                        Palo Alto, CA  94304
                        Telephone: (650) 856 2400
                        Facsimile: (650) 856 9299
                        danielle.benecke@bakermckenzie.com

| | |
|---|---|
| 1 | Jay F. Utley (Admitted *Pro Hac Vice*) |
| | Bart Rankin (Admitted *Pro Hac Vice*) |
| 2 | Mackenzie M. Martin (Admitted *Pro Hac Vice*) |
| | John G. Flaim (Admitted *Pro Hac Vice*) |
| 3 | Chaoxuan Liu (Admitted *Pro Hac Vice*) |
| | Mark Ratway  (Admitted *Pro Hac Vice*) |
| 4 | Benjamin B. Kelly  (Admitted *Pro Hac Vice*) |

Jay F. Utley (Admitted *Pro Hac Vice*)
Bart Rankin (Admitted *Pro Hac Vice*)
Mackenzie M. Martin (Admitted *Pro Hac Vice*)
John G. Flaim (Admitted *Pro Hac Vice*)
Chaoxuan Liu (Admitted *Pro Hac Vice*)
Mark Ratway (Admitted *Pro Hac Vice*)
Benjamin B. Kelly (Admitted *Pro Hac Vice*)
BAKER & McKENZIE LLP
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978 3000
Facsimile: (214) 978 3099
jay.utley@bakermckenzie.com
bart.rankin@bakermckenzie.com
mackenzie.martin@bakermckenzie.com
john.flaim@bakermckenzie.com
charles.liu@bakermckenzie.com
mark.ratway@bakermckenzie.com
ben.kelly@bakermckenzie.com

Shima S. Roy
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 500
Chicago, IL 60601
Telephone: (312) 861 8000
Facsimile: (312) 861 2899
shima.roy@bakermckenzie.com

Alexander Brauer (appearance pro hac vice)
(TX SBN 24038780)
BAILEY BRAUER PLLC
8350 N. Central Expressway
Suite 650
Dallas, Texas 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7435
abrauer@baileybrauer.com

*Attorneys for Defendants, Vade Secure, Incorporated and Vade Secure SASU*

DATED: March 5, 2021

SINGER CASHMAN LLP

By: */s/ Adam S. Cashman*

    Adam S. Cashman (Bar No. 255063)
    acashman@singercashman.com
    Benjamin L. Singer (Bar No. 264295)
    bsinger@singercashman.com
    Evan Budaj (Bar No. 271213)
    ebudaj@singercashman.com
    Neil Cave (admitted *pro hac vice*)
    ncave@singercashman.com
    505 Montgomery Street, Suite 1100
    San Francisco, CA 94111
    Telephone: (415) 500-6080
    Facsimile: (415) 500-6080

    *Attorneys for Defendant Olivier Lemarié*

**ATTESTATION OF CONCURRENCE**

I, Sean Pak, am the ECF user whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: March 5, 2021                                    /s/ Sean S. Pak
                                                                      Sean Pak