| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br> Sean S. Pak (SBN 219032)<br> seanpak@quinnemanuel.com<br> Iman Lordgooei (SBN 251320)<br> imanlordgooei@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>**JWC LEGAL**<br> Jodie W. Cheng (SBN 292330)<br> jwcheng@jwc-legal.com<br> One Market Street<br> Spear Tower, 36th Floor<br> San Francisco, CA 94105<br>Telephone: (415) 293-8308<br><br>*Attorneys for Plaintiffs*<br>*Proofpoint, Inc. and Cloudmark LLC* | Douglas E. Lumish (SBN 183863)<br> doug.lumish@lw.com<br>Jeffrey G. Homrig (SBN 215890)<br> jeff.homrig@lw.com<br>Arman Zahoory (SBN 306421)<br> arman.zahoory@lw.com<br>Ryan T. Banks (SBN 318171)<br> ryan.banks@lw.com<br>**LATHAM & WATKINS LLP**<br>140 Scott Drive<br>Menlo Park, CA 94025<br>Telephone:    +1 650 328 4600<br>Facsimile: +1 650 463 2600<br><br>Margaret A. Tough (SBN 218056)<br> margaret.tough@lw.com<br>Sadik Huseny (SBN 224659)<br> sadik.huseny@lw.com<br>Joseph R. Wetzel (SBN 238008)<br> joe.wetzel@lw.com<br>**LATHAM & WATKINS LLP**<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 91444<br>Telephone:    +1 415 391 0600<br>Facsimile: +1 415 395 8095<br><br>*Attorneys for Defendants,*<br>*VADE SECURE, INCORPORATED; and*<br>*VADE SECURE SASU* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>Defendants. | CASE NO. 3:19-cv-4238-MMC-RMI<br><br>**JOINT DISCOVERY STATEMENT RE EXCLUSION OF UNTIMELY ALLEGATIONS AND EVIDENCE PURSUANT TO FED. R. CIV. P. 37** |

Honorable Judge Illman:

Pursuant to the Court's Order referring discovery matters to Magistrate Judge Illman (Dkt. 79), Plaintiffs Proofpoint, Inc. and Cloudmark LLC ("Proofpoint" or "Plaintiffs") and Defendants Vade Secure SASU, Vade Secure, Incorporated (with Vade Secure SASU, "Vade Secure"), and Olivier Lemarié (with Vade Secure, "Defendants") (Plaintiffs and Defendants, together, the "Parties") file this Joint Discovery Statement regarding the Parties' requests to exclude certain allegations and evidence offered in the Parties' respective expert reports:

Plaintiffs respectfully request that the Court grant Plaintiffs leave to file supplemental reports and also to strike the following portions of Defendants' rebuttal reports:

- *Dr. Clark Report*: ¶¶ 43-44, 54, 66, 75-82, 84-98, 100-05, 107-11, 113-14, 120-24, 128-29, 13133, 137-38, 142-44, 146-48, 159, 161-62, 164-67, 171-72, 176-78, 181-82, 191, 200, 207, 209-10, 215, 217--19, 228-30, 234, 251-57, 260, 266, 293-303, 307-08, 313, 318, 327-29, 335-44, 348-57, 364-66, 371-79, 384-89, 392;

- *Dr. Striegel Report*: ¶¶ 42-46, 133-34, 144-145, 147-150, 152, 167, 170-96, 199, 210-16, 218, 225-26, 230-34, 247-252, 256, 260-63, 272-273, 276-82, 292, 296-300, 303-10, 315, 320-21, 323-30, 333, 339, 344, 353-57, 360, 367-68, 394-97, 403, 411-14, 419-20, 422, 429, 431, 445, 455, 457-58, 467, 470-76, 481-82, 484-91, 498-501, 505-12, 513;

- *Mr. Ferrante Report*: Portions of pp. 4, 6-8, 10-13;

- *Mr. Pooley Report*: ¶¶ 24, 27-30, 32-33, 37;

- *Mr. Bakewell Report*: ¶¶ 65-72, 105-06, 134, 160, 171, 178, 182 185, 230, Exhibits 1.0-1.8, 2.0, 4.0-4.6, 7.0, 8.0, 9.0, Exhibits 1.0 n.4; 1.1 n.4; 1.2 n.4; 1.3 n.4; 1.4 n.4; 1.6 n.4; 4.0 n.4; 4.1 n.4; 4.2 n.4.

