REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1
2
3
4
5

Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Jeffrey G. Homrig (SBN 215890)
 jeff.homrig@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Ryan T. Banks (SBN 318171)
 ryan.banks@lw.com

6
7
8

**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

9
10
11
12

Margaret A. Tough (SBN 218056)
 margaret.tough@lw.com
Sadik Huseny (SBN 224659)
 sadik.huseny@lw.com
Joseph R. Wetzel (SBN 238008)
 joe.wetzel@lw.com

13
14
15

**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 91444
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

16
17

Attorneys for Defendants,
VADE SECURE, INC. and VADE SECURE SASU

18

[Additional Counsel listed on signature page]

19

UNITED STATES DISTRICT COURT

20

NORTHERN DISTRICT OF CALIFORNIA

21

SAN FRANCISCO DIVISION

22
23

PROOFPOINT, INC.; CLOUDMARK
LLC,

24

                    Plaintiffs,

        v.

25
26

VADE SECURE, INCORPORATED;
VADE SECURE SASU; OLIVIER
LEMARIÉ,

27

                    Defendants.

28

Case No. 3:19-CV-04238-MMC

**DEFENDANTS' NOTICE OF MOTION
AND MOTION FOR PARTIAL
SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT**

Hearing Date: May 28, 2021
Time: 9:00 a.m.
Judge: Hon. Maxine M. Chesney
Courtroom: 7, 19th Floor

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ...................... 1

3    II.    PERTINENT BACKGROUND.......................................................... 2

4        A.    Vade Secure and Its Products .............................................. 2

5        B.    Plaintiffs and Their Products .............................................. 3

6        C.    Olivier Lemarié ........................................................... 4

7        D.    Procedural History ....................................................... 5

8    III.    SUMMARY JUDGMENT SHOULD BE ENTERED DISMISSING
        PLAINTIFFS' TRADE SECRET AND COPYRIGHT CLAIMS ................................. 6

9
        A.    Plaintiffs Have Failed To Show a Triable Issue of Fact as to the
10            Existence of Trade Secrets at Issue........................................ 7

11            1.    Plaintiffs' Asserted Trade Secrets.................................. 8

12            2.    Trade Secret Category 1............................................ 10

13            3.    Trade Secret Category 2............................................ 11

14            4.    Trade Secret Category 3............................................ 11

15            5.    Trade Secret Category 4............................................ 12

16            6.    Trade Secret Category 5............................................ 12

17        B.    Summary Judgment Should Be Entered Dismissing Plaintiffs'
            Claims That There Is Misappropriated Code in the Content Filter
18          Product ................................................................. 13

19        C.    Summary Judgment Should Be Entered Dismissing Plaintiff's
            Claims Against Vade Secure's Current Office 365 Product................... 17

20
        D.    Plaintiffs' Copyright Registrations Are Invalid as a Matter of Law.......... 22
21
            1.    Plaintiffs' representation that the Trident Modules were
22              unpublished was inaccurate because Trident had previously
                been distributed to customers....................................... 22
23
            2.    Proofpoint's representation that the Trident Modules were
24              unpublished was made with full knowledge that it was false.............. 24

25            3.    The Register of Copyrights has consistently refused
                registration based on inaccurate publication information................ 24
26
    IV.    CONCLUSION................................................................ 25
27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Ackerman v. W. Elec. Co.*,
    860 F.2d 1514 (9th Cir. 1988) ...............................................................................7

5

6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................7

7

8

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*,
    2007 WL 2429653 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332 F. App'x 387 (9th
    Cir. 2009) ...............................................................................................14, 17, 18

9

10

*Calendar Rsch. LLC v. StubHub, Inc.*,
    2020 WL 4390391 (C.D. Cal. May 13, 2020) ............................................... *passim*

11

*Campbell v. Vitran Express Inc.*,
    2016 WL 873009 (C.D. Cal. Mar. 2, 2016)..............................................................7

12

13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................6, 7

14

15

*Cinebase Software, Inc. v. Media Guar. Tr., Inc.*,
    1998 WL 661465 (N.D. Cal. Sept. 22, 1998) .........................................................19

16

*Determined Prods., Inc. v. Koster*,
    1993 WL 120463 (N.D. Cal. Apr. 13, 1993) .........................................................22

17

18

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ................................................................................6

19

20

*Founder Starcoin, Inc. v. Launch Labs, Inc.*,
    2018 WL 3343790 (S.D. Cal. July 9, 2018) ..........................................................11

21

*Getaped.com, Inc. v. Cangemi*,
    188 F. Supp. 2d 398 (S.D.N.Y. 2002).....................................................................23

22

23

*Gold Value Int'l Textile Inc. v. Sanctuary Clothing LLC*,
    2017 WL 2903180 (C.D. Cal. Mar. 24, 2017)........................................................25

24

25

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
    925 F.3d 1140 (9th Cir. 2019) ...................................................................23, 24, 25

26

*Henderson v. City of Simi Valley*,
    305 F. 3d 1052 (9th Cir. 2002) ............................................................................6, 7

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
   2018 WL 6617633 (S.D. Cal. Dec. 18, 2018)..........................................................12

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ..............................................................7, 8, 10, 11

*Jeon v. Anderson*,
   2019 WL 2949033 (C.D. Cal. June 14, 2019) .........................................................25

*Loop AI Labs*,
   195 F. Supp. 3d 1111 (N.D. Cal. 2016) ...................................................................8

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*
   (D. Ariz. Sept. 24, 2018)........................................................................................22

*Toguchi v. Chung*,
   391 F.3d 1051 (9th Cir. 2004) ...............................................................................13

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   959 F.3d 1194 (9th Cir. 2020) ...............................................................................22

*Urban Textile, Inc. v. Fashion Avenue Knits, Inc.*,
   No. 16-cv-06786 (C.D. Cal. Dec. 29, 2017)..........................................................25

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   796 F. Supp. 2d 1025 (N.D. Cal. 2011) ..................................................................13

*X6D Ltd. v. Li-Tek Corps. Co.*,
   2012 WL 12952726 (C.D. Cal. Aug. 27, 2012)............................................8, 10, 12

## STATUTES

17 U.S.C. § 101 ........................................................................................................22

17 U.S.C. § 411(a) ....................................................................................................22

17 U.S.C. § 411(b) ........................................................................................23, 24, 25

17 U.S.C. § 411(b)(1) ...............................................................................................24

17 U.S.C. § 411(b)(1)(A) ..........................................................................................22

17 U.S.C. § 411(b)(1)(B) ..........................................................................................22

17 U.S.C. § 411(b)(2) ........................................................................................24, 25

17 U.S.C. § 501 *et seq*. ..............................................................................................v

18 U.S.C. § 1836 *et seq*. ............................................................................................v

18 U.S.C. § 1839(3) ..........................................................................................8, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

18 U.S.C. § 1839(3)(A) ........................................................................................................7

18 U.S.C. § 1839(3)(B) ........................................................................................................7

**RULES**

FED. R. CIV. P. 56(a) .......................................................................................................v, 7

FED. R. CIV. P. 56(e) ...........................................................................................................7

**OTHER AUTHORITIES**

*Compendium of U.S. Copyright Office Practices*, THIRD EDITION § 1106.1 ................................25

*Compendium of U.S. Copyright Office Practices*, THIRD EDITION § 721.9(E) ...........................23

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  **<u>NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

2  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on May 28, 2021 at 9:00 a.m., or as soon thereafter as the

4  parties may be heard, before the Honorable Maxine M. Chesney, Senior District Court Judge,

5  United States District Court for the Northern District of California, in the San Francisco Division

6  Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

7  Defendants Vade Secure, Inc., Vade Secure SASU (together "Vade Secure" or "Defendants")

8  will bring for hearing, pursuant to Federal Rule of Civil Procedure 56(a), this motion for partial

9  summary judgment dismissing certain causes of action asserted by Plaintiffs Proofpoint, Inc.

10  ("Proofpoint"), and Cloudmark, LLC ("Cloudmark," and with Proofpoint, "Plaintiffs") set forth

11  in Plaintiffs' First Amended Complaint ("FAC") and brought against Defendants, including

12  Mr. Olivier Lemarié.

13                        **<u>RELIEF SOUGHT</u>**

14        Defendants hereby move for summary judgment on the following causes of action and

15  issues on the ground that there are no genuine disputes as to any material facts and Defendants

16  are entitled to judgment as a matter of law:

17        1.      Count I against Defendants for Trade Secret Misappropriation under Defend

18  Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, in relation to: Plaintiffs' claims of alleged

19  misappropriation relating to (1) Plaintiffs' Trade Secrets 1-5; (2) Vade Secure Content Filter; and

20  (3) the current version of Vade Secure for Microsoft Offce 365.

