Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Jeffrey G. Homrig (SBN 215890)
 jeff.homrig@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Ryan T. Banks (SBN 318171)
 ryan.banks@lw.com
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Margaret A. Tough (SBN 218056)
 margaret.tough@lw.com
Sadik Huseny (SBN 224659)
 sadik.huseny@lw.com
Joseph R. Wetzel (SBN 238008)
 joe.wetzel@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 91444
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Attorneys for Defendants,
VADE SECURE, INC. and VADE SECURE SASU

[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>              Plaintiffs,<br><br>     v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>              Defendants. | Case No. 3:19-CV-04238-MMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: May 28, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7, 19th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ...................... 1

II.    PERTINENT BACKGROUND................................................................................ 2

    A.    Vade Secure and Its Products ................................................................. 2

    B.    Plaintiffs and Their Products ................................................................. 3

    C.    Olivier Lemarié ..................................................................................... 4

    D.    Procedural History ................................................................................ 5

III.    SUMMARY JUDGMENT SHOULD BE ENTERED DISMISSING
    PLAINTIFFS' TRADE SECRET AND COPYRIGHT CLAIMS ................................. 6

    A.    Plaintiffs Have Failed To Show a Triable Issue of Fact as to the
        Existence of Trade Secrets at Issue........................................................ 7

        1.    Plaintiffs' Asserted Trade Secrets............................................... 8

        2.    Trade Secret Category 1 ........................................................... 10

        3.    Trade Secret Category 2 ........................................................... 11

        4.    Trade Secret Category 3 ........................................................... 11

        5.    Trade Secret Category 4 ........................................................... 12

        6.    Trade Secret Category 5 ........................................................... 12

    B.    Summary Judgment Should Be Entered Dismissing Plaintiffs'
        Claims That There Is Misappropriated Code in the Content Filter
        Product ................................................................................................. 13

    C.    Summary Judgment Should Be Entered Dismissing Plaintiff's
        Claims Against Vade Secure's Current Office 365 Product................................ 17

    D.    Plaintiffs' Copyright Registrations Are Invalid as a Matter of Law................... 22

        1.    Plaintiffs' representation that the Trident Modules were
            unpublished was inaccurate because Trident had previously
            been distributed to customers................................................... 22

        2.    Proofpoint's representation that the Trident Modules were
            unpublished was made with full knowledge that it was false................. 24

        3.    The Register of Copyrights has consistently refused
            registration based on inaccurate publication information........................ 24

IV.    CONCLUSION................................................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Ackerman v. W. Elec. Co.*,
  860 F.2d 1514 (9th Cir. 1988) ...............................................................................7

5

6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...............................................................................................7

7

8

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*,
  2007 WL 2429653 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332 F. App'x 387 (9th
  Cir. 2009) .................................................................................................14, 17, 18

9

10

*Calendar Rsch. LLC v. StubHub, Inc.*,
  2020 WL 4390391 (C.D. Cal. May 13, 2020) ............................................. *passim*

11

*Campbell v. Vitran Express Inc.*,
  2016 WL 873009 (C.D. Cal. Mar. 2, 2016) ...........................................................7

12

13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................6, 7

14

15

*Cinebase Software, Inc. v. Media Guar. Tr., Inc.*,
  1998 WL 661465 (N.D. Cal. Sept. 22, 1998) ......................................................19

16

*Determined Prods., Inc. v. Koster*,
  1993 WL 120463 (N.D. Cal. Apr. 13, 1993) .......................................................22

17

18

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ..............................................................................6

19

20

*Founder Starcoin, Inc. v. Launch Labs, Inc.*,
  2018 WL 3343790 (S.D. Cal. July 9, 2018) .......................................................11

21

22

*Getaped.com, Inc. v. Cangemi*,
  188 F. Supp. 2d 398 (S.D.N.Y. 2002)...................................................................23

23

*Gold Value Int'l Textile Inc. v. Sanctuary Clothing LLC*,
  2017 WL 2903180 (C.D. Cal. Mar. 24, 2017)......................................................25

24

25

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
  925 F.3d 1140 (9th Cir. 2019) ...............................................................23, 24, 25

26

27

*Henderson v. City of Simi Valley*,
  305 F. 3d 1052 (9th Cir. 2002) ...........................................................................6, 7

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
   2018 WL 6617633 (S.D. Cal. Dec. 18, 2018).........................................................................12

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ...........................................................................7, 8, 10, 11

*Jeon v. Anderson*,
   2019 WL 2949033 (C.D. Cal. June 14, 2019) ......................................................................25

*Loop AI Labs*,
   195 F. Supp. 3d 1111 (N.D. Cal. 2016) .................................................................................8

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*
   (D. Ariz. Sept. 24, 2018).....................................................................................................22

*Toguchi v. Chung*,
   391 F.3d 1051 (9th Cir. 2004) .............................................................................................13

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   959 F.3d 1194 (9th Cir. 2020) .............................................................................................22

*Urban Textile, Inc. v. Fashion Avenue Knits, Inc.*,
   No. 16-cv-06786 (C.D. Cal. Dec. 29, 2017) ........................................................................25

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   796 F. Supp. 2d 1025 (N.D. Cal. 2011) ...............................................................................13

*X6D Ltd. v. Li-Tek Corps. Co.*,
   2012 WL 12952726 (C.D. Cal. Aug. 27, 2012)........................................................8, 10, 12

## STATUTES

17 U.S.C. § 101 ..........................................................................................................................22

17 U.S.C. § 411(a) ......................................................................................................................22

17 U.S.C. § 411(b) ............................................................................................................23, 24, 25

17 U.S.C. § 411(b)(1) ..................................................................................................................24

17 U.S.C. § 411(b)(1)(A)..............................................................................................................22

17 U.S.C. § 411(b)(1)(B)..............................................................................................................22

17 U.S.C. § 411(b)(2)............................................................................................................24, 25

17 U.S.C. § 501 *et seq.*..................................................................................................................v

18 U.S.C. § 1836 *et seq*.................................................................................................................v

18 U.S.C. § 1839(3)...............................................................................................................8, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

18 U.S.C. § 1839(3)(A) ..................................................................................................7

2

18 U.S.C. § 1839(3)(B) ..................................................................................................7

3

## RULES

4

FED. R. CIV. P. 56(a) ...................................................................................................v, 7

5

FED. R. CIV. P. 56(e) ....................................................................................................7

6

## OTHER AUTHORITIES

7

*Compendium of U.S. Copyright Office Practices*, THIRD EDITION § 1106.1 .................................25

8

*Compendium of U.S. Copyright Office Practices*, THIRD EDITION § 721.9(E)............................23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

2  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3  PLEASE TAKE NOTICE that on May 28, 2021 at 9:00 a.m., or as soon thereafter as the

4  parties may be heard, before the Honorable Maxine M. Chesney, Senior District Court Judge,

5  United States District Court for the Northern District of California, in the San Francisco Division

6  Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

7  Defendants Vade Secure, Inc., Vade Secure SASU (together "Vade Secure" or "Defendants")

8  will bring for hearing, pursuant to Federal Rule of Civil Procedure 56(a), this motion for partial

9  summary judgment dismissing certain causes of action asserted by Plaintiffs Proofpoint, Inc.

10  ("Proofpoint"), and Cloudmark, LLC ("Cloudmark," and with Proofpoint, "Plaintiffs") set forth

11  in Plaintiffs' First Amended Complaint ("FAC") and brought against Defendants, including

12  Mr. Olivier Lemarié.

13  **RELIEF SOUGHT**

14  Defendants hereby move for summary judgment on the following causes of action and

15  issues on the ground that there are no genuine disputes as to any material facts and Defendants

16  are entitled to judgment as a matter of law:

17  1.  Count I against Defendants for Trade Secret Misappropriation under Defend

18  Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, in relation to: Plaintiffs' claims of alleged

19  misappropriation relating to (1) Plaintiffs' Trade Secrets 1-5; (2) Vade Secure Content Filter; and

20  (3) the current version of Vade Secure for Microsoft Offce 365.

21  2.  Count VI against Defendants for Copyright Infringement under 17 U.S.C. § 501

22  *et seq.*

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.       INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This case is a cynical effort by Plaintiffs to slow Vade Secure's rapid growth in the email security field, to provide an argument Plaintiffs could use to convince customers to buy their inferior products instead of Vade Secure's, and to punish defendant Olivier Lemarié for leaving Cloudmark and joining Vade Secure as its Chief Technology Officer more than four years ago. While Plaintiffs will howl about "verbatim copying" of their source code, this is, in truth, much ado about nothing.  Out of the tens of thousands of Vade Secure files Plaintiffs' experts have examined, they found only seven that they can even allege were copied.  And those seven have been revealed to be short files to perform the simplest and most generic steps found in every modern email security product, and which Mr. Lemarié wrote himself as implementations of open source tools well-known to everyone in the field.  In other words, Plaintiffs know well that these files are not legitimate "trade secrets" and that they have no value—indeed, the record shows that some of the seven accused files never made it into a Vade Secure product, and that Mr. Lemarié replaced the remaining ones with open source code easily and in a matter of a few small hours, and Plaintiffs' damages experts have struggled to ascribe any damages to the alleged copying.

Given these developments, instead of dismissing this action as they should, Plaintiffs have strained to expand their allegations of misappropriation to cover Vade Secure products and code beyond the seven files.  In doing so, Plaintiffs allege broadly that Vade Secure's source code has similar "implementations" or similar "sequence, structure and organization" as that found in Plaintiff's source code.  To do so, Plaintiffs deliberately obfuscate what their trade secrets are— instead of identifying clear boundaries to what are (and what are not) their trade secrets, Plaintiffs apply flexible and vague language about the "implementation of" and "improvements to" a convoluted list of interwoven abstract concepts that each are admittedly well-known and within the general knowledge of the field.  And, to rope in two of Vade Secure's larger products—its Content Filter and Microsoft Office 365 products—Plaintiffs allege misappropriation despite the admissions of their expert that he searched Vade Secure's code for hundreds of hours and could find ***no code at all*** that implements even a single alleged trade secret in either product.  This is particularly ironic given the overwhelming weight Plaintiffs have put on source code as the key

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

1

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    evidence they averred would prove their case throughout this action.  Yet, only by ignoring the

2    lack of evidence in the source code were Plaintiffs able to boost the monetary relief they demand

3    dramatically: approximately $31.6 million of its $36.5 million claim for unjust enrichment hinges

4    on Plaintiffs' contention that Content Filter *might* use their trade secrets.  And, to further

5    complicate the case, Plaintiffs rushed to the Copyright Office to register their source code and

6    added copyright claims in an amended complaint.  But, in doing so, they misrepresented the code

7    as being "unpublished" despite knowing they had distributed various parts of their software to

8    customers in ways that confirm the code was in fact "published," which warrants the invalidation

9    of Plaintiffs' copyright registrations and the dismissal of their copyright claims in this action.

10       For these reasons, as detailed below, Vade Secure respectfully asks the Court to enter

11   partial summary judgment and dismiss Plaintiffs' allegations of trade secret misappropriation to

12   the extent they are based on the "implementation" or "improvement" of undefined trade secrets,

13   to dismiss Plaintiffs' misappropriation claims to the extent they relate to Vade Secure's Content

14   Filter and Office 365 products, and to dismiss Plaintiffs' claims of copyright infringement.[1]

15   **II.      PERTINENT BACKGROUND**

16       **A.      Vade Secure and Its Products**

17       Vade Secure was founded in 2008 in Hem, France.  Although significantly smaller than its

18   primary competitors, Vade Secure has emerged as a leader in the field based on its superior cyber

19   security technology and its industry-leading portfolio of email security solutions.

20       Vade Secure's first product was "Content Filter"—software that protects more than a

21   million email accounts at a given time.  Ex. 1 (Defs.' Resps. to Pls.' 6th Set of Rogs. (Nos. 20-23))

22   at 9.  Content Filter is a standalone product designed to detect a multitude of types of malicious

23   content, including since 2015 phishing and spear phishing attacks.  Ex. 2 (Striegel Rpt.)) ¶ 84.[2]

---

[1] If this motion were granted in full, Plaintiffs' claims of misappropriation of its alleged trade secret 6 would remain extant.

[2] "Phishing" generally refers to efforts to trick computer users into sharing sensitive information such as usernames, passwords, and credit card information.  Phishing attacks tend to target broad groups en masse. Ex. 2 (Striegel Rpt.) ¶ 39; Ex. 7 (Expert Report of Dr. John Black ("Black Rpt.")) ¶¶ 64-67.  "Spear phishing" attacks are phishing attacks that typically use personalized emails to target an individual by pretending to come from known acquaintances or colleagues. The victim is typically asked by the attacker to execute some financial transaction, such as scheduling a wire

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Building on the success of Content Filter, Vade Secure has developed and released other

2    security products including, among others, its "MTA Builder" and "Vade Secure for Microsoft

3    Office 365" ("O365") products.  MTA Builder is a framework for customers to build a highly

4    customizable mail transfer agent, or MTA.  Ex. 2 (Striegel Rpt.) ¶ 81.

5    O365 provides security for emails being sent to Microsoft Office 365 email accounts.  *See*

6    Ex. 3 ("Nielson Rpt.") ¶¶ 133-134; Ex. 2 (Striegel Rpt.) ¶ 61.  Many of Plaintiffs' allegations in

7    this action are directed to a module of code that was once included in the code base for O365 called

8    ███████████    *See* Ex. 4 (Resp. To 3rd Set of Rogs. (No. 10)) at 11, 20-24, 32-33.  Central to

9    one ground for this motion, ██████████ was removed completely from O365 in June 2020 and

10   is not located in any source code for any product sold by Vade Secure today.  This, of course, is

11   not a coincidence.  After Plaintiffs served their initial complaint alleging that O365 contained

12   misappropriated trade secrets, Vade Secure ████████████████████████████

13   ████ to replace ██████████ in its entirety.  Ex. 3 (Nielson Rpt.) at 95; Ex. 2 (Striegel Rpt.)

14   ¶ 64.  Using a traditional clean-room approach, Vade Secure ████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ████████    *See, e.g.*, Ex. 2 (Striegel Rpt.) ¶ 66; Ex. 5; Ex. 6.  From there, ████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████.  Ex. 2 (Striegel Rpt.) ¶ 66.  Even Plaintiffs' expert now admits "that ██████████ has

21   been removed from Vade O365 in its entirety."  Ex. 8 ("Nielson Supp. Rpt.") ¶ 31.

22   **B.    Plaintiffs and Their Products**

23   Proofpoint is a multi-billion dollar company with thousands of employees.  It acquired

24   Cloudmark in November 2017, and, at that time, represented to the market and the government

25   that all of Cloudmark's "Core/developed technology" (which included the handful of lines of code

26   that Plaintiffs allege contain the purported trade secrets in this action as well as the tens of

27

28   transfer, purchasing gift cards, making a payment, or changing direct deposit information.
*See* Ex. 2 (Striegel Rpt.) ¶ 93; Ex. 7 (Black Rpt.) ¶¶ 68-69.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   thousands of lines of additional code not at issue) was valued at $18.5 million, and that the "Useful
2   Life" of that technology was roughly four years. Ex. 9 (Proofpoint 10-K) at 79.

3       Despite its much larger size and significantly greater resources, Proofpoint has struggled
4   to compete with Vade Secure. Proofpoint's internal communications show that it has long been
5   aware that Vade Secure's ███████████," Ex. 10 at 731, that Proofpoint is "█████████
6   ███████████████████████████████" Ex. 11 at 571, and that
7   ██████████████████████████████████████████
8   ███████████████████████████ Ex. 12; Ex. 13.

9       In 2015, Cloudmark began developing Trident, an email security solution intended to
10  combat spear phishing attacks. Cloudmark began ████████████████ but,
11  ultimately, the product was short-lived. Ex. 14. By November 2016, Cloudmark had entered into
12  discussions about Proofpoint's potential acquisition of Cloudmark, and understood from these
13  discussions ██████████████████████████. Ex. 15;
14  Ex. 16 (Dep. Tr. of Lori Cho ("Cho Tr.")) at 139:25–141:2, 144:6–11, 145:1–3. Knowing this,
15  and facing "████████ for Trident, Cloudmark █████████████. Ex. 17;
16  Ex. 18 (Dep. Tr. of Kevin San Diego ("San Diego Tr.")) at 51:16–52:4; Ex. 14.

17      Post-acquisition, Proofpoint has not replaced Trident but focused instead on other products
18  including Cloudmark Authority and Cloudmark Security Platform for Email.

19  **C.    Olivier Lemarié**

20      Defendant Olivier Lemarié is a gifted software programmer who has worked in cyber
21  security for 27 years. Early on, Mr. Lemarié saw the shortcomings in conventional email security
22  and set out to build the most advanced and secure MTA in the world. *Id.* To this end, in 2004,
23  Mr. Lemarié founded a company called Bizanga to develop and commercialize his email security
24  ideas. *Id.* Seeing Bizanga's success, Cloudmark acquired Bizanga in 2010, hiring Mr. Lemarié
25  as its Vice President of Gateway technology. *Id.*

26      At Cloudmark, Mr. Lemarié became the principal architect and programmer of
27  Cloudmark's Trident product. *Id.* ¶ 116. But, as happens all too often with corporate mergers,
28  conflict soon arose, and Mr. Lemarié faced significant resistance to the approach he wanted to take

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   with Trident.  *See* Ex. 19 (Dep. Tr. of Angela Knox ("Knox Tr.")) at 71:13–72:10.  Then, as noted

2   above, Cloudmark ███████████████████████████ on the eve of its acquisition by Proofpoint.

3       Hoping to continue his life's work, Mr. Lemarié left Cloudmark in 2016, and, after

4   surveying the industry, joined Vade Secure as its Chief Technology Officer in 2017.  Mr. Lemarié

5   was not the only Cloudmark engineer to become disillusioned: three other Cloudmark engineers

6   also joined Vade Secure, namely Alexandre Boussinet, Xavier Delannoy, and Guillaume Séjourné.

7       While at Vade Secure, ████████████████████████████████████

8   ████████████████.  Should this case progress to trial, the evidence will show that Mr. Lemarié

9   believed he was free to ████████████████████████████████████

10  ████████████████████████████████████████████████,

11  and that he built from open—and publicly known—sources as opposed to comprising confidential

12  materials or trade secrets belonging only to Cloudmark.  Indeed, some of the seven files never

13  made it into any Cloudmark product, and after this lawsuit was filed, Mr. Lemarié removed the

14  remaining files from Vade Secure's source code and replaced them with open source software in

15  just a matter of hours.  Ex. 20 (Lemarié's 1st Resp. to Pls.' 4th Set of Rogs. (Nos. 6–9)) at 12.

16      Facing increased competition from Vade Secure's superior products and aware that Vade

17  Secure had just obtained several million dollars in financing, angry that Mr. Lemarie had left them

18  and joined a competitor, and unable to catch up technologically, Plaintiffs filed this suit.

19      **D.    Procedural History**

20      Plaintiffs filed their complaint on July 23, 2019, alleging trade secret misappropriation and

21  breach of contract.  Dkt. 1.  On August 13, 2020, Plaintiffs amended their complaint to include

22  allegations of copyright infringement.  Dkt. 219.  This is the operative complaint today.

23      Together with their initial complaint, Plaintiffs moved for a preliminary injunction based

24  on the alleged trade secret misappropriation.  The Court considered that motion and the evidence

25  and denied the requested injunction, commenting that "Plaintiffs have not, however, pointed to

26  evidence identifying the aspects of the claimed combination of elements and architecture that are

27  in fact trade secrets" and that "plaintiffs have failed to show a likelihood of success on the merits

28  or that serious questions going to the merits exist."  Dkt. 126.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   From the beginning, this case has focused squarely on each party's source code.  Plaintiff's

2   initial complaint alleged that Mr. Lemarié "had unfettered access to Cloudmark's technical

3   documents and source code."  Dkt. 1 at 7.  Then, in its preliminary injunction motion, Plaintiffs

4   argued that their trade secrets were "embodied in, among other things, the source code"  (Dkt. 31

5   at 16), and that misappropriation could be inferred because Mr. "Lemarié and the other former

6   Cloudmark employees … had access to Cloudmark's confidential information, including source

7   code."  Dkt. 82 at 10.  Plaintiffs also brought four discovery motions demanding that Vade Secure

8   produce every line of the company's source code, and seeking and obtaining sanctions premised

9   on the critical nature of that code.  Dkts. 78, 91, 236, 286, 292.  In bringing these motions, Plaintiffs

10  again argued that source code was the key source of proof for its allegations of misappropriation.

11  *See, e.g.,* Mot. to Comp. Source Code Printouts, Dkt. 236-3 at 6 ("[T]he requested source code

12  printouts . . . demonstrate the use of Plaintiffs' trade secrets in Defendants' source code—evidence

13  that is critical to Plaintiffs' trade secret claims.")  Consistent with this, Plaintiffs' contentions

14  centered on source code.  *See* Ex. 4 (Contentions) at 9 ███████████████████████

15  ███████████████████████████████████████████████████████████████████

16  ███████████████");  *id.* at 26-27.  And, the same is true for their expert reports, which repeatedly

17  note that it is the alleged use of Plaintiffs' source code that supports their claims of copyright

18  infringement, trade secret misappropriation, contract breach, and damages.  *See, e.g.*, Ex. 3

19  (Nielson Rpt.) ¶ 280; *id.* at ¶ 66.

20      As shown below, now that discovery has concluded, it turns out that the ***lack*** of evidence

21  in the source code leads inexorably to summary judgment.

22  **III.   SUMMARY JUDGMENT SHOULD BE ENTERED DISMISSING PLAINTIFFS'**

23  **TRADE SECRET AND COPYRIGHT CLAIMS**

24      Summary judgment is appropriate if "there is no genuine issue as to any material fact and

25  … the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477

26  U.S. 317, 322 (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).  To avoid

27  summary judgment, there must be "evidence [on] which a jury could reasonably find" for the non-

28  moving party.  *Henderson v. City of Simi Valley*, 305 F. 3d 1052, 1061 (9th Cir. 2002).  Summary

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

judgment should be entered on claims for which plaintiffs bear the burden of proof when plaintiffs fail to "make a showing sufficient to establish the existence of an element essential to [plaintiffs'] case." *Celotex*, 477 U.S. at 322.  To avoid summary judgment, Plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." *Henderson*, 305 F.3d at 1055-1056 (quoting FED. R. CIV. P. 56(e)).  However, a party cannot avoid summary judgment if its "evidence is merely colorable, … or is not significantly probative;" "[t]he mere existence of a scintilla of evidence … will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Moreover, although the facts must be viewed in the light most favorable to the non-moving party, that party "is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth" and "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988). Partial summary judgment may be used "to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24; *see also* Fed. R. Civ. P. 56(a).  "The standards and procedures for granting partial summary judgment … are the same as those for summary judgment." *Campbell v. Vitran Express Inc.*, 2016 WL 873009, at *3 (C.D. Cal. Mar. 2, 2016).

A.    **Plaintiffs Have Failed To Show a Triable Issue of Fact as to the Existence of Trade Secrets at Issue**

It is Plaintiffs' burden to prove that their purported trade secrets are protectable under the Defend Trade Secrets Act by showing that "the information derives independent economic value, actual or potential, from not being generally known," and "not being readily ascertainable."  18 U.S.C. § 1839(3)(A)-(B); *see also Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *1 (C.D. Cal. May 13, 2020)[3]; *see also Imax Corp. v. Cinema Techs.*, Inc., 152 F.3d 1161, 1164–65 (9th Cir. 1998).  Under the DTSA, "[t]rade secrets cannot be vague concepts," and summary judgment is appropriate where a "[p]aintiff fails to identify the specific set of 'methods, techniques, processes, procedures, programs, or codes' that comprise a trade secret." *Calendar Rsc.*, 2020 WL

---

[3] *Calendar* is particularly instructive because the federal DTSA statutes applicable in this case are still new and there are relatively few cases applying them. Moreover, as the Court in *Calendar* noted, cases applying California's state trade secret statute can be helpful in applying the federal DTSA statutes applicable in this case. *Id.* at *3 n.5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    4390391, at *6 (*quoting* 18 U.S.C. § 1839(3)); *see also id.* ("[w]ithout a sufficiently precise

2    definition, [a] general concept . . . is too vague to constitute a trade secret."); *Loop AI Labs*, 195

3    F. Supp. 3d at 1111 (N.D. Cal. 2016).  A plaintiff's burden to distinguish its trade secrets from

4    generally known concepts is core to the DTSA.  Consequently, "this is a substantive issue on which

5    [p]laintiffs bear the burden of proof."  *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726 at *8

6    (C.D. Cal. Aug. 27, 2012).  Summary judgment is appropriate where plaintiffs fail to meet this

7    burden. *Id.* at *9; *Imax Corp.*, 152 F.3d at 1164–65; *Calendar Rsc.*, 2020 WL 4390391, at *6.

8         Plaintiffs' obligation to be precise is heightened in a highly technical case because the

9    "distinction between general industry knowledge in a complex field and a specific trade secret is

10    inherently difficult, and 'it is unlikely that the district court or any trier of fact would have expertise

11    in discerning exactly which' technical information constitutes a 'trade secret[]' without more

12    precise guidance from a plaintiff." *Calendar Rsc.*, 2020 WL 4390391, at *4 (quoting *Imax*, 152

13    F.3d at 1161).  Further, to protect employee mobility, plaintiffs must "describe the subject matter

14    of the trade secret with sufficient particularity to separate it from matters of general knowledge in

15    the trade or of special knowledge of those persons … skilled in the trade'" and "'must do more

16    than just identify a kind of technology and then invite the court to hunt through the details in search

17    of items meeting the statutory definition.'"  *Id.* at *4-5.  Where, as here, Plaintiffs claim

18    improvements to widely-known concepts as trade secrets, a "'more exacting level of particularity

19    may be required to distinguish the alleged trade secret from matters already known to persons

20    skilled in that field.'" *Id.* at *5 (quoting *Loop AI Labs*, 195 F. Supp. 3d at 1115).

21                          1.    **Plaintiffs' Asserted Trade Secrets**

22         Plaintiffs assert six categories of alleged trade secrets that they claim were misappropriated

23    (five technical categories consisting of high-level techniques and feature combinations, and one

24    business category consisting of Cloudmark's customers' information).  Ex. 4 (Plaintiffs' Trade

25    Secret Contentions).  This motion is directed to the five categories of technical trade secrets.

26         Plaintiffs fashioned the handful of techniques identified in the five technical categories into

27    155 different combinations, each of which they claim to be a distinct trade secret.  *Id.*  None of

28    Plaintiffs' corporate witnesses was able to identify their trade secrets. *See*, *e.g.*, Ex. 21 (Dep. Tr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

of Gael Roualland) at 55:5-18, 58:14-59:13; Ex. 18 (Knox Tr.) at 172:25-174:7, 273:15-274:3;
Ex. 18 (San Diego Tr.) at 219:3–8, 267:9–268:7.  Instead, Plaintiffs' experts Dr. John Black and
Dr. Seth Nielson were handed the Trade Secret Contentions served by Quinn Emanuel, and Dr.
Black was asked to offer an opinion about whether each enumerated trade secret satisfies the
DTSA standard for protection. Ex. 22 (Dep. Tr. of Dr. John Black ("Black Tr.") at 351:2-6; Ex. 23
(Dep Tr. of Dr. Seth Nielson ("Nielson Tr.") at 109:12-110:17, 128:25-129:13.  Plaintiffs tasked
Dr. Nielson with attempting to show that each asserted trade secret identified in the contentions is
used in Vade Secure's accused products.  Ex. 23 (Nielson Tr.) at 129:14-16; 130:3-8.

Dr. Black described his understanding of each enumerated trade secret in Exhibit 5 to his
expert report. Ex. 7 Black Rpt. ¶¶ 194, 231, 255, 276, 302. First, Dr. Black repeated the category
of enumerated trade secrets from Plaintiffs' contentions.  *See*, *e.g. id.*  (Black Rpt. Ex. 5 §A).  For
each trade secret, that identification consists of (a) the statement that the trade secret consists of

as reflected in Cloudmark's code and/or documents, followed by (b) an enumerated list
of combinations of features (*i.e.*, high level concepts).  *See*, *e.g.*, *id.*  Second, Dr. Black discussed
what he understood the "implementation" corresponding to each enumerated trade secret to be.
*See*, *e.g.*, *id.* ¶¶ 1-10.  Dr. Black confirmed that the trade secrets are

Ex. 22 (Black Tr.)
at 164:3-15.  But neither Dr. Black nor Plaintiffs' contentions clarifies exactly what the trade
secrets actually are.  Plaintiffs' contentions state that the trade secrets are the

of the enumerated combinations of features, which in this software
context *should* mean some defined portion of Plaintiffs' specific implementations in source code.
Ex. 4 (Trade Secret Contentions) at 78-79; *see also e.g.* Ex. 7 (Black Rpt. Ex. 5 ¶¶ 1-10).  But Dr.
Black testified that the trade secrets are actually

Ex. 22 (Black Tr.) at 164:3-15.  Dr. Nielson, on the other hand,
testified that

Ex. 23 (Nielson Tr.) at 153:24-154:8. And, as Dr. Black explained,

Ex. 22 (Black Tr.) 277:10-21 ("

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ████████████████████████.").  As discussed below, this ambiguity and vagueness confused even Plaintiffs' misappropriation expert, Dr. Nielson, who struggled to answer questions about the alleged trade secrets' boundaries. Ex. 23 (Nielson Tr.) at 116:25-118:4, 118:25-119:21, 121:9-124:22, 124:1-22, 125:25-127:1, 132:16-134:2.   And in any event, Plaintiffs' identification of the purported trade secrets fails to provide the "exacting level of particularity" that is "required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Calendar Rsc.*, 2020 WL 4390391, at *5, *9.  Summary judgment is warranted. *Id.*; *see also Imax Corp.*, 152 F.3d 1161, 1164–65.

    2. **Trade Secret Category 1**

   Trade Secret Category 1 claims ██████████████████████████ Ex. 7 (Black Rpt. Ex. 5 §A).  Dr. Black's Exhibit 5 identifies ████████████████ ████████████████████████ *Id.* ¶¶ 1-12.  But, as noted, Dr. Black interprets the trade secrets as █████████████████ he cited. Ex. 22 (Black Tr.) at 277:10-21.   And Dr. Nielson testified that ██████████████████████████████████ ██████████████████████████████████ Ex. 23 (Nielson Tr.) at 118:20-23; 121:22-123:24.  He elaborated that, because the ████ █████████████████████████████████ █████████████████████████████████ ████████████████████████████ *Id.* at 119:10-21.   But  Plaintiffs  do  not  identify  with  particularity  what  these ████████████████████████████ actually are.  Plaintiffs identify no precise boundaries.  Even Dr. Nielson, whose job it was to map the trade secrets onto the accused products, could not identify boundaries, beyond pointing to the generalized Category 1 itself. *Id.* at 124:8-127:1.  Such vague allegations lack "sufficient particularity" and cannot satisfy Plaintiffs' burden. *See*, *e.g., Calendar Rsc.*, 2020 WL 4390391 at *5; *X6D,* 2012 EL 12952726 at *6; *Imax*, 152 F.3d at 1167.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1             **3.**     **Trade Secret Category 2**

2       Category 2 suffers from the same vagueness. Plaintiffs define it as ████

3 ███████████████████████████████████████████████████████████

4 ████████████████████████ Ex. 7 (Black Rpt. Ex. 5 ¶ 23). Dr. Black

5 discusses certain lines of source code with respect to 2(a). *Id.* ¶¶ 25-33. But there is no

6 identification of a specific ██████████████████████ in the source code. *Id.*; *see*

7 *also* Ex. 18 (San Diego Dep. Tr.) at 225:19-226:5, 211:18-212:8, 244:7-17. And 2(b) was

8 ████████—Dr. Black simply reproduces a slide with the idea ██████████

9 ████████████████ and cites similarly vague documents. *Id.* ¶¶ 34-36. This is

10 insufficient to define a protectable trade secret. *Calendar Rsc.*, 2020 WL 4390391, at *10; *see*

11 *also Imax*, 152 F.3d at 1161; *Founder Starcoin, Inc. v. Launch Labs, Inc*., 2018 WL 3343790, at

12 *6–8 (S.D. Cal. July 9, 2018) ("Plaintiff has not carried its burden to establish that it had a valid

13 trade secret" where plaintiff relied on statement in a slide deck that "belies a broad range of

14 potential concepts, not a hard and fast trade secret").

15             **4.**     **Trade Secret Category 3**

16       Category 3 fares no better. Plaintiffs define it as: ████████████████

17 ████████████████████ Ex. 7 (Black Rpt. Ex. 5 ¶ 37). But Dr. Black admits that

18 █████████████████████████████████ *Id.* (Black

19 Rpt.) at ¶ 267. And as Dr. Clark has explained, ████████████████████████

20 ███████████████████████████ implemented, and publicly

21 documented by entities such as Cisco. Ex. 24 (Cisco User Guide for Advanced Phishing

22 Protection); Ex. 25 (Expert Report of Dr. Paul Clark ("Clark Rpt.")) ¶¶ 251, 260-261. In fact, the

23 use of Microsoft O365 journaling for email security and filtering is so well-known that Microsoft

24 itself suggested to Vade Secure that ███████████████████████" Ex. 25 (Clark

25 Rpt.) ¶¶ 251, 260-261; Ex. 26 (July 13, 2017 Microsoft email). Yet Plaintiffs do not identify

26 specific "implementation and proposed improvements" that they claim as a trade secret, nor their

27 precise boundaries. Ex. 7 (Black Rpt. Ex. 5 ¶ 37). Consequently, they have not carried their

28 affirmative burden to distinguish from public knowledge what they claim as a trade secret. *See*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

11

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

*Calendar Rsc.*, 2020 WL 4390391, at \*6, \*12.

5.     **Trade Secret Category 4**

Category 4 incorporates the other categories into 130 separate combinations of features, incorporating their individual vagueness and adding more.  Dr. Black's explanation of "Plaintiffs' specific implementations" of those 130 trade secret combinations consists of a single sentence:

████████████████████████████████████████████████████████████

█ █████ █ ███ █████ ███████ █ ████ ███████ ████ ████ ████ ████

████████████████████████████████████████████████████████████

██████ Ex. 4 (Black Rpt.) ¶ 276, (Black Rpt. Ex. 5 at pg. 21).  This, too, is insufficient.  *See*, *e.g.*, *Calendar Rsc.*, 2020 WL 4390391, at \*5-7; *Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at \*5 (S.D. Cal. Dec. 18, 2018); *X6D Ltd.*, at \*8.

6.     **Trade Secret Category 5**

Category 5 recites ████████████████████████ without claiming any specific "methods, techniques, processes, procedures, programs, or codes," as required to identify a protectable trade secret. 18 U.S.C. § 1839(3)); *see also Calendar Rsc.*, 2020 WL 4390391, at \*6.  For example, in alleged trade secret 5(a), Plaintiffs claim ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. 7 (Black Rpt.) ¶ 301. Dr. Black's description of this category is even less clear than his others—he summarizes high-level documents and gives nothing like a clear definition or a discernable set of boundaries.  *See, e.g.*, Ex. 7 (Black Rpt. Ex. 5 ¶ 67); Ex. 4 (Plaintiffs' Trade Secret Contentions) at 79.  Without more, Plaintiffs cannot carry their burden of distinguishing the purported trade secrets from well-known and unprotectable ideas.  *See Calendar Rsc.*, 2020 WL 4390391, at \*8.  As in *Calendar Research*, Plaintiffs fail to show that the "mere use" of ████████████ "or any other third-party application, is a protectable technique under the DTSA."  *Calendar Rsc.*, 2020 WL 4390391, at \*12; *see also* Ex. 5 (Clark Rpt.) ¶¶ 335-336.  The same is true for the use of ████████████ ██████████████████, both of which are "tools that are well-known" *Calendar Rsc.*, 2020

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  WL 4390391, at *8.  The use of ███████████████████████████████████████████,"

2  is "an indefinable concept that is too vague to constitute a trade secret."  *Id*. at *11.  In short,

3  "[a]lthough Plaintiff presents a voluminous list of technical terms, Plaintiff fails to articulate any

4  of these concepts with enough specificity to distinguish them from the "special knowledge of those

5  who are skilled in the trade."  *Id*. at *7.

6        Plaintiffs' alleged Trade Secrets 5(b)-5(e) all incorporate Trade Secret 5(a), and therefore

7  suffer from the same deficiencies.  Moreover the additional limitations of the dependent trade

8  secrets are themselves insufficient to constitute protectable trade secrets.  For example, alleged

9  Trade Secret 5(b) attempts to claim the use of a ██████████████  Ex. 7 (Black Rpt.) ¶ 301.

10 ███████████████████████████████████████████████████████████████████████████████

11 Ex. 25 (Clark Rpt.)  ¶¶ 343-344.  Here again, Plaintiffs have not identified their purported trade

12 secrets with enough particularity to carry their burden of distinguishing what they claim from

13 others' work and well-known and unprotectable ideas.  *Calendar Rsc.*, 2020 WL 4390391, at *12.

### B.    Summary Judgment Should Be Entered Dismissing Plaintiffs' Claims That There Is Misappropriated Code in the Content Filter Product

16       Although Content Filter is not mentioned in Plaintiffs' complaint or responses to any

17 interrogatories, their expert, Dr. Nielson, alleged for the first time in his expert report "████████

18 ███████████████████████████████████████████████████████████████████████████████

19 ██████████████████████████"[4]  Ex. 3 (Nielson Rpt.) ¶ 280.  Summary judgment should

20 be entered disposing of this ground for alleged misappropriation for at least the following reasons.

21       First, that Dr. Nielson's speculation is contradicted by Plaintiffs' other technical expert,

22 Dr. Black, who concluded that "Content Filter does not disclose Plaintiffs' specific asserted trade

23 secrets and proprietary information."  Ex. 7 (Black Rpt.) ¶ 367; *see also id.*at ¶¶ 364-366.

24       Second, that Dr. Nielson can only equivocate and opine that Content Filter ██████████

25 ███████████████ alone warrants summary judgment.  *Volterra Semiconductor Corp. v.*

26 *Primarion, Inc.*, 796 F. Supp. 2d 1025, 1043-44 (N.D. Cal. 2011) (granting summary judgment

27 and rejecting expert's equivocal opinion); *see also Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th

28

---

[4] All emphases supplied unless otherwise noted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

Cir. 2004) (quotation and citation omitted) (expert's "mere speculation does not create a factual dispute for purposes of summary judgment"). It is far too late in the day for Plaintiffs' suspicions of what is ███████," and summary judgment should be granted.

Third, despite hundreds of hours of searching through thousands or tens of thousands of Vade Secure source code, Dr. Nielson conceded he could not find either of the relevant code modules—the old "███████" module or ███████ ███████" module—in Content Filter. *See* Ex. 23 Nielson Tr. at 44:16–23, 100:10–13. Indeed, Dr. Nielson concedes that he cites to no code at all to support his conjecture that Content Filter *might* contain Plaintiff's trade secrets. *Id.* at 149:17–152:4; *see also id.* at 162:14–20 ███████ ███████ ███████"). This absence of the alleged trade secrets in the actual source code for Content Filter—the most reliable evidence of what is actually in Vade Secure's products—warrants summary judgment. *See Calendar Rsch.*, 2020 WL 4390391, at *4 ("Although code comparison is not the only way to prove trade secret misappropriation in technology cases, it is one of the most clear-cut methodologies."); *see also Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, 2007 WL 2429653, *10-11 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332 F. App'x 387 (9th Cir. 2009) (granting summary judgment where plaintiff offered only "vague" statements and showed "no indications of similarities" in the source code).

Third, the scant "evidence" Plaintiffs point to bears no weight. Specifically, Plaintiffs and Dr. Nielson rely on a single, undated marketing presentation containing the following image:



*See* Ex. 3 (Nielson Rpt.) ¶ 276; *see also* Ex. 23 (Nielson Tr.) at 157:13–18 ("███████



.”).  From this image, Plaintiffs somehow conclude that "████████████████████████████," Ex. 3 (Nielson Rpt.) ¶ 276, that spear phishing must be done using either ████ or ██████ *id.* ¶¶ 278-79, and so ████████████," *id.* ¶ 280.

This broken syllogism fails on several counts, however.  First, as noted above, the only way to know if Content Filter incorporates the ***source code modules*** ████ or ██████ is to look at its ***source code***.  Dr. Nielson did exactly that and was forced to admit he could not find either module.  *See*  Ex. 23 (Nielson Tr.) 157:22–158:3 ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████"); *id.* at 163:24–164:8 ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████").  Second, even if one were to ignore the dispositive nature of the source code, there is no genuine basis to conclude that this figure from an undated document reflects any actual functionality that has ever existed in Content Filter or, more importantly, that was added after any of the Cloudmark engineers joined Vade Secure.  *See id.* at 159:15–161:5 (Dr. Nielson was unable to testify whether the author of the figure programmed the products, who the document was provided to, whether it was a draft or final, or described an actual or potential product).  Third, on its face this document fails to support Dr. Nielson's vast leaps of logic: it never mentions Content Filter, ████████████, or the "filterd" daemon Dr. Nielson says would enable Content Filter to access either code module.  *Id.* at 157:6–12.

Beyond this, Dr. Nielson's misappropriation theory boils down to the unsupported argument "████████████████████████████████████████████"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  ████████ ” and “ ████████████████████████

2  ████████████████████████████████████████████

3  ████████████████████████ ” Ex. 3 (Nielson Rpt.) ¶ 277

4  (emphasis added).  But this too fails as a matter of law.  Even if former Cloudmark employees had

5  "used some of the knowledge, learnings, and knowhow they developed" at Cloudmark and

6  "worked on similar projects at" both companies, those facts do "not mean that [the former

7  employees] necessarily misappropriated trade secrets in the process." *Calendar Rsch.*, 2020 WL

8  4390391, at *14 (the "question for this Court was whether Defendants misappropriated a specific,

9  definable trade secret, not whether they implemented a similar app idea for a competitor.").

10  The facts in *Calendar Research* are also particularly apt.  In that case, plaintiff claimed

11  defendants misappropriated trade secrets related to "Virality Capabilities." *Id.* at *9.  As evidence

12  of misappropriation, plaintiffs alleged that "the Individual Defendants marketed themselves as

13  experts 'viral/social,'" which established "the existence of the alleged 'Virality Capabilities.'" *Id.*

14  The court rejected this argument.  Noting that the plaintiff "lacks any evidence beyond

15  speculation," the court held that the "Individual Defendants' direct testimony that no such Virality

16  API, or any other proprietary virality system, ever existed is undisputed" and granted summary

17  judgment. *Id.* The same should hold true here.  Defendants' expert, Dr. Striegel, has closely

18  examined the Content Filter source code, and explained that  "████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████ ." Ex. 2 (Striegel Rpt.)

21  ¶ 84.[5]  And Dr. Striegel explained that "████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████ ." *Id.* at ¶ 91.

25  As in *Calendar Research*, this evidence is disputed by nothing but Plaintiffs' rank speculation.

26  _____

27  [5] *See also* Ex. 27 (Dep. Tr. of Adrien Gendre ("Gendre Tr.")) 194:25-195:6 ("████████

28  ████████████████████████████████████████████ ████████████████████ .").

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

Ex. 23 (Nielson Tr.) 148:24–149:1 (" ████████████████████████████████ ████████████████████████████████ .").  Accordingly, summary judgment should be entered.  *Calendar Rsch.*, 2020 WL 4390391, at *9; *Brookhaven*, 2007 WL 2429653, at *11 (entering summary judgment where plaintiff "offer[ed] no other evidence that directly refutes the findings by Adobe's expert that Brookhaven's trade secrets do not appear in InDesign").

In sum, the testimony of both sides' experts establishes conclusively that Content Filter does not contain any of the accused code.  Plaintiffs' only response is baseless guesswork that Content Filter *might* "incorporate" this code, based on a single document that does not come close to supporting this theory.  Summary judgment should be entered on this ground.

## C.   Summary Judgment Should Be Entered Dismissing Plaintiff's Claims Against Vade Secure's Current Office 365 Product

As noted above, it is undisputed that the code for Vade Secure's spear phishing engine, ████████████ , has been completely replaced by the ████████████████████ module programmed by ████ .  Ex. 8 (Nielson Suppl. Rpt.) ¶ 31.  Summary judgment should be entered that Vade Secure's current O365 product, which runs only this replacement engine, does not include any of Plaintiffs' trade secrets.

Here again, the Court need look no further than the testimony of the two parties' experts concerning the source code to decide this issue.  As before, Vade Secure's expert is unequivocal: "the ████ anti-spear phishing engine does not misappropriate any of Cloudmark's alleged trade secrets."  Ex. 2 (Striegel Rpt.) ¶ 73.  And, also as before, Plaintiffs' expert was unable to find even a single one of Plaintiffs' trade secrets in the ████████████████████████████████ spear phishing engine that is now used in O365:



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT



Ex. 23 (Nielson Tr.) at 106:13–110:25 (objections omitted).

These remarkable admissions should resolve this issue.  That Plaintiffs' expert on misappropriation cannot find (and did not cite) any *source code* in the current version of O365 that contains Plaintiffs' *source code* trade secrets, establishes conclusively that summary judgment is warranted.  *See Brookhaven*, 2007 WL 2429653 at *10-11 (granting summary judgment where plaintiff's expert cited "no indications of similarities" between the parties' source code).

Nonetheless, instead of conceding that O365 no longer contains their alleged trade secrets, Plaintiffs stubbornly maintain that ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████" Ex. 3 (Nielson Rpt.) ¶ 273.  The only evidence Plaintiffs proffer for this dubious contention is that ████████████████████████████ ██████████████████████████████████████████████" *Id.* ¶¶ 269-270.  Mr. Goutal, they contend, ████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████" *Id.* ¶¶ 272-273.  The only "evidence" Plaintiffs can muster for this alleged derivation is that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   replacement spear phishing engine does not include ███████ functionality.  *Id.* ¶ 273.

2   None of this is sufficient to raise a genuine issue of material fact.  *Cinebase Software, Inc. v. Media*

3   *Guar. Tr., Inc.*, 1998 WL 661465, at *1 (N.D. Cal. Sept. 22, 1998).

4           As an initial matter, while it is true that ████████████████████████

5   ██████████████████████████, Dr. Nielson acknowledges that it would not be improper even

6   for a former employee (and ██████████ is ***not*** a former Cloudmark employee[6]) to provide a

7   specification to the programmers when instituting a clean room design.  *Id.* ¶ 108.

8           In any event, and dispositive of this issue, it is undisputed that Plaintiffs cannot identify a

9   single one of their alleged trade secrets in the specifications provided to ███████[7]:

10  ████████████████████████████████

11  ████████████

12  ██████████████████████████████████

13  ████████████████████

14  Ex. 23 (Nielson Tr.) at 92:15–20 and Ex. 3.

15  ██████████████████████████████████

16  ████████████████████████████

17  ██████████████████████████████████
    ████████████████████

18  ██████████████████████████████████
    ████████████

19

20  ██████████████████████████████████
    ████████████████████████

21  ██████████████████████████████████
    ████████████████

22

23  ████████████

24  *Id.* at 96:13–97:2; *id.* at 99:18–25 ████████████████████████████

25  ████████████████████████████████████████

26

---

27  [6] This is not in dispute.  *See* Ex. 23 (Nielson Tr.) at 79:12–16.

28  [7] There were two versions of the specification provided to ████████████████, and a second that added ████████████ as a co-author.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2 ."); *id.* Exs. 3 and 4.  Plaintiffs' other technical expert

3 studied the specification documents, offered opinions about the process, but conspicuously did not

4 offer an opinion about whether any of those documents actually discloses any of the trade secrets.

5 Ex. 7 (Black Rpt.) ¶¶ 555-556; Ex. 22 (Black Tr.) at 331:18-334:21.

6        Further, Dr. Nielson's O365 theory hangs on a false premise: the contention that

7 " " is belied by his

8 actual testimony.  Mr. Goutal testified that he did not recall when exactly was

9 developed, and that he "was not involved in it."  Ex. 28 (Dep. Tr. of Sébastien Goutal ("Goutal

10 Tr.") at 176:19-177:7.  When asked if he was "familiar with" , Mr. Goutal said only

11 that he "ha[d] heard that name."  *Id.* at 174:4-7.  And, Mr. Goutal did not testify

12 ) that he was otherwise "familiar" with —the most he could say was "I ***think***

13 I saw ***some*** source code" but could not remember exactly when or any other details about

14 .  *Id.* at 175:22-176:14.  In addition, when confronted with Mr. Goutal's actual

15 testimony, Dr. Nielson had to confirm that

16 .  Ex. 23 (Nielson Tr.) at

17 79:23–80:14 and 98:18–99:7.  Worse, Dr. Nielson was forced to admit that, in truth,

18

19 *Id.* at 83:15–84:8.

20        Next, Plaintiffs have not identified any evidence showing anyone at had access to

21 Plaintiffs' purported trade secrets.  In addition to conceding that the specification contains none of

22 their trade secrets, Plaintiffs fail to identify any communications between Vade Secure and

23 where Plaintiffs' alleged trade secrets were purportedly conveyed to .  *See generally* Ex. 3

24 (Nielson Rpt.); *see also* Ex. 4 (Plaintiffs' Trade Secret Contentions); Ex. 23 (Nielson Tr.) at 92:10–

25 13 ("

26 ."); *see also* Ex. 28 (Goutal Tr.) at

27 202:15-19 ("During the development, we're not authorized to change the rational implemented by

28 , the rational of the algorithm implemented by .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Finally, as noted above, the only alleged "design choice" in the ████████

2  ██████████████████████████████ was the decision not to detect "██████████ Ex. 23

3  (Nielson Tr.) at 136:9–137:2 (Dr. Nielson conceding that ███████████████████████

4  █████████████████████ But Mr. Goutal never testified that he, or any of his co-

5  contributors, made that design choice, and there is no basis for Dr. Nielson's surmise to the

6  contrary.  *See* Ex. 28 (Goutal Tr.) at 200:15–24 (testifying that in addition to his two co-authors,

7  Messrs. Gendron and Honoré, other people at Vade Secure "contributed to that project").

8  Moreover, even if Mr. Goutal was responsible for that choice, ████████████████" is not

9  one of the alleged trade secrets in this action.  Plaintiffs' interrogatory response 10 listing its

10  alleged trade secrets never mentions ████████████████ as one of them.  *See generally*

11  Ex. 4 (Plaintiffs' Trade Secret Contentions).  None of Plaintiffs' fact witnesses ever contended this

12  was a trade secret belonging to the company.  And the notion of ████████████████"

13  divorced from the actual Cloudmark or Proofpoint source code that ***implements*** any such

14  functionality, is exactly the kind of concept that Dr. Nielson has disclaimed as a trade secret here:

15  ████████████████████████████████████████

16  ████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████

20  Ex. 23 (Nielson Tr.) at 114:8–115:1 (objections omitted); *see also id.* at 116:22–23 ("███

21  ████████████████████████.")  Yet Plaintiffs make no effort to show the ***implementation*** of

22  ██████████████ in the ███████ code bears any resemblance to the implementation in

23  Cloudmark code—again, Dr. Nielson cites to no ███████ code at all.

24  Here again, this is not a close case.  Plaintiffs and their expert can find no code that includes

25  their alleged trade secrets in the current version of the O365 product, and their remaining

26  arguments are contrivances that find no legitimate support in the evidence.  Because no reasonable

27  jury could find misappropriation on this record, summary judgment should be entered that the

28  current version of O365 does not contain any misappropriated trade secrets.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**D.      Plaintiffs' Copyright Registrations Are Invalid as a Matter of Law**

Plaintiffs' copyright claims likewise suffer from a fatal defect.  In order to maintain their suit for copyright infringement, Plaintiffs must show that they validly registered the Trident software with the U.S. Copyright Office.  17 U.S.C. § 411(a); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020).  They cannot do so, because the registration applications included a knowing and material misrepresentation of fact—that the Trident software was "unpublished" at the time of registration.  The Copyright Act requires the invalidation of a copyright registration if *(a)* the registrant included "inaccurate information . . . on the application for copyright registration," *(b)* the registrant included that information "with knowledge that it was inaccurate," and *(c)* "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1)(A)-(B).  As discussed below, all three requirements are met here.  And since the "failure to properly register a work will preclude an infringement action predicated on that work," *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, *15 (D. Ariz. Sept. 24, 2018), Plaintiffs' copyright claims based on the asserted, invalid registrations must be dismissed.

1.      **Plaintiffs' representation that the Trident Modules were unpublished was inaccurate because Trident had previously been distributed to customers**

Plaintiffs suit is premised on four copyright registrations:  Nos. TXu 2-211-008 ("Trident Module 1"), TXu 2-210-880 ("Trident Module 2"), TXu 2-210-877 ("Trident Module 3"), and TXu 2-211-639 ("Trident Software Module").   FAC ¶ 113.   Proofpoint applied for these registrations in 2020, more than three years after ███████████ of Trident concluded and the product was discontinued. Ex. 29 (registration materials) at 3-4, 71-72, 151-152, 217-219; *see also* Ex. 14.  As indicated by the prefix "TXu," Proofpoint represented to the Copyright Office that all four of the software modules (the "Trident Modules") were "unpublished" works.  *See Determined Prods., Inc. v. Koster*, 1993 WL 120463, *1 (N.D. Cal. Apr. 13, 1993).

Those representations were false.  The Copyright Act defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101.  Specifically, a computer program is

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

22

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   published if copies of the program have been distributed to members of the public by purchase or

2   by license.   *Compendium of U.S. Copyright Office Practices, Third Edition* ("*Compendium*

3   *(Third)*") § 721.9(E).  This is true regardless of whether the copies contained object code or source

4   code; publication can occur even if the source code is not disclosed to the public.  *Id.*  The key to

5   publication, in this context, is that a member of the public is able "to download a file containing a

6   copyrighted work and thereby gain control of it."  *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d

7   398, 401 (S.D.N.Y. 2002).

8        It is indisputable that copies of the Trident software were "distributed to the public by sale

9   or other transfer of ownership."

10

11  *Compare* Ex. 2 (Striegel Rpt.) ¶¶ 93-99 *with* Ex. 23 (Nielson Tr.) at 264:9–265:2 (Dr. Nielson

12  testifying that                                                           ).[8]  For

13  instance,

14                             ," Ex. 30

15                             .[9]   *E.g.* Ex. 31 *see also* Ex. 32 at 95940 (

16

17        ); Ex. 33 at 95287, 92590

18                                                                    .  Because

19  Proofpoint  nevertheless  certified  to  the  Copyright  Office  that  the  Trident  Modules  were

20  *un*published, it indisputably included "inaccurate information … on the application for copyright

21  registration" under § 411(b).

22

23  _____

24  [8] It  is  undisputed  that

         .  Ex. 2 (Striegel Rpt.) ¶ 97.  The Trident software, however, is

25                             .  Ex. 34 (Pls.' Rog. 1 Resp.) at 8-10; Ex. 29 (registration materials) at 10, 80, 153,

26  215; Ex. 3 (Nielson Rpt.) ¶¶ 148-151; Ex. 23 (Nielson Tr.) at 263:4–8.  The software accordingly
    cannot properly be treated as partially published and partially unpublished.

27  [9] Whether or not Trident was ever finally sold to Cloudmark customers                  is

28  irrelevant to whether it was published; distribution of a work for evaluation or sampling purposes
    still counts as publication.  *See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d
    1140, 1146 (9th Cir. 2019) (sale of fabric samples constituted publication of fabric design).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

                                     23                    CASE NO. 3:19-CV-04238-MMC
                                                           DEFENDANTS' NOTICE OF MOTION AND
                                                           MOTION FOR PARTIAL SUMMARY JUDGMENT

2.      **Proofpoint's representation that the Trident Modules were unpublished was made with full knowledge that it was false**

To invalidate a copyright registration under § 411(b), a defendant must show that the applicant provided inaccurate information "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1). This does not require a showing of intent to defraud the Copyright Office, or a showing that the registrant knew that the work was "published" as a matter of law. *Gold Value*, 925 F.3d at 1147 (rejecting plaintiff's argument that it did not believe sales of fabric samples constituted publication). Instead, the requisite "knowledge" is of the ***facts*** that make the representation inaccurate. *Id.* at 1147-48.

Proofpoint was clearly aware, at least via its acquisition of Cloudmark, that copies of Trident were "distribut[ed]… to the public by sale or other transfer of ownership." Cloudmark contemplated from the beginning that ███████████████████████████████████ ████████████████████████████████████████████ Ex. 32 at 95940; Ex. 33 at 95287, 92590. The ████ discussed above, and the ███████████████████ ██, Ex. 35, are further evidence of Plaintiffs' awareness that ███████████████████████ *See also* Ex. 15; Ex. 19 (Knox Tr.) at 70:13-22 (████ ████████████████████████████████████████████ █████████████████████████████); Ex. 36 (Dep. Tr. of Thomas Lee) at 105:21–106:11 (███████████████████████████████ ████████████████████).

In light of the evidence that Plaintiffs were aware that the Trident software was distributed, Proofpoint's false representation that the Trident Modules were unpublished was knowingly made.

3.      **The Register of Copyrights has consistently refused registration based on inaccurate publication information**

After a party has alleged that inaccurate information was included on a copyright registration certificate, the Copyright Act obliges a court to request that the Register of Copyrights advise whether it would have refused registration had it known of the inaccuracy. 17 U.S.C.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

§ 411(b)(2) ("In any case in which inaccurate information … is alleged, the court **shall** request" the Register's advice).  When such an inaccuracy is presented in a summary-judgment motion, courts typically defer a final determination until after the Register has provided her opinion. *See, e.g.*, *Gold Value Int'l Textile Inc. v. Sanctuary Clothing LLC*, 2017 WL 2903180, *12 (C.D. Cal. Mar. 24, 2017) (deferring summary judgment ruling pending response by Register of Copyrights).

That said, the Register has consistently and uniformly advised courts that, if she had been aware that a work had in fact been published prior to the date the application date, she would have refused to register the published work as unpublished.  *See, e.g.*, *Jeon v. Anderson*, 2019 WL 2949033, *2 (C.D. Cal. June 14, 2019); *Gold Value*, 2017 WL 3477746, *2; Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2), *Urban Textile, Inc. v. Fashion Avenue Knits, Inc.*, No. 16-cv-06786 (C.D. Cal. Dec. 29, 2017), ECF No. 71; *see also Compendium* (Third) § 1106.1.  There is no reason to believe that the Register's response will be any different once apprised of Proofpoint's inaccurate registrations.  Accordingly, provided that the Register confirms registration would have been refused for the Trident Modules had she known the Trident software was published in 2016, Proofpoint's registrations should be invalidated under § 411(b) and any claims based on those registrations should be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to enter summary judgment dismissing Plaintiff's claims of trade secret misappropriation for alleged trade secrets 1-5.  With respect to Plaintiffs' claims of copyright infringement, we respectfully ask the Court request that the Register of Copyrights advise whether the inaccurate information in Plaintiffs' registration applications, if known, would have caused the Register to refuse registration,[10] and if the Register confirms the invalidity of the registrations, to dismiss Plaintiffs' copyright claims.

---

[10] Our motion papers include a proposed order referring this question to the Register of Copyrights.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Dated:  April 23, 2021                    Respectfully Submitted,

2

3                                              */s/ Jeffrey G. Homrig*

4                                              Douglas E. Lumish (SBN 183863)
                                               Jeffrey G. Homrig (SBN 215890)
5                                              Arman Zahoory (SBN 306421)
                                               Ryan Banks (SBN 318171)
6                                              **LATHAM & WATKINS LLP**
                                               140 Scott Drive
7                                              Menlo Park, CA 94025
                                               Telephone: (650) 328-4600
8                                              Facsimile: (650) 463-2600
                                               doug.lumish@lw.com
9                                              jeff.homrig@lw.com
                                               arman.zahoory@lw.com
10                                             ryan.banks@lw.com

11                                             Margaret A. Tough (SBN 218056)
                                               Sadik Huseny (SBN 224659)
12                                             Joseph R. Wetzel (SBN 238008)
                                               Julianne Brauer (Admitted *Pro Hac Vice*)
13                                             **LATHAM & WATKINS LLP**
                                               505 Montgomery Street, Suite 2000
14                                             San Francisco, CA 91444
                                               Telephone: (415) 391-0600
15                                             Facsimile: (415) 395-8095
                                               margaret.tough@lw.com
16                                             sadik.huseny@lw.com
                                               joe.wetzel@lw.com
17                                             julianne.brauer@lw.com

18                                             Joseph H. Lee (SBN 248046)
                                               **LATHAM & WATKINS LLP**
19                                             650 Town Center Drive, 20th Floor
                                               Costa Mesa, CA 92626
20                                             Telephone: (714) 540-1235
                                               Facsimile: (714) 755-8290
21                                             joseph.lee@lw.com

22                                             Holly K. Victorson (SBN 305595)
                                               Sarang Vijay Damle (Admitted *Pro Hac Vice*)
23                                             **LATHAM & WATKINS LLP**
                                               555 11th St NW, Ste. 1000
24                                             Washington, DC 20004
                                               Telephone: (202) 637-2336
25                                             Facsimile: (202) 637-2201
                                               holly.victorson@lw.com
26                                             sy.damle@lw.com

27                                             Colin H. Murray (SBN 159142)
                                               **BAKER & McKENZIE LLP**
28                                             Two Embarcadero Center, 11th Floor
                                               San Francisco, CA  94111-3802

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26                CASE NO. 3:19-CV-04238-MMC
                  DEFENDANTS' NOTICE OF MOTION AND
                  MOTION FOR PARTIAL SUMMARY JUDGMENT

Telephone: (415) 576-3000
Facsimile: (415) 576-3099
colin.murray@bakermckenzie.com

Danielle L. Benecke (SBN 314896)
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone: (650) 856-2400
Facsimile: (650) 856-9299
danielle.benecke@bakermckenzie.com

Mackenzie M. Martin (Admitted *Pro Hac Vice*)
Benjamin B. Kelly  (Admitted *Pro Hac Vice*)
John G. Flaim (Admitted *Pro Hac Vice*)
Chaoxuan Liu (Admitted *Pro Hac Vice*)
Mark Ratway  (Admitted *Pro Hac Vice*)
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
mackenzie.martin@bakermckenzie.com
john.flaim@bakermckenzie.com
charles.liu@bakermckenzie.com
mark.ratway@bakermckenzie.com
ben.kelly@bakermckenzie.com

Shima S. Roy
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 500
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
shima.roy@bakermckenzie.com

*Attorneys for Defendants*
*Vade Secure, Inc. and Vade Secure SASU*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

27

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT