SINGER CASHMAN LLP
    Adam S. Cashman (Bar No. 255063)
    acashman@singercashman.com
    Evan Budaj (Bar No. 271213)
    ebudaj@singercashman.com
    Benjamin L. Singer (Bar No. 264295)
    bsinger@singercashman.com
    Neil Cave (admitted *pro hac vice*)
    ncave@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, CA  94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Defendant Olivier Lemarié*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ.,<br><br>        Defendants. | CASE NO. 3:19-CV-4238-MMC<br><br>**DEFENDANT OLIVIER LEMARIÉ'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>JURY TRIAL DEMANDED<br><br>Hearing Date: May 28, 2021<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7<br><br>Original Complaint Filed: July 23, 2019 |



1  **TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE** that on May 28, 2021 at 9:00 a.m., or as soon thereafter as the

3  parties may be heard, before the Honorable Maxine M. Chesney, Senior District Court Judge, United

4  States District Court for the Northern District of California, in the San Francisco Division

5  Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

6  Defendant Olivier Lemarié will bring for hearing, pursuant to Federal Rule of Civil Procedure 56(a),

7  this motion for partial summary judgment dismissing Counts II–V asserted by Plaintiffs Proofpoint,

8  Inc. ("Proofpoint"), and Cloudmark, LLC ("Cloudmark," and with Proofpoint, "Plaintiffs") set forth

9  in Plaintiffs' First Amended Complaint ("FAC").

10  <u>**RELIEF SOUGHT**</u>

11       Olivier Lemarié hereby moves for partial summary judgment on Counts II-V against him for

12  breach of contract, on the ground that there are no genuine disputes as to any material facts and

13  Mr. Lemarié is entitled to judgment as a matter of law.

14       This Motion is based on this Notice of Motion, the attached Memorandum of Points and

15  Authorities, the declaration of Evan Budaj and all exhibits thereto (served and filed concurrently

16  herewith), the papers on file with the Court, and on any further evidence and arguments as may be

17  presented and as the Court may permit at the time of the hearing on this matter.

18

19  Date:  April 23, 2021            SINGER CASHMAN LLP

20                 By:  _/s/ Adam Cashman_____

21                    Adam S. Cashman
                  Evan Budaj

22                    Benjamin L. Singer
                  Neil Cave (admitted _pro hac vice_)

23

24                    _Attorneys for Defendant Olivier Lemarié_

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF ISSUES TO BE DECIDED

Whether Mr. Lemarié is entitled to summary judgment on Plaintiffs' breach of contract claims (Counts II-V).

### II.     INTRODUCTION

Summary judgment is warranted on Plaintiffs' breach of contract claims.  Each is based on Cloudmark's Employee Proprietary Information and Inventions Agreement ("PIIA"), through which Plaintiffs purport to impose sweeping and overly broad restraints on Mr. Lemarié's ability to practice his profession by, for example, prohibiting him from using any "ideas," "techniques," or "know-how" Cloudmark may now or one day claim an interest in.  Such unbounded restrictions impose an unlawful restraint on Mr. Lemarié's right—firmly enshrined in Cal. Bus. & Prof. Code § 16600—to engage in his chosen profession.  Summary judgment should also be entered for the additional reason that Plaintiffs have failed to proffer any evidence supporting any cognizable measure of damages for any of their contract claims, and because Plaintiffs have not identified any invention to support their "failure to disclose inventions" claim (Count III).

### III.    STATEMENT OF FACTS

Mr. Lemarié has worked in cyber security for more than 20 years.  FAC, Ex. A.  In 2004, seeing the shortcomings in conventional email security technologies, he founded an email security company called Bizanga, *id.* ¶ 35, with the goal of developing the most advanced and secure mail transfer agent ("MTA") in the world. ████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████ Cloudmark acquired Bizanga in 2010, bringing Mr. Lemarié on as its Vice President of Gateway technology. FAC ¶ 48.  Mr. Lemarié served in that role for more than six years, before eventually moving on from Cloudmark in November 2016 to spend time with family, pursue personal projects, and consider his future.  FAC, Ex. A.



1    During his time at Cloudmark, Mr. Lemarié was surprised to discover it had no internal note-

2    sharing tool, and in 2014 he created an Evernote notebook so the team working on a DNS security

3    project could work more efficiently by sharing notes.  *See* Budaj Decl., Ex. C [L. Cho Depo. Tr.]

4    48:10-19; *id.*, Ex. D [EVERNOTE-PROOFPOINT171] ("Evernote Spreadsheet"); *id.*, Ex. E

5    [Lemarié Interrogatory Responses] ("Lemarié Interrog. Resps."), No. 7.  Immediately after creating

6    the ████████████████████████████████████████████████████.  *See* Evernote

7    Spreadsheet; Lemarié Interrog. Resps., no. 7; Budaj Decl., Ex. F [PP-VADE00095830] ("Evernote

8    Email").  Cloudmark executives were aware that Mr. Lemarié and others used Evernote to share

9    notes internally.  *See* Lemarié Interrog. Resps., no. 7; Evernote Email.

10    Mr. Lemarié ceased work on the DNS security project later in 2014.  *See* Lemarié Interrog.

11    Resps., no. 7.  In November 2016 he announced he was leaving Cloudmark, by which time it

12    appeared Cloudmark had abandoned the project.  *Id*.  After transitioning his projects and files to

13    Cloudmark colleagues, Mr. Lemarié confirmed they had all the documents they required.  *Id*.  He

14    deleted the Evernote notebook on November 4, 2016.  *See* Evernote Spreadsheet.  All Cloudmark

15    employees with access to the notebook continued to be able to access it up until this date.  *Id.* ████

16    ████████████████████████████████████████████████████████████████████

17    ███████████████████████  *See* Cho Tr. at 90:2-10; Budaj Decl., Ex. G [PP-

18    VADE00093050–93055] at 93054.  Instead, the notebook was forgotten, and Cloudmark never

19    attempted to access it until June 28, 2019—several weeks before filing the Complaint.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Mr. Lemarié Is Entitled To Summary Judgment On Count II

22    Plaintiffs allege Mr. Lemarié breached the PIIA by using Cloudmark's Proprietary

23    Information and disclosing it to Vade.  FAC ¶ 84.  Section 1.1 of the PIIA, which ███████████

24    ████████████████████████████, is invalid under Cal. Bus. & Prof. Code

25    § 16600 because it improperly restrains former employees from working in Cloudmark's field of

singer
cashman LLP

1   business.[1]  *See* Budaj Decl., Ex. H [VS_0000037871] ("PIIA").  The PIIA defines █████████

2   █████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████  PIIA

5   § 1.2.  ████████████████████████████████████  *id.*, is both overly broad

6   and impermissibly vague.  These prohibitions are also ████████████████████.  *Id.*

7          At any time after leaving Cloudmark, former employees such as Mr. Lemarié would be

8   prevented from practicing their profession ██████████████████████████████

9   ████████████████████████████████  *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th

10  303, 318-19 (2020) ("[W]e conclude the confidentiality provisions in the Employment Agreement on

11  their face patently violate section 16600.  Collectively, these overly restrictive provisions operate as a

12  de facto noncompete provision ...."); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578

13  (2009) ("Given such an inclusive and broad list of confidential information, it seems nearly

14  impossible that employees like Dowell and Chapman, who worked directly with customers, would

15  not have possession of such information."); *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045,

16  1055 (Fed. Cir. 2020) (invalidating assignment provision in employment agreement not limited to

17  trade-secrets or confidential information).  Furthermore, the PIIA does not describe in any way the

18  metes and bounds of ██████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  █████████████████  PIIA§ 1.2.  This substantial restraint on Mr. Lemarié's future employment

21  renders the PIIA incompatible with the guarantee of employee mobility provided by California law.

22  *See Golden v. California Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018)

23  ("We stress, however, that it will be the rare contractual restraint whose effect is so insubstantial that

24  it escapes scrutiny under section 16600."); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946,

25

26  [1] ██████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████

    PIIA § 1.1.

28

singer
cashman LLP

1    189 P.3d 285, 291 (2008) ("[O]ur courts have consistently affirmed that section 16600 evinces a

2    settled legislative policy in favor of open competition and employee mobility.").

3         Plaintiffs cannot save the PIIA by seeking to apply it narrowly to the facts of this case—it is

4    invalid on its face. *Brown*, 57 Cal. App. 5th at 318 ("The factual details of Brown's future

5    employment were irrelevant.  Brown's facial challenge to the provisions argued they were invalid ab

6    initio; no 'as applied' analysis of the provisions was in order."); *Dowell*, 179 Cal. App. 4th at 579

7    ("Any attempt to construe the noncompete and non-solicitation clauses in such a manner as to make

8    them lawful would not be reforming the contract to correct a mistake of the parties but rather to save

9    a statutorily proscribed and void provision.").

10        Even if Cloudmark's prohibition on use of vaguely-defined ███████████ could

11   withstand strict scrutiny under section 16600, Plaintiffs have produced no competent evidence of

12   damages.  Mr. Lemarié served interrogatories seeking all facts underlying this claim, including

13   damages suffered as a result of any alleged breach. ██████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████ *See* Budaj Decl., Ex. I [Plaintiffs' Interrogatory

16   Responses], no. 16. ███████████████████████████████████████

17   ██████████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████ *Id.,* Ex. J [Arnold Rpt.] ¶¶ 81-82.  When asked at deposition whether there was any

20   legal or economic principle that supported his analysis, Dr. Arnold offered none and instead

21   explained that he had been instructed by Proofpoint's counsel to assume this was proper.  *Id*., Ex. K

22   [J. Arnold Depo. Tr]. 213:20-214:2.

23        No legal principle supports Dr. Arnold's misguided assumption, without which Plaintiffs

24   cannot carry their burden of proffering competent evidence of cognizable damages to support their

25   breach of contract claims.  *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (where

26   there was no explanation of experts' reasoning and methods underlying their conclusions, district

27   court did not err in rejecting the testimony as unreliable).  The proper remedy for contract claims is

28

singer
cashman ᴸᴸᴾ

1    expectation damages—*not* disgorgement—and Mr. Arnold made no effort to determine "the amount

2    which will compensate the party aggrieved for all the detriment proximately caused thereby." *Erlich*

3    *v. Menezes*, 21 Cal. 4th 543, 550 (Cal. 1999) (*quoting* Cal. Civ. Code § 3300.  Plaintiffs have made

4    no particularized effort to quantify their contract damages, and have instead assumed (incorrectly)

5    that an alleged breach of one contractual provision entitles them to claw back all consideration given

6    to Mr. Lemarié, regardless of any benefit received (or any other consideration).  *Id.*  Without any

7    proper evidence of any damage caused by Mr. Lemarié's alleged breach of contract, no reasonable

8    factfinder could find that Plaintiffs have carried their burden on this element of their claim.  Summary

9    judgment should be entered accordingly.  *See Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 214

10   (1993) (granting summary judgment on breach of contract claim); *Batts v. Bankers Life & Cas. Co.*,

11   No. 13-CV-04394-SI, 2015 WL 166869, at *3 (N.D. Cal. Jan. 13, 2015) ("In order to survive a

12   motion for summary judgment, a plaintiff must introduce evidence sufficient to show that he suffered

13   damages as a result of the breach."); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir.

14   1988) ("Summary judgment is appropriate where appellants have no expert witnesses or designated

15   documents providing competent evidence from which a jury could fairly estimate damages."); *see*

16   *also* Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not

17   clearly ascertainable in both their nature and origin.").

**B.    Mr. Lemarié Is Entitled To Summary Judgment On Count III Because Plaintiffs Have Failed to Identify Any Undisclosed Invention**

19          Plaintiffs allege Mr. Lemarié breached the PIIA because he failed to disclose to Cloudmark

20   inventions he developed while at Vade Secure.  FAC ¶ 91.  Fact discovery has long since closed, but

21   Plaintiffs have identified no such invention.  Mr. Lemarié served interrogatories specifically

22   requesting that Plaintiffs describe in detail all facts relating to this claim, including their allegation

23   that Mr. Lemarié developed an assignable invention subject to the PIIA.[2]  Plaintiffs' responses

24

25   ██████████████████████████████████████    *See* Budaj Decl., Ex. I [Plaintiffs' Interrogatory

26   ─────────────────────────

27   [2] While Plaintiffs' Count III alleges Mr. Lemarié failed to disclose inventions he developed at Vade, Plaintiffs also request assignment of any such inventions.  FAC, Prayer For Relief viii.

28

DEFENDANT OLIVIER LEMARIÉ'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:19-CV-4238-EMC

1   Responses], no. 17.  The most Plaintiffs were able to offer was that ███████████████

2   ████████████████████████████████████████████████████████████████████████

3   ████████████        *Id.*  Plaintiffs' responses similarly failed to identify any evidence of damages arising

4   from Mr. Lemarié's alleged failure to disclose an invention.  *See, e.g., Rochlis*, 19 Cal. App. 4th at

5   214; *Batts*, 2015 WL 166869, at *3; *see also* Cal. Civ. Code § 3301.  Since Plaintiffs have produced

6   no evidence of an invention resulting from this "variety of projects", or damages arising from the

7   alleged failure to disclose it, summary judgment must be entered for Mr. Lemarié on this claim as

8   well.

9        Lack of evidence aside, the disclosure provision of the PIIA is also unenforceable under Cal.

10  Bus. & Prof. Code § 16600.[3]  It would require former employees, for six months following

11  termination of their employment with Cloudmark, to disclose to the company ████████████

12  ███████████████████████████████████████  PIIA § 2.5.  No Cloudmark trade-secret or other

13  confidential information need have been used to develop the invention—such employees must

14  purportedly disclose all post-employment inventions regardless of connection to their past work for

15  Cloudmark.  This mandatory disclosure would eliminate any invention's competitive benefits and

16  negate its patentability, thereby impairing the employee's ability to practice their profession

17  elsewhere.  *See Brown*, 57 Cal. App. 5th at 316 n.4 (invalidating employment agreement and noting it

18  prohibited disclosure of future inventions to anyone other than former employer); *see Whitewater*,

19  981 F.3d at 1055 ("invention-assignment provisions that go beyond protection of proprietary

20  information and ensnare post-employment inventions are to be judged under the strict § 16600

21  standards that protect former employees"); *Golden*, 896 F.3d at 1024 (9th Cir. 2018) ("California's

22  legislature has clearly expressed its disapproval of contracts that restrain lawful business and

23  professional activities, and we are bound to heed that policy judgment wherever its logic applies.").

24

25

26  [3] ████████████████████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████  PIIA § 2.5.

28

### C.   Mr. Lemarié Is Entitled To Summary Judgment On Count IV Because He Maintained The Evernote Notebook During His Employment At Cloudmark

Plaintiffs allege Mr. Lemarié breached the PIIA because three years after he left Cloudmark, another employee was unable to access the Evernote "DNS Security" notebook Mr. Lemarié created during his time at the company.  FAC ¶ 99.  There is no dispute that Mr. Lemarié maintained the notebook during his time at Cloudmark.  Plaintiffs' allegation hinges on an interpretation of Section 3 of the PIIA, which would require Cloudmark employees to maintain records of company information indefinitely after leaving the company.[4]  Here, Mr. Lemarié made the Evernote notebook available to five other Cloudmark employees for years, any of whom could have made and maintained a copy at any time.  *See* Budaj Decl., Ex. F [PP-VADE00095830]; Evernote Spreadsheet; Lemarié Interrog. Resps., no. 7.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮   *Id.*  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮   *Id*; *see also* Cho Tr. at 90:2-10.  Instead, the existence of the notebook appears to have been forgotten by Cloudmark until Plaintiffs attempted to access it less than one month before filing its Complaint.[5]  By maintaining the information during his tenure and offering it to Cloudmark upon his departure, Mr. Lemarié fulfilled his contractual obligation under any reasonable interpretation of Section 3 of the PIIA.  Plaintiffs' claim that the PIIA requires former employees to maintain records indefinitely after leaving Cloudmark is untenable and contrary to law.

In any case, Plaintiffs have once again produced no evidence of any damages flowing from this alleged breach.  Mr. Lemarié created the DNS notebook in 2014 but stopped working on that project later the same year.  Lemarié Interrog. Resps., no. 7.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.*  Mr. Lemarié served interrogatories requesting

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
PIIA § 3.

[5] Had Cloudmark attempted to access this notebook at any time prior, it would have realized then that the notebook no longer existed—because it was deleted concurrently with Mr. Lemarié's departure from Cloudmark in 2016.

Plaintiffs describe in detail all facts relating to this claim, including all damages suffered as a result of the alleged breach. ████████████████████████████████████. *See* Budaj Decl., Ex. I [Plaintiffs' Interrogatory Responses], no. 18.  Since Plaintiffs have failed to produce any evidence of damages, summary judgment must be entered for Mr. Lemarié on this breach of contract claim as well.  *See, e.g., Rochlis*, 19 Cal. App. 4th at 214; *Batts*, 2015 WL 166869, at \*3; *see also* Cal. Civ. Code § 3301.

### D.   Mr. Lemarié Is Entitled To Summary Judgment On Count V Because He Offered To Deliver The Evernote Notebook To Cloudmark On Leaving The Company

Plaintiffs allege Mr. Lemarié breached Section 6 of the PIIA because, upon leaving Cloudmark, he did not deliver to the company information contained in the Evernote "DNS Security" notebook.[6] FAC ¶ 107.  As described above, this notebook was available to five other Cloudmark employees for two years, up to and including the time Mr. Lemarié announced his departure. Evernote Spreadsheet; Lemarié Interrog. Resps., no. 7; Budaj Decl., Ex. F [PP-VADE00095830]. ██

████████████████████████████████████ Lemarié Interrog. Resps., no. 7.

██████████████████████████████████████████

████████████ *Id.*; *see also* Evernote Spreadsheet; Budaj Decl. Ex. L [Scarazzo Depo Tr.] at 162:3-15, 165:22-167:1. ████████████████████

██████████████████████████████████ Lemarié Interrog. Resps., no. 7.  Mr. Lemarié therefore fulfilled his contractual obligation under any reasonable interpretation of Section 6 of the PIIA.

Additionally, Cloudmark has made clear the information in the notebook holds no value outside of litigation.  As described above, ████████████████████████

████████████████████████████████

---

[6] ████████████████████████████████

████████████████████████████████████

████████████████████ (PIIA § 6).

singer
cashman LLP

████████████████████████████.[7]  In response to Mr. Lemarié's interrogatories asking Plaintiffs to describe in detail all facts relating to this claim, Plaintiffs ██████████ ███████  Budaj Decl., Ex. I [Plaintiffs' Interrogatory Responses], no. 19.  Summary judgment is accordingly warranted here.  *See, e.g., Rochlis*, 19 Cal. App. 4th at 214; *Batts*, 2015 WL 166869, at *3; *see also* Cal. Civ. Code § 3301.

## V.   CONCLUSION

For the foregoing reasons, Mr. Lemarié respectfully requests that the Court enter summary judgment in his favor and against Plaintiffs on Counts II–V of the FAC, and dismiss those counts with prejudice.

Date:  April 23, 2021                    Respectfully Submitted,

                                                  SINGER CASHMAN LLP

                                                  By:    */s/ Adam Cashman*
                                                        Adam S. Cashman
                                                        Evan Budaj
                                                        Benjamin L. Singer
                                                        Neil Cave (*pro hac vice*)

                                                        *Attorneys for Defendant Olivier Lemarié*

---

[7] The notebook was inaccessible in 2019, having been deleted years earlier in 2016, contemporaneously with Mr. Lemarié's departure from Cloudmark.