IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PROOFPOINT, INC., et al.,

Plaintiffs,

v.

VADE SECURE, INCORPORATED, et al.,

Defendants.

Case No. 19-cv-04238-MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LEMARIÉ'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is defendant Olivier Lemarié's ("Lemarié") Motion for Partial Summary Judgment, filed April 24, 2021. Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC ("Cloudmark") have filed opposition, to which Lemarié has replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the First Amended Complaint ("FAC"), plaintiffs allege Cloudmark employed Lemarié as its Vice President of Gateway Technology from 2010 until November 11, 2016 (see FAC ¶¶ 30, 54), and that, in February 2017, Lemarié began working for defendants Vade Secure, Incorporated and Vade Secure SASU (collectively, "Vade Secure") as their Chief Technology Officer (see FAC ¶ 54). Plaintiffs further allege "Vade [Secure] – like Cloudmark and Proofpoint[2] – develops and markets cyber security products." (See FAC ¶ 7.)

According to plaintiffs, Vade Secure and Lemarié entered into a "scheme" to

[1] By order filed May 25, 2021, the Court took the matter under submission.

[2] Plaintiffs allege Cloudmark was acquired by Proofpoint in 2017. (See FAC ¶ 29.)

"misappropriate, misuse, and copy [p]laintiffs' proprietary and confidential information, including valuable trade secrets, to gain an unfair competitive advantage in the marketplace." (See FAC ¶ 1.) In particular, plaintiffs allege, Lemarié, in the course of his employment with Vade Secure, has used "Cloudmark's confidential and trade secret information for the development of Vade [Secure]'s . . . products" (see FAC ¶ 11), and that he "still possess[es] one or more unauthorized copies of [p]laintiffs' confidential and proprietary source code, which incorporates and implements [p]laintiffs' asserted trade secret and proprietary technology" (see FAC ¶ 39).

Based on said allegations, plaintiffs assert, against all defendants, a claim for misappropriation of trade secrets and a claim for copyright infringement. In addition, plaintiffs assert against Lemarié four claims titled "Breach of Contract," each of which is based on an alleged violation of an obligation set forth in Lemarié's employment agreement.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

"If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

## DISCUSSION

By the instant motion, Lemarié seeks summary judgment on the four breach of contract claims asserted against him, which claims are asserted as Counts II through IV in the FAC. The Court considers the four Counts, in turn.

### A. Count II – "Unauthorized Disclosure and Failure to Maintain Confidentiality of Cloudmark Propriety Information"

In Count II, plaintiffs allege Lemarié violated the terms of his employment agreement, titled "Employee Proprietary Information and Inventions Agreement ("PIIA"), by using, without obtaining Cloudmark's permission, "Cloudmark's Proprietary Information in the design and development of Vade [Secure]'s integration with Microsoft Office 365 products," and by using and disclosing to Vade Secure two types of Cloudmark's proprietary information, specifically, information "relating to the design, development, and operation of the Cloudmark Trident anti-spear phishing and related products" and "relating to the design, development, and operation of the Cloudmark MTA technology." (See FAC ¶¶ 1, 84.)

The provision of the PIIA precluding disclosure of Cloudmark's proprietary information reads as follows:

> At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information . . ., except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.

(See Budaj Decl. Ex. H ¶ 1.1)[3]

[3] In the PIIA, Cloudmark is referred to as "the Company." (See id. at 1.)



United States District Court
Northern District of California

The PIAA defines "Proprietary Information" as follows:

> The term "Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company. By way of illustration but not limitation, "Proprietary Information" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "Inventions"); and (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of other employees of the Company.

(See id. Ex. H ¶ 1.2)

In seeking summary judgment on Count II, Lemarié contends the above-quoted provisions are void under § 16600 of the California Business & Professions Code and, even if those provisions are not void, the relief plaintiffs seek is not available under state contract law.

**1. Business & Professions Code § 16600**

Section 16600 of the California Business & Professions Code provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." See Cal. Bus. & Prof. Code § 16600. Here, Lemarié argues, the definition of "Proprietary Information" is "overly broad and impermissibly vague," and, if enforced, would result in a "substantial restraint on . . . Lemarié's future employment." (See Def.'s Mot. at 3:5-6, 20.)

In support of his argument, however, Lemarié fails to offer any evidence, whereas parties that have successfully challenged a contractual provision under § 16600 ordinarily have done so only after having submitted evidence clearly demonstrating enforcement of such provision would result in a prohibited restraint. See, e.g., Golden v. California Emergency Physicians Medical Group, 896 F.3d 1018, 1026 (9th Cir. 2018) (finding provision in settlement agreement void under § 16600, where detailed "facts persuade[d]" court such provision's "effect on [plaintiff's] medical practice [was] substantial"); Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564, 570, 575 (2009) (finding "noncompete clauses" at issue therein void under § 16600, where employees submitted declarations

establishing how provision, if enforced, would preclude them from working in their chosen professions); see also Whitewater West Industries, Ltd. v. Alleshouse, 981 F.3d 1045, 1056 (Fed. Cir. 2020) (holding "threshold ground for application of § 16600" is "evidence of a restraining effect on [plaintiff's] ability to engage in his profession").

Although circumstances may exist where the restraining effect of a contractual provision is so obvious that no additional evidence need be offered, see e.g., Muggill v. Reuben H. Donnelly Corp., 62 Cal. 239, 243 (1965) (holding "provision forfeiting plaintiff's pension rights if he works for a competitor restrains him from engaging in a lawful business and is therefore void"), in this instance, no such restraining effect is self-evident. Indeed, courts that have considered provisions similar to ¶¶ 1.1 and 1.2 have found those provisions enforceable in the absence of a factual showing as to a resulting restraint. See Magic Leap, Inc. v. Xu, 2020 WL 3268659, at *3-*4 (N.D. Cal. June 17, 2020) (rejecting facial challenge to provision precluding use of confidential information defined "to include 'products,' 'processes,' 'technology,' 'customer lists and customers,' and 'services,' as well as broader concepts such as 'know-how,' 'business information,' 'processes,' and 'ideas'; finding determination of asserted restraint would require "fact-intensive inquiry"); SPS Technologies, LLC v. Briles Aerospace, Inc., 2019 WL 6841992, at *12-*13 (C.D. Cal. October 30, 2019) (rejecting facial challenge to provision's broadly worded definition of confidential information; finding determination as to whether "provision[ ] operate[s] as a substantial restraint for purposes of section 16600 is a fact-intensive inquiry").

Accordingly, the Court finds Lemarié has failed to show, on the present record, ¶¶ 1.1 and 1.2 are void under § 16600.

**2. Monetary Relief**

In the FAC, and confirmed in plaintiffs' answers to Lemarié's interrogatories, plaintiffs seek, as remedies for Lemarié's alleged breach of ¶ 1.1, both monetary and equitable relief. (See FAC ¶¶ 85-86; Budaj Decl. Ex. I at 60-61.)

Lemarié argues he is entitled to summary judgment as to one aspect of the

monetary relief sought by plaintiffs, specifically, plaintiffs' claim that he is required to disgorge all compensation he received from Cloudmark.[4]

Plaintiffs' disgorgement theory is set forth in an expert report authored by Jonathan Arnold, Ph.D. ("Dr. Arnold"), wherein Dr. Arnold sets forth his opinions as to available remedies if liability is established. (See Budaj Decl. Ex. J.) With respect to plaintiffs' breach of contract claims, plaintiffs are, in Dr. Arnold's opinion, entitled to recover from Lemarié "the compensation [plaintiffs] paid . . . Lemarié since the start of his employment with [Cloudmark]." (See id. Ex. J at 30.)

Lemarié contends "[n]o legal principle" supports plaintiffs' position that an appropriate remedy for the alleged disclosure and use of Cloudmark's proprietary information is disgorgement of the compensation Cloudmark paid Lemarié. (See Def.'s Mot. at 4:23.) The Court agrees. Although, "[u]nder California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy," see Foster Poultry Farms, Inc. v. SunTrust Bank, 377 Fed. Appx. 665, 669 (9th Cir. 2010), in the cases allowing such remedy, the defendant had obtained a financial benefit from its breach of contract and was required to cede that benefit to the plaintiff, see id. (holding defendant required to disgorge profits it obtained by misuse of plaintiff's confidential information); Artifex Software, Inc. v. Hancom, Inc., 2017 WL 4005508, at *3-*4 (N.D. Cal. September 12, 2017) (finding plaintiff entitled to disgorgement of profits as remedy for breach of licensing agreement; noting defendants, as result of breach, "obtained a benefit they would not have otherwise obtained and profited from that benefit"). Here, by contrast, Lemarié did not obtain his salary, bonuses, or any other compensation from Cloudmark as a result of his alleged breach of the PIIA. Indeed, the alleged breach occurred upon and after the termination of his employment.

[4] Lemarié has not challenged plaintiffs' claim that they are entitled to recover sums they assertedly lost as a result of Lemarié's alleged breach, a basis for relief disclosed to Lemarié in an answer to an interrogatory (see Budaj Decl. Ex. I at 59) and also in an expert report (see id. Ex. J ¶¶ 75-77).

Accordingly, to the extent plaintiffs' claim for monetary relief is based on their recovering the compensation Lemarié was paid as an employee of Cloudmark, Lemarié is entitled to summary judgment.

**B. Count III – "Failure to Disclose Inventions"**

In Count III, plaintiffs allege Lemarié violated the terms of the PIIA by not disclosing to Cloudmark "inventions" he developed. (See FAC ¶¶ 91.)

The provision of the PIIA setting forth Lemarié's obligations with respect to disclosing inventions reads, in relevant part, as follows:

> During the period of my employment and for six (6) months after termination of my employment with the Company, I will promptly disclose to the Company fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others.

(See Budaj Decl. Ex. H ¶ 2.5.)

Lemarié contends he is entitled to summary judgment, pointing out plaintiffs' failure to identify in discovery any invention he did not disclose. (See id. Ex. I at 70.) In opposition, plaintiffs argue a triable issue of fact exists in light of statements made by Lemarié in the course of discovery, namely, his interrogatory response that, "[s]ince 2018, [he] has continued to run his Cloudmark Gateway MTA product on an online server only as a honeypot[,] [which] server is open and continuously receiving spam emails from the internet for purposes of conducting his own personal research," and that he has "determined it is possible to create a honeypot receiving hundreds of thousands of emails per day." (See Cheng Decl. Ex. 1 at 9-10.) Even assuming the above response describes an "invention" within the meaning of the PIAA, however, it does not support a finding that Lemarié violated ¶ 2.5, as plaintiffs offer no evidence to dispute Lemarié's statement therein that any such invention was conceived no earlier than 2018 (see id.), a date more than six months after November 11, 2016, the date on which Lemarié's employment with Cloudmark was terminated.

//

//

Plaintiffs next argue summary judgment should not be granted because, they contend, they cannot determine the timing of the above-described research, "in light of Lemarié's destruction of relevant files." (See Pls.' Opp. at 13:20-21.) Plaintiffs have not, however, identified any document they believe would show, had it not been destroyed, the asserted invention was conceived during the six-month period following the termination of Lemarié's employment with Cloudmark, nor have they identified any other potential evidence warranting denial of summary judgment.

Accordingly, Lemarié is entitled to summary judgment on Count III.[5]

**C. Count IV – "Failure to Maintain and Make Available Cloudmark Company Records"**

In Count IV, plaintiffs allege Lemarié violated the terms of the PIIA by not "making available" to Cloudmark "Proprietary Information" that, during his employment with Cloudmark, he "stored" in an "online file storage account registered through Evernote." (See FAC ¶¶ 99-100.) Plaintiffs allege Lemarié failed to make the subject information available, in that, on June 28, 2019, plaintiffs discovered Lemarié had "implemented access restrictions to prevent Cloudmark and its employees from accessing the contents of the Evernote account" and, "a few days later," found he had "deleted those contents altogether." (See id.)[6]

The provision of the PIIA setting forth Lemarié's obligations with respect to maintaining and making proprietary information available to Cloudmark reads as follows:

---

[5] Subsequent to the briefing on the instant motion, Magistrate Judge Robert M. Illman, on June 1, 2021, issued a Report and Recommendation, in which he found defendants engaged in spoliation of various documents (see Doc. No. 566 at 14:21-27) and recommends the Court instruct the jury to, inter alia, "presume that the lost or withheld information was unfavorable to [d]efendants" (see id. at 19:4-6). If this Court adopts the Report and Recommendation, plaintiffs may seek reconsideration of its finding as to Count III.

[6] Plaintiffs do not allege Lemarié took any steps, during his employment with Cloudmark, to limit Cloudmark employees' access to the proprietary information stored in his Evernote storage account. Indeed, plaintiffs have offered evidence to show Lemarié did make that information available to Cloudmark employees during his employment. (See Cheng Decl. Ex. 10.)



United States District Court
Northern District of California

> I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) of all Proprietary Information developed by me and all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times.

(See Budaj Decl. Ex. H ¶ 3.)

Lemarié argues plaintiffs lack evidence to support a finding that he breached the above-quoted provision in the PIIA. In support of such argument, Lemarié offers evidence that, in October 2014, he created a "notebook" in a "personal" account he had with Evernote (see id. Ex. E at 10:8-11, Ex. F),[7] that he labelled the notebook "DNS Security," (see id. Ex. E at 10:11), that the purpose of the notebook was to "share content with certain other Cloudmark employees" (see id. Ex. E at 10:11-12), and that he made the contents of the notebook accessible to five other Cloudmark employees (see id. Ex. E at 10:13-16; Ex. F).

Additionally, Lemarié offers evidence that, at the time he left Cloudmark in 2016, "he was not aware of anyone at [Cloudmark] working on this project, and it appeared to [him] that Cloudmark had abandoned it" (see id. Ex. E at 10:17-19), that he deleted "all Cloudmark files and information that he could find" in his "Evernote account" (see id. Ex. E at 10:20-22), that he advised "IT" he had deleted such information (see id. Ex. E at 10:23), and that IT "declined" his invitation to "review his personal devices and accounts to confirm his deletion of that information" (see id. Ex. E at 10:23-25), after which, in 2018, he "happened across the DNS Security notebook in his Evernote account" (see id. Ex. E at 11:3-4), and, "realiz[ing] it had been accidentally, passively retained," he "immediately deleted" the notebook (see id. Ex. E at 11:5).[8]

//

---

[7] Lemarié describes Evernote as a company that provides "applications and tools for notetaking and information." (See id. Ex. E at 10:3-4.)

[8] As noted, plaintiffs allege Lemarié deleted the contents of the DNS Security notebook in 2019. (See FAC ¶ 99-100.) For purposes of resolving the issues presented by the instant motion for summary judgment, however, such discrepancy is immaterial.

Lemarié argues the obligations set forth in ¶ 3 of the PIIA ceased at the time his employment with Cloudmark ended, and, consequently, he did not breach the provisions set forth in ¶ 3 when, after his employment ended, he (1) allegedly stopping making his personal Evernote account available to Cloudmark employees, and (2) concededly deleted the contents of the DNS Security notebook. As set forth below, the Court agrees.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." See Cal. Civ. Code § 1636. Here, as noted, the information covered by ¶ 3 consists of material "developed by" Lemarié "during the period of [his] employment" (see Budaj Decl. Ex. H ¶ 3), and it is readily ascertainable that the parties intended Lemarié have custody of such information in order to fulfill his work obligations. Plaintiffs fail to address, let alone explain, however, why the parties would have wanted Lemarié to continue to maintain and make available to Cloudmark its own property, or otherwise act as a custodian of Cloudmark's proprietary information, after he ceased his employment. Although Cloudmark has an obvious interest in a former employee's surrendering any proprietary information at the time such employee ends his employment, Cloudmark's interest in that regard is fully addressed by another provision of the PIIA, by which, as discussed below, an employee, upon termination of employment, is required to return to Cloudmark all of Cloudmark's property in his possession.

Accordingly, Lemarié is entitled to summary judgment on Count IV.

**D. Count V – "Failure to Deliver Materials Containing Cloudmark Proprietary Information"**

In Count V, plaintiffs allege Lemarié violated the terms of the PIIA by, at the time his employment with Cloudmark ended, failing to "deliver and return to Cloudmark all of the materials contained within the Evernote account." (See FAC ¶¶ 106-07.)

The provision of the PIIA setting forth Lemarié's obligations with respect to delivering and returning proprietary information to Cloudmark reads, in relevant part, as



United States District Court
Northern District of California

follows:

> When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions . . . or Proprietary Information of the Company.

(See Budaj Decl. Ex. H ¶ 6.)

In seeking summary judgment on Count V, Lemarié contends the evidence does not support a finding of breach, and, even if a breach has been shown, the relief plaintiffs seek is not available under state contract law.

**1. Breach: Contents of DNS Security Notebook**

Relying on the above-described evidence submitted in connection with Count IV, Lemarié argues it is undisputed he did not breach ¶ 6 of the PIIA when he allegedly failed to return the DNS Security notebook.[9] In particular, Lemarié contends, he "fulfilled his contractual obligation under any reasonable interpretation of ¶ 6" (see Def.'s Mot. at 7:18.5-19.5), because (a) other Cloudmark employees had access to the contents of the DNS Security notebook during his employment with Cloudmark, (b) he believed the project that was the focus of the DNS Security notebook had been abandoned by Cloudmark, and (c) Cloudmark's IT Department declined to review his account to confirm his belief he had deleted any Cloudmark information from his accounts. The Court is not persuaded.

As quoted above, ¶ 6 unambiguously required Lemarié, at the time his employment with Cloudmark ended, to "deliver" to Cloudmark all material, including copies, that contained or disclosed any Cloudmark inventions or proprietary information. (See Budaj Decl. Ex. H ¶ 6.) The evidence on which Lemarié relies, however, is

---

[9] In their answers to Lemarié's interrogatories explaining the factual basis for Count V, plaintiffs also identify source code and other documents Lemarié assertedly failed to deliver when he left Cloudmark. (See Budaj Decl. Ex. I at 64:8-65:7, 66:14-23, 100:4-18.) Lemarié does not address such additional documents in his moving papers. Although, in his Reply, Lemarié argues the scope of Count V should be limited to his alleged failure to deliver the contents of DNS Security notebook, the Court has not addressed that argument herein, as plaintiffs did not have an opportunity to respond to it.

insufficient to support a finding that he, in effect, "deliver[ed]" the contents of the DNS Security notebook to Cloudmark. In particular, given the undisputed deletion of the subject notebook, any such arguable delivery was dependent on there being a duplicate left with Cloudmark. Although, in his motion, Lemarié states he "confirm[ed] that other employees had all the files they required" (see Def.'s Mot. at 8:15-16), he offers no evidence to support that factual assertion.

Accordingly, Lemarié has failed to show he is entitled to summary judgment on the issue of liability.

**2. Monetary Relief**

In the FAC, and confirmed in plaintiffs' answers to Lemarié's interrogatories, plaintiffs seek, as remedies for Lemarié's alleged breach of ¶ 6, both monetary and equitable relief. (See FAC ¶¶ 101-02; Budaj Decl. Ex. I at 87-88.)

Lemarié again seeks summary judgment to the extent plaintiffs seek to recover all compensation he received as an employee of Cloudmark.[10] For the reasons set forth above with respect to Count II, Lemarié is entitled to summary judgment on that claim for relief.

Accordingly, to the extent plaintiffs' claim for monetary relief is based on their recovering compensation Lemarié was paid as an employee of Cloudmark, Lemarié is entitled to summary judgment.

**CONCLUSION**

For the reasons stated above, Lemarié's motion for partial summary judgment is hereby GRANTED in part and DENIED in part, as follows.

1. With respect to Counts III and IV, the motion is GRANTED.

2. With respect to Counts II and V, to the extent the motion seeks summary

[10] Lemarié has not challenged plaintiffs' claim that they are entitled to recover sums they assertedly lost as a result of Lemarié's alleged breach, a basis for relief disclosed to Lemarié in an answer to an interrogatory (see Budaj Decl. Ex. I at 100) and also in Dr. Arnold's expert report (see id. Ex. J ¶¶ 75-77).

judgment as to plaintiffs' claim for disgorgement of compensation paid by Cloudmark to Lemarié, the motion is GRANTED.

3. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: June 4, 2021

MAXINE M. CHESNEY
United States District Judge