United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROOFPOINT, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED, et al.,<br><br>Defendants. | Case No. 19-cv-04238-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF EXPERT WITNESSES** |

Before the Court is plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC's ("Cloudmark") Motion, filed April 23, 2021, "to Exclude Testimony of James Pooley, Anthony Ferrante, Christopher Bakewell, Dr. Paul Clark, and Dr. Aaron Striegel." Defendants Vade Secure, Inc. and Vade Secure SASU (collectively, "Vade Secure") and defendant Olivier Lemarié ("Lemarié") have filed opposition, to which plaintiffs have replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

By the instant motion, plaintiffs seek to exclude the testimony of five defense expert witnesses. The Court considers in turn the arguments made as to each expert.

**A. James Pooley**

James Pooley ("Pooley") has been retained by defendants to offer an opinion as to whether plaintiffs exercised "reasonable efforts" to protect their alleged trade secrets. (See Cheng Decl. [Doc. No. 462] Ex. 1("Expert Report of James Pooley") [Doc. No. 475-

---

[1] By order filed May 25, 2021, the Court took the matter under submission.

1] ¶ 4.)² At the outset, plaintiffs seek to preclude Pooley from offering any testimony, on the asserted ground that Pooley, an attorney, only has "specialized knowledge" as to "legal issues not appropriate for expert testimony." (See Pls.' Mot. at 1:5-7.)

Under Rule 702 of the Federal Rules of Evidence, a testifying expert must be "qualified as an expert by knowledge, skill, experience, training, or education." See Fed. R. Evid. 702. "Rule 702 contemplates a broad conception of expert qualifications," and is "broadly phrased and intended to embrace more than a narrow definition of qualified expert." See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (internal quotations and citations omitted).

Here, as defendants point out, Pooley, in addition to practicing law, has experience "in the design and management of systems for trade secret management"; specifically, he has been engaged by clients "to advise on the design or improvement of secrecy management independently of any litigation." (See Cheng Decl. Ex. 1 ¶ 3; see also Zahoory Decl. [Doc. No. 512] Ex. 1 ("Deposition of James Pooley") [Doc. No. 510-5] at 72:13-74:24 (describing his "methodology" and "advisory work").) Additionally, for a five-year period ending in late 2014, he served as Deputy Director General of the World Intellectual Property Organization, an agency of the United Nations, where he was responsible for ensuring the secrecy of "approximately 200,000 confidential [documents]" annually. (See Cheng Decl. Ex. 1 ¶ 3.) In light of such showing, the Court finds Pooley is not disqualified on grounds of lack of expertise.

Next, plaintiffs object to Pooley's offering an opinion that plaintiffs "have failed to demonstrate reasonable efforts . . . to protect the trade secrets." (See id. Ex. 1 ¶ 10.) In particular, plaintiffs argue, Pooley's use of the word "demonstrate" constitutes an

---

² Plaintiffs assert, as to Count I, a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-39. Under the DTSA, the plaintiff must show, inter alia, it "has taken reasonable measures" to keep "secret" the information that constitutes the asserted trade secret. See 18 U.S.C. § 1839(3)(A). In his report, Pooley uses the terms "reasonable efforts" and "reasonable measures" interchangeably. (See, e.g., Cheng Decl. Ex. 1 ¶¶ 10, 64.)

1 improper legal comment on their evidentiary burden. Although Pooley, of course, cannot
2 frame his opinion as a comment on whether plaintiffs have met their burden of proof, the
3 Court does not understand Pooley to be offering a legal opinion, but, rather, an opinion
4 that the evidence in the record he reviewed does not show plaintiffs took reasonable
5 measures. (See id. Ex. 1 ¶ 5 & Ex. B thereto (identifying deposition testimony and other
6 discovery he considered).)

Accordingly, to the extent plaintiffs seek to exclude Pooley's testimony, the motion will be denied.

## B. Anthony Ferrante

Anthony Ferrante ("Ferrante") is an "expert in the cybersecurity field" who has been retained by Vade Secure to offer an opinion as to whether plaintiffs took "reasonable measures" to protect the alleged trade secrets. (See id. Ex. 4 ("Expert Rebuttal Report of Anthony J. Ferrante") ¶¶ 1-3). Plaintiffs seek to preclude Ferrante from offering any testimony, on the asserted ground Ferrante, in his report, applied an incorrect legal standard, namely, that plaintiffs did not employ "best practices," an analysis that, according to plaintiffs, entails a "standard much higher" than the "reasonable measures" standard set forth in the DTSA. (See Pls.' Mot. at 8:12-13.) As discussed below, however, plaintiffs misread Ferrante's report.

In a section titled "Summary of Opinions," Ferrante begins by setting forth his opinion that "Cloudmark lacked oversight and control over its people, processes, and technology and thus was not taking reasonable measures to ensure protections for what it claimed to be its trade secrets" (see Cheng Decl. Ex. 4 ("Expert Rebuttal Report of Anthony J. Ferrante") at 3), after which he identifies "basic parameters that employers should use to protect company data" and that, in his opinion, Cloudmark failed to use (see id.). Although he also identifies what he refers to as "best practices" (see id. Ex. 4 at 7), his opinion that Cloudmark did not employ reasonable measures is not based on its alleged failure to engage in "best practices" nor does he equate the two terms. Rather, as he explained in his deposition: "Best practices are . . . quite certainly a step above

3

1 reasonable measures."  (See id. Ex. 5 ("Deposition of Anthony Ferrante") at 132:10-16.)

2 Accordingly, to the extent plaintiffs seek to exclude Ferrante's testimony, the
3 motion will be denied.

### C. Christopher Bakewell

Christopher Bakewell ("Bakewell") provides "consulting services involving valuation and related issues in connection with technology-rich businesses and intellectual property" (see id. Ex. 7 ("Rebuttal Expert Report of W. Christopher Bakewell") ¶¶ 1, 9) and has been retained by defendants to "analyze remedies" and "analyze damages," in the event liability is established (see id. Ex. 7 ¶¶ 1, 3).  Plaintiffs seek to preclude Bakewell from offering some of the opinions set forth in his report, which challenged opinions the Court next addresses.

#### 1. Cost Deductions

Plaintiffs' damages expert Jonathan Arnold, Ph.D., has opined that Vade Secure was "unjust[ly] enriched" in the amount of "$34.5 million to $36.5 million," which figures represent the gross revenue earned by Vade Secure from sales of the challenged products.  (See Zahoory Decl. Ex. 2 ("Supplemental Expert Report of Jonathan Arnold, Ph.D") ¶¶ 50-51 & Ex. B attached thereto.)  In response, Bakewell offers the opinion that, when the costs attributable to the challenged products, i.e., the products alleged to use plaintiffs' trade secrets, are subtracted from the gross revenue attributable to those products, "Dr. Arnold's unjust enrichment [sum]" is $2,223,946 to $2,386,727.  (See Cheng Decl. Ex. 7 & Exs. 1.0-1.1 attached thereto.)  In support thereof, Bakewell states he "performed an analysis to determine the correlation of [the] cost categories to net sales" (see id. Ex. 7 ¶ 141), and, in particular, that he determined the amount of costs attributable to the challenged products by using the percentage of gross sales attributable to the challenged products, a figure provided by Vade Secure, and then determining the costs attributable to those products by applying that percentage to the total costs for all products.

//

Plaintiffs, citing a number of district court cases, seek to exclude Bakewell's opinion as to the above-referenced "cost deductions" (see Pls.' Mot. at 10:6), on the asserted ground that "use of correlation analysis in these circumstances" is "unreliable and misleading" (see id. at 11:11.5-12.5).[3] Although the cited authorities (see id. at 11:13.5-17.5) do not address the use of correlation analysis in circumstances factually similar to those presented here, Vade Secure, like the proponents of the opinions offered in those cited cases, has not shown, through the opining expert or otherwise, that the challenged "methodology" is "scientifically valid," see Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993), e.g., whether, under circumstances where a company produces both challenged and unchallenged products, there exists a correlation between the percentage of sales attributable to the challenged products and the percentage of costs attributable to those products. Consequently, on the record presented, the Court is not in a position to determine whether Bakewell's opinion as to the amount of deductible costs "will help the trier of fact . . . determine a fact in issue." See Fed. R. Evid. 702(a).

Accordingly, to the extent plaintiffs seek to exclude Bakewell's opinion as to the amount of deductible costs, the Court will issue a protective order precluding defendants from referring to such opinion, in opening statement or otherwise, or calling Bakewell to offer it, until such time as defendants have made a showing that such opinion meets the requirements of Rule 702 and Daubert.[4]

//

//

//

---

[3] In their motion, plaintiffs also assert that their damages expert was unable to "replicate[ ] or reproduce[ ]" the "results" of Bakewell's correlation analysis. (See id. at 12:5-6.) As Vade Secure points out, however, plaintiffs offer no evidence in support of such assertion.

[4] The parties are directed to meet and confer to determine when in the proceeding a further inquiry into the matter should be conducted.

### 2. Value of Alleged Trade Secrets

In his report, Bakewell offers the opinion that, if defendants are found liable for trade secret infringement, an appropriate remedy is "the value of [plaintiffs'] alleged trade secrets (or a reasonable royalty)." (See Cheng Decl. Ex. 7 ¶ 86.) According to Bakewell, in a "hypothetical negotiation" for a royalty, the hypothetical licensee "would reasonably pay up to the value of (but not above) the asset" (see id. Ex. 7 ¶ 190), and, in the instant case, he calculates the value of the alleged trade secrets to be "no more than approximately $600,000" (see id. Ex. 7 ¶ 208).

In arriving at that figure, Bakewell calculated the labor costs Vade Secure would have incurred had it acted without knowledge of the alleged trade secrets and, using its own employees, developed the challenged components. (See id. Ex. 7 ¶¶ 200-08.) Specifically, with regard to Vade Secure O365 and Vade Secure Content Filter, Bakewell calculated the hypothetical labor costs to Vade Secure as ranging from a low of $16,800 to a high of $24,500 (see id. Ex. 7 ¶ 202-05, 207), and in the alternative as to the O365, he calculated those costs to be $53,000, the amount Vade Secure paid a third party, Zenika, to recreate, "without any access to the allegedly misappropriated trade secrets," the challenged module used therein (see id. Ex. 7 ¶ 200). With respect to Vade Secure MTA Builder, Bakewell, again relying on the amount of time it would have taken a Vade Secure developer to recreate the challenged components, calculated Vade Secure's hypothetical labor costs to be $517,000. (See id. Ex. 7 ¶ 206.) Plaintiffs argue Bakewell's opinion as to the value of the alleged trade secrets should be excluded. As set forth below, the Court disagrees.

To the extent Bakewell offers opinions as to Vade Secure's labor costs had its own employees created the challenged components, plaintiffs, noting Bakewell did not "describe any of the purported 'recreations'" and did not "discuss the availability or acceptability of the purported 'recreations,'" contend they were "deprived of their opportunity to test the bases and foundation of . . . Bakewell's opinions." (See Pls.' Mot. at 14:25.5-15:8.) As a damages expert, however, Bakewell did not himself determine the

nature of the work constituting the recreations or the number of hours such projects would entail. Rather, he relied on information provided by others, specifically, his "interviews" of defendants' technical experts, Paul Clark, D.Sc. ("Dr. Clark") and Aaron Striegel, Ph.D. ("Dr. Striegel") (see Cheng Decl. Ex. 7 at 68 nn. 382-83, 388 & 69 nn. 392-94; see also id. Ex. 13 ("Deposition of William Christopher Bakewell") at 147:5-148:18). A damages expert's reliance on others for underlying facts is both common and acceptable, and, as plaintiffs deposed both Dr. Clark and Dr. Striegel (see id. Exs. 9, 11), plaintiffs had the opportunity to test the assumptions underlying Bakewell's opinion.

Lastly, to the extent Bakewell used the amount Vade Secure paid Zenika to create what plaintiffs refer to as the "Zenika module" (see Pls.' Mot. at 14:4), plaintiffs assert the "Zenika module is in fact accused of misappropriation" (see id.), and, consequently, that the price Vade Secure paid Zenika is not probative of the value of plaintiffs' trade secrets. As Bakewell explained at his deposition, however, he provided such alternative opinion for use only in the event the jury determines the Zenika module is not the result of misappropriation. (See Cheng Decl. Ex. 13 at 140:13-23, 156:17-157:14.)

Accordingly, to the extent plaintiffs seek to exclude Bakewell's opinions as to a reasonable royalty, the motion will be denied.

**D. Paul Clark, D.Sc.**

Dr. Clark has been retained by defendants as a "technical expert witness" to offer opinions "regarding the value and proprietary nature of the information alleged as trade secrets." (See id. Ex. 8 [Doc. No. 475-12] ("Rebuttal Expert Report of Paul C. Clark, D.Sc.") 8 ¶¶ 1-2.)[5] Plaintiffs seek to preclude Dr. Clark from offering his opinion that the information comprising each of the trade secrets identified by plaintiffs as Trade Secrets 1(a)-(g), 2(a), 4(a)-(b), and 5(a)-(e) is "publicly and generally known" (see id. Ex. 8

---

[5] Dr. Clark "received a . . . Doctor of Science in Computer Science" and has worked as an engineer, a scientist, and currently is the President of a company that "has specialized in the design, implementation, and deployment of advanced secure network applications for commercial and government clients." (See id. Ex. 8 ¶¶ 6-8, 11.)

7

¶¶ 113-14, 123-24, 132-33, 137-38, 147-48, 166-67, 171-172, 218-19, 302-03, 307-08, 355-57, 364-66, 378-79) and, as such, does not "derive independent economic value from being kept secret" (see id. Ex. 8 ¶¶ 181, 233-34, 318, 392).[6] In challenging those opinions, plaintiffs set forth two separate grounds for exclusion, which the Court addresses in turn.

**1. Support for Opinions**

Plaintiffs first contend Dr. Clark's report "fails to cite any explanation or documentary evidence in support [thereof]." (See Pls.' Mot. at 16:10-11.) Contrary to such contention, however, Dr. Clark, for each asserted trade secret he discusses, has identified not only the publication(s), but also the specific page(s) therein in which he believes the information comprising the asserted trade secret has been disclosed (see, e.g., Cheng Decl. Ex. 8 ¶¶ 74-98, 100-111 (setting forth bases for opinions contained in ¶¶ 113 and 114)),[7] and, to the extent plaintiffs may be contending the cited publications do not, in fact, disclose their asserted trade secrets, such argument pertains to the weight, not the admissibility, of Dr. Clark's opinions. See Kennedy v. Collagen Corp., 161 F.3d 1226, 1230-31 (9th Cir. 1998) (noting, where expert's opinion meets Daubert requirements, "[d]isputes as to the . . . lack of textual authority for [such] opinion . . . go to the weight, not the admissibility, of his testimony") (internal quotation and citation omitted).

Accordingly, to the extent plaintiffs seek to exclude Dr. Clark's opinions on the ground he did not provide any explanation or documentary evidence in support thereof, the motion will be denied.

---

[6] Under the DTSA, the plaintiff must show that the information it alleges is a trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." See 18 U.S.C. § 1839(3).

[7] The Court has not set forth in more detail herein the bases for Dr. Clark's opinions, in light of plaintiffs' pending motion to file those opinions under seal.

8

**2. Obviousness**

Plaintiffs also argue the above-referenced opinions by Dr. Clark should be excluded because, according to plaintiffs, he "appear[s] to conflate the test for whether information is publicly known or readily ascertainable under trade secret law with an obviousness analysis for novelty under patent law." (See Pls.' Mot. at 16:21-23.)[8]

In support thereof, plaintiffs cite to the following testimony given by Dr. Clark at his deposition:

> Q: Is it your understanding that a trade secret has to be nonobvious to be protectable as a trade secret?
>
> [Objection deleted]
>
> A: I don't believe that the statute requires obvious or nonobvious. It's a question of whether or not it's secret.
>
> Q: Okay. So in, in other words, it wouldn't be your understanding that the trade secret is protectable only if it would not have been obvious to combine certain references to arrive at the trade secret?
>
> A: No, that's not what I said, but I appreciate you trying to characterize it that way, and I understand why, but if you're trying to claim that a sequence of steps – which is what you're trying to do --  is a trade secret, it's not, because the order matters, and the fact of whether people in the industry knew it or not matters.
>
> Q: So it's your understanding – you would agree that the test is not whether it would have been obvious to combine certain things, certain references or certain known steps in the relevant field in order to determine whether something is a trade secret?
>
> A. If something was obvious to one of skill and they were trying to accomplish the same task, then it would not be protectable, because it's not secret, because the sequence of steps or just the steps themselves would be known, but the word 'obvious' doesn't appear in the statute.

(See Cheng Decl. Ex. 9 [Doc. No. 475-13] ("Deposition of Paul C. Clark, D.Sc.") at 55:4-56:13.)

Although plaintiffs focus on Dr. Clark's use of "obvious" in the last answer given in

---

[8] Under patent law, a patent is invalid based on obviousness when the "differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." See 35 U.S.C. § 103(a).

9

1  the above-cited excerpt, nothing in that answer suggests Dr. Clark thought the issue of
2  whether information constitutes a trade secret can be resolved by reference to principles
3  applicable to patent law. Rather, the Court understands Dr. Clark's description of
4  "something" as "obvious" to be a reference to information that is "generally known." See
5  18 U.S.C. § 1839(3) (defining "trade secret" as "information [that] derives independent
6  economic value . . . from not being generally known to, and not being readily
7  ascertainable through proper means by, another who can obtain economic value from
8  [its] disclosure").

9  Accordingly, to the extent plaintiffs seek to exclude Dr. Clark's opinions on the
10 ground he "conflated" trade secret and patent law, the motion will be denied.

**E. Aaron Striegel, Ph.D.**

Dr. Striegel has been retained by defendants to offer opinions "regarding the trade secret misappropriation and copyright infringement allegations" (see Cheng Decl. Ex. 10 [Doc. No. 475-14] ("Rebuttal Expert Report of Dr. Aaron Striegel") ¶¶ 1, 3), in particular, his opinions as to whether there was any misappropriation or infringement (see id. Ex. 10 ¶ 35).[9] Plaintiffs seek to preclude Dr. Striegel from offering some of those opinions.

Plaintiffs first seek to preclude Dr. Striegel from offering the opinions, set forth in thirty-seven paragraphs of his report, that some of the information comprising plaintiffs' asserted trade secrets is "known." (See Pls.' Mot. at 17:26-28.) According to plaintiffs, those opinions should be excluded as conclusory because Dr. Striegel relies on "undisclosed 'discussions' with Dr. Clark." (See id.) Although Dr Striegel does state, as to each of a number of asserted trade secrets, that he is in accord with Dr. Clark as to the information comprising the asserted trade secrets being known generally and thus, in Dr. Striegel's opinion, not misappropriated, Dr. Striegel's use of such short-hand does not

---

[9] Dr. Striegel is a Professor at the University of Notre Dame who has "over 20 years of coding experience, . . . over 20 years of experience with computer networks[,] and over 18 years of experience with computer security topics." (See id. Ex. 10 ¶¶ 6, 16.)

10

1 require exclusion, given that the opinions he essentially adopts by reference adequately
2 address each such asserted trade secret and identify the publication(s) in which it can be
3 found.

Plaintiffs next cite to fifty-three paragraphs in Dr. Striegel's report that plaintiffs describe as "unsupported" and "conclusory" (see id. at 18:4-12), and, for that asserted reason, seek to preclude Dr. Striegel from offering any opinion proffered in those paragraphs. In so moving, however, plaintiffs single out for discussion only one of those paragraphs, which paragraph the Court next addresses.

Plaintiffs argue that, during his deposition, Dr. Striegel, according to plaintiffs, "admitted that he had not cited any specific support" for the opinion offered in ¶ 46 of his report.[10] (See id. at 18:9-11 (citing Cheng Decl. Ex. 11 ("Deposition of Aaron Striegel") [Doc. No. 475-15] at 98:3-99:9).) To the extent plaintiffs, by such argument, are suggesting Dr. Striegel conceded he had no support for his opinion, the Court disagrees; Dr. Striegel did no more than acknowledge that, in offering such opinion, he did not cite to "a specific document" (see Cheng Decl. Ex. 11 at 99:5-7), and, indeed, in ¶ 46, he sets forth in detail the basis for his opinion (see id. Ex. 10 ¶ 46). To the extent plaintiffs, in quoting Dr. Striegel's testimony that he was "drawing on [his] own expertise" (see Pls.' Mot. at 18:10 (quoting Cheng Decl. Ex. 11 at 98:3-99:9)), may be suggesting an individual's knowledge and experience obtained from work in a particular field is, standing alone, insufficient to support an expert opinion or that Dr. Striegel failed to elaborate beyond citing to his "expertise," the Court again disagrees. See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc., 618 F.3d 1025, 1034 (9th Cir. 2010) (holding district court erred by not allowing witness, who had substantial experience in industry at issue, to offer expert opinion based on his knowledge of industry practices); (see also Cheng Decl. Ex. 11 at 99:7-10, 100:8-11 (relying on "having done a

---

[10] The Court has not set forth herein those opinions or the bases therefor, in light of plaintiffs' pending motion to file under seal the entirety of ¶ 46.

11

significant body of work in secure gateways" and "experience with regards to using machine learning"); see id. Ex. 10 ¶ 46 (explaining basis for opinion specified information was well known).) Under such circumstances, the Court finds plaintiffs have not shown the opinion offered in ¶ 46 is inadmissible.

As to the remaining fifty-two paragraphs plaintiffs challenge, plaintiffs make a general argument that the opinions stated therein are "unsupported conclusory allegations" that the asserted trade secrets are "well-known or best practices in the industry," "widely used," "routinely used," or "expected." (See Pls.' Mot. at 18:4-7.) Contrary to plaintiffs' description, however, Dr. Striegel does not simply offer those opinions without explanation. (See, e.g., Cheng Decl. Ex. 10 ¶¶ 40, 145, 201, 321 (citing specified publications); see, e.g., id. Ex. 10 ¶¶ 148, 149, 298-99) (describing how information is used in field).)

Accordingly, to the extent the motion seeks to preclude Dr. Striegel from offering the above-described opinions, the motion will be denied.

## CONCLUSION

For the reasons stated above, plaintiffs' motion, with the exception of a protective order with respect to Bakewell's opinions concerning the amount of deductible costs, is hereby DENIED.

**IT IS SO ORDERED.**

Dated: June 24, 2021

MAXINE M. CHESNEY
United States District Judge