1
2
3               IN THE UNITED STATES DISTRICT COURT
4            FOR THE NORTHERN DISTRICT OF CALIFORNIA
5
6    PROOFPOINT, INC., et al.,              Case No.  19-cv-04238-MMC
7                    Plaintiffs,
                                            **ORDER DENYING VADE SECURE'S**
8          v.                               **MOTION FOR PARTIAL SUMMARY**
                                            **JUDGMENT**
9    VADE SECURE, INCORPORATED, et
     al.,
10                  Defendants.
11
12         Before the Court is Vade Secure, Inc. and Vade Secure SASU's (collectively,

13   "Vade Secure") Motion, filed April 23, 2021, for Partial Summary Judgment.[1]  Plaintiffs

14   Proofpoint, Inc. and Cloudmark LLC have filed opposition, to which Vade Secure has

15   replied.  Having read and considered the parties' respective written submissions, the

16   Court rules as follows.[2]

17         By the instant motion, Vade Secure seeks summary judgment on certain of

18   plaintiffs' trade secret misappropriation claims and on each of plaintiffs' copyright

19   infringement claims.

20   **A.  Misappropriation of Trade Secrets (Count I)**

21         At the outset, Vade Secure contends plaintiffs have not sufficiently identified what

22   Vade Secure refers to as "five categories of technical trade secrets" listed in plaintiffs'

23   responses to interrogatories.  (See Defs.' Mot. at 8:25.)

24         A plaintiff must "describe the subject matter of the trade secret with sufficient

25

26         ───────────────────
           [1] On April 24, 2021, defendant Olivier Lemarié filed a notice of joinder in Vade
27   Secure's motion.

28         [2] By order filed May 25, 2021, the Court took the matter under submission.

particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the art," see InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 658 (9th Cir. 2020), the purpose of such requirement being to "enable defendants to form complete and well-reasoned defenses," see Prolifiq Software, Inc. v. Veeva Systems Inc., 2014 WL 2527148, at *3 (N.D. Cal June 4, 2014).

Here, plaintiffs' technical experts have described in detail the five categories of technical trade secrets to which the instant challenge is made. (See Zahoory Decl. Ex. 3 ("Corrected Expert Report of Seth James Nielson, Ph.D.") ¶¶ 204-214, 252-53, 255-56, 260-62, 265-66, 281-85, 297-302, 308-310, 312-20, 332-36, 338, 341-46, 348-50, 353-62); Ex. 7 ("Opening Expert Report of John R. Black, Jr., Ph.D.") & Ex. 5 thereto ¶¶ 1-22, 23-36, 40-67)), and defendants' technical experts were able to use those descriptions to "craft detailed arguments for why [plaintiffs'] information does not constitute trade secrets," see Prolifiq Software, 2014 WL 2527148, at *3. In particular, defendants' experts have set forth at length why, in their opinion, plaintiffs' asserted technical trade secrets are "publicly and generally known" (see, e.g., Zahoory Decl. Ex. 25 ("Rebuttal Expert Report of Paul C. Clark, D.Sc.") ¶¶ 113-14) and/or that there is no evidence that any "implicated code was incorporated into [Vade Secure's] products" (see id. Ex. 2 ("Rebuttal Expert Report of Dr. Aaron Striegel") ¶ 35).

Accordingly, to the extent Vade Secure's challenge is based on an asserted failure to identify trade secrets, the motion will be denied. The Court next turns to Vade Secure's additional arguments.

### 1. Content Filter

As a separate ground for summary judgment, Vade Secure contends plaintiffs lack evidence to base their trade secret misappropriation claim on Vade Secure's Content Filter product.

In particular, Vade Secure argues, James Nielson, Ph.D. ("Dr. Nielson"), plaintiffs' technical expert, testified he examined the "Content Filter code" and was unable to locate any assertedly misappropriated information therein. (See id. Decl. Ex. 23 ("Deposition of

Seth James Nielson, Ph.D.") 162:11-164:15.)  In response, however, plaintiffs point to Dr. Nielson's report, in which he states such misappropriation can be inferred from the code produced by Vade Secure in discovery (see id. Ex. 3 ¶¶ 275-76, 278); additionally, plaintiffs contend, defendants have essentially acknowledged such use (see Lordgooie Decl. Ex. 11 at 26-27, Ex. 14 at VS_0000024415-16, Ex. 15 at 14).[3]  Although plaintiffs' evidence may be countered at trial, "the strength of the evidence is a question for the jury, not for the court on summary judgment," even where "a plaintiff's case is weak and the result seems clear."  See Perez v. Curcio, 841 F.3d 255, 258 (9th Cir. 1988).

Accordingly, to the extent Count I is based on a claim that Content Filter uses plaintiffs' trade secrets, the Court finds a triable issue exists and, consequently, Vade Secure has not shown it is entitled to summary judgment.

**2. Current O365 Product**

As a separate ground for summary judgment, Vade Secure contends it is undisputed that, after the instant action was filed, Vade Secure hired a third party to replace the accused "module" in Vade Secure's O365 product (see Defs.' Mot. at 17:12-14; Pls.' Opp. at 19:22-23), and, according to Vade Secure, plaintiffs lack evidence to base their trade secret misappropriation claim on the current version.

In response, plaintiffs point both to Dr. Nielson's report, in which he opines that "certain design choices for the new [module] were derived from [Vade Secure's] knowledge of" plaintiffs' trade secrets (see Zahoory Decl. Ex. 3 ¶ 273), and to the evidence on which he relies in forming that opinion, namely, the specifications Sebastien Goutal ("Goutal"), Vade Secure's Chief Science Officer, gave to said third party developer (see id. Ex. 6 at 5), which specifications, plaintiffs argue, were informed by Vade Secure's access to and knowledge of information constituting plaintiffs' trade secrets (see Lordgooie Decl. Ex. 19, Ex. 21 ("Deposition of Sebastien Goutal") at 175:22-176:3,

---

[3] The Court has not set forth in greater detail herein the nature of the evidence cited by plaintiffs, in light of the parties' respective pending motions to file such evidence under seal.

3

219:6-221:21, Ex. 22). [4] See BladeRoom Group Ltd. v. Facebook, Inc., 2018 WL 514923, at *9 (N.D. Cal. January 23, 2018) (noting, "in the context of trade secret misappropriation, information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified") (internal quotation and citation omitted).

Accordingly, to the extent Count I is based on a claim that the current version of O365 uses plaintiffs' trade secrets, the Court finds a triable issue exists and, consequently, Vade Secure has not shown it is entitled to summary judgment.

### 3. Conclusion: Count I

Vade Secure has not shown it is entitled to summary judgment on Count I.

## B. Copyright Infringement (Count VI)

Plaintiffs' copyright infringement claim is based on an allegation that defendants copied plaintiffs' "software, related source code, and computer programs," which material is contained in four separate registrations effective as of August 2020. (See FAC ¶¶ 112-14.) Vade Secure, in seeking summary judgment on all said works, contends those registrations are invalid because, according to Vade Secure, plaintiffs knowingly included inaccurate information in their applications for registration.

To prevail on a claim of copyright infringement, a plaintiff must prove "ownership of a valid copyright." See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 959 F.3d 1194, 1197 (9th Cir. 2020) (internal quotation and citation omitted). Although "a registration certificate issued by the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a plaintiff's copyright," possession of such a certificate "does not satisfy the Copyright Act's registration requirement if the registrant secured the registration by knowingly including inaccurate information in the application for copyright registration that, if known by the Register of Copyrights, would have caused it to deny registration." Id.

---

[4] The Court has not set forth in greater detail herein the nature of the evidence cited by plaintiffs, in light of the parties' respective pending motions to file such evidence under seal.

United States District Court
Northern District of California

Here, Vade Secure argues, plaintiffs knowingly and inaccurately stated in their applications that the works sought to be registered were unpublished.  In response, plaintiffs do not disagree that their applications describe the works as unpublished; rather, they contend a "factual dispute" exists as to whether the works were "published." (See Pls.' Opp. at 23:10-11.)

"Publication" is defined as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  See 17 U.S.C. § 101.[5]  As the Register of Copyrights has explained, "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."  See Compendium of U.S. Copyright Office Practices ¶ 1905.1; see, e.g., DBT Group, Inc. v. FMC Corp., 2001 WL 11105077, at *4 (N.D. Ill. September 19, 2001) (holding software plaintiff provided to defendant under license agreement was "unpublished," where "agreement contained strict provisions regarding use of the Software and required prior consent from [plaintiff] before the Software could be distributed to any third parties").

In support of its motion, Vade Secure, relying on licensing agreements between Cloudmark and other entities (see Zahoory Decl. Exs. 30-31)[6] contends Cloudmark, prior to plaintiffs' applying for copyright registration, published the subject works by distributing them to customers.  As plaintiffs point out, however, each agreement contained restrictions on the recipient's use of the work.  In particular, the first such agreement, titled "End-User License Agreement," states the licensee "shall not (and shall not allow any third party to) . . . distribute, sell, sublicense, rent, lease or use the Software (or any

---

[5] "Publication" is also defined as "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display."  See id.  Vade Secure does not rely on this alternative definition of "publication."

[6] Although Vade Secure cites two such agreements as examples, it has not offered evidence to show any works identified in plaintiffs' copyright applications were distributed under terms differing from those in the cited agreements.

portion thereof) for time sharing, hosting, service provider or like purposes" (see id. Ex. 30 ¶ 1.4), and the second such agreement, titled "Software Evaluation Agreement," states the licensee "shall not, and shall not authorizes others to, copy, make modifications to, translate, disassemble, decompile, reverse engineer, otherwise decode or alter, or create derivative works based on the Evaluation Software" (see id. Ex. 31 ¶ 3.0).  Given such restrictions, the Court agrees a triable issue of fact exists as to publication.

Accordingly, Vade Secure has not shown it is entitled to summary judgment on Count VI.

## CONCLUSION

For the reasons stated above, Vade Secure's motion for partial summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  June 29, 2021

MAXINE M. CHESNEY
United States District Judge