Peter M. Brody
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: 202-508-4612
Fax: 202-383-7777
peter.brody@ropesgray.com

Scott Taylor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199
Tel: 617-951-7013
Fax: 617-951-9000
scott.taylor@ropesgray.com

Shong Yin (CSB # 319566)
ROPES & GRAY LLP
1900 University Ave. Sixth Floor
East Palo Alto, CA 94303–2284
Tel: (650) 617–4078
Fax: (650) 617–4090
shong.yin@ropesgray.com

*Attorneys for Non-Party,*
General Catalyst Group Management, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ, INC.,<br><br>Defendants. | Case No. 3:19-cv-04238-MMC-RMI<br><br>**NON-PARTY GENERAL CATALYST'S MOTION TO QUASH OR MODIFY THE TRIAL SUBPOENA SERVED BY PLAINTIFFS** |

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Non-Party General Catalyst Group Management LLC ("General Catalyst") moves to quash or modify the Subpoena To Appear And Testify At A Hearing Or Trial In A Civil Action (the "Trial Subpoena"), served on June 28, 2021, by Plaintiffs Proofpoint Inc. and Cloudmark, Inc. (collectively, "Proofpoint" or "Plaintiffs"). As explained below, the Trial Subpoena must be quashed or modified because it would impose an undue burden on General Catalyst. To the extent that the Court does not quash the Trial Subpoena, General Catalyst requests that the Court modify the subpoena to allow for a video deposition in lieu of live testimony at trial or, alternatively, for General Catalyst to testify at trial remotely by video. Proofpoint does not oppose either option.

**MEMORANDUM IN SUPPORT OF NON-PARTY GENERAL CATALYST'S MOTION TO QUASH OR MODIFY THE TRIAL SUBPOENA SERVED BY PLAINTIFFS**

## I.   FACTUAL BACKGROUND

Beginning in or around early 2019, General Catalyst, a private equity firm that is not a party to this lawsuit, considered a potential capital investment in LLG Capital SAS, the corporate parent of Defendant Vade Secure SASU, which in turn is the corporate parent of Defendant Vade Secure Incorporated (the three entities collectively referred to as "Vade"). Declaration of Christopher McCain ("McCain Dec.") ¶ 3, D.I. 24, 26. On June 12, 2019, General Catalyst entered into an agreement with Vade that contemplated a financing in the amount of €70 million. McCain Decl. ¶ 5. Ultimately, however, General Catalyst did not move forward with the transaction, and did not make a capital investment in Vade (hereinafter, the "cancelled transaction"). *Id.* ¶ 6.

### A.   The February 2020 Subpoena

As part of its due diligence in connection with the cancelled transaction, General Catalyst requested, received, reviewed, prepared, and/or communicated about information from or relating to Vade. McCain Dec. ¶ 4. On or about February 18, 2020, General Catalyst received a subpoena from Proofpoint in the above-caption matter (the "February 2020 Subpoena"). *Id.* ¶ 7. The February 2020 subpoena effectively sought production of these materials received and/or created by General Catalyst in connection with the cancelled transaction, among other things. *See*

Declaration of Scott Taylor ("Taylor Decl."), Ex. A at 7-8. The February 2020 Subpoena also requested General Catalyst's deposition regarding similar topics. *See id.*, Ex. A at 9-10.

General Catalyst served objections to the scope of the February 2020 Subpoena on March 10, 2020, and subsequently negotiated with Proofpoint concerning the scope of the subpoena. The parties agreed that General Catalyst would produce documents relating to or concerning the transaction with Vade from a select group of custodians. Taylor Decl. ¶ 4. Between September 11, 2020 and January 9, 2021, in response to the February 2020 Subpoena, General Catalyst produced over 12,000 documents, totaling over 77,000 pages, relating to or concerning the cancelled transaction ("General Catalyst Document Production"). *Id.*; McCain Decl. ¶¶ 8-9. Proofpoint did not, however, take General Catalyst's deposition under the February 2020 Subpoena, despite having the opportunity to do so. McCain Decl. ¶ 10.

**B.     The Trial Subpoena**

On June 9, 2021, counsel for Proofpoint contacted General Catalyst's counsel to discuss the possible use of General Catalyst documents at trial and to request a declaration to authenticate the General Catalyst Document Production. *See* Taylor Decl., ¶ 5, Ex. B at 7. On June 25, 2021, General Catalyst provided the requested authentication declaration. *Id.*, Ex. B at 1; McCain Decl. ¶ 12.

On June 28, 2021, Proofpoint served a Subpoena to Appear and Testify at a Hearing or at Trial in a Civil Action ("Trial Subpoena") on General Catalyst. McCain Decl. ¶ 13; Taylor Decl., Ex. C. The Trial Subpoena requires, among other things, that General Catalyst testify regarding (A) products or future products developed, marketed, offered for sale, or sold by Vade (Topic No. 1); (B) any agreements between General Catalyst and Defendants (Topic Nos. 2-3); the cancelled transaction (Topic No. 4); (C) General Catalyst's document retention and destruction policies (Topic No. 5); and (D) the General Catalyst Document Production (Topic No. 6). Taylor Decl., Ex. C at 6. But in contrast to its broad scope, Proofpoint's counsel has represented to General Catalyst that it will withdraw the Trial Subpoena if all Defendants in the action will agree not to challenge the admissibility at trial of the General Catalyst documents produced in connection with the February 2020 Subpoena. *See id.*, ¶ 8, Ex. D at 4. In the absence of Defendants' agreement,

NON-PARTY GENERAL CATALYST'S MOTION TO QUASH OR MODIFY THE TRIAL SUBPOENA    2
SERVED BY PLAINTIFFS

1  however, Proofpoint will not limit the scope of the Trial Subpoena to cover only the foundation
2  for the General Catalyst documents.  Taylor Decl., Ex. D at 1.

3        **C.**       **General Catalyst's Potential Witnesses and COVID Policy**

4        The General Catalyst team that worked on the now-cancelled transaction between General
5  Catalyst and Vade were mostly, if not entirely, based out of General Catalyst's office in Boston,
6  Massachusetts.  Due to personnel departures over time, there are few remaining individuals
7  employed by or otherwise associated with General Catalyst with any substantive knowledge of
8  the cancelled transaction or related materials (i.e., the General Catalyst Document Production).
9  Those individuals are based out of General Catalyst's Boston office and reside in the Boston area.
10 McCain Decl. ¶¶ 14-16.

11       In addition, as a result of the COVID pandemic, General Catalyst has implemented a strict
12 work-from-home policy to ensure the health and safety of its employees.  Under that policy, which
13 remains in effect, employees are required to work remotely and are prohibited from working from
14 General Catalyst's physical offices.  In addition, under the policy business travel is restricted
15 except for significant business needs.  McCain Decl. ¶ 17.

16 **II.**       **ARGUMENTS AND AUTHORITIES**

17       **A.**       **Legal Standard**

18       Federal Rule of Civil Procedure 45(d) requires a party issuing a subpoena to "take
19 reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena,"
20 and charges the district court with the responsibility to "enforce this duty."  Fed. R. Civ. P.
21 45(d)(1).  Also of relevance here, a subpoena may only command a non-party to attend a trial
22 "within 100 miles of where the person resides, is employed, or regularly transacts business in
23 person," or "within the state where the person resides, is employed, or regularly transacts business
24 in person, if the person . . . would not incur substantial expense."  Fed. R. Civ. P. 45(c)(1)(A),

(B)(ii).[1] Thus, on timely motion, a court "must quash or modify a subpoena that," among other things, "subjects a person to an undue burden" or requires a person to attend trial beyond the proscribed geographical limits. Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv).

### B. The Trial Subpoena Imposes an Undue Burden on General Catalyst.

The Trial Subpoena should be quashed or modified because it subjects General Catalyst to undue burden. "[W]hether a subpoena is burdensome depends on the facts of the case." *Green v. Baca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005) (alteration in original) (citation omitted). In evaluating whether a burden to be imposed upon a witness is "undue," courts weigh the relevance of the expected testimony against the burdens associated with compliance. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014). "Although the party who moves to quash has the burden of persuasion . . . the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-CV-080082-LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012) (citation omitted). Importantly, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini*, 300 F.R.D. at 409 (citation and quotation omitted).

#### 1. The Trial Subpoena Compels an Excessive Travel Burden

General Catalyst has no employees within 100 miles of the Court, or within the State of California, who are knowledgeable concerning the cancelled transaction between General Catalyst and Vade and the information and materials thereto, namely the General Catalyst Document Production. McCain Decl. ¶¶ 14-16. Although General Catalyst has a presence in California through its office in San Francisco, the individuals with substantive involvement in the cancelled transaction were based out Boston—and most of those individuals are no longer employees of General Catalyst. The one General Catalyst employee with some relevant and

---

[1] A non-party can also be compelled to testify at trial more than 100 miles but "within the state where the person resides, is employed, or regularly transacts business in person" if the person "is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii).

substantive knowledge that would likely serve as General Catalyst's witness—Chris McCain—resides and works in the Boston area, and does not otherwise regularly transact business in person within 100 miles of the Court or within the State of California.[2] McCain Decl. ¶ 16.

To require Mr. McCain (or any other possible General Catalyst witness) to travel from Boston to the Northern District of California (over 2,500 miles away) to testify at trial would constitute an excessive travel burden that Rule 45(c) was designed to prevent, even if not technically applicable here. *See Reddick v. Dillard Store Servs., Inc.*, No. CIV 08-844-CJP, 2010 WL 3025205, at *1 (S.D. Ill. Aug. 2, 2010) (quashing trial subpoena for imposing undue burden and expense by requiring the witness to travel from Oregon to St. Louis for trial, despite proper service). In addition to the significant expense that General Catalyst would incur, such travel would disrupt Mr. McCain's important day-to-day responsibilities as General Catalyst's Chief Legal Officer.

Furthermore, travel for compliance with the Trial Subpoena would pose a health risk to General Catalyst's witness due to the COVID pandemic. *C.f. Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2020 WL 3453452, at *8 (S.D.N.Y. June 24, 2020) (ordering depositions of non-party witnesses to be taken remotely by video, because in-person depositions imposed an undue burden in view of the COVID pandemic). Indeed, General Catalyst continues to implement a mandatory remote-work policy, and has restricted business travel for its employees except in cases of substantial business need. McCain Decl. ¶ 17.

### 2. The Trial Subpoena is Overbroad

The Trial Subpoena also subjects General Catalyst to undue burden because certain of the designated Testimony Topics are overbroad, of marginal relevance, and/or seek information that can be obtained from a party to the litigation. In particular, Testimony Topic No. 1 calls for testimony concerning: "Products or FUTURE PRODUCTS developed, marketed, offered for sale, or sold by [Vade], whether in development, currently offered for sale, or discontinued." Ex. B at

---

[2] Paul Sagan, a Senior Advisor to General Catalyst, also has substantive knowledge of the cancelled transaction. But Mr. Sagan is not an employee or officer of General Catalyst, and like Mr. McCain, does not reside, work, or regularly conduct business with 100 miles of the Court or within the State of California.

6. In addition to its overbroad scope given the nature of the claims in the litigation, information concerning Vade's current or future products can be obtained directly from Vade. And Testimony Topic No. 6 calls for testimony concerning General Catalyst's document retention and destruction policies (*id.*), which is of marginal if any relevance to the claims and defenses of the parties to the litigation, especially at this stage of the case.

In contrast, Proofpoint has represented that it would withdraw the Trial Subpoena if and when Defendants agreed to the admissibility of the General Catalyst documents, indicating that the testimony sought by the Trial Subpoena is limited to that necessary to authenticate the documents and render them admissible at trial. Indeed, if additional information from General Catalyst was critical to Proofpoint's claims, it could have and should have taken General Catalyst's deposition during discovery. Accordingly, General Catalyst requests that the Court quash the Trial Subpoena to the extent that it seeks corporate testimony that does not pertain to the authenticity of the documents from the General Catalyst Document Production.

### C. Live Testimony at Trial is Unnecessary

To the extent that the Court determines that the Trial Subpoena should not be quashed in its entirety, General Catalyst requests that the Court permit General Catalyst to provide testimony by video deposition in advance of trial or, alternatively, to testify live at trial by video, at General Catalyst's discretion.

Particularly given that the purpose of the testimony appears to be limited to authentication of documents that may be used at trial, it is evident that allowing General Catalyst to comply with the Trial Subpoena in this manner will not substantively impact the trial but will eliminate the undue travel burden (*see* Section B.1, above) and reduce the overall inconvenience to General Catalyst. *See, e.g.*, *Longnecker v. Roadway Exp., Inc.*, No. 4:05-CV-0012, 2005 WL 1215969, at *4 (M.D. Pa. Apr. 19, 2005) (acknowledging that video deposition playback or live video testimony at trial can "substantially lessen the inconvenience to potential witnesses"); *Erb v. Roadway Exp., Inc.*, No. 4:05-CV-0011, 2005 WL 1215955, at *4 (M.D. Pa. Apr. 19, 2005) (same).

Proofpoint does not oppose General Catalyst providing trial testimony by either of these alternate technological means.  Taylor Decl. ¶ 9, Ex. D at 2.

### III.  CONCLUSION

For the reasons stated above, Non-Party General Catalyst respectfully requests that the Court quash the Trial Subpoena, which was served on June 28, 2021, by Plaintiffs Proofpoint Inc. and Cloudmark, Inc., and/or modify the Trial Subpoena to allow General Catalyst to comply with the subpoena by videotaped deposition, or by live, remote video testimony at trial.

Date: July 12, 2021

By: */s/ Shong Yin*
Peter M. Brody
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: 202-508-4612
Fax: 202-383-7777
peter.brody@ropesgray.com

Scott Taylor
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston St.
Boston, MA 02199
Tel: 617-951-7013
Fax: 617-951-9000
scott.taylor@ropesgray.com

Shong Yin (CSB # 319566)
**ROPES & GRAY LLP**
1900 University Ave. Sixth Floor
East Palo Alto, CA 94303–2284
Tel: (650) 617–4078
Fax: (650) 617–4090
shong.yin@ropesgray.com

*Attorneys for Non-Party,*
General Catalyst Group Management, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 12, 2021, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

*/s/ Shong Yin*
Shong Yin