Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Jeffrey G. Homrig (SBN 215890)
 jeff.homrig@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Ryan T. Banks (SBN 318171)
 ryan.banks@lw.com
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463 2600

Attorneys for Defendants,
VADE SECURE, INC. and VADE SECURE SASU

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>                              Plaintiffs,<br><br>        v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br>                              Defendants. | CASE NO. 3:19-CV-04238-MMC<br><br>**VADE DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Maxine M. Chesney<br>Trial Date:  July 26, 2021<br>Time:  8:30 AM |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND .................................................................................................... 1

II.     LEGAL STANDARD ........................................................................................... 1

III.    ARGUMENT ........................................................................................................ 1

    A.      Defendants Are Entitled to JMOL on Plaintiffs' Trade Secret
    Misappropriation and Copyright Infringement Claims ......................................... 1

        1.    Content Filter ........................................................................................... 1

        2.    Vade for Office 365 ................................................................................. 4

                a.    Current Version of O365 with Zenika Spear
                    Phishing Module ......................................................................... 4

                b.    Lemarié Rewritten Version of O365 Spear Phishing
                    Module (September 2019 – June 2020) ....................................... 6

                c.    Pre-September 2019 Version of O365 Spear
                    Phishing Module ......................................................................... 6

                d.    Microsoft Exchange Journaling and Unified
                    Architecture ................................................................................. 7

        3.    MTA Builder ............................................................................................ 8

    B.      Defendants Are Entitled to JMOL on Plaintiffs' Trade Secret
    Claims in General ................................................................................................. 9

        1.    Plaintiffs Have Failed To Identify Their Alleged Trade
            Secrets ...................................................................................................... 9

        2.    Plaintiffs Have Failed To Establish that Their Alleged
            Trade Secrets Derive Any Independent Economic Value
            From Not Being Publicly Known or Readily Ascertainable .................. 10

                a.    ATS Nos. 1-15 .......................................................................... 11

                b.    ATS No. 16 ................................................................................ 12

                c.    ATS Nos. 17-20 ........................................................................ 13

        3.    No Reasonable Jury Could Conclude that Plaintiffs Took
            Reasonable Measures To Protect Their Alleged Trade
            Secrets .................................................................................................... 13

    C.      Defendants Are Entitled to JMOL that Plaintiffs' Copyright
    Registrations Are Invalid ................................................................................... 16

    D.      Vade Defendants Are Entitled to JMOL on Plaintiffs' Respondeat
    Superior Theory ................................................................................................. 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

E.     Defendants Are Entitled to JMOL on Plaintiffs' Claims of
Willfulness ............................................................................................ 20

F.     Defendants Are Entitled to JMOL on Damages ...................................... 20

     1.     Plaintiffs Have Waived Presenting Any Theory of
Copyright Infringement Damages ................................................ 20

     2.     Plaintiffs Have Not Established a Causal Nexus .................................. 21

          a.     Plaintiffs Have Failed To Establish Unjust
Enrichment or Infringer's Profits ................................. 21

          b.     Plaintiffs Have Failed To Establish Actual Damages .................. 23

     3.     Plaintiffs Have Not Established Any Harm Attributable to
Alleged Trade Secret 16 .............................................................. 24

     4.     No Reasonable Jury Could Find Monetary Relief in Excess
of $100 Is Appropriate for Plaintiffs' DTSA and Copyright
Infringement Claims .................................................................... 24

G.     Defendants Are Entitled to JMOL On Injunctive Relief ...................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,

5
    944 F.2d 1446 (9th Cir. 1991) ...................................................................................17, 18

6

*Apple Computer v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ...........................................................................................7

7

8

*Barnes v. Arden Mayfair, Inc.*,
    759 F.2d 676 (9th Cir. 1985) ........................................................................................1, 2

9

*Bridgeport Music, Inc. v. Justin Combs Pub.*,

10
    507 F.3d 470 (6th Cir. 2007) ..........................................................................................25

11

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys.*, Inc.,
    2007 WL 2429653 (N.D. Cal. Aug. 24, 2007),

12
    *aff'd*, 332 F. App'x 387 (9th Cir. 2009)........................................................................3, 4

13

*Brown v. Tabb*,

14
    714 F.2d 1088 (11th Cir. 1983) ......................................................................................18

15

*Calendar Rsch. LLC v. StubHub, Inc.*,
    2020 WL 4390391 (C.D. Cal. May 13, 2020) ...............................................................3, 9

16

*Chafin v. Chafin*,

17
    568 U.S. 165 (2013)........................................................................................................21

18

*Citcon USA, LLC v. RiverPay Inc.*,

19
    No. 18-CV-02585-NC, 2018 WL 6813211 (N.D. Cal. Dec. 27, 2018)...........................19

20

*Computer Associates International, Inc. v. Altai*,
    982 F.2d 693 (2d Cir. 1992)............................................................................................7

21

*Cream Recs., Inc. v. Jos. Schlitz Brewing Co.*,

22
    754 F.2d 826 (9th Cir. 1985) ..........................................................................................22

23

*Egry Reg. Co. v. Standard Reg. Co.*,
    23 F.2d 438 (6th Cir. 1928) ............................................................................................22

24

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*,

25
    654 F.3d 989 (9th Cir. 2011) ..........................................................................................25

26

*Funky Films, Inc. v. Time Warner Entertainment, Co.*,

27
    462 F.3d 1072 (9th Cir. 2006) ...................................................................................3, 4, 8

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

*Gemisys Corp. v. Phoenix Am., Inc.*,
    186 F.R.D. 551 (N.D. Cal. 1999) .................................................................................14, 16

*Gold Value Int'l Textile v. Sanctuary Clothing*,
    925 F.3d 1140 (9th Cir. 2019) .........................................................................................17

*GTAT Corp. v. Fero*,
    No. CV 17-55-M-DWM,
    2017 WL 2303973 (D. Mont. May 25, 2017).....................................................................16

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011)................................................................................25

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) .........................................................................................9, 10

*Lakeside-Scott v. Multnomah County*,
    556 F.3d 797 (9th Cir. 2009) .........................................................................................1, 13

*MGE UPS Systems, Inc. v. GE Consumer and Indus., Inc.*,
    622 F.3d 361 (5th Cir. 2010) ...........................................................................................21

*Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*,
    No. 88 C 10567, 1990 WL 208594 (N.D. Ill. Dec. 12, 1990) .........................................14, 16

*Polar Bear Productions, Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2005) ...........................................................................................20

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) .............................................................................................1

*SAS Inst., Inc. v. World Programming Ltd.*,
    874 F.3d 370 (4th Cir. 2017) ...........................................................................................25

*Savant Homes, Inc. v. Collins*,
    Civil Action No. 13-cv-2049-WJM-MEH,
    2015 U.S. Dist. LEXIS 24084 (D. Colo. Feb. 27, 2015) .......................................................7

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ................................................................................3, 4, 7, 8

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) .............................................................................................6

*Torah Soft Ltd. v. Drosnin*,
    136 F. Supp. 2d 276 (S.D.N.Y. 2001).................................................................................4

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
    504 F.2d 518 (5th Cir. 1974) ...........................................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

*VSL Corp. v. Gen. Techs. Inc.*,
  No. C 96-20446 RMW(PVT),
  1997 WL 654103  (N.D. Cal. July 21, 1997).............................................................14

*X6D Ltd. v. Li-Tek Corps. Co.*,
  2012 WL 12952726 (C.D. Cal. Aug. 27, 2012).........................................................9

**STATUTES**

17 U.S.C.
  § 101...............................................................................................................17, 18
  § 411(b)(1)(A)-(B)....................................................................................................16
  § 411(b)(2).................................................................................................................19
  § 503.........................................................................................................................25
  § 504.........................................................................................................................21

18 U.S.C.
  § 1836 *et seq.* .......................................................................................................1, 21
  § 1839(3).........................................................................................................9, 10, 13

**RULES**

Fed. R. Civ. P. 50(a) ...................................................................................................1

**TREATISES**

1 Nimmer on Copyright § 4.13 ...................................................................................18

**OTHER AUTHORITIES**

*Compendium of U.S. Copyright Office Practices* (3d ed.) § 721.7.................................4

*Compendium of U.S. Copyright Office Practices* (3d ed.) § 721.9(E)...........................17

*Compendium of U.S. Copyright Office Practices* (3d ed.) § 1905.1.............................18

U.S. Reg. No. TX0008414340 (Adobe Acrobat Pro DC),
  https://publicrecords.copyright.gov/detailed-record/29290046..............................17

U.S. Reg. No. TX0008777138 (Microsoft Office Home & Business 2019),
  https://publicrecords.copyright.gov/detailed-record/31055057..............................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

**NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 5, 2021, or as soon thereafter as the parties may be heard, before the Honorable Maxine M. Chesney, Senior District Court Judge, United States District Court for the Northern District of California, in the San Francisco Division Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Vade Secure, Inc. and Vade Secure SASU (together, "Vade"), and Olivier Lemarié (together with Vade, "Defendants") hereby bring, pursuant to Federal Rule of Civil Procedure 50(a), this motion for judgment as a matter of law dismissing each cause of action asserted by Plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark, LLC ("Cloudmark," and with Proofpoint, "Plaintiffs") set forth in Plaintiffs' First Amended Complaint ("FAC") and brought against Defendants.

**RELIEF SOUGHT**

Defendants hereby move for judgment as a matter of law on the following causes of action and issues on the ground that Plaintiffs have not adduced evidence from which a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiffs, and so Defendants are entitled to judgment as a matter of law:

1.      Count I against Defendants for Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, in relation to: Plaintiffs' claims of alleged misappropriation relating to (1) Vade Content Filter; (2) Vade for Office 365; and (3) MTA Builder;

2.      Count VI against Defendants for Copyright Infringement under 17 U.S.C. § 501 *et seq.*;

3.      Plaintiffs' allegation that Defendants willfully misappropriated the alleged trade secrets;

4.      Plaintiffs' claim of entitlement to monetary remedies; and

5.      Plaintiffs' claim of entitlement to injunctive relief.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vi

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

I.      BACKGROUND

Plaintiffs' claims target three distinct products at Vade: Content Filter, MTA Builder, and Vade's O365 product. Each addresses email security in different ways to different customers, and each was developed separately with separate code.  Content Filter is Vade's flagship product. It has been offered to ISPs for over ten years and filters malicious email content for a wide variety of Mail Transfer Agents ("MTAs").  Unlike other turnkey products in the marketplace, Vade's MTA Builder is not itself an MTA.  Instead, it is a set of tools that allows Vade customers to build an MTA that precisely matches their specific needs.  Vade markets MTA Builder to customers desiring a more hands-on and less-expensive approach to their MTA.  Vade's O365 is a separate product offered to small and medium-size businesses to allow them to integrate email security with their Microsoft Office 365 email systems. It includes an anti-spear phishing module designed to identify and filter out malicious "spear phishing" emails that impersonate familiar contacts in an effort to dupe recipients into sending private information or even money to unknown individuals.

II.     LEGAL STANDARD

Judgment as a matter of law is proper when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a), and when the evidence permits only one reasonable conclusion. *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002).  JMOL must be granted when the jury can rely "only on speculation" to reach a verdict for the opposing party.  *Lakeside-Scott v. Multnomah County*, 556 F.3d 797 (9th Cir. 2009).  Courts must "undertake some initial scrutiny of the inferences that could be reasonably drawn from the evidence" to ensure a verdict could be "based on more than mere speculation, conjecture or fantasy."   *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680-81 (9th Cir. 1985).

III.    ARGUMENT

A.      Defendants Are Entitled to JMOL on Plaintiffs' Trade Secret Misappropriation and Copyright Infringement Claims

1.      Content Filter

Plaintiffs alleged that Content Filter uses the spear phishing alleged trade secrets (1-7), by using either the older "identitymatch" module developed by Mr. Lemarié, or the "email

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

spoofing/malicious content" module independently created by a third party, Zenika.  Trial Tr. 1387:12-14 (Nielson).  No reasonable jury could find that Plaintiffs' alleged trade secrets were misappropriated, or their alleged copyrights infringed, by Vade's Content Filter product.  Content Filter has existed since at least 2008, Tr. 1382:24-1383:5, and there is no probative evidence that it uses or ever has used either the identitymatch or Zenika modules.

Plaintiffs relied solely on the testimony of its expert Dr. Nielson and one interrogatory response.  But, despite spending hundreds of hours analyzing it, Dr. Nielson presented no evidence from the Content Filter source code, which would have been the *only* way to show that Content Filter actually used the accused modules.  *Id.* at 1395:1-11, 1382:24-1383:1.

Instead, Dr. Nielson speculated that Content Filter "***most likely***" incorporates ***either*** the identitymatch or Zenika modules.  *Id.* at 1385:16-19.  That flimsy conclusion was based on two documents: (1) PX 2443 (referred to erroneously on the record as PX 2243[1]) and PX 1887.  PX 2443 shows only that Vade once referenced the use of artificial intelligence (AI) in connection with Content Filter.  PX 1887 is an undated presentation produced by a third-party with a similar vague reference to AI.  *Id.* at  1406:12-1408:13.  Dr. Nielson admitted having no idea about the provenance of the presentation.  *Id.* at 1407:7-1408:10; 1455:17-18.  There is no genuine basis to conclude that either document, which never mentions Content Filter, reflects any actual functionality that has ever existed in Content Filter.  *Id.* at 1406:4-1408:13.  Critically, neither exhibit ever mentions identitymatch or the Zenika module, *id.* at 1408:11-13; 1456:1-2, yet Dr. Nielson makes the unsupportable leap that because they state "artificial intelligence," the references must reference one of those modules, and that one of the modules was "likely incorporated" in Content Filter.  Such conclusory inferences are not plausible, not supported by probative evidence, and not proper expert analysis. *See Barnes*, 759 F.2d at 680-81.

Beyond this, Dr. Nielson pointed to a separate component called "filter-d," speculating that it was designed to work with identitymatch and *may* be used by Content Filter.  Trial Tr. 1350:3-5, 1438:22-24.  But, again, Dr. Nielson presented no evidence from the source code of "filter-d" and admitted that "[t]here was no particular code piece" on which he could base his theory.  *Id.* at

---

[1] Defendants reserve any rights or positions concerning this infirmity in the record.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1386:11-12, 1394:14-17.   Nor was there any testimony from any fact witness that Content Filter ever used filter-d to call either the identitymatch or Zenika module.   Instead, Dr. Nielsen relied on his conclusory assertion that Mr. Lemarié was responsible for the development of filter-d and so he must have incorporated Cloudmark source code.   Such unsupported conjecture runs afoul of the law.   *Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *14 (C.D. Cal. May 13, 2020) (the "question for this Court was whether Defendants misappropriated a specific, definable trade secret, not whether they implemented a similar app idea for a competitor.").

In Court, Plaintiffs mischaracterized an interrogatory response by Vade which Plaintiffs cast as a confession that Content Filter "uses" identitymatch. PX 2525.   8/5/21 Tr. (rough) at 10:45:19-31.   The interrogatory response, however, says nothing of the sort and notes that "the presence of a source code file in a repository, such as a historical file in an archived repository, does not necessarily mean such file is or has been implemented in production for a corresponding product and/or service." PX2525, at 10; *see also* Tr. 1372:25-1373:2 (Nielson) (admitting not all source code in Vade's repository is in Vade's products).

Plaintiffs' failure to provide sufficient evidence to support the use of any trade secrets by Content Filter warrants JMOL on Plaintiffs' DTSA claims.   *See Brookhaven Typesetting Servs., Inc. v. Adobe Sys.*, Inc., 2007 WL 2429653, *10-11 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332 F. App'x 387 (9th Cir. 2009) (no misappropriation as a matter of law where plaintiff offered only "vague" statements and showed "no indications of similarities" in the source code); *Calendar Rsch.*, 2020 WL 4390391, at *4 (code comparison "is one of the most clear-cut methodologies" to prove trade secret misappropriation "in technology cases").   Similarly, the inability to point to a single line of allegedly copied code in Content Filter is fatal to Plaintiffs' claims under the Copyright Act.   *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) (requiring "substantial similarity" between the copyrighted work and the allegedly infringing work); *Funky Films, Inc. v. Time Warner Entertainment, Co.*, 462 F.3d 1072, 1075 (9th Cir. 2006) ("[A] determination of substantial similarity requires a *detailed examination* of the works themselves.") (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

### 2. Vade for Office 365

#### a. Current Version of O365 with Zenika Spear Phishing Module

Plaintiffs allege that Defendants are liable for copyright infringement and misappropriation of alleged trade secrets 1-7 with respect to the Vade for O365 product.  But it is undisputed that the code for identitymatch was completely replaced by the emailspoofing/maliciouscontent module programmed by third party Zenika in 2020.  Trial Tr. 1387:12-14 (Nielson).  Again, Plaintiffs relied on Dr. Nielson alone to attempt to link Vade's current version of the O365 product with Plaintiffs' alleged trade secrets and copyrights.  As with Content Filter, Dr. Nielson could not find a single one of Plaintiffs' trade secrets or lines of code in the Zenika module that is now used in O365.  *Id*. at 1387:25-1388:3, 1389:23-1391:19.  That Plaintiffs' expert on misappropriation cannot find any source code in the current version of O365 that contains Plaintiffs' source code or trade secrets establishes conclusively that judgment as a matter of law is warranted.  *See Brookhaven*, 2007 WL 2429653 at *10-11 (granting summary judgment where plaintiff's expert cited "no indications of similarities" between the parties' source code).

For the same reasons, any copyright infringement claims related to the current O365 product also fail.  Dr. Nielson conceded that the original identitymatch code no longer exists in Vade's O365 product.  Trial Tr. 1387:19-23 (Nielson).  He acknowledged that he had done no analysis whatsoever of the Zenika source code: no side-by-side comparison of the Zenika code against Plaintiffs' code, and no evidence of copying of Plaintiffs' code into the Zenika code.  *Id*. at 1390:1-18.  Again, Plaintiffs' presentation failed to provide the "detailed examination" and objective comparison of "specific expressive elements" necessary to support a claim of copyright infringement.  *Funky Films, Inc.*, 462 F.3d at 1075; *Skidmore*, 952 F.3d at 1064.[2]

---

[2] There was no comparison of the structure, sequence and organization ("SSO") of Plaintiffs' code with that of the allegedly infringing O365 software, as would be required to make out a copyright infringement claim, *Funky Films*, 462 F.3d at 1075 (9th Cir. 2006) and indeed, Dr. Nielson did not testify in support of the SSO argument at all.  Instead, Plaintiffs appeared to suggest that their SSO claims concerned the sequence or ordering of steps in Plaintiffs' algorithms. Trial Tr. 306:24-307:17, 318:21-320:11, 329:20-330:25 (Knox). To the extent that is the basis for their SSO claims, the claims fail as a matter of law. *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 291-92 (S.D.N.Y. 2001) ("An algorithm, however, is clearly a method of operation which cannot be protected."); *see also Compendium of U.S. Copyright Office Practices* (3d ed.) § 721.7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1       Without any evidence of a source-code comparison, all that Plaintiffs proffer in support of

2  their claims against the current O365 product is that the high-level design specification provided

3  to Zenika was written at least in part by Sebastien Goutal, Vade's Chief Science Officer, who

4  never worked at Cloudmark.  *Id*. at 1353:5-18.   Dr. Nielson speculated without evidence, "I

5  believe [Mr. Goutal] was exposed to trade secrets." *Id*. at 1354:15.  But Plaintiffs never established

6  that Mr. Goutal had seen the specific code at issue here, analyzed the code, worked on any of the

7  code, or otherwise had any familiarity with Mr. Lemarié's spear phishing module such that his

8  work on the Zenika specifications was tainted.

9       Plaintiffs have not met their burden to show by a preponderance of the evidence that the

10  specification provided to Zenika was "tainted."  They cannot identify a single one of their alleged

11  trade secrets in the specifications provided to Zenika.  *Id*. at 1400:10-13 (Nielson).  Nor can

12  Plaintiffs identify any copyrighted code in those specifications.  *Id*. at 1399-1400 (Nielson).  And

13  they acknowledge that Zenika, not Mr. Goutal (or Mr. Lemarié), wrote the code that replaced the

14  spear phishing module.  *Id*. at 1396:2-3 (Nielson).

15       Finally, the only alleged "design choice" in the Zenika specification allegedly contributed

16  by Mr. Goutal was the decision *not* to detect "domain spoofing." *Id*. at 1356:23-1357:3) (Nielson).

17  But Mr. Goutal never testified that he, or any of his co-contributors, made that choice, and there is

18  no basis for Dr. Nielson's surmise to the contrary.  *Id*. at 1405:8-17.  Plaintiffs make no effort to

19  show the implementation of avoiding domain spoofing in the Zenika code bears any resemblance

20  to the implementation in Cloudmark code. *Id*. at 1390:1-9 (Nielson) ("I did not analyze the source

21  code for my reports[.]").  Instead, Dr. Nielson offered this Kafkaesque argument:

22     Q. And the Zenika code that replaces the identitymatch code does not do domain
23        spoofing; right?

       A. Correct. It was removed.
24

25     Q. And so the opinion you're giving to the jury today is that Mr. Goutal stole
        Cloudmark's trade secret in domain spoofing by not using domain spoofing;
26        right?

27     A. Correct."

28  *Id.* at 1405:1-7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1   Like Content Filter, this is not a close case.  Plaintiffs and their expert can find no code that

2   either includes their alleged trade secrets or infringes their copyrights in the current version of the

3   O365 product, and their remaining arguments are contrivances with no legitimate support in the

4   record.  Because no reasonable jury could find misappropriation or infringement on this record,

5   judgment as a matter of law should be entered that the current version of O365 does not contain

6   any misappropriated trade secrets and does not infringe any copyrights.

7            b.    **Lemarié Rewritten Version of O365 Spear Phishing Module**
                    **(September 2019 – June 2020)**
8

9            Moreover, it is undisputed that even before Zenika rewrote the spear phishing module, in

10  September 2019, Mr. Lemarié rewrote and replaced the allegedly copied five source code files in

11  a matter of hours.  Trial Tr. 731:4-17, 740:17-741:8, 799:22-800:9  (Lemarié).  As with the Zenika

12  code, Plaintiffs provided no evidence that this version of O365 included any misappropriated

13  "implementation" and made no showing that would allow the jury to compare Vade's

14  implementation to Plaintiffs', let alone address their substantial similarity.  Trial Tr. 1372:20-

15  1373:2 (Nielson).

16           c.    **Pre-September 2019 Version of O365 Spear Phishing Module**

17           While Plaintiffs have presented some evidence that, before September 2019, Vade's O365

18  product included code similar to code Mr. Lemarié wrote while at Cloudmark, they have failed to

19  carry their burden to show that this early version of the code included either misappropriated trade

20  secrets or code that infringed Plaintiffs' copyrights.  Dr. Nielson did not dispute Mr. Lemarié's

21  testimony, *e.g.*, Trial Tr. 725:8-727:10, 747:20-749:5, that the files he had copied were developed

22  based on publicly available information and were easily replaced with publicly available code.

23  Trial Tr. 1378:21-1379:8 (Nielson).  That concession is fatal to Plaintiffs' trade secret claims.

24           With respect to the copyright claims, Plaintiffs failed to present the necessary evidence and

25  analysis to allow the Court to engage in the "extrinsic" portion of the test for substantial similarity,

26  before tasking the jury with the "intrinsic" or side-by-side comparison of the original and allegedly

27  copied code.  "Initially, the extrinsic test requires that the plaintiff identify *concrete elements* based

28  on objective criteria." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

6

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1   Plaintiffs at no point during their evidentiary presentation identified with any specificity the

2   "concrete elements" which are to be compared, let alone in any way that would permit the jury to

3   evaluate their claims.  Plaintiffs' *en masse* proffer of source code laptops containing gigabytes of

4   repositories including irrelevant, confusing, and prejudicial files into the record cannot cure their

5   failure to present the jury with a meaningful opportunity to compare the asserted Trident software

6   against the various different accused Vade source code implementations. Trial Tr. 1208:10-12

7   (Proceedings).  In addition, Plaintiffs bore the burden of proving that the Defendants "copied

8   *protected* aspects of the work." *Skidmore*, 952 F.3d at 1064.  Ninth Circuit law requires "analytic

9   dissection" to filter out "unprotectable" elements.  *See Apple Computer v. Microsoft Corp*., 35

10  F.3d 1435, 1445 (9th Cir. 1994).  This is also known as the "abstraction, filtration, and comparison"

11  test.  *See id.* (citing *Computer Associates International, Inc. v. Altai*, 982 F.2d 693, 706 (2d Cir.

12  1992)).  Dr. Nielson conceded that he had not engaged in that analysis either.  Trial Tr. 1420:23-

13  1421:2.  Indeed, he admitted that the entirety of the discussion of creativity in his 175 pages of

14  expert reports was limited to a single paragraph.  *Id.* at 1418:14-16.  Nor did he analyze whether

15  the expression of the code "merged" with the underlying ideas or algorithms.  *Id.* at 1418:4-8.

16  Plaintiffs' utter failure to specifically identify what elements of the allegedly copied code are and

17  are not protected by copyright is fatal to Plaintiffs' copyright claims, as is the failure to present the

18  jury with evidence permitting a comparison of the relevant works.[3]  *See Savant Homes, Inc. v.*

19  *Collins*, Civil Action No. 13-cv-2049-WJM-MEH, 2015 U.S. Dist. LEXIS 24084, at *11 (D. Colo.

20  Feb. 27, 2015) (granting motion to dismiss where plaintiff "completely ignored the 'abstraction-

21  filtration-comparisons' standard").

22              d.      **Microsoft Exchange Journaling and Unified Architecture**

23          Plaintiffs also allege that the Vade O365 product misappropriates alleged trade secret 8,

24  "Office 365 integration using journal extraction," and alleged trade secrets 9-15, or the use of what

25  Plaintiffs call a "unified architecture."  For each of these alleged trade secrets, Plaintiffs proffered

26

27

28  [3] And it cannot cure Plaintiffs' failure to engage in the necessary identification of "concrete
    elements" necessary to allow the court to engage in the "extrinsic" portion of the substantial
    similarity analysis.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1  insufficient evidence to show what their alleged "implementation, improvement, or documents"

2  comprising this trade secret are.  Plaintiffs failed to meet their burden of proving that Defendants

3  misappropriated alleged trade secret 8 by improperly obtaining, disclosing, or using it in violation

4  of the DTSA.  And Plaintiffs failed to proffer sufficient evidence to meet their burden of proof of

5  misappropriation for these alleged trade secrets for the same reasons as for alleged trade secrets 1-

6  8, which are merely combined together to make up alleged trade secrets 9-15.  Plaintiffs rely solely

7  on their expert, Dr. Nielson, who applied a legally improper subjective test for misappropriation

8  for each of alleged trade secrets 8-15.  Trial Tr. 1381:3-15.  Accordingly, Plaintiffs failed to carry

9  their burden to show that Defendants misappropriated alleged trade secrets 8-15.

10  ### 3.    MTA Builder

11  Similar to Content Filter and O365, Plaintiffs bring no evidence establishing that Vade's

12  MTA Builder includes any copyrightable materials or trade secrets from Cloudmark.

13  Plaintiffs have alleged misappropriation of two categories of trade secrets related to MTA

14  Builder, but failed to meet their burden of proof for either.  With respect to the Gateway Daily

15  Licensing reports (ATS 16), Plaintiffs' only evidence that Defendants misappropriated the reports

16  consists of Dr. Nielson's opinion that Mr. Delannoy "forwarded" them and "used" them "to make

17  an argument to his boss" that Vade should make an MTA product.  Trial Tr. 1410:20-1411:9.  This

18  is not a legally cognizable form of use sufficient to establish misappropriation.   As for what

19  Plaintiffs call their "CSP" trade secrets (ATS 17-20), all Plaintiffs can point to is their expert's

20  *ipse dixit* that he knows misappropriation when he sees it.  Trial Tr. vol. 6, 1380:17-1381:15

21  (Nielson) ("I mean, when I see a thing used, that thing is used.").  Here, too, Plaintiffs failed to

22  meet their burden to prove Defendants misappropriated alleged trade secrets 17-20.

23  The lack of evidence of copying is fatal to any copyright claims against MTA Builder;

24  again, Plaintiffs must engage in a "detailed examination" of the allegedly copied and infringing

25  works, demonstrating that they are "substantially similar," through a comparison of "specific

26  expressive elements" protectable by copyright.  *Skidmore*, 952 F.3d at 1069; *Funky Films*, 462

27  F.3d at 1075.  But Plaintiffs presented no detailed examination of MTA Builder, and no evidence

28  that would permit comparison of specific expressive and protectable elements.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

**B.**   **Defendants Are Entitled to JMOL on Plaintiffs' Trade Secret Claims in General**

To prove ownership of any alleged trade secrets, Plaintiffs "must identify the trade secrets and carry the burden of showing they exist."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).  To meet their burden to prove that their purported trade secrets are protectable, Plaintiffs are required to establish (i) that the information derived actual or potential independent economic value from the fact that it was secret, and (ii) that Plaintiffs made reasonable efforts to keep it secret.  18 U.S.C. § 1839(3).  Plaintiffs have not provided a legally sufficient evidentiary basis for the jury to so conclude.

**1.**   **Plaintiffs Have Failed To Identify Their Alleged Trade Secrets**

First, Defendants are entitled to JMOL because Plaintiffs have failed to identify the alleged trade secrets with the requisite specificity.  Under the DTSA, "[t]rade secrets cannot be vague concepts," and Plaintiffs have the burden to "identify the specific set of 'methods, techniques, processes, procedures, programs, or codes' that comprise a trade secret."  *Calendar Rsch. LLC*, 2020 WL 4390391, at *6 (quoting 18 U.S.C. § 1839(3)).  In particular, it is Plaintiffs' burden to distinguish their alleged trade secrets from generally known concepts.  *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012).  Trade secrets may not be mere ideas and conceptual notions that determine how related programs work; rather, they must be specific *information* tending to communicate or disclose the idea or fact to another.  *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1016 (E.D. Cal. 2011).  However, Plaintiffs have failed to introduce evidence from which a reasonable jury could identify the alleged trade secrets and distinguish them from generally known ideas or those belonging to third parties.  At the end of Plaintiffs' affirmative case, it remains unclear and undefined what alleged "implementations," "improvements," or "documents" comprise the alleged trade secrets.

Plaintiffs' alleged trade secrets encompass mere ideas and conceptual notions that determine how the related programs work, as opposed to specific *information* tending to communicate or disclose the idea or fact to another. *Agency Solutions.Com,* 819 F. Supp. 2d at 1016.  According to Plaintiffs' expert Dr. John Black, the asserted trade secrets are "not the high-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

level concepts" nor are they even the "combination of high-level concepts" together.  Trial Tr. 1614:9-18 (Black); *see also* Trial Tr. 1415:14-22 (Nielson).  But Dr. Black also testified that the asserted trade secrets are "algorithms" that Plaintiffs implemented or proposed to be implemented, and that algorithms are broader than Plaintiffs' specific implementations in code.  Trial Tr. 1614:9-13 (Black).  Given this ambiguity, it is unsurprising that not one of Plaintiffs' fact witnesses could identify those alleged trade secrets for the jury, or confirm that the litigation-driven list of trade secrets reflected anything the business itself perceived to be protectable secrets belonging to them.  Instead, Plaintiffs' witnesses resorted to sweeping generalizations about how ***all*** Cloudmark information was treated as confidential, proprietary, and potentially a trade secret. *See e.g.* Trial Tr. 894:9-10 (Cho); *id.* at 896:2-9; Trial Tr. 576:24-577:4 (Roualland).  Further, the alleged trade secrets encompass the use of other companies', organizations', or individuals' technology.  For example, various of Plaintiffs' alleged trade secrets purport to cover Microsoft's Exchange journaling function, Google's Go language and its related architecture and features, open-source REST APIs, general concepts of using the cloud, clustering, microservices, and other third-party technologies and concepts that do not belong to Plaintiffs, either alone or in combination.  *See, e.g.*, Trial Tr. 1254:14-16, 1315:17-1316:13, 1415:23-1416:15 (Nielson).  Plaintiffs have not carried their affirmative burden to distinguish from public knowledge what they claim as trade secrets.

### 2. Plaintiffs Have Failed To Establish that Their Alleged Trade Secrets Derive Any Independent Economic Value From Not Being Publicly Known or Readily Ascertainable

Defendants are further entitled to JMOL because Plaintiffs failed to establish that the alleged trade secrets "derive[ ] independent economic value, actual or potential, from not being generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *InteliClear*, 978 F.3d at 657 (citing 18 U.S.C. § 1839(3)).  Indeed, Plaintiffs chose to disclose many of their so-called trade secrets in open court. This choice is consistent with the lack of any evidence demonstrating that the alleged trade secrets derived any economic value from their secrecy.  Indeed, Dr. Nielson conceded that each individual component of every alleged trade secret (except for ATS No. 16)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

was not independently protectable as a trade secret. Plaintiffs instead claim that specific combinations of the implementations of publicly known components are either secret, or valuable for being secret. But Plaintiffs' experts fail to show that those combinations are secret or have independent economic value by being secret. Indeed, the record showed that Plaintiffs' so-called secrets were: (1) disclosed to others without an NDA, Trial Tr. 387:24-396:21 (discussing DX-4046 and 4106); (2) publicly available on the internet, e.g., DX-4202 (Mimecast Forum), DX-4378 (Cisco Guide); and (3) included in customer support guides, DX-4421 (Trident Installation Guide). Plaintiffs cannot properly claim secrecy-derived economic value from the combination of technologies created by others, like Microsoft's Exchange product, Google's Go language and its related architecture and features, open source REST APIs, general concepts of using the cloud, clustering, microservices, and other third-party technologies. What remains lacks any cognizable economic value.

a.   **ATS Nos. 1-15**

Alleged trade secrets 1-15 claim various combinations of the "implementation" of anti-spear phishing techniques purportedly implemented in Cloudmark's Trident product. But Plaintiffs failed to establish that any alleged trade secrets in Trident provided any value by virtue of their secrecy. Rather, Trident was discontinued in 2016, the same year it was announced, concurrently with Cloudmark's acquisition talks with Proofpoint. *See* Trial Tr. 348:7-349:8; DX-4017. And Plaintiffs have failed to present evidence that any of the techniques they claim as trade secrets provided any competitive advantage to either Cloudmark or Proofpoint.[4] Despite Plaintiffs' vague claims that Trident features were reused in other Cloudmark or Proofpoint products, *see, e.g.*, Tr., 885:2-6, Plaintiffs' witnesses could not identify any specific way in which the ***alleged trade secrets*** embodied in Trident continued to be used in later products. *See, e.g.*, Trial Tr., 356:3-357:25 (Knox), 517:9-12, 531:8-13, 532:24-533:8, 568:22-569:2 (Roualland).[5]

---

[4] Plaintiffs retreated to a theory of value derived from keeping their code out of the hands of malicious actors. Trial Tr., 314:14-23; *id.* at 472:17-25. But that form of value is insufficient to sustain a DTSA claim against a competitor like Vade.

[5] Plaintiffs repeatedly conflated code "from Trident" with code from other products that was integrated into Trident at one time and continues to be used in the original Cloudmark products from which it derived. *See e.g.*, Trial Tr., 355:12-356:9; *id.* at 356:4-357:25.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1    Further, Plaintiffs have failed to provide any evidence from which the jury could conclude

2    that alleged trade secrets 1-7 were not publicly known.  Dr. Black admitted that "the steps of

3    running classifiers, checking for calls to action, checking for exceptions, and generating a verdict

4    based on the results" is simply a description of basic anti-spear phishing functionality and can be

5    found in numerous publicly available sources.  Trial Tr., 1615:23-25; *id.* at 1618:5-9.  The step of

6    "checking for confusables" in alleged trade secrets 5-7 is also publicly disclosed by, among others,

7    the Unicode organization, as Plaintiffs' experts acknowledged.  Trial Tr., 1431:9-24; *id.*, 1621:23-

8    1622:6.  Plaintiffs did not establish any specific "implementations" that they claim as a trade secret

9    or that derive independent value from being secret.

10    Alleged trade secrets 8-15, which combine "Office 365 integration using journal

11    extraction" with alleged trade secrets 1-7, fare no better.  The record demonstrates that the

12    Microsoft Exchange journaling feature is not Plaintiffs' technology and it is generally known to

13    use the Microsoft Exchange journaling feature for Office 365 in the context of an email filtering

14    solution.  Trial Tr., 1408:17-1409:5; *id.* at 1431:9-24; *id.* at 1050:16-1051:21.  In fact, Microsoft

15    itself suggested to Vade that "you're going to have to journal the messages," (PX-2112), and Dr.

16    Nielson admitted that he had not analyzed the way Proofpoint had been using the journaling

17    function on its own before acquiring Cloudmark and the alleged Trident trade secrets.  Trial Tr.,

18    1409:13-20.  Plaintiffs did not establish any specific "implementation" that derives independent

19    value from being secret, and have not carried their burden.

20            b.    **ATS No. 16**

21    Plaintiffs similarly have not provided a legally sufficient evidentiary basis for the jury to

22    conclude that alleged trade secret 16, the Cloudmark "Gateway Daily Licensing Reports," derived

23    independent economic value from not being publicly known or readily ascertainable.  Plaintiffs'

24    economic expert, Dr. Arnold, did not identify ***any*** economic value associated with the Gateway

25    Daily Licensing Reports.  Trial Tr., 1692:5-17.  Nor could any fact witness identify any economic

26    value associated with the alleged secrecy of the Gateway Daily Licensing Reports, leaving

27    Plaintiffs' expert to speculate "there's value there, potentially[.]"  Trial Tr., 1567:13-25.  *See*

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1    *Lakeside-Scott*, 556 F.3d at 802-03.  This is unsurprising, given that the information belongs to

2    Plaintiffs' ***customers***, not Plaintiffs.  Trial Tr., 551:20-552:1.

3                               c.    **ATS Nos. 17-20**

4          Plaintiffs have failed to carry their burden to show that alleged trade secrets 17-20 provided

5    them with any competitive advantage, most notably because Plaintiffs never actually implemented

6    them.  Trial Tr., 532:14-533:21; *id.* at 542:18-21.   Plaintiffs also have not and cannot proffer any

7    evidence that a "go language architecture" derives independent economic value from being kept

8    secret or lends Plaintiffs any competitive advantage, because Go is a Google-developed

9    programming language that is available for anyone to use. Trial Tr., 1237:19-1238:18; *id.* at 770:8-

10   19.  Because Plaintiffs failed to establish any evidentiary basis for a reasonable jury to conclude

11   that there is any specific implementation that derives independent value from being kept secret,

12   Defendants are entitled to JMOL on alleged trade secrets 17-20.

13           **3.**    **No Reasonable Jury Could Conclude that Plaintiffs Took Reasonable**
14                     **Measures To Protect Their Alleged Trade Secrets**

15          Under the DTSA, information cannot constitute a "trade secret" unless the owner of the

16   alleged trade secret "has taken reasonable measures to keep such information secret."  18 U.S.C.

17   § 1839(3)(A).  Here, Plaintiffs have failed to establish that they took reasonable measures

18          The record establishes that Cloudmark failed to communicate to its employees and other

19   personnel what it considered to be valuable information that needed to be kept secret.  Instead,

20   Cloudmark broadly defined "Proprietary Information" as all "confidential and/or proprietary

21   knowledge, data or information" of Cloudmark.  PX-0606 (Cloudmark's Proprietary Information

22   and Inventions Agreement ("PIIA"));  Trial Tr. 894:9-10 (Cho);  Trial Tr. 576:24-577:4

23   (Roualland).  This made it impossible for personnel to know what to treat as confidential.

24          This was exacerbated by its failure to train personnel as to what information deserved

25   protection or how to protect it.  *See* DX-4106; Trial Tr. 877:22-878:4 (Cho); DX-4319; Trial Tr.

26   385:10-14 (Knox).   These failures meant employees failed to consistently mark allegedly

27   confidential materials with confidentiality designations.  *See* PX-0686 (Gateway Daily License

28   Reports); Trial Tr. 551:1-9, 556:13-21  (Roualland).  It also meant Cloudmark was inconsistent in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

its practice of entering into NDAs with third parties before sharing purportedly confidential information or even publicizing that information on the internet.  *See* DX-4106; DX-4046; PX-0080; Trial Tr. 389:4-16 (Knox) (testifying that the Nike presentation was on Feb. 18, 2016 and Nike was not a customer at the time); *id.* at 394:2-16 (testifying that following the Nike presentation "the NDA was signed a couple days later"); *VSL Corp. v. Gen. Techs. Inc.*, No. C 96-20446 RMW(PVT), 1997 WL 654103, at *3 (N.D. Cal. July 21, 1997) (no trade secret where plaintiff distributed without confidentiality agreements marketing information and made product samples available); *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 561 (N.D. Cal. 1999); *Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*, No. 88 C 10567, 1990 WL 208594, at *9 (N.D. Ill. Dec. 12, 1990) (granting summary judgment because plaintiff "took some precautions to maintain secrecy" but failed to have all customers sign confidentiality forms).

Cloudmark also failed to restrict access to source code.  DX-4698.  Indeed, the evidence showed that the alleged source code trade secrets were not given any extra measure of protection.  Trial Tr. 545:5-9.  Cloudmark's security policies also did "not restrict the use of removable media through administrative and/or technical measures" that could be used to remove Cloudmark's purportedly confidential information. DX-4106.   Moreover Cloudmark's internal Confluence communications reveal that "[f]ormer employee's virtual instances, [and] hosts are not disabled/cred not disabled after departure[.]"  DX-4698.

Beyond Cloudmark's failure to implement a general security policy, the company also broadly permitted employees, including Mr. Lemarié, to use personal devices to conduct company-related work but failed to implement a personal device policy that would permit the company to ensure its protection and track its location.  *See* Trial Tr. 877:15-21 (Cho); *id.* at 894:18-896:1; Trial Tr. 382:25-383:4 (Knox); DX-4698.  Cloudmark admits that its Employee Handbook fails to address the use of personal devices.  Trial Tr. 899:11-14 (Cho); *see* PX-0771.  Cloudmark also did not track applications or files on employee devices, and there were no technical mechanisms to prevent employees from emailing company documents to personal email accounts.  Trial Tr. 895:18-896:1, 906:20-24, 908:15-18 (Cho). And Cloudmark was even aware that employees used personal laptops to store source code, but did nothing about it.  *Id.* at 899:15-19.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

These deficiencies also extended to Cloudmark employees' use of "third-party websites like Dropbox, Google Drive, Evernote, in connection with their work," which employees could use without restriction to store Cloudmark's allegedly confidential and trade secret information. *See id.* at 877:8-14, 899:4-7 (Cho) (admitting "there was no enforcement mechanism" to prevent employees from uploading company information to personal cloud-based accounts); DX-4013. This failure to implement a personal device policy was especially significant given Cloudmark's failure to implement any policies relating to the departure of employees for the company. Specifically, Cloudmark did not ask departing employees to turn over personal devices for inspection, Trial Tr. 899:20-24, and declined to do so when departing employees offered the company the opportunity to do so, *id.* at 899:25-900:24. And it was Cloudmark's practice to not conduct exit interviews with executives—even technical executives who had access to purportedly sensitive confidential information—upon their departure from Cloudmark. *See id.* at 892:16-893:7; DX-4698. Moreover, Mr. Lemarié did not receive an exit interview. *See* Trial Tr. 892:16-893:17 (Cho). And while Mr. Lemarié proffered his personal laptop to Cloudmark for inspection upon his departure, Cloudmark declined. *See id.* at 900:17-24.

The only evidence Plaintiffs can muster to support their reasonable measures claims is to point to Cloudmark's PIIA and employee handbook and claim that employees were required to sign confidentiality agreements, Trial Tr. 862:23-863:2, 877:8-21, 881:17-25 (Cho), that Cloudmark imposed access restrictions, including password and key card requirements, to restrict external access, *id.* 857:14-858:13, 909:12-910:3, and that Cloudmark sometimes entered into non-disclosure agreements with third parties, Trial Tr., 366:21-367:4 (Knox), were sufficient to show reasonable measures.

But as an initial matter, Plaintiffs' conclusory assertions are belied by the record. Specifically, Cloudmark's internal documents show Cloudmark shared and presented confidential information with a third party prior to entering a non-disclosure agreement, and in fact it was that third party who requested a non-disclosure agreement be put in place. *See* DX-4106; DX-4046; PX-0080; Trial Tr. 389:4-16, 394:2-16 (Knox). Moreover, notwithstanding the PIIA or employee handbook, Cloudmark's internal communications document that policies were "unclear" regarding

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1   "what are you allowed to do with source code or where can you put it."  DX-4698.  Cloudmark's

2   internal documents reveal "[s]ome source code review contracts with vendors (NCC) don't include

3   provisions to destroy the source/data after the review."), DX-4698.

4        *GTAT Corp. v. Fero* is instructive, in which an employer argued that it had taken reasonable

5   measures by pointing to the "use of physical and electronic security, carefully marking sales

6   materials as 'confidential,' and having employees sign confidentiality agreements."  No. CV 17-

7   55-M-DWM, 2017 WL 2303973, at *4 (D. Mont. May 25, 2017).  The Court acknowledged those

8   minimal actions but questioned whether those measures actually met "the 'reasonable measures'

9   standard" where "testimony revealed that some of the security measures GTAT had in place may

10  not have been regularly enforced," including (1) "the fact Fero did not have an exit interview," (2)

11  "the lack of effort to recover Fero's 2011-2016 Panasonic Toughbook laptop," (3) "employees

12  using DropBox despite GTAT policy," "and (4) employees using USB drives despite GTAT

13  policy."  *Id.*  Those facts apply with equal force here.  *See also Gemisys Corp*, 186 F.R.D. at 558–

14  61 (N.D. Cal. 1999); *Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*, No. 88 C 10567, 1990 WL

15  208594, at *9 (N.D. Ill. Dec. 12, 1990).

16   **C.    Defendants Are Entitled to JMOL that Plaintiffs' Copyright Registrations
             Are Invalid**

17

18       Plaintiffs filed suit based on four copyright registrations—"Trident Software Module 1",

19  "Trident Software Module 2", "Trident Software Module 3", and "Trident Software" (or "module

20  4").  PX-0990–PX-0993.  As an initial matter, Plaintiffs' expert Dr. Nielson testified that the only

21  alleged copying with respect to "module 4" was "[w]hen that is used on Mr. Lemarié's laptop to

22  copy it out, that would be a copyright violation."  Trial Tr. vol. 6, 1416:25-1417:5 (Nielson).  There

23  is no claim or evidence of any copying by Vade.  For that reason, any copyright infringement claim

24  against Vade with respect to "module 4" must be dismissed.

25       In any event, all four copyright registrations are invalid because plaintiffs knowingly

26  included inaccurate information on their registration applications, and for that reason Plaintiffs

27  cannot maintain their suit.  *See* 17 U.S.C. § 411(b)(1)(A)-(B). Proofpoint represented to the

28  Copyright Office that the Trident software was unpublished.  PX-0990–PX-0993; Trial Tr. 366:13-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

16 (Knox).  But the undisputed facts show that the works were in fact "published":  Trident was publicly "announced."  Trial Tr. 344:5-7 (Knox).  It "was publicly available for purchase."  Trial Tr. 993:3-17 (San Diego).  Trident software was distributed to a number of clients, including large clients like TalkTalk, for on-premises installation in 2016.  Trial Tr. 297:23-298:1, 331:19-332:3 (Knox); *id.* at 993:25-994:13 (San Diego); DX-4421 (Trident installation guide); PX-0404; PX-0408; PX-0410; PX-0415–PX-0417.  Some of the license agreements gave customers the right to "copy and install . . . as many copies of the Software as is designated in the applicable Order Form" and "make a reasonable number of copies . . . for back-up and archival purposes."  *See* PX-0416 § 1.2, PX-0417 § 1; PX-0404 § 1.2.  The Order Forms, in turn, each authorize thousands of "seats," or users.  PX0404 §§ 1, 6; PX0417 §§ 1, 5.

That clearly counts as "publication"—i.e., "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101.  That the distribution occurred pursuant to a license is irrelevant.  "As a general rule, a program is considered published if there has been a general distribution of the program code, regardless of whether the copies are distributed by purchase or license."  *Compendium of U.S. Copyright Office Practices, Third Edition* ("*Compendium (Third)*") § 721.9(E).  Also irrelevant is the fact that Trident customers only received computer-readable object code.  "[A] program is considered published even if the copies contained object code rather than source code and even if the source code has not been disclosed to the public."[6]  *Compendium (Third)* § 721.9(E).

The only possible exception to the rule that distribution of copies constitutes publication is the doctrine of limited publication.  *Gold Value Int'l Textile v. Sanctuary Clothing*, 925 F.3d 1140, 1146 (9th Cir. 2019).  That is the basis on which this court denied Vade's motion for summary judgment.  Dkt. 631 at 5-6.  But Plaintiffs cannot meet the requirements of that narrow exception.

---

[6] This is apparent from judicially noticeable Copyright Office records, which demonstrate that companies like Adobe and Microsoft—which Ms. Knox conceded distribute their software under license and in object code form, similarly to how Trident was distributed to trial customers, Trial Tr. vol. 2, 409:2-19 (Knox)—correctly register their enterprise software as published works. See U.S. Reg. No. TX0008777138 (Microsoft Office Home & Business 2019), https://publicrecords.copyright.gov/detailed-record/31055057; U.S. Reg. No. TX0008414340 (Adobe Acrobat Pro DC), https://publicrecords.copyright.gov/detailed-record/29290046.  Even other companies with commercial email security offerings, for whom it would be equally important to protect their source code from malicious actors, register their products as published.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1  Plaintiffs must demonstrate that that "copies of the work [were] distributed both: (1) to a definitely

2  selected group, and (2) for a limited purpose, without the right of further reproduction, distribution,

3  or sale." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446,

4  1452 (9th Cir. 1991).  Plaintiffs have failed to establish *either* prong of that test.

5      First, Trident was not distributed to a "definitely selected group." *Acad. of Motion Picture

6  Arts & Scis.*, 944 F.2d at 1452.  "In general," Cloudmark was "trying to sell" Trident "to

7  enterprises" and was not "limiting" who it was distributed to.  Trial Tr. 374:5-20 (Knox).  The fact

8  that Trident was "a non-performing product" that "lack[ed] the business driver to pursue . . . any

9  further" sales is of no moment. *Id.* at 373:11-21; DX-4068; *see also* DX-4419. "General

10  publication depends on the author making the work available to those interested and not on the

11  number of persons who actually express an interest." *Brown v. Tabb*, 714 F.2d 1088, 1091-92

12  (11th Cir. 1983); 1 NIMMER ON COPYRIGHT § 4.13 ("The mere fact that only a selected group

13  evinced interest in obtaining copies will not render the publication limited.").  Thus, no amount of

14  limited purpose or license restrictions can satisfy the Ninth Circuit's limited publication test.  1

15  NIMMER ON COPYRIGHT § 4.13 ("If the distribution of copies is not limited to a selected group, the

16  publication will be general, not limited, even if restrictions are placed upon the use of the work.").

17      Second, the Trident license agreements give customers the right of "further reproduction"

18  in the form of "as many copies" as specified in licensees' order forms, plus backup and archival

19  copies. *See e.g.*, PX-0416–PX-0417; PX-0404; *see also* Trial Tr. vol. 5, 995:18-996:9 (San Diego)

20  (discussing license restrictions on further distribution, but not on further reproduction).  This is a

21  separate and independent reason to reject Plaintiffs' reliance on limited publication as a matter of

22  law. It was thus not distributed "without the right of further reproduction, distribution, or sale."

23  *Acad. of Motion Picture Arts & Scis.*,  944 F.2d at 1452.

24      In their summary judgment briefing, Plaintiffs posited a separate exception to publication

25  where there are "express or implied restrictions concerning the disclosure of the content of that

26  work."  Dkt. 519 at 23-25.  This is not a separate exception, but tied to the doctrine of limited

27  publication: "[A] work may be considered unpublished if, ***in addition to communicating a work***

28  ***to a definitely selected group and for a limited purpose***, the copyright owner imposed any express

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

or implied restrictions concerning the disclosure of the content of that work[.]"  *Compendium (Third)* § 1905.1.  Plaintiffs' proffered formulation of the limited publication doctrine also makes no sense given that "publication" is defined to include distribution "*by rental, lease or lending*." 17 U.S.C. § 101 (emphasis added).  Rental, lease, and lending agreements, of course, routinely limit the right of further reproduction, distribution, or sale.  Plaintiffs' position would render that portion of the statutory definition a nullity.

Moreover, there is no dispute that Proofpoint knew all of the relevant facts concerning Trident's public offer to over a dozen enterprise customers with access to thousands of licensed seats to Trident, at the time it applied for registration in 2020.  Both Ms. Knox and Mr. San Diego were employees of Proofpoint in 2020, and Ms. Knox was specifically involved in helping prepare the copyright registration applications.  Trial Tr. vol. 2, 358:3-17 (Knox).

Before dismissing Plaintiffs' copyright claims, the Copyright Act requires the Court to obtain the opinion of the Register of Copyrights on whether she would have refused registration under the facts present here. 17 U.S.C. § 411(b)(2).  Plaintiffs do not dispute this.  Dkt. 630 at 47 n.49, 48 n.50, 55 n.53. Defendants accordingly respectfully request that the Court (a) rule that, as a matter of law, Trident was published and Plaintiffs had knowledge of the relevant facts regarding publication; (b) refer this matter to the Copyright Office for the required opinion regarding refusal of registration; and (c) in the event the case is submitted to the jury and the jury returns a verdict before the Register's opinion is received, treat the jury's verdict on any copyright claims as advisory until the Office responds to the Court's referral.

### D.   Vade Defendants Are Entitled to JMOL on Plaintiffs' Respondeat Superior Theory

Vade cannot be held liable under a respondeat superior theory for Lemarié's solo acts of copying or misappropriation; there is no evidence that Mr. Lemarié was acting within the scope of his employment with Vade when he made the copy of Cloudmark code and alleged trade secrets on his laptop.  *Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2018 WL 6813211, at *6 (N.D. Cal. Dec. 27, 2018) (granting motion to dismiss trade secret misappropriation cause of action, including a theory premised on respondeat superior, because the plaintiff did "not plead

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

any facts to show that [employees'] actions were in the scope of their later employment"). In fact, on Plaintiffs' theory, many of the relevant acts of copying and misappropriation by definition occurred *before* Lemarié even joined Vade. For those reasons, any claim of infringement of the copyright covered by "Trident Software" registration and any misappropriation claims based on Lemarié's conduct before or outside the scope of his employment by Vade must be dismissed.

### E.   Defendants Are Entitled to JMOL on Plaintiffs' Claims of Willfulness

Plaintiffs have not proven that Defendants willfully misappropriated their trade secrets or infringed their copyrights. To the contrary, Defendants responded promptly to the claims asserted in this lawsuit by removing the accused code from the O365 product, replacing it twice for good measure, including through a clean room implementation of a new design specification, to ensure that there was no overlapping code in the newer O365 product. No action was required for Vade's more entrenched products, as none of them incorporated any of the allegedly copied code or required that code to function.

### F.   Defendants Are Entitled to JMOL on Damages

#### 1.   Plaintiffs Have Waived Presenting Any Theory of Copyright Infringement Damages

Plaintiffs' counsel has represented to the Court: "*[W]e're not seeking separate damages for copyright*." Pretrial Conf. Tr. 85:24-25. And consistent with this, Plaintiffs presented no evidence to support damages for copyright infringement. Their damages expert conceded that he did not engage in any separate analysis of actual damages for copyright infringement. 8/5 Rough Trial Tr. at 09:45:15-26 (Arnold); Trial Tr. 1646:5-12, 1660:3-22, 1671:15-1672:14 (Arnold). Nor did he make any attempt to prove lost profits with respect to Vade's Content Filter and MTA Builder; he conceded that his analysis was limited to Vade's O365 product. Trial Tr. 1694:14-17 (Arnold) (admitting that the only Vade product for which there was copied code was Vade O365).

Plaintiffs have also failed to demonstrate the necessary "causal link between the infringement and the monetary remedy sought" for Vade O365. *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2005). Plaintiffs acknowledge that the allegedly copied code represents only a portion of the overall Vade O365 product. Trial Tr. 1370:14-23 (Nielson).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

But Plaintiffs have not established that any purchaser of Vade's products did so because of alleged *copying of protected expression*, apart from alleged trade secret misappropriation or copying of elements not subject to copyright protection.  Indeed, Plaintiffs' damages expert only expressed an opinion about the "functionality for detecting and classifying spear phishing" more generally to Vade's O365 product, and failed to engage in any specific analysis of whether the protectable elements of the allegedly copied code were causally related to Vade's profits for that product. Trial Tr. vol. 7, 1695:13-19 (Arnold); *id.* at 1696:15-19.  And, in any event, any code copied from Plaintiffs was removed from Vade's product in 2019; no infringer's profits can properly be obtained from Vade as of that date.

Plaintiffs' copyright claims must be dismissed because they are not entitled to relief on them.  *See MGE UPS Systems, Inc. v. GE Consumer and Indus., Inc.*, 622 F.3d 361, 368-69 (5th Cir. 2010); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  Plaintiffs' monetary relief for copyright infringement must be cabined to relief in connection with sales of the Vade O365 product prior to the removal of the alleged literally copied files in 2019.

### 2.    Plaintiffs Have Not Established a Causal Nexus

#### a.    Plaintiffs Have Failed To Establish Unjust Enrichment or Infringer's Profits

Plaintiffs' claims also fail because they have not established a causal nexus between misappropriation or infringement and any harm to Plaintiffs.  The DTSA permits a plaintiff to recover "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss."  18 U.S.C. § 1836(b)(3)(i)(II).  And the Copyright Act permits a plaintiff to recover defendant's profits attributable to the alleged infringement. 17 U.S.C. § 504. Plaintiffs' unjust enrichment claim (having abandoned any independent theory of copyright liability) is unjustified because they haven't demonstrated misappropriation or infringement, and also because they haven't presented a causal nexus between the use of Plaintiffs' asserted trade secrets, or infringement of their asserted copyrights, and alleged profits or evidence of the value of their trade secrets.

Plaintiffs' failure to present sufficient evidence to carry their burden to show

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1   misappropriation for any of their trade secrets, or infringement of their copyrights, also means

2   Plaintiffs have failed to carry their burden to show Defendants were unjustly enriched from the

3   sales of any of Vade's accused products or are entitled to an award of infringer's profits.

4          Even if Plaintiffs can carry their burden, Plaintiffs have not established a connection

5   between any alleged misappropriation of alleged trade secrets, or alleged copying of Trident source

6   code, and any sales.  Plaintiffs have not identified a Vade sale of any product made because of the

7   alleged trade secrets or alleged copyright infringement.  Instead, Dr. Arnold attributes the entire

8   value of Vade's products (and all revenues) to Plaintiffs' purportedly misappropriated trade

9   secrets.  *See* Trial Tr. 1698:21-24 .  Moreover, Dr. Arnold's opinion is based on numerous

10  assumptions unsupported by any factual record.

11         First, Dr. Arnold asserts that Plaintiffs' trade secrets are integral to the function of O365

12  and Content Filter.  Trial Tr. 1658:10-18.  But there is no proof to support this theory and the

13  evidence shows otherwise.  It is undisputed that Content Filter has been on the market since 2008

14  and was functional long before any former Cloudmark employees joined Vade or allegedly

15  misappropriated any purported trade secrets.  Trial Tr. 1382:24-1383:5 (Nielson).  Similarly, it is

16  undisputed that Vade engaged Zenika to replace the entire spear phishing module for O365.  PX-

17  2273; Trial Tr. 1387:12-14 (Nielson); *id.* at 1387:19-1388:3; *id.* at 1388:12-19; Trial Tr. 801:20-

18  802:21 (Lemarié).  Moreover, Dr. Nielson admitted that "Vade uses components that are modular

19  in design," which makes them functionally "almost independent modules."  Trial Tr. 1348:24-

20  1349:13 (Nielson).  And any copied code for O365 temporarily constituted a *de minimis* portion

21  of O365's product code that was easily replaceable and provided no value to Vade.  *See* Trial Tr.

22  1370:14-23 (Nielson); Trial Tr. vol. 4, 730:5-13 (Lemarié); Trial Tr. vol. 4, at. 731:4-17 (Lemarié).

23         Second, Dr. Arnold also claims that Plaintiffs' alleged unjust enrichment should be

24  assessed as the entire product value of Vade's products.  Trial Tr. vol. 7, 1660:3-1662:5.  Plaintiffs

25  present no evidence to support such a theory and testimony shows that the predicate assumption is

26  false.  Trial Tr. vol. 4, 828:11-25 (Lemarié).  This also contravenes the law and common sense.

27  *Cream Recs., Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828 (9th Cir. 1985); *Univ. Computing

28  Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974); *Egry Reg. Co. v. Standard*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

*Reg. Co.*, 23 F.2d 438, 440 (6th Cir. 1928).  Dr. Arnold admitted valuable functionality such as VRGNI existed prior to any alleged trade secret misappropriation, *id.* at 1660:3-22, and Dr. Arnold admits that a feedback loop for a software product, such as what VRGNI provides Vade, would be valuable to "anyone," *id.* at 1661:22-1662:5.  To then attribute the **entire** revenue of Vade's accused products, which includes this independently valuable functionality, defies reason and law.

Plaintiffs' theory that each of their alleged trade secrets can individually account for the entire value of Vade's product is belied by the record.  Plaintiffs base the bulk of their case on the claim that Defendants' misappropriated code related to Cloudmark's Trident product.  *See* Trial Tr. 1558:24-1559:24, 1562:5-1563:7, 1564:12-16 (Nielson).  But the Trident product was discontinued, is not marketed or sold to customers, and has no value.  *See*, *e.g.*, Trial Tr. 883:8-9 (Cho); *id.* at 348:7-349:8, 370:17-25, 373:17-21 (Knox); PX-4419; DX-4017.

Dr. Arnold's full product value opinion relies on the unsupported assumption that Plaintiffs' alleged trade secrets (or source code files) are the primary drivers of consumer demand for Vade's products.  Trial Tr. at 1646:5-12 (Arnold).  Plaintiffs have presented no evidence to support that assumption, which is belied by the evidence.  For example, on December 13, 2016—months prior to Mr. Lemarié joining Vade—Cloudmark correspondence discussed how Vade "moved away" from a "one size fits all" approach by "providing a modular offer that resonate to [sic] customers."  DX-4289.  Cloudmark also noted that Vade could "offer their solution on-premise and in the cloud."  *Id.*  Dr. Arnold did not address that Vade's partnership network "with Cisco, Mimecast, OX, etc[.]" was a key driver of sales.  *Id.*

b.     **Plaintiffs Have Failed To Establish Actual Damages**

Plaintiffs base their price erosion claim on the assumption that Vade's purported misappropriation of Plaintiffs' alleged trade secrets or infringement of copyrights permitted them to unfairly compete for Apple's business and discount prices.   Trial Tr. at 1674:16-1675:8; *id.* at 1678:4-8.  But Plaintiffs fail to show that other causes did not cause Proofpoint to lower its prices They did not present one fact witness from Proofpoint in support of this theory.  And, once again, the record shows the opposite is true.

Internal Cloudmark correspondence describes how "Cloudmark has been starving its cash

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

cow" of resources due to being "sidetracked."   DX-4707.   Dr. Arnold does not address Cloudmark's own admission that "the resulting decline in the quality of [Cloudmark's filtering] product" because "a lot of damage was done by DNS and Trident," nor why the Cloudmark's poor product quality would affect renewal negotiations.  *Id.*  See also DX-4068; DX-4419; DX-4017. Beyond Cloudmark's internal distractions and bad investments, Dr. Arnold failed to analyze how Cloudmark's "overall accuracy issues at key customers" during the relevant time frame could explain Apple's desire to reduce renewal pricing.   DX-4619.   Lastly, Apple explained that Proofpoint's renewal pricing was substantially higher than Apple's appetite to pay.  *See* DX-4535. Dr. Arnold does not address how this callousness to customers' needs could have affected pricing. Dr. Arnold also did not address that Apple—a firm with plenty of technical know-how of its own— had its own internal development team addressing spam, which Proofpoint was aware of.  DX-4535.  Most importantly, the majority of Apple's contract amount was for ***Proofpoint*** Messaging Security Gateway, and it constitutes the majority of the renewal and discount.  PX-0518.

### 3.     Plaintiffs Have Not Established Any Harm Attributable to Alleged Trade Secret 16

Similarly, Plaintiffs fail to carry their burden that Defendants were unjustly enriched from the misappropriation related to Gateway Daily Licensing Reports, Trial Tr. 1567:13-1568:9 (Arnold), or show there is any value to those reports.  *See id.* 483:2-4, 556:22-557:5 (Roualland). And the sum total of Plaintiffs' evidence that Defendants ever even ***used*** the reports is Dr. Nielson's opinion that Mr. Delannoy "forwarded" them and "used" them "to make an argument to his boss."  *Id.* 1410:20-1411:9 (Nielson).  Plaintiffs have offered no evidence that this entitles them to relief.

### 4.     No Reasonable Jury Could Find Monetary Relief in Excess of $100 Is Appropriate for Plaintiffs' DTSA and Copyright Infringement Claims

At best, Plaintiffs' copying claims will support only nominal damages.  Plaintiffs' own expert admitted that the accused files reflect on the order of 0.05% (5 of 10,000 files) of the Trident source code. Trial Tr. 1370:14-23 (Nielson). And Plaintiffs' witnesses testified that Trident was discontinued after a total of under 50,000 pounds sterling in sales. PX0417; Trial Tr. 373:17-21 (Knox). Plaintiffs admit that the allegedly copied files were removed within a year and no longer

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

1    appear in Vade product code. Trial Tr. 1373:10-17, 1376:7-11, 1386:20-22, 1387:12-14, 1387:19-

2    1388:3  (Nielson).  These facts support only a nominal damages award.

3        **G.    Defendants Are Entitled to JMOL On Injunctive Relief**

4        Plaintiffs have similarly failed to adduce evidence sufficient to support injunctive or other

5    equitable relief or that they have suffered irreparable harm.  *See Flexible Lifeline Systems, Inc. v.*

6    *Precision Lift, Inc.*, 654 F.3d 989, 999-1000 (9th Cir. 2011).[7]  The handful of allegedly copied

7    source code files no longer appear in Vade's products.  Tr. 1373:10-17, 1376:7-11, 1386:20-

8    1387:3, 1387:12-14, 1387:19-1388:3  (Nielson).  And, Plaintiffs' decision to publicly reveal their

9    alleged trade secrets at trial is incompatible with the notion of irreparable harm flowing from

10   Defendants' alleged misappropriation.  Moreover, Plaintiffs' damages expert offered no opinion

11   as to irreparable harm related to copyright infringement.  The record is simply devoid of any

12   evidence to support a finding of irreparable harm.

13       The record is also clear that the public interest would not be served by taking Vade's

14   product off the market.  There is no dispute that Vade's product is adept at addressing the public

15   threat of spear phishing.  PX-1755.  Moreover, Plaintiffs' price erosion theory of damages betrays

16   an intent by Proofpoint to leverage the absence of Vade from the marketplace to support higher

17   prices for its products, to the detriment of Vade's, Proofpoint's, and other email security products'

18   customers.  DX-4688.  Moreover, weighing against the injunction are concrete harms to Vade's

19   customers who would have to expend significant time and resources replacing their software.  *SAS*

20   *Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 388 (4th Cir. 2017) ("Direct effects on

21   innocent third parties have frequently grounded courts' denials of injunctions.").  As the evidence

22   shows, email filtering software must constantly be updated with new versions and functionality

23   and algorithms to stay ahead of malicious actors.  Trial Tr. 1302:8-13, 1304:10-18  (Nielson); Trial

24   Tr. 854:12-19 (Cho); Trial Tr. 675:21-676:3 (Lemarié).  This would not be possible if Vade had

25   to stop sales and licenses.

---

26

27   [7] In addition to raising claims for injunctive relief, Plaintiffs seek an order for impoundment and disposition of infringing copies under 17 U.S.C. § 503.  *See* Dkt. 220 (1st Am. Compl.) ¶¶ 123-24.  But a showing of irreparable harm is required for those other forms of relief as well.  *See*

28   *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

1    Dated: August 5, 2021                           Respectfully Submitted,

2                                                    */s/ Douglas E. Lumish*
                                                     Douglas E. Lumish
3
                                                     Douglas E. Lumish (SBN 183863)
4                                                    Jeffrey G. Homrig (SBN 215890)
                                                     Arman Zahoory (SBN 306421)
5                                                    Ryan Banks (SBN 318171)
                                                     **LATHAM & WATKINS LLP**
6                                                    140 Scott Drive
                                                     Menlo Park, CA 94025
7                                                    Telephone: (650) 328-4600
                                                     Facsimile: (650) 463-2600
8                                                    doug.lumish@lw.com
                                                     jeff.homrig@lw.com
9                                                    arman.zahoory@lw.com
                                                     ryan.banks@lw.com
10
                                                     Margaret A. Tough (SBN 218056)
11                                                   Sadik Huseny (SBN 224659)
                                                     Joseph R. Wetzel (SBN 238008)
12                                                   Julianne Brauer (Admitted *Pro Hac Vice*)
                                                     **LATHAM & WATKINS LLP**
13                                                   505 Montgomery Street, Suite 2000
                                                     San Francisco, CA 91444
14                                                   Telephone: (415) 391-0600
                                                     Facsimile: (415) 395-8095
15                                                   margaret.tough@lw.com
                                                     sadik.huseny@lw.com
16                                                   joe.wetzel@lw.com
                                                     julianne.brauer@lw.com
17
                                                     Joseph H. Lee (SBN 248046)
18                                                   **LATHAM & WATKINS LLP**
                                                     650 Town Center Drive, 20th Floor
19                                                   Costa Mesa, CA 92626
                                                     Telephone: (714) 540-1235
20                                                   Facsimile: (714) 755-8290
                                                     joseph.lee@lw.com
21
                                                     Sarang Vijay Damle (Admitted Pro Hac
22                                                   Vice)
                                                     Holly K. Victorson (SBN 305595)
23                                                   **LATHAM & WATKINS LLP**
                                                     555 11th Street NW, Suite 1000
24                                                   Washington, DC 20004
                                                     Telephone: (202) 637-2336
25                                                   Facsimile: (202) 637-2201
                                                     sy.damle@lw.com
26                                                   holly.victorson@lw.com

27                                                   Danielle L. Benecke (SBN 314896)
                                                     **BAKER & McKENZIE LLP**
28                                                   600 Hansen Way

**LATHAM&WATKINS**LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW

Palo Alto, CA  94304
Telephone: (650) 856-2400
Facsimile: (650) 856-9299
danielle.benecke@bakermckenzie.com

Mackenzie M. Martin (Admitted Pro Hac
Vice)
John G. Flaim (Admitted Pro Hac Vice)
Chaoxuan Liu (Admitted Pro Hac Vice)
Mark Ratway  (Admitted Pro Hac Vice)
Benjamin B. Kelly (Admitted Pro Hac Vice)
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
mackenzie.martin@bakermckenzie.com
john.flaim@bakermckenzie.com
charles.liu@bakermckenzie.com
mark.ratway@bakermckenzie.com
ben.kelly@bakermckenzie.com

Shima S. Roy
**BAKER & McKENZIE LLP**
300 East Randolph Street, Suite 500
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
shima.roy@bakermckenzie.com

Alexander Brauer (Admitted Pro Hac Vice)
(TX SBN 24038780)
**BAILEY BRAUER PLLC**
8350 N. Central Expressway, Suite 650
Dallas, TX 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7435
abrauer@baileybrauer.com

*Attorneys for Defendants*
*Vade Secure, Inc. and Vade Secure SASU*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

27

CASE NO. 3:19-CV-04238-MMC
DEFENDANTS' RULE 50(A) MOTION FOR
JUDGMENT AS A MATTER OF LAW