1   Douglas E. Lumish (SBN 183863)
      doug.lumish@lw.com
2   Jeffrey G. Homrig (SBN 215890)
      jeff.homrig@lw.com
3   Arman Zahoory (SBN 306421)
      arman.zahoory@lw.com
4   Ryan T. Banks (SBN 318171)
      ryan.banks@lw.com
5   **LATHAM & WATKINS LLP**
    140 Scott Drive
6   Menlo Park, CA 94025
    Telephone: (650) 328-4600
7   Facsimile: (650) 463 2600

8   Attorneys for Defendants,
    VADE SECURE, INC. and VADE SECURE SASU
9

10   [Additional counsel listed on signature page]

11

12

13

14

15

16                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
17                      SAN FRANCISCO DIVISION

18   PROOFPOINT, INC.; CLOUDMARK          CASE NO. 3:19-CV-04238-MMC
     LLC,
19                                        **VADE'S OPPOSITION TO PLAINTIFFS'**
                            Plaintiffs,   **MOTION FOR EXEMPLARY DAMAGES**
20        v.
                                          Judge: Hon. Maxine M. Chesney
21   VADE SECURE, INCORPORATED;           Date:  Oct. 29, 2021
     VADE SECURE SASU; OLIVIER            Time:  9:00 AM
22   LEMARIÉ,                             Courtroom:  7, 19th Floor
                            Defendants.
23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

I.      INTRODUCTION ........................................................................................................... 1

4

II.     THE VERDICT ............................................................................................................... 2

5
        A.      Spear-Phishing Alleged Trade Secrets.............................................................. 3
        B.      Gateway Daily Licensing Reports .................................................................... 4

6
        C.      Plaintiffs Instruct the Jury to Send a Message ................................................. 4

7

III.    LEGAL STANDARD ..................................................................................................... 5

8

IV.     ALL THREE *NEAL* FACTORS WEIGH AGAINST EXEMPLARY

9
        DAMAGES ...................................................................................................................... 7
        A.      Factor 1:  Vade's Conduct Was Not Reprehensible, Wanton or

10
                Egregious .......................................................................................................... 7
                1.      The Spear-Phishing Alleged Trade Secrets ......................................... 7

11
                2.      The Gateway Licensing Reports .......................................................... 9
                3.      Comparative Cases Illustrate That Vade Did Not Commit

12
                        "Reprehensible" or "Egregious" Acts ................................................ 10

13
        B.      Factor 2:  The Jury Found No Actual Harm .................................................. 13
        C.      Factor 3:  Vade's Financial Condition Weighs Against Exemplary

14
                Damages .......................................................................................................... 14

15
V.      PLAINTIFFS' ARGUMENTS IGNORE THE STANDARD AND
        REHASH ISSUES ALREADY DECIDED BY THE JURY AND THE COURT .................. 15

16
        A.      Contentious Discovery Does Not Justify Exemplary Damages ........................ 16
        B.      The Jury Considered and Rejected Plaintiffs' Spoliation Claims...................... 16

17
        C.      Mr. Bakewell's Testimony Does Not Justify Punitive Damages ..................... 17

18
        D.      Vade's Employees' Statements Were Not Reprehensible ................................. 19
        E.      Mr. Lotigier's Statements Were Not Reprehensible......................................... 20

19
        F.      Recruiting Cloudmark Employees Is Not Reprehensible ................................. 22

20
        G.      Plaintiffs' Identify No Reason For Additional Deterrence ............................... 23
        H.      Plaintiffs Identify No Pattern of Misconduct ................................................. 24

21
        I.      The Jury's Copyright Infringement Verdict Means Plaintiffs
                Cannot Demand the Maximum Amount of Exemplary Damages ..................... 24

22
VI.     CONCLUSION .............................................................................................................. 26

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Agrofresh Inc. v. Essentiv LLC*,
  2020 WL 7024867 (D. Del. Nov. 30, 2020), *appeal dismissed sub nom. AgroFresh*
5  *Inc. v. Decco U.S. Post-Harvest, Inc*., 2021 WL 2555475 (Fed. Cir. Mar. 29, 2021)..... *passim*

6

*Alla v. Verkay*,
  979 F.Supp.2d 349 (E.D.N.Y. 2013) ...................................................................................19

7

8

*Am. Sales Corp. v. Adventure Travel, Inc*.,
  862 F. Supp. 1476 (E.D. Va. 1994), *on reconsideration in part*, 867 F. Supp. 378
  (E.D. Va. 1994)

9
  ..............................................................................................................................................20

10

*Beard Research, Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010), *judgment aff'd*, 2010 WL 4751770 (Del. 2010) .......................20

11

*Becker Equip., Inc. v. Flynn*,
12  2004-Ohio-1190 (Ohio Ct. App. 2004).............................................................................9, 10

13

*BladeRoom Grp. Ltd. v. Emerson Elec. Co*.,
  2021 WL 3852630 (9th Cir. Aug. 30, 2021).............................................................6, 14, 25

14

*Bladeroom Grp. v. Emerson Elec.*,
15  2019 WL 1117538 (N.D. Cal. Mar. 11, 2019), *vacated and remanded*, 11 F.4th 1010
  (9th Cir. 2021).......................................................................................................................23

16

*BMW of N. Am., Inc. v. Gore*,
17  517 U.S. 559 (1996)........................................................................................................ *passim*

18

*Bombardier Inc. v. Mitsubishi Aircraft Corp*.,
  383 F. Supp. 3d 1169 (W.D. Wash. 2019)............................................................................22

19

*Burke v. Regalado*
20  (10th Cir. 2019) 935 F3d 960 ...............................................................................................24

21

*Citcon USA, LLC v. RiverPay, Inc*.,
  2020 WL 5365980 (N.D. Cal. Sept. 8, 2020) ............................................................... *passim*

22

*DiscoverOrg Data, LLC v. Bitnine Glob., Inc*.,
23  2020 WL 6562333 (N.D. Cal. Nov. 9, 2020) .......................................................................11

24

*Duarte v. St. Barnabas Hosp*.,
  341 F. Supp. 3d 306 (S.D.N.Y. 2018)...................................................................................19

25

*Eagle Oil & Gas Co. v. Shale Expl., LLC*,
26  549 S.W.3d 256 (Tex. App. 2018)..........................................................................................6

27

*EnerTrode, Inc. v. Gen. Capacitor Co*.,
  2019 WL 1715170 (N.D. Cal. Apr. 17, 2019) ..........................................11, 13, 14, 24

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

*Hammonds v. Yeager*,
   2017 WL 10560471 (C.D. Cal. Aug. 9, 2017).......................................................................24

*Luken v. Edwards*,
   2012 WL 5332193 (N.D. Iowa Oct. 26, 2012) ......................................................................19

*Mattel, Inc. v. MGA Ent., Inc.*,
   801 F. Supp. 2d 950 (C.D. Cal. 2011) ........................................................................ *passim*

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
   495 F. Supp. 3d 687 (N.D. Ill. 2020) ......................................................................11, 12, 18

*NCMIC Fin. Corp. v. Artino*,
   638 F. Supp. 2d 1042 (S.D. Iowa 2009) ...............................................................................8

*Neal v. Farmers Ins. Exch.*,
   21 Cal. 3d 910 (1978) ............................................................................................................6

*Reinicke v. Creative Empire, LLC*,
   2013 WL 275900 (S.D. Cal. Jan. 24, 2013)........................................................................25

*ResMan, LLC v. Karya Prop. Mgmt., LLC*,
   2021 WL 3403935 (E.D. Tex. Aug. 4, 2021) ......................................................................13

*Roton Barrier, Inc. v. Stanley Works*,
   79 F.3d 1112 (Fed. Cir. 1996).................................................................................6, 20, 22

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ................................................................................................. *passim*

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
   2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021)............................................................7, 12, 13

*Trent P. Fisher Enters, LLC v. SAS Automation, LLC*,
   2021 WL 1209637 (S.D. Ohio Mar. 31, 2021).........................................................6, 9, 11

*Waymo LLC v. Uber Technologies, Inc. and Ottomotto LLC*,
   3:17-cv-00939-WHA (N.D. Cal. Jan. 3, 2018) ECF No. 2449...............................................22

## STATUTES

18 U.S.C. § 1836(b)(3)(C) ..............................................................................................5, 6, 10

Cal. Civ. Code § 3426.3(c) ...........................................................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

# I.     INTRODUCTION

At trial, Plaintiffs showed no restraint in pursuing their singular goal:  to eliminate Vade as a competitor.  Unsatisfied with merely alleging that Defendants stole Cloudmark technology, Plaintiffs claimed the sole right to use Microsoft's journaling feature for email security—despite the widespread use of that feature in the industry and despite Proofpoint having publicly disclosed its own use of that feature for that purpose.  Plaintiffs also had no evidence that Defendants actually implemented any of Cloudmark's purported MTA trade secrets, so they urged the jury to find misappropriation based on the use of buzzwords in marketing materials.  Their experts studied Vade source code for hundreds of hours, only to find no source code supporting Plaintiffs' allegation that Vade's Content Filter uses Cloudmark's anti-spear-phishing technology.  Plaintiffs made the argument anyway.  They accused Vade's redesigned anti-spear-phishing module—which third-party Zenika developed—without ever analyzing the source code for that module to determine whether it uses any of the alleged trade secrets, and despite acknowledging that none of their trade secrets could be found in the specification used to write that source code.  Despite pressing themes of credibility and ethics, Plaintiffs repeatedly took plainly hypocritical positions— for example by playing up Vade statements about "destroying Cloudmark" when Plaintiffs' own personnel openly talked about "attacking Vade."  Plaintiffs accused nearly every defense witness of lying.  On these and other allegations and trial tactics, Plaintiffs urged the jury to punish Defendants, to "send a message," and demanded $58 million in damages.

The jury heard Plaintiffs' case.  It heard the allegations of spoliation and the ad hominem accusations that Vade and its employees were untrustworthy, unethical, and corrupt.  After three weeks of trial, an entire day of closing arguments, and a week of deliberations, the jury reached a verdict that shows that it saw through many of Plaintiffs' tactics:  it found that Plaintiffs' alleged journaling trade secret was no trade secret at all, that Defendants did not misappropriate Plaintiffs' alleged MTA trade secrets, and that the alleged spear-phishing and licensing report trade secrets were misappropriated, but that Plaintiffs had suffered no actual harm.  The jury awarded $13.495 million in unjust enrichment—a substantial amount, but far less than the $58 million Plaintiffs were seeking.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1   Substantial as that verdict is, Plaintiffs now complain that it is not enough to threaten

2   Vade's existence.  Indeed, their motion faults Vade for acknowledging to the press that the verdict

3   "does not call into question its survival."  With that long-held goal now made explicit, Plaintiffs

4   once again resort to hyperbole and cheap shots.  Instead of tying their demand for exemplary

5   damages to the jury's verdict, or to the relevant facts evident in case law, Plaintiffs rehash

6   discovery disputes and sanctions awards and make the same allegations of spoliation and lying.

7   The cases teach that, even when there is a finding of willful and malicious

8   misappropriation, courts should not award exemplary damages unless there is also evidence of

9   egregious, wanton, and reprehensible conduct that shows a depraved mental state.  The evidence

10  presented at trial regarding the alleged spear-phishing and license report trade secrets illustrates

11  that there is no legitimate basis for awarding exemplary damages here.  To the extent that Plaintiffs

12  attempted to offer evidence of egregious or wanton conduct related to spear phishing, those efforts

13  focused on Mr. Lemarié and asked that his actions be imputed to Vade under the doctrine of

14  *respondeat superior*.  But the jury found that Mr. Lemarié's actions were not willful and

15  malicious—even if they could be imputed to Vade, they do not even qualify for consideration of

16  exemplary damages.  And Vade's actions once it learned of Mr. Lemarié's conduct—removing

17  code, rewriting software, removing him from his roles—demonstrate good faith, not bad faith.

18  Moreover, while Plaintiffs asserted misconduct by Vade related to the Gateway Daily Licensing

19  Reports, Plaintiffs identified—at most—extremely limited use, and no actual harm or unjust

20  enrichment related to the misappropriation of those reports.  On these facts, no exemplary damages

21  are warranted.

22  **II.    THE VERDICT**

23  After deliberating for a full week, the jury delivered a verdict that focused the issues

24  significantly.  The jury determined that the use of journaling for email security (Plaintiffs' alleged

25  trade secret 8) is not a trade secret.  Dkt. 795 at 4 (Verdict).  The jury also found that neither Vade

26  nor Mr. Lemarié misappropriated Plaintiff's MTA technology (alleged trade secrets 17-20).

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    *Id.* 12.  Consequently, the jury's verdict hinges on two categories of alleged trade secrets:  spear

2    phishing (Nos. 1-7, and 9-15[1]) and the Gateway Daily Licensing Reports (No. 16).[2]

3        **A.**        **Spear-Phishing Alleged Trade Secrets**

4           Although Plaintiffs accused all Defendants of misappropriating the alleged spear-phishing

5    trade secrets, the heart of Plaintiffs' spear-phishing case focused on Mr. Lemarié, and the only

6    allegedly unethical acts Plaintiffs identified were directed at him alone.  Specifically, Plaintiffs

7    asked the jury to "[r]emember, there was only one employee at Vade who worked on the initial

8    spear-phishing technology.  That was Mr. Lemarié.  And what did he tell you.  That he had a

9    product code completed in nine months, by himself, working alone on his laptop."  Tr. 2762:23-

10   2763:3 (Pak).  According to Plaintiffs, "[w]hen Mr. Lemarié built identity match," there was

11   "[z]ero evidence that he even did any collaboration.  He worked secretly in his laptop copying

12   code from our backup files that he had in his home server," *id.* at 2770:19-23, and he allegedly

13   destroyed evidence to cover his tracks, *see, e.g.*, *id.* at 199:21-200:8 (Pak), 1496:1-24 (Moore).

14          On the other hand, Plaintiffs presented very limited and indirect evidence about Vade's

15   actions.  This included that Vade allegedly recruited Cloudmark employees and was aware that

16   they were working on similar technologies at both companies, Mot. at 5-6, that other Vade

17   employees were familiar with Plaintiffs' alleged spear-phishing trade secrets, Tr. 2779:22-2782:10

18   (Pak), and that this knowledge permeated into other Vade products, *id.* at 1385:16-1386:12

19   (Nielson) (testifying that Content Filter "***most likely***" used Plaintiffs' alleged trade secrets).  But

20   the evidence also showed that Vade was not aware that Mr. Lemarié had used anything from

21   Cloudmark until after the litigation was filed.  *Id.* at 1831:5-19 (Lotigier).  It also showed that

22   Vade acted responsibly when it learned of Plaintiffs' claims.  Vade reassigned Mr. Lemarié as

23   soon as Plaintiffs filed their complaint, *id.* at 1857:22-1858:3; DX4600; Dkt. 810-7, and

24   Mr. Lemarié "removed the code" from Vade's product (a process that took only two hours), Tr. at

25   [1] Alleged trade secrets 9-15 consist of the combination of alleged trade secret 8 (which the jury
26   found is not a trade secret) with each of the spear-phishing alleged trade secrets 1-7 (which the
27   jury found to be trade secrets).  Thus, use of alleged trade secrets 9-15 requires the use of a spear-
     phishing alleged trade secret and cannot depend solely on the use or implementation of journaling.

28   [2] For the reasons described at trial and in Vade's 50(a) motion for judgment as a matter of law,
     Vade continues to assert that Plaintiffs failed to prove any of their claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1   740:17-741:8 (Lemarié); *id.* at 800:1-9.  When the allegations grew more extensive and specific,

2   Vade put Mr. Lemarié on full administrative leave. Tr. 1858:9-23 (Lotigier); DX4601.   The

3   evidence also showed that Vade acted quickly to replace O365's entire spear-phishing module

4   with third-party code by putting "Zenika in there to replace identitymatch," Tr. 2956:15-19 (Pak),

5   1832:11-1833:11 (Lotigier), even though Mr. Lemarié had already removed the four functions he

6   used.  Plaintiffs could not "find any trade secrets in the specification" provided to Zenika, *id.* at

7   2870:10-21 (Homrig), *see id.* at 1399:8-1400:18 (Nielson) (admitting he did not and cannot show

8   "where the alleged trade secrets are in the specification"), and Plaintiffs' expert could at best testify

9   that Content Filter "***most likely***" uses Plaintiffs' source code, *id.* at 1385:16-1386:12 (Nielson)

10   (failing to identify any evidence in the source code supporting this opinion)*.*  The jury ultimately

11   found that both Vade and Mr. Lemarié misappropriated the alleged spear-phishing trade secrets.

12   Curiously, the jury also found that Mr. Lemarié's misappropriation was *not* willful and malicious,

13   but that Vade's was.  Dkt. 795 at 13-14.

14          **B.     Gateway Daily Licensing Reports**

15          At trial, Plaintiffs contended that Vade misappropriated certain licensing reports, but

16   admitted that they could attribute no value to these reports.  Tr. 1692:5-17 (Arnold).  And the ***only***

17   ***use*** Plaintiffs could identify of those reports was that Mr. Delannoy "forwarded" them to

18   Mr. Lotigier to convince him to "develop a brand-new MTA," and that Mr. Lotigier forwarded

19   them to Mr. Gendre.  *Id.* at 1410:20-1411:9 (Nielson).  Despite Plaintiffs' inability to rebut the

20   undisputed evidence showing that Mr. Lotigier never even looked at the Licensing Reports, much

21   less rebut that they did not factor into his decision to develop Vade's MTA Builder, *id.* at 1845:5-

22   13 (Lotigier), *id.* at 2860:20-2861:4 (Homrig), the jury heard Mr. Lotigier accept responsibility for

23   the fact that Vade had them and admit that Mr. Delannoy "absolutely" should not have sent the

24   reports to him, and that he himself "was careless" in forwarding the reports to Mr. Gendre.  *Id.* at

25   1844:13-23 (Lotigier).   The jury determined that Vade (but not Mr. Lemarié) willfully

26   misappropriated the Licensing Reports.

27          **C.     Plaintiffs Instruct the Jury to Send a Message**

28          From the very beginning to the very end of trial, Plaintiffs urged the jury to punish Vade

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

in order to send a message and deter future misconduct.  During opening, Plaintiffs went beyond simply asking the jury to "hold Vade Secure accountable," *id.* at 196:12-18 (Pak), and instead told the jurors that it was their job "to send a message" to the rest of the world.  *Id*. at 202:9-15.  Plaintiffs hammered this message home during closing arguments where they once again pressed the jury to send "a message not just to the employees of Vade Secure, but the rest of the economy, the rest of society."  *Id.* at 2979:14-19; *see also id.* at 2745:4-10 (asking the jury to "send a message").

After hearing all the evidence presented by both sides, as well as Plaintiffs' instruction that it was the their job to punish Defendants and send a message, the jury determined that Plaintiffs suffered no actual loss and awarded $13.975 million of the $58 million in damages that Plaintiffs' sought.  Dkt. 795 at 18.  Of this, the jury attributed $13.495 million to unjust enrichment, and the remainder to Mr. Lemarié's alleged breach of contract.  *Id.*  While far less than what Plaintiffs requested, this award eclipsed all revenues ever earned by Vade's O365 product, *see* PX1794; *see also* PX1800; PX1821; PX2007; PX2838; Tr. 2612:10-2613:1 (Bakewell), which formed the heart of Plaintiffs' spear-phishing allegations, *id.* at 1344:22-1345:5 (Nielson).

## III.   LEGAL STANDARD

Under the DTSA, the Court **_may_** "award exemplary damages in an amount not more than two times the amount of the damages awarded" if the misappropriation is found to be willful and malicious.  18 U.S.C. § 1836(b)(3)(C).  The fact that "[d]efendants' actions are found to be willful and malicious, however, does not necessarily mean that exemplary damages must follow."  *Agrofresh Inc. v. Essentiv LLC*, 2020 WL 7024867, at *23 (D. Del. Nov. 30, 2020), *appeal dismissed sub nom. AgroFresh Inc. v. Decco U.S. Post-Harvest, Inc*., 2021 WL 2555475 (Fed. Cir. Mar. 29, 2021).  The Supreme Court has also explained that punitive damages awards implicate due process rights, which require that the award of exemplary damages must reasonably correspond with the reprehensibility of the misconduct, the harm or potential harm suffered by the plaintiff, and civil penalties authorized or imposed in comparable cases.  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996).  Therefore, "[l]iability for punitive damages is reserved for particularly egregious cases involving deliberate malice or conscious, blatant wrongdoing which

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    is nearly certain to cause substantial harm." *Trent P. Fisher Enters, LLC v. SAS Automation, LLC*,

2    2021 WL 1209637, at *5 (S.D. Ohio Mar. 31, 2021) (quotation omitted); *see also Roton Barrier,*

3    *Inc. v. Stanley Works*, 79 F.3d 1112, 1120 (Fed. Cir. 1996) (explaining that "punitive damages are

4    not favored in the law, and the courts must take caution to see that punitive damages are not

5    improperly or unwisely awarded" and that they should be "allowed with caution and confined").

6          Consistent with these principles, exemplary damages require more than intentional

7    misappropriation. *Roton Barrier*, 79 F.3d at 1120. Otherwise, "exemplary damages would be

8    recoverable as a matter of course in every misappropriation case, rather than the exceptional case

9    involving egregious misconduct and injury." *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549

10   S.W.3d 256, 285 (Tex. App. 2018); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S.

11   408, 419 (2003); *Trent P. Fisher Enters*, 2021 WL 1209637, at *5 (explaining in DTSA case that

12   "to warrant the imposition of additional punitive damages, above and beyond compensatory

13   damages, the tort must be committed with a particularly depraved mental state, and mere

14   recklessness or carelessness will not suffice") (internal citations and quotation marks omitted).

15         While there is no binding authority applying the DTSA, federal courts in California

16   evaluating exemplary damages in trade secret cases (including in a recent DTSA case) traditionally

17   "consider the following factors in determining whether to award punitive damages: (1) the

18   particular nature of the defendant's acts in light of the record; (2) the amount of compensatory

19   damages awarded; and (3) the wealth of the particular defendant." *Citcon USA, LLC v. RiverPay,*

20   *Inc.*, 2020 WL 5365980, at *5 (N.D. Cal. Sept. 8, 2020) (Cousins, M.J.) (citing *Neal v. Farmers*

21   *Ins. Exch.*, 21 Cal. 3d 910, 928 (1978));[3] *see also BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2021

22   WL 3852630, at *10 (9th Cir. Aug. 30, 2021). The *Neal* factors track the "guideposts" identified

23   by the Supreme Court "for reviewing punitive damages awards," which are: "(1) 'the degree of

24

---

25   [3] Judge Cousins analyzed plaintiff's trade secret claims, which were brought under both the DTSA
     and CUTSA, under the analogous California statute and federal case law regarding punitive
26   damages. *See Citcon*, 2020 WL 5365980, at *5 (applying the five factor test applied by the
     Supreme Court in *State Farm* and considering plaintiff's request for punitive damages under
27   California Civil Code § 3426.3(c)). CUTSA, like the DTSA, authorizes courts to award exemplary
     damages in an amount not more than two times the amount of actual damages and unjust
28   enrichment if the trade secret is willfully and maliciously misappropriated. *See* Cal. Civ. Code
     § 3426.3(c); *see also* 18 U.S.C. § 1836(b)(3)(C) (same).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

6

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

reprehensibility' associated with [the wrongdoer's] actions; (2) 'the disparity between the harm or potential harm suffered' and the size of the punitive award; and (3) the difference between the remedy in this case and the penalties imposed in comparable cases." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc*., 2021 WL 1553926, at *8 (S.D.N.Y. Apr. 20, 2021) (quoting Gore, 517 U.S. at 575).

## IV.     ALL THREE *NEAL* FACTORS WEIGH AGAINST EXEMPLARY DAMAGES

Applying the *Neal* factors to the relevant facts confirms that exemplary damages are not warranted in this case and that Plaintiffs' Motion should be denied.

### A.     Factor 1:  Vade's Conduct Was Not Reprehensible, Wanton or Egregious

Plaintiffs identify no reprehensible conduct that would justify an award of exemplary damages.  Plaintiffs identify no physical harm, no reckless disregard of the health or safety of others, no targeting of the financially vulnerable, no pattern of misconduct, and no intentional malice, trickery, or deceit.  *State Farm*, 538 U.S. at 419.  The Supreme Court has explained, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."  *Id*.  Therefore, while even "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award," "***the absence of all of them renders any award suspect***."  *Id*.[4]  Courts apply these factors to trade secret cases because "parties do not ordinarily expect that misdeeds that cause purely economic loss may expose them to severe exemplary penalties," and because "economic misconduct is not generally reprehensible enough to support a large award of exemplary damages."  *Mattel, Inc. v. MGA Ent., Inc*., 801 F. Supp. 2d 950, 954 (C.D. Cal. 2011); *see also Syntel Sterling*, 2021 WL 1553926, at *8; *Citcon*, 2020 WL 5365980, at *5.

#### 1.     The Spear-Phishing Alleged Trade Secrets

The record is devoid of any egregious or wanton acts by Vade relating to the misappropriation of the spear-phishing alleged trade secrets.  Indeed, Plaintiffs' spear-phishing

---

[4] Emphases supplied unless otherwise noted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

allegations at trial focused on *Mr. Lemarié's* conduct.  Plaintiffs alleged that Mr. Lemarié acted on his own and without Vade's knowledge when he copied Trident source code into Vade's O365 code.  *See* Tr. 2770:19-23 (Pak) ("He worked secretly in his laptop copying code from our backup files that he had in his home server."); *see also id.* at 2762:24-2763:3 ("[T]here was only one employee who worked on the initial spear-phishing technology.  That was Mr. Lemarié . . . by himself, working alone on his laptop.").  But the jury found that Mr. Lemarié's actions were not willful and malicious.  Dkt. 795 at 13-14.  Thus, Mr. Lemarié's actions can hardly support exemplary damages against Vade.  *Citcon USA*, 2020 WL 5365980, at *5 (explaining that courts look at actions of a corporation's other "managing agents" when the jury refuses to find that the individual defendant acted willfully and maliciously).

Here, the fact that Vade was not initially aware of Mr. Lemarié's actions, Tr. 1831:5-19 (Lotigier), counsels against exemplary damages.  *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1081 (S.D. Iowa 2009) ("A situation in which the defendant or defendant's agent did not know but should have known he was acquiring trade secret information lessens the degree of culpability, which may lessen or eliminate the award of punitive damages.") (internal citation and quotation marks omitted).  And when Vade *did* learn of his actions, *after* the lawsuit was filed, it reacted responsibly.  Vade immediately reassigned Mr. Lemarié, Tr. 1857:22-1858:3 (Lotigier); DX4600, and confirmed that he had removed the four functions from Vade's code, Tr. 1832:11-17 (Lotigier); *see also* 740:17-741:8 (Lemarié).  And when Plaintiffs amended their complaint to allege copying of source code, Vade put Mr. Lemarié on full administrative leave.  *Id.* at 1858:9-23 (Lotigier); DX4601.  Vade also engaged Zenika to create a new spear-phishing module in a clean room environment.  Tr. 1832:23-1833:8 (Lotigier) ("[W]e immediately decided to record – remake from zero in a clean room the spear-phishing module with a third-party company.").  Vade did not persist in its course of conduct or try to cover it up—instead, Vade engaged third-party Zenika to create a new spear-phishing module, which shows that Vade sought to use "legitimate means to develop" its products.  *See Agrofresh*, 2020 WL 7024867, at *24, *26 (denying punitive damages where evidence suggested defendants "used some legitimate means to develop their TruPick product").  In these circumstances, exemplary damages are not justified.  *See id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

## 2. **The Gateway Licensing Reports**

Plaintiffs similarly fail to identify any "particularly egregious" behavior by Vade with regard to the misappropriation of Cloudmark's Licensing Reports that would justify exemplary damages. *Trent P. Fisher Enters*, 2021 WL 1209637, at *5. At trial, the ***principal use*** of the reports that Plaintiffs could identify was that Mr. Delannoy forwarded them to Mr. Lotigier to convince him to develop a new MTA. *See*, *e.g.*, Tr. 1315:5-15 (Nielson); *id.* at 1877:9-18 (Lotigier); *id.* at 2737:4-2740:2 (Pak). But Mr. Lotigier testified that he did not consider those reports – or even review them. *Id.* at 1842:12-16, 1844:24-1845:13 (Lotigier). And though he forwarded them to Adrien Gendre, Plaintiffs presented no evidence that Mr. Gendre even opened them, much less evidence to rebut Mr. Delannoy's testimony that he never even spoke to Mr. Gendre about them. *See* Dkt. 785-1 (Delannoy Dep. Desig.) 149:7-11.

Faced with those facts, Plaintiffs seize on the language in Mr. Lotigier's email to Mr. Gendre to allege that he instructed Mr. Gendre to be "discrete with that" and that he treats Plaintiffs' claims as a "joke." *See* Mot. at 1, 6 (citing PX-2254). Plaintiffs' argument misses the forest for the trees—even if one accepts Plaintiffs' interpretation of that email as the basis for the jury's finding of willfulness as to these reports, Plaintiffs have not shown (or even alleged) that anyone other than Mr. Delannoy actually used that information for any purpose. Nor that Vade or Mr. Lotigier sought it out. Nor that Mr. Delannoy did anything extraordinary to obtain it. In sum, there is no evidence of a "blatant wrongdoing which is nearly certain to cause substantial harm," nor was there any showing that Mr. Delannoy, Mr. Lotigier, or anyone else at Vade took actions with respect to the reports that were "committed with a particularly depraved mental state." *Trent P. Fisher Enters.*, 2021 WL 1209637, at *5. To the contrary, the facts show that any discussion of these documents came and went quickly at Vade with no impact on Vade's business, but yet that Vade has taken responsibility for its actions nonetheless. Vade's CEO testified that it was a mistake for Vade to have the reports, and acknowledged unequivocally to the jury that Vade should "absolutely not" have had the reports, that it was a mistake for Mr. Delannoy to send them to him or for him to forward them to Mr. Gendre. Tr. 1844:13-23 (Lotigier); *see also Becker Equip., Inc. v. Flynn*, 2004-Ohio-1190, ¶ 17 (Ohio Ct. App. 2004) (denying punitive damages where defendant

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

9

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

"accepted responsibility for the incident, and apologized"). These facts do not reflect the type of "egregious" conduct that requires additional punishment beyond the "message" the jury was already implored to send. *See Gore*, 517 U.S. at 580 (reversing $2 million punitive damages award where "case exhibits none of the circumstances ordinarily associated with egregiously improper conduct"). Even if one accepts Plaintiffs' contentions, compensatory damages are sufficient.

Finally, even if it *did* rise to the level required for exemplary damages (which it does not), Vade's conduct is entirely disconnected from the damages award, itself. Plaintiffs attributed no damages to the alleged misappropriation of the Gateway Daily Licensing Reports—no actual harm, and no unjust enrichment. Tr. 1692:5-17 (Arnold). Indeed, Plaintiffs admitted they can identify no value for these reports, at all. *Id.*; *see also Becker Equip.*, 2004-Ohio-1190 at ¶ 12 (denying punitive damages where plaintiff "sustained little or no damage as a result of the alleged misconduct"). Plaintiffs should not be able to bootstrap conduct related to the reports into an enhancement of damages that arise solely from the spear-phishing alleged trade secrets. *See* 18 U.S.C. § 1836(b)(3)(C) ("if *the trade secret* is willfully and maliciously misappropriated," the court may "award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B).").

### 3.   Comparative Cases Illustrate That Vade Did Not Commit "Reprehensible" or "Egregious" Acts

Plaintiffs' inability to identify any truly reprehensible conduct on Vade's part places the facts of this case on par with the facts that Judge Cousins evaluated in *Citcon*. As was the case here, the jury in *Citcon* "found that defendants RiverPay and Hua acquired or used Citcon's source code by improper means," *Citcon*, 2020 WL 5365980, at *1, and also that RiverPay was willful and malicious while the employee who committed the conduct, individual defendant Hua, was not. *Id.* at *4. Notwithstanding the jury's verdict on willfulness, the Court declined to award any punitive damages against RiverPay, *inter alia* because "the nature of RiverPay's conduct [wa]s not highly reprehensible." *Id.* at *5 (citing *Mattel*, 801 F. Supp. 2d at 953). In so holding, this Court noted that "RiverPay did not cause physical harm or danger to anyone's health or safety, and RiverPay's conduct was not perpetrated against a financially vulnerable party." *Id.* at *5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    The same is true here.  Plaintiffs identify no "repeated" conduct that "caused physical

2    harm," "disregarded the health or safety of others," or "targeted a financially vulnerable party."

3    *Id.*; *see also Mattel*, 801 F. Supp. 2d at 954.  Nor can Plaintiffs identify any "intentional malice"

4    or "trickery."  *Mattel*, 801 F. Supp. 2d at 953.  Mr. Lotigier acknowledged that the decision to

5    forward the Licensing Reports was a mistake, Tr. 1844:13-23 (Lotigier), but doing so is not the

6    type of conduct that reflects "a particularly depraved mental state" that necessitates exemplary

7    damages.  *See Trent P. Fisher Enters.*, 2021 WL 1209637, at *5; *see also Gore*, 517 U.S. at 576

8    (not "all acts that cause economic harm [are] torts that are sufficiently reprehensible to justify a

9    significant sanction in addition to compensatory damages."); *EnerTrode, Inc. v. Gen. Capacitor*

10   *Co.*, 2019 WL 1715170, at *9 (N.D. Cal. Apr. 17, 2019).

11          Far from supporting Plaintiffs' demands, the cases Plaintiffs cite illustrate why the facts

12   here do not warrant exemplary damages.  For example, the defendants in *DiscoverOrg Data, LLC*

13   *v. Bitnine Glob., Inc.*[5] stole trade secrets by actively logging on to plaintiff's database "using other

14   subscribers' credentials without authorization" in order "to download "hundreds of thousands of

15   records from the database," which it used "for its own sales and marketing purposes, including by

16   conducting an email marketing campaign."  2020 WL 6562333, at *1, *6, *9-10 (N.D. Cal. Nov.

17   9, 2020).  There are no similar allegations here.  And while a former Cloudmark employee shared

18   licensing reports, there is no evidence that Vade conspired with its employees to seek out those

19   reports, as was the case in *DiscoverOrg*.  Nor any evidence that Vade used them beyond Mr.

20   Delannoy sending them to Mr. Lotigier and Mr. Lotigier forwarding them to Mr. Gendre.

21          Plaintiffs' reliance on *Hytera* is even more misplaced.  There, the evidence "showed that

22   at times Hytera re-wrote Motorola's code to conceal that it had been used," *Motorola Sols., Inc. v.*

23   *Hytera Commc'ns Corp.*, 495 F. Supp. 3d 687, 696 (N.D. Ill. 2020), and also that, at the time "Y.T.

24   Kok was hired by Hytera, he initially maintained his employment with Motorola while

25   surreptitiously also working for Hytera," *id.*  Once again, none of those facts apply here; they do

26

---

27   [5] Plaintiffs do not disclose that the posture of *DiscoverOrg* makes it of little use to the Court's
     analysis:  that the case involved a default judgment where the court was required to accept
28   plaintiff's allegations as true, and that the court redacted the amount of punitive damages awarded,
     making it impossible to determine the nature of punishment imposed.  2020 WL 6562333, at *1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    not even come close.  Vade was not aware that Mr. Lemarié used Plaintiffs' spear-phishing source

2    code.  *See* Tr. 2770:19-23, 2762:24-2763:3 (Pak).  And Vade reacted properly as soon as it found

3    out he had:  Vade reassigned Mr. Lemarié immediately, then put him on leave when the allegations

4    grew more specific and extensive.  *Id.* at 1857:22-1858:3, 1858:9-23 (Lotigier); DX4600;

5    DX4601; Dkt. 810-7.  It engaged Zenika to recreate from scratch Vade's spear-phishing module,

6    Tr. 1832:23-1833:8, 1857:22-1858:3 (Lotigier); DX4600, despite the fact that Mr. Lemarié had

7    already removed from Vade's spear-phishing module any of the code he believed used Plaintiffs'

8    code, Tr. 740:17-741:8 (Lemarié).  And while the jury determined that Vade misappropriated the

9    licensing reports, there was no evidence that they had any value or Vade actually used them beyond

10   forwarding them via email.  *See* Tr. 1844:13-1845:13 (Lotigier).  The facts here cannot be

11   compared to those in *Hytera*.

12        *Syntel Sterling* can be distinguished for the same reasons.  2021 WL 1553926, at *9.[6]  The

13   evidence in that case "showed that Syntel engaged in a sustained course of illegal conduct against

14   TriZetto over a period of years," including by misappropriating "over 100 of [plaintiff's] trade

15   secrets" and "downloading more than 700 test cases and automation scripts, pursuant to a long-

16   term strategy" by "using an 'arsenal' of TriZetto's trade secrets to target TriZetto's customers."

17   *Id*.  The evidence went beyond mere misappropriation and showed that "Syntel attempted to

18   conceal possession or use of trade secrets, for example by using references like 'T$Z' to thwart

19   later email searches" and hiding seventeen computers in a closet in India to avoid their examination

20   by a "neutral forensic examiner." *Id*.  Again, the facts in this case do not even come close.  Vade

21   did not engage in a sustained course of misconduct but immediately sprang into action to remove

22   all of Plaintiffs' source code from its products.  And instead of hiding Mr. Lemarié's personal

23   devices, Defendants worked with Plaintiffs to enter into a protocol pursuant to which they would

24   be submitted for forensic examination.  Dkt. 275.

25        Finally, *ResMan, LLC v. Karya Prop. Mgmt., LLC* also involved significantly more

---

[6] Plaintiffs cite to the verdict form in *Syntel* awarding $569,710,384 in punitive damages but fail to disclose the Court found the jury's award to be "excessive" because Syntel had not engaged in "egregious conduct" and granted a new trial on the issue of punitive damages to the extent plaintiff failed to agree to nearly $300 million in remittitur.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1   egregious conduct that makes it distinguishable, including because the defendant continued to use

2   plaintiffs' trade secrets "[d]espite a formal letter from ResMan's outside legal counsel." 2021 WL

3   3403935, at \*14 (E.D. Tex. Aug. 4, 2021). The opposite is true here. Not only do Plaintiffs

4   acknowledge that Mr. Lemarié acted without Vade's knowledge when he copied source code, *see*

5   Tr. 2770:19-23, 2762:24-2763:3 (Pak), the evidence shows that Vade immediately took corrective

6   action after learning about Plaintiffs' claims by removing the implicated code, *id*. at 740:17-741:8

7   (Lemarié), reassigning Mr. Lemarié, *id.* at 1857:22-1858:3 (Lotigier), and engaged Zenika to

8   develop a new spear-phishing module, *id*. at 1832:23-1833:8.

9   ### B.   Factor 2:  The Jury Found No Actual Harm

10   The second *Neal* factor also requires denying Plaintiffs' Motion. Because the purpose of

11   punitive damages is "deterrence and retribution," *State Farm*, 538 U.S. at 416, the relevant

12   yardstick for calculating punitive damages is the actual harm suffered by plaintiff. *Gore*, 517 U.S.

13   at 580 ("The second and perhaps most commonly cited indicium of an unreasonable or excessive

14   punitive damages award is its ratio to the ***actual harm*** inflicted on the plaintiff."); *State Farm*, 538

15   U.S. at 427 (reversing punitive damages award that "had little to do with the ***actual harm***

16   sustained"). This is generally the case even though the DTSA permits the Court to award two

17   times the amount of compensatory damages. *See Syntel Sterling*, 2021 WL 1553926, at \*11

18   (holding in a DTSA case that calculation of punitive damages based on unjust enrichment can be

19   "excessive"); *EnerTrode*, 2019 WL 1715170, at \*9 (holding under analogous CUTSA statute that

20   "an act of considerable reprehensibility will not be seen to justify a proportionally high amount of

21   punitive damages if the ***actual harm*** suffered thereby is small" and denying punitive damages

22   where "[p]laintiffs' sole theory of damages" "was based on unjust enrichment").

23   Here, the jury determined that Vade was unjustly enriched in the amount of $13,495,659.

24   Dkt. 795 at 18. But more importantly, the jury found that Plaintiffs had not suffered any actual

25   harm and awarded nothing in "Actual Loss."[7] The jury's determination that Plaintiffs were not

26   _____

27   [7] The jury also awarded Plaintiffs $480,000 in breach of contract damages against Mr. Lemarié.
     That award is not relevant to Plaintiffs' Motion. Not only because the jury found that Mr. Lemarié

28   did not act willfully and maliciously, but also because "a party cannot collect punitive damages
     for breach of contract awards." *BladeRoom Grp. Ltd.*, 2021 WL 3852630, at \*10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    harmed by Vade's conduct severely undercuts Plaintiffs' demand for the maximum amount of

2    exemplary damages.  *See* Mot. at 2; *see also BladeRoom Grp.*, 2021 WL 3852630, at *10 (punitive

3    damages not justified "if the actual harm suffered [] is small") (internal quotation marks and

4    citation omitted).

5         **C.      Factor 3:  Vade's Financial Condition Weighs Against Exemplary Damages**

6         The third *Neal* factor—Vade's ability to pay—also weighs heavily against awarding

7    exemplary damages.  *Citcon*, 202 WL 5365980, at *5; *Mattel*, 801 F. Supp. 2d at 955-56.

8    Plaintiffs' Motion attempts to justify exemplary damages by complaining that the jury's $13.5

9    million award "does not call into question [Vade's] survival."  Mot. at 12 (citing Ex. 3); *see also*

10   *id.* at 2 (complaining that the jury's verdict leaves "only the risk of a manageable damages award

11   hanging over their heads").  But exemplary damages are not meant to cripple Vade.  *EnerTrode*,

12   2019 WL 1715170, at *9 ("[P]urpose of punitive damages 'is to deter, not to destroy.'").

13        Here, the evidence shows that Vade has been operating at a loss for years, and the litigation

14   costs of this case have severely depleted its resources.  Vade's CFO, Mr. Seguy, testified that Vade

15   is not profitable, Tr. 1900:8-21 (Seguy), and Mr. Bakewell explained that Vade's financial

16   statements show that the Company is "unprofitable" and "losing significant money," *id.* at

17   2630:21-22 (Bakewell) ("when you consider all the costs that Vade has, it's unprofitable"); *id.* at

18   2630:24-2631:2 (Vade "is losing significant money").  Plaintiffs point to Vade's statement to

19   *LesEchos* that the "13.5 million is much less than the annual value of our recurring contracts" and

20   that "Vade continues to achieve 30% to 40% growth, year-over-year."  Mot. at 11.  But Plaintiffs'

21   Motion (like their expert Dr. Arnold) confuses revenues with profits, and Plaintiffs ignore their

22   own Exhibit 1, which explained that "Vade had spent '€13M in 2019' alone fighting the case,

23   which the site characterized as 'half of [Vade's] turnover in legal fees." Dkt. 810-2.  As Plaintiffs

24   acknowledge, "Mr. Bakewell left no room for ambiguity when he told the jury, under oath,

25   "[r]emember, **the bottom line is the company is unprofitable**" when one includes Vade's fixed

26   costs, which are relevant to determining Vade's ability to pay an exemplary damages award.  Mot.

27   at 11 (citing Tr. 2638:13 (Bakewell) (emphasis in Motion)).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    The facts of this case are again quite similar to those in *Citcon*, where Judge Cousins

2  declined to award exemplary damages on the plaintiff's claims despite the jury finding that

3  defendants willfully and maliciously misappropriated plaintiffs' trade secrets.  *Citcon*, 2020 WL

4  5365980, *5-6.  In so doing, Judge Cousins explained that, even though "both corporations in this

5  case boasted at times about their financial success, the evidence before the Court shows that in fact

6  both Citcon and Riverpay are nearly broke."  *Id*. at *6 (explaining that "RiverPay's financial

7  statements through September 2019 showing revenue of about $7.6 million and costs of goods

8  sold of about $6.5 million for a gross margin of just over $1 million not accounting for any other

9  operating expenses").  Based on trial testimony that "RiverPay operated at a net loss" and that

10  "RiverPay's remaining investment funds had been spent on business expenses included attorneys'

11  fees and costs incurred in this litigation," the Court found "that the $1.5 million in compensatory

12  damages for unjust enrichment awarded by the jury is sufficient to both punish RiverPay and to

13  deter similar conduct, especially relative to RiverPay's net worth."  *Id*. at *5-6.  Once again, Judge

14  Cousin's reasoning applies with full force here.  Despite Vade's revenue growth (and its public

15  statements about that growth), the evidence showed that Vade has long been operating at a loss.

16  Tr. 1900:8-21 (Seguy); *id*. at 2630:21-22, 2630:24-2631:5 (Bakewell).  A significant exemplary

17  damages award risks putting Vade out of business, which means the third *Neal* factor counsels

18  against exemplary damages.

19  **V.    PLAINTIFFS' ARGUMENTS IGNORE THE STANDARD AND REHASH
20          ISSUES ALREADY DECIDED BY THE JURY AND THE COURT**

21    Rather than focus on the *Neal* factors, the jury verdict, and the evidence they implicate,

22  Plaintiffs advance a hodgepodge of allegations, insinuations, and previously-resolved issues that

23  have no bearing on their demand for exemplary damages.  As an initial matter, none of the issues

24  Plaintiffs identify is connected to the misappropriation upon which Plaintiffs' claims were

25  premised, and therefore should not be considered.  *State Farm*, 538 U.S. at 422-23 ("A defendant's

26  dissimilar acts, independent from the acts upon which liability was premised, may not serve as the

27  basis for punitive damages.  A defendant should be punished for the conduct that harmed the

28  plaintiff, not for being an unsavory individual or business.").  Nonetheless, even if it were relevant

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

to their Motion, none of the conduct Plaintiffs identify can be described as reprehensible and warranting exemplary damages.

### A.      Contentious Discovery Does Not Justify Exemplary Damages

Plaintiffs devote significant portions of their Motion to rehashing discovery disputes. *See*, *e.g.*, Mot. at 16-18. But these issues have been heavily litigated and decided, and the Court has already sanctioned Vade and its prior counsel nearly $100,000. Dkt. 376. Vade paid that sanction without objection. *See* Dkt. 388. There is no basis to punish Vade again for that conduct.

The district court in *Agrofresh*, another recent DTSA case in which the court declined to award exemplary damages, rejected a similar argument. 2020 WL 7024867, at *26. There, Plaintiffs "assert[ed] that [d]efendants engaged in litigation misconduct," which plaintiffs claimed provided "further support for an award of exemplary damages." *Id.* at *25. In denying exemplary damages, the Court recounted that the "case was bitterly fought and fueled on both sides by ill-will and hard feelings," the result of which "was a case that was over-litigated – sometimes unprofessionally." *Id.* Despite specifically faulting defendants for being "less than forthcoming with discovery," which resulted "in an excess of discovery motions being filed," the court also explained that, "[t]o the extent that the parties are simply rehashing pretrial and discovery disputes, neither side has cited any support for the proposition that litigation conduct is a relevant factor to consider in the exemplary-damages inquiry and, as such, the Court will not take it into account in reaching its conclusion." *Id.* That analysis applies here, and Judge Illman already sanctioned Vade for its part in the contentious discovery that attended this action. Dkt. 376. Though there is no doubt that this "case was bitterly fought" and "over-litigated," *see Agrofresh*, 2020 WL 7024867, at *25, there is no basis to sanction Vade for the same conduct a second time. *See id.* at *26.

### B.      The Jury Considered and Rejected Plaintiffs' Spoliation Claims

Plaintiffs also argue that Vade should be punished because Mr. Lemarié allegedly destroyed relevant evidence. Plaintiffs' Motion refers to and quotes the same paragraph from Judge Illman's R&R three times, Mot. at 1, 3, 17, to claim "Vade still has not incurred the consequences it invited upon itself," *id.* at 2. But what Plaintiffs refuse to acknowledge is that the Court ultimately decided to refer Plaintiffs' spoliation claims to the jury, and so any such alleged

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

16

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    misconduct is already baked into the verdict and the "message" Plaintiffs begged the jury to send.

2    July 23 Hrg. Tr. 45:19-23; *see also* Dkt. 734.  In particular, the jury heard Plaintiffs' spoliation

3    claims at length, including that "Vade's CTO installed a file deletion application with file

4    "Shredder" function on his laptop and deleted at least 90 GB of data over seven months, as well

5    as deleted clearly relevant evidence."  Mot. at 7.  The jury also heard Plaintiffs' expert admit that,

6    other than the two Trade Secrets Notes documents, Plaintiffs could not "identify any additional

7    documents that have been deleted" by Mr. Lemarié, Tr. 1519:15-24, that the "intended" "primary

8    function" of CleanMyMac X was performance optimization, *id.* 1515:2-7, and also that Plaintiffs

9    had "not one bit of evidence that Shredder was used in this case," *id.* at 1521:8-18.  Notably, all of

10   this evidence of alleged spoliation focused on the acts of Mr. Lemarié, and Plaintiffs proffered no

11   evidence of any alleged spoliation by Vade.  And yet, after hearing all that evidence, the jury

12   determined that Mr. Lemarié had not acted willfully and maliciously.  Dkt. 795 at 13-14.  It would

13   be nonsensical now to assess punitive damages against Vade for Mr. Lemarié's conduct when the

14   jury found that conduct was neither willful nor malicious.  *Citcon*, 2020 WL 5365980, at *5.

15          **C.      Mr. Bakewell's Testimony Does Not Justify Punitive Damages**

16          Plaintiffs have worked hard throughout this case to exclude Mr. Bakewell's cost deduction

17   testimony in the hopes of allowing Dr. Arnold to pass off Vade's gross revenues as its "profits."

18   Plaintiffs first asked Judge Illman to exclude that testimony as untimely disclosed, Dkt. 446 at 2-

19   3, then asked this Court to exclude it under *Daubert*, Dkt. 496.1 at 10-13.  Plaintiffs' motion revives

20   the same arguments (and case law) to support their demand for exemplary damages.

21          Plaintiffs have no basis to accuse Vade of "misrepresenting its expert's opinions" to allow

22   Mr. Bakewell "to present faulty and impermissible cost deductions to the jury."  Mot. at 2.

23   Mr. Bakewell testified during *voir dire* that he performed a revenue-based cost allocation for each

24   year and "***used the same percentage for the costs***" when compared to revenue for each year in his

25   analysis because there was "no real difference between these products."  Tr. 2284:6-2285:5

26   (Bakewell); *see also*, *e.g.*, *id.* at 2310:4-17, 2276:3-9, 2284:6-2285:5, 2291:6-9; 2281:20-2282:10

27   (Bakewell).  Mr. Bakewell's testimony in *voir dire* was consistent with his testimony at trial, where

28   he presented the same analysis (and same cost deductions) that were contained in his report and

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    explained at *voir dire*.   *See, e.g., id.* at 2632:2-14, 2636:16-22; 2637:20-25; 2638:1-2639:1

2    (Bakewell).  And as Mr. Bakewell explained in his *voir dire* and on the stand, even though he

3    excluded certain **categories** of fixed costs, including certain taxes, from his cost analysis, the

4    **categories** of variable costs he deducted might have contained some minor taxes, like sales taxes

5    and VAT, that were not excluded.  *See, e.g., id.* at 2307:25-2308:10, 2667:1-4, 2668:11-16

6    (Bakewell).  The taxes he did include were minimal, and in some cases zero.  *See, e.g.*, DX-4579.

7        Any potential flaws in Mr. Bakewell's approach or inconsistencies in his testimony were

8    issues for cross examination—not a basis for punitive damages, and as Plaintiffs' Motion argues,

9    "Mr. Bakewell was confronted by uncontested evidence on cross examination."  Tr. 2971:8-

10   2972:2.  Plaintiffs' cited authority makes clear there is no basis to alter the jury's damages award

11   by supplementing it with exemplary damages.  Specifically, the defendant in *Hytera* argued after

12   trial that the Court should reduce the jury's damages award because Motorola's expert "improperly

13   excluded Hytera's legitimate research and development costs."  *See Hytera*, 495 F. Supp. 3d at

14   711.  The Court rejected Hytera's request and explained that it was "a question for the jury" "to

15   weigh credibility in this respect" and "as such, the Court will not disturb the jury's verdict on this

16   point."  *Id*.  The same is true here.  After substantial briefing and a multi-hour *voir dire*, the Court

17   left it for the jury to judge the credibility of the parties' damages experts and decide on a final

18   damages figure.  The jury did exactly that and Plaintiffs' disappointment with that award or their

19   disagreement with Mr. Bakewell's testimony are no bases to reverse that decision now. *See Hytera*,

20   495 F. Supp. 3d at 711; Tr. 2311:22-2312:2 (the Court describing Plaintiffs' objections as going

21   "to the weight more than the admissibility").

22       Moreover, Plaintiffs' false allegation that "Mr. Bakewell made certain representations to

23   the Court under oath" but "was confronted by uncontested evidence on cross examination of the

24   exact opposite," Mot. at 7, is not legally relevant to the Court's decision on punitive damages.

25   This is because "to say that a jury could award punitive damages based on trial perjury would be

26   to authorize punitive damages in almost every case in which the jury credits the plaintiff over the

27   defendant."  *Alla v. Verkay*, 979 F. Supp. 2d 349, 373 n.1 (E.D.N.Y. 2013); *see also Duarte v. St.

28   Barnabas Hosp.*, 341 F. Supp. 3d 306, 330, n.14 (S.D.N.Y. 2018) (punitive damages based on trial

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1  perjury is "inconsistent with Supreme Court precedent, which instructs courts to focus on the

2  'reprehensibility of the tortious conduct,' not on a witness's conduct at trial.") (citing *Gore*, 517

3  U.S. at 575); *Luken v. Edwards*, 2012 WL 5332193, at *3 (N.D. Iowa Oct. 26, 2012) ("[plaintiff]

4  cites no legal authority that false testimony under oath at trial, rather than facts giving rise to a

5  legal cause of action[,] may support punitive damages, and I know of none."). Mr. Bakewell's

6  testimony was truthful and accurate; it supplies no proper ground for exemplary damages.

7         **D.**     **Vade's Employees' Statements Were Not Reprehensible**

8         Plaintiffs also assert that statements by Vade's employees show disrespect for the

9  American judicial system and Plaintiffs' intellectual property rights, and ask the Court to punish

10  Vade. Plaintiffs once again substitute hyperbolic ad hominem for evidence and fail to identify any

11  relevant reprehensible conduct.

12         Plaintiffs repeatedly quote statements by Vade employees about their competition with

13  Cloudmark. *See*, *e.g.*, Mot. at 5 (claiming it was "Vade's goal to 'destroy,' 'carpet bomb,'

14  'completely push back Cloudmark in the market'"). As shown at trial, ***both*** parties, as competitors,

15  unsurprisingly used the same sort of melodramatic language about the other, and Plaintiffs'

16  argument would impose an unfair and unwarranted double-standard. *See*, *e.g.*, Tr. 1043:18-1045:1

17  (San Diego) (discussing DX-4031 and the "need to attack Vade,"), 1045:16-1046:5 (discussing

18  DX-4031 and Cloudmark's plan to "beat Vade Secure" by "lay[ing] the landmines"), 1035:15-

19  1036:18 (discussing DX4688 and admitting Cloudmark's desire to "eliminate the competitive

20  threat").

21         Here again, the decision in *Agrofresh* is instructive. In that case, the court noted "there is

22  evidence that "Defendants delighted in the approval of their product and how it might frustrate

23  Plaintiffs' business." *Agrofresh*, 2020 WL 7024867, at *24. Nonetheless, the Court explained

24  that "Defendants were pursuing a legitimate business interest," and despite defendants'

25  unflattering actions, the evidence showed that defendants' product "was not simply a copy of

26  Plaintiff's SmartFresh created solely by trade secret misappropriation." *Id*. In denying punitive

27  damages, the court focused on the fact that "although Defendants misappropriated trade secrets,

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1  they were also motivated by competition and used some legitimate means to develop their TruPick

2  product." *Id.*

3      *American Sales Corporation v. Adventure Travel* also provides useful guidance.  *Am. Sales*

4  *Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1481 (E.D. Va. 1994), *on reconsideration in*

5  *part*, 867 F. Supp. 378 (E.D. Va. 1994).  There, the plaintiff asked for punitive damages and

6  pointed to defendant's "statement that he wanted to 'destroy' plaintiff, and other disparaging

7  remarks by defendant's representatives." *Id.*  The Court explained that the statements "were taken

8  out of context," and in any event, defendant's "ultimate motive was to contact strong potential

9  clients and develop his own business." *Id.*

10      The analyses from *Agrofresh* and *American Sales* apply here.  Aggressive statements about

11  competition with Cloudmark provide no basis to award exemplary damages.  *See id.*; *see also*

12  *Beard Research, Inc. v. Kates*, 8 A.3d 573, 600-601 (Del. Ch. 2010), *judgment aff'd*, 2010 WL

13  4751770 (Del. 2010) (denying punitive damages based on conversations in which defendants

14  "laughed about how they were going to take CB's contract with Pfizer and 'bury' CB" where there

15  was "no evidence connecting this malice to [d]efendants' misappropriation of the CB Trade

16  Secrets"); *Roton Barrier, Inc.*, 79 F.3d at 1120 (reversing trial court's punitive damages award

17  where it was "clear that Stanley was motivated by competition," which "by its very nature "is

18  ruthless, unprincipled, uncharitable, unforgiving" but also "a boon to society"); Tr. 180:14-15

19  (Pak) ("We don't have a problem with competition."), 2729:4-5 ("We welcome competition.").

20      **E.      Mr. Lotigier's Statements Were Not Reprehensible**

21      Plaintiffs also accuse Mr. Lotigier of making false public statements and disrespecting this

22  Court.  Plaintiffs first highlight a press report that "Mr. Lotigier told major French media outlets"

23  during this litigation "that Vade was '100% clean' and this litigation was nothing more than 'legal

24  harassment,'" Mot. at 2, 4, 10, 16, thereby implying that Vade tried to cover up Mr. Lemarié's

25  actions.  Plaintiffs also point to Mr. Lotigier's testimony at trial, which they claim described

26  "Plaintiffs' allegations and claims are 'pretend,'" Mot. at 7 (citing Tr. 1864:5-1865:1 (Lotigier)),

27  and to Mr. Lotigier's post-verdict statements to the media that Vade was "pleased to note from the

28  jury's decision on damages, that the jurors considered Proofpoint's and Cloudmark's claims to be

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
SILICON VALLEY

20

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

excessive" and that "Proofpoint/Cloudmark has not sufficiently demonstrated the validity of its claims."[8] Dkt. 810-3 at 1; *see also* Dkt. 810-2 ("While we were hopeful we would be successful on all claims, we are pleased that the jury saw that Proofpoint and Cloudmark's claims were an overreach as evidenced by their decision on damages."); Dkt. 810-4 at 2.  Plaintiffs describe these statements as "rejecting the jury's liability finding and scoffing at the jury's compensatory damages award."  Mot. at 2.

Setting aside Plaintiffs' bizarre claim that Mr. Lotigier's statement that he was "pleased" that the jury did not award all of the exorbitant damages requested by Plaintiffs somehow reflected him "scoffing at" their determination, the fact is that these statements are once again not the type of egregious, reprehensible conduct that can form the basis for awarding punitive damages, and Plaintiffs' focus on them is telling.  To begin with, Mr. Lotigier's "100% clean comment" was made on August 29, 2020, ***after*** Zenika had replaced the entire accused spear-phishing module.  Tr. 1832:23–1833:8 (Lotigier).  Moreover, Mr. Lotigier's testimony at trial was, in effect, that he saw Plaintiffs' claims as overreaching and having been brought for the ulterior motive of crushing Vade, not as a genuine effort to protect Plaintiffs' legitimate intellectual property.  His difficulty finding the right words is not a basis to punish Vade.  *See* Tr. 1864:8-13 (Lotigier) ("'Is pretending.'  Is that correct English?").  This opinion is not misconduct, but a personal viewpoint that Mr. Lotigier is entitled to hold.  And it is accurate.  After years of litigation, countless discovery disputes, millions of dollars spent by both sides, three weeks of trial, and a week of deliberations, the jury rejected significant aspects of Plaintiffs' case and awarded Plaintiffs less than a quarter of the damages they sought.  *See* Dkt. 795.  That is the definition of overreach.

Nonetheless, Plaintiffs repeatedly assert that Vade and its CEO have failed to "pay due respect to the determinations of the U.S. judicial system."  Mot at 2; *see also id.* at 16.  Here again, Plaintiffs ignore reality.   Despite myriad other responsibilities, Mr. Lotigier, Vade's CEO, travelled from France to the United States and was present for the entire trial, including deliberations.  Tr. 1860:6-17.  He lived out of a hotel in a foreign country for a month, willingly submitted to examination and cross-examination, and did his best to testify in English, all out of

---

[8] Plaintiffs' Motion cites this specific statement five times.  *See* Mot. at 2, 8, 10, 11.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

21

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1    respect for the jury and the Court.  And while Plaintiffs repeatedly fault Vade for not firing its

2    employees, Mot. at 6, Mr. Lotigier explained that the Company's decision not to do so was so that

3    it would not pre-judge these people whose livelihoods depend on Vade, but to leave that to the

4    Court and the jury.  Tr. 1858:24–1859:7.  This is the opposite of disrespect for our justice system.

5        In the end, Mr. Lotigier has neither said nor done anything "reprehensible" that would

6    warrant exemplary damages.

7        **F.**    **Recruiting Cloudmark Employees Is Not Reprehensible**

8        Plaintiffs also point to the fact that Vade recruited Cloudmark employees and allowed them

9    to work on the same technologies at Vade.  Mot. at 5-6 (citing PX2288.0002, PX2257, Dkt. 785-

10    1 (Lotigier Dep Designations) 251:4-251:12, 255:9-17).  But employee mobility is no crime, and

11    there is no evidence that Vade hired Cloudmark employees to steal trade secrets.

12        The record shows that Mr. Boussinet, who Vade purportedly recruited to work on spear

13    phishing, did not actually work on spear phishing after he joined Vade.  *See* PX-2288.0002

14    (Mr. Goutal stating "Boussinet was initially recruited to work on spear phishing" but "has been

15    working on a lot of other things" instead).  It also shows Vade had not decided whether it would

16    hire Mr. Lemarié until after he had already left Cloudmark.  *See id*.  Plaintiffs focus on

17    Mr. Lotigier's statement to Mr. Goutal saying he "would do whatever to weaken" Cloudmark.

18    Mot. at 5-6, 12.  But even if this statement is taken as true (and Mr. Lotigier said it was not, Dkt.

19    785-1 (Lotigier Dep. Designation) 256:14-17), trying to weaken a competitor is not reprehensible,

20    it is just competition.  *Roton Barrier, Inc*., 79 F.3d at 1120.

21        In sum, hiring a competitor's employees and competing aggressively in the market place

22    are not unlawful and cannot form the basis of Plaintiffs' misappropriation claims, much less a

23    punitive damages award.  *See Bombardier Inc. v. Mitsubishi Aircraft Corp*., 383 F. Supp. 3d 1169,

24    1182 (W.D. Wash. 2019) ("[M]erely recruiting another company's employees does not meet the

25    knowledge requirement for trade secret misappropriation."); *see also Waymo LLC v. Uber Techs.,*

26    *Inc. and Ottomotto LLC*, 3:17-cv-00939-WHA (N.D. Cal. Jan. 3, 2018) ECF No. 2449, Jury

27    Instruction Nos. VII, XV ("employees have the right to change employers and to apply their talents

28    and skills in their new jobs").  Plaintiffs' motion should be denied.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

22

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

### G.    Plaintiffs' Identify No Reason For Additional Deterrence

Plaintiffs repeatedly argue that a significant exemplary damages award is necessary for deterrence. Mot. at i, 1-2, 9, 11-12, 14-15, 16-18. But as explained throughout this brief, Plaintiffs identify no wanton or egregious conduct that justifies a significant exemplary damages award necessary for deterrence. As detailed above, while Plaintiffs accuse Mr. Lemarié of secretly copying source code, the jury determined he did not act willfully or maliciously. Plaintiffs identify no similar acts by Vade, and Vade took immediate action to address Mr. Lemarié's conduct as it was discovered. Under these facts, no further deterrence is necessary.

More importantly, Plaintiffs' efforts from the moment they filed the complaint to publicize their claims and communicate them directly to others in the industry undermines their claim that exemplary damages are necessary for deterrence. Courts regularly hold that the "interest in deterrence is not at its strongest" where "other members of the close-knit [] industry have been alerted to [defendant's] misconduct as a result of this litigation and are likely to cast a wary eye towards their competitor in the future." *Mattel*, 801 F. Supp. 2d at 955; *see also* DX-4011 (email from J. Kilroy to Apple on Jul. 24, 2019 re "Heads up – Proofpoint trade secret litigation"); *Bladeroom Grp. v. Emerson Elec.*, 2019 WL 1117538, at *2 (N.D. Cal. Mar. 11, 2019), *vacated and remanded*, 11 F.4th 1010 (9th Cir. 2021) ("[N]eed for deterrence is not as its strongest," where "offenses have been exposed to all other participants in the data center market").[9]

Plaintiffs separately argue that a large award is necessary because their claims were "highly technical, often involving multiple versions of source code" and "because further misconduct may be impossible or difficult to prove." Mot. at 15. Plaintiffs claim this "problem is exacerbated" by the fact that "there remains the possibility that other Cloudmark files among [Mr. Lemarié's] database may be restored and accessed by Vade unbeknownst to Plaintiffs." *Id.* But Mr. Lemarié no longer works at Vade (he recently resigned), and Plaintiffs' wild guesswork is not a reason to further punish Vade. Moreover, the undisputed evidence shows that Mr. Lemarié deleted the Cloudmark source code that was in his possession before this lawsuit was filed, and Plaintiffs'

---

[9] As explained below, the Ninth Circuit reversed the $30 million punitive damages award in *BladeRoom* as an abuse of discretion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

inability to find their trade secrets in Vade's source code does not justify exemplary damages.  Tr. 650:13-24 (Lemarié); *id.* at 1392:1-15 (Nielson), 1382:24-1383:1, 1385:16-19; 1395:1-13, 1400:2-13, 1412:9-14.

Furthermore, it is reasonable to assume that the jury's award already incorporates some amount of punitive damages, especially given Plaintiffs' repeated request that the jury "send a message" by punishing Vade.  *See*, *e.g.*, Tr. 202:9-15 (Pak); *id.* at 2979:14-16.  Counsel's statements to the jury constituted appeals to "passion and prejudice" that introduced the real possibility that the jury's verdict already incorporates some form of punitive damages.  *See Hammonds v. Yeager*, 2017 WL 10560471, at \*1 (C.D. Cal. Aug. 9, 2017); *see also Burke v. Regalado* 935 F3d 960, 1029 (10th Cir. 2019) (assuming without deciding that counsel's remark to "send a message with compensatory damages that no one ever has to experience that again" improperly linked deterrence to compensatory damages instead of punitive damages).

### H.     Plaintiffs Identify No Pattern of Misconduct

In addition to their deterrence arguments, Plaintiffs also claim that Vade should be punished because "Vade's misappropriation was not limited to a single instance but, instead, evinces a widespread pattern and culture of disregard for intellectual property rights." Mot. at 16. Plaintiffs' Motion proves up no such pattern because there was none.  The facts presented at trial showed Mr. Lemarié acted on his own when he copied Plaintiffs' spear-phishing source code, Tr. 2770:19-23, 2762:23-2763:8 (Pak), and that Vade acted responsibly when it learned about Plaintiffs' claims.  *See supra* IV.A.  Recognizing this, Plaintiffs again rely on Vade's statements to the press, the parties' discovery disputes, Plaintiffs' claims of spoliation, and Vade's choice not to engage in expedited discovery when Plaintiffs first filed their case.  Mot. at 16-18.  These actions do not constitute repeated acts of misconduct.  *State Farm*, 538 U.S. at 422-23.  Vade is not a "recidivist," and there is no "repeated misconduct" to punish.  *EnerTrode*, 2019 WL 1715170, at \* 8 (denying exemplary damages where "evidence introduced at trial" failed to show "Dr. Zheng committed any act of misconduct toward third parties or over a prolonged period").

### I.     The Jury's Copyright Infringement Verdict Means Plaintiffs Cannot Demand the Maximum Amount of Exemplary Damages

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1      Plaintiffs ask this Court to award the "full extent of exemplary damages under the DTSA,"

2  or $26,991,318.  Mot. at 2.  But, independent of all other reasons for declining to award exemplary

3  damages, this Court *cannot* award twice the amount of the jury's unjust enrichment award, because

4  that award also included damages for Plaintiffs' copyright claims.  Courts in this Circuit agree that

5  the Copyright Act does not provide for exemplary or punitive damages.  *Reinicke v. Creative*

6  *Empire, LLC*, 2013 WL 275900, at *5 (S.D. Cal. Jan. 24, 2013) (collecting cases and holding

7  "Punitive damages are not available under the Copyright Act").  But Plaintiffs repeatedly asserted

8  that their copyright and misappropriation claims were one and the same,. that they were based on

9  the same set of facts, and that they involved the same set of damages.  Plaintiffs argued that

10  identitymatch is "the code that uses our trade secrets and our copyrighted code," Tr. 2783:1-2

11  (Pak), and that identitymatch is "clearly a product that infringes Cloudmark's copyrights and uses

12  those trade-secret algorithms," *id.* at 2788:12-17 (Pak); *see also* Tr. 2784:1-4.  Plaintiffs' damages

13  expert admitted that his analysis "does not have anything separate with respect to a copyright

14  damages measure."  Tr. 1745:21-24 (Arnold).  Given the fact that the jury was not asked to

15  differentiate between damages awarded for copyright infringement versus trade secret

16  misappropriation, *see* Dkt. 795 at 18, there is no logical basis in the record to support an assumption

17  that the entire damages award was for misappropriation.

18      The Ninth Circuit confronted a similar set of facts in a trade secret case and reversed the

19  district court's punitive damages award just one month ago.  Specifically, in *BladeRoom Grp*., the

20  Ninth Circuit vacated the district court's punitive damages award "[b]ecause the jury awarded a

21  lump sum for breach of contract and misappropriation damages," which meant "the district court

22  could not assume that the whole award went to misappropriation." *BladeRoom Grp.*, 2021 WL

23  3852630, at *10.  Plaintiffs' Motion ignores their case theory and the jury's verdict, which makes

24  clear that the jury's unjust enrichment award incorporates benefit to Vade from purported

25  copyright infringement.  Any overlap between the unjust enrichment awarded for both claims must

26  be deducted from the total before any final amount is identified.  *Id*.  And because Plaintiffs failed

27  to build a record that would permit such a deduction, no exemplary damages should be awarded.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

# VI.     CONCLUSION

For the reasons described above, Vade respectfully requests that Plaintiffs' Motion be denied.


October: October 1, 2021                              Respectfully Submitted,

                                                     */s/ Jeffrey G. Homrig*
                                                     Jeffrey G. Homrig

                                                     Douglas E. Lumish (SBN 183863)
                                                     Jeffrey G. Homrig (SBN 215890)
                                                     Arman Zahoory (SBN 306421)
                                                     Ryan Banks (SBN 318171)
                                                     **LATHAM & WATKINS LLP**
                                                     140 Scott Drive
                                                     Menlo Park, CA 94025
                                                     Telephone: (650) 328-4600
                                                     Facsimile: (650) 463-2600
                                                     doug.lumish@lw.com
                                                     jeff.homrig@lw.com
                                                     arman.zahoory@lw.com
                                                     ryan.banks@lw.com

                                                     Margaret A. Tough (SBN 218056)
                                                     Sadik Huseny (SBN 224659)
                                                     Joseph R. Wetzel (SBN 238008)
                                                     Julianne Brauer (Admitted *Pro Hac Vice*)
                                                     **LATHAM & WATKINS LLP**
                                                     505 Montgomery Street, Suite 2000
                                                     San Francisco, CA 91444
                                                     Telephone: (415) 391-0600
                                                     Facsimile: (415) 395-8095
                                                     margaret.tough@lw.com
                                                     sadik.huseny@lw.com
                                                     joe.wetzel@lw.com
                                                     julianne.brauer@lw.com

                                                     Joseph H. Lee (SBN 248046)
                                                     **LATHAM & WATKINS LLP**
                                                     650 Town Center Drive, 20th Floor
                                                     Costa Mesa, CA 92626
                                                     Telephone: (714) 540-1235
                                                     Facsimile: (714) 755-8290
                                                     joseph.lee@lw.com

                                                     Sarang Vijay Damle (Admitted Pro Hac Vice)
                                                     Holly K. Victorson (SBN 305595)
                                                     **LATHAM & WATKINS LLP**
                                                     555 11th Street NW, Suite 1000
                                                     Washington, DC 20004

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone: (202) 637-2336
Facsimile: (202) 637-2201
sy.damle@lw.com
holly.victorson@lw.com

Danielle L. Benecke (SBN 314896)
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone: (650) 856-2400
Facsimile: (650) 856-9299
danielle.benecke@bakermckenzie.com

Mackenzie M. Martin (Admitted Pro Hac Vice)
John G. Flaim (Admitted Pro Hac Vice)
Chaoxuan Liu (Admitted Pro Hac Vice)
Mark Ratway  (Admitted Pro Hac Vice)
Benjamin B. Kelly (Admitted Pro Hac Vice)
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099
mackenzie.martin@bakermckenzie.com
john.flaim@bakermckenzie.com
charles.liu@bakermckenzie.com
mark.ratway@bakermckenzie.com
ben.kelly@bakermckenzie.com

Shima S. Roy
**BAKER & McKENZIE LLP**
300 East Randolph Street, Suite 500
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
shima.roy@bakermckenzie.com

Alexander Brauer (Admitted Pro Hac Vice)
(TX SBN 24038780)
**BAILEY BRAUER PLLC**
8350 N. Central Expressway, Suite 650
Dallas, TX 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7435
abrauer@baileybrauer.com

*Attorneys for Defendants*
*Vade Secure, Inc. and Vade Secure SASU*

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SILICON VALLEY

27

CASE NO. 3:19-CV-04238-MMC
VADE'S OPPPOSITION TO PLAINTIFFS'
MOTION FOR EXEMPLARY DAMAGES