Sean S. Pak (SBN 219032)
 seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
 imanlordgooei@quinnemanuel.com
Jodie W. Cheng (SBN 292330)
 jodiecheng@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Plaintiffs,*
*Proofpoint, Inc. and Cloudmark LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC<br><br>Plaintiffs,<br><br>v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ<br><br>Defendants. | CASE NO. 3:19-cv-04238-MMC<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXEMPLARY DAMAGES**<br><br>**Judge:** Hon. Maxine M. Chesney<br><br>**Hearing**<br>  **Date:** Oct. 29, 2021<br>  **Time:** 9:00 a.m.<br>  **Courtroom:** 7, 19th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94102 |

## I. INTRODUCTION

Lacking any credible basis to refute Plaintiffs' Motion for Exemplary Damages (Dkt. 810 (the "Motion" or "Mot.")), Vade's opposition (Dkt. 811 (the "Opposition" or "Opp.") instead cites and focuses on several inapplicable, irrelevant legal standards. Vade's Opposition relies on and applies the framework from *Neal*—a California state court case involving insurance payout—interpreting the California-specific statute for punitive damages that this Court already found to be irrelevant to the federal causes of action in this case. Vade further compounds the confusion by citing decisions applying legal standards from other jurisdictions, many of which do not even relate to intellectual property or trade secret misappropriation claims, let alone claims under the Defend Trade Secrets Act ("DTSA").

Even if *Neal* and the motley assortment of state law-specific principles advanced by Vade are applicable (which they are not), Plaintiffs' motion should still be granted. The jury's finding that Vade's misappropriation was done with **willful malice**, the resulting harm to Plaintiffs, and Vade's lack of contrition all support awarding the requested exemplary damages. Vade is financially able to pay $26,991,318 exemplary damages; and such an award is commensurate with exemplary damages awarded in similar trade secret cases. Perhaps most importantly, an award in the maximum amount available under the DTSA is necessary to fulfill the primary goal of exemplary damages: to deter similar misconduct in the future. As much as Vade tries to muddy the waters, it is inescapable that the jury found Vade's misappropriation was willful and malicious, voluminous evidence supports that finding, and such conduct calls for exemplary damages.

## II. ARGUMENT

### A. Vade's Opposition Relies on California State Law Not Applicable to DTSA

To distract from its willful and malicious violation of federal law, Vade relies on legal standards that are inapplicable to the DTSA or, indeed, any federal cause of action (and, even then, misstates and contorts the inapplicable law, *see* § II.B.1, *infra*). In particular, Vade's Opposition relies on factors from a California supreme court case regarding bad faith failure to pay insurance benefits, *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910 (Cal. 1978). As may be evident, *Neal* is a state-law case that has never been interpreted or applied to ***any*** federal cause of action, let alone a

misappropriation claim under the DTSA. Indeed, ***every decision applying* Neal *involves a cause of action under California state law***. Vade has not—and cannot—find a case applying the *Neal* factors to the question of exemplary or punitive damages under a federal claim.[1] In contrast, the present issue involves ***only*** claims under federal law, namely the federal DTSA.[2]

      Vade is well aware that California state law applies a unique legal framework for punitive damages that is distinct from federal law. At trial, the parties (and this Court), spent significant time, late into the evening and outside the presence of the jury, discussing the applicable legal standards for exemplary damages in this case. As Plaintiffs pointed out at the time—and Vade could not dispute then or now—punitive damages under California law are controlled ***by state statute***. This statute, Cal. Civ. Code § 3294, provides the standard (e.g., "clear and convincing") by which any and all punitive damages under a California state law claim may be awarded, but which has no corollary or analogue statute under federal law—a point that is again undisputed by Vade at trial and now. Indeed, this Court agreed Cal. Civ. Code § 3294 has no applicability to federal claims by recognizing in the final jury instructions that willful and malicious misappropriation need only be shown by a preponderance of the evidence under federal law, as opposed to the clear and convincing standard required under the California statute. Most critically, **Neal*, the opinion on which Vade rests its entire Opposition, interprets the inapplicable state law statute, Cal. Civ. Code § 3294*. *E.g.*, 21 Cal. 3d at 922 (quoting Cal. Civ. Code § 3294). The ***in***applicability of *Neal* to the question of federal exemplary damages could not be clearer. The fact that Vade's Opposition hinges on inapplicable state law demonstrates that it is without sound legal basis to refute the requested exemplary damages.

      **B.**    **Even The *Neal* Factors Support Maximum Exemplary Damages Here**

---

[1] Vade's Opposition cites several inapposite cases, including several interpreting state law outside of California and decisions outside of the trade secret, or intellectual property, context. **Exhibit A** contains examples of how each of these cases is distinguishable from the issue at hand.

[2] Although Defendant Olivier Lemarié was also found to have breached his contractual obligations to Cloudmark, Plaintiffs' motion does not seek exemplary or punitive damages against Defendant Olivier Lemarié for any violation. Further, as further discussed in § II.B.2, *infra*, Plaintiffs' motion pertains to exemplary damages relating to Vade's willful and malicious trade secret misappropriation.

*Assuming arguendo* that the *Neal* factors and other state law principles apply to the present question of exemplary damages under the DTSA (which they don't), the facts and law still support awarding Plaintiffs' requested relief. (*Cf.* Opp. at § IV.) And although Vade raises several miscellaneous arguments that Plaintiffs (rightfully) ignored as irrelevant or incorrect law (Opp. at § V), none of those arguments militate against awarding exemplary damages to Plaintiffs.

### 1. Vade's Wrongdoing is Willful and Malicious and, Although Not Required For Exemplary Damages under the DTSA, Reprehensible

In its mistaken reliance on *Neal* and Cal. Civ. Code § 3294, Vade argues that its wrongful conduct was not "reprehensible, wanton, or egregious" and therefore does not support punitive damages under the first *Neal* factor. (*See* Opp. at 7–13.) But Vade contorts and misstates the (inapplicable California) law to make its argument that the jury's finding of willful malice does not satisfy this requirement or that more is needed to support exemplary damages. Indeed, federal laws simply requires for exemplary damages that "the trade secret is **willfully and maliciously** misappropriated." 18 U.S.C. § 1836(b)(3)(C).[3] Despite its inapplicability to Plaintiffs' DTSA claims, even California law and *Neal* do not provide any support for a separate requirement that the misappropriation be "reprehensible, wanton, or egregious." Indeed, willful and malicious acts are by definition reprehensible, wanton, and egregious. *See, e.g., EnerTrode, Inc. v. Gen. Capacitor Co.*, 2019 WL 1715170, at *7 (N.D. Cal. Apr. 17, 2019) (discussing "willfully" and "wantonly" synonymously). Cal. Civ. Code § 3294 states that exemplary damages may be awarded upon a finding of malice "that the defendant has been guilty of oppression, fraud, *or malice*, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). There is no required showing of "reprehensible, wanton, or egregious" conduct beyond a finding of malice. Similarly, *Neal* held: "'In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud *or malice*.' He must act with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights." 21 Cal. 3d at 922 (quoting Cal. Civ. Code § 3294). In fact, the *Neal* court

---

[3] Emphases added throughout unless otherwise stated.

found punitive damages were proper in light of the "substantial evidence before the jury from which it might reasonably have concluded that defendant Farmers here *acted maliciously*, with an intent to oppress, and in conscious disregard of the right of the insured." *Id*. at 922–23.

Even the cases quoted and cited in Vade's Opposition state the inescapable truth that willful and malicious wrongdoing, without more, is sufficient for exemplary damages. (*E.g.*, Opp. at 5–6. ("Therefore, '[l]iability for punitive damages is reserved for particularly egregious cases involving *deliberate malice* or conscious, blatant wrongdoing which is nearly certain to cause substantial harm.'") (quoting *Trent P. Fisher Enters, LLC v. SAS Automation, LLC*, 2021 WL 1209637, at *5 (S.D. Ohio Mar. 31, 2021)).) As quoted in Vade's Opposition, the law states that "mere recklessness or careless will not suffice" to support an award of exemplary damages. (*Id*. at 6.) But the evidence and the jury's findings here demonstrate much more than reckless, careless, or accidental misconduct—they demonstrate *willful* conduct.

There is no reasonable dispute that the jury found Vade willfully and maliciously misappropriated Plaintiffs' trade secrets. (Dkt. 795 at 13-14.) It is thus even more surprising—and discrediting—that Vade's Opposition repeatedly argues that "Plaintiffs identify . . . no intentional malice." (Opp. at 7; *see also id*. at 11 ("Nor can Plaintiffs identify any 'intentional malice' . . . .").) Although Vade may argue that its misappropriation was a "mistake," it is undisputed that *the jury* weighed the evidence and reached the opposite conclusion. Based on four weeks of evidence and deliberation, the jury determined that the entirety of Vade's misappropriation was willful and malicious. While the jury's finding is not the issue of the present motion, it is supported by substantial evidence showing that Vade's conduct was (and remains) intentionally malicious, egregious, and, indeed, reprehensible.

Plaintiffs' Motion set forth numerous examples of evidence from which the jury could have reasonably found Vade's malicious and reprehensible misappropriation. (*E.g.*, Mot. at 5–7.) Even more, Vade continues to demonstrate its deliberate malice and lack of contrition through statements and conduct that the jury did not get an opportunity to consider, including Vade's statements that it is "pleased" with the compensatory damages award and, despite the jury's verdict, Plaintiffs had not proven their case. (*See, e.g.*, Ex. B at 2 ("We are on track, with a long road ahead of us, *nothing*

*can stop us!"* quoting Mr. Lotigier); Mot. at 10, 16; Dkts. 810-2–4.) To date, Vade refuses to take responsibility for its actions, arguing in its Opposition that it has not willfully and maliciously misappropriated Plaintiffs' trade secrets, despite the jury's findings to the contrary, all while continuing to avoid any remedial actions to rectify its wrongdoing. As such, the facts here align closely with other trade secret misappropriation cases in which massive exemplary damages (far greater than the amount sought by Plaintiffs here) were awarded, even by Vade's description of the facts in those cases.

For example, like defendants in *DiscoverOrg Data*, Vade perpetuated a pattern of targeting former Cloudmark employees specifically for their knowledge of the exact Cloudmark technology that Vade is found to have willfully and maliciously misappropriated, including by obtaining thousands of Cloudmark internal records and source code files. (*E.g.*, PX-2146; PX-2288.0002; PX-2254; PX-2257; Dkt. 785-1 (Lotigier Dep. Designation) 251:4–251:12, 255:9–17, 356:19–24, 358:18–22, 366:4–9; *id*. (Delannoy Dep. Desig.) 140:16–24, 141:6–10; Trial Tr. (Lemarié) 653:7–21, 654:13–17, 655:2–6, 678:2–679:5; *see also* Trial Tr. (Lotigier) 1865:22–1866:25; Mot. at 13–14. *Cf*. Opp. at 11 (citing *DiscoverOrg Data, LLC v. Bitnine Glob., Inc.*, 2020 WL 6562333 (N.D. Cal. Nov. 9, 2020)).) Similarly, like in *Syntel Sterling*, the evidence here shows that Vade then used the information to accelerate its own product development and sales and marketing efforts to specifically target ***Plaintiffs'*** customers over a course of several years with a specific intent to harm and "destroy" Plaintiffs, including by providing new, complementary products and "up-sales" opportunities. (*E.g.*, PX-100.3; PX-1863.0010, -.0012, -0016; PX-1904.08; PX-2040.0003; Dkt. 785-1 (Lotigier Dep. Desig.) 350:19–351:24, 354:21–355:4, 355:25–356:22, 356:24–356:24, 358:18–358:22, 373:22–374:5, 375:3–10; *id*. (Peck Dep. Designations) 181:14–182:6, 218:17–219:5, 220:17–23, 220:24–221:8; *id*. (Gendre Dep. Desig.) 161:05–161:10, 161:13–161:22, 161:25–162:10, 164:11–164:17, 164:19–164:25, 165:03–165:08; Mot. at 13–14. *Cf*. Opp. at 12 (citing *Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp., Inc.*, 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021)).) And, as in *ResMan*, Vade had refused and continues to refuse every opportunity to mitigate or correct its actions. (*E.g.*, Mot. at 16; Dkts. 810-6–7; Dkt. 785-1 (Lotigier Dep. Desig.) 358:18–359:2, 359:24–362:16; *id*. (Delannoy Dep. Desig.) 142:17–143:25, 145:19–

146:7; Trial Tr. (Lotigier) 1864:5–1865:1; Mot. at 13–14; *see also* Dkt. 556 at 5–8.  *Cf*. Opp. at 13 (citing *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2021 WL 3403935, at *14 (E.D. Tex. Aug. 4, 2021).)  Rather than acknowledge and take responsibility for its wrongful conduct, Vade instead attempted to withhold discovery throughout this case (*see infra*), and released its accused MTA Builder product ***during*** the pendency of this litigation, despite the fact that it was accused of misappropriation since the outset of this case.  (*E.g.*, PX-2146; Trial Tr. (Lemarié) 653:7–21, 654:13–17, 655:2–6, 678:2–679:5; Trial Tr. (Lotigier) 1818:23-1819:2; 1865:22–1866:25; Dkt. 1.) Finally, like in *Hytera*, evidence demonstrates that Vade attempted to obfuscate and hide its misappropriation, including by making cosmetic changes to its accused source code and deleting evidence of its copying.  (*E.g.*, Trial Tr. (Moore) 1494:10–1496:15, 1496:25–1497:22, 1501:11–22, 1512:20–1513:11; *id*. (Lemarié) 712:18–713:18.)  *Cf*. Opp. 11 ("There, the evidence 'showed that at times Hytera re-wrote Motorola's code to conceal that it had been used.'") (quoting *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 495 F. Supp. 3d 67, 696 (N.D. Ill. 2020).)

Even more egregious was Vade's failure to be forthcoming and forthright in this litigation, despite its CEO's knowledge of the misappropriation as early as August 2019—just a month after this case was filed.  Rather than remediate, Vade took numerous steps to delay discovery of its misconduct, which have been well documented throughout the course of this case in numerous discovery and sanctions orders issued by Magistrate Judge Illman.  That is, Vade's *ad seriatim* attempts to avoid discovery and hiding (and eventual deletion) of evidence is further evidence of its attempts to avoid and delay detection so that it may continue developing, releasing, and selling competitive products aimed at harming Plaintiffs using Plaintiffs' own trade secrets, and squeezing out every last dime of sales while it could.  (*E.g.*, Dkt. 334; Dkt. 566; PX-675; PX-2146; Mot. at 3–4.  *Cf*. Opp. at 16.)  Even when faced with indisputable evidence of it and its products' use of Plaintiffs' trade secrets, Vade tried to avoid having to pay the monetary repercussions of its wrongdoing by burying the true nature of its financial accounting in circuitous argument and "economic theory."  (*See* Mot. at 7.)

At bottom, what remains is that Vade's sales of the accused products continues to this day, as well as the non-monetary benefits it achieves, including enhanced performance of its products—

all to Plaintiffs' detriment.

### 2. Maximum Exemplary Damages is Appropriate and Proportional Considering the Substantial Harm Vade's Malicious and Reprehensible Misappropriation Has Caused

Vade's willful and malicious misappropriation has caused substantial harm to Plaintiffs, and continues to this day with no end in sight. Vade's arguments denying it has caused any harm are contradicted by the evidence *it* presented, as well as the law. It is uncontested that, during the pendency of this case and even today, Vade has continued to sell and release products found to misappropriate Plaintiffs' trade secrets. As Vade's witnesses confirmed at trial, the data collected by these products is used to enhance the performance and accuracy of all Vade's products: a concept described by Vade as the "virtuous cycle" or "feedback loop." (*E.g.*, Dkt. 785-1 (Gendre Dep. Desig.) 161:05–161:10, 161:13–161:22, 161:25–162:10, 164:11–164:17, 164:19–164:25, 165:03–165:08; Trial Tr. (Nielson) 1302:5–13; *id*. (Arnold) 1749:5–22; *id*. (Bakewell) 2608:13–20.) There is ample record evidence that Vade's feedback loop enabled Vade to compete aggressively against Plaintiffs, including by taking at least one large, market-leading customer away from Plaintiffs. (*E.g.*, *id*. (Peck Dep. Desig.) 181:14–182:6, 218:17–219:5, 220:17–23, 220:24–221:8; PX-1863.0010, -.0012, -0016; Trial Tr. (Lotigier) 1854:23–1855:6.) Thus, Plaintiffs were harmed not just by the loss of business and revenue, but also the loss of customers' data. There is also evidence that Vade was able to release a new product, its MTA Builder, which was aimed at destroying Cloudmark or at least pushing Cloudmark out of the market. (*E.g.*, PX-1863.) While these are just a few examples of the substantial harm caused by Vade's willful and malicious misappropriation, the substantial harm suffered by a market participant from a direct competitor's misappropriation is well recognized in the law.

As a legal matter, misappropriation of a trade secret *necessarily* results in harm to the trade secret owner, at least because the misappropriation devalues the nature of the secret itself. *See, e.g., Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 782 (N.D. Cal. 2013) ("Courts in this district have held that when a trade secret is misappropriated, harm may be presumed."); *Gallagher Benefits Servs., Inc. v. De La Torre*, 2007 WL 4106821, at *5 (N.D. Cal.

Nov. 16, 2007) ("In general, the imminent use of a trade secret constitutes irreparable harm."), *aff'd in relevant part*, 283 F. App'x 543 (9th Cir. 2008).  Perhaps most tellingly, even over two years after the filing of this case, Vade remains in possession of Plaintiffs' internal documents, code, and information—and has not even offered to return any of these materials.

Despite claiming to be unprofitable (*see* § II.B.3, *infra*), Vade has repeatedly scoffed the nearly $13.5 million of compensatory damages awarded by the jury against Vade.  (*See, e.g.*, Dkt. 810-2; Dkt. 810-3; Dkt. 810-4.)  Vade is "pleased" with the amount of compensatory damages, and posits the figure is "disappointing" to Plaintiffs (Opp. at 18; *see also id*. at 1), because Vade recognizes that the unjust benefit it has reaped, and the harm it has caused to Plaintiffs, pales in comparison to the cost to its business.  That is, all of Vade's post-verdict statements indicate that it believes it got a bargain.  As such, an award of $26,991,318 in exemplary damages would not be excessive and, instead, is proportional and appropriate in light of the wrongs perpetuated.  Such an award would not be excessive or violate due process at least because it falls within the statutory limit set by the DTSA.  *See Motorola*, 495 F. Supp. 3d at 711 ("With respect to the amount of the exemplary damages, this amount, as an initial matter, was legally valid under the DTSA as it was not more than 2 times the amount awarded under Subsection B of the damages provision.  In light of this statutory provision and the conduct discussed at trial, the Court disagrees with Hytera that this award must be reduced as a matter of due process.") (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) (instructing reviewing court to "accord substantial deference to legislative judgments concerning appropriate sanctions for conduct at issue").  Moreover, the amount requested here, i.e., less than $27 million, is not unreasonable; many cases involving blatant copying and trade secret misappropriation, like in this case, have awarded hundreds of millions of dollars in exemplary/punitive damages or, when permitted by law[4], exemplary/punitive damages awards over 2x compensatory damages.  *See, e.g.*, *Syntel Sterling*, 2021 WL 1553926, at *11 ("[C]omparison with punitive damages awards in similar cases can also provide useful guidance."); *Motorola Sols.*,

---

[4]  For example, damages for trade secret misappropriation under New York state law do not follow the Uniform Trade Secrets Act, including the statutory limit of 2x compensatory damages for exemplary damages.

*Inc. v. Hytera Commc'ns Corp.*, 495 F. Supp. 3d 687, 711 (N.D. Ill. 2020) (awarding $418.8 million in exemplary damages); *LivePerson, Inc. v [24]7.ai, Inc.*, No. 17-cv-01268, ECF No. 780 (N.D. Cal. June 17, 2021) (awarding punitive damages in the amount of 3.5x compensatory damages).

The fact that Vade also infringed Plaintiffs' copyrights does not foreclose or otherwise prevent awarding maximum exemplary damages for Vade's willful and malicious trade secret misappropriation . (*Cf.* Opp. at 25 (arguing that Plaintiffs cannot seek maximum exemplary damages because jury found copyright infringement).) As was made abundantly clear throughout trial, there were no separate compensatory damages sought for Vade's copyright infringement and any copyright damages would overlap with the trade secret damages. (*E.g.*, Trial Tr. 2550:18–2551:1 (Court) (e.g., "[T]he damages here are really overlapping. In other words, the plaintiffs aren't even seeking separate damages based on copyright as copyrightable material. They're essentially relying on the copyrighted source code as being a trade secret . . . ."); *see also id*. 1745:21–24 (Arnold).) Accordingly, Vade cannot credibly argue that some portion of the unjust enrichment damages awarded by the jury was limited to its acts of copyright infringement as opposed to its trade secret misappropriation. All of the jury's findings with respect to unjust enrichment were attributable to Vade's trade secret misappropriation and, as such, exemplary damages in an amount of 2x the jury's findings is appropriate.

### 3. Vade Is Financially Able to Pay Exemplary Damages

Vade argues that its purported lack of profitability weighs against awarding exemplary damages. But Vade's sales profitability is irrelevant and not determinative of its ability to pay an award. This is especially true considering the private funding Vade has received and continues to solicit—by representing that Vade achieves at least an 85% gross margin on its product sales. (Trial Tr. 1904:2–17 (Seguy); PX-1816.0005; Dkt. 785-1 (Seguy Dep. Desig.) 124:15–18, 125:4–13.) Vade has also received significant public assistance—financial and otherwise—from the French government. (*E.g.*, La French Tech, French Tech Next40/120 2021, *available at* https://lafrenchtech.com/en/how-france-helps-startups/ft120/ (listing Vade as among the French Tech Next40/120, which are 120 companies the French government has "selected based on economic performance criteria" to receive special support and assistance).) For example, French

-9-                                                                                    Case No. 3:19-cv-04238-MMC
PLAINTIFFS' MOTION FOR EXEMPLARY DAMAGES AGAINST VADE

economic journal, La Gazette, reported that: "With Emmanuel Macron's recent announcement of a cyber strategy to boost the industry with one billion euros in new financing (of which 720 million euros is publicly funded, Georges Lotigier, CEO of Vade Secure in Hem, had an exceptional year." (Ex. B at 1 (translated).)  Regarding Vade's growth in 2020, Mr. Lotigier remarked, "[w]e thought it would be hard but ***nothing could stop us***"; and, indeed, Vade hired approximately 50 new employees last year.  (*Id*. at 2.)

Like it attempted at trial, Vade again uses mischaracterization and creative accounting to try to skirt the financial consequences here.  As Vade's CFO testified, Vade is only "unprofitable" because it chooses to reinvest profits (from sales of misappropriating products) back into Vade, "to make sure that Vade keep[s] its position on the market, and . . . improve its position on the market." (Trial Tr. 1900:13–21 (Seguy).)  That is, Vade claims to be unprofitable because it uses its ill-gotten profits to generate even further unjust revenue.  As with Vade's data feedback loop (§ II.B.2, *supra*), Vade is simply multiplying its benefit and furthering harm through yet another unvirtuous cycle.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs Proofpoint and Cloudmark respectfully request that the Court award exemplary damages in the amount of $26,991,318 to deter similar willful and malicious disregard of intellectual property rights.  Exemplary damages are meant to deter similar conduct in the future; and effective deterrence requires that consequences beyond those with which the defendant is "pleased."  (*E.g.*, Dkt. 810-2; Dkt. 810-3; Dkt. 810-4; *see also* Mot. at 8, 10–11.)  Vade has played a dangerous and dishonest game throughout, and it is time they "take their seat at the banquet of consequences that they have invited upon themselves." (Dkt. 566 at 10).

DATED:  October 13, 2021                    Respectfully Submitted,

By */s/ Jodie W. Cheng*

|   |   |
|---|---|
| 1 | Sean S. Pak (SBN 219032) |
|   | seanpak@quinnemanuel.com |
| 2 | Iman Lordgooei (SBN 251320) |
|   | imanlordgooei@quinnemanuel.com |
| 3 | Jodie W. Cheng (SBN 229330) |
|   | jodiecheng@quinnemanuel.com |
| 4 | QUINN EMANUEL URQUHART & |
|   | SULLIVAN, LLP |
| 5 | 50 California Street, 22nd Floor |
|   | San Francisco, CA 94111 |
| 6 | Telephone: (415) 875-6600 |
|   | Facsimile: (415) 875-6700 |

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*