1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PROOFPOINT, INC., et al.,

        Plaintiffs,

    v.

VADE SECURE, INCORPORATED;
VADE SECURE SASU; OLIVIER
LEMARIÉ,

        Defendants.

Case No.  19-cv-04238-MMC

**ORDER DENYING PLAINTIFFS'
MOTION FOR EXEMPLARY
DAMAGES**

14

      Before the Court is plaintiffs Proofpoint, Inc. ("Proofpoint") and Cloudmark LLC's

15 ("Cloudmark") "Motion for Exemplary Damages In Re Vade's Willful & Malicious Trade

16 Secret Misappropriation," filed September 10, 2021.  Defendants Vade Secure, Inc. and

17 Vade Secure SASU (collectively, "Vade") have filed opposition, to which plaintiffs have

18 replied.  The matter came on regularly for hearing on October 29, 2021.  Sean S. Pak,

19 Iman Lordgooie, and Jodie W. Cheng of Quinn Emanuel Urquhart & Sullivan, LLP

20 appeared on behalf of plaintiffs.  Douglas E. Lumish and Jeffrey G. Homrig of Latham &

21 Watkins LLP appeared on behalf of Vade.  Having read and considered the parties'

22 respective written submissions, and having considered the arguments made at the

23 hearing, the Court rules as follow.

24

**BACKGROUND**

25

      In the operative complaint, the First Amended Complaint, plaintiffs allege that

26 Vade, as well as defendant Olivier Lemarié ("Lemarié"), Vade's Chief Technology Officer

27 and formerly Vice President of Gateway Technology at Cloudmark, misappropriated

28 plaintiffs' trade secrets in violation of the Defend Trade Secrets Act ("DTSA").

The case was tried to a jury and, on August 20, 2021, the jury found: (1) plaintiffs' asserted Trade Secrets 1-7 and 9-20 qualified as trade secrets, but asserted Trade Secret 8 did not; (2) Vade misappropriated Trade Secrets 1-7 and 9-16, but not 17-20, (3) Lemarié misappropriated Trade Secrets 1-7 and 9-15, but not 16-20; (4) Vade willfully and maliciously misappropriated Trade Secrets 1-7 and 9-16; (5) Lemarié did not willfully and maliciously misappropriate Trade Secrets 1-7 and 9-15; (6) plaintiffs did not suffer an actual loss as a result of the misappropriation; and (7) Vade, by reason of its misappropriation, was unjustly enriched in the amount of $13,495,659.[1]

## DISCUSSSION

By the instant motion, plaintiffs seek, as against Vade, an award of exemplary damages.

Under DTSA, "a court may" award (1) "damages for actual loss caused by the misappropriation of the trade secret," (2) "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss," and (3), "if the trade secret is willfully and maliciously misappropriated, . . . exemplary damages in an amount not more than 2 times the amount of the damages awarded."  See 18 U.S.C. § 1836(b)(3).

Here, as noted, the jury found Vade willfully and maliciously misappropriated Trade Secrets 1-7 and 9-16.  Trade Secrets 1-7 and 9-15 are plaintiffs' spear phishing trade secrets, which secrets, plaintiffs argued to the jury, were used by Vade in the design of two of its products, namely, Vade Secure For Microsoft 365 ("Vade O365) and Vade Secure Email Content Filter ("Content Filter").  Trade Secret 16 is information, contained in plaintiffs' Gateway Daily Licensing Reports, reflecting customer usage of Cloudmark Gateway, a mail transfer agent product ("MTA") sold by plaintiffs, and which information, plaintiffs argued, spurred Vade to develop a competing MTA product sold as

---

[1] The jury also found Vade and Lemarié infringed related copyrights owned by Proofpoint and that Lemarié breached his employment contract with Cloudmark, which findings are not addressed in plaintiffs' motion.

MTA Builder.  Plaintiffs contend they are entitled to an award of exemplary damages based on the jury's findings as to both the spear phishing secrets and the licensing reports.

Although there is no clearly articulated test for determining whether, upon a finding of willful and malicious misappropriation, an award of exemplary damages is proper, district courts have considered a number of factors.  In particular, courts have considered "the degree of reprehensibility associated with the wrongdoer's actions," see Syntel Sterling Best Shore Mauritius Ltd. v. TriZetto Group, Inc., 2021 WL 1553926, at *8 (S.D. N.Y. April 20, 2021 (internal quotation, alteration, and citation omitted), "the duration of misappropriative conduct," see AgroFresh Inc. v. Essentiv LLC, 2020 WL 7024867, at *23 (D. Del. November 30, 2020), "the defendant's consciousness of resulting injury and any efforts to cover up malfeasance," see id., "the need to deter similar misconduct in the future," see DiscoverOrg Data, LLC v. Bitnine Global, Inc., 2020 WL 6562333, at *10 (N.D. Cal. November 9, 2020), "the amount of compensatory damages awarded," see Citcon USA, LLC v. RiverPay, Inc., 2020 WL 5365980, at *5 (N.D. Cal. September 8, 2020), and "the wealth of the particular defendant," see id.[2]

Here, the Court begins with the degree of reprehensibility, a factor of particular importance.  See BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 n.23 (1996) (observing "flagrancy of the misconduct is thought to be the primary consideration in determining the amount of punitive damages") (internal quotation and citation omitted).

With respect to the spear phishing secrets, plaintiffs argued Lemarié was the

_____

[2]  In Citcon, unlike the other three cases cited above, the district court addressed the question of exemplary damages under the California Uniform Trade Secrets Act ("CUTSA") rather than DTSA.  As both DTSA and CUTSA are modeled after the Uniform Trade Secrets Act ("UTSA"), the Court finds it appropriate to consider factors courts have addressed in both DTSA and CUTSA cases.  See Brand Energy & Infrastructure Services, Inc., 2017 WL 1105648, at *7 (E.D. Pa. March 24, 20217) (examining legislative history; finding "Congress expressed its specific intent to model the DTSA in large part after the UTSA" and "directly modeled the DTSA's damages provisions after the UTSA's damages provisions"); Cadence Design Systems, Inc. v. Avant! Corp., 29 Cal. 4th 215, 221 (2002) (noting UTSA was "adopted without significant change by California").

United States District Court
Northern District of California

1    individual at Vade who used those secrets in the design of Vade products; specifically,

2    plaintiffs argued, Lemarié incorporated secrets he developed while employed by

3    Cloudmark into the source code for Vade's O365.[3]  Lemarié, however, testified without

4    apparent dispute that, upon learning of plaintiffs' claims, he replaced the assertedly

5    secret code using publicly available code.  (See Transcript of Trial Proceedings, July 29,

6    2021, at 740:17-741:4.)  Moreover, it is undisputed that Vade thereafter went further and

7    engaged Zenika, a neutral non-party, to wholly redesign the spear phishing module in

8    O365, and, although plaintiffs argued Vade was unsuccessful in eliminating from the

9    redesign all potential influence derived from Cloudmark's trade secrets, there is no

10   showing any such failure was intentional.

11          Given the redesign, as well as the absence of a jury finding of willful and malicious

12   misappropriation by Lemarié, plaintiffs, relying primarily on an email written by Lemarié

13   (see PX-2146), contend other Vade officers or employees were involved in the

14   misappropriation of spear phishing trade secrets and that Vade can be held responsible

15   for their conduct as well.  The Court, however, is not persuaded that the inferences

16   plaintiffs seek to draw from that email are of sufficient strength to support an award of

17   exemplary damages.  Similarly lacking in sufficient strength is the other evidence on

18   which plaintiffs rely for the jury's finding of willful and malicious use of spear phishing

19   trade secrets by Vade, namely, Vade's recruitment of Cloudmark employees who had

20   knowledge of Cloudmark's spear phishing technology (see PX-2288), Vade's Chief

21   Executive Officer Georges Lotigier's ("Lotigier") failure to concede wrongdoing (see

22   Transcript of Trial Proceedings, August 5, 2021, at 1864:5 - 1865:20), Lotigier's decision

23   to place Lemarié on leave rather than to fire him (see id. at 1858:18-1859:7), and Vade's

24   use of strong language in internal documents discussing competition with Cloudmark

25   _____

26          [3] Although plaintiffs' technical expert, James Nielson, Ph.D., offered an opinion
     that Cloudmark's spear phishing trade secrets were also incorporated in Vade's Content
27   Filter, he conceded he was unable to locate any such code therein (see Transcript of
     Trial Proceedings, August 3, 2021, at 1344:4-13, 1388:4-19, 1395:1-6), and the instant
28   motion makes no reference to Content Filter.

1    (see PX-1863.0016).

2          With respect to Trade Secret 16, the Gateway Daily Licensing Reports, the jury's

3    finding as to willful and malicious use appears to have been based on Xavier Delannoy's

4    taking the reports when he left Cloudmark's employ and, subsequently, while employed

5    by Vade as its Vice President of Engineering, forwarding them to Lotigier, who, in turn,

6    forwarded them to Andre Gendre, Vade's Chief Product and Services Officer, via an

7    email in which Lotigier used a winking emoticon.  (See PX-2254.0002.)  The reports,

8    however, included no trade secrets as to the design of Cloudmark's MTA.  Rather,

9    plaintiffs contended, they demonstrated the potential profitability of MTAs, and, although

10   plaintiffs argued Vade thereafter used Trade Secrets 17-20 in designing MTA Builder, the

11   jury did not find those secrets were misappropriated.  Under such circumstances, the

12   Court finds Vade's misappropriation of the reports, whether considered separately or in

13   combination with the evidence pertaining to the spear phishing trade secrets, is not so

14   egregious as to weigh in favor of an award of exemplary damages.

15         The Court next turns to consciousness of resulting injury and any efforts to cover

16   up malfeasance.  As to consciousness of injury, Vade, as noted, endeavored to rectify

17   any misuse of the spear phishing trade secrets, and the claimed misuse of and harm

18   from the forwarding of licensing reports was, essentially, indirect in nature.  As to any

19   cover-up, plaintiffs' theory, both in pretrial proceedings and at trial, was based on

20   Lemarié's shredding of various computer files, conduct for which Lemarié provided a

21   benign explanation, which, given its finding that Lemarié did not act willfully or

22   maliciously, the jury apparently accepted.  Consequently, this factor adds, at best, only

23   slight support for an award of exemplary damages.

24         The remaining factors add little weight in the balance.  As noted, the jury found

25   plaintiffs incurred no actual loss from the misappropriation, and, although exemplary

26   damages can be based on a finding of unjust enrichment, see Syntel, 2021 WL 1553926,

27   at *10, no party or the Court has been able to determine, at least to date, how the jury

28   arrived at the amount it awarded.  As to the matters of wealth and deterrence, although

Vade does not appear to be in difficult financial circumstances, and although, in an apparent effort to put on what might be described as a brave face, as well as to reassure its customers and potential customers it would remain a viable company, it may have expressed satisfaction that the verdict was for an amount considerably less than that sought by plaintiffs (see Cheng Decl., filed September 10, 2021, Ex. 1 at 3), the amount awarded, close to thirteen and a half million dollars, is a substantial sum, a sum that may well affect the manner in which Vade has chosen to allocate resources (see Transcript of Trial Proceedings, August 5, 2021, 1900:8-21) and one the Court finds sufficient to deter future misappropriation.

Accordingly, having fully considered the evidence presented at trial and in connection with the instant motion, the Court finds imposition of exemplary damages is not warranted.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for an award of exemplary damages is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 18, 2021

MAXINE M. CHESNEY
United States District Judge