Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
Jodie W. Cheng (SBN 292330)
jodiecheng@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Plaintiffs,
Proofpoint, Inc. and Cloudmark LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROOFPOINT, INC.; CLOUDMARK LLC,<br><br>            Plaintiffs,<br>    v.<br><br>VADE SECURE, INCORPORATED; VADE SECURE SASU; OLIVIER LEMARIÉ,<br><br>            Defendants. | CASE NO. 3:19-CV-04238-MMC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF TO REOPEN DISCOVERY**<br><br>Judge:  Hon. Maxine M. Chesney<br>Hearing Date: May 20, 2022<br>Time: 09:00 a.m.<br>Courtroom:  7, 19th Floor |

Defendants' Opposition (Dkt. 831 ("Opposition" or "Opp.")) to Plaintiffs' Motion To Reopen Discovery (Dkt. 829 ("Motion" or "Mot.")) fails to raise any meritorious reasons or basis for denying additional discovery. Instead, the Opposition shows that good cause exists to reopen discovery, at least so that the injunctive stage of this litigation will avoid being mired in one-sided evidence, unconfirmed facts, and speculation that is rife in Defendants' Opposition.

## I. GOOD CAUSE, AND NECESSITY, SUPPORT REOPENING DISCOVERY

There should be no dispute that the question presently before the Court is highly fact-determinative. (Opp. at 3.) And there should be no dispute that courts have reopened discovery for issues regarding ongoing relief after trial and verdict. (Opp. at 5–6 (citing, *e.g.*, *McCormick v. Cohn*, No. CV 90-0323 H, 1992 WL 687291, at *3 (S.D. Cal. July 31, 1992), *aff'd*, 17 F.3d 395 (9th Cir. 1994); *Metso Mins., Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 352 (E.D.N.Y. 2011); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp. 3d 1071, 1081 (W.D. Wis. 2018); *Fitness IQ, LLC v. TV Products USA, Inc.*, No. 3:10-cv-02584-WMC, Dkt. 59 at 16-17 (S.D. Cal. Sept. 14, 2012).) There should also be no dispute that the Ninth Circuit has affirmed district court decisions to reopen discovery post-verdict. *Id*. Thus, any suggestion or contention by Defendants that there is "zero" authority that would permit or warrant the Court to reopen discovery after the trial is plainly contradicted by the case law.

Tellingly, Defendants acknowledge the cases cited by Plaintiffs and the need for post-trial discovery in those cases "to assist with accounting for post-trial damages" (Opp. at 5) yet fail to draw any meaningful distinction between the rationale for reopening discovery to account for post-trial damages and the instant request to reopen discovery to account for post-trial misappropriation. Just as post-trial discovery was needed in those cases to identify and assess defendants' post-trial activities and the corresponding damages, post-trial discovery is needed here to identify and assess Defendants' post-trial activities giving rise to irreparable harm—which, as explained in Plaintiffs' Motion could be the loss of customer email traffic data that unfairly improves Vade's products through a feedback loop, to the detriment of Plaintiffs' products. (*See* Mot. at 6–7.) Moreover, like the cases acknowledged by Defendants, there would also be a need here to assess supplemental

damages, which discovery could be addressed at the same time as the discovery being sought by Plaintiffs, as opposed to waiting for the Court to "enter[] judgment and grant[] an injunction." (*Id*.) Indeed, Defendants' and the Court's indication at the recent April case management conference was a preference to resolve all outstanding issues at the instant stage of the litigation, rather than to wait until after a judgment is entered and an injunction is granted to open discovery into supplemental damages issues.

Rather than raising any valid reasons or basis to deny additional discovery, Defendants' Opposition further underscores the need for discovery to clarify and confirm the facts that will be relevant during the injunction stage. For example, Defendants seem to contend there is no need for additional discovery because, allegedly, there are no changed circumstances.[1] (*E.g.*, Opp. at 8.) Defendants suggest there is consolation, if nothing else, in the consistency of Vade's CEO's sentiments and statements, that Vade's business is "trending upward," and that Vade is expanding the footprint of its business. (*E.g.*, *id*. at 9 ("the sentiment expressed by Mr. Lotigier is not new"), 10 ("Here, again, Mr. Lotigier's statement are not a 'recent development'"), 10–11 ("Plaintiffs seek to reopen discovery based on 'Vade press releases announcing new distribution partners and expanded customer base for the very products found to have incorporated Plaintiffs' trade secrets' . . . [T]his is not a new development.").) In other words, Defendants contend that it is "business as usual" and suggest that prior fact discovery, which closed well over a year ago, is sufficient indicator of current and continuing circumstances.

Setting aside that a pattern of conduct that led to a finding of willful and malicious misappropriation should favor an injunction, Defendants' Opposition belies the problems with accepting their assertions. Tellingly, Defendants argue that additional discovery is not warranted because circumstances have not changed; while asserting that injunction is not warranted because circumstances have changed and misappropriation has ceased. In fact, Defendants suggest that

---

[1] The cases cited by Vade, purportedly to support limiting discovery, are inapposite. For example, *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, concerns sanctions for spoliation. No. 1:13-CV-1053 2015 WL 3453321 (N.D.N.Y. May 29, 2015). In *Fed. Trade Comm'n v. Qualcomm Inc.*, the court addressed whether certain evidence, which had already been adduced, should be considered. No. 17-cv-00220-LHK, 2018 WL 6597273 (N.D. Cal. Dec. 13, 2018).

1  what has transpired since the close of fact discovery renders an injunction futile. *E.g.*, Opp. at 10, n.5 ("And, of course, much of what Plaintiffs claimed as trade secrets were aired publicly at trial, so it is at best unclear how they would be harmed by disclosures to third parties at this point."). Not only is Defendants' position untenable, because much of the record evidence containing details of Plaintiffs' trade secrets were maintained under seal, it skirts the parties' joint stipulation ***not*** to argue that the presentation and discussion of source code materials at trial has any effect on its confidentiality or secrecy (Dkt. 746). And worse yet, such a contention invites the Court to punish Plaintiffs for protecting their trade secrets by essentially arguing that the trade secrets presented at trial no longer qualify as trade secrets. (*Cf.* Trial Tr. at 1212:22–1213:19 (denying motion to seal courtroom, noting that only a single member of the public was in attendance), 1551:8–15 (same), 2135:11–14 (same).) *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, No. C 04-1268 VRW, 2008 WL 11515597, at *2–3 (N.D. Cal. Apr. 17, 2008) ("The court rejects TSMC's contention that UniRAM destroyed the secrecy of its trade secrets when it disclosed the secrets in open court and failed to seal the courtroom. Absolute secrecy is not required to protect a trade secret. Even knowledge by a competitor of a trade secret does not destroy automatically trade secret status.") (citations omitted). *See also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 417–419 (4th Cir. 1999) (adopting "the rule that disclosure of information solely in a court's records will not, absent evidence of further publication, destroy the trade-secret status of that information. As one court explained, this is a common-sense rule grounded in the practicalities of trade secret litigation . . . ."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 849 (10th Cir. 1993) (finding that, "[a]lthough the [trade secrets] were disclosed at the permanent injunction hearing . . . they retained their status as trade secrets.").

Defendants' Opposition also attempts to argue that purported remediation efforts, which Defendants contend were taken ***before*** they were found to misappropriate, are sufficient to avoid an injunction. (Opp. at 9 ("there is therefore no basis to accept Plaintiffs' speculation that Vade's pretrial remediation efforts were insufficient"), 10.) Yet these same purported remediation efforts are what were accused as misappropriating Plaintiffs' trade secrets at trial—the very trade secrets that the jury found were indeed misappropriated willfully and maliciously by Vade.

Although Plaintiffs will present their evidence, observations, and declarations, Plaintiffs should not be limited to whatever information Defendants choose to publicize. There is mutual interest and need to determine and test facts through discovery rather than rely on incomplete information. (*See* Opp. at 9 ("There is therefore no basis to accept Plaintiffs' speculation that Vade's pretrial remedial efforts were insufficient or that different post-trial remedial efforts were required.").)

## II. THERE IS NO UNDUE BURDEN OR PREJUDICE TO DEFENDANTS

Defendants' claims of "delay, expense, and intrusion" ring hollow when, in the next breath, Defendants boast that Vade's business operations were not obstructed by "[l]itigation [that] has now stretched almost three years." (*Compare* Opp. at 3, 10 ("the requested discovery seems little more than an effort by a competitor to interfere with Vade's business relationships"), 14 *with id*. at 10 ("Vade's sales have been trending upward for years . . . Vade has made no secret of the fact that it has continued to operate its business since the trial, despite Plaintiffs' best efforts to eliminate Vade as a competitor."), 11 ("Plaintiffs compete with Vade in the same market and were well aware that Vade continued to operate and sell its products following the trial."), 12.)

Further, Defendants have not suffered and will not suffer any undue prejudice from the timing of this additional discovery. (Mot. at 8–11.) Even with the additional discovery (which may promote more efficient post-trial proceedings (Mot. at 10–11)), there is and has been no prejudicial delay in this litigation. In *Hydramedia Corp. v. Hydra Media Grp., Inc.*, the plaintiff moved for permanent injunction thirteen months after the liability finding. No. CV-06-05293-DDP (JTLx), 2008 WL 11336118 (C.D. Cal. Dec. 29, 2008), *aff'd*, 392 F. App'x 522 (9th Cir. 2010). Despite the purported delay, the court granted plaintiff's motion for permanent injunction. In doing so, the court explained that, "viewed in the totality, Plaintiff presents a sufficient showing of harm and there is little threat of prejudice to Defendant." *Id*. at *6. In this District, prejudicial delay in seeking injunctive relief requires a significantly longer, unjustified delay. *See Cave Consulting Grp., LLC v. Optuminsight, Inc.*, No. 5:11-CV-00469-EJD, 2016 WL 4658979, at *22 (N.D. Cal. Sept. 7, 2016) ("CCGroup waited nearly five years to seek an injunction against

Optum's sale of Impact Intelligence.").

Here, the three months of additional discovery falls far short of prejudicial delay. In sum, other than the common refrain among all litigants bemoaning the speed at which the wheels of justice turn, Defendants have not articulated any prejudice they have suffered or will suffer by reopening discovery.

### III. REASONABLE AND RECIPROCAL DISCOVERY SHOULD BE GRANTED

Defendants also complain about the scope of the requested discovery. However, there is no reason to deny reopening discovery because Defendants may prefer Plaintiffs have fewer discovery requests or a shorter amount of time to conduct discovery. (*Cf.* Opp. at 14.) *See, e.g.*, *Galvan v. Duffie*, EDCV 13-1492-MWF (PJWx), 2018 WL 10436581, at *4 ("Finally, Defendant attempts to differentiate three cases, cited by Plaintiff, for the contention that Plaintiff should be required to identify and justify new additional discovery requests. The cases, however, are inapposite . . . . Defendant has cited to no authority where the district court refuses to reopen discovery and requires a plaintiff to identify and justify specific requests before doing so.").

Plaintiffs have presented a reasonable proposal intended to account for the availability of witnesses and the time required to collect evidence from parties that have ongoing business operations. It is beyond any dispute that it is in the Court's discretion to fashion an appropriate order and control its docket. *E.g.*, *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'").

So long as the time allotted to conduct discovery is sufficient to conduct offensive and defensive discovery, such as under Plaintiffs' proposal, Plaintiffs would not oppose reciprocal discovery. (*See* Opp. at 14.) However, to the extent Defendants' request seeks privileged and other undiscoverable information, Plaintiffs oppose. (*Id.* ("Defendants respectfully request . . . that Defendants be permitted to obtain limited discovery from Plaintiffs and their counsel . . . .").) There is no basis for Defendants to conduct discovery into communications and information that is protected by attorney-client privilege, attorney work product, or other

applicable privileges and protections.

I.     CONCLUSION

Plaintiffs respectfully request that the Court reopen discovery for a three-month period in which Plaintiffs may serve five requests for production, ten interrogatories, and three depositions of Defendants, with Plaintiffs' motion for permanent injunction or ongoing relief being due 21 days after the close of the three-month discovery period.

DATED: May 6, 2022

Respectfully Submitted,

By /s/ Sean S. Pak

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Iman Lordgooei (SBN 251320)
imanlordgooei@quinnemanuel.com
Jodie W. Cheng (SBN 292330)
jodiecheng@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Plaintiffs Proofpoint, Inc. and Cloudmark LLC*

# CERTIFICATE OF SERVICE
# &
# ATTESTATION IN CONCURRENCE OF FILING

I hereby certify that, on May 6, 2022, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing tocounsel of record.

In accordance with the Northern District of California's General Order No. 45, Section X.(B), I, Jodie Cheng, attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

Dated: May 6, 2022

*/s/ Jodie W. Cheng*
Jodie W. Cheng SBN 292330