United States District Court
Northern District of California

1

2

3        IN THE UNITED STATES DISTRICT COURT

4        FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    PROOFPOINT, INC., et al.,                    Case No.  19-cv-04238-MMC

7                    Plaintiffs,
                                                  **ORDER DENYING PLAINTIFFS'
8            v.                                   MOTION FOR ATTORNEYS' FEES**

9    VADE SECURE, INCORPORATED, et
     al.,
10
                    Defendants.
11

12       Before the Court is plaintiffs Proofpoint, Inc. and Cloudmark LLC's Motion for

13   Attorneys' Fees, filed February 10, 2023.  Defendants Vade Secure, Inc. and Vade

14   Secure SASU (collectively, "Vade") have filed opposition, to which plaintiffs have replied.

15   Having read and considered the parties' respective written submissions, the Court rules

16   as follows.[1]

17       In the above-titled action, plaintiffs asserted that Vade and Olivier Lemarié

18   ("Lemarié"), who Vade formerly employed as its Chief Technology Officer,

19   misappropriated twenty of plaintiffs' trade secrets in violation of the Defend Trade Secrets

20   Act ("DTSA").  Beginning July 26, 2021, a jury trial was conducted.  On August 20, 2021,

21   the jury rendered its verdict as follows:  (1) plaintiffs' asserted Trade Secrets 1-7 and 9-20

22   qualified as trade secrets, but asserted Trade Secret 8 did not, (2) Vade willfully and

23   maliciously misappropriated Trade Secrets 1-7 and 9-16,[2] but did not misappropriate

24

25       [1] By order filed March 13, 2023, the Court deferred ruling on the instant motion
     until after resolution of plaintiffs' motion for judgment as a matter of law, which motion
26   was denied by order filed April 18, 2023.

27       [2] The jury also found Lemarié misappropriated Trade Secrets 1-7 and 9-15, but
     that he did not do so willfully and maliciously.  Plaintiffs do not seek an award of
28   attorneys' fees as against Lemarié.

United States District Court
Northern District of California

1   Trade Secrets 17-20, (3) plaintiffs did not suffer an actual loss as a result of the

2   misappropriation, and (4) Vade, by reason of the misappropriation, was unjustly enriched

3   in the amount of $13,495,659.

4          By the instant motion, plaintiffs seek, pursuant to DTSA, an award of attorneys'

5   fees as against Vade.  Under DTSA, "a court may . . . [,] if . . . the trade secret was

6   willfully and maliciously misappropriated, award reasonable attorneys' fees to the

7   prevailing party."  See 18 U.S.C. § 1836(b)(3)(D).  Here, as noted, the jury found Vade

8   willfully and maliciously misappropriated plaintiffs' trade secrets, and, consequently, the

9   Court has discretion to award reasonable attorneys' fees to plaintiffs.

10         The instant motion is the second motion whereby plaintiffs seek, under DTSA, a

11  remedy that a district court has discretion to award upon a finding of willful and malicious

12  misappropriation.  Specifically, on September 10, 2021, plaintiffs sought an award of

13  exemplary damages under a subsection providing "a court may . . .[,] if the trade secret is

14  willfully and maliciously misappropriated, award exemplary damages."  See 18 U.S.C.

15  § 1836(b)(3)(C).  By order filed November 18, 2021, the Court considered and weighed

16  six factors relevant to a determination of whether a plaintiff, upon a finding of willful and

17  malicious misappropriation, is entitled to an award of exemplary damages, and, having

18  found those factors did not support such an award in the above-titled action, denied the

19  motion for exemplary damages.

20         As Vade points out, in the cases cited by plaintiffs in which a court awarded

21  attorney's fees to a plaintiff who prevailed on its trade secret claims, the court also

22  awarded the plaintiff exemplary damages.  See, e.g., Mattel, Inc. v. MGA Entertainment,

23  Inc., 801 F. Supp. 2d 950, 956 (C.D. Cal. 2011) (finding plaintiff entitled to exemplary

24  damages where "all of the factors . . . appear[ed] to have been satisfied"; further finding

25  plaintiff entitled to fees).  Vade argues the converse is appropriate here, namely, that

26  where exemplary damages are not awarded, attorney's fees likewise should not be

27  awarded.

28         Although both an award of exemplary damages and an award of attorney's fee

2

1    require a finding of willful and malicious misappropriation, the purpose of an award of

2    exemplary damages is "to punish the tortfeasor whose wrongful action was intentional or

3    malicious, and to deter him and others from similar extreme conduct," see City of

4    Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981), while the purpose of an

5    award of attorney's fees is "to compensate the prevailing party for its monetary outlays in

6    the prosecution or defense of the suit," see Central Soya, Inc. v. Geo. A. Hormel & Co.,

7    723 F.2d 1573, 1578 (Fed. Cir. 1983).  Given those different purposes, the factors

8    considered in determining whether an award of exemplary damages is appropriate do not

9    directly apply to the determination as to whether an award of attorney's fees is

10   appropriate, and, consequently, the Court's denial of plaintiffs' motion for exemplary fees

11   is not, standing alone, a basis for denying plaintiffs' motion for attorney's fees.

12          As noted, however, as with exemplary damages, a plaintiff may seek an award of

13   attorney's fees only where the trier of fact has determined the misappropriation was willful

14   and malicious, in which case a court has discretion, but is not required, to award fees.  In

15   that regard, Vade argues plaintiffs have not identified evidence of Vade's having engaged

16   in willful and malicious misappropriation sufficient to warrant an award of fees.

17          At the close of plaintiffs' case, Vade moved for judgment as a matter of law, in

18   which motion it argued plaintiffs lacked evidence to establish Vade engaged in willful and

19   malicious misappropriation.  As the Court did not grant Vade's motion, the question was

20   "submitted . . . to the jury subject to the court's later deciding the legal questions raised

21   by the motion."  See Fed. Civ. P. 50(b).  After entry of judgment, however, Vade did not

22   file a "renewed motion for judgment as a matter of law," see id, and, consequently, the

23   Court lacks authority to set aside the finding that Vade engaged in willful and malicious

24   misappropriation, see Johnson v. New York, N.H. & N.R. Co., 344 U.S. 48, 50 (1952)

25   (holding, in absence of timely motion for judgment notwithstanding verdict, district court

26   lacks authority to enter such judgment).

27          Nevertheless, even if the Court is not in a position to consider whether evidence of

28   willful and malicious misappropriation on the part of Vade is entirely missing, such

3

United States District Court
Northern District of California

1    evidence is, at best, of such minimal character as to present one of the unusual situations

2    where it is appropriate to deny an award of fees.

3          At trial, plaintiffs' showing as to willful and malicious misappropriation centered on

4    Lemarié.  In particular, as to plaintiffs' spear phishing trade secrets, which plaintiffs

5    argued and the jury appears to have found were included in a Vade program called

6    identitymatch (see Transcript of Trial Proceedings ("Tr.") 2769:1-5), plaintiffs argued

7    Lemarié "work[ed] alone" on identitymatch (see id. 2762:24-2763:3), "secretly" and

8    without "any collaboration" (see id. at 2770:19-23), thus acknowledging the lack of

9    evidence that any other Vade employee was involved in developing identitymatch, much

10   less that another Vade employee engaged in willful and malicious misappropriation in

11   connection with identitymatch.

12         Thereafter, having failed to convince the jury that Lemarié engaged in willful and

13   malicious misappropriation, plaintiffs, in support of their motion for exemplary damages,

14   endeavored to identify acts on the part of other Vade officers, employees, or agents that

15   rose to that level of misconduct.  In its order denying plaintiffs' motion for exemplary

16   damages, the Court addressed those acts and found that none, whether considered

17   separately or together, were sufficient to support an award of exemplary damages.

18   Having again reviewed those acts, almost all of which are asserted by plaintiffs in

19   connection with the instant motion, the Court finds, as discussed below, they constitute,

20   at best, minimal evidence of willful and malicious misappropriation.

21         More specifically, with regard to Vade's infringement of Trade Secrets 1-7 and 9-

22   15, which pertain to spear phishing, although plaintiffs have cited an email Lemarié sent

23   to several Vade employees discussing spear phishing (see PX2146), the email did not,

24   contrary to what plaintiffs have claimed, state or suggest to its receipients that Lemarié

25   had used or would use plaintiffs' trade secrets to develop a spear phishing product for

26   Vade.  Rather, as the Court noted at a prior hearing, it referred to no more than the

27   general subject of spear phishing.  (See Transcript of Proceedings by Zoom Webinar,

28   August 12, 2022, 23:24-24:6.)  Although, as another example, plaintiffs rely on internal

4

United States District Court
Northern District of California

1   Vade documents using strong language in discussing competition with Cloudmark (see

2   PX100.3, PX 1863.0016), those documents appear to pre-date the time at which Lemarié

3   acknowledged to anyone at Vade that he had used Cloudmark code to develop

4   identitymatch and, in any event, internal Cloudmark documents use similar strong

5   language (see, e.g., Tr. 1044:1-1045:25), thus suggesting strong competitive language is

6   common in the industry.

7   With regard to Vade's misappropriation of Trade Secret 16, which consists of

8   Cloudmark licensing reports as to its "MTA" product, plaintiffs rely, as they did in seeking

9   exemplary damages, on evidence that former Cloudmark employee Xavier Delannoy

10   retained the reports when he left Cloudmark's employ and, subsequently, while employed

11   by Vade, forwarded them to Georges Lotigier, Vade's Chief Executive Officer ("Lotigier"),

12   who, in turn, forwarded them to Andre Gendre, Vade's Chief Product and Services

13   Officer, via an email in which Lotigier used a winking emoticon.  (See PX2254.0002.)

14   The reports, however, included no trade secrets as to any Cloudmark product, and,

15   although plaintiffs contend the reports demonstrated the potential profitability of an MTA

16   product, the jury found Vade did not infringe Trade Secrets 17-20, which contain

17   Cloudmark's secrets pertaining to the design and implementation of an MTA.

18   Additionally, plaintiffs repeat their argument that Vade engaged in vexatious

19   conduct during the course of discovery.  Other than citing unsuccessful arguments made

20   by Vade over the lengthy course of discovery, plaintiffs rely on a finding by the magistrate

21   judge overseeing discovery that plaintiffs were entitled to recover monetary sanctions due

22   to Vade's delay in producing source code.  Plaintiffs, however, were financially

23   compensated for that delay, which did not prejudice plaintiffs' ability to present their case

24   to the jury.  Although plaintiffs also argue that the magistrate judge found "Vade"

25   engaged in spoliation of evidence during the course of discovery (see Pls.' Mot. at 10:2-

26   3), the magistrate judge did not find any Vade employee other than Lemarié engaged in

27   spoliation.  Rather, the magistrate judge's finding was based solely on conduct by

28   Lemarié, and the evidence pertaining to Lemarié's asserted spoliation was presented to

1  the jury, who, in light of the finding that he did not engage in willful and malicious

2  misappropriation, did not find plaintiffs' evidence persuasive.

3    The Court next considers three arguments now made by plaintiffs but not

4  previously raised in connection with their motion for exemplary damages, and, for the

5  reasons set forth below, finds they do not support an award of attorneys' fees, whether

6  considered separately or in connection with plaintiffs' other arguments.

7    First, plaintiffs assert that, if they are not awarded fees, "there may well be a

8  chilling effect of future enforcement actions by other trade secret owners, who would be

9  forced to weigh the costs of complex litigation against enforcing their rights and protecting

10  U.S. innovation." (See Pls.' Mot. [Doc. No. 865] at 2:1-4.) The Supreme Court, however,

11  has rejected a similar argument where, as here, such contention was "unsupported by

12  any empirical evidence." See Buckhannon Board and Care Home, Inc. v. West Virginia

13  Dep't of Health and Human Resources, 532 U.S. 598, 608 (2001) (rejecting, as

14  unsupported, argument that, for purposes of Americans With Disabilities Act, failure to

15  adopt "catalyst theory" of attorneys' fees would "deter plaintiffs with meritorious but

16  expensive cases from bringing suit").

17    Next, plaintiffs, citing a United States Senate report recommending the enactment

18  of DTSA, see S. Rep. No. 114-220 (2016), assert that "the[ ] goals and purposes of the

19  DTSA would be undermined if a prevailing plaintiff is faced with the prospect of

20  expensive, uncoverable legal fees to enforce its rights." (See Pls.' Mot. at 7:18-19.)

21  Congress, however, chose to make an award of attorneys' fees under DTSA both

22  contingent and discretionary, as opposed to mandatory to the prevailing party, which it

23  has done in other statutes. See, e.g., 15 U.S.C. § 1692k(a)(3) (providing, where plaintiff

24  prevails on claim under Fair Debt Collections Practices Act, defendant "is liable" for "the

25  costs of the action, together with a reasonable attorney's fee as determined by the

26  court"); 18 U.S.C. § 1964(c) (providing plaintiff who prevails on RICO claim "shall recover

27  threefold the damages he sustains and the cost of the suit, including a reasonable

28  attorney's fee").

1    Lastly, plaintiffs argue that "[t]he need for recovery of fees" is "even more

2    articulated here where no exemplary damages or injunctive measures have been

3    imposed" against Vade, which "could easily revert back to using the misappropriated

4    technology, forcing [p]laintiffs to incur yet more legal fees to bring a new suit."  (See Pls.'

5    Mot. at 7:23-8:3.)  Plaintiffs, however, have not shown an award of attorneys' fees is

6    necessary to deter Vade from using plaintiffs' trade secrets in the future.  As the Court

7    found in denying plaintiffs' motion for exemplary damages, "the amount awarded, close to

8    thirteen and a half million dollars, is a substantial sum, a sum that may well affect the

9    manner in which Vade has chosen to allocate resources."  (See Order [Doc. 820] at 6:5-

10   7.)

11   Additionally, Vade replaced identitymatch with a program designed by Zenika, an

12   unrelated company, and plaintiffs have suggested no reason why Vade would "revert

13   back" to selling products it has discontinued.  Moreover, although the Court denied

14   plaintiffs' motion for a permanent injunction, there being a lack of evidence of "continuing

15   use" of plaintiffs' trade secrets by Vade (see Order [Doc. No. 860] at 3:23-24), the Court

16   issued a Final Disposition Order, by which it established a protocol for disposition of the

17   source code files that had been left in Vade's possession by Lemarié (see Order

18   [Doc.No. 862]), and plaintiffs have not suggested Vade, in the more than seven months

19   since its issuance, has in any manner failed to comply therewith.

20   Accordingly, for all the reasons set forth above, plaintiffs' motion for an award of

21   attorneys' fees is hereby DENIED.

22   **IT IS SO ORDERED.**

23

24   Dated: September 5, 2023

25   MAXINE M. CHESNEY
     United States District Judge

26

27

28

7