Defendants respectfully request that the Court strike Plaintiffs' reply reports in their entirety, as well as the following portions of Plaintiffs' opening reports, which assert claims against Vade Secure's Content Filter:

- *Dr. Arnold Supplemental Report*: ¶¶ 41-42, 55-67 (incl. n. 94, 98, 102, 105, 106, 114), 92, 97-100, 102 (incl. n. 192), the unnumbered header "B" above ¶ 55, and the portions of Exhibits B and C that refer to Content Filter.

- *Dr. Nielson Report*: ¶¶ 143-46, 274-80, 337.

**PLAINTIFFS' STATEMENT**

Plaintiffs seek leave to enter the supplemental expert reports of Drs. Black, Nielson, and Arnold, which address new allegations in Defendants' rebuttal reports that rely on evidence identified in Defendants' interrogatory responses for a different purpose. *E.g.*, Clark Rpt. ¶ 130 (relying on research paper in connection with Trade Secret 1(c), when interrogatory response cited paper as relevant to Trade Secret 4). Plaintiffs served the supplemental reports to address only these inadequately disclosed allegations, as they were the ones Plaintiffs could reasonably address in the time allowed at this advanced stage of the case. However, Defendants' rebuttal expert reports also raise additional new allegations and new evidence, which Plaintiffs seek to strike.

Specifically, on Sept. 8, 2020, Plaintiffs served interrogatories on Defendants seeking, *inter alia*, a detailed description of the factual and legal bases for their defenses, including reasons why they contend Plaintiffs' claims should fail.[1] On Oct. 8, 2020, Defendants provided an initial response, which Lemarié supplemented on Feb. 8, 2021, and Vade on the last day to supplement, Feb. 12. Defendants' final supplementations provided more narrative responses, but also presented a string citation under FRCP 33(d) to thousands of documents without any explanation. The new allegations and evidence that Plaintiffs seek to strike were either not disclosed in the interrogatory responses, or were concealed within the voluminous FRCP 33(d) string citation.[2]

Since no factual (or any) underpinnings of the expert opinions at issue were disclosed in response to Plaintiffs' interrogatories, they should be excluded under FRCP 37(c)(1). *Trulove v. D'Amico*, 2018 WL 1090248, *2 (N.D. Cal. Feb. 27, 2018) (information a party fails to provide under Rule 26(e) is subject to Rule 37(c)(1) "self-executing" and "automatic" "sanction of exclusion"); *MLC Intel. Prop., LLC. v. Micron Tech., Inc.*, 2019 WL 2863585, *12-14 (N.D. Cal. July 2, 2019). Tellingly, Defendants do not attempt to demonstrate the new allegations and evidence were disclosed in their responses.[3] Rather, they argue the new allegations and evidence were justified by mischaracterizing their expert opinions as "properly rebutt[ing]" Plaintiffs' reports, and responding to "untimely accusations" and "late-served contentions." Not so.

*First*, each one of the new allegations and opinions offered for the first time in Defendants' rebuttal reports was something Defendants could and should have identified during fact discovery so the parties would have a full and fair opportunity to investigate and address them. Instead, Defendants waited until a month after receipt of Plaintiffs' opening reports to reveal their theories. This litigation by surprise approach is precisely what the Rules seek to avoid by requiring timely supplementation—including a party's rebuttal theories. *See, e.g.*, *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003-05 (N.D. Cal. 2019) (concluding a party may not "wait until its expert rebuttal report to set forth" rebuttal theories). Indeed, Plaintiffs' experts served their opening reports on Feb. 19, 2021 after scrambling to address the allegations and evidence raised for the first time in Defendants' Feb. 8 and 12 supplemental responses, only to have Defendants' experts raise an entirely new set of allegations and evidence a month later. Defendants' untimely disclosure "made it impossible" for Plaintiffs' experts to respond, or for Plaintiffs to develop a factual record to respond to these theories. *Phoenix Techs.*, 2017 WL 1957042, *7; *In re Koninklijke Philips Patent Litig.*, 2020 WL 7398647, *5 (N.D. Cal. Apr. 23, 2020) (failure to identify non-infringing alternative foreclosed opportunity to conduct fact

---

[1] Defendants' note 2 misrepresents Plaintiffs' February letter, which did not imply that Rog 10 is limited to affirmative defenses. In fact, the letter put Vade on notice that "Plaintiffs have identified specific **contentions** for which Vade has not provided a sufficient factual basis," such as identifying "publications or other material on which Vade intends to rely to contend that any of Plaintiffs' trade secrets were or are publicly known"—the exact new evidence in Dr. Clark's report.

[2] Such a string citation does not constitute adequate disclosure. *See, e.g.*, *Milton H. Green Archives, Inc. v. CMG Worldwide*, Inc., 2008 WL 11334030, *7 (C.D. Cal. Mar. 17, 2008).

[3] Defendants' note 2 incorrectly suggests the new allegations and evidence were properly disclosed by incorporating **yet-to-be-served** expert reports in their rog response. This is plainly insufficient. *See Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 1957042, *7 (N.D. Cal. May 11, 2017).

discovery on the alternative, which was not substantially justified or harmless); *Finjan, Inc. v. Symantec Corp.*, 2018 WL 620169, *2 (N.D. Cal. Jan. 30, 2018).

*Second*, Plaintiffs' trade secrets have been disclosed in this case at least as early as March 2020. And, despite Defendants' well-documented failures to timely produce relevant discovery, Plaintiffs have also identified and timely supplemented their misappropriation allegations with particularity from August 2020 through the close of discovery, serving eight supplements as discovery progressed and more Vade source code was produced for review. Thus, Defendants' assertion that Plaintiffs did not identify the alleged trade secrets until "the stroke of midnight the morning of February 13, 2021" is demonstrably false. Defendants have long been on notice of each one of the trade secrets identified by Plaintiffs, and could and should have timely formulated and disclosed their defensive theories and evidence ***during*** fact discovery—not in their rebuttal expert reports. With respect to each rebuttal report:

<u>Dr. Clark's Report</u> raises new allegations and evidence of alleged prior public availability of trade secrets; possession of Plaintiffs' implementation of trade secrets; derivation of Vade's implementations; assertions that Plaintiffs' trade secrets are "straightforward" and "made sense to implement"; and new characterizations of testimony of Plaintiffs' witnesses and related documents. Vade also seeks to rely on numerous new theories regarding alleged public availability of trade secrets based on previously undisclosed references. Defendants argue Dr. Clark was merely responding to Dr. Black's opinions regarding a single reference, SpamAssassin, by identifying new evidence on rebuttal. Notably, Defendants fail to address any of the other newly-identified references and allegations. Nevertheless, Defendants also fail to acknowledge that SpamAssassin was discussed in Dr. Black's report because it was referenced in passing (without any citation to evidence) in ***Vade's*** final interrogatory response. Knowing he would not have an opportunity to submit a reply, Dr. Black reviewed and provided opinions based on the allegations and evidence ***Vade*** had identified in its final supplementation, which did not include the new evidence regarding SpamAssassin (*i.e.*, a textbook) that Dr. Clark raised for the first time on rebuttal. This evidence plainly could and should have been disclosed by Vade during discovery so Plaintiffs could have a chance to address it. *Asia Vital Components Co., Ltd.*, 377 F. Supp. 3d at 1003-05. Defendants also attempt to justify Dr. Clark's opinions regarding Hashicorp because they claim he was responding to code identified in Dr. Nielson's report, but they ignore that the same code was identified in Plaintiffs' Jan. 25, 2021 supplemental interrogatory responses.

<u>Dr. Striegel's Report</u> raises new allegations and evidence regarding purportedly known techniques and "best practices"; the use of certain code and software architecture; the use of open source code; incorporation of certain code into products; code being purportedly dictated by external considerations; portions of code that were not copied; alleged differences between implementations of trade secrets; and new characterizations of Plaintiffs' testimony. Again, Plaintiffs' responses served throughout discovery provided details on misappropriation and copying, which Defendants could and should have responded to during discovery.

<u>Mr. Ferrante's and Mr. Pooley's Reports</u> raise new allegations and evidence regarding Plaintiffs' efforts to maintain secrecy of trade secrets, including allegations related to previously-unidentified documents, such as third-party vendor assessments; purported "best practices"; new allegations regarding Lemarié's employment position; allegations regarding purported differences in Proofpoint's and Cloudmark's policies and deficient training; and data synchronization between Lemarié's laptop and Cloudmark computers. These specific allegations were not disclosed in Vade's interrogatory responses, despite that Plaintiffs identified their reasonable measures to preserve secrecy (the same ones raised in Dr. Black's report) as early as March 2020. Vade was thus required to supply the actual substance of its rebuttal theories during fact discovery. As to Defendants' attempt to justify reliance on newly-cited documents relating to a Nike Assessment: 1) the documents were not "buried" or untimely, as they were emails in a voluminous production whose size was the direct result of Vade's own overbroad email search terms served and narrowed late in the case; and 2) Vade's attorneys actually questioned Plaintiffs' witnesses regarding Nike, and thus could have at least identified their theory in their final rog responses.

<u>Mr. Bakewell's Report</u> seeks to present purported "rebuttal" opinions that rely on (1) Vade's financial data that Vade refused to produce until after Plaintiffs had served their

opening expert reports—despite Vade's testimony confirming the availability of data during fact discovery and Plaintiffs' repeated requests for the data since at least December 2020; (2) new factual bases regarding public availability and value of trade secrets. Vade also sets forth opinions regarding an alternative measure of damages in the form of a lump-sum royalty, which exceeds the scope of a rebuttal report at least because Plaintiffs' opening reports did not advance a royalty opinion or forward-looking measure of monetary damages.

**Content Filter**. Inexplicably, Defendants seek to exclude Plaintiffs' allegations regarding Vade's Content Filter, arguing it was accused "for the first time in expert reports." Yet, this is the same argument Defendants raised and lost in the context of Plaintiffs' motion to compel source code corresponding to all Vade products at issue, including Content Filter. Dkt. 286-4 at 13-14; Dkt. 315-3 at 3-5, 8-12 (explaining Content Filter "contains the code for detecting malware, phishing, spam, and *spear-phishing*" and "the same filter engine is used … for *all Vade products*"). Thus, Vade was aware Content Filter is accused at least in view of motion practice. FRCP 26(e)(1)(A) (parties need not supplement when "additional or corrective information" has "otherwise been made known to the other parties during the discovery process or in writing"). Plaintiffs' theories were also identified in discovery responses explaining that misappropriated code was implemented "within other areas and aspects of Vade's source code, such as *Vade's filter component*," and the accused identitymatch software was developed once and used in "all products" including Vade's "*filter* as one such 'core component.'" Dec. 11, 2020 Resp. to Rog. 10 at 12, 29-30 (citing documents re Content Filter); Feb. 12, 2021 Resp. to Rog. 13 at 36 (accusing Vade Secure Cloud (VSC), which Vade designee explained is "one and the same" as Content Filter—*e.g.*, Peck Tr. 29:24-30:8); Dkt. 1, Exh. J (VSC marketing attached to Complaint as basis for claims). Indeed, Vade can hardly claim surprise, particularly in view of its own responses that identify the accused identitymatch module as part of Content Filter. Dec. 7, 2020 Resp. to Rog. 6 at 26-27. There is no basis to exclude Plaintiffs' expert opinions regarding Content Filter.

## DEFENDANTS' STATEMENT

At the stroke of midnight the morning of February 13, 2021—the very instant that fact discovery closed—Plaintiffs began to identify for the first time the alleged trade secrets they are actually pursuing in this case. Supplementing their response to an interrogatory seeking misappropriation contentions,[1] Plaintiffs identified 144 newly asserted combinations of concepts and techniques that they now claim as discrete and separately-enumerated trade secrets. A week later, Plaintiffs served another supplement tacking on 11 more alleged trade secrets, for a total of 155. Yet, despite all this spilled ink, Plaintiffs never contended that Vade Secure's Content Filter product uses any allegedly misappropriated trade secrets.

Now, Plaintiffs seek to profit from their failures to make timely, full, and fair disclosures. First, by ambushing Vade Secure with expert opinions accusing Content Filter for the first time in their expert reports and building the bulk of their damages theory on the shoulders of that undisclosed contention. Second, by using Vade Secure's experts' rebuttal of Plaintiffs' untimely asserted trade secrets as an excuse to serve reply expert reports, which Judge Chesney expressly disallowed. And, third, by attempting to strike Vade Secure's experts' rebuttals to which Plaintiffs' experts apparently could articulate no colorable response.

**Defendants' Request**: (1) strike the portions of Plaintiffs' expert reports that contain belated contentions against Vade Secure's Content Filter; (2) strike Plaintiffs' reply reports, which Plaintiffs served in violation of Judge Chesney's order; and (3) deny Plaintiffs' request to strike the portions of Defendants' reports that properly rebut Plaintiffs' belated assertion of trade secrets.

### A. The Court Should Strike Plaintiffs' Content Filter Theory Which Was Not Disclosed

Plaintiffs have had access to, and reviewed, source code for all of Vade Secure's products for months, but never accused Content Filter in their interrogatory responses, waiting instead to spring

---

[1] Vade Secure served the interrogatory July 27, 2020. Plaintiffs' supplement was the *seventh* supplement, but the first to disclose the enumerated trade secrets upon which they now solely rely.

this new allegation in their expert reports served after the close of fact discovery.

Each of Plaintiffs' attempts to explain this away fails.  **First**, Plaintiffs claim their motion to compel source code relating to all Vade Secure products disclosed their contentions against Content Filter.  3/2/21 S. Pak Ltr.  But requesting discovery related to all products is not the same as disclosing Plaintiffs' contention that the evidence shows that Content Filter uses misappropriated trade secrets.  **Second**, Plaintiffs' general accusations against Vade Secure's spear phishing implementations did not disclose the Content Filter theory, especially given Plaintiffs' admission that they have never been able to identify source code for such functionality in Content Filter.  3/10/21 S. Pak Ltr.  **Third**, Plaintiffs' interrogatory responses accusing other Vade Secure products did not somehow disclose that they were also accusing Content Filter—the responses never alleged that the accused components are found in Content Filter, Plaintiffs promised to supplement as warranted after reviewing code but never did, and Plaintiffs ultimately acknowledged that, despite all the furor over the production of its code, Content Filter does not in fact contain any code for the accused anti-spear phishing functionality.  **Finally**, Plaintiffs now point to one of ***Vade Secure's*** interrogatory responses as a justification for their belated contentions. But Vade Secure's response does not state that the accused identitymatch module is part of Content Filter. In fact, Plaintiffs admit that module is not in Content Filter, and despite having Vade Secure's interrogatory responses and Content Filter source code for more than five months, Plaintiffs' expert reports do not cite to a single line of Content Filter source code to support their misappropriation theory.

In short, Plaintiffs' contentions did not disclose Dr. Nielson's opinions in ¶¶ 274-280 of his report that "the content filter most likely incorporates" Plaintiffs' accused anti-spear phishing modules "and thus uses Plaintiffs' trade secrets."  These contentions, raised for the first time in their expert reports, are untimely, improper, and should be stricken. *Netfuel, Inc. v. Cisco Systems, Inc.*, 2020 WL 4381768, at *4 (N.D. Cal. July 31, 2020) (rejecting assertion that the defendant was on notice of theories not included in interrogatory responses because "the point of contentions is to eliminate the guesswork involved in going through a party's documentary and other evidence."); *see also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *3-5 (N.D. Cal. Aug. 2, 2012); *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 12917334, at *5 (N.D. Cal. Jan. 9, 2014) (denying constructive notice argument).

### B. The Court Should Strike Plaintiffs' Improper Reply Reports

When submitting the current schedule, Plaintiffs asked the Court for permission to serve reply expert reports, but Judge Chesney declined.  Dkt. No. 361 at 6.  Ignoring this, and without seeking leave, Plaintiffs took it upon themselves to serve reply reports for three of their four experts.  Plaintiffs attempted to justify this disregard for the Court's order by styling the reports "supplemental" and claiming that they respond to untimely contentions by Vade Secure's experts.  But Defendants' reports properly respond to Plaintiffs' reports and discuss documents and information that Vade Secure disclosed during discovery.  Plaintiffs' reply reports violate the scheduling order and should be stricken.

### C. The Court Should Deny Plaintiffs' Request To Strike Portions of Defendants' Reports That Rebut Plaintiffs' Belated Contentions Or Rely On Late-Served Documents[2]

Plaintiffs seek to strike portions of Dr. Clark's and Dr. Striegel's reports that properly rebutted

---

[2] Curiously, Plaintiffs justify their request on two interrogatories that purportedly sought Vade Secure's rebuttal contentions: Nos. 10 and 19.  But, in attempting to downplay its seemingly broad sweep, Plaintiffs represented that Interrogatory No. 10 sought information only about affirmative defenses, not Vade Secure's rebuttal of Plaintiffs' affirmative case. *See* 2/1/2021 S. Pak Ltr. ("Plaintiffs' Interrogatory No. 10 simply seeks contentions regarding Vade's six affirmative defenses").  Meanwhile, Interrogatory No. 19 simply requested Defendants' monthly costs, expenses, profits, and margins.  It did not seek contentions.

affirmative theories and facts advanced in Plaintiffs' opening reports.  For example, Plaintiffs' expert Dr. Black opined that "SpamAssassin fails to provide or describe Plaintiffs' asserted trade secrets and proprietary implementations."  He based that unqualified affirmative opinion (undisclosed in Plaintiffs' contentions) on his own knowledge, investigation, and review of SpamAssassin code.  Dr. Clark rebutted that opinion by pointing to evidence showing that SpamAssassin does in fact disclose the asserted trade secrets.  Plaintiffs also complain that Dr. Clark's report disclosed the "new allegation and references that Vade's implementation of certain functionality in its source code is derived from Hashicorp."  But Dr. Clark simply responded to Plaintiffs' untimely accusations about lines of Vade Secure source code which Plaintiffs identified only at the very close of fact discovery and beyond.  Further, Plaintiffs' expert Dr. Nielson cited to the same lines of Vade code referring to hashicorp packages and links in his opening report, but ignored their derivation from hashicorp.  Similarly, Dr. Striegel's discussion of how Defendants' products, implementations, and source code differ from Plaintiffs' is classic rebuttal testimony, and merely responds to Plaintiffs' eleventh hour misappropriation theories served the instant discovery closed or explained for the first time in Dr. Nielson's report.  Plaintiffs cannot credibly ask the Court to strike Vade Secure's experts' rebuttals to Plaintiffs' late-served contentions.  *See, e.g.*, *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 2019 WL 3209451, at *3 (C.D. Cal. June 10, 2019); *In re Koninklijke Philips Pat. Litig.*, 2020 WL 7398647, at *5 (N.D. Cal. Apr. 13, 2020); *Apple Inc.*, 2014 WL 12917334, at *2.

The reports submitted by Messrs. Ferrante and Pooley similarly rebutted Plaintiffs' opening reports, including by identifying examples (from Plaintiffs' own documents) that showed Plaintiff Cloudmark failed to take reasonable measures to protect its trade secrets.  *See Apple Inc.*, 2014 WL 12917334, at *4.  Plaintiffs' claim they are prejudiced by Defendants' experts' reliance on Plaintiffs' own documents rings hollow, especially when Plaintiffs buried those documents within a production of nearly one million pages dropped on Defendants in the last 10 days of discovery.  For example, the Nike Assessment on which Messrs. Ferrante and Pooley rely was responsive to requests served in October, but Plaintiffs produced it in a 667,000-page production made just days before discovery closed.  *See also, e.g.*, PP-VADE019343311, PP-VADE01943308, PP-VADE-01943310, and PP-VADE01943309, all of which were produced at 5:44 PM on the last day of fact discovery.  Plaintiffs' claim that Mr. Ferrante's and Mr. Pooley's reports raised new allegations and facts undisclosed in Vade Secure's responses is also wrong.  For example, Vade Secure's response to Interrogatory No. 10 identified Plaintiffs' failures with respect to Cloudmark's personal device policies.  Mr. Pooley's observations about "Mr. Lemarié's status as a 'high-ranking executive" respond to Dr. Black's opinion that "Employees who are in managerial or executive roles are expected to know and adhere to confidentiality obligations." Black Rpt. ¶ 170.

Mr. Bakewell's rebuttal was also proper.  Plaintiffs are wrong to claim that Mr. Bakewell presented *affirmative* opinions about the value of the alleged trade secrets and measure of alleged damages, and that he presented new opinions about competition.  Mr. Bakewell simply rebutted Dr. Arnold's opinions by identifying calculations Dr. Arnold should have but did not perform, or factors Dr. Arnold should have but did not consider.  *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011).  Plaintiffs are also incorrect when they claim Defendants were obligated "to affirmatively prove the costs underlying Mr. Bakewell's conclusions . . . in an affirmative expert report."  Plaintiffs did not disclose their calculations or alleged bases for remedies in their contentions, and Mr. Bakewell could not have opined about expenses pertinent to those calculations until Plaintiffs disclosed them for the first time in Dr. Arnold's report.  *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 632 (S.D. Tex. 2007) (denying motion to exclude rebuttal expert testimony on deductible expenses).  Plaintiffs' complaint about Mr. Bakewell's reliance on later-produced financial data also rings hollow.  Dr. Arnold did not rely on *any* cost data produced before his report was served, and Vade Secure offered to allow him to address data produced after his report was served; Plaintiffs refused.  Finally, Plaintiffs cannot complain that Mr. Bakewell interviewed Vade Secure witnesses Plaintiffs had the opportunity to depose.  Plaintiffs' own experts relied on witness interviews, including witnesses not identified in Plaintiffs' Rule 26 disclosures.  *See, e.g.*, Black Rpt. ¶¶ 28, 128, 133.

| | |
|---|---|
| Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br> /s/ Sean Pak<br>Sean Pak<br><br>*Attorneys for Plaintiffs*<br>*Proofpoint, Inc. and Cloudmark LLC* | Respectfully submitted,<br><br>LATHAM & WATKINS LLP<br><br> /s/ Jeffrey Homrig<br>Jeffrey Homrig<br><br>*Attorneys for Defendants,*<br>*VADE SECURE, INCORPORATED; and*<br>*VADE SECURE SASU* |

## ATTESTATION OF CONCURRENCE

I, Iman Lordgooei, am the ECF user whose ID and password are being used to file this **JOINT DISCOVERY STATEMENT RE EXCLUSION OF UNTIMELY ALLEGATIONS AND EVIDENCE PURSUANT TO FED. R. CIV. P. 37**. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: April 22, 2021                                        */s/ Iman Lordgooei*
                                                             Iman Lordgooei