21        2.      Count VI against Defendants for Copyright Infringement under 17 U.S.C. § 501

22  *et seq.*

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This case is a cynical effort by Plaintiffs to slow Vade Secure's rapid growth in the email security field, to provide an argument Plaintiffs could use to convince customers to buy their inferior products instead of Vade Secure's, and to punish defendant Olivier Lemarié for leaving Cloudmark and joining Vade Secure as its Chief Technology Officer more than four years ago. While Plaintiffs will howl about "verbatim copying" of their source code, this is, in truth, much ado about nothing.  Out of the tens of thousands of Vade Secure files Plaintiffs' experts have examined, they found only seven that they can even allege were copied.  And those seven have been revealed to be short files to perform the simplest and most generic steps found in every modern email security product, and which Mr. Lemarié wrote himself as implementations of open source tools well-known to everyone in the field.  In other words, Plaintiffs know well that these files are not legitimate "trade secrets" and that they have no value—indeed, the record shows that some of the seven accused files never made it into a Vade Secure product, and that Mr. Lemarié replaced the remaining ones with open source code easily and in a matter of a few small hours, and Plaintiffs' damages experts have struggled to ascribe any damages to the alleged copying.

Given these developments, instead of dismissing this action as they should, Plaintiffs have strained to expand their allegations of misappropriation to cover Vade Secure products and code beyond the seven files.  In doing so, Plaintiffs allege broadly that Vade Secure's source code has similar "implementations" or similar "sequence, structure and organization" as that found in Plaintiff's source code.  To do so, Plaintiffs deliberately obfuscate what their trade secrets are— instead of identifying clear boundaries to what are (and what are not) their trade secrets, Plaintiffs apply flexible and vague language about the "implementation of" and "improvements to" a convoluted list of interwoven abstract concepts that each are admittedly well-known and within the general knowledge of the field.  And, to rope in two of Vade Secure's larger products—its Content Filter and Microsoft Office 365 products—Plaintiffs allege misappropriation despite the admissions of their expert that he searched Vade Secure's code for hundreds of hours and could find *no code at all* that implements even a single alleged trade secret in either product.  This is particularly ironic given the overwhelming weight Plaintiffs have put on source code as the key

1    evidence they averred would prove their case throughout this action.  Yet, only by ignoring the

2    lack of evidence in the source code were Plaintiffs able to boost the monetary relief they demand

3    dramatically: approximately $31.6 million of its $36.5 million claim for unjust enrichment hinges

4    on Plaintiffs' contention that Content Filter *might* use their trade secrets.  And, to further

5    complicate the case, Plaintiffs rushed to the Copyright Office to register their source code and

6    added copyright claims in an amended complaint.  But, in doing so, they misrepresented the code

7    as being "unpublished" despite knowing they had distributed various parts of their software to

8    customers in ways that confirm the code was in fact "published," which warrants the invalidation

9    of Plaintiffs' copyright registrations and the dismissal of their copyright claims in this action.

10        For these reasons, as detailed below, Vade Secure respectfully asks the Court to enter

11   partial summary judgment and dismiss Plaintiffs' allegations of trade secret misappropriation to

12   the extent they are based on the "implementation" or "improvement" of undefined trade secrets,

13   to dismiss Plaintiffs' misappropriation claims to the extent they relate to Vade Secure's Content

14   Filter and Office 365 products, and to dismiss Plaintiffs' claims of copyright infringement.[1]

15   **II.    PERTINENT BACKGROUND**

16        **A.    Vade Secure and Its Products**

17        Vade Secure was founded in 2008 in Hem, France.  Although significantly smaller than its

18   primary competitors, Vade Secure has emerged as a leader in the field based on its superior cyber

19   security technology and its industry-leading portfolio of email security solutions.

20        Vade Secure's first product was "Content Filter"—software that protects more than a

21   million email accounts at a given time.  Ex. 1 (Defs.' Resps. to Pls.' 6th Set of Rogs. (Nos. 20-23))

22   at 9.  Content Filter is a standalone product designed to detect a multitude of types of malicious

23   content, including since 2015 phishing and spear phishing attacks.  Ex. 2 (Striegel Rpt.)) ¶ 84.[2]

---

[1] If this motion were granted in full, Plaintiffs' claims of misappropriation of its alleged trade secret 6 would remain extant.

[2] "Phishing" generally refers to efforts to trick computer users into sharing sensitive information such as usernames, passwords, and credit card information.  Phishing attacks tend to target broad groups en masse. Ex. 2 (Striegel Rpt.) ¶ 39; Ex. 7 (Expert Report of Dr. John Black ("Black Rpt.")) ¶¶ 64-67.  "Spear phishing" attacks are phishing attacks that typically use personalized emails to target an individual by pretending to come from known acquaintances or colleagues. The victim is typically asked by the attacker to execute some financial transaction, such as scheduling a wire

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Building on the success of Content Filter, Vade Secure has developed and released other

2    security products including, among others, its "MTA Builder" and "Vade Secure for Microsoft

3    Office 365" ("O365") products.  MTA Builder is a framework for customers to build a highly

4    customizable mail transfer agent, or MTA.  Ex. 2 (Striegel Rpt.) ¶ 81.

5    O365 provides security for emails being sent to Microsoft Office 365 email accounts.  *See*

6    Ex. 3 ("Nielson Rpt.") ¶¶ 133-134; Ex. 2 (Striegel Rpt.) ¶ 61.  Many of Plaintiffs' allegations in

7    this action are directed to a module of code that was once included in the code base for O365 called

8    ███████████  *See* Ex. 4 (Resp. To 3rd Set of Rogs. (No. 10)) at 11, 20-24, 32-33.  Central to

9    one ground for this motion, ███████ was removed completely from O365 in June 2020 and

10   is not located in any source code for any product sold by Vade Secure today.  This, of course, is

11   not a coincidence.  After Plaintiffs served their initial complaint alleging that O365 contained

12   misappropriated trade secrets, Vade Secure ██████████████████████████

13   ████ to replace ███████ in its entirety.  Ex. 3 (Nielson Rpt.) at 95; Ex. 2 (Striegel Rpt.)

14   ¶ 64.  Using a traditional clean-room approach, Vade Secure ████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ██████  *See*, *e.g.*, Ex. 2 (Striegel Rpt.) ¶ 66; Ex. 5; Ex. 6.  From there, ████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   █████.  Ex. 2 (Striegel Rpt.) ¶ 66.  Even Plaintiffs' expert now admits "that ████████ has

21   been removed from Vade O365 in its entirety."  Ex. 8 ("Nielson Supp. Rpt.") ¶ 31.

22   **B.    Plaintiffs and Their Products**

23   Proofpoint is a multi-billion dollar company with thousands of employees.  It acquired

24   Cloudmark in November 2017, and, at that time, represented to the market and the government

25   that all of Cloudmark's "Core/developed technology" (which included the handful of lines of code

26   that Plaintiffs allege contain the purported trade secrets in this action as well as the tens of

27

28   transfer, purchasing gift cards, making a payment, or changing direct deposit information.
     *See* Ex. 2 (Striegel Rpt.) ¶ 93; Ex. 7 (Black Rpt.) ¶¶ 68-69.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

thousands of lines of additional code not at issue) was valued at $18.5 million, and that the "Useful Life" of that technology was roughly four years. Ex. 9 (Proofpoint 10-K) at 79.

Despite its much larger size and significantly greater resources, Proofpoint has struggled to compete with Vade Secure. Proofpoint's internal communications show that it has long been aware that Vade Secure's ▮▮▮▮▮▮▮▮▮," Ex. 10 at 731, that Proofpoint is "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 11 at 571, and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12; Ex. 13.

In 2015, Cloudmark began developing Trident, an email security solution intended to combat spear phishing attacks. Cloudmark began ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but, ultimately, the product was short-lived. Ex. 14. By November 2016, Cloudmark had entered into discussions about Proofpoint's potential acquisition of Cloudmark, and understood from these discussions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 15; Ex. 16 (Dep. Tr. of Lori Cho ("Cho Tr.")) at 139:25–141:2, 144:6–11, 145:1–3. Knowing this, and facing "▮▮▮▮▮▮▮▮ for Trident, Cloudmark ▮▮▮▮▮▮▮▮▮▮. Ex. 17; Ex. 18 (Dep. Tr. of Kevin San Diego ("San Diego Tr.")) at 51:16–52:4; Ex. 14.

Post-acquisition, Proofpoint has not replaced Trident but focused instead on other products including Cloudmark Authority and Cloudmark Security Platform for Email.

## C.   Olivier Lemarié

Defendant Olivier Lemarié is a gifted software programmer who has worked in cyber security for 27 years. Early on, Mr. Lemarié saw the shortcomings in conventional email security and set out to build the most advanced and secure MTA in the world. *Id.* To this end, in 2004, Mr. Lemarié founded a company called Bizanga to develop and commercialize his email security ideas. *Id.* Seeing Bizanga's success, Cloudmark acquired Bizanga in 2010, hiring Mr. Lemarié as its Vice President of Gateway technology. *Id.*

At Cloudmark, Mr. Lemarié became the principal architect and programmer of Cloudmark's Trident product. *Id.* ¶ 116. But, as happens all too often with corporate mergers, conflict soon arose, and Mr. Lemarié faced significant resistance to the approach he wanted to take

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   with Trident.  *See* Ex. 19 (Dep. Tr. of Angela Knox ("Knox Tr.")) at 71:13–72:10.  Then, as noted

2   above, Cloudmark ████████████████████████████ on the eve of its acquisition by Proofpoint.

3       Hoping to continue his life's work, Mr. Lemarié left Cloudmark in 2016, and, after

4   surveying the industry, joined Vade Secure as its Chief Technology Officer in 2017.  Mr. Lemarié

5   was not the only Cloudmark engineer to become disillusioned: three other Cloudmark engineers

6   also joined Vade Secure, namely Alexandre Boussinet, Xavier Delannoy, and Guillaume Séjourné.

7       While at Vade Secure, ████████████████████████████████████████

8   ████████████████.  Should this case progress to trial, the evidence will show that Mr. Lemarié

9   believed he was free to ████████████████████████████████████████

10  ████████████████████████████████████████████████████████,

11  and that he built from open—and publicly known—sources as opposed to comprising confidential

12  materials or trade secrets belonging only to Cloudmark.  Indeed, some of the seven files never

13  made it into any Cloudmark product, and after this lawsuit was filed, Mr. Lemarié removed the

14  remaining files from Vade Secure's source code and replaced them with open source software in

15  just a matter of hours.  Ex. 20 (Lemarié's 1st Resp. to Pls.' 4th Set of Rogs. (Nos. 6–9)) at 12.

16      Facing increased competition from Vade Secure's superior products and aware that Vade

17  Secure had just obtained several million dollars in financing, angry that Mr. Lemarie had left them

18  and joined a competitor, and unable to catch up technologically, Plaintiffs filed this suit.

19      **D.   Procedural History**

20      Plaintiffs filed their complaint on July 23, 2019, alleging trade secret misappropriation and

21  breach of contract.  Dkt. 1.  On August 13, 2020, Plaintiffs amended their complaint to include

22  allegations of copyright infringement.  Dkt. 219.  This is the operative complaint today.

23      Together with their initial complaint, Plaintiffs moved for a preliminary injunction based

24  on the alleged trade secret misappropriation.  The Court considered that motion and the evidence

25  and denied the requested injunction, commenting that "Plaintiffs have not, however, pointed to

26  evidence identifying the aspects of the claimed combination of elements and architecture that are

27  in fact trade secrets" and that "plaintiffs have failed to show a likelihood of success on the merits

28  or that serious questions going to the merits exist."  Dkt. 126.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

5

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    From the beginning, this case has focused squarely on each party's source code. Plaintiff's

2    initial complaint alleged that Mr. Lemarié "had unfettered access to Cloudmark's technical

3    documents and source code." Dkt. 1 at 7. Then, in its preliminary injunction motion, Plaintiffs

4    argued that their trade secrets were "embodied in, among other things, the source code" (Dkt. 31

5    at 16), and that misappropriation could be inferred because Mr. "Lemarié and the other former

6    Cloudmark employees … had access to Cloudmark's confidential information, including source

7    code." Dkt. 82 at 10. Plaintiffs also brought four discovery motions demanding that Vade Secure

8    produce every line of the company's source code, and seeking and obtaining sanctions premised

9    on the critical nature of that code. Dkts. 78, 91, 236, 286, 292. In bringing these motions, Plaintiffs

10   again argued that source code was the key source of proof for its allegations of misappropriation.

11   *See, e.g.,* Mot. to Comp. Source Code Printouts, Dkt. 236-3 at 6 ("[T]he requested source code

12   printouts . . . demonstrate the use of Plaintiffs' trade secrets in Defendants' source code—evidence

13   that is critical to Plaintiffs' trade secret claims.") Consistent with this, Plaintiffs' contentions

14   centered on source code. *See* Ex. 4 (Contentions) at 9

15

16                          "); *id.* at 26-27. And, the same is true for their expert reports, which repeatedly

17   note that it is the alleged use of Plaintiffs' source code that supports their claims of copyright

18   infringement, trade secret misappropriation, contract breach, and damages. *See, e.g.*, Ex. 3

19   (Nielson Rpt.) ¶ 280; *id.* at ¶ 66.

20        As shown below, now that discovery has concluded, it turns out that the ***lack*** of evidence

21   in the source code leads inexorably to summary judgment.

22   **III.    SUMMARY JUDGMENT SHOULD BE ENTERED DISMISSING PLAINTIFFS'**
23   **TRADE SECRET AND COPYRIGHT CLAIMS**

24        Summary judgment is appropriate if "there is no genuine issue as to any material fact and

25   … the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

26   U.S. 317, 322 (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). To avoid

27   summary judgment, there must be "evidence [on] which a jury could reasonably find" for the non-

28   moving party. *Henderson v. City of Simi Valley*, 305 F. 3d 1052, 1061 (9th Cir. 2002). Summary

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    judgment should be entered on claims for which plaintiffs bear the burden of proof when plaintiffs

2    fail to "make a showing sufficient to establish the existence of an element essential to [plaintiffs']

3    case." *Celotex*, 477 U.S. at 322.  To avoid summary judgment, Plaintiffs "must set forth specific

4    facts showing that there is a genuine issue for trial."  *Henderson*, 305 F.3d at 1055-1056 (quoting

5    FED. R. CIV. P. 56(e)).  However, a party cannot avoid summary judgment if its "evidence is merely

6    colorable, … or is not significantly probative;" "[t]he mere existence of a scintilla of evidence …

7    will be insufficient."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

8         Moreover, although the facts must be viewed in the light most favorable to the non-moving

9    party, that party "is entitled to the benefit of only *reasonable* inferences that may be drawn from

10   the evidence put forth" and "mere allegation and speculation do not create a factual dispute for

11   purposes of summary judgment." *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988).

12   Partial summary judgment may be used "to isolate and dispose of factually unsupported claims or

13   defenses." *Celotex*, 477 U.S. at 323–24; *see also* Fed. R. Civ. P. 56(a).  "The standards and

14   procedures for granting partial summary judgment … are the same as those for summary

15   judgment." *Campbell v. Vitran Express Inc.*, 2016 WL 873009, at *3 (C.D. Cal. Mar. 2, 2016).

16
17        **A.    Plaintiffs Have Failed To Show a Triable Issue of Fact as to the Existence of
              Trade Secrets at Issue**

18        It is Plaintiffs' burden to prove that their purported trade secrets are protectable under the

19   Defend Trade Secrets Act by showing that "the information derives independent economic value,

20   actual or potential, from not being generally known," and "not being readily ascertainable."  18

21   U.S.C. § 1839(3)(A)-(B); *see also Calendar Rsch. LLC v. StubHub, Inc*., 2020 WL 4390391, at *1

22   (C.D. Cal. May 13, 2020) [3]; *see also Imax Corp. v. Cinema Techs*., Inc., 152 F.3d 1161, 1164–65

23   (9th Cir. 1998).  Under the DTSA, "[t]rade secrets cannot be vague concepts," and summary

24   judgment is appropriate where a "[p]laintiff fails to identify the specific set of 'methods, techniques,

25   processes, procedures, programs, or codes' that comprise a trade secret." *Calendar Rsc.*, 2020 WL

26   _____

27   [3] *Calendar* is particularly instructive because the federal DTSA statutes applicable in this case are
     still new and there are relatively few cases applying them. Moreover, as the Court in *Calendar*

28   noted, cases applying California's state trade secret statute can be helpful in applying the federal
     DTSA statutes applicable in this case.  *Id.* at *3 n.5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

4390391, at *6 (*quoting* 18 U.S.C. § 1839(3)); *see also id.* ("[w]ithout a sufficiently precise definition, [a] general concept . . . is too vague to constitute a trade secret."); *Loop AI Labs*, 195 F. Supp. 3d at 1111 (N.D. Cal. 2016). A plaintiff's burden to distinguish its trade secrets from generally known concepts is core to the DTSA. Consequently, "this is a substantive issue on which [p]laintiffs bear the burden of proof." *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726 at *8 (C.D. Cal. Aug. 27, 2012). Summary judgment is appropriate where plaintiffs fail to meet this burden. *Id.* at *9; *Imax Corp.*, 152 F.3d at 1164–65; *Calendar Rsc.*, 2020 WL 4390391, at *6.

Plaintiffs' obligation to be precise is heightened in a highly technical case because the "distinction between general industry knowledge in a complex field and a specific trade secret is inherently difficult, and 'it is unlikely that the district court or any trier of fact would have expertise in discerning exactly which' technical information constitutes a 'trade secret[]' without more precise guidance from a plaintiff." *Calendar Rsc.*, 2020 WL 4390391, at *4 (quoting *Imax*, 152 F.3d at 1161). Further, to protect employee mobility, plaintiffs must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade'" and "'must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition.'" *Id.* at *4-5. Where, as here, Plaintiffs claim improvements to widely-known concepts as trade secrets, a "'more exacting level of particularity may be required to distinguish the alleged trade secret from matters already known to persons skilled in that field.'" *Id.* at *5 (quoting *Loop AI Labs*, 195 F. Supp. 3d at 1115).

### 1. **Plaintiffs' Asserted Trade Secrets**

Plaintiffs assert six categories of alleged trade secrets that they claim were misappropriated (five technical categories consisting of high-level techniques and feature combinations, and one business category consisting of Cloudmark's customers' information). Ex. 4 (Plaintiffs' Trade Secret Contentions). This motion is directed to the five categories of technical trade secrets.

Plaintiffs fashioned the handful of techniques identified in the five technical categories into 155 different combinations, each of which they claim to be a distinct trade secret. *Id.* None of Plaintiffs' corporate witnesses was able to identify their trade secrets. *See*, *e.g.*, Ex. 21 (Dep. Tr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   of Gael Roualland) at 55:5-18, 58:14-59:13; Ex. 18 (Knox Tr.) at 172:25-174:7, 273:15-274:3;

2   Ex. 18 (San Diego Tr.) at 219:3–8, 267:9–268:7.  Instead, Plaintiffs' experts Dr. John Black and

3   Dr. Seth Nielson were handed the Trade Secret Contentions served by Quinn Emanuel, and Dr.

4   Black was asked to offer an opinion about whether each enumerated trade secret satisfies the

5   DTSA standard for protection. Ex. 22 (Dep. Tr. of Dr. John Black ("Black Tr.") at 351:2-6; Ex. 23

6   (Dep Tr. of Dr. Seth Nielson ("Nielson Tr.") at 109:12-110:17, 128:25-129:13.  Plaintiffs tasked

7   Dr. Nielson with attempting to show that each asserted trade secret identified in the contentions is

8   used in Vade Secure's accused products.  Ex. 23 (Nielson Tr.) at 129:14-16; 130:3-8.

9           Dr. Black described his understanding of each enumerated trade secret in Exhibit 5 to his

10  expert report. Ex. 7 Black Rpt. ¶¶ 194, 231, 255, 276, 302.  First, Dr. Black repeated the category

11  of enumerated trade secrets from Plaintiffs' contentions.  *See*, *e.g. id.*  (Black Rpt. Ex. 5 §A).  For

12  each trade secret, that identification consists of (a) the statement that the trade secret consists of

13  ███████████████████████████████████████████████████████████████████████████

14  ██████████ as reflected in Cloudmark's code and/or documents, followed by (b) an enumerated list

15  of combinations of features (*i.e.*, high level concepts).  *See*, *e.g.*, *id.*  Second, Dr. Black discussed

16  what he understood the "implementation" corresponding to each enumerated trade secret to be.

17  *See*, *e.g.*, *id.* ¶¶ 1-10.  Dr. Black confirmed that the trade secrets are ███████████████████

18  ██████████████████████████████████████████████████ Ex. 22 (Black Tr.)

19  at 164:3-15.  But neither Dr. Black nor Plaintiffs' contentions clarifies exactly what the trade

20  secrets actually are.  Plaintiffs' contentions state that the trade secrets are the ████████████

21  █████████████████████████ of the enumerated combinations of features, which in this software

22  context *should* mean some defined portion of Plaintiffs' specific implementations in source code.

23  Ex. 4 (Trade Secret Contentions) at 78-79; *see also e.g.* Ex. 7 (Black Rpt. Ex. 5 ¶¶ 1-10).  But Dr.

24  Black testified that the trade secrets are actually ████████████████████████████████████

25  █████████████████ Ex. 22 (Black Tr.) at 164:3-15.  Dr. Nielson, on the other hand,

26  testified that ██████████████████████████████████████████████████████████████████

27  ██████ Ex. 23 (Nielson Tr.) at 153:24-154:8. And, as Dr. Black explained, ████████████████

28  ████████████████████ Ex. 22 (Black Tr.) 277:10-21 ("█████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ████████████████████████████.").   As discussed below, this ambiguity and

4 vagueness confused even Plaintiffs' misappropriation expert, Dr. Nielson, who struggled to answer

5 questions about the alleged trade secrets' boundaries. Ex. 23 (Nielson Tr.) at 116:25-118:4,

6 118:25-119:21, 121:9-124:22, 124:1-22, 125:25-127:1, 132:16-134:2.   And in any event,

7 Plaintiffs' identification of the purported trade secrets fails to provide the "exacting level of

8 particularity" that is "required to distinguish the alleged trade secrets from matters already known

9 to persons skilled in that field." *Calendar Rsc.*, 2020 WL 4390391, at *5, *9.   Summary judgment

10 is warranted. *Id.*; *see also Imax Corp.*, 152 F.3d 1161, 1164–65.

11         2.   **Trade Secret Category 1**

12      Trade Secret Category 1 claims ████████████████████████████

13 Ex. 7 (Black Rpt. Ex. 5 §A).  Dr. Black's Exhibit 5 identifies ███████████████████

14 ██████████████████████████████ *Id.* ¶¶ 1-12.  But, as noted, Dr. Black interprets

15 the trade secrets as ████████████████████ he cited. Ex. 22 (Black Tr.) at 277:10-

16 21.   And Dr. Nielson testified that ██████████████████████████████████

17 ██████████████████████████████████████████████████

18 Ex. 23 (Nielson Tr.) at 118:20-23; 121:22-123:24.  He elaborated that, because the ███████

19 ███████████████████████████████████████████████████

20 ███████████████████████████████████████████████████

21 ████████████████████████████████████ *Id.* at

22 119:10-21.   But Plaintiffs do not identify with particularity what these █████████

23 █████████████████████████████ actually are.  Plaintiffs identify no

24 precise boundaries.  Even Dr. Nielson, whose job it was to map the trade secrets onto the accused

25 products, could not identify boundaries, beyond pointing to the generalized Category 1 itself. *Id.*

26 at 124:8-127:1.  Such vague allegations lack "sufficient particularity" and cannot satisfy Plaintiffs'

27 burden. *See, e.g., Calendar Rsc.*, 2020 WL 4390391 at *5; *X6D,* 2012 EL 12952726 at *6; *Imax*,

28 152 F.3d at 1167.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1      3.      **Trade Secret Category 2**

2           Category 2 suffers from the same vagueness.   Plaintiffs define it as ████████

3      ████████████████████████████████████████████████████████████████████

4      ████████████████████████████  Ex. 7 (Black Rpt. Ex. 5 ¶ 23).   Dr. Black

5      discusses certain lines of source code with respect to 2(a).   *Id.* ¶¶ 25-33.   But there is no

6      identification of a specific ██████████████████████████████ in the source code.   *Id.*; *see*

7      *also* Ex. 18 (San Diego Dep. Tr.) at 225:19-226:5, 211:18-212:8, 244:7-17.   And 2(b) was

8      ██████████████—Dr. Black simply reproduces a slide with the idea ████████████

9      █████████████████████  and cites similarly vague documents.   *Id.* ¶¶ 34-36.   This is

10     insufficient to define a protectable trade secret.   *Calendar Rsc.*, 2020 WL 4390391, at *10; *see*

11     *also Imax*, 152 F.3d at 1161; *Founder Starcoin, Inc. v. Launch Labs, Inc.*, 2018 WL 3343790, at

12     *6–8 (S.D. Cal. July 9, 2018) ("Plaintiff has not carried its burden to establish that it had a valid

13     trade secret" where plaintiff relied on statement in a slide deck that "belies a broad range of

14     potential concepts, not a hard and fast trade secret").

15     4.      **Trade Secret Category 3**

16          Category 3 fares no better.   Plaintiffs define it as: ███████████████████████

17     ████████████████████████████  Ex. 7 (Black Rpt. Ex. 5 ¶ 37).   But Dr. Black admits that

18     ████████████████████████████████████████████████████  *Id.* (Black

19     Rpt.) at ¶ 267.   And as Dr. Clark has explained, ████████████████████████████

20     ████████████████████████████████████████  implemented, and publicly

21     documented by entities such as Cisco. Ex. 24 (Cisco User Guide for Advanced Phishing

22     Protection); Ex. 25 (Expert Report of Dr. Paul Clark ("Clark Rpt.")) ¶¶ 251, 260-261.   In fact, the

23     use of Microsoft O365 journaling for email security and filtering is so well-known that Microsoft

24     itself suggested to Vade Secure that ████████████████████████████"   Ex. 25 (Clark

25     Rpt.) ¶¶ 251, 260-261; Ex. 26 (July 13, 2017 Microsoft email).   Yet Plaintiffs do not identify

26     specific "implementation and proposed improvements" that they claim as a trade secret, nor their

27     precise boundaries.   Ex. 7 (Black Rpt. Ex. 5 ¶ 37).   Consequently, they have not carried their

28     affirmative burden to distinguish from public knowledge what they claim as a trade secret.   *See*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    *Calendar Rsc.*, 2020 WL 4390391, at *6, *12.

2              5.    **Trade Secret Category 4**

3         Category 4 incorporates the other categories into 130 separate combinations of features,

4    incorporating their individual vagueness and adding more.  Dr. Black's explanation of "Plaintiffs'

5    specific implementations" of those 130 trade secret combinations consists of a single sentence:

6    ███████████████████████████████████████████████████████████████████████

7    █ ████████ █ ████████ ████████ █ ████████ ███████ ███████ ████████

8    ███████████████████████████████████████████████████████████████████████

9    ██████   Ex. 4 (Black Rpt.) ¶ 276, (Black Rpt. Ex. 5 at pg. 21).  This, too, is insufficient.  *See*, *e.g.*,

10   *Calendar Rsc.*, 2020 WL 4390391, at *5-7; *Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,

11   2018 WL 6617633, at *5 (S.D. Cal. Dec. 18, 2018); *X6D Ltd.*, at *8.

12             6.    **Trade Secret Category 5**

13        Category 5 recites ████████████████████████ without claiming

14   any specific "methods, techniques, processes, procedures, programs, or codes," as required to

15   identify a protectable trade secret. 18 U.S.C. § 1839(3)); *see also Calendar Rsc.*, 2020 WL

16   4390391, at *6.  For example, in alleged trade secret 5(a), Plaintiffs claim ████████████

17   ███████████████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████████████████

19   █████████████████████████████████   Ex. 7 (Black Rpt.) ¶ 301.

20   Dr. Black's description of this category is even less clear than his others—he summarizes high-

21   level documents and gives nothing like a clear definition or a discernable set of boundaries.  *See,*

22   *e.g.*, Ex. 7 (Black Rpt. Ex. 5 ¶ 67); Ex. 4 (Plaintiffs' Trade Secret Contentions) at 79.  Without

23   more, Plaintiffs cannot carry their burden of distinguishing the purported trade secrets from well-

24   known and unprotectable ideas.  *See Calendar Rsc.*, 2020 WL 4390391, at *8.  As in *Calendar*

25   *Research*, Plaintiffs fail to show that the "mere use" of ████████████ "or any other third-party

26   application, is a protectable technique under the DTSA."  *Calendar Rsc.*, 2020 WL 4390391, at

27   *12; *see also* Ex. 5 (Clark Rpt.) ¶¶ 335-336.  The same is true for the use of ████████████

28   █████████████████, both of which are "tools that are well-known" *Calendar Rsc.*, 2020

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    WL 4390391, at *8.  The use of ████████████████████████████████████████,"

2    is "an indefinable concept that is too vague to constitute a trade secret."  *Id*. at *11.  In short,

3    "[a]lthough Plaintiff presents a voluminous list of technical terms, Plaintiff fails to articulate any

4    of these concepts with enough specificity to distinguish them from the "special knowledge of those

5    who are skilled in the trade."  *Id*. at *7.

6         Plaintiffs' alleged Trade Secrets 5(b)-5(e) all incorporate Trade Secret 5(a), and therefore

7    suffer from the same deficiencies.  Moreover the additional limitations of the dependent trade

8    secrets are themselves insufficient to constitute protectable trade secrets.  For example, alleged

9    Trade Secret 5(b) attempts to claim the use of a ████████████  Ex. 7 (Black Rpt.) ¶ 301.

10   ████████████████████████████████████████████████████████████

11   Ex. 25 (Clark Rpt.)  ¶¶ 343-344.  Here again, Plaintiffs have not identified their purported trade

12   secrets with enough particularity to carry their burden of distinguishing what they claim from

13   others' work and well-known and unprotectable ideas.  *Calendar Rsc.*, 2020 WL 4390391, at *12.

14        **B.      Summary Judgment Should Be Entered Dismissing Plaintiffs' Claims That
15                  There Is Misappropriated Code in the Content Filter Product**

16        Although Content Filter is not mentioned in Plaintiffs' complaint or responses to any

17   interrogatories, their expert, Dr. Nielson, alleged for the first time in his expert report "████

18   ████████████████████████████████████████████████████████████

19   █████████████████████"[4]  Ex. 3 (Nielson Rpt.) ¶ 280.  Summary judgment should

20   be entered disposing of this ground for alleged misappropriation for at least the following reasons.

21        First, that Dr. Nielson's speculation is contradicted by Plaintiffs' other technical expert,

22   Dr. Black, who concluded that "Content Filter does not disclose Plaintiffs' specific asserted trade

23   secrets and proprietary information."  Ex. 7 (Black Rpt.) ¶ 367; *see also id.*at ¶¶ 364-366.

24        Second, that Dr. Nielson can only equivocate and opine that Content Filter ████████

25   ████████████ alone warrants summary judgment.  *Volterra Semiconductor Corp. v.*

26   *Primarion, Inc.*, 796 F. Supp. 2d 1025, 1043-44 (N.D. Cal. 2011) (granting summary judgment

27   and rejecting expert's equivocal opinion); *see also Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th

28

---

[4] All emphases supplied unless otherwise noted.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

13

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Cir. 2004) (quotation and citation omitted) (expert's "mere speculation does not create a factual

2    dispute for purposes of summary judgment"). It is far too late in the day for Plaintiffs' suspicions

3    of what is ███████ ," and summary judgment should be granted.

4          Third, despite hundreds of hours of searching through thousands or tens of thousands of

5    Vade Secure source code, Dr. Nielson conceded he could not find either of the relevant code

6    modules—the old "███████" module or ███████ ███████████"

7    module—in Content Filter. *See* Ex. 23 Nielson Tr. at 44:16–23, 100:10–13. Indeed, Dr. Nielson

8    concedes that he cites to no code at all to support his conjecture that Content Filter *might* contain

9    Plaintiff's trade secrets. *Id.* at 149:17–152:4; *see also id.* at 162:14–20 ████████

10   ████████████████████████████████████████████

11   ████████████████"). This absence of the alleged trade secrets in the actual source

12   code for Content Filter—the most reliable evidence of what is actually in Vade Secure's

13   products—warrants summary judgment. *See Calendar Rsch.*, 2020 WL 4390391, at *4

14   ("Although code comparison is not the only way to prove trade secret misappropriation in

15   technology cases, it is one of the most clear-cut methodologies."); *see also Brookhaven Typesetting*

16   *Servs., Inc. v. Adobe Sys., Inc.*, 2007 WL 2429653, *10-11 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332

17   F. App'x 387 (9th Cir. 2009) (granting summary judgment where plaintiff offered only "vague"

18   statements and showed "no indications of similarities" in the source code).

19         Third, the scant "evidence" Plaintiffs point to bears no weight. Specifically, Plaintiffs and

20   Dr. Nielson rely on a single, undated marketing presentation containing the following image:



28   *See* Ex. 3 (Nielson Rpt.) ¶ 276; *see also* Ex. 23 (Nielson Tr.) at 157:13–18 ("████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  

2 .").  From this image, Plaintiffs

3 somehow conclude that "

4 ," Ex. 3 (Nielson Rpt.)

5 ¶ 276, that spear phishing must be done using either    or

6 *id.* ¶¶ 278-79, and so

7 ," *id.* ¶ 280.

8        This broken syllogism fails on several counts, however.  First, as noted above, the only

9 way to know if Content Filter incorporates the ***source code modules***    or

10 is to look at its ***source code***.  Dr. Nielson did exactly that and was

11 forced to admit he could not find either module.  *See*  Ex. 23 (Nielson Tr.) 157:22–158:3

12  

13  

14 "); *id.* at 163:24–164:8

15  

16  

17  

18 ").  Second, even if one were to ignore the dispositive nature of the source code,

19 there is no genuine basis to conclude that this figure from an undated document reflects any actual

20 functionality that has ever existed in Content Filter or, more importantly, that was added after any

21 of the Cloudmark engineers joined Vade Secure.  *See id.* at 159:15–161:5 (Dr. Nielson was unable

22 to testify whether the author of the figure programmed the products, who the document was

23 provided to, whether it was a draft or final, or described an actual or potential product).  Third, on

24 its face this document fails to support Dr. Nielson's vast leaps of logic: it never mentions Content

25 Filter,         , or the "filterd" daemon Dr. Nielson says

26 would enable Content Filter to access either code module.  *Id.* at 157:6–12.

27        Beyond this, Dr. Nielson's misappropriation theory boils down to the unsupported

28 argument "



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ███████████████" and "████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████" Ex. 3 (Nielson Rpt.) ¶ 277

4 (emphasis added). But this too fails as a matter of law. Even if former Cloudmark employees had

5 "used some of the knowledge, learnings, and knowhow they developed" at Cloudmark and

6 "worked on similar projects at" both companies, those facts do "not mean that [the former

7 employees] necessarily misappropriated trade secrets in the process." *Calendar Rsch.*, 2020 WL

8 4390391, at \*14 (the "question for this Court was whether Defendants misappropriated a specific,

9 definable trade secret, not whether they implemented a similar app idea for a competitor.").

10        The facts in *Calendar Research* are also particularly apt. In that case, plaintiff claimed

11 defendants misappropriated trade secrets related to "Virality Capabilities." *Id*. at \*9. As evidence

12 of misappropriation, plaintiffs alleged that "the Individual Defendants marketed themselves as

13 experts 'viral/social,'" which established "the existence of the alleged 'Virality Capabilities.'" *Id*.

14 The court rejected this argument. Noting that the plaintiff "lacks any evidence beyond

15 speculation," the court held that the "Individual Defendants' direct testimony that no such Virality

16 API, or any other proprietary virality system, ever existed is undisputed" and granted summary

17 judgment. *Id.* The same should hold true here. Defendants' expert, Dr. Striegel, has closely

18 examined the Content Filter source code, and explained that "████████████████████

19 ████████████████████████████████████████████████████

20 ███████████████████████████████████████." Ex. 2 (Striegel Rpt.)

21 ¶ 84.[5] And Dr. Striegel explained that "████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ███████████████████████████████████████." *Id.* at ¶ 91.

25 As in *Calendar Research*, this evidence is disputed by nothing but Plaintiffs' rank speculation.

26 _____

27 [5] *See also* Ex. 27 (Dep. Tr. of Adrien Gendre ("Gendre Tr.")) 194:25-195:6 ("█████████

28 ████████████████████████████████████████████████████

████████████████████████.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Ex. 23 (Nielson Tr.) 148:24–149:1 (" ███████████████████████████████████████
2  ██████████████████████████████ .").  Accordingly, summary judgment should
3  be entered.  *Calendar Rsch.*, 2020 WL 4390391, at *9; *Brookhaven*, 2007 WL 2429653, at *11
4  (entering summary judgment where plaintiff "offer[ed] no other evidence that directly refutes the
5  findings by Adobe's expert that Brookhaven's trade secrets do not appear in InDesign").

6        In sum, the testimony of both sides' experts establishes conclusively that Content Filter
7  does not contain any of the accused code.  Plaintiffs' only response is baseless guesswork that
8  Content Filter *might* "incorporate" this code, based on a single document that does not come close
9  to supporting this theory.  Summary judgment should be entered on this ground.

10 **C.    Summary Judgment Should Be Entered Dismissing Plaintiff's Claims
11         Against Vade Secure's Current Office 365 Product**

12       As noted above, it is undisputed that the code for Vade Secure's spear phishing engine,
13 ████████ , has been completely replaced by the ███████████████████ module
14 programmed by ████ . Ex. 8 (Nielson Suppl. Rpt.) ¶ 31.  Summary judgment should be entered
15 that Vade Secure's current O365 product, which runs only this replacement engine, does not
16 include any of Plaintiffs' trade secrets.

17       Here again, the Court need look no further than the testimony of the two parties' experts
18 concerning the source code to decide this issue.  As before, Vade Secure's expert is unequivocal:
19 "the ████ anti-spear phishing engine does not misappropriate any of Cloudmark's alleged trade
20 secrets." Ex. 2 (Striegel Rpt.) ¶ 73.  And, also as before, Plaintiffs' expert was unable to find even
21 a single one of Plaintiffs' trade secrets in the ██████████████████████████████████
22 spear phishing engine that is now used in O365:





1  Ex. 23 (Nielson Tr.) at 106:13–110:25 (objections omitted).

2  These remarkable admissions should resolve this issue.  That Plaintiffs' expert on

3  misappropriation cannot find (and did not cite) any *source code* in the current version of O365 that

4  contains Plaintiffs' *source code* trade secrets, establishes conclusively that summary judgment is

5  warranted.  *See Brookhaven*, 2007 WL 2429653 at *10-11 (granting summary judgment where

6  plaintiff's expert cited "no indications of similarities" between the parties' source code).

7  Nonetheless, instead of conceding that O365 no longer contains their alleged trade secrets,

8  Plaintiffs stubbornly maintain that

9

10  " Ex. 3 (Nielson Rpt.) ¶ 273.  The only evidence

11  Plaintiffs proffer for this dubious contention is that

12  " *Id.*

13  ¶¶ 269-270.  Mr. Goutal, they contend,

14

15

16  " *Id.*

17  ¶¶ 272-273.  The only "evidence" Plaintiffs can muster for this alleged derivation is that the

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SILICON VALLEY

18

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    replacement spear phishing engine does not include ██████████ functionality.  *Id.* ¶ 273.

2    None of this is sufficient to raise a genuine issue of material fact.  *Cinebase Software, Inc. v. Media*

3    *Guar. Tr., Inc.*, 1998 WL 661465, at *1 (N.D. Cal. Sept. 22, 1998).

4         As an initial matter, while it is true that ██████████████████████████████

5    ██████████████████████████, Dr. Nielson acknowledges that it would not be improper even

6    for a former employee (and ████████████ is ***not*** a former Cloudmark employee[6]) to provide a

7    specification to the programmers when instituting a clean room design.  *Id.* ¶ 108.

8         In any event, and dispositive of this issue, it is undisputed that Plaintiffs cannot identify a

9    single one of their alleged trade secrets in the specifications provided to ████████[7]:

10   ████████████████████████████████

11   ██████████████

12   ████████████████████████████████████

13   ███████████████████

14   Ex. 23 (Nielson Tr.) at 92:15–20 and Ex. 3.

15   ██████████████████████████████████████

16   ███████████████████████████████████

17   ██████████████████████████████████████
     ████████████████████

18   ██████████████████████████████████████
     ████████████

19

20   ██████████████████████████████████████
     ███████████████████████████

21   ██████████████████████████████████████
     ███████████████████

22

23   █████████████████

24   *Id.* at 96:13–97:2; *id.* at 99:18–25

25   ████████████████████████████████████████████████████

26

27   ─────────────────

     [6] This is not in dispute.  *See* Ex. 23 (Nielson Tr.) at 79:12–16.

28   [7] There were two versions of the specification provided to ██████████████████,
     ████████████████, and a second that added ████████████████ as a co-author.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ███████████████████████████████████████████████████████████████

2 ███████████████████████████████ .”); *id.* Exs. 3 and 4.  Plaintiffs' other technical expert

3 studied the specification documents, offered opinions about the process, but conspicuously did not

4 offer an opinion about whether any of those documents actually discloses any of the trade secrets.

5 Ex. 7 (Black Rpt.) ¶¶ 555-556; Ex. 22 (Black Tr.) at 331:18-334:21.

6       Further, Dr. Nielson's O365 theory hangs on a false premise: the contention that ███████

7 "████████████████████████████████████████████ " is belied by his

8 actual testimony.  Mr. Goutal testified that he did not recall when exactly ███████████ was

9 developed, and that he "was not involved in it."  Ex. 28 (Dep. Tr. of Sébastien Goutal ("Goutal

10 Tr.") at 176:19-177:7.  When asked if he was "familiar with" ███████████ , Mr. Goutal said only

11 that he "ha[d] heard that name."  *Id.* at 174:4-7.  And, Mr. Goutal did not testify ████████████

12 ███████ ) that he was otherwise "familiar" with ███████████ —the most he could say was "I ***think***

13 I saw ***some*** source code" but could not remember exactly when or any other details about

14 ███████ .  *Id.* at 175:22-176:14.  In addition, when confronted with Mr. Goutal's actual

15 testimony, Dr. Nielson had to confirm that ██████████████████████████████████

16 ███████████████████████████████████ .  Ex. 23 (Nielson Tr.) at

17 79:23–80:14 and 98:18–99:7.  Worse, Dr. Nielson was forced to admit that, in truth, ███████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████ *Id.* at 83:15–84:8.

20       Next, Plaintiffs have not identified any evidence showing anyone at ███████ had access to

21 Plaintiffs' purported trade secrets.  In addition to conceding that the specification contains none of

22 their trade secrets, Plaintiffs fail to identify any communications between Vade Secure and ███████

23 where Plaintiffs' alleged trade secrets were purportedly conveyed to ███████  *See generally* Ex. 3

24 (Nielson Rpt.); *see also* Ex. 4 (Plaintiffs' Trade Secret Contentions); Ex. 23 (Nielson Tr.) at 92:10–

25 13 ("████████████████████████████████████████████████████

26 ████████████████████████████ .”); *see also* Ex. 28 (Goutal Tr.) at

27 202:15-19 ("During the development, we're not authorized to change the rational implemented by

28 ███████ , the rational of the algorithm implemented by ███████ .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Finally, as noted above, the only alleged "design choice" in the ███████

2    ███████████████████████████████ was the decision not to detect "███████ Ex. 23

3    (Nielson Tr.) at 136:9–137:2 (Dr. Nielson conceding that ███████████████████

4    ███████████████████  But Mr. Goutal never testified that he, or any of his co-

5    contributors, made that design choice, and there is no basis for Dr. Nielson's surmise to the

6    contrary.  *See* Ex. 28 (Goutal Tr.) at 200:15–24 (testifying that in addition to his two co-authors,

7    Messrs. Gendron and Honoré, other people at Vade Secure "contributed to that project").

8    Moreover, even if Mr. Goutal was responsible for that choice, ███████████████████" is not

9    one of the alleged trade secrets in this action.  Plaintiffs' interrogatory response 10 listing its

10   alleged trade secrets never mentions ██████████████ as one of them.  *See generally*

11   Ex. 4 (Plaintiffs' Trade Secret Contentions).  None of Plaintiffs' fact witnesses ever contended this

12   was a trade secret belonging to the company.  And the notion of ███████████████████"

13   divorced from the actual Cloudmark or Proofpoint source code that ***implements*** any such

14   functionality, is exactly the kind of concept that Dr. Nielson has disclaimed as a trade secret here:

15   ███████████████████████████████████████████████████

16   ███████████████████████████████

17   ███████████████████████████████████████████████

18   ███████████████████████████████████████████████

19   ███████████████████████████████████████

20   Ex. 23 (Nielson Tr.) at 114:8–115:1 (objections omitted); *see also id.* at 116:22–23 ("███

21   ███████████████████████████.").  Yet Plaintiffs make no effort to show the ***implementation*** of

22   ███████████████████ in the ██████ code bears any resemblance to the implementation in

23   Cloudmark code—again, Dr. Nielson cites to no ██████ code at all.

24         Here again, this is not a close case.  Plaintiffs and their expert can find no code that includes

25   their alleged trade secrets in the current version of the O365 product, and their remaining

26   arguments are contrivances that find no legitimate support in the evidence.  Because no reasonable

27   jury could find misappropriation on this record, summary judgment should be entered that the

28   current version of O365 does not contain any misappropriated trade secrets.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**D.      Plaintiffs' Copyright Registrations Are Invalid as a Matter of Law**

Plaintiffs' copyright claims likewise suffer from a fatal defect.  In order to maintain their suit for copyright infringement, Plaintiffs must show that they validly registered the Trident software with the U.S. Copyright Office.  17 U.S.C. § 411(a); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020).  They cannot do so, because the registration applications included a knowing and material misrepresentation of fact—that the Trident software was "unpublished" at the time of registration.  The Copyright Act requires the invalidation of a copyright registration if *(a)* the registrant included "inaccurate information . . . on the application for copyright registration," *(b)* the registrant included that information "with knowledge that it was inaccurate," and *(c)* "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1)(A)-(B).  As discussed below, all three requirements are met here.  And since the "failure to properly register a work will preclude an infringement action predicated on that work," *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, *15 (D. Ariz. Sept. 24, 2018), Plaintiffs' copyright claims based on the asserted, invalid registrations must be dismissed.

1.      **Plaintiffs' representation that the Trident Modules were unpublished was inaccurate because Trident had previously been distributed to customers**

Plaintiffs suit is premised on four copyright registrations:  Nos. TXu 2-211-008 ("Trident Module 1"), TXu 2-210-880 ("Trident Module 2"), TXu 2-210-877 ("Trident Module 3"), and TXu 2-211-639 ("Trident Software Module").   FAC ¶ 113.   Proofpoint applied for these registrations in 2020, more than three years after ████████ of Trident concluded and the product was discontinued. Ex. 29 (registration materials) at 3-4, 71-72, 151-152, 217-219; *see also* Ex. 14.  As indicated by the prefix "TXu," Proofpoint represented to the Copyright Office that all four of the software modules (the "Trident Modules") were "unpublished" works.  *See Determined Prods., Inc. v. Koster*, 1993 WL 120463, *1 (N.D. Cal. Apr. 13, 1993).

Those representations were false. The Copyright Act defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101.  Specifically, a computer program is

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  published if copies of the program have been distributed to members of the public by purchase or

2  by license.  *Compendium of U.S. Copyright Office Practices, Third Edition* ("*Compendium*

3  *(Third)*") § 721.9(E).  This is true regardless of whether the copies contained object code or source

4  code; publication can occur even if the source code is not disclosed to the public.  *Id*.  The key to

5  publication, in this context, is that a member of the public is able "to download a file containing a

6  copyrighted work and thereby gain control of it."  *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d

7  398, 401 (S.D.N.Y. 2002).

8          It is indisputable that copies of the Trident software were "distributed to the public by sale

9  or other transfer of ownership." ██████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 *Compare* Ex. 2 (Striegel Rpt.) ¶¶ 93-99 *with* Ex. 23 (Nielson Tr.) at 264:9–265:2 (Dr. Nielson

12 testifying that ████████████████████████████████████████).[8]  For

13 instance,██████████████████████████████████████████████████████████

14 █████████████████," Ex. 30 ████████████████████████████████████████

15 ████████████████████.[9]  *E.g.* Ex. 31 *see also* Ex. 32 at 95940 (████████████

16 ████████████████████████████████████████████████████████████████

17 ██████████); Ex. 33 at 95287, 92590 ████████████████████████████████████

18 █████████████████████████████████████████████████████████.  Because

19 Proofpoint nevertheless certified to the Copyright Office that the Trident Modules were

20 *un*published, it indisputably included "inaccurate information … on the application for copyright

21 registration" under § 411(b).

22

23 ─────────────────────

24 [8] It is undisputed that ████████████████████ Ex. 2 (Striegel Rpt.) ¶ 97.  The Trident software, however, is ███████████

25 ████████████████████.  Ex. 34 (Pls.' Rog. 1 Resp.) at 8-10; Ex. 29 (registration materials) at 10, 80, 153,

26 215; Ex. 3 (Nielson Rpt.) ¶¶ 148-151; Ex. 23 (Nielson Tr.) at 263:4–8.  The software accordingly
   cannot properly be treated as partially published and partially unpublished.

27 [9] Whether or not Trident was ever finally sold to Cloudmark customers ████████████████ is
   irrelevant to whether it was published; distribution of a work for evaluation or sampling purposes

28 still counts as publication.  *See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d
   1140, 1146 (9th Cir. 2019) (sale of fabric samples constituted publication of fabric design).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2.   **Proofpoint's representation that the Trident Modules were unpublished was made with full knowledge that it was false**

2

3   To invalidate a copyright registration under § 411(b), a defendant must show that the

4   applicant provided inaccurate information "with knowledge that it was inaccurate."  17 U.S.C.

5   § 411(b)(1).  This does not require a showing of intent to defraud the Copyright Office, or a

6   showing that the registrant knew that the work was "published" as a matter of law.  *Gold Value*,

7   925 F.3d at 1147 (rejecting plaintiff's argument that it did not believe sales of fabric samples

8   constituted publication).   Instead, the requisite "knowledge" is of the ***facts*** that make the

9   representation inaccurate.  *Id.* at 1147-48.

10   Proofpoint was clearly aware, at least via its acquisition of Cloudmark, that copies of

11   Trident were "distribut[ed]… to the public by sale or other transfer of ownership."  Cloudmark

12   contemplated from the beginning that ████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████

14   ████████████████████   Ex. 32 at 95940; Ex. 33 at 95287, 92590.   The ████████████

15   █████████████   discussed above, and the ████████████████████████████████████████

16   ███████, Ex. 35, are further evidence of Plaintiffs' awareness that ████████████████████

17   ████████████████████   *See also* Ex. 15; Ex. 19 (Knox Tr.) at 70:13-22 (████████████

18   ████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████);  Ex. 36 (Dep. Tr. of Thomas

20   Lee) at 105:21–106:11 (████████████████████████████████████████████████████

21   ████████████████████████████).

22   In light of the evidence that Plaintiffs were aware that the Trident software was distributed,

23   Proofpoint's false representation that the Trident Modules were unpublished was knowingly made.

24

3.   **The Register of Copyrights has consistently refused registration based on inaccurate publication information**

25

26   After a party has alleged that inaccurate information was included on a copyright

27   registration certificate, the Copyright Act obliges a court to request that the Register of Copyrights

28   advise whether it would have refused registration had it known of the inaccuracy.  17 U.S.C.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   § 411(b)(2) ("In any case in which inaccurate information … is alleged, the court **shall** request"

2   the Register's advice).  When such an inaccuracy is presented in a summary-judgment motion,

3   courts typically defer a final determination until after the Register has provided her opinion. *See,*

4   *e.g.*, *Gold Value Int'l Textile Inc. v. Sanctuary Clothing LLC*, 2017 WL 2903180, *12 (C.D. Cal.

5   Mar. 24, 2017) (deferring summary judgment ruling pending response by Register of Copyrights).

6       That said, the Register has consistently and uniformly advised courts that, if she had been

7   aware that a work had in fact been published prior to the date the application date, she would have

8   refused to register the published work as unpublished.  *See, e.g.*, *Jeon v. Anderson*, 2019 WL

9   2949033, *2 (C.D. Cal. June 14, 2019); *Gold Value*, 2017 WL 3477746, *2; Response of the

10  Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2), *Urban Textile, Inc. v.*

11  *Fashion Avenue Knits, Inc.*, No. 16-cv-06786 (C.D. Cal. Dec. 29, 2017), ECF No. 71; *see also*

12  *Compendium* (Third) § 1106.1.  There is no reason to believe that the Register's response will be

13  any different once apprised of Proofpoint's inaccurate registrations.  Accordingly, provided that

14  the Register confirms registration would have been refused for the Trident Modules had she known

15  the Trident software was published in 2016, Proofpoint's registrations should be invalidated under

16  § 411(b) and any claims based on those registrations should be dismissed with prejudice.

17  **IV.    CONCLUSION**

18      For the foregoing reasons, Defendants respectfully ask the Court to enter summary

19  judgment dismissing Plaintiff's claims of trade secret misappropriation for alleged trade secrets 1-

20  5.  With respect to Plaintiffs' claims of copyright infringement, we respectfully ask the Court

21  request that the Register of Copyrights advise whether the inaccurate information in Plaintiffs'

22  registration applications, if known, would have caused the Register to refuse registration,[10] and if

23  the Register confirms the invalidity of the registrations, to dismiss Plaintiffs' copyright claims.

24

25

26

27

28

---

[10] Our motion papers include a proposed order referring this question to the Register of Copyrights.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated:  April 23, 2021                    Respectfully Submitted,


                                          */s/ Jeffrey G. Homrig*

                                          Douglas E. Lumish (SBN 183863)
                                          Jeffrey G. Homrig (SBN 215890)
                                          Arman Zahoory (SBN 306421)
                                          Ryan Banks (SBN 318171)
                                          **LATHAM & WATKINS LLP**
                                          140 Scott Drive
                                          Menlo Park, CA 94025
                                          Telephone: (650) 328-4600
                                          Facsimile: (650) 463-2600
                                          doug.lumish@lw.com
                                          jeff.homrig@lw.com
                                          arman.zahoory@lw.com
                                          ryan.banks@lw.com

                                          Margaret A. Tough (SBN 218056)
                                          Sadik Huseny (SBN 224659)
                                          Joseph R. Wetzel (SBN 238008)
                                          Julianne Brauer (Admitted *Pro Hac Vice*)
                                          **LATHAM & WATKINS LLP**
                                          505 Montgomery Street, Suite 2000
                                          San Francisco, CA 91444
                                          Telephone: (415) 391-0600
                                          Facsimile: (415) 395-8095
                                          margaret.tough@lw.com
                                          sadik.huseny@lw.com
                                          joe.wetzel@lw.com
                                          julianne.brauer@lw.com

                                          Joseph H. Lee (SBN 248046)
                                          **LATHAM & WATKINS LLP**
                                          650 Town Center Drive, 20th Floor
                                          Costa Mesa, CA 92626
                                          Telephone: (714) 540-1235
                                          Facsimile: (714) 755-8290
                                          joseph.lee@lw.com

                                          Holly K. Victorson (SBN 305595)
                                          Sarang Vijay Damle (Admitted *Pro Hac Vice*)
                                          **LATHAM & WATKINS LLP**
                                          555 11th St NW, Ste. 1000
                                          Washington, DC 20004
                                          Telephone: (202) 637-2336
                                          Facsimile: (202) 637-2201
                                          holly.victorson@lw.com
                                          sy.damle@lw.com

                                          Colin H. Murray (SBN 159142)
                                          **BAKER & McKENZIE LLP**
                                          Two Embarcadero Center, 11th Floor
                                          San Francisco, CA  94111-3802

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Telephone: (415) 576-3000
    Facsimile: (415) 576-3099
2   colin.murray@bakermckenzie.com

3   Danielle L. Benecke (SBN 314896)
    **BAKER & McKENZIE LLP**
4   600 Hansen Way
    Palo Alto, CA  94304
5   Telephone: (650) 856-2400
    Facsimile: (650) 856-9299
6   danielle.benecke@bakermckenzie.com

7   Mackenzie M. Martin (Admitted *Pro Hac Vice*)
    Benjamin B. Kelly  (Admitted *Pro Hac Vice*)
8   John G. Flaim (Admitted *Pro Hac Vice*)
    Chaoxuan Liu (Admitted *Pro Hac Vice*)
9   Mark Ratway  (Admitted *Pro Hac Vice*)
    **BAKER & McKENZIE LLP**
10  1900 North Pearl Street, Suite 1500
    Dallas, TX 75201
11  Telephone: (214) 978-3000
    Facsimile: (214) 978-3099
12  mackenzie.martin@bakermckenzie.com
    john.flaim@bakermckenzie.com
13  charles.liu@bakermckenzie.com
    mark.ratway@bakermckenzie.com
14  ben.kelly@bakermckenzie.com

15  Shima S. Roy
    BAKER & McKENZIE LLP
16  300 East Randolph Street, Suite 500
    Chicago, IL 60601
17  Telephone: (312) 861-8000
    Facsimile: (312) 861-2899
18  shima.roy@bakermckenzie.com

19  *Attorneys for Defendants*
    *Vade Secure, Inc. and Vade Secure SASU*
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

27

